# 23-229

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

HYUNHUY NAM,

*Plaintiff-Appellee,*

—against—

PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## VOLUME II OF V
## (Pages A-290 to A-569)

JOSEPH BARBIERE
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000

ERIC S. LATZER
COLE SCHOTZ P.C.
1325 Avenue of the Americas,
   19th Floor
New York, New York 10019
(201) 525-6281

JOSHUA S. LIM
NICK DUBOIS
SEAN KWAK
KIM, CHO & LIM, LLC
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
(201) 585-7400

*Attorneys for Defendant-Appellant*

(*Counsel continued on inside cover*)

Yongjin Bae
Hang & Associates, PLLC
136-20 38th Avenue, Suite 10G
Flushing, New York 11354
(718) 353-8588

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries ............................................. A-1

Complaint, dated July 19, 2021 ........................................ A-11

Defendants' Notice of Motion to Dismiss, dated September 30, 2021 .... A-54

Defendants' Memorandum of Law in Support of Motion to Dismiss,
    dated September 30, 2021 ........................................ A-57

Declaration of Byungseok Yoo in Support of Defendants'
    Motion to Dismiss, dated August 25, 2021 ........................ A-79

    Exhibit 1 to Byungseok Declaration—
    Letter from the United States Department of State, Office
    of Foreign Missions, New York Regional Office, Concerning
    the Permanent Mission of the Republic of Korea's Tax-Exempt
    Status, dated June 12, 2002 ...................................... A-83

Declaration of Counsellor at the Mission in Support of Defendants'
    Motion to Dismiss, dated September 3, 2021 ...................... A-85

    Exhibit A to Foregoing Documents—
    Letter from the Ministry of Foreign Affairs for the Republic
    of Korea Concerning the Laws, Rules, and Regulations of the
    Republic of Korea, dated August 23, 2021 ........................ A-87

    Exhibit B to Foregoing Documents—
    The Settlement Agreement executed by and between Plaintiff
    and Defendant Jo, on behalf of Defendant Permanent Mission
    of the Republic of Korea to the United Nations,
    dated September 1, 2020, with Certified Translation ................ A-90

Declaration of Hyunhuy Nam in Opposition to Defendants'
    Motion to Dismiss, dated October 23, 2021 ........................ A-94

ii

PAGE

Exhibit A to Nam Declaration—
Permanent Mission's Employee Directory (Redacted) . . . . . . . . . . . . . A-106

Exhibit B to Nam Declaration—
Plaintiff's Time Records Revised by Minister Lee . . . . . . . . . . . . . . . A-107

Exhibit C to Nam Declaration—
Original Photograph Reflecting Defendant Chung
and the Shopping Item . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-110

Memorandum of Law in Opposition to Defendants'
Motion to Dismiss, dated October 25, 2021 . . . . . . . . . . . . . . . . . . . . . A-112

Defendants' Reply Memorandum of Law in Further Support
of Motion to Dismiss, dated November 8, 2021 . . . . . . . . . . . . . . . . . . A-132

Memorandum Opinion and Order of the Honorable Alison J. Nathan,
dated January 21, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-150

Defendant Permanent Mission of the Republic of Korea to the United
Nations ('Mission")'s Answer, dated February 11, 2022 . . . . . . . . . . A-162

Defendant Mission's Notice of Motion for Summary Judgment,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-192

Defendant Mission's Memorandum of Law in Support of Motion
for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-194

Declaration of Joshua S. Lim in Support of Defendant Mission's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-228

Declaration of Counsellor at the Mission in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-233

iii

PAGE

Defendant Mission's FRCP 56.1 Statement of Material Facts,
    dated July 28, 2022 .............................................. A-234

Exhibit 1 to Foregoing Documents—
Complaint, dated July 19, 2021 ................................. A-246

Exhibit 2 to Foregoing Documents—
Transcript of the Deposition of Plaintiff,
taken on February 22, 2022 ..................................... A-290

Exhibit 3 to Foregoing Documents—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 .......................... A-326

Exhibit 4 to Foregoing Documents—
2016 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0014.................................... A-359

Exhibit 5 to Foregoing Documents—
Certified Translation of Exhibit 4, Produced by Defendant
in this Matter as ROKPM0014-T, along with the
Certification of Translation .................................... A-361

Exhibit 6 to Foregoing Documents—
2017 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0019.................................... A-364

Exhibit 7 to Foregoing Documents—
Certified Translation of Exhibit 6, Produced by Defendant
in this Matter as ROKPM0019-T, along with the
Certification of Translation.................................... A-366

Exhibit 8 to Foregoing Documents—
2018 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0024.................................... A-369

Exhibit 9 to Foregoing Documents—
Certified Translation of Exhibit 8, Produced by Defendant
in this Matter as ROKPM0024-T, along with the
Certification of Translation .................................... A-371

iv

PAGE

Exhibit 10 to Foregoing Documents—
2019 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-374

Exhibit 11 to Foregoing Documents—
Certified Translation of Exhibit 10, Produced by Defendant
in this Matter as ROKPM0030-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-376

Exhibit 12 to Foregoing Documents—
2020 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-379

Exhibit 13 to Foregoing Documents—
Certified Translation of Exhibit 12, Produced by Defendant
in this Matter as ROKPM0041-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-381

Exhibit 14 to Foregoing Documents—
2021 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0047 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-384

Exhibit 15 to Foregoing Documents—
Certified Translation of Exhibit 14, Produced by Defendant
in this Matter as ROKPM0047-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-386

Exhibit 16 to Foregoing Documents—
Result of the Background Check Performed for Plaintiff
Hyunhuy Nam in the Republic of Korea, along with a
Certified Translation thereof and the Certificate
of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-389

Exhibit 17 to Foregoing Documents—
2016 Employment Contract Produced by Defendant
in this Matter as ROKPM0010 through 0013 . . . . . . . . . . . . . . . . . . . . . A-401

Exhibit 18 to Foregoing Documents—
Certified Translation of Exhibit 17, Produced by Defendant
in this Matter as ROKPM0010-T through 0013-T,
along with theCertification of Translation . . . . . . . . . . . . . . . . . . . . . . . . A-406

v

PAGE

Exhibit 19 to Foregoing Documents—
2017 Employment Contract Produced by Defendant
in this Matter as ROKPM0015 through 0018 ..................... A-411

Exhibit 20 to Foregoing Documents—
Certified Translation of Exhibit 19, Produced by Defendant
in this Matter as ROKPM0015-T through 0018-T,
along with the Certification of Translation ....................... A-416

Exhibit 21 to Foregoing Documents—
2018 Employment contract Produced by Defendant
in this Matter as ROKPM0020 through 0023 ..................... A-422

Exhibit 22 to Foregoing Documents—
Certified Translation of Exhibit 21, Produced by Defendant
in this Matter as ROKPM0020-T through 0023-T,
along with the Certification of Translation ....................... A-427

Exhibit 23 to Foregoing Documents—
First 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0025 through 0029 ..................... A-433

Exhibit 24 to Foregoing Documents—
Certified Translation of Exhibit 23, Produced by Defendant
in this Matter as ROKPM0024-T through 0029-T,
along with the Certification of Translation ....................... A-439

Exhibit 25 to Foregoing Documents—
Second 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0031 through 0035 ..................... A-446

Exhibit 26 to Foregoing Documents—
Certified Translation of Exhibit 25, Produced by Defendant
in this Matter as ROKPM0031-T through 0035-T,
along with the Certification of Translation ....................... A-452

Exhibit 27 to Foregoing Documents—
2020 Employment Contract Produced by Defendant
in this Matter as ROKPM0036 through 0040 ..................... A-459

vi

PAGE

Exhibit 28 to Foregoing Documents—
Certified Translation of Exhibit 27, Produced by Defendant
in this Matter as ROKPM0036-T through 0040-T,
along with the Certification of Translation ........................ A-465

Exhibit 29 to Foregoing Documents—
2021 Employment Contract Produced by Defendant
in this Matter as ROKPM0042 through 0046 ..................... A-472

Exhibit 30 to Foregoing Documents—
Certified Translation of Exhibit 29, Produced by Defendant
in this Matter as ROKPM0042-T through 0046-T,
along with the Certification of Translation ........................ A-478

Exhibit 31 to Foregoing Documents—
Declaration of Counsellor at the Mission in Support of
Defendants' Motion to Dismiss, dated September 3, 2021,
with Exhibits A and B ........................................... A-485

Exhibit 32 to Foregoing Documents—
Declaration of Byungseok Yoo in Support of Defendants'
Motion to Dismiss, dated August 25, 2021, with Exhibit 1 ........ A-495

Exhibit 33 to Foregoing Documents—
Transcript of the Deposition of the Second Secretary
at the Mission, taken on April 4, 2022 ........................... A-502

Exhibit 34 to Foregoing Documents—
Print-out of a Webpage from "naver.com,"
the Full Web Address being the following:
https://terms.naver.com/entry.naver?docId=
5844054&cid=43667&categoryId=43667 ........................ A-515

Exhibit 35 to Foregoing Documents—
Certified Translation of Exhibit 34,
along with the Certification of Translation ........................ A-519

Exhibit 36 to Foregoing Documents—
Security Pass issued to Plaintiff Hyunhuy Nam for Access to the
Vicinity of the United Nations building during the high-level
week, issued in 2020 and set to expire on July 30, 2022 ........... A-524

PAGE

Exhibit 37 to Foregoing Documents—
Certified Translation of The Settlement Agreement executed by
and between Plaintiff and Defendant Jo, on behalf of Defendant
Permanent Mission of the Republic of Korea to the United
Nations, dated September 1, 2020 ............................... A-526

Exhibit 38 to Foregoing Documents—
Memorandum Opinion and Order of the Honorable
Alison J. Nathan, dated January 21, 2022 (Dkt. # 61) ............. A-529

Plaintiff's Notice of Motion for Partial Summary Judgment,
dated July 8, 2022 ............................................. A-542

Memorandum of Law in Support of Plaintiff's Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-544

Proposed Order ..................................................... A-562

Declaration of Hyunhuy Nam in Support of Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-563

Affirmation of Yongjin Bae in Support of Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-567

Rule 56.1 Statement of Undisputed Material Facts in Support
of Plaintiff Hyunhuy Nam's Motion for Partial Summary
Judgment, dated July 28, 2022................................... A-570

Exhibit A to Foregoing Documents—
Complaint, dated July 19, 2021 ................................. A-574

Exhibit B to Foregoing Documents—
Employment Contract 2016 (Marked as Defendants'
Exhibit 1, Produced for Deposition on Plaintiff) .................. A-617

Exhibit C to Foregoing Documents—
Employment Contract 2017 (Marked as Defendants'
Exhibit 2, Produced for Deposition on Plaintiff).................. A-627

viii

PAGE

Exhibit D to Foregoing Documents—
Employment Contract 2018 (Marked as Defendants'
Exhibit 3, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-637

Exhibit E to Foregoing Documents—
Employment Contract 2019 (Marked as Defendants'
Exhibit 4, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-647

Exhibit F to Foregoing Documents—
Employment Contract 2020 (Marked as Defendants'
Exhibit 5, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-669

Exhibit G to Foregoing Documents—
Employment Contract 2021 (Marked as Defendants'
Exhibit 6, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-681

Exhibit H to Foregoing Documents—
Overtime Verification Ledger (Marked as Defendants'
Exhibit 8, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-693

Exhibit I to Foregoing Documents—
Excerpts from Exhibit H with Translation . . . . . . . . . . . . . . . . . . . . . . . .  A-753

Exhibit J to Foregoing Documents—
Excerpts of the Deposition Transcript of Counsellor
at the Mission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-760

Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion for Partial Summary Judgment,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-765

Defendant's Response to Plaintiff's FRCP 56.1 Statement
of Material Facts and Defendant's Counter-Statement
of Facts, dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-791

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-803

ix

PAGE

Exhibit 3-2 to Lim Declaration—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 .......................... A-805

Exhibit 39 to Lim Declaration—
Defendant's Answer, filed February 11, 2022 ................... A-844

Exhibit 40 to Lim Declaration—
Declaration by Fran Yoon, dated August 26, 2022 ............... A-878

Exhibit 41 to Lim Declaration—
Articles 50, 53, and 56 of the ROK's Labor Standards Act,
obtained from: https://www.law.go.kr/법령/근로기준법,
last accessed August 26, 2022 at 4:09 PM ....................... A-880

Exhibit 42 to Lim Declaration—
Partial Translation of Exhibit 41 by Fran Yoon,
and Certification of Translation ................................. A-883

Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment and in Further Support of Plaintiff's
Partial Summary Judgment, dated August 29, 2022 .............. A-884

Defendant's Reply Memorandum of Law in Further Support
of Defendant's Motion for Summary Judgment Pursuant
to FRCP 56, dated September 19, 2022 ......................... A-903

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated September 19, 2022 ...................................... A-921

Exhibit 43 to Lim Declaration—
Amended Complaint filed in *Mourmouni v. Permanent Mission
of the Republic of S. Sudan to the U.N.*, Case Number
1:20-cv-03603, on January 11, 2021,
retrieved through PACER ...................................... A-922

x

PAGE

Memorandum of Law in Reply to Defendant's Opposition
   to Plaintiff's Partial Summary Judgment,
   dated September 19, 2022 ........................................ A-939

Exhibit A to Memorandum—
Transcript of deposition of Counsellor at the Mission,
witness for Permanent Mission under Rule §30(b)(6)
of the F. R. C. P, 34:2-38:8..................................... A-952

Exhibit B to Memorandum—
Transcript of deposition of Nam. 18-19 ......................... A-957

Exhibit C to Memorandum—
Transcript of Deposition of Second Secretary at the Mission
at 19:18-22 ................................................... A-961

Exhibit D to Memorandum—
Records 0061-75 .............................................. A-962

Declaration of YongJin Bae, dated September 19, 2022 ............... A-972

Order of the Honorable Jennifer L. Rochon, dated January 3, 2023..... A-975

Supplemental Damage Analysis Brief in Further Support
   of Plaintiff's Motion for Partial Summary Judgment,
   dated January 13, 2023.......................................... A-976

Declaration of YongJin Bae, dated January 13, 2023 .................. A-987

Exhibit A to Bae Declaration—
Bates Stamped as ROKPM0051 ................................. A-989

Exhibit B to Bae Declaration—
Dkt #78-21, Dkt #78-33........................................ A-993

Exhibit C to Bae Declaration—
Dkt #79-15 ................................................... A-1078

Exhibit D to Bae Declaration—
Dkt #79-14 ................................................... A-1086

xi

PAGE

Defendant's Supplemental Memorandum of Law in Opposition
   to Plaintiff's Motion for Partial Summary Judgment,
   dated February 3, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1147

Declaration of Joshua S. Lim in Support of Defendant's
   Supplemental Brief in Opposition to Plaintiff's Motion
   for Partial Summary Judgment, dated February 3, 2023 . . . . . . . . . . A-1160

   Exhibit 43 to Lim Declaration—
   Summary Document Based on Data Gleaned from
   Exhibits A through D submitted by Plaintiff on
   January 13, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1162

   Exhibit 44 to Lim Declaration—
   Summary Document Based on Data Gleaned from
   Exhibits A through D submitted by Plaintiff on
   January 13, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1206

Opinion and Order of the Honorable Jennifer L. Rochon,
   dated February 21, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1240

Defendant's Notice of Appeal, dated February 22, 2023 . . . . . . . . . . . . . A-1297

Memorandum and Order of the Honorable Jennifer L. Rochon,
   dated March 10, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1300

# EXHIBIT 2

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                     Defendant's Motion for Summary Judgment

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2

 3                                   Case No.: 1:21-CV-06165
     --------------------------------
 4   HYUNHUY NAM,

 5                    Plaintiff,        VIDEOCONFERENCE
                                        DEPOSITION OF:
 6                                      HYUNHUY NAM
            -against-
 7
     PERMANENT MISSION OF THE REPUBLIC
 8   OF KOREA TO THE UNITED NATIONS,

 9                       Defendants.

10   ------------------------------------

11

12                         ‾‾‾‾‾

13        TRANSCRIPT of the testimony of HYUNHUY NAM in

14   the above-entitled matter, as taken by and before

15   CELESTE A. GALBO, a Certified Court Reporter and

16   Notary Public of the State of New Jersey, held at the

17   offices of Kim, Cho & Lim, LLC, 460 Bergen Boulevard,

18   Palisades Park, New Jersey, on February 22, 2022,

19   commencing at 10:09 a.m.

20

21

22

23

24

25
```

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                    **Pages 2..5**

Page 2

```
1        A P P E A R A N C E S:
2
3   HANG & ASSOCIATES, PLLC
    BY:  SHAN ZHU, ESQ.
4        YONGJIN BAE, ESQ.
    136-20 38th Street
5   Flushing, New York 11354
6   718-353-8588
7   szhu@hanglaw.com
    ybae@hanglaw.com
8
    Attorneys for the Plaintiff
9
10
11  KIM CHO & LIM, LLC
    BY:  JOSHUA S. LIM, ESQ.
12       SEAN KWAK, ESQ.
    460 Bergen Boulevard
13  Palisades Park, New Jersey 07650
14  201-740-2953
15  seankwak@kcllawfirm.com
16  Attorneys for the Defendant
17
18  ALSO PRESENT:
19  Fran Yoon, Korean interpreter
    Jo Jinha, Esq., Permanent Mission of the Republic of
20           Korea to the United Nations
    Taeho Kim
21
22
23
24
25
```

Page 3

```
1            INDEX
2
3   WITNESS                            PAGE
4   HYUNHUY NAM
    BY MR. LIM                          6
5   BY MR. ZHU                         130
6
7
8
            E X H I B I T S
9
10  DEFENDANT'S      DESCRIPTION        PAGE
11  Exhibit 1   2016 contract and translation     22
12  Exhibit 2   2017 papers with translation      27
13  Exhibit 3   2018 papers with translation      31
14  Exhibit 4   2019 papers and translation       35
15  Exhibit 5   2020 papers with translation      39
16  Exhibit 6   2021 papers with translation      40
17  Exhibit 7   consent form                      43
18  Exhibit 8   time records                      52
19  Exhibit 9   dictionary definition of the
                protocols                         78
20
    Exhibit 10 document Bates stamped
21             P DOC S 000048                      82
22  Exhibit 11 document Bates stamped
               P DOC S 000272                      84
23
    Exhibit 12  Settlement Agreement             103
24
25
```

Page 4

```
1            E X H I B I T S
2
3   DEFENDANT'S    DESCRIPTION           PAGE
4
5   Exhibit 13 handwritten notes          110
6   Exhibit 14 text messages              117
7   Exhibit 15 letter from the Ministry of Foreign
                Affairs of the Republic of Korea   128
8
9        (Exhibits retained by Mr. Kwak.)
10
11
12
13  REQUEST FOR DOCUMENTS:
14  PAGE     LINE
15  27       2
    106      13
16  123      25
    125      2
17
18
19  DIRECTIONS NOT TO ANSWER:
20  PAGE     LINE
21  126      7
    126      19
22
23
24
25
```

Page 5

```
1       IT IS HEREBY STIPULATED AND AGREED
2   by and between the attorneys for the respective
3   parties herein, that filing and sealing be and the
4   same are hereby waived.
5       IT IS FURTHER STIPULATED AND AGREED
6   that all objections, except as to the form of the
7   question, shall be reserved to the time of the trial.
8       IT IS FURTHER STIPULATED AND AGREED
9   that the within deposition may be signed and sworn to
10  before any officer authorized to administer an oath,
11  with the same force and effect as if signed and sworn
12  to before the Court.
13
14
15
16
17              -O-
18
19
20
21
22
23
24
25
```

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022
Pages 6..9

Page 6

1  FRAN YOON, was duly sworn by the Notary Public to
2  interpret the proceedings from English to Korean, and
3  from Korean to English.
4  HYUNHUY NAM, residing at 128 W. Central Boulevard,
5  Palisades Park, New Jersey 07680 having been duly
6  sworn by the Notary Public, was examined and
7  testified as follows:
8  EXAMINATION
9  BY MR. LIM:
10     Q.     All right.  Good morning, Mr. Nam.  Let
11  me briefly introduce myself.  My name is Joshua Lim.
12  I am one of the attorneys representing the defendant
13  in this case Permanent Mission of the Republic of
14  Korea to the United Nations.  To my right my
15  associate Sean Kwak is present.  From time to time if
16  necessary, Mr. Sean may also ask you some questions,
17  although I'll be the one taking the meeting today.
18           Okay.  And for purposes of today's
19  proceeding I'm going to refer to the defendant as
20  "the Mission".  No other name should be used for the
21  purpose of clarity and consistency.  So, when you're
22  testifying, I want you to consistently refer to -- I
23  guess perhaps I'm asking Ms. Yoon, the translator, to
24  refer to the defendant as the Mission.
25     A.     Understood.

Page 7

1     Q.     Now, you are here for a proceeding
2  known as a deposition.  Have you been deposed before?
3     A.     Yes.
4     Q.     When was the last time that you were
5  deposed?
6     A.     About 2011.
7     Q.     Okay.  Why did you have to be deposed?
8     A.     It was a deposition concerning a
9  workers' comp case with CRST Trucking Company.
10     Q.     So that's back in what, 2010 or '11?
11     A.     Correct.
12     Q.     Since then are you saying that you've
13  never been deposed until today?
14     A.     Correct.
15     Q.     Okay.  Now, I'm going to give you some
16  rules.  I know you were deposed once before, but
17  these are the cardinal rules that will control
18  today's proceeding.  These are very important and I
19  expect you to abide by these rules at all times from
20  the beginning to the end.
21           Number one, I'm going to ask you a
22  number of questions related to the lawsuit that you
23  brought against my client, that you'll be asked to
24  answer all my questions.  And when you answer my
25  questions, I know you're wearing a mask, I understand

Page 8

1  why you're doing it, however, you have to verbalize,
2  verbalize your response at all times.  Let me explain
3  what I mean by that.  If you shake your head or nod,
4  that is not a sufficient response.  Why?  Because the
5  court reporter today, she'll take down whatever I say
6  or whatever you say, whatever is discussed in this
7  proceeding.  Later on she'll produce what we call a
8  transcript.  And when we look at the transcript, if
9  you shook your head or nod it and later on when we
10  try to use it for future proceedings in the court, we
11  don't know what you meant by that.  Hence, it is very
12  important for you to verbalize your response with the
13  assistance of the interpreter, Ms. Yoon.
14           Do you understand that, sir?
15     A.     Yes.
16     Q.     Number two, from time to time your good
17  counsel may say what we call objection.  But under
18  the court rules, they cannot do speaking objection.
19  In other words, they cannot object in a way that
20  coaches you how to answer.  He cannot tell you how to
21  answer or what to say.  That is strictly prohibited
22  by rule.  All they can do, they can just say
23  objection to the form.  If they say objection to the
24  form, allow their objection to be placed on the
25  record and move on, you still have to answer my

Page 9

1  question.  Understand?
2     A.     Yes.
3     Q.     And there is a confidentiality order
4  signed by Judge Nathan.  Let me explain to you the
5  legal significance of that.  Before we begin, counsel
6  and I, your counsel, we discussed and we agreed that
7  if you're about to say something that is considered
8  confidential, we're going to go off the record and
9  discuss how it should be handled first and then we're
10  going to go back to the record.
11           Do you understand this, sir?
12     A.     Yes.
13     Q.     And I don't think it will happen but
14  I'm going to tell you anyhow, if you're about to say
15  something that involves your communication with your
16  counsel, I'm not entitled to know and I don't want to
17  know.  So you don't have to tell me what you
18  discussed with your counsel and I'm not entitled to
19  know.  Okay?
20     A.     Understood.
21     Q.     Barring that, you have to answer all my
22  questions today.
23     A.     Understood.
24     Q.     Rule number three, this is by far the
25  most important rule of all.  If you look around there

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                          Pages 10..13

Page 10

1  is no judge or jury today, however, Mr. Nam, the
2  answer you're about to give has the same force and
3  effect as if you're testifying in a court of law.
4  You raised your right hand, you're under oath.  You
5  understand that, right?  That means if you willfully
6  lie that you will be subjected to punishment.
7          You understand that, sir?
8      A.    Yes.
9      Q.    So no speculation, no guess, no
10 exaggeration, facts, facts, and facts only.  Are we
11 clear about this?
12     A.    Yes.
13     Q.    Okay.  And luckily with the cooperation
14 of your good counsel we already have most of the
15 answers, we just want to confirm a few things.
16          You understand that?
17     A.    Yes.
18     Q.    By the way, I have to commend your good
19 counsel, your counsel has been very cooperative and
20 courteous throughout the proceeding, and we
21 anticipate that we'll continue to work together well.
22          Now, we have a translator for a reason.
23 You have to go through the translator at all times.
24 The reason why I'm telling you this is because you
25 may understand some English, so from time to time you

Page 11

1  may just blurt out your answers in English.  If you
2  continue to speak in English and then I'll ask your
3  counsel whether or not you really need a translator.
4          Do you understand?
5      A.    Understood.
6      Q.    So you have to go through the
7  translator at all times.
8          Now, before we begin, is there any
9  reason at all that may impair your ability to tell
10 the truth today, physical, psychological or
11 otherwise?  Do you have any reason at all that it
12 will make it difficult for you to tell the truth?
13     A.    No.
14     Q.    Okay.  So you're ready to tell the
15 truth?
16     A.    Correct.
17     Q.    To all the questions, correct?
18     A.    Correct.
19          MR. ZHU:  One instruction to the
20 witness --
21          MR. LIM:  I forgot one --
22          MR. ZHU:  Go ahead.
23          MR. LIM:  Thank you.
24     Q.    We'll probably take a break from time
25 to time, but under the Judge Salas' rule, it's a

Page 12

1  federal ruling in the matter, you're not allowed to
2  discuss your prior testimony with your counsel during
3  a break.  You can talk to your counsel about other
4  things, but you cannot talk your counsel during the
5  break about, hey, how did I do, should I go back and
6  change my answer.  You are not allowed to do that.
7  In that case under the case rule, we're allowed to
8  ask you and your counsel what you actually discussed.
9  In other words, that attorney/client privilege may be
10 lifted.  So I just wanted to be careful about that.
11          Okay, go ahead, sir.
12          MR. ZHU:  So just I instruct you that
13 you need to wait for the answer -- I'm sorry, wait
14 for the question before you give the answer.
15          MR. LIM:  Thank you.  I appreciate
16 that.
17     Q.    Mr. Nam, we have your full name here as
18 indicated in the caption Hyunhuy Nam; is that
19 correct?
20     A.    Hyunhuy Nam.
21     Q.    Okay.  Do you have an English name?
22     A.    No.
23     Q.    Okay.  Your date of birth is April 9,
24 1960?
25     A.    Correct.

Page 13

1      Q.    Are you currently residing at 128 West
2  Central Boulevard, Palisades Park, New Jersey?
3      A.    Yes.
4      Q.    However, during the course of your
5  employment at the Mission, you reside at 55 West
6  Homestead Avenue, correct, 55?
7      A.    55, yes.
8      Q.    Are you married?
9      A.    Yes.
10     Q.    With children?
11     A.    Yes.
12     Q.    Who are you living with today?
13     A.    With my wife.
14     Q.    Anyone else?
15     A.    From time to time my daughter comes to
16 visit us.
17     Q.    So you're just living with your wife;
18 is that correct?
19     A.    Correct.
20     Q.    Let's go over your employment history.
21 Are you currently employed?
22     A.    Yes.
23     Q.    Where are you working?
24     A.    Sunrise, LLC.
25     Q.    Where is it?

# A-295

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                    Pages 14..17

**Page 14**

1    A.    In Secaucus.
2    Q.    What kind of company is this?
3    A.    It's a trucking company.
4    Q.    How many hours do you work there?
5    A.    40 hours a week.
6    Q.    When did you start working for this
7  company?
8    A.    July 29, 2021.
9    Q.    Do you have any other job other than
10 this?
11   A.    No.
12   Q.    Okay.  Prior to that, where did you
13 work?
14   A.    My last job prior to my current job was
15 at the Mission.  And after my work was terminated for
16 one month, I didn't work, and then I started working
17 for Sunrise, LLC.
18   Q.    How much are you earning now?
19        MR. ZHU:  Objection.  Relevance.
20        You can answer.
21   A.    On average about $4,000.
22   Q.    4,000 a month?
23   A.    Yes.
24        MR. ZHU:  Interpreter, if you can maybe
25 translate my objection to the witness.

**Page 15**

1        THE INTERPRETER:  Sure.  Sure.
2    Q.    What is your highest level of
3  education?
4    A.    Four-year university.
5    Q.    Where?
6    A.    Seoul.
7    Q.    What's the name of the school?
8    A.    Sungkyunkwan University.
9    Q.    What did you study?
10   A.    Okay.  My major was in German language
11 and minored in administration.
12   Q.    Prior to working at the Mission, where
13 did you work?
14   A.    Cora Express, C-O-R-A.
15   Q.    Where is it?
16   A.    In Hackensack.  It's near Hackensack, I
17 don't know the specific town.
18   Q.    What did you do there?
19   A.    It's a trucking company.
20   Q.    Were you a truck driver?
21   A.    Yes.
22   Q.    How long did you work there for?
23   A.    Two years.
24   Q.    Prior to your working at the Mission,
25 how long did you work as a truck driver?

**Page 16**

1    A.    Well, I didn't work as a truck driver
2  continuously, so it's difficult to say.  But I would
3  say about ten years.
4    Q.    When did you come to the United States?
5        MR. ZHU:  Objection.  Relevancy.
6        You can answer.
7    A.    Well, I can't recall if it was January
8  2007 or 2008, however it was after 2007 and my entire
9  family emigrated to this country in or around January
10 2017 -- not 2017 but 2007.
11   Q.    You just talked about your family.  My
12 question is, when did you come to the United States?
13        MR. ZHU:  Objection.  Asked and
14 answered.
15        You can answer.
16   A.    I visited this country or I came -- I
17 was back and forth in this country many times, so.
18   Q.    My question is, when did you immigrate
19 to the United States?
20        MR. ZHU:  Objection to you inquiring
21 about the immigration status.
22        MR. LIM:  Counsel, let me remind you of
23 the case, the KOTRA case.  One of the factors the
24 Court considered was the nationality of the
25 plaintiff.  Okay?  So that's the reason why I'm

**Page 17**

1  asking.  You can put an objection on the record but
2  it's relevant.  Okay.
3    Q.    So, sir, I can care less about whether
4  you're legal or illegal.  I don't care about that.
5  My question is are you South Korean national?
6    A.    Yes.
7    Q.    You're not a naturalized American
8  citizen yet, correct?
9    A.    Correct.
10   Q.    After you came to the United States,
11 would it be fair to say that most of the time you
12 worked as a truck driver?
13   A.    Yes.
14   Q.    When you worked as a truck driver, was
15 your driving just limited to East Coast area or
16 certain areas or did you drive across the country?
17   A.    Across the country.
18   Q.    Do you speak some English?
19   A.    Just enough to get by as a truck
20 driver.
21   Q.    Would you say that your English is a
22 conversational level?
23   A.    Well, I wouldn't say perfect, however,
24 I am able to take job instructions.
25   Q.    And you can carry out those job

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                    Pages 18..21

Page 18

```
 1  instructions?
 2      A.      Correct.
 3      Q.      Would you consider yourself an
 4  experienced driver?
 5      A.      Yes.
 6      Q.      Would you say that you are a very
 7  reliable driver?
 8      A.      Yes.
 9      Q.      Would you say that you operate the
10  vehicle in a very safe manner?
11      A.      Yes.
12      Q.      How many accidents have you had in the
13  past?
14      A.      If you're talking about a car accident,
15  there was only one minor car accident.
16      Q.      But otherwise you consider yourself a
17  very reliable, safe driver?
18              MR. ZHU:  Objection.  Asked and
19  answered.
20      A.      Correct.
21      Q.      Would you say you are very familiar
22  with the road areas in northern New Jersey?
23      A.      I am very familiar with the roads in
24  Connecticut and New Jersey.
25      Q.      Okay.  How did you find out about the
```

Page 19

```
 1  job opportunity at the Mission?
 2      A.      I found out through HeyKorean.  It's a
 3  Korean post or portal.  There was a job listing in
 4  March of 2016.
 5      Q.      Were you aware that the same job ad was
 6  also available on the website of the Mission?
 7      A.      I didn't know.
 8      Q.      Did you ever know that it was available
 9  on the website of the Mission?
10      A.      By 2020 when this case was already
11  filed, I knew about it.  So as I asked my attorney
12  and I actually went to the website of the Mission to
13  see if there were such listings available on the home
14  page.
15      Q.      Now, how did you reach out to the
16  Mission for a job interview?  Did you call them?  Did
17  you email them?
18      A.      I followed the instructions of the
19  posting in or on HeyKorean.
20      Q.      What were the instructions?
21      A.      Based on my recollection, I believe I
22  was supposed to contact via email.
23      Q.      What was the position and title you
24  applied for?
25      A.      Driver, chauffeur.
```

Page 20

```
 1      Q.      Chauffeur.  Did you have an interview?
 2      A.      Yes.
 3      Q.      I'm not going to ask you to identify
 4  the name of the person that you interviewed with, you
 5  can just go by the last name.
 6      A.      Choi.
 7      Q.      At the time did you bring your resume
 8  to the interview?
 9      A.      Yes.
10      Q.      Do you have a copy of your resume?
11      A.      No, I don't.
12      Q.      Did you throw it away?
13      A.      I submitted it with all other
14  documents.
15      Q.      To whom?
16      A.      So, at the time I was sent a Mission's
17  form, so I filled it out and submitted it to the
18  Mission.
19      Q.      During the interview did they ask you
20  whether or not you are familiar with the areas New
21  York and New Jersey?
22      A.      Yes.
23      Q.      Did it also ask you whether or not you
24  are a safe driver?
25      A.      Yes.
```

Page 21

```
 1      Q.      Did you answer -- how did you answer to
 2  all these questions?
 3              MR. ZHU:  Objection.  Compound.
 4      Q.      How did you answer?
 5      A.      I can't recall.
 6      Q.      Did they also ask you whether or not
 7  you are able to keep information you will acquire
 8  while working for the Mission secret?
 9      A.      No, not at the interview.  There was no
10  mention of me being able to keep a secret was not
11  mentioned during my interview.
12      Q.      Was it ever mentioned afterwards?
13      A.      Yes, the first day of my job when I
14  arrived at the Mission bringing the minister, that's
15  when I was told.  Well, I mean, they didn't really go
16  into specifics about keeping information
17  confidential, however, when I asked them what type of
18  organization the Mission was, I was told what the
19  organization was.
20      Q.      Okay.  Now, we're going to get there.
21  Who offered you a job?  You can just tell me the last
22  name of the person.
23      A.      Mr. Jo was the one who notified me.
24      Q.      Okay.  Did he call you?
25      A.      Yes.
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                              Pages 22..25

**Page 22**

```
1          Q.     Okay.  You accepted that offer?
2     A.     Yes.
3              MR. LIM:  Okay.  I'm going to mark D-1.
4  These are the contracts.
5          (Defendant's Exhibit 1, 2016 contract
6          and translation, was marked for
7          identification.)
8          (Discussion off the record.)
9          Q.     All right.  Mr. Nam, we just handed to
10 you what's been marked as D-1.  We're going to spend
11 a little time identifying the documents that have
12 been marked as exhibits.
13             Now, do you recognize these documents,
14 sir?
15    A.     Yes.
16         Q.     What is this?
17    A.     It's an employment contract for
18 chauffeur.
19         Q.     Now, let's go to the last page of the
20 contract.  Do you see that -- no, that's different,
21 second to the last.
22             Now, that's the last page of the
23 employment contract for chauffeur?
24    A.     Yes.
25         Q.     Do you see your signature there?
```

**Page 23**

```
1     A.     Yes.
2          Q.     You signed it?
3     A.     Yes.
4          Q.     You signed it voluntarily?
5     A.     Yes.
6          Q.     No one forced you to sign it, correct?
7     A.     Correct.
8          Q.     At the time you signed it, you had
9  every intention to abide by the terms of this
10 contract, correct?
11             MR. ZHU:  Objection.  Calls for a legal
12 conclusion.
13             You can answer, if you understand.
14             MR. LIM:  So, okay, counsel, just
15 objection to the form as the rule requires.  I don't
16 want you to just speak.
17    A.     Correct.
18         Q.     Okay.  Now, you understand that when
19 you signed it, you had a contractual duty and
20 obligation to abide by the terms, correct?
21    A.     Correct.
22         Q.     Let's go to the next page.  Do you
23 recognize that?
24    A.     Yes.
25         Q.     Do you know what that is?
```

**Page 24**

```
1     A.     Well, it's a pledge agreement that I
2  would pledge to abide by the terms.
3          Q.     Okay.  You signed it?
4     A.     Correct.
5          Q.     Voluntarily?
6     A.     Yes.
7          Q.     You had every intention and duty to
8  abide why the terms of the contract, correct?
9     A.     Correct.
10         Q.     And according to this employment
11 contract, your employment began on July 1, 2016?
12    A.     Correct.
13         Q.     And the term of the contract was only
14 one year, correct?
15    A.     Yes.
16         Q.     Now, before you signed it, did you have
17 an opportunity to read and understand the terms in
18 the contract?
19    A.     No.
20         Q.     You did not read?
21    A.     Correct.
22         Q.     You did not even understand?
23             MR. ZHU:  Objection.  Asked and
24 answered.
25         Q.     Go ahead.
```

**Page 25**

```
1     A.     Typically as an employee I had to agree
2  with all the terms that was presented to me, so I had
3  to sign.
4          Q.     Okay.  Did you ever read this contract
5  afterwards?
6     A.     Yes, once.
7          Q.     Okay.  You read it?
8              MR. ZHU:  Objection.  Asked and
9  answered.
10    A.     Yes.
11             MR. LIM:  Just put your objection on
12 the record.  I don't want you to violate the rule.
13 Just say objection to the form.  That's all you need
14 to do.
15             MR. ZHU:  No, I have an objection.
16 Asked and answered.  If you want, we can call judge
17 and we can get a clarification of what kind of
18 objection I can put on the record.
19         Q.     So, now, when you signed the pledge
20 agreement, it's a one-page document.  By the way you
21 read Korean, right?
22    A.     Correct.
23         Q.     That's in Korean?
24    A.     Yes.
25         Q.     That's no more than three paragraphs,
```

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                            Pages 26..29

Page 26

1  right?
2       A.    Correct.
3       Q.    Did you read it?
4             MR. ZHU:  Objection.  Asked and
5  answered.
6             MR. LIM:  Sir, hold on.  Go off the
7  record.
8             (Discussion off the record.)
9             MR. LIM:  Go ahead.
10            THE INTERPRETER:  What was the last
11 question?
12            (The record was read.)
13      A.    Not at the time of signing.
14      Q.    But did you read it later on?
15      A.    No, I did not read this particular
16 document even after I signed.
17      Q.    I see.  You never read this pledge
18 agreement?
19            MR. ZHU:  Objection.  Asked and
20 answered.
21      A.    I'm talking about at the time.
22      Q.    I see.  But when did you read it?
23      A.    After the lawsuit started with my
24 attorney I read it.
25      Q.    Okay.  Let's go to the next exhibit.

Page 27

1
2  (REQ)        MR. ZHU:  For the record, we call for
3  production of ROKPM 00010-T through 13-T as well
4  certificate of translation.
5             (Discussion off the record.)
6             (Defendant's Exhibit 2, 2017 papers
7             with translation, was marked for
8             identification.)
9       Q.    All right.  Now, what's been handed to
10 you is Exhibit D-2.  I want you to go through that
11 and identify it for me.
12      A.    This is an unfair employment contract
13 condition.  It's asking me to comply with whatever
14 their employment conditions are under the employment
15 contract.
16      Q.    Mr. Nam, I just want you to listen to
17 my question carefully.  You're not here to give your
18 narrative.  Just answer my questions.  I just asked
19 you what is this?  Isn't this an employment contract?
20      A.    Yes.
21      Q.    That's the one that you're signed in
22 2017, correct?
23      A.    Correct.
24      Q.    Let's go to the last page of the
25 employment contract.  You see a date July 1, 2017?

Page 28

1  Do you see that, sir?
2       A.    Yes.
3       Q.    Do you see your signature there?
4       A.    Yes.
5       Q.    You signed it, correct?
6       A.    Yes.
7       Q.    And it was also signed by the minister
8  at the time, correct?
9       A.    Can I explain to you the situations at
10 the time of the signing?
11      Q.    Sir, this is how it works, I'm asking
12 you questions.  If you want to say something more,
13 then later you can always go through your counsel.
14 Okay?  You are here to answer my questions.
15      A.    Understood.
16      Q.    This contract is written in Korean,
17 correct?
18      A.    Correct.
19      Q.    When was the first time you read this?
20      A.    No, after I signed it, I brought the
21 copy with me.  Now, I didn't get the copy at the time
22 of signing this document.  So once I signed it, a few
23 days later I got a copy.  So when I read the copy, I
24 didn't read the entire content, but I read what I
25 wanted to read which was how much I was getting paid.

Page 29

1       Q.    Okay.  But you had an opportunity to
2  read the whole contract?
3             MR. ZHU:  Objection to the form.
4       A.    I didn't, not at the time of the
5  signing.
6       Q.    Are you saying that -- by the way, who
7  presented this contract to you in 2016 and '17?  Just
8  the last name, please.
9       A.    It was Mr. Jo.
10      Q.    2016 and 2017 both contracts were
11 presented by Mr. Jo?
12      A.    Based on my recollection, I believe in
13 2016 it was Mr. Jo -- so, in 2017 I believe it was
14 Mr. Lee.  I was mistaken.  However -- no, now that he
15 know about it, I believe in 2017 it was also Mr. Jo.
16 I thought it was between 2016 and 2017 there was a
17 personnel change but I was wrong.
18      Q.    Okay.  So let's clarify the record,
19 okay.  So both contracts, the 2016 and 2017 which we
20 just reviewed, were both presented by Mr. Jo to you,
21 correct?
22      A.    Yes, Mr. Jo.
23      Q.    Okay.  Again, these two contracts bear
24 your authentic signature, correct?
25      A.    Correct.

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                      Pages 30..33

**Page 30**

1    Q.    Now, are you saying that in both 2016
2  and '17 after you signed it, you got a copy of both
3  contracts a few days later?
4    A.    Yes.
5    Q.    Okay.  And you were able to retain a
6  copy of the fully executed contracts?
7         MR. ZHU:  Objection.  No question
8  pending.  He already answered.
9    A.    Correct.
10    Q.    In fact, you did retain the copies of
11  the 2016 and 2017 contract in your possession,
12  correct?
13    A.    Correct.
14    Q.    Now, let's go to the pledge agreement
15  Bates stamp No. 19.  I see a date July 1, 2017, and
16  did you print your name?
17    A.    Yes.
18    Q.    Okay.  And it only contains two
19  paragraphs.  Did you sign this after you read it?
20    A.    I didn't.
21    Q.    You didn't even read it?
22    A.    Because I was instructed to just sign
23  without reading it.
24    Q.    Are you saying that Mr. Jo just forced
25  you to sign it?

**Page 31**

1    A.    Well, I mean, he did not force me,
2  however, typically in order for me to work there, I
3  had to sign a document like this.  So when these
4  types of documents are presented to me, I had to
5  sign.
6    Q.    When you signed 2016-'17 employment
7  contract and pledge agreements, did Mr. Jo ever force
8  you, coerce you, threaten you into signing these
9  documents?
10    A.    No.
11    Q.    Let's go to next, Bates stamp No. 20.
12         (Defendant's Exhibit 3, 2018 papers
13         with translation, was marked for
14         identification.)
15    Q.    Okay.  We're going to go through the
16  same drill.  Okay?  Do you recognize these documents,
17  sir?
18    A.    Yes.
19    Q.    This is an employment contract for
20  2018?
21    A.    Yes.
22         MR. ZHU:  Objection.  No question
23  pending.
24    Q.    Okay.  Now, this is an employment
25  contract also was a one-year term?

**Page 32**

1    A.    Yes.
2    Q.    And starting from July 1, 2018?
3         MR. ZHU:  Objection.  No question
4  pending.
5    Q.    Correct?
6    A.    Yes.
7    Q.    And ends on June 30, 2019; is that
8  correct?
9    A.    Yes.
10    Q.    Now, let's go to the last page of
11  employment contract for chauffeur, Bates stamp No.
12  23.  Do you see a date there?
13    A.    Yes.
14    Q.    July 1, 2018?
15    A.    Yes.
16    Q.    That's your signature, correct?
17    A.    Well, the contract was presented to me
18  not on July 1st but it was actually presented to me
19  about 20 days later.  So in or around July 20th was
20  when I signed the contract.
21    Q.    I understand.  But that's your
22  signature here?
23    A.    Yes.
24    Q.    You signed it voluntarily?
25    A.    Yes.

**Page 33**

1    Q.    Okay.  Now, are you saying that you got
2  a signed copy of this contract a few days after you
3  had signed it?
4    A.    Yes.
5    Q.    You were able to retain it?
6    A.    Yes.
7    Q.    You've been keeping it, correct?
8    A.    Yes.
9    Q.    Now, it's written in Korean, correct?
10    A.    Yes.
11    Q.    Okay.  Did you read it at any time?
12    A.    Well, typically the minister signs it
13  on a later date.  So once I received a copy, I read
14  what I wanted to read with regard to the pay and then
15  I kept the document.
16    Q.    Up until this point did anybody --
17  strike that.
18         When Mr. Jo presented 2016 and 2017
19  contracts, or whoever presented 2018 contract to you,
20  did they not want you to read this contract?
21         MR. ZHU:  Objection.  Foundation.
22    A.    No.
23    Q.    Okay.  You signed it because you knew
24  that in order to have a job at the Mission, you had
25  to sign this contract, is that what you're saying?

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 34..37

Page 34

```
 1       A.    Correct.
 2       Q.    Who presented this contract, 2018
 3  contract to you?  Is that Mr. Jo or someone else this
 4  time?
 5       A.    I believe it was Mr. Lee.
 6       Q.    Okay.  Did Mr. Jo and Mr. Lee go over
 7  every line in the contract before you signed it?
 8            MR. ZHU:  Objection to form.
 9       A.    No.
10       Q.    Let's go to pledge agreement, Bates
11  stamp No. 24.  Do you see that, sir?
12       A.    Yes.
13       Q.    That's your signature?
14       A.    Yes.
15       Q.    Did you sign it at the same time that
16  you signed the employment contract for chauffeur?
17       A.    Well, I can't recall with this
18  particular document, however, there were times when
19  the two documents were brought together and other
20  times they were not.
21       Q.    So I'm asking you, do you recall
22  whether or not you signed this particular document,
23  Bates No. 24, at the time that you signed the
24  employment contract for chauffeur?
25            MR. ZHU:  Objection.  Asked and
```

Page 35

```
 1  answered.
 2       A.    I don't remember.
 3       Q.    Okay.
 4            MR. ZHU:  Can you just translate my
 5  objection as well?
 6            MR. LIM:  She is doing it.
 7            MR. ZHU:  I don't understand Korean.
 8            MR. LIM:  Well, she's doing it.  Just
 9  letting you know.
10       Q.    Now, let's go through the rest of the
11  drill.  Let's go to the next employment contract.
12            MR. KWAK:  Marking it as Exhibit D-4.
13            (Defendant's Exhibit 4, 2019 papers and
14       translation, was marked for identification.)
15       Q.    Now, you see this employment contract
16  for chauffeur Bates No. 25?
17       A.    Yes.
18       Q.    Okay.  You've seen this document
19  before?
20       A.    Yes.
21       Q.    In fact, let's go to the last page of
22  the employment contract, Bates stamp No. 29.  Is that
23  your signature, sir?
24       A.    Yes.
25       Q.    You signed it voluntarily?
```

Page 36

```
 1       A.    Yes.
 2       Q.    And I see a date July 1, 2019.  Is that
 3  the date that you signed it?
 4       A.    No.
 5       Q.    When did you sign it?
 6            THE INTERPRETER:  May the interpreter
 7  ask Mr. Nam to clarify something, please?
 8            MR. LIM:  Sure.
 9       A.    Now, while Mr. Hyun Cho, the investor
10  was at the Mission --
11            MR. KWAK:  The minister.
12       A.    Now, when Mr. Cho was working at the
13  Mission and when Mr. Choi was bringing me this
14  documents to sign, he would usually bring them prior
15  to the date listed at the last page of the document.
16  However, typically if it was other people who brought
17  me the documents, it would be either between 10 to 20
18  days late.
19       Q.    Okay.  I understand that.  Now, let's
20  go to -- before that.  And this document you signed,
21  I'm referring to the document Bates stamp No. 25, it
22  appears that this contract began on July 1, 2019,
23  though, correct, and it was a one-year term?
24       A.    Yes.
25       Q.    Okay.  And so far of the contracts that
```

Page 37

```
 1  we have reviewed, the employment contract for
 2  chauffeur has always has a one-year term, correct?
 3       A.    Correct.
 4       Q.    So you signed an employment contract
 5  every year?
 6       A.    Yes.
 7       Q.    Okay.  Now, let's go to a document
 8  Bates stamp No. 30.  The same -- now, can you
 9  identify that for me?
10       A.    Pledge agreement.
11       Q.    This is the same pledge agreement that
12  we have seen since 2016; is that correct?
13       A.    Correct.
14       Q.    Okay.  In fact, you signed this pledge
15  agreement every year as well?
16       A.    Correct.
17       Q.    And that's your signature, correct?
18       A.    Yes.
19       Q.    All right.  Now, let's go to next
20  employment contract, 31.  I'm referring to employment
21  contract for chauffeur, Bates stamp No. 31.
22            Now, do you recognize this document,
23  sir?
24       A.    Yes.
25       Q.    It's the same employment contract,
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 38..41

**Page 38**

```
 1  isn't it?
 2      A.      Yes.
 3      Q.      And, in fact, again, this is a one-year
 4  term, right?
 5      A.      Correct.
 6      Q.      And let's go to Bates stamp No. 35
 7  which is the last page of the employment contract.
 8  Do you see your signature there?
 9      A.      Yes.
10      Q.      Okay.  Did you sign it on July 1, 2019,
11  or some other date?
12      A.      Some other date.
13      Q.      Okay.  Who presented this document to
14  you?
15      A.      Well, if this is back in 2019, at the
16  time there were two secretaries.  I don't know which
17  one of the two.
18      Q.      Okay.  That's fine.  But you signed it
19  voluntarily?
20      A.      Yes.
21      Q.      Okay.  And you were able to retain a
22  copy, signed copy of this document; is that correct?
23      A.      Correct.
24      Q.      In fact, you've been keeping
25  these documents 2016, '17, '18, even '19 since 2016,
```

**Page 39**

```
 1  correct?
 2      A.      Correct.
 3      Q.      All right.  Now, let's go to Bates
 4  stamp No. 36 of the employment contract.
 5              MR. KWAK:  That's a new exhibit.  D-5.
 6              (Defendant's Exhibit 5, 2020 papers
 7              with translation, was marked for
 8              identification.)
 9      Q.      All right.  Okay.  Let's go through the
10  drill again.  This is the same employment contract
11  for 2020, is that correct, sir?
12      A.      Correct.
13      Q.      And this is a one-year term?
14      A.      Yes.
15      Q.      And let's go to the last page of the
16  employment contract.  That's your signature, sir?
17      A.      Yes.
18      Q.      This time, let's see, was it also
19  signed on July 1, 2020?
20      A.      No, at the time there was a change of
21  ministers and Mr. Jo came into the picture, and I
22  believe I signed this document in or around October
23  of this year.
24      Q.      Okay.  But you signed it voluntarily?
25      A.      Correct.
```

**Page 40**

```
 1      Q.      You were able to retain a fully
 2  executed copy in your possession?
 3      A.      Yes.
 4      Q.      Okay.  Let's go to -- Bates stamp No.
 5  41.  Now, you see the pledge agreement, sir?
 6      A.      Yes.
 7      Q.      This is the same pledge agreement you
 8  signed every year; is that correct?
 9      A.      Correct.
10      Q.      This is a document that you also signed
11  at the time that you signed the employment contract
12  for chauffeur; is that correct?
13      A.      Yes, probably.
14      Q.      Okay.  That's your signature?
15      A.      Yes.
16      Q.      You signed it voluntarily?
17      A.      Yes.
18      Q.      Okay.  Let's go to the last contract.
19              MR. KWAK:  D-6.
20              (Defendant's Exhibit 6, 2021 papers
21              with translation, was marked for
22              identification.)
23      Q.      Okay.  Now, I'm referring to the
24  document Bates stamped No. 42, employment contract
25  for chauffeur.
```

**Page 41**

```
 1      A.      Yes.
 2      Q.      This is the same employment contract
 3  that you signed every year or substantially similar,
 4  correct?
 5      A.      Correct.
 6      Q.      And it is a one-year term?
 7      A.      It depends on when I received the
 8  contract because at that time instead of a one-year
 9  contract, there was a change in the minister and he
10  was late arriving.  However, I received initially
11  one-year contract and then I received a revised
12  version afterward.
13      Q.      Okay.  We'll find out.  Now, let's go
14  to the last page of the contract, referring to Bates
15  stamp No. 46.  You see your signature there, correct?
16      A.      Yes.
17      Q.      You signed it voluntarily?
18      A.      Yes.
19      Q.      Okay.  It's written in Korean?
20      A.      Yes.
21      Q.      Now, let's go to the next page what
22  appears to be a pledge agreement.
23      A.      Okay.
24      Q.      You see that, sir?
25      A.      Yes.
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                              Pages 42..45

Page 42

```
1        Q.      You signed it?
2        A.      Yes.
3        Q.      And at the same time that you signed
4   the employment contract for chauffeuring in 2021, you
5   signed it?
6        A.      Well, based on as far as I can
7   remember, they were probably signed at the same time
8   even though I only received one pledge agreement,
9   whereas, I received two different employment
10  contracts.
11       Q.      Okay.  So now, so let's clarify for the
12  record because we went through some documents here.
13  It's safe to say that since 2016 you began to work at
14  the Mission, every year you signed an employment
15  contract as well as a pledge agreement; is that
16  correct, sir?
17       A.      Correct.
18       Q.      Every contract is a one-year term?
19       A.      Yes.
20       Q.      And you were able to retain a fully
21  executed copy of every document you signed?
22       A.      Yes.
23       Q.      And every document is written in
24  Korean?
25       A.      Yes.
```

Page 43

```
1        Q.      If you wanted to, you could always read
2   it at any time?
3        A.      Correct.
4        Q.      Okay.
5                MR. ZHU:  Just, again, I instruct my
6   client, wait for the question.
7        Q.      Okay.  Now, after you signed this
8   pledge agreements and employment contracts, did you
9   at any point tell anyone, especially the ministers
10  you were working for, that this is a wrong contract,
11  unfair contract and I don't want to sign?  Did you
12  tell any minister?
13       A.      No.
14       Q.      Now, and at the time you began to work
15  at the Mission on July 1, 2016, do you recall you had
16  to sign documents authorizing the Mission to conduct
17  a background check on you for security clearance?
18       A.      I can't recall.
19               MR. LIM:  Mark this.
20               (Defendant's Exhibit 7, consent form,
21       was marked for identification.)
22       Q.      Now, I'm now presenting to you the
23  consent form that you actually signed, but I'm
24  presenting to you language that the consent form had.
25  It's in Korean.  I want you to read it.
```

Page 44

```
1        A.      This language was included in a
2   document that I was shown at the time of my hiring.
3        Q.      Okay.  So do you now -- does that
4   refresh your recollection?
5        A.      Yes.
6        Q.      Does that refresh your recollection as
7   to whether you signed a form that authorized the
8   Mission to conduct a background check on you?
9        A.      Well, I mean, that form was included
10  with the other document that I needed to sign at the
11  time of my hiring, so I would have to say yes, I
12  signed it.
13       Q.      Okay.  Now, were you aware or are you
14  aware today that the Mission had to conduct a
15  background check on you, once in the United States
16  and once in Korea by the South Korean government in
17  order for you to work at the Mission?
18       A.      Yes.
19       Q.      Okay.  In fact, they did conduct a
20  background check on you.  You passed the security
21  clearance, correct?
22       A.      Yes.
23       Q.      Now, your job at the Mission was to
24  drive for the ministers that had been working at the
25  Mission, correct?
```

Page 45

```
1        A.      Yes.
2        Q.      Not the ambassador, right?
3        A.      Correct.
4        Q.      Not any other just employee but the
5   ministers, correct?
6        A.      Now, no, because initially when Mr. Ko
7   explained my work for me, he told me that the vehicle
8   that I was driving was an official car.  So anyone
9   who was -- who had an official duty at the Mission
10  was able to utilize that car and even myself, if I
11  had an official duty, I could use that car.
12       Q.      I understand.  Hold on, there is no
13  question pending.  There is no question pending.  I'm
14  asking you.  Don't worry, we'll get there.
15               So, you were the designated driver for
16  the ministers, correct?
17       A.      No, I was not.
18       Q.      Are you saying that there was someone
19  else designated for the ministers?
20       A.      No.
21       Q.      So that's my question.  I want you to
22  listen to me very carefully.  According to this
23  contract that you signed, your primary duty was to
24  drive for the ministers, correct?
25               MR. ZHU:  Objection.  Document speaks
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 46..49

Page 46

1   for itself.
2       A.      However, even though the contract may
3   say that, what Mr. Ko told me that he was a
4   (redacted) public servant and as a (redacted) public
5   servant he was not allowed to hire a personal driver.
6       Q.      Sir, my question is this:  There was a
7   designated driver for the ambassadors, correct?
8       A.      Correct.
9       Q.      There was a designated driver for the
10  ministers, correct?
11          MR. ZHU:  Objection.  Asked and
12  answered.
13      A.      Not for the ministers.
14      Q.      There was no designated driver for the
15  ministers at any time?
16          MR. ZHU:  Asked and answered.
17      A.      Because I was told the (redacted) or
18  (redacted) officials would not get a designated
19  driver.
20      Q.      At the time you worked at the Mission,
21  you had an office and you shared that office with
22  someone who did research, correct?
23      A.      Well, it wasn't my office.  It was a
24  waiting room for a chauffeur.
25      Q.      I understand.  You waited at the

Page 47

1   office?
2       A.      Yes.
3           MR. ZHU:  Objection.  Mischaracterize.
4           MR. LIM:  Okay.  Excuse me.  Excuse me.
5   Okay, it's my deposition.  Okay.
6       Q.      Did you have a designated car at the
7   time you worked at the Mission?
8       A.      Yes, the official car.
9       Q.      What's the model and the type, the
10  make?
11          MR. ZHU:  Objection.  Compound.
12      A.      2015 Genesis.
13      Q.      Did you drive the car at all times?
14      A.      Yes.
15      Q.      Did anyone else drive that car besides
16  you?
17      A.      No.
18      Q.      Only you drove that car?
19      A.      So, since that was the only car, if I
20  get a request to drive somebody, then that was the
21  car that I used.
22      Q.      That was the official car provided by
23  the Mission?
24      A.      Correct.
25      Q.      Now, did anyone else drive that car?

Page 48

1           MR. ZHU:  Objection.
2       Q.      Any other driver.
3       A.      No.
4       Q.      Excuse me, hold it.  There is no
5   question pending.
6           Now, we're going to go through the
7   contract and pledge agreements.  Okay?  Let's go to
8   2016 contract.
9       A.      Could I correct my answer?
10      Q.      No, we're going to go back later.
11  2016.  Now, let's go to paragraph 2,
12  No. 4.
13          Before that, if you look at paragraph
14  1, you see the name of the minister that you worked
15  for, correct?
16      A.      Yes.
17      Q.      Okay.  And let's go to paragraph 2, No.
18  4.  Can you read it to yourself?
19      A.      Yes, I'm done.
20      Q.      Okay.  According to this contract, you
21  are not allowed to engage in activities that give you
22  financial benefit unless you first obtain permission
23  from the Mission; is that correct?
24      A.      Correct.
25      Q.      Okay.  And, in fact, did you work for

Page 49

1   anyone else that gave you financial benefit while
2   working at the Mission without permission from the
3   Mission?
4       A.      No.
5       Q.      Okay.  Let's go to the next paragraph,
6   No. 5.  According to this contract you're not
7   supposed to engage in any act that's contrary to the
8   national interests of South Korea; is that correct?
9       A.      Yes.
10      Q.      Did you do anything that's contrary to
11  the national interests of South Korea?
12      A.      No.
13      Q.      At any time?
14      A.      Correct.
15      Q.      Okay.  Now, let's go to No. 6.
16  According to this term you will be penalized
17  according to South Korean laws if you ever divulge
18  information that you learned or acquired during the
19  course of your employment.
20          MR. ZHU:  Objection.  No question
21  pending.
22      A.      Correct.
23      Q.      Did you do anything that violates this
24  term?
25      A.      Other than the personal information

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 50..53

**Page 50**

1  relating to A, minister's family, I have never
2  divulged any official information related to the
3  Mission.
4     Q.     In fact, during the course of
5  employment at the Mission you're not allowed to tell
6  anyone where the ministers went, who the ministers
7  met and what they discussed in the car or outside of
8  the car, correct?
9     A.     Correct.
10    Q.     In fact, are you telling me that you
11 did not tell anyone about that to this day?
12    A.     Correct.
13    Q.     Okay.  Now, corresponding to this
14 contract, paragraph 4, your working hours are from 9
15 to 6 p.m., is that right?  9 a.m. to 6 p.m., correct?
16    A.     Yes.
17    Q.     In case you had to work beyond these
18 working hours, you had to report to the Mission,
19 correct?
20    A.     I never -- I was never told to report
21 it to the Mission.
22    Q.     Were you ever -- did you ever report
23 the extra hours you worked beyond these designated
24 working hours?
25    A.     No, I was never told that I could -- I

**Page 51**

1  should record the extra hours I worked to the
2  Mission, had I been explained this or had I been
3  instructed to do so, I may have, however, I only
4  followed the instructions that I was given and I only
5  executed the -- executed my duties that I was
6  supposed to do.
7     Q.     Are you telling me that there wasn't
8  any occasion when you worked beyond these designated
9  working hours?
10    A.     No, there were many occasions.
11    Q.     I understand that.  So in those cases
12 when you worked more than these designated hours, did
13 you report to the Mission to get overtime?
14           MR. ZHU:  Objection.  Asked and
15 answered.
16           (Witness answering in Korean not yet
17 translated.)
18           MR. LIM:  Excuse me.  No, we're going
19 to go off the record because he's about to do -- he's
20 about to breach the confidentiality, that's why.
21           Go off the record.
22           (Discussion off the record.)
23           MR. LIM:  We're going to go back.
24 BY MR. LIM:
25    Q.     Now, Mr. Nam, again, on the record I'm

**Page 52**

1  instructing you don't give me a narrative, just
2  answer my questions.
3           MR. ZHU:  I object to this
4  unfortunately on the record.
5           MR. LIM:  Can you read back my
6  question?
7           You know what, let me just keep it
8  simple.  I'll show him the exhibit.  This is simple.
9  You need to mark it.
10          (Defendant's Exhibit 8, time records,
11          were marked for identification.)
12    Q.     Okay.  Now, I want to show you been
13 marked as D-8.  Have you seen this document?
14    A.     Yes.
15    Q.     Okay.  Can you tell me what that is?
16    A.     It is the record of my overtime work
17 hours.
18    Q.     Okay.  So this is exactly what I meant
19 by that earlier when I asked you did you ever work
20 beyond the designated working hours from 9 a.m. to 6
21 p.m.  You said yes, correct?
22    A.     Yes.
23    Q.     And, in fact, each time you worked
24 beyond the designated working hours, the overtime you
25 were able to write down the hours you worked, the

**Page 53**

1  extra hours you worked, correct?
2     A.     Correct.
3     Q.     Okay.  And you were paid for those
4  extra hours, overtime hours according to the contract
5  that's indicated here; is that correct?
6     A.     Not all of it.
7     Q.     Okay.  We'll get there.  Okay.  But
8  now, when you wrote down these hours, these hours are
9  based on your records; is that correct?
10    A.     Well, basically I entered the
11 information based on the note that I had, however,
12 once this document was submitted, the secretaries
13 adjusted the hours according to the contract.
14    Q.     Okay.  Can you show me one example that
15 your work hours were adjusted?
16    A.     Now, the secretaries would not touch
17 the information, it was always the ministers.  So,
18 for instance, I actually wanted to add my lunch hour
19 which was one hour into the payable hour, however,
20 the ministers felt that because I was not working but
21 waiting, that's considered a wait time, so they
22 refused to include that as my work hour.
23    Q.     Okay.  So now show me other than the
24 lunch hour, show me the hours that were adjusted by
25 the Mission.

# A-305

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                    **Pages 54..57**

Page 54

```
1     A.    Well, so Mr. Ko and Mr. Han was never
2  involved in adjusting the hours.  It was just
3  Mr. Lee, Jungjae Lee.
4     Q.    Show me the records that were adjusted
5  by Lee.
6           MR. ZHU:  Is there a question?
7           MR. LIM:  I asked him.
8     A.    I wouldn't be able to tell you just
9  using this record.  I would have to use my own record
10 and compare it with this record.
11    Q.    Okay.  Other than Lee, did anyone else
12 adjust your work hours?
13    A.    No.
14    Q.    Okay.  Now, do you have notes that
15 would show the discrepancy, the alleged discrepancy
16 between what you reported and the actual hours you
17 worked?
18    A.    Yes.
19    Q.    Okay.  Do you have it now with you?
20    A.    My attorney has it.
21          MR. LIM:  Did counsel produce that?
22          MR. BAE:  Yes.
23          MR. LIM:  Are you referring to the
24 memos?
25          MR. KWAK:  The notepads, right, Yellow
```

Page 55

```
1  Pages?
2           MR. BAE:  Yes.
3  BY MR. LIM:
4     Q.    So you're saying that you're not able
5  to include one hour lunch and Mr. Lee allegedly
6  adjusted your work hours?
7     A.    Yes.
8     Q.    Just one hour lunch or more than that?
9     A.    It's more than that.
10    Q.    Okay.  All right.  We'll get there,
11 okay?  We'll come back to this.
12          MR. ZHU:  Counsel, can we have a short
13 break?
14          MR. LIM:  Hold on.  I'm almost done
15 with the contract.
16    Q.    Let's come back to 2016 contract.  Now,
17 let's go to paragraph 5, No. 6.  According to this
18 contract, you understand that the Mission is exempt
19 from paying payroll tax, such as Social Security and
20 et cetera; is that correct?
21    A.    Yes.
22    Q.    In fact, you got paid in cash, correct?
23    A.    Yes.
24    Q.    In fact, you told them that you would
25 prefer cash?
```

Page 56

```
1     A.    No.
2     Q.    So you just got cash?
3     A.    No, I wanted to be paid in checks so I
4  could report my earnings on taxes.
5     Q.    Okay.  Now, let's go to pledge
6  agreement, Bates No. 14.
7           MR. LIM:  After this we're going to
8  take a short break.  Okay?
9           MR. ZHU:  Yes.
10    Q.    Now, pledge agreement, this is the same
11 form that you signed every year for five years; is
12 that correct?
13    A.    Yes.
14    Q.    According to paragraph 1 -- strike
15 that.
16          Before that, if you look at the
17 preamble, it says you solemnly swear to abide by the
18 following terms, is that correct?
19    A.    Yes.
20    Q.    And would you say that you had --
21 strike that.
22          Have you ever engaged in any act that
23 breaches this pledge agreement?
24    A.    No.
25    Q.    Okay.  Let's go over two paragraphs,
```

Page 57

```
1  okay?  Paragraph 1, it says, any information that you
2  may acquire during the course of your employment
3  while driving the official vehicle for the Mission,
4  you will not divulge any classified information, any
5  secret, even after you are no longer employed by the
6  Mission, correct?
7     A.    Correct.
8     Q.    Okay.  Have you divulged, disclosed,
9  told anyone the information, the classified
10 information that you acquired during the course of
11 your employment?
12    A.    No, except for the ones who are
13 involved in this lawsuit, the defendants.
14    Q.    Okay.  You understand that this pledge
15 agreement is incredibly critically important to you
16 performing your job; is that correct?  Yes?
17    A.    Correct.
18    Q.    In fact, you were reminded repeatedly
19 by the people at the Mission how important it is for
20 you to keep the information you learned top secret,
21 correct?
22          MR. ZHU:  Objection to form.  Time
23 frame.
24    A.    I'm referring to 2016 pledge agreement.
25 Yes or no, have you done anything?  Strike that.
```

# A-306

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**

Hyunhuy Nam on 02/22/2022                                    Pages 58..61

**Page 58**

```
1                My question is this:  Again, let's go
2  to paragraph 2.  Let's go to paragraph 2.  And
3  according to this paragraph 2, you said you are
4  willing to bear any punishment in case you breached
5  this pledge agreement, correct?
6      A.    Yes.
7      Q.    Okay.  In fact, you would be
8  responsible for any and all financial liabilities as
9  well, correct?
10     A.    Yes.
11     Q.    Okay.  So you're testifying as you sit
12 here today you have never done anything that breached
13 this pledge agreement, correct?
14           MR. ZHU:  Objection.  Asked and
15 answered.
16     A.    That's correct.
17     Q.    Okay.  We're going to take a
18 five-minute break.  We to come back and I'm advising
19 you once been you cannot talk to counsel about your
20 prior testimony.  We'll come back and go through the
21 rest.
22           (Discussion held off the record.)
23           (Luncheon recess taken.)
24
25
```

**Page 59**

```
1            AFTERNOON SESSION
2               12:38 p.m.
3  HYUNHUY NAM, having been previously duly sworn by a
4  Notary Public, was examined and testified further as
5  follows:
6           MR. LIM:  My colleague and I, we
7  discussed certain terms to be redacted, and based
8  that on stipulation certain terms will be stricken
9  and redacted.  And thank you so much for your
10 courtesy.  I appreciate that.
11 EXAMINATION Continued
12 BY MR. LIM:
13     Q.    And, again, Mr. Nam, going forward, I
14 want you to be mindful of the pledge agreement that
15 you signed.  Okay?
16           (Discussion off the record.)
17     Q.    So, we just finished reviewing 2016
18 agreements.  Now we're going to go through 2017.
19 Now, 2017, if you look at the first page which is
20 Bates stamped No. 15, the content is almost identical
21 as the 2016 document, correct?
22     A.    Yes.
23     Q.    Okay.  Your work hours, correct?
24     A.    Correct.
25     Q.    Now --
```

**Page 60**

```
1            MR. ZHU:  Objection to the form.  I'll
2  object to the previous question which was already
3  answered.
4            MR. LIM:  Okay.
5      Q.    Now, I want to direct your attention to
6  No. 4, under paragraph 2, again, which is on Bates
7  stamped No. 15.  The same term as the 2016, that is
8  you're not supposed to engage in activities that will
9  give you financial benefit other than the job that
10 you're supposed to perform for the Mission unless you
11 first get advanced permission from the Mission,
12 correct?
13     A.    Correct.
14     Q.    So you're testifying as you sit here
15 today that you did not engage in any activities that
16 violate, that breach this term; is that correct?
17     A.    Correct.
18     Q.    Now, let's go to page 16, No. 5 under
19 paragraph 2.  It's the same term as in 2016, you're
20 not supposed to do anything that's contrary to the
21 national interests of South Korea; is that correct?
22     A.    Correct.
23     Q.    Have you done anything that would
24 breach or that breached this term?
25     A.    No.
```

**Page 61**

```
1      Q.    Let's go to No. 6.  Again, the same
2  term as in 2016, correct?
3      A.    Correct.
4      Q.    And you're not supposed to divulge any
5  information that you learned or acquired during the
6  course of your employment to anyone because this is a
7  secret, correct?
8      A.    Correct.
9      Q.    And classified information, correct?
10     A.    Correct.
11     Q.    And, in fact, if you do, it says you'll
12 be penalized according to South Korean laws; is that
13 right?
14     A.    Correct.
15     Q.    Are you saying that you have never done
16 anything that violates this term?
17     A.    Correct.
18     Q.    Okay.  Let's go to paragraph 5, No. 6.
19 The same term as in 2016, it reminds you that the
20 Mission is exempt from paying any payroll tax
21 including Social Security, correct?
22     A.    Correct.
23     Q.    And you got paid in cash, correct?
24     A.    Yes.
25     Q.    Now, let's go -- I want to direct your
```

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                        Pages 62..65

**Page 62**

```
 1   attention to No. 7, under paragraph 7.  Okay.  Isn't
 2   it true that paragraph 7 lists seven categories which
 3   may give a ground for termination?
 4        A.     Yes.
 5        Q.     Okay.  And if you look at paragraph
 6   5 -- I'm sorry, not paragraph 5, No. 5, there are
 7   four categories that the Mission would review to
 8   determine whether or not your performance is
 9   satisfactory, correct?
10        A.     Correct.
11        Q.     Number one was diligence, correct?
12        A.     Yes.
13        Q.     Number two, responsibility, correct?
14        A.     Yes.
15        Q.     Number three, the ability to perform
16   your job, correct?
17        A.     Correct.
18        Q.     Number four, your ability to keep
19   matters secret, top secret, correct?
20        A.     Correct.
21        Q.     And would you say that you performed
22   your duties and responsibilities in a way that
23   satisfied these conditions?
24        A.     Yes.
25        Q.     Okay.  Now, let's go to No. 7 under
```

**Page 63**

```
 1   paragraph 7.  No. 7, it says one of the grounds for
 2   termination is that if you did not keep security
 3   guidelines, that you could be terminated, correct?
 4        A.     Correct.
 5        Q.     Did you keep all the security
 6   guidelines?
 7        A.     Yes.
 8        Q.     Okay.  Let's go to 18.  I want to
 9   direct your attention to paragraph 9 on the document
10   Bates stamped No. 18.  There it says the Mission
11   could permit your vacation days at its discretion
12   subject to compliance with the Republic of Korea
13   Diplomatic Offices Executive Employees Guidelines,
14   correct?
15        A.     Yes.
16        Q.     And the provision concerning executive
17   employees vacation days in the Mission's policies,
18   correct?
19        A.     Correct.
20        Q.     Did you receive some vacation days in
21   2017?
22        A.     Yes.
23        Q.     Okay.  Let's go to page 19 -- I'm
24   sorry, not page 19, Bates No. 19, the pledge
25   agreement.  You recognize that this pledge agreement
```

**Page 64**

```
 1   that you signed in 2017 is exactly identical as the
 2   one that you signed in 2016, correct?
 3        A.     Yes.
 4        Q.     And did you do anything that breached
 5   this pledge agreement at any time?
 6        A.     No.
 7        Q.     And, in fact, according to this pledge
 8   agreement, it says any and all information you
 9   acquired is significant and critical, top secret,
10   correct?
11        A.     But I have a question.
12        Q.     No, you cannot ask questions.
13        A.     Yes.
14        Q.     Okay.  Next, let's go to page 20.  It's
15   Bates stamped No. 20.
16        THE INTERPRETER:  There is no Bates
17   stamp No. 20.
18        MR. KWAK:  That's a different exhibit.
19        MR. ZHU:  Can the witness have a copy?
20        MR. LIM:  Yes.
21        MR. ZHU:  For the record we're talking
22   about D-3.
23        MR. KWAK:  Okay, D-3.  Yes.
24        MR. LIM:  Thank you.
25   BY MR. LIM:
```

**Page 65**

```
 1        Q.     All right.  This is a contract that you
 2   signed in 2018, correct?
 3        A.     Correct.
 4        Q.     This is another employment contract for
 5   chauffeur, correct?
 6        A.     Correct.
 7        Q.     And, in fact, the terms are identical
 8   as 2016 and '17 employment contract; is that correct?
 9        A.     Yes.
10        Q.     Okay.  Now, again, let me ask you this:
11   Paragraph 2, No. 5, in 2018 did you do anything
12   that's contrary to the national interests of South
13   Korea?
14        A.     So, I mean, this is an umbrella
15   question.  So what exactly are you trying to ask?
16        Q.     Okay.  My question is this:  Let's go
17   to 6.  We're going combine 5 and 6 together.  Did you
18   divulge any information you learned to anyone that's
19   not authorized to receive that information?
20        MR. ZHU:  Objection to the form.  Time
21   frame.
22        A.     I mean, could you specify the time
23   frame, please because the question is too broad?
24        Q.     I am going over 2019.
25        A.     So could you be more specific with your
```

**A-308**

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                          **Pages 66..69**

Page 66

```
 1  questions, please because with regard to this person
 2  who is involved in during this year, there is a lot
 3  of --
 4       Q.    Sure.  Sure.
 5       A.    -- stories or issues.
 6       Q.    And did you tell anyone who the
 7  minister met, what the minister did and where the
 8  minister went and what he discussed to anyone that is
 9  not authorized to know?
10            MR. ZHU:  Objection to the form.
11            You can answer if you understand.
12       Q.    Yes or no?
13       A.    Could you be more specific, please?
14       Q.    I cannot be more specific than this.
15  I'm asking you again.  I'll just repeat the question.
16  Did you tell anyone that is not authorized to know
17  concerning where the minister went, who the minister
18  met, what the minister did and what the minister
19  discussed, yes or no?
20            MR. ZHU:  Objection to the form.
21       Q.    Yes or no?
22            MR. ZHU:  You can answer if you
23  understand.
24       Q.    If you didn't, you didn't.  If you did,
25  tell me when.
```

Page 67

```
 1       A.    I choose not to answer.
 2       Q.    You have to answer my questions.
 3       A.    I do not know.
 4       Q.    You understand that if you violated
 5  this term, you could be punished according to South
 6  Korean laws, correct?
 7            MR. ZHU:  Objection.  Asked and
 8  answered.
 9       A.    I do understand.
10       Q.    Okay.  Now, we're going to skip, going
11  to go through some questions quickly.  Go to Bates
12  stamped 22, some questions I don't want to repeat, so
13  I'll just ask him comprehensive questions.
14            Isn't it true that during the course of
15  employment at the Mission, the Mission was exempt
16  from paying any payroll tax including Social
17  Security, correct?
18            MR. ZHU:  Objection.  Foundation.
19       A.    Correct.
20       Q.    Okay.  Now, page -- no, paragraph 7,
21  No. 5 and 7.  Again, you were aware your performance
22  will be reviewed based on four categories, your
23  diligence, responsibility, your ability to perform
24  your job and your ability to keep information secret.
25  Now, did you do anything that violated this?
```

Page 68

```
 1       A.    Could you be more specific?
 2       Q.    No.  Look, I'm asking you.  If you
 3  know, you know.  If you don't know, you don't know.
 4  Did you do anything that violated this term?
 5            MR. ZHU:  Instruction to my client, if
 6  don't understand the question, let us know, ask
 7  defense counsel to rephrase or repeat it for you.
 8       A.    I mean, unless you ask me specific
 9  questions, it would be difficult for me to answer
10  that question because this contract is very broad.
11       Q.    Okay.  Let me ask you this:  Mr. Nam,
12  do you believe, do you believe that you engaged in
13  any act that would violate this particular term,
14  paragraph 7, No. 5, or --
15            MR. ZHU:  I'll object.
16            MR. LIM:  Excuse me.
17            MR. ZHU:  Objection.  Calls for legal
18  conclusion.
19       A.    Particularly what do you mean?
20       Q.    Let me ask you -- let's go to paragraph
21  7.  I'm going to come back to 5.  I want to go over 7
22  first.
23            Did you ever divulge, disclose
24  information that you learned during the course of
25  employment in 2018 to anyone that is not authorized
```

Page 69

```
 1  to know concerning what the minister did, where the
 2  minister went, what the minister discussed, who the
 3  minister met?
 4            MR. ZHU:  Objection to the form.
 5            You can answer if you understand it.
 6       A.    I mean, first of all, it's too broad.
 7  There has been too many things that occurred and
 8  there are many issues.  So if you can be more
 9  specific, I may be able to answer your questions.
10       Q.    If you continue to refuse to answer,
11  we're going to call the judge and we're going to have
12  the judge direct you to answer my question.  Okay?
13  I'm going to give you one more chance.
14            MR. ZHU:  That is his answer.
15            MR. LIM:  Excuse me, please.
16       Q.    I'm going to ask you this question --
17            MR. ZHU:  He already answered.  That's
18  harassment.
19            MR. LIM:  It's not harassment.
20            MR. ZHU:  That's harassment.
21            MR. LIM:  Please, put an objection on
22  the record.  Just stop.
23       Q.    Do you believe, do you believe --
24  okay --
25            MR. ZHU:  Objection --
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 70..73

**Page 70**

1    MR. LIM:  Excuse me.  I understand you
2  can put an objection on the record.
3    Q.    Now let me --
4        MR. ZHU:  He already answered.
5        MR. LIM:  Excuse me.
6    Q.    Do you believe --
7        MR. ZHU:  Asked and answered.
8        MR. KWAK:  He did not answer.  He said
9  he cannot answer because it's broad.
10       MR. ZHU:  That's the answer.
11       MR. KWAK:  He specifically refused to
12 answer.  Stop.
13       MR. ZHU:  Let's get a judge.  I
14 instruct my client not going forward --
15       MR. LIM:  You know what, let's call the
16 judge.
17       MR. ZHU:  That's the answer.  Maybe
18 it's something you don't want, but that's the answer.
19       MR. KWAK:  He specifically refused to
20 answer.
21       (Discussion off the record.)
22       (Call placed to Judge Nathan.)
23       MR. LIM:  So I just want to put it on
24 the record, I'll ask you and let me know what your
25 answer is so that we can use that as a basis to speak

**Page 71**

1  to the judge about it.  Okay?
2        MR. ZHU:  You can move on.
3        MR. LIM:  No, I'm going to put it on
4  the record so that -- look, this is the witness's
5  answer so that we can tell the judge this what we
6  have, let us know whether or not we can ask more.
7        MR. KWAK:  Can you just read back the
8  last question.
9        (The record was read as follows:
10       "QUESTION:  Did you ever divulge, disclose
11       information that you learned during the
12       course of employment in 2018 to anyone that
13       is not authorized to know concerning what the
14       minister did, where the minister went, what
15       the minister discussed, who the minister met?
16    Q.    Your answer?
17    A.    It's difficult for me to answer it
18 because there are a lot of personal matters that
19 occurred.  And with regard to the duties that I
20 performed, I don't know if all of them were official
21 or personal.  It's difficult to decipher those two.
22    Q.    Okay.  Do you believe that you have
23 violated this term?
24       MR. ZHU:  Objection to the form.  Calls
25 for a legal conclusion.

**Page 72**

1    A.    With regard to the violation of that
2  particular term, that was already discussed with my
3  attorney and I notified them of what that violation
4  was.
5    Q.    I don't want you to tell me what you
6  discussed with your counsel.  I'm not entitled to
7  know.  I'm not interested in knowing.
8        Tell me the violations that you have
9  committed according to your belief.
10    A.    Because in the past I was never
11 instructed with a clear line as to what I should do
12 and what I should not do and therefore I was not sure
13 or I'm not sure what I have violated.
14    Q.    Mr. Nam, you're under oath.  You
15 testified earlier that you clearly knew what the
16 minister did, who the minister met, what the minister
17 discussed was top secret and you said you never
18 divulged it to anyone.  Now, let me ask you this
19 again, are you lying now or did you lie before?
20    A.    In 2016 and 2017 I complied with the
21 requirement -- with the conditions of the contracts.
22    Q.    But in 2018 you did not?
23    A.    No.
24    Q.    Didn't I just show you the 2018
25 contract is identical as 2016 and 2017 contracts?

**Page 73**

1  Now, let me ask you, did you violate the terms of
2  this contract in 2018 or do you believe?  If you
3  don't believe, that's fine, we're moving on.
4    A.    Well, I don't believe I violated any
5  conditions.
6    Q.    Okay.  So, let's go to 2019.  This is,
7  in fact, the same contract as 2016, '17 and '18,
8  correct?
9    A.    Correct.
10    Q.    Okay.  Now, isn't it true that if you
11 look at the document Bates No. 28, No. 8 and 9, how
12 you will be evaluated, there are four categories,
13 right, diligence, responsibility, your ability to
14 perform your job, your ability to keep information
15 top secret, right?
16    A.    Correct.
17    Q.    And, in fact, these terms appear in
18 every contract, correct?
19    A.    Yes.
20    Q.    In fact, the next one, No. 9, you could
21 be terminated for not keeping the information,
22 classified information secret, that could be a ground
23 for termination, correct?
24    A.    Yes.
25    Q.    In fact, this requirement appears in

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                          Pages 74..77

Page 74

1  every contract, right?
2       A.    Yes.
3       Q.    Okay.  Let's go to pledge agreement,
4  Bates stamp No. 30.  Now, I want to direct your
5  attention to paragraph 3 of this pledge agreement.
6  There it says if the Mission requires, you will
7  submit yourself voluntarily to the polygraph test
8  concerning whether or not you violated your duties
9  and responsibilities concerning keeping information
10 secret, correct?
11      A.    Correct.
12      Q.    Have you ever submitted yourself to a
13 polygraph test?
14      A.    No.
15      Q.    Has ever anyone requested a polygraph
16 test?
17      A.    No.
18      Q.    Let's go to the next one.  And I just
19 want to confirm because it's the same questions, so I
20 want to quickly just confirm, 2019 contract, Bates
21 No. 31, essentially these are the same contracts as
22 2016, '17 and '18; is that correct?
23      A.    Correct.
24      Q.    Okay.  In fact, No. 6, under paragraph
25 2 -- I'm sorry, No. 5, you're not supposed to engage

Page 75

1  in any act that's contrary to the national interests
2  of South Korea; is that right?  This is the same term
3  that appears in every contract, right?
4       A.    Yes, that's correct.
5       Q.    And No. 6, the same term appears in
6  every contract, right?
7       A.    Yes.
8       Q.    Let's go to Bates stamp No. 34, under
9  paragraph 7, No. 8 and 9, the same terms how you will
10 be evaluated, that's the same term that appears in
11 every other contract; is that right?
12      A.    Correct.
13      Q.    In fact, again and again every contract
14 you signed reminds you of how important it is for you
15 to keep the classified information secret; is that
16 right?
17      A.    Correct.
18      Q.    Okay.  You have never done anything in
19 violation of this agreement willfully, right?
20      A.    Correct.
21      Q.    You did your absolute best to comply
22 with the term, though, correct?
23      A.    Correct.
24      Q.    Then let's go to document Bates stamped
25 No. 36.  The contract here you signed?

Page 76

1             MR. ZHU:  I don't have Bates stamp 36
2  here.
3             MR. LIM:  You don't?
4             MR. ZHU:  Yeah, I got it.  It's D-5
5  right now?
6             MR. KWAK:  Yes.
7       Q.    36, this contract is virtually
8  substantially similar to the previous ones that we
9  have reviewed so far; is that right?
10      A.    Correct.
11      Q.    Okay.
12      A.    But not identical, though, because the
13 person -- the signer who signed his name is
14 different.
15      Q.    Of course.  That goes without saying.
16 That goes without saying.
17      A.    So, my answers were in accordance with
18 what I just said.
19      Q.    Okay.  No problem.
20            Let's go to Bates No. 39 and I'll just
21 quickly go through this.  Again, under paragraph 7,
22 No. 8 and 9, the same terms that appear in previous
23 contracts appear here again; is that right?
24      A.    Yes.
25      Q.    Again and again you're reminded of how

Page 77

1  important it is for you to keep classified
2  information secret; is that right?
3       A.    Correct.
4       Q.    Okay.  Let's go to page 41.  Here
5  paragraph 3, again it says if the Mission requires,
6  you will submit yourself to a polygraph test.  Do you
7  see, correct?  You consent to a polygraph test; is
8  that right?
9       A.    Correct.
10      Q.    Okay.  And, all right, let's go to page
11 42.  We're almost there.
12            MR. ZHU:  We're talking about D-6 right
13 now.
14      Q.    All right.  I'd like to direct your
15 attention to paragraph 2, No. 2.  In this particular
16 contract something new was added, that's protocols or
17 ceremonial orders.  Do you see that?
18      A.    Correct.
19      Q.    And that means when the minister
20 attends international events, and you have to comply
21 with the ceremonial orders or protocols that are
22 required for each event; is that right?
23      A.    Correct.
24      Q.    And your testimony is you faithfully
25 complied with every ceremonial order and protocols

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 78..81

Page 78

1    required for each event; is that right?
2         A.    Correct.
3         Q.    And because it is important for you to
4    keep that because you were part of the Mission,
5    correct?
6         A.    Correct.
7         Q.    Now, I want to direct you to the next
8    document.
9              (Defendant's Exhibit 9, dictionary
10             definition of the protocols, was marked for
11             identification.)
12             MR. ZHU:  For the record, it appears to
13   be a Web printed document and contents four pages.
14        Q.    Okay.  Mr. Nam, if you could just -- I
15   want to you to take a look at, just a quick look at what
16   I just presented to you.
17        A.    Okay.
18        Q.    Okay.  Did you understand that?
19        A.    Yes.
20        Q.    You understand the significance of the
21   Korean word there, right?
22        A.    Yes.
23        Q.    Okay.  Were you part of that ceremony
24   when the minister attended event, meaning you gave
25   him a ride?

Page 79

1         A.    I only drove.
2         Q.    Okay.  And you waited until the
3    minister -- until the event was finished, correct?
4         A.    Correct.
5         Q.    Did you also drive the minister's
6    guests sometimes, counterparts, officers, that were
7    invited to those events?
8         A.    Correct.
9         Q.    Okay.  And those guests are sometimes
10   government officials, high government officials from
11   other countries?
12        A.    Correct.
13        Q.    Did you also drive along with South
14   Korea president's car and attend U.N. events?
15        A.    No.
16        Q.    Now, where are we?  We're on the 2019
17   contract.  We're on the 2021, Bates stamp No. 42.
18             Now, I want to direct your attention to
19   paragraph 7, No. 8 and 9.  These two terms appear in
20   every contract you signed; is that correct?
21        A.    Correct.
22        Q.    And No. 10 here, they ask you to notify
23   the Mission in case you marry someone that's not a
24   South Korean national; is that right?
25        A.    Correct.

Page 80

1              MR. ZHU:  I object to the form.
2         Q.    Okay.  Let's go to the next question.
3    Now, 47, the same pledge agreement that you signed
4    before; is that right?
5         A.    Correct.
6         Q.    And paragraph 3 also requires -- I'm
7    sorry, strike that.
8              Paragraph 3 also says that in case the
9    Mission requests, you would consent to voluntarily
10   submitting yourself to a polygraph test concerning
11   paragraphs 1 and 2; is that correct?
12        A.    Correct.
13        Q.    Okay.  Now, in 2019, 2020 and 2021, do
14   you believe as you sit here today that you engaged in
15   any act that would violate the term that requires you
16   not to divulge any information you acquired during
17   the course of your employment to anyone that's not
18   authorized to know?
19             MR. ZHU:  Objection to the form.
20        Q.    Do you believe?
21        A.    I don't believe that.
22        Q.    Because you tried to keep all the terms
23   to the best of your ability?
24        A.    Correct.
25        Q.    Now, when you drove for the minister or

Page 81

1    ministers, their safety was a very important concern
2    to you, was it not?
3         A.    Correct.
4         Q.    And, in fact, because of that you
5    always operated the vehicle in a safe manner,
6    correct?
7         A.    Correct.
8         Q.    And the ministers are very important
9    government officials in South Korea, right?
10        A.    Correct.
11        Q.    And since the safety of the ministers
12   was important, did you sometimes check inside the car
13   to make sure that the car was in good condition?
14        A.    Yes.
15        Q.    And did you always try to make sure
16   that there are no trackers inside the car, there are
17   no spying devices or anything like that inside the
18   car?
19             MR. ZHU:  Objection.  Relevancy.
20             You can answer.
21        A.    I only followed the instructions that I
22   was given.  I was never given an instruction to do
23   that.
24        Q.    So I understand that.  Did you or did
25   you not -- in other words, did you sweep the car to

# A-312

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                          **Pages 82..85**

**Page 82**

1  make sure that there is no device installed in your
2  car?
3       A.    No.
4       Q.    When you were at the Mission's building
5  waiting for the ministers' directions, did you
6  perform any tasks or did you simply just wait at the
7  building, at the office?
8       A.    No, I simply waited.
9       Q.    You knew that the ministers that you
10 served, they were considered high level government
11 officials inside Korea, right?
12      A.    Yes.
13      Q.    And now back in March 2018 you gave a
14 ride to the secretary of U.N. secretary general,
15 right?
16      A.    I would have to see my note to get the
17 clear information.
18           MR. KWAK:  All right.  This is Exhibit
19 10.
20           (Defendant's Exhibit 10, document Bates
21      stamped P DOC S 000048, was marked for
22      identification.)
23      Q.    No question pending.
24           All right.  I want to direct your
25 attention to your notes.  I just handed to you the

**Page 83**

1  exhibit that's been marked as D-10 which is your
2  notes.  All right.  I want to direct your attention
3  to the portion dated March 2nd.  Do you see that,
4  sir?
5       A.    Yes.
6       Q.    Okay.  According to your note, the
7  minister that you served at that time had a meeting
8  with the secretary of U.N. secretary general; is that
9  correct?
10      A.    Yes.
11      Q.    Okay.  They had lunch together?
12      A.    Yes.
13      Q.    And you gave a ride to both the
14 minister and the secretary?
15      A.    Correct.
16      Q.    Okay.  And they discussed something?
17      A.    I don't remember what they discussed
18 about.
19      Q.    Now, I'm looking at your notes.  It
20 appears that you jotted down what they discussed.  Do
21 you see that?
22      A.    You know, based on this memo it seems
23 to me that this is what I heard but I don't know the
24 details about this particular conversation.
25      Q.    Mr. Nam?

**Page 84**

1           MR. ZHU:  Objection to the form.
2           MR. LIM:  I haven't even asked.  What
3  are you objecting to?
4           MR. ZHU:  You asked him yes, that he
5  has to provide an answer.
6           MR. LIM:  No.
7       Q.    Mr. Nam, can you look me in the eye?
8  You were not supposed to write down anything that
9  they discussed, correct?  Nonetheless you wrote it
10 down, did you not?
11      A.    This is my diary.
12      Q.    Okay.  Look, listen to my question.
13 You were not allowed to write down any notes
14 concerning what these officials discussed,
15 nonetheless you did so, did you not?
16           MR. ZHU:  Objection.  It's harassment.
17 Don't harass my client.
18      A.    Well, I had the right to.
19      Q.    You have the right.  What right did you
20 have and who gave you the right?
21           MR. ZHU:  Objection.  Calls for legal
22 conclusion.
23      A.    This was my journal.
24           (Discussion off the record.)
25           (Defendant's Exhibit 11, document Bates

**Page 85**

1      stamped P DOC S 000272, was marked for
2      identification.)
3  BY MR. LIM:
4       Q.    I want to direct your attention to
5  Exhibit D-11.  I want to direct your attention to the
6  portion of your memo dated October 13.
7       A.    Okay.
8       Q.    There you indicate who the minister
9  met, that is Mr. Seo Hoon.  Do you see that?
10      A.    Yes.
11      Q.    That's your handwriting, right?
12      A.    Yes.
13      Q.    You picked him up at JFK Airport,
14 right?
15      A.    Yes.
16      Q.    And, in fact, Mr. Seo is the director
17 of National Security Office to the South Korean
18 president; is that right?
19      A.    I don't know what the title is.
20      Q.    That's a counterpart of National
21 Security Advisory in the United States?
22           MR. ZHU:  Is there a question?
23           MR. LIM:  I'm asking.
24      A.    Okay.  Yes.
25      Q.    Now, I'm not going to get into the

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                      Pages 86..89

**Page 86**

1  details, but in your memo you indicated where he
2  went?
3       A.    Yes.
4       Q.    Why did you do that?
5       A.    This is my diary.
6       Q.    Where the national security advisor to
7  the president, where he went is your diary?
8            MR. ZHU:  Objection.  That's
9  argumentative.
10      A.    I'm allowed to write anything I want in
11 my diary.
12      Q.    Did you tell anyone about this?
13      A.    No, I've never told anyone about it.
14 The only thing I did was to provide this diary
15 journal to my attorney.
16      Q.    You did not tell anyone because you
17 thought it was important, correct, not to tell
18 anyone, right?
19      A.    No, not because it was important.
20 Other than the private matter, I never recorded any
21 information in my journal.  I am saying because this
22 is my private diary, this is where I decided to write
23 down the information and other than in my diary, I
24 never divulged this information to anyone.
25           MR. LIM:  Okay.  We're going to take a

**Page 87**

1  five-minute break.
2            (Discussion off the record.)
3            (Recess taken.)
4  BY MR. LIM:
5       Q.    Now isn't it true that the president of
6  South Korea came here every year except for once,
7  right, since 2016 to 2021?
8       A.    Correct.
9       Q.    And when the president attended events,
10 the minister that you drove for also attended those
11 events, correct?
12      A.    I wouldn't know because I was not part
13 of the force who attended those events.
14      Q.    That's not my question.  My question
15 is, do you recall whether or not the ministers that
16 you drove for attended some events if not all, some
17 event that the president of South Korea attended?
18      A.    No.
19      Q.    Are you saying that the ministers never
20 attended events where the president of South Korea
21 ever attended?
22           MR. ZHU:  Objection.  Foundation.
23      A.    No.
24      Q.    Okay.  Have you -- strike that.
25            Did the ministers ever attend events

**Page 88**

1  where the heads of the states participated?
2       A.    Not to my recollection.
3       Q.    Did the ministers ever attend
4  international events where high ranking government
5  officials from other states participated?
6            MR. ZHU:  Objection.  Foundation.
7       A.    No.
8       Q.    Do you know the high-level week?
9       A.    Yes.
10      Q.    What is it?
11      A.    A week that has important events
12 scheduled.
13      Q.    In fact, this is related to United
14 Nations General Assembly, right?
15      A.    I was not really familiar with the
16 scheduled events.  I just went or drove wherever I
17 was told to go to.
18      Q.    I understand that.  I understand that.
19 My question to you is, the high-level week is an
20 event related to United Nations General Assembly,
21 right?
22      A.    Yes.
23      Q.    In fact, all of the heads of the
24 country would convene to attend that during the week,
25 correct?

**Page 89**

1            MR. ZHU:  Objection.  Foundation.
2       A.    I wouldn't know that.
3       Q.    In fact, it happens -- it goes on for
4  about a week or so, right?
5            MR. ZHU:  Objection.  Foundation.
6       A.    Yes.
7       Q.    And, in fact, it happens sometime in
8  September or October every year?
9       A.    Yes.
10      Q.    Isn't it true that ministers attended
11 those events during that week?
12      A.    Well, I don't know if the ministers
13 attended those events.  However, I certainly did not
14 attend any.
15      Q.    I understand that.  Did the ministers
16 attend those events?
17           MR. ZHU:  Objection.  Foundation.  He's
18 not there.
19      A.    I have never gotten a request to drive
20 somebody to those events.
21      Q.    Did you drive them -- so as you sit
22 here today, your testimony under oath is you never
23 went to any of those events?  Are you sure?
24      A.    Now, I have never told -- I have never
25 been told by my employer what type of event I was

# A-314

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                    **Pages 90..93**

**Page 90**

1  driving people to.  The only way I found out what
2  kind of events were happening was through newspapers.
3      Q.    Sir, see, now you're giving me a
4  narrative again.  I'm just asking a simple question.
5  If you don't know, you don't know.  Just say yes or
6  no.  Okay?
7            Now, you say you knew what the
8  high-level week was.  You said that.  Now, did you
9  attend any event -- did the ministers attend any
10  event during the high-level week?
11            MR. ZHU:  Objection.  Foundation.
12      A.    I do not know.
13      Q.    Then how did you come to know what the
14  high-level week was?
15      A.    From a newspaper.
16      Q.    You know that when the president of
17  South Korea came, did you ever follow the ministers
18  to inspect the route the president of South Korea was
19  going to take?
20      A.    Well, prior to any event I was never
21  told what type of event was going to take place.  As
22  long as I was told to drive them somewhere, I
23  followed that instruction and I drove them.
24      Q.    So, again, that wasn't my question.
25  Okay?  We're going to be here all day if you keep

**Page 91**

1  answering that way.
2            Let me ask you this:  Did you ever
3  drive the ministers or did you ever drive for the
4  ministers because the ministers had to inspect the
5  route that the president of South Korea was going to
6  take when he came here?
7            MR. ZHU:  Objection.  Foundation.
8      A.    I don't know because I was never
9  explained what my task was prior to being asked to do
10  a task.
11      Q.    I see.  Do you remember D-8?
12      A.    Yes.
13      Q.    You testified earlier that this is what
14  you wrote down, right?
15      A.    Correct.
16      Q.    Everything in there, right?
17      A.    Well, I was told what and how to write
18  it by the minister, so I followed that instruction.
19      Q.    Sir, again, don't give me the
20  narrative.  I'm asking you did you write it down,
21  that's my question.  Yes or no?
22      A.    Yes.
23      Q.    Okay.  Now, everything in here you
24  wrote it down, correct, meaning that's your
25  handwriting?

**Page 92**

1      A.    Yes.
2            MR. ZHU:  For the record, defense
3  counsel has a certain page -- defendant pulled out
4  some certain -- a certain page and put a document in
5  front of the witness.
6            MR. LIM:  We'll do that.  I don't know
7  what your problem is, counsellor.  We're showing him
8  the same document that you're seeing and I'm seeing.
9            MR. ZHU:  Can I know the Bates?
10            MR. KWAK:  Hold on, please.
11            MR. LIM:  All right.  Bates stamped No.
12  97.
13  BY MR. LIM:
14      Q.    This is the hours and notes that you
15  wrote down, correct?
16      A.    Correct.
17      Q.    I want direct your attention to the
18  entry dated September 11th.
19      A.    Okay.
20      Q.    You see that, sir?
21      A.    Yes.
22      Q.    And you're claiming that you worked
23  beyond the designated work hours this day, correct?
24      A.    Yes.
25      Q.    Because you went to 56th Street?

**Page 93**

1      A.    Correct.
2      Q.    And right below that you see VIP
3  related events?  You see that?
4      A.    Yes.
5      Q.    That's your handwriting?
6      A.    It's not my handwriting.
7      Q.    Whose handwriting is that?
8      A.    I don't know.
9      Q.    That VIP in fact is referring to the
10  president of South Korea, right?
11            MR. ZHU:  Objection.  Foundation.
12      A.    I presented what I wrote down and I
13  don't know with regard to the part that you're
14  talking about, I don't know how it's there.
15      Q.    You know that at the Mission the
16  president of South Korea is referred to as the VIP?
17  Tell the truth.  Right?
18      A.    No, the truth is that the president was
19  not called -- referred to as VIP.  They used some
20  other terminology.
21      Q.    What's the terminology?
22      A.    I can't recall it but it wasn't VIP.
23      Q.    Do you know whether or not then that
24  term VIP refers to someone else other than the
25  president?

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022**                                      **Pages 94..97**

---

**Page 94**

1    A.    No.  At the time I really was not
2  interested in anything like this.  I just drove when
3  I was asked to drive.
4    Q.    In fact, you got a security clear pass
5  to attend, to access the events during the high-level
6  week, correct?
7        MR. ZHU:  Objection.  Time frame.
8    A.    Correct.
9    Q.    All right.  You know that the Mission
10  spends months to prepare for the U.N. General
11  Assembly events, right?
12    A.    Like I said before, other than driving
13  for people who needed the transportation, other than
14  that, I was not privied to other information or not
15  interested in other information.
16    Q.    Okay.  Did you ever scout the U.N.
17  vicinity and president's route with the ministers?
18  In other words, when the ministers performed this
19  duty, did you give them a ride?
20    A.    Now, in the five years that I worked
21  for the Mission, I was never given a schedule for
22  that day or the purpose of my task.  What I was
23  privied to was once people got into my car, I would
24  be told what the immediate destination is but then I
25  wouldn't be told if there are other further

**Page 95**

1  additional destinations.  So only when people get
2  into my car, that's when I will know where I should
3  be taking them.
4    Q.    I understand.  But do you know at the
5  Mission there were other drivers besides you?
6    A.    A lot.
7    Q.    About four or five drivers?
8    A.    Yes.
9    Q.    And there was one driver for the
10  ambassador?
11    A.    Correct.
12    Q.    I'm not going to name who they are but
13  there are about four Korean drivers?
14    A.    Correct.
15    Q.    Okay.  And they were on rotation to
16  drive official vehicles, any official vehicle
17  available at the Mission, correct?
18        MR. ZHU:  Objection to the form.
19    A.    No.
20    Q.    Are you telling me that they drove your
21  vehicle?  You already testified that they never drove
22  your vehicle.
23    A.    Now, with regard to the car that I
24  drove, no one else drove it because it was designated
25  to me.

**Page 96**

1    Q.    Okay.  Now, do you know whether or not
2  these other drivers drove for your ministers?
3    A.    As far as I know, no.
4    Q.    Have you spoken with any of them since
5  you left the Mission?
6        MR. ZHU:  Objection.  Relevancy.
7    A.    No, never.
8    Q.    And these drivers, the four drivers
9  that we did not name, these drivers, their primary
10  responsibility was to pick up diplomatic pouches or
11  bags from the airport, right?
12        MR. ZHU:  Objection.  Foundation.
13    A.    I wouldn't know.
14    Q.    But you didn't do any of this, right,
15  picking up diplomatic pouch and bags from the
16  airport?
17    A.    That's correct.
18    Q.    In fact, you went to the airport by
19  yourself if the ministers were not available to pick
20  up ministers' guests at the airport, right?
21    A.    Never.
22    Q.    Never?
23    A.    Correct.
24    Q.    You always --
25    A.    It was always with somebody in the car.

**Page 97**

1    Q.    Okay.  Government officials?
2    A.    Correct.
3    Q.    Okay.  Do you know whether or not these
4  drivers that we did not name, did they have a
5  designated vehicle like you did?
6    A.    I don't know.
7    Q.    Do you know whether or not these
8  drivers signed the same pledge agreement as you did?
9    A.    I don't know that either.
10    Q.    Do you know whether or not these
11  drivers signed the employment contracts like you did?
12    A.    I don't know.
13    Q.    Do you know whether or not these
14  drivers went through a security clearance like you
15  did?
16        MR. ZHU:  I'll object to this line of
17  question as to relevance.
18    A.    I don't know.
19    Q.    Other than your counsel, did you
20  disclose or divulge any information you had learned
21  or acquired through the course of employment at the
22  Mission to your CPA or other professionals?
23    A.    No.
24    Q.    Now, you knew that according to South
25  Korean laws you were to retire at the age of 60,

---

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 98..101

Page 98

1  correct?
2       A.     Well, as far as under the Korean law
3  with regard to the short-term, for an employee who
4  signed the short-term contract, there is no age limit
5  as far as the retirement.
6       Q.     Sir, here is my question:  When you
7  began to work for the Mission, isn't it true that Mr.
8  Choi told you you would have to retire at the age of
9  60 according to Korean law?
10      A.     He didn't.
11      Q.     Did anybody ever tell you that you
12  should retire at the age of 60 according to South
13  Korean law?
14             MR. ZHU:  Objection.  Asked and
15  answered.
16      A.     That was Mr. Lee.
17      Q.     You mean the Minister Lee?
18      A.     Correct.
19      Q.     That's back in 2018?
20      A.     As far as I can remember, I believe it
21  was in 2019.
22      Q.     Okay.  In 2019, how old were you?  Were
23  you 58?
24      A.     What was the year?
25      Q.     Or 59, right?

Page 99

1       A.     We're talking about 2019, right?
2       Q.     Correct.
3       A.     Yes.
4       Q.     In fact, in 2019 you signed two
5  different contracts, right?
6       A.     Correct.
7       Q.     One was for a period of two or three
8  months?
9       A.     We're talking about 2019, right?
10      Q.     Yep.
11      A.     No, in 2019 I only signed one one-year
12  contract.
13      Q.     And you became 60 years old in 2020?
14      A.     Correct.
15      Q.     And when you became -- when you turned
16  60 years old, the Mission told you that according to
17  South Korean law, you have to retire?
18             MR. ZHU:  Objection.
19      Q.     Correct?
20             MR. ZHU:  Is there a question?
21      A.     Yes.
22      Q.     And then you then asked Mr. Jo who is
23  sitting here today because of the pandemic you could
24  not find a job elsewhere, therefore you asked the
25  Mission to extend your employment to extend the

Page 100

1  employment, correct?  Yes or no?
2       A.     Yes.
3       Q.     In fact, you told him that because of
4  the pandemic your wife is out a job, you cannot find
5  a job, so you asked the Mission to extend your
6  employment beyond 60 years old?
7             MR. ZHU:  Objection.  Asked and
8  answered.
9       A.     No.
10      Q.     Your wife had a job at the time?
11      A.     No, she lost her job due to the
12  pandemic.
13      Q.     I understand in 2020 during the
14  pandemic you could not find a job elsewhere, correct?
15      A.     Correct.
16      Q.     So you asked the Mission to extend the
17  employment and they did, right?
18             MR. ZHU:  Objection.  Asked and
19  answered.
20      Q.     Correct?
21      A.     Yes.
22      Q.     In fact, in order for you to get the
23  extension, the Mission had to get permission from
24  Korea, right?
25             MR. ZHU:  Objection.  Foundation.

Page 101

1       A.     Well, at the time Mr. Jo made requests
2  and I complied with those requests.  However, later
3  on I found out those requests were not honest or
4  truth, so that's why I objected.
5       Q.     Are you saying that the Mission never
6  contacted Korea to extend your employment?
7       A.     Well, I don't know that for sure,
8  however, at the time he told me that in order for my
9  employer to extend my employment, I was supposed to
10  follow a certain procedures.
11      Q.     I understand that.  That's not my
12  question.  My question is this:  You were told in
13  2019 that you had to retire at the age of 60,
14  correct?
15      A.     Correct.
16      Q.     And you asked for an extension,
17  correct?
18      A.     Correct.
19      Q.     And they granted you an extension about
20  14 months after they got permission from Korea; is
21  that right?
22             MR. ZHU:  Objection.  Foundation.
23      A.     Correct.
24      Q.     And, in fact, they told you that in
25  order to make an exception for you, they had to get

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                              Pages 102..105

Page 102

1   permission from Korea, correct?
2       A.      Correct.
3       Q.      In fact, they -- because you pled with
4   them that you could not find a job during the
5   pandemic, you said you need more time, correct?  Yes
6   or no?
7       A.      Yes.
8       Q.      Okay.  And it took a few months to get
9   permission from Korea to extend your employment,
10  correct?
11      A.      Correct.
12      Q.      Now, and for that you signed a
13  contract?
14      A.      Yes.
15      Q.      Now, and one of the requirements that
16  you had to comply with or that Mission requested was
17  in order for you to get an extension of your
18  employment was to sign an agreement that you're not
19  going to assert any claims with respect to your
20  termination at the Mission, correct?  We're going to
21  ask you the questions.  Just answer my question.
22  Correct?
23      A.      Correct.
24      Q.      Okay.  Now, while we're waiting for an
25  exhibit, while you worked at the Mission, you saw

Page 103

1   other people retiring from their job when they
2   reached the age of 60?
3       A.      Never.
4       Q.      You never saw anyone?
5       A.      No, I didn't see anyone who retired at
6   the age of 60.  However, I saw someone retiring at
7   the age of 62 and another person retiring at the age
8   of 61.
9       Q.      In this case, you're retired or
10  separated from the Mission at the age of 61 because
11  of extension, correct?
12      A.      Correct.
13      Q.      Okay.  Now, we're going to introduce
14  that exhibit.
15              MR. KWAK:  Exhibit 12.
16              (Defendant's Exhibit 12, Settlement
17          Agreement, was marked for identification.)
18              MR. ZHU:  I'll put on the record I'll
19  object to you introducing the settlement agreement
20  since it's already been concluded by the Court.
21              MR. LIM:  There was a pre-answer
22  motion.
23  BY MR. LIM:
24      Q.      Now, this is your signature, correct?
25  This is your name?

Page 104

1       A.      Correct.
2       Q.      And in order for the Mission to be able
3   to extend your employment, you were told that you had
4   to sign this, correct?
5       A.      Correct.
6       Q.      And according to this agreement, you
7   are not allowed or you agreed, you agreed not to
8   assert any claims with respect to your termination as
9   your employment ends on June 30, 2021?
10      A.      Correct.
11      Q.      And after you signed this, at the time
12  you signed this, you assured the employees at the
13  Mission that you would abide by this agreement,
14  correct?
15      A.      Well, once I signed this document,
16  someone took this document.  I was not immediately
17  given a copy, so it took about six months for me to
18  get a copy.
19      Q.      I understand that.  You got a copy of
20  it.  And at the time you signed this, you had every
21  intention in good faith to abide by this agreement,
22  correct?
23      A.      My understanding was that this
24  agreement would extend my employment for one year.
25      Q.      I understand that.  So according to

Page 105

1   Korean law you're supposed to retire in 2020 but your
2   employment was extended until June 30, 2021, correct?
3       A.      No, that's wrong.
4       Q.      What is wrong?
5       A.      Well, for an employee who signs a
6   yearly contract is not subject -- an employee who
7   signs a yearly contract is not subject to retirement
8   age.
9       Q.      Okay.  That's not my question.
10              My question is this:  According to this
11  contract when you signed it, you agreed not to assert
12  any claims related to your employment at the Mission,
13  correct?
14              MR. ZHU:  Objection.  It's not a fair
15  reading.
16      Q.      Okay.  Just answer my question.
17      A.      No.
18      Q.      What was your intention?
19      A.      My understanding of this agreement is
20  that any issues arising out of this one-year
21  extension I was not going to make any type of claims.
22      Q.      Okay.  So, after you separated from the
23  Mission, as you testified earlier, you were able to
24  find a job a month later, correct?
25      A.      Yes.

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 106..109

Page 106

1      Q.      Now, because of your separation from
2  the Mission, did you ever have to see a doctor or
3  take any medication?
4      A.      Yes.
5      Q.      Okay.  What's the name of the doctor?
6      A.      Dr. Haeyang Chung.
7      Q.      What kind of doctor is he?
8      A.      Internal.
9      Q.      Internist?
10     A.      Yes.
11     Q.      And did the doctor diagnose you that
12 whatever condition -- strike that.
13 (REQ)          MR. LIM:  We're going to make a request
14 for the production of medical records.  We'll send
15 you a medical authorization so you can sign off ON it
16 and produce the medical records.
17              MR. ZHU:  We'll take it under
18 advisement.
19 BY MR. LIM:
20     Q.      So, now, Mr. Nam, where is the doctor
21 in Jersey or New York?
22     A.      New Jersey.
23     Q.      Where is his office?
24     A.      On Broadway, Palisades Park.
25     Q.      And when was the first time you saw

Page 107

1  this doctor?
2      A.      I believe it was in or around June 20,
3  2021.
4      Q.      That was the first time you saw this
5  doctor?
6      A.      Correct.
7      Q.      Did you see any other doctor other than
8  this one?
9      A.      No.
10     Q.      Okay.  And what did the doctor tell
11 you?  Strike that.
12              What are the symptoms that caused you
13 to go see this doctor?
14     A.      I get depression.  Couldn't get a good
15 night sleep, anxiety and loss of motivation.
16     Q.      So if I look at your doctor's records,
17 will they show what you just testified?
18     A.      I don't know but the doctor gave me a
19 list of tests to have done.  However, at the time my
20 medical insurance was about to end, so because of the
21 financial situation, I didn't.
22     Q.      What are the tests that he recommended
23 that you undertake?
24     A.      Well, lung and heart test and endoscopy
25 and colonoscopy.

Page 108

1      Q.      Mr. Nam, did the doctor tell you that
2  your symptoms are related to your work experience at
3  the Mission?  Did he say that?
4      A.      No.
5      Q.      Did you take any medication afterwards?
6      A.      No.
7      Q.      Is there any professional that you can
8  produce in this case that will testify for you that
9  your medical conditions, your alleged medical
10 conditions are related to your experience at the
11 Mission?
12              MR. ZHU:  Objection.  It calls for a
13 legal conclusion and is subject to discovery.
14     A.      No.
15     Q.      Other than the one occasion you
16 described, did you see the doctor afterwards?
17     A.      Yes.
18     Q.      Is it related to your work experience
19 at the Mission?
20     A.      Yes, that's what I believe.  So because
21 I didn't get a clear answer from Dr. Chung, I went
22 for a second opinion.
23     Q.      Who is that second opinion?
24     A.      It was a non-Korean doctor.
25     Q.      What's the name of the doctor?

Page 109

1      A.      I don't remember because it was not a
2  Korean name.
3      Q.      What kind of doctor is he?
4      A.      I believe he was a general medicine.
5      Q.      Okay.  When did you see him?
6      A.      In August.
7      Q.      2000 what, '21?
8      A.      Yes.
9      Q.      What did you do?
10     A.      Blood tests, EKG.
11     Q.      Okay.  Did he tell you that whatever
12 symptoms you had at the time are related to your job
13 experience at the Mission?
14     A.      No, the doctor didn't say that.
15 However, I did explain my symptoms to my doctor.
16     Q.      What's the address of this doctor?
17     A.      Can I look at my phone?
18     Q.      Please.
19              MR. KWAK:  And if you can look for the
20 name too, please do.
21     A.      No, I can't find the name of the
22 doctor.  Sorry, I don't have the doctor's address
23 stored in my phone, so...
24     Q.      Do you know the town by any chance?
25     A.      West New York.

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                    Pages 110..113

Page 110

1    Q.    The name, please?
2    A.    I can't find it.
3    Q.    Okay.  Now, any other doctor that you
4    can name?
5    A.    So, in August I didn't get an answer
6    from my second doctor, so I went back to Dr. Chung in
7    December.
8    Q.    Okay.  And did the doctor tell you that
9    whatever symptoms you had at the time were caused by
10   or related to your experience at the Mission?
11   A.    I never talked about my work with the
12   doctor.  I only explained what my symptoms were.
13   Q.    Okay.  We're going to take a
14   five-minute bathroom break.  I'll be right back.
15         (Recess taken.)
16         (Defendant's Exhibit 13, handwritten
17         notes, was marked for identification.)
18   MR. KWAK:  I'm going to give him the
19   marked copy for now.  He'll use that and at the end
20   of the day, we'll take the original back.
21   BY MR. LIM:
22   Q.    Mr. Nam, we marked your handwritten
23   notes D-13.
24   A.    Okay.
25   Q.    These are the notes that you took

Page 111

1    during the course of deposition today, right?
2    A.    Yes.
3    Q.    And I'm going through, if you could
4    just read the first line to the translator so the
5    translator can translate for us, let's do that.
6    A.    Now, with regards to the first
7    paragraph that you see at the top of the paper, I had
8    originally written this before I came to deposition
9    today in order to remind myself how to or how not to
10   answer.  So when I wanted to talk about this with my
11   attorney, my attorney stopped me from speaking with
12   him about it during the deposition.  So, other than
13   that, the other paragraphs below that are the
14   subjects that came out today which I hadn't discussed
15   prior to today, so I decided to write a note.
16   Q.    Okay.  What was your intention in
17   taking these notes?  Were you going to send this to
18   someone else outside of this proceeding?
19   A.    No, just to remind myself.
20   Q.    Mr. Nam, I just have to respectfully
21   remind you of the confidentiality order signed by
22   Judge Nathan and the pledge agreements you signed.
23   A.    Yes.
24   Q.    You are not allowed to talk to anyone
25   not authorized to know certain information.

Page 112

1    A.    Okay.
2    Q.    In fact, you cannot contact the media
3    to disclose the information that has been deemed
4    confidential or top secret or classified information.
5    Do you understand that, sir?
6    A.    I do.
7    Q.    If you violate that, there will be some
8    legal consequences.
9    A.    Okay.
10   Q.    Now, let's come back to this note.  I'm
11   not going to go over everything and I want you to
12   read the statement that you made next to No. 3.
13   A.    "I worked as a chauffeur to" --
14         THE INTERPRETER:  May the interpreter
15   ask one word, please?
16         MR. LIM:  Official vehicle, you already
17   translated.
18   A.    -- "and I drove the official vehicle.
19   I was not a personal driver."
20   Q.    Okay.  In fact, that's your testimony
21   throughout the proceeding today?
22   A.    Correct.
23   Q.    Okay.  And how about the next?
24   A.    "Because I did not receive any specific
25   security related training, it's difficult for me to

Page 113

1    answer specific questions."
2    Q.    That's the note that you made for
3    yourself, correct?
4    A.    Correct.
5    Q.    So you were going to answer according
6    to this quote guideline?
7    A.    No.  After that is deposition was over,
8    I didn't want to forget about the dep today, so I
9    made a note to remind myself.
10   Q.    Once again, I'm going to -- we marked
11   it but don't discuss certain information with anyone
12   outside of this litigation, please.
13         MR. ZHU:  Objection.  No question
14   pending.
15   A.    Understood.
16   Q.    That includes your friends, okay?  Do
17   you understand that, sir?
18   A.    Yes.
19   Q.    After you left the Mission, you were
20   supposed to be paid a severance according to South
21   Korean law, correct?
22   A.    Correct.
23   Q.    In fact, the Mission offered to pay you
24   a severance according to the South Korean law
25   calculation, correct?

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 114..117

**Page 114**

1       A.      Correct.

2       Q.      In fact, you did not come and pick up

3   the check, correct?  Yes or no?

4       A.      I did, once.

5       Q.      When did you come to pick up the check?

6       A.      I believe it was in or around June

7   29th.

8       Q.      June 29, 2021?

9       A.      Yes.

10      Q.      Okay.  What time did you come?

11      A.      Around 11 a.m.

12      Q.      Okay.  Who did you talk to?

13      A.      Mr. Chung and Mr. Kim.

14      Q.      And at the time you were not even

15  terminated by the Mission?

16      A.      Correct.

17      Q.      So it's not that you came to pick up

18  the check after you left the Mission, you were still

19  working for the Mission at the time, correct?

20      A.      Correct.

21      Q.      So, now, are you saying that at the

22  time you were still working at the Mission, the

23  Mission offered you a severance?

24      A.      I was told to visit the Mission because

25  they wanted to talk to me about something.

**Page 115**

1       Q.      Okay.  And you just testified that you

2   came to pick up the check for the severance, correct?

3       A.      That's what I was thinking.  I was

4   thinking maybe they are trying to give me a check for

5   the severance pay.

6       Q.      Okay.  My question is this:  Did anyone

7   tell you at the time that you would pick up the

8   check, you would be paid severance today on June 28th

9   or June 29th?

10      A.      No.

11      Q.      So then listen to my question, sir.

12  After you left the Mission, did anyone offer you a

13  severance, yes or no?

14      A.      I mean, there was no specific

15  instruction as to when the check was going to be

16  paid, however, there was a discussion about how it

17  was going to be paid.

18      Q.      Okay.  And, in fact, isn't it true that

19  Mr. Jo sitting here today contacted you via Kakao

20  Talk asking you to come and pick up the check for the

21  severance which was calculated according to South

22  Korean law, correct?

23      A.      No, Mr. Jo never send me a message and

24  Mr. Kim never asked me to do that either.

25      Q.      Did anyone at the Mission ask you to

**Page 116**

1   come and pick up the check for the severance?

2       A.      No.

3       Q.      Never?

4       A.      Correct, no.

5       Q.      And your testimony is as you sit here

6   today I want to pick up the check but I was advised

7   not to pick up the check?

8       MR. ZHU:  Objection to the form.

9       Q.      Is that right?

10      A.      Well, I was never advised not to do

11  that.  However, I was told that the severance pay

12  would be paid in check.  However, I didn't end up

13  receiving one.

14      Q.      Again, now, listen to me.  So you were

15  told by someone at the Mission to pick up the check

16  for the severance, correct?  Yes or no?

17      A.      No.

18      Q.      Never?

19      A.      No.

20      Q.      So no one ever told you to receive a

21  check for severance?

22      MR. ZHU:  Objection.  Asked and

23  answered.

24      A.      Correct.

25      MR. LIM:  We're going to mark an

**Page 117**

1   exhibit.  Just wait.  We're going to print it out.

2       (Pause in the proceedings.)

3       (Defendant's Exhibit 14, text messages,

4       were marked for identification.)

5       MR. LIM:  All right.  Let's show him

6   D-14.

7   BY MR. LIM:

8       Q.      Mr. Nam, I just presented to you what's

9   been marked as D-14.  These are the text messages

10  that you exchanged with Mr. Kim who is present in

11  this proceeding today.

12      MR. ZHU:  Put on the record our

13  objection.  This document was not produced any time

14  before today.

15      MR. LIM:  It's for impeachment purposes

16  only.  So we can go ahead.

17      Q.      Now, Mr. Nam, you recognize these text

18  messages, correct?

19      A.      Yes.

20      Q.      In fact, you exchanged these messages

21  with Mr. Kim, correct?

22      A.      Yes.

23      Q.      In fact, at the top of the page and

24  Mr. Kim told you that severance pay is now available,

25  we wanted to check the message.  Do you see that text

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 118..121

Page 118

1    message, sir?
2        A.    Yes.
3        Q.    And in fact you responded to that
4    saying I cannot call you for some reason, right?
5        A.    Correct.
6        Q.    In fact, and then Mr. Kim in response
7    to that said "Do you want me to call you tomorrow?"
8    Correct?
9        A.    Yes.
10       Q.    You say yes to that?
11       A.    Yes.
12       Q.    And Mr. Kim on July 14 at 11:20 a.m.,
13   he text you again "When you're available, please call
14   me." Correct?
15       A.    Correct.
16       Q.    In response to that you said "My phone
17   is not working well.  Call me now." Correct?
18       A.    Yes.
19       Q.    And on July 29, 9:29 a.m., Mr. Kim
20   texts you again saying "Mr., when are you coming to
21   pick up the check for severance?"  Correct?
22       A.    Yes.
23       Q.    So you got this text, correct?
24       A.    Yes.
25       Q.    Now, Mr. Nam, why did you say -- why

Page 119

1    did you lie earlier that Mr. Kim never contacted you
2    about severance?
3        A.    You know, I mean, it was never verbally
4    communicated.  What I was trying to say was that I
5    was told multiple times the severance pay was
6    available, however, I was not given a specific date
7    as to when the severance check would be available.
8        Q.    In fact, if you turn to the next page,
9    you said on July 29, "I'll go see you on Monday or
10   Tuesday because I'm in Maryland right now."  Do you
11   see that text?
12       A.    Yes.
13       Q.    And then Mr. Kim responded to you
14   saying "Okay.  I'll see you then."  Do you see that?
15       A.    Yes.
16       Q.    But you never went there on that day,
17   correct?
18       A.    Correct.
19       Q.    And August 2nd at 1:50 p.m. Mr. Kim
20   texts you again "Can I speak to you?"
21       A.    Yes.
22       Q.    You said "in 40 minutes," correct?
23       A.    Yes.
24       Q.    And Mr. Kim then said "I'll call you to
25   discuss your severance at the time."  Do you see

Page 120

1    that?
2        A.    Yes.
3        Q.    You said "Understood." Correct?
4        A.    Yes.
5        Q.    Now, on August 13th Mr. Kim texts you
6    again "Please let me know your account information so
7    that I can send you severance payment information."
8    Do you see that?
9        A.    Yes.
10       Q.    You responded to that saying you're
11   fishing, correct?
12       A.    Yes.
13       Q.    And Mr. Kim asked you "Are you not
14   coming to pick up the check for severance?"
15       A.    Correct.
16       Q.    He asked you again?
17       A.    Yes.
18       Q.    You said "Thank you for taking care of
19   this matter."  Do you see your text there?
20       A.    Yes.
21       Q.    Right?
22       A.    Correct.
23       Q.    And you said "I can give you my wire
24   transfer information," correct?
25       A.    Yes.

Page 121

1        Q.    In response Mr. Kim said "Let me know
2    so that I can wire it," correct?
3        A.    Yes.
4        Q.    You did not provide your wiring
5    information, did you?
6        A.    Correct.
7        Q.    So, once again, Mr. Nam, look me in the
8    eye, why did you lie that no one at the Mission
9    contacted you about severance?
10       A.    I never said no one contacted me.  I
11   said that I never received a specific information as
12   to when and where I would be receiving the severance
13   check.
14       Q.    When Mr. Kim time and time again asked
15   when you coming to pick up the check, what's your
16   wire information, did you ever provide your wire
17   information in response?
18            MR. ZHU:  Objection.  Argumentative.
19   The documents speaks for itself.
20       A.    Well, you're insisting that I avoided
21   picking up the check.  However, I'm just trying to
22   explain my situation to you what my situation was at
23   the time.  I was in Maryland and since I was not in
24   New Jersey, I was going to -- and then I was told
25   that once I come to New Jersey, the severance pay

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 122..125

Page 122

1  would be paid, however, I was never given information
2  as to when and where I should pick up the check.
3      Q.      On August 17 when Mr. Kim asked you
4  about your wire information so they can wire it, you
5  never provided that information, did you?  Did you or
6  did you not?
7      A.      No.
8          MR. ZHU:  Objection.  Let the witness
9  speak.  You have to let the witness speak.
10     Q.      Now, later on you said you don't know
11 Mr. Kim's email address, correct?
12     A.      Yes.
13     Q.      But you do know his email address,
14 correct?
15     A.      Well, I received his email address once
16 and I sent him an email.  However, at some point that
17 email along with other emails just disappeared from
18 my records.  So I contacted Microsoft and I found out
19 those information -- those emails were gone.
20     Q.      Then Mr. Kim asked you again "What is
21 your home address so that we can mail it?"
22     A.      Yes.
23     Q.      Now, he asked you what your bank
24 account information was; you never did provide it.
25 He asked you what your mailing address was; you never

Page 123

1  provided, correct?  Correct?  Did you?
2      A.      Yes, I did once.
3      Q.      Okay.  Show me your text.
4      A.      My recollection is that when we were on
5  the phone, I gave him my address.
6      Q.      So it must be after August 17.
7          MR. ZHU:  Is there a question?
8      Q.      Correct?
9      A.      No, they knew my address.  I don't
10 remember ever receiving any emails from Mr. Kim,
11 however, I may have mailed a letter with my address
12 in it.
13     Q.      In response to Mr. Kim's last text
14 which is on August 17, did you respond to this?  When
15 he asked you whether or not he should mail it to your
16 home address, did you respond to that?
17     A.      I had a phone call afterward and I told
18 him to send it.
19     Q.      Okay.  Now, do you have the same phone
20 with you?
21     A.      No, I don't have the same phone with me
22 but using my previous phone, that's what I said.
23     Q.      When did you change your phone?
24     A.      In September.
25 (REQ) Q.      I want you to produce phone records

Page 124

1  showing that you contacted Mr. Kim after August 17,
2  2021.  If you lied, you are committing perjury here.
3          MR. ZHU:  Objection.  Argumentative.
4  Is there a question pending?
5          MR. LIM:  Yes.
6      Q.      Do you understand that, sir?
7      A.      How am I going to find the recording of
8  our conversation?
9      Q.      I want you to contact your phone
10 company, get a phone record for the month of August
11 2021.
12         MR. ZHU:   Objection.  No question
13 pending.
14         MR. LIM:  Okay, I'm telling him.
15     Q.      And produce the record that
16 indicates --
17         MR. LIM:  Please --
18         MR. LIM:  Excuse me, I'm speaking.
19     Q.      What did you say just say, sir?  What
20 did you just say?
21     A.      Why the heck --
22         MR. LIM:  Go off the record.
23         (Discussion off the record.)
24         MR. ZHU:  Now we're back on the record.
25 Put on the record, please ask the question.  Do

Page 125

1  not harass my client.
2  (REQ) Q.  Excuse me.  Please produce a phone record
3  that indicates that you did speak to Mr. Kim after
4  August 17.  Okay?  We're going to follow up on this
5  request.
6          MR. ZHU:  We take it under advisement
7  and we request that request to be put in writing.
8      Q.      Can you explain to me why you did not
9  go the following Monday or Tuesday as you promised
10 you would according to your text?
11     A.      Now, at the time my plan was to go to
12 New Jersey, however, I got busy with other matters in
13 Maryland.
14     Q.      Did you notify the Mission that you
15 cannot make it either on Monday or Tuesday?
16     A.      I don't recall.  I may have.
17         MR. LIM:  Give me five minutes.  I'm
18 going to review my questions and maybe we'll be done.
19         (Recess taken.)
20 BY MR. LIM:
21     Q.      Mr. Nam, did you know or do you know
22 that according to South Korean laws even if you sign
23 a contract for a term of one year, if you end up
24 working more than two years, you are required to
25 retire at the age of 60?  Did you know that or do you

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Pages 126..129

Page 126

1  know that?
2        A.    Yes.  Now, at the time I didn't know
3  about it but at some point I saw on the Internet that
4  if I worked for more than two years, then I would be
5  subject to age 60 retirement requirement.  This was a
6  one-year contract.
7  (DIR)    Q.    And did you ever consult a lawyer
8  in Korea whether or not if you end up working for
9  more than two years even if you have a one-year
10 contract, you are required to retire at the age of
11 60?
12            MR. ZHU:  Objection as privileged
13 information.  I instruct my client to not answer.
14            Do not answer.
15            MR. KWAK:  That is not privileged.
16            MR. LIM:  That's not privileged.
17            MR. KWAK:  Do not answer.
18            MR. LIM:  Hold on.
19 (DIR)    Q.    I'm not asking what the attorney
20 told you.  Did you ever contact a lawyer?  That's my
21 question.
22            MR. ZHU:  Do not answer.
23            MR. LIM:  No, that's -- don't do that.
24            MR. ZHU:  I already did.
25            MR. KWAK:  Whether someone contacted --

Page 127

1            MR. LIM:  Contacted is not privileged
2  information.
3            MR. ZHU:  You have the substance.
4            MR. KWAK:  Their discussion is --
5            MR. ZHU:  That is substance.
6            MR. KWAK:  It's contacting a lawyer to
7  seek legal advice.  That's it.
8            MR. LIM:  We're going to rephrase the
9  question.
10           MR. ZHU:  Rephrase the question.
11 BY MR. LIM:
12       Q.    Did you ever contact a lawyer in Korea?
13           MR. ZHU:  Don't put a subject.
14       Q.    Did you ever contact a lawyer in Korea
15 to find out about the labor laws?
16       A.    No.
17       Q.    So all your knowledge of South Korean
18 labor law is based on what you saw on the Internet?
19       A.    Yes.
20       Q.    Okay.  So as you sit here today, is
21 this the first time you ever heard that in Korea even
22 if you have a one-year contract, if you end up
23 working more than two years, the mandatory retirement
24 age would apply?  This is the first time you heard
25 it?

Page 128

1            MR. ZHU:  Objection.  Foundation.
2        A.    Now, this was not a legal consultation
3  but what I saw on the Internet was just a question
4  and answer and the answer was with regard to somebody
5  working more than two years under a one-year
6  contract, automatically that employment would be
7  considered the long-term contract and that employee
8  would be under the mandatory retirement age.
9        Q.    Okay.  There is no question pending.
10           MR. ZHU:  You have to let the witness
11 finish.  He hasn't finished.
12       Q.    Go ahead.
13       A.    However, it said additionally that if
14 you are under a one-year contract, then this doesn't
15 apply to you.  That's what it said.
16       Q.    That's what the Internet says?
17       A.    Yes.
18       Q.    You don't know the author of that, do
19 you?
20       A.    So this was somebody who works for the
21 labor department in Korea and that person was
22 answering a question.
23       Q.    Do you know the name of the person?
24       A.    I do not know.
25           MR. LIM:  Mark this.

Page 129

1        (Defendant's Exhibit 15, letter from
2        the Ministry of Foreign Affairs of the
3        Republic of Korea, was marked for
4        identification.)
5        Q.    Well, Mr. Nam, you just testified that
6  when you checked someone at the Department of Labor
7  via Internet, the answer you received was it really
8  depends on the policy of the organization that you
9  work for, correct?
10       A.    Yes, as far as I can remember, that's
11 what it said.
12       Q.    Okay.  According to the internal
13 policies of the Mission, are you aware that according
14 to Article 62 retirement age is at 60?
15           MR. ZHU:  Objection.  Foundation.
16       Q.    Do you know that?
17       A.    I didn't know about it.
18       Q.    Now, if you look at Article 64, it
19 shows how severance should be paid.  And do you know
20 whether or not the severance you have not picked up
21 yet -- strike that.
22       Q.    Do you know that the severance you have
23 not picked up yet has been computed based on Article
24 64?
25       A.    I didn't know about it.  I thought it

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                      Pages 130..133

Page 130

```
 1  was calculated based on the calculation that appears
 2  on my employment contract.
 3       Q.    Isn't it true that Mr. Jo here also
 4  told you that according to this internal policy, the
 5  Ministry of Foreign Affairs Guidelines, you had to
 6  retire at the age of 60?  Didn't they tell you that,
 7  correct?
 8       A.    Yes.
 9       Q.    Nothing further.
10             MR. ZHU:  I have a few follow-up.
11  Redirect.
12  EXAMINATION
13  BY MR. ZHU:
14       Q.    Earlier you said you need to clarify a
15  question concerning whether any driver drove the car
16  you being assigned.  You said you have something to
17  clarify.  Can you speak it now?
18       A.    I was told that the official vehicle
19  shall be used for official purposes only and I
20  strictly abide by that rule.  And, however, from time
21  to time when I had to go to work not for work
22  purposes, on weekends, I did use that vehicle.
23       Q.    I put what's in front of you D-2, Bates
24  stamped 19.  Earlier you said you have something to
25  say about minister's signature.  What are you about
```

Page 132

```
 1       Q.    All right.  I have no further
 2  questions.
 3             MR. LIM:  Okay.  Thank you.
 4             (Witness excused.)
 5             (Time noted:  3:54 p.m.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 131

```
 1  to say at that time?
 2       A.    Are you talking about the signature of
 3  Mr. Ko?
 4       Q.    Yes.
 5       A.    No, I have nothing to say about that
 6  signature.
 7       Q.    Okay.
 8       A.    I mean, I wanted to say that prior to
 9  signing this document, I didn't have sufficient time
10  to read and understand this document and therefore I
11  didn't fully understand the content of this document.
12  However, my signing this document was more of a
13  reactionary -- it was reactionary more than anything
14  else.
15       Q.    Earlier you gave some testimony about
16  the national interests of the Republic of Korea.  Can
17  you specify your understanding of the national
18  interests of the Republic of Korea, what does that
19  mean?
20       A.    I never really thought about national
21  interests, I just focused on what I could do as far
22  as what I was -- as far as the test that I was given
23  and so I drove an official car.  I assisted these
24  officers by driving them and I believe that's how I
25  was helping the national interest.
```

Page 133

```
 1             C E R T I F I C A T E
 2  STATE OF NEW YORK   )
 3                      :ss.
 4  COUNTY OF NEW YORK  )
 5
 6             I, CELESTE A. GALBO, a Registered
 7  Professional Reporter, Register Merit Reporter and
 8  Notary Public of the State of New York and State of
 9  New Jersey, do hereby certify:
10             THAT HYUNHUY NAM the witness whose
11  deposition is hereinbefore set forth, was remotely
12  duly sworn by me and that such deposition is a true
13  record of the testimony given by the witness.
14             I further certify that I am not related
15  to any of the parties to this action by blood or
16  marriage, and that I am in no way interested in the
17  outcome of this matter.
18             IN WITNESS WHEREOF, I have hereunto set
19  my hand this 28th day of February 2022.
20
21
22
23             CELESTE A. GALBO, RPR, RMR
24
25
```

# A-325

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
**Hyunhuy Nam on 02/22/2022                         Pages 134..136**

**Page 134**

1            DEPOSITION ERRATA SHEET

2    Case Caption:  Hyunhuy Nam vs. Permanent Mission of
     the Republic of Korea to the United Nations

3

          DECLARATION UNDER PENALTY OF PERJURY

4

5         I declare under penalty of perjury that I have
6    read the entire transcript of my Deposition taken in
7    the captioned matter or the same has been read to me,
8    and the same is true and accurate, save and except
9    for changes and/or corrections, if any, as indicated
10   by me on the DEPOSITION ERRATA SHEET hereof, with the
11   understanding that I offer these changes as if still
12   under oath.

13       _____

14            HYUNHUY NAM

15   Subscribed and sworn to on the ____day of _____,

16   20__ before me.

17

18   _____

19   Notary Public,

20   In and for the State of New York

21   _____

22

23

24

25

**Page 136**

1            DEPOSITION ERRATA SHEET

2    Page No.___Line No.___Change to:_____

3    _____

4    Reason for change:_____

5    Page No.___Line No.___Change to:_____

6    _____

7    Reason for change:_____

8    Page No.___Line No.___Change to:_____

9    _____

10   Reason for change:_____

11   Page No.___Line No.___Change to:_____

12   _____

13   Reason for change:_____

14   Page No.___Line No.___Change to:_____

15   _____

16   Reason for change:_____

17   Page No.___Line No.___Change to:_____

18   _____

19   Reason for change:_____

20   Page No.___Line No.___Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____DATE:_____

25

**Page 135**

1            DEPOSITION ERRATA SHEET

2    Page No.___Line No.___Change to:_____

3    _____

4    Reason for change:_____

5    Page No.___Line No.___Change to:_____

6    _____

7    Reason for change:_____

8    Page No.___Line No.___Change to:_____

9    _____

10   Reason for change:_____

11   Page No.___Line No.___Change to:_____

12   _____

13   Reason for change:_____

14   Page No.___Line No.___Change to:_____

15   _____

16   Reason for change:_____

17   Page No.___Line No.___Change to:_____

18   _____

19   Reason for change:_____

20   Page No.___Line No.___Change to:_____

21   _____

22   Reason for change:_____

23   Page No.___Line No.___Change to:_____

24   _____

25   Reason for change:_____

# EXHIBIT 3

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                      Defendant's Motion for Summary Judgment

**A-327**

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

HYUNHUY NAM,

                 Plaintiff,

      -against-

                    Case No. 1:21-cv-06165-AJN

PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE
UNITED NATIONS,

                 Defendants.

------------------------------------------------X

                   136-20 38th Avenue
                   Flushing, New York

                   April 4, 2022
                   10:25 A.M.

   DEPOSITION of JO JINHO, a non-party witness on

behalf of the Defendant herein, taken by the

attorneys for their respective parties, pursuant

to Notice, held at the above time and place before

Maria Lemmo, a Stenotype Reporter and Notary Public

within and for the State of New York.

```
                                                                    2
 1   A P P E A R A N C E S:

 2

 3   HANG & ASSOCIATES, PLLC
     Attorneys for Plaintiff
 4        136-20 38th Avenue, Suite 10G
          Flushing, New York 11354
 5
     BY:  SHAN ZHU, ESQ.
 6        YONGJIN BAE, ESQ.

 7
     KIM, CHO &  LIM, LLC
 8   Attorneys for Defendant
          460 Bergen Boulevard, Suite 305
 9        Palisades Park, New Jersey 07650

10   BY:   JOSHUA S. LIM, ESQ.

11

12

13

14   ALSO PRESENT:

15   SEAN KIM, Korean Interpreter
     Eiber Translations
16

17

18

19

20

21

22

23

24

25
```

3

1

2    S E A N   K I M, the Korean Interpreter herein,

3    was duly sworn to interpret the questions from

4    English into Korean and the answers from Korean

5    into English, to the best of his ability:

6    J O   J I N H O, the witness herein, having been

7    duly sworn through the Interpreter, was examined

8    and testified as follows:

9    EXAMINATION BY

10   SHAN ZHU, ESQ.:

11       Q.   What is your name, please?

12       A.   Jo Jinho.

13       Q.   What is your address?

14       A.   335 East 45th Street, New York, New York

15   10017.

16       Q.   Mr. Jinho, my name is Shan Zhu.  I'm

17   counsel for Mr. Nan.  Are you familiar with this

18   person?

19       A.   Yes, I'm aware of him.

20       Q.   Are you aware a few weeks before your

21   attorney has conducted Mr. Nan's deposition?

22       A.   Yes.

23       Q.   Is that true you were physically present

24   in that deposition as well?

25       A.   Which deposition?

8

```
 1                    J. Jinho
 2  various topics that the UN meetings deal with,
 3  topics such as politics, economy, cultural
 4  climate change, et cetera, these were the topics
 5  that UN deals with.  Among them, I work with
 6  specifically the politics related work so that's
 7  where I am involved with in terms of
 8  participation among the variety of meetings that
 9  take place there.
10     Q.   Is there any other individual who has
11  been assigned to work on political affairs with
12  you concerning the meetings with UN?
13     A.   Mr. Hyunhuy Nam, when he did the work as
14  he took care of the Ministers, those Ministers did
15  the same type of work that I did as a team, same
16  team.
17     Q.   Can you spell the name of Mr. Nam that
18  you just testified?
19         MR. LIM:  I think we can stipulate that
20         it was the name of the Plaintiff.  Mr. Nam,
21         that he mentioned is actually the Plaintiff
22         in the pleading.  He's referring to the
23         Plaintiff, H-Y-U-N-H-U-Y and N-A-M is his
24         last name.
25     Q.   Earlier you said Mr. Nam, are you
```

10

1               J. Jinho

2       A.    Got it.

3       Q.    You' re free to talk with him while

4   you' re off the stand or excused as a witness.  It

5   should not impair your ability to talk with him;

6   are we clear about this?

7       A.    Yes, got it.  I would like to see my

8   record the confirm whether the spelling is

9   C-H-U-N-G or J-U-N-G.

10      Q.    You need to refer to a certain record.

11  Do you have any idea of what this record would

12  look like?

13          MR. LIM:  You first named him as a

14      defendant.  It got dismissed.

15          MR. ZHU:  It' s C-H-U-N-G.

16      A.    Complaint.

17      Q.    Back to the boss Minister maybe the last

18  name is Chung or Jung, can you tell me why you

19  refer to him or her as the boss Minister?

20      A.    So this Minister, his work is something

21  that requires high level security.  So therefore,

22  as according to the Republican of Korean' s law,

23  he is categorized as a high level Minister of the

24  government.  So therefore, Mr. Nam, his work was

25  to support someone who needed a high level

12

1              J. Jinho

2       stipulated the boss Minister the witness is

3       referring to his last is name C-H-U-N-G.

4       Q.   So the question will be does Mr. Chung,

5  earlier you said the instruction, would those

6  instructions include your working schedule?

7       A.   What exactly is the work schedule by

8  your definition, please?

9       Q.   When I say working schedule, that means,

10 when you're supposed to start work, when you're

11 supposed to leave work in a given week, Monday,

12 Tuesday, Wednesday, Thursday, Friday; were those

13 instructions including your working schedules?

14      A.   So basically as far as this type of work

15 related issues, we follow the Korean law, Korean

16 principles, so when one goes to vacation, we're

17 supposed to let them know beforehand giving

18 notification.  And as far as the schedule part,

19 first of all, in general, the general practice is

20 we have to follow the general practice.  However,

21 specifically depending on the real circumstances

22 of the day or time, we would discuss with Mr.

23 Chung the specific schedule together and based on

24 his instruction, it was followed.  Based on his

25 decision, it was followed.

16

1              J. Jinho

2          MR. ZHU:  If he don't understand --

3          MR. LIM:  I just ask for clarification.

4      If the answer is fuzzy, I'll ask for

5      clarification.

6      A.    Could you repeat that?

7      Q.    Let me try another way to the extent of

8  your knowledge as to those instructions.  Is there

9  any time that those instructions include when Mr.

10  Nam should report to work?

11      A.    When to report to work?

12      Q.    Yes.

13      A.    So basically as far as Mr. Nam's time to

14  report to work and time to go home hours,

15  basically his work schedule you're asking, it was

16  already decided by the Korean law system as well

17  as general practice.  Although, if there's some

18  task that needed to be done quickly and Mr. Nam

19  needed to come to work quickly, in those types of

20  cases, Minister Chung would tell directly to Mr.

21  Nam about it and that was what happened except

22  because we are the same team, we were aware that

23  that's the day that some important stuff is

24  happening so he's reporting to work early, so we

25  are kind of aware of it as well.

21

1              J. Jinho

2          MR. LIM:  Let's spell the names

3      correctly.  As defendant's counsel, I would

4      be more than happy to stipulate that Mr. Nam

5      worked for several Ministers in the past,

6      besides Mr. Chung who is also the Minister.

7      The names are as follows, I believe Mr. Nam

8      testified under oath last month, I believe

9      the first Minister he worked for from 2016

10     to 2017 B-O-N-G W-O-O K-O.  The second

11     Minister Mr. Nam worked for was J-E-O-N-G,

12     J-A-E  L-E-E, that's his last name.  I

13     believe he worked for this Minister Lee from

14     2018 through 2019 or whatever the contract

15     provides.  Then the third Minister he worked

16     for was K-Y-U-N-G Y-U-L H-A-N.  These are

17     the Ministers Mr. Nam worked for in the

18     past.  Beginning from 2016 and I believe

19     Minister Chung.

20          I want to clarify the record.  I'll be

21     happy to stipulate that Mr. Nam worked for

22     several Ministers the names of which were

23     announced a minute ago.  The sequence in

24     terms of who he worked for and when he

25     worked for, I believe, the sequence goes

22

```
1                    J. Jinho
2        something like this Minister Ko first and
3        Minister Han next and Minister Lee third and
4        Minister Chung last.  So Mr. Nam worked for
5        these Ministers in the manner that I just
6        indicated.  Are we clear about this?
7            MR. ZHU:  Yes.
8            MR. LIM:  I'll be more than happy to
9        stipulate.
10       Q.   While you and Mr. Nam working as a team,
11   can you describe Mr. Nam's job function?
12       A.   So Mr. Nam was doing the task of
13   supporting the foreign affairs Minister, such as
14   Minister Chung, who required high level security,
15   and since Minister Chung is someone who is
16   categorized as a high level officer and Mr. Nam
17   was the head.  Mr. Nam had no other choice but to
18   come to know where Minister Chung is going, with
19   whom he is meeting with and what kind of
20   conversation he's having with that other person,
21   in what location.  Since that was what he was
22   doing and because Mr. Nam had this special
23   characteristic of a job that he would be able to
24   find out information such as top secret
25   information, classified information in the process
```

**A-336**

23

```
 1                    J. Jinho
 2    of working with Minister Chung.  So therefore,
 3    Mr. Nam needed a separate security clearance from
 4    us.  From the time of the employment, Mr. Nam was
 5    required to the background check, of course with
 6    his agreement to that and every year that is why
 7    we required his signature for renewed security,
 8    security pledges and because of that his job
 9    function -- you told me to make it brief earlier,
10    but could I add to that --
11            MR. ZHU:  Please go ahead.
12        A.   For example because Mr. Nam' s job
13    required this type of high level security, to
14    give an example let' s say if a cabinet level VIP
15    is visiting from the Republican of Korea, Mr.
16    Nam' s car was used to give transportation for
17    such individual in the same car with Minister
18    Chung, and of course because of security reason
19    I cannot reveal of this information, but at one
20    point Mr. Nam directly drove national security
21    advisor to the president himself even.
22        Q.   Isn' t Mr. Nam' s function as a driver of
23    Ministers although he often time need a security
24    clearance from time to time?
25        A.   Well, the responsibility of Mr. Nam' s,
```

24

1                          J. Jinho

2     yes, his main job is the vehicle operation of

3     Minister, that was what he was assigned to do as

4     his main job, but other than that what is

5     included in this contract is diplomatic protocol

6     work admission work is also included as well.

7               MR. LIM:  Objection to the translation.

8          He used to word designated.

9          A.   Who drove was the designated Minister's

10    vehicle.

11              MR. LIM:  Are we clear that we have a

12         correct translation that he was a driver for

13         the designated Minister's vehicle?  Off the

14         record.

15              (Whereupon a discussion was held off the

16         record.)

17              MR. LIM:  We have pre-marked certain

18         exhibits which were used for Mr. Nam's

19         deposition.  To avoid confusion, we would

20         rather use the same exhibits so that we're

21         referring to the same documents we can

22         stipulate --

23              MR. BAE:  We will call it Plaintiff's 1.

24              MR. LIM:  I thought we already marked it

25         as P1.  Why don't you refer to it as P1 so

33

1                    J. Jinho

2      lay the foundation.

3      A.   I don't mean that at all.  My point is

4   this: what I was pointing out was Mr. Nam's work

5   hours, whether it's overtime hours or whatnot, it

6   was an honor system where Mr. Nam was the one who

7   wrote it himself, and whatever he wrote was

8   confirmed.  That was the system and the reason

9   that I'm pointing that out is because you pointed

10  out that Mr. Nam's starting work time is way

11  earlier always than what the contract says, but

12  I'm pointing out that that is what Mr. Nam agreed

13  to voluntarily and because he said that is

14  possible and that means that before it was done

15  it was discussed.  That's what I'm pointing out.

16     Q.   Let me ask a different question.  How

17  did you hire Mr. Nam?

18          MR. LIM:  Do you mean the Mission, not

19      him individually, how did the Mission hire

20      Mr. Nam?

21          MR. BAE:  Yes.

22     A.   So basically it's the same process.  It

23  is according to the principal set by the Korea

24  and the general practice, a person is hired.  So

25  initially there's a help wanted that is put up in

39

1              J. Jinho

2   participated in these interviews where you obtain

3   the candidate from either third-party website or

4   Mission's official website?

5       A.   So first of all, Mr. Nam's case, the

6   person who was in charge at the time who was Mr.

7   C-H-O-I was the one, and the Minister who was

8   there at the time Mr. Ko was the one who

9   conducted the interview.

10      Q.   What is the position of Mr. Choi?

11      A.   So Mr. Choi's position was

12  administratively manager, the position like Mr.

13  Nam's.

14      Q.   Do you consider Mr. Choi diplomatic

15  staff?

16      A.   Yes.

17      Q.   Based on your knowledge, did Mr. Choi

18  register with the Department of State?

19      A.   Of course, yes.

20      Q.   Based on your knowledge, does Mr. Nam,

21  did or does, Mr. Nam register with the Department

22  of State?

23          MR. LIM:  As a diplomatic staff?  Is

24      that the question?

25          MR. ZHU:  Yes.

42

1                    J. Jinho

2       Based on your knowledge who decides whether

3   the person should be hired by the Mission other

4   than the security check?

5           MR. LIM:  Not an objection, but we're

6       talking about general practice, not Mr. Nam?

7           MR. ZHU:  Yes.

8           MR. LIM:  I'm afraid every position is

9       different.  I don't know where we're going

10      with this.

11      A.    Well, in Mr. Nam's case it would be the

12  Minister who Mr. Nam would directly serve in the

13  end, so finally it would be the Minister who would

14  say oh, this person looks good.

15      Q.    Have the Mission ever fired anybody?

16          MR. LIM:  What's the timeframe?

17      Q.    From the year 2016 until present based

18  on your knowledge?

19      A.    To my understanding, no.

20      Q.    Based on your understanding, is there a

21  firing process employed by the Mission?

22          MR. LIM:  Again he used a word and I

23      just want to clarify.  Are you talking about

24      voluntary termination or involuntary, firing

25      is involuntary.  He used the word it includes

46

J. Jinho

1         to Mr. Nam as diplomatic staff.

2              MR. LIM:  He already said several times

3         he was not registered, he was not a

4         diplomatic staff.

5         A.   I never said that.

6         Q.   There's a misunderstanding.  I heard you

7    talk Mr. Nam has not registered with diplomat

8    Department of State, but you mentioned Mr. Nam

9    was diplomatic staff, no?

10        A.   Never said that.  What I was thinking at

11   the time briefly was that in the case of Mr. Nam,

12   so what happens is there's a week called high

13   level week and general UN, general assembly.  In

14   that type of period, the whole neighborhood

15   around the UN is blocked.  So as part of the UN

16   representative team, Mr. Nam receives a pass to

17   get through that traffic, security pass and in

18   that sense he was registered, in that sense.

19   That's what I was briefly contemplating there.

20        Q.   Regardless of registering issue, do you

21   think Mr. Nam worked as a diplomatic staff or

22   non-diplomatic staff?

23             MR. LIM:  Asked and answered.

24        A.   Like I told you earlier, he worked as a

47

```
 1                    J. Jinho
 2   non-diplomatic staff.
 3             MR. LIM:  For the record, he did say
 4        that Mr. Nam was registered with the UN in
 5        order to receive a security pass during the
 6        high level week.  Your question was whether
 7        he was registered with the Department of
 8        State.  He said no, he was registered with
 9        the UN during the high level week to receive
10        a security pass.  Are we clear?
11   CONTINUED EXAMINATION BY
12   SHAN ZHU:
13        Q.   Is that true the registration of Mr. Nam
14   to the UN is for limited event or he was
15   registered throughout this employment period?
16        A.   So there are the security passes that's
17   the only issued for that period of time for that
18   event, so Mr. Nam received that pass.
19             MR. BAE:  Mark this as Plaintiff's 3,
20        P3.
21             (Whereupon security pass was marked
22        Plaintiff's Exhibit 3 for Identification.
23             MR. LIM:  Did you produce this during
24        Discovery?  I don't think you did.  The
25        exhibit that was just marked as P3 is what
```

52

1                     J. Jinho

2       CONTINUED EXAMINATION BY

3       YONGJIN BAE:

4          Q.   As to background check, diplomatic staff

5       and non-diplomatic staff are both required to go

6       through background check?

7          A.   In general, yes.

8          Q.   But it's not specific occasion for Mr.

9       Nam, right?

10             MR. LIM:  Do you mean it's not even

11          special?

12         Q.   I'm rephrasing my question, I'm sorry.

13      Mr. Nam is not the only person along

14      non-diplomatic employees who have been going

15      through security background check?

16             MR. LIM:  Off the record.

17             (Whereupon a discussion was held off the

18          record.)

19             MR. LIM:  The question is whether or not

20          Mr. Nam had to go through different security

21          clearance compared to other non-diplomatic

22          staff.  Is that your question?

23             MR. BAE:  That is correct.

24         A.   So like I said earlier, Mr. Nam had a

25      task to help the Minister who needed the high

53

1                        J. Jinho

2    level security, so compared to other

3    non-diplomatic staff, Mr. Nam had to go through

4    high level security clearance and every year he

5    had to fill out the security pledge to renew it,

6    and he even said that he would voluntarily go

7    through polygraph test and he agreed to do that

8    and all these matters all written in the contract

9    already, and no one else went through such

10   security clearance like Mr. Nam for other

11   non-diplomatic staff.

12       Q.   Was Mr. Nam the only driver at Missions?

13            MR. LIM:  From 2016 to 2020, correct?

14            MR. BAE:  Yes.

15       A.   No, not so.  There were other drivers as

16   well.

17       Q.   Why the other driver has not gone

18   through security clearance?

19       A.   The reason is that Mr. Nam's position

20   required to work for the Minister who requires

21   high level security and therefore, whoever

22   Minister meets, what kind of discussion Minister

23   has or whatever discussion is taking place in the

24   car, Mr. Nam was in a position to find out

25   naturally.  So being that the case, those kind of

54

1                          J. Jinho

2      information were top secret or classified

3      information based on the Republican Korean law

4      and this is something that Mr. Nam is fully aware

5      of and fully known, and that is why he had to go

6      through high security clearance unlike other

7      non-diplomatic staff.

8           Q.    Is there a designated driver for

9      Ambassador Cho?

10          A.    Yes, there is?

11          Q.    What's difference between Mr. Nam and

12     Ambassador Cho driver?  Ambassador Cho should be

13     higher than Minister ranking, right?

14          A.    So I believe the biggest difference is

15     whether the person is Korean citizen or not and

16     whether the person could speak Korean language or

17     not.

18               MR. LIM:  I think the question is

19          whether or not the ambassador's driver is

20          subject to the same security clearance; is

21          that your question?

22          A.    As a reference, of course, the

23     Ambassador is also high level security required

24     individuals so therefore Ambassador's driver also

25     is required a very special security clearance as

57

```
 1                    J. Jinho
 2    of all, it is fact that Mr. Nam went through the
 3    high level security clearance and he's the only
 4    person, Mr. Nam was the only one.  However, since
 5    your question was, wasn't that required for the
 6    Ambassador's driver as well so wouldn't it have
 7    been possible.  So my thought was that, yes, that
 8    can be something that I could verify or confirm
 9    or find out.  To my knowledge --
10          THE INTERPRETER:  And that's when the
11       counsel interjected something, but again the
12       witness goes on.
13       A.  Let me put it this way, the Ambassador's
14    driver is something that I have to verify
15    additionally, but to my knowledge, Mr. Nam was
16    the unique non-diplomatic personnel who had to go
17    through the security clearance as well as every
18    year had to submit the pledge to renew it.
19          MR. BAE:  Nothing further.
20    CONTINUED EXAMINATION BY
21    SHAN ZHU:
22       Q.  I want to draw your attention to P2 so
23    for your time record, can you generally tell me
24    how this document was, if you can go through and
25    let me know if you're ready.
```

68

1                    J. Jinho

2    knowledge, that was what happened.

3              One thing I want to add, as you already

4    know, this form is basically the form by the

5    Korean government, that Korean government uses

6    and from 2016 until the present time, they remain

7    almost the same identical and Mr. Nam probably

8    has all the copies from the past as well, and so

9    if Mr. Nam wanted to think about what was

10   explained at that meeting, if he requested it,

11   that was probably granted and then signed later

12   probably, but to my understanding this procedure

13   is followed according to the general practice.

14        Q.   So do you know for this specific

15   contract we're looking at whether Mr. Nam signed

16   this contract on the spot?

17        A.   To my understanding, yes, that was done.

18        Q.   Does mission have EIN number?

19             MR. LIM:  You have to explain what that

20        is.  It's a tax ID number.

21        A.   To my understanding, the Mission is

22   subject to the -- to my understanding the Mission

23   is tax exempt status.

24        Q.   That's not my question.  My question is

25   regardless of whether it Mission is tax except or

73

1                    J. Jinho

2    reflected in the contract.

3        Q.   Is there any written document you gave

4    to Mr. Nam which document how his wage being

5    calculated other than on the paid ledger in front

6    of you, the ledger meaning P2?

7        A.   So you're asking other than this ledger

8    is there any other document?

9        Q.   Right.

10       A.   To my understanding there is nothing

11   else.

12       Q.   If you may go back to the contract term

13   five, let's say if you're going to go back to P1

14   term five, so other than the regular wage there

15   are housing, medical insurance and the off

16   schedule wage phone access.  So based on your

17   understanding, if any of them is discretionary by

18   the Mission?

19       A.   So depending on the cases, there

20   occasions where we give out like encouraging

21   money or encouraging funds so called.  For

22   example, at the end of the year or after big

23   events, to express our sort of gratitude good

24   work guys, type of thing.

25       Q.   Let me try another way.  Under term 5-2

74

1               J. Jinho

2    it says housing $1,450 per month.  Is this amount

3    discretionary by Mission or Mission will give to

4    Mr. Nam regardless of his work?

5        A.    So this is a condition where basically

6    that amount is given out monthly.

7        Q.    Why you say basically, is there any

8    exception when the housing is not paid?

9        A.    To my understanding as to Mr. Nam, there

10   wasn't.

11       Q.    Let's move onto the medical insurance, a

12   $1,087 per month, would you consider this

13   discretionary from the Mission?

14           MR. LIM:  Versus mandatory?  I don't

15       understand.

16           MR. ZHU:  Discretionary meaning that

17       Mission determined whether to give his or

18       not.  Non-discretionary meaning that Mission

19       will give it to Mr. Nam regardless of his

20       work performance.

21       A.    So it is non-discretionary.  So I said

22   earlier, this was a basic form that Republican of

23   Korean government uses so it is not kind of

24   characteristic where if an employee or Mr. Nam is

25   lazy and not work, this is not given, it is

75

1                    J. Jinho

2    given.

3        Q.   What about the $1,900 bonus per year

4    described in term four, is that discretionary or

5    not?

6        A.   Non-discretionary.

7             MR. ZHU:  I don't have further question

8        for you Mr. Jo so my colleague will take

9        over.

10   CONTINUED EXAMINATION BY

11   YONGJIN BAE:

12       Q.   Mr. Jo, I have few questions before you

13   are being excused.

14       A.   Yes.

15       Q.   How many hours do you work per week?

16            MR. LIM:  Objection to that question.

17       It's not about him individually.  He's a

18       representative of the Mission.

19       Q.   Is it common that any employees in

20   Mission working 92 hours per week, more than 92

21   hours per week?

22            MR. LIM:  You're asking such a broad

23       question.

24       Q.   I want to know general practice.

25       A.   Basically it is fact that employees who

76

1                    J. Jinho

2    work at missions work overtime hours, meaning

3    overnight work.

4        Q.   According to the employment contract

5    between Mission and Mr. Nam in 2016, his overtime

6    was capped by $570 per month, right?

7        A.   Yes, that is correct.

8        Q.   In 2017, there was some change from

9    South Korean law regarding working hours called

10   capped 52 hours that applies to all organization

11   in Korea?

12           MR. LIM:  What do you mean by

13       organization?

14           MR. BAE:  Whether government or private

15       entity.  Mission shouldn't be applied at 52

16       hours.  That's the reason why 52 hours

17       capped.

18           MR. LIM:  There are exceptions, you know

19       that, right?  That law doesn't apply.

20           MR. BAE:  But here it applies.

21           MR. LIM:  You didn't ask whether it

22       applies, that's why I'm confused.  Are you

23       aware of the law?  You skipped that, that's

24       why I don't understand.

25       Q.   One question here did Mr. Nam have any

78

```
 1                    J. Jinho

 2    to the Mission's building while the Minister was

 3    having a meal at the meeting place, at the

 4    restaurant.  So sometimes if it takes two hours

 5    then Mr. Nam would come back to pick him up

 6    according to that hour.  That is my understanding

 7    of how it was done, and occasionally when the

 8    meeting place was somewhere far that is when Mr.

 9    Nam waited outside the restaurant until it was

10    done which happened not frequently.

11            MR. BAE:  No further questions.

12    EXAMINATION BY

13    JOSHUA LIM:

14        Q.   Mr. Jo, you have come a long way.  I'm

15    just going to ask a few follow-up questions.

16    Let's talk about the UN high level week that you

17    mentioned earlier.  Tell us a little bit about

18    what that is?

19        A.   So what UN does on usually, typically

20    about September month, they open up this event

21    called general assembly high level week which

22    invites the head of each of the states and they

23    participate in this event.

24        Q.   So during the time that Mr. Nam was

25    working for the Mission, did this high level week
```

**A-353**

79

```
 1                    J. Jinho
 2   event occur every year?
 3        A.   Other than the year of the pandemic
 4   which is 2020, it took place every year, correct.
 5        Q.   So for this event, the high level
 6   government officials from Korea come to
 7   participate in this event?
 8        A.   Correct.
 9        Q.   When you say high level, are they high
10   level government cabinet officials?
11        A.   Correct.
12        Q.   After they arrive, where these high
13   level government officials go, is that considered
14   a secret by Korean law?
15        A.   That is correct because this has to do
16   with the safety and security issues.  So whenever
17   VIP visits, whether it's high level week or not,
18   so it's that just high level week apply, but
19   other week, the routes where they go is kept
20   secret and it's not revealed.
21        Q.   Prior to the arrival of these high level
22   government officials, did the mission ever
23   inspect the route beforehand?
24        A.   That is correct.  This is very important
25   matter in terms of security, so before the event
```

**A-354**

80

1               J. Jinho

2    take place Mission visits the route and the

3    location of the event beforehand and do those

4    things.

5        Q.   Was this information concerning the

6    route known and shared with Mr. Nam?

7        A.   So basically Mr. Nam's job and his role

8    is to help the work of the Minister in foreign

9    affairs with the high level security requirement

10   needed.  So therefore, it is very challenging to

11   separate Mr. Nam and Minister.  There is some

12   aspect to that, it's difficult to do that.  So

13   obviously, before the events take place, the

14   information with regard to the route and the

15   visitation of the location beforehand, those

16   information is shared with Mr. Nam.

17       Q.   When these high level government

18   officials came from Korea who shuffled them

19   around?

20       A.   So Mr. Nam did the work of chauffeuring

21   these cabinet level VIPs related to that work.

22   For example, there was national security advisor

23   to the president who visited and it was Mr. Nam

24   who chauffeured that cabinet member, and other

25   than that, there are many other places in

81

1                    J. Jinho

2     personnel that Mr. Nam chauffeured, but I think

3     it is inappropriate to divulge this information

4     here.

5         Q.    When the national security advisor to

6     the president came, did the Mission receive

7     assistance from the local law enforcement?

8         A.    Yes, like I said, this type of VIP visit

9     requires a very important security protocol, so

10    of course local law enforcement work together

11    with them and, of course, Mr. Nam was sort of a

12    team when he worked in that capacity.

13        Q.    When the mission worked with a local law

14    enforcement, did the local law enforcement give

15    instructions as to how they would guide the high

16    government officials?

17        A.    That is correct.  Guidelines were

18    provided because they have to move together.

19        Q.    Is it fair to say there was a motorcade?

20        A.    Yes, there was a motorcade.

21        Q.    Did Mr. Nam receive information

22    concerning how the motorcade will be done?

23        A.    That is correct, because at occasions the

24    motorcade have to move very quickly so obviously

25    also Mr. Nam was provided with the guidelines.

83

1           A C K N O W L E D G M E N T:

2

3    STATE OF NEW YORK)

4              ) ss.:

5    COUNTY OF        )

6              I, JO JINHO, hereby certify that I

7    have read the transcript of my testimony taken

8    under oath in my deposition of April 4, 2022;

9    that the transcript is a true, complete and

10   correct record of what was asked, answered and

11   said during this deposition, and that the

12   answers on the record as given by me are true

13   and correct.

14

15

16                   _____

17                        JO JINHO

18   Subscribed and sworn to

19   before me this _____ day

20   of _____, 2022.

21

22   _____

23        NOTARY PUBLIC

24

25

```
                                                                84
 1                        I N D E X

 2

 3   EXAMINATION OF        BY                      PAGE

 4   JO JINHO              SHAN ZHU                3-25

 5                         YONGJIN BAE             25-34

 6                         SHAN ZHU                34-45

 7                         YONGJIN BAE             45-47

 8                         SHAN ZHU                47-49

 9                         YONGJIN BAE             49-51

10                         SHAN ZHU                51-52

11                         YONGJIN BAE             52-57

12                         SHAN ZHU                57-75

13                         YONGJIN BAE             75-78

14                         JOSHUA LIM              78-82

15

16                      E X H I B I T S

17   PLAINTIFF'S           DESCRIPTION             PAGE

18        1                Mr. Nam's Employment

19                         Contract               25

20        2                Mr. Nam's work hours    30

21        3                Security pass           47

22        4                Employment contract     61

23

24

25
```

85

1                C E R T I F I C A T I O N

2

3          I, MARIA LEMMO, a Notary Public of the

4     State of New York do hereby certify:

5          That the testimony in the within

6     proceeding was held before me at the aforesaid

7     time and place.

8          That said witness was duly sworn before

9     the commencement of the testimony, and that the

10    testimony was taken stenographically by me, then

11    transcribed under my supervisor, and that the

12    within transcript is a true record of the

13    testimony of said witness.

14         I further certify that I am not related

15    to any of the parties to this action by blood or

16    marriage, that I am not interested directly or

17    indirectly in the matter in controversy, nor am I

18    in the employ of any of the counsel.

19         IN WITNESS WHEREOF, I have hereunto set

20    my hand this 27th day of April, 2022.

21

22

23    _____

24              MARIA LEMMO

25

# EXHIBIT 4

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                        Defendant's Motion for Summary Judgment

## 서 약 서

본인은 2016년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무 수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2016년  7월  1일

서약자     소     속 : 駐유엔 대한민국대표부
           생 년 월 일 : 1960.4.9
           성     명 : 남 현 회 (서명)

서약집행자 소  속 : 駐유엔 대한민국대표부
           직     책 : 공     사
           성     명 : 고 봉 우 (서명)

ROKPM0014

**A-361**

# EXHIBIT 5

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

**A-362**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2016, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

July 1, 2016

Pledgor:     Department:   Permanent Mission of the Republic of Korea to the United Nations
             Date of Birth: April 9, 1960
             Name:         Hyunhuy Nam          (signature) [signature]

Pledgee:     Department:   Permanent Mission of the Republic of Korea to the United Nations
             Title:        Minister
             Name:         Bong-Woo Ko          (signature) [signature]

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 6

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

**A-365**

.

# 서 약 서

본인은 2017년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무 수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2017년 7월 1일

서약자      소      속 : 駐유엔 대한민국대표부
            생 년 월 일 : 1960.4.9
            성      명 : 남 현 희 (서명)

서약집행자 소      속 : 駐유엔 대한민국대표부
            직      책 : 공      사
            성      명 : 고 봉 우 (서명)

ROKPM0019

# EXHIBIT 7

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2017, duly pledge as follows:

1.  I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2.  I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

July 1, 2017

Pledgor:     Department:   Permanent Mission of the Republic of Korea to the United Nations
             Date of Birth: April  9, 1960
             Name:         Hyunhuy Nam          (signature) [signature]

Pledgee:     Department:   Permanent Mission of the Republic of Korea to the United Nations
             Title:        Minister
             Name:         Bong-Woo Ko          (signature) [signature]

ROKPM00019 - T

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 8

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

## 서 약 서

본인은 2018년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무 수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2018년 7월 1일

서약자     소     속 : 駐유엔 대한민국대표부
　　　　　 생 년 월 일 : 1960.4.9
　　　　　 성　　　명 : 남 현 회 (서명)

서약집행자 소     속 : 駐유엔 대한민국대표부
　　　　　 직　　　책 : 공　　사
　　　　　 성　　　명 : 이 정 재 (代)차 병 호 (서명)

# EXHIBIT 9

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-372**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2018, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of South Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

July 1, 2018

Pledgor:      Department:  Permanent Mission of the Republic of Korea to the United Nations
Date of Birth: April 9, 1960
Name:      Hyunhuy Nam      (signature) [signed]

Pledgee:      Department:  Permanent Mission of the Republic of Korea to the United Nations
Title:      Minister
Name:      Jungjae Lee      (deputy)  Byungho Cha  (signature) [signed]

ROKPM00024 - T

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 10

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                          Defendant's Motion for Summary Judgment

<u>서 약 서</u>

본인은 2019년 7월1일부터 駐유엔 대한민국대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프 검사 요구시 자발적으로 응하는데 동의합니다.

2019년   7월 1일

서약자    소      속 : 駐유엔 대한민국대표부

성      명 : 남 현 희(1960년 4월 9일생)      (서명)

駐유엔 대한민국대표부 대사 귀하

서약집행자  駐유엔 대한민국대표부    공사    이 정 재    (서명)

ROKPM0030

A-376

# EXHIBIT 11

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                              Defendant's Motion for Summary Judgment

**A-377**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2019, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3. I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

July 1, 2019


Pledgor:        Department:   Permanent Mission of the Republic of Korea to the United Nations
                Name:         Hyunhuy Nam (DOB: April  9, 1960)        (signature) [signed]


By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:        Permanent Mission of the Republic of Korea to the United Nations
                                      Minister       Jungjae Lee    (signature) [signed]


ROKPM00030 - T

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 12

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                        Defendant's Motion for Summary Judgment

<u>서 약 서</u>

본인은 2020년 7월1일부터 駐유엔 대한민국대표부 직원으로 근무
함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정
   에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을
   인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠
   으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적
   불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프
   검사 요구시 자발적으로 응하는데 동의합니다.

2020년    7월 1일

서약자    소       속 : 駐유엔 대한민국대표부

성       명 : 남 현 희(1960년 4월 9일생)    (서명)

駐유엔 대한민국대표부 대사 귀하

서약집행자   駐유엔 대한민국대표부    공사(代) 조 진 호   (서명)

**ROKPM0041**

# EXHIBIT 13

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2020, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3. I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

July 1, 2020


Pledgor:        Department:   Permanent Mission of the Republic of Korea to the United Nations
                Name:         Hyunhuy Nam (DOB: April  9, 1960)        (signature) [signed]


By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:        Permanent Mission of the Republic of Korea to the United Nations
                                Minister (deputy) Jinho Jo     (signature) [signed]


ROKPM00041 - T

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).

Fran S. Yoon

February 18, 2022

**A-384**

# EXHIBIT 14

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# 서 약 서

본인은 2021년 4월 1일부터 駐유엔 대한민국대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프 검사 요구시 자발적으로 응하는데 동의합니다.

2021년   4월 1일

서약자   소        속 : 駐유엔 대한민국대표부

성        명 : 남 현 희(1960년 4월 9일생)    (서명)

駐유엔 대한민국대표부 대사 귀하

서약집행자  駐유엔 대한민국대표부   공사    정 대 용(서명)

ROKPM0047

# EXHIBIT 15

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                              Defendant's Motion for Summary Judgment

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on April 1, 2021, duly pledge as follows:

1.  I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2.  I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3.  I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

April 1, 2021


Pledgor:       Department:    Permanent Mission of the Republic of Korea to the United Nations
               Name:          Hyunhuy Nam (DOB: April  9, 1960)        (signature) [signed]


By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:       Permanent Mission of the Republic of Korea to the United Nations
                              Minister   Daeyong Chung    (signature) [signed]

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 16

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

문서번호 :                                                    2016. 4. 20

수    신 :

제    목 : 운전원 채용 후보자 신원조사 결과

---

■ 성명: 남현희(주민등록번호: 60▮▮▮▮▮▮▮)

■ 거소: 55 W Homestead Ave. Palisades park, New Jersey

■ 주소: 서울 송파구 올림픽로 4길 159-408

■ 등록기준지: 서울 동대문구 이문동 38-45

■ 세대주: 방은주

■ 본인과의 관계: 처

---

◎ 본인 신원사항

o 출생 및 학경력: 1960년 4월 9일 전남 강진군 대구면 사당리에서 4형제중
  차남으로 출생

o 병역관계: 1981.12.2~1984.6.14간 육군 통신병으로 복무후 병장 만기제재
  (군번: ▮▮▮▮▮▮▮)

◎ 친족 신원사항

o 직계가족: 부 남정춘(30년생) 모 김공임(37년생)은 노령 사망하였으며 처 방은주
  (65년생, 무직) 및 딸 남금정(92년생, 미술계 직업)과 함께 당지에서 생활중

o 친가사항: 형 남경희(57년생)은 경기대를 졸업하고 KT data 상무로 재직중
  이며, 동생 남승희(61년생)은 자영업중이며, 동생 남승완(64년생)은 파주
  세무소 7급으로 근무중

o 처가사항: 장인 방근억(22년생), 장모 송위개(38년생)는 모두 노령 사망하였
  으며 처형 방수연(61년생) 및 처제 방인숙(66년생)은 무직이고 처남 방성호
  (69년생)은 우신트랜드사 부장으로 재직중

◎ 친교인물

o 직장상사 이창복(53년생) 前상무는 현대종합상사 근무시 인연으로 현재까지
  교제중이며 직장상사 이승룡(61년생)은 당지 직장생활 계기 교제

ROKPM0116

◎ **정당·사회단체 관계** 사항은 별무함

◎ **종교**는 1991년부터 현재까지 불교를 믿고 있음

◎ **재산사항**은 서울에 처 명의 아파트(공시지가 7억4천3백만원) 및 저축액 5천만원, 유가증권 2천2백만원, 자동차 2대를 보유중이고 채권·채무사항은 별무함

◎ **해외여행 및 거주사실**

 o 해외거주

   1989.2-1989.6  미국 사우스캐롤라이나 거주(군자산업 무역업)

   2000.3-2000.10 중국 복건성 진장시 거주(어학습)

   2004.9-2005.1  중국 광동성 광저우시(오카데코 무역업)

   2005.2-2005.11 미국 조지아주 애틀란타시(오카데코 무역업)

   2006.11-현재 미국 뉴저지주(코라 운전업무)

 o 해외여행

   1992년 3월경 뉴질랜드 업무출장(현대종합상사)

   1994년-1995년초 중국 수교후 무역업무 월1회 출장(현대종합상사)

◎ **상벌관계**: 1994년 현대종합상사 자원부 근무시 우수실적으로 모범사원상을 수상

◎ **인품 및 세평**: 밝고 긍정적이며 적극적인 성격을 보유하고 있으며 주변에서 생활태도 바르다는 평을 듣고 있으며 불교를 믿으면서 업과 인연과 업에 인간관계를 소중히 여기고 평소 섬기고 봉사하는 생활자세를 좌우명으로 삼고 있음 (범죄경력 전무)

◎ **취미 및 특기**: 등산(주말활용 근교 등산)

◎ **응시(지원) 경위**: 가정적으로 자녀 양육도 다 마치고 경제적으로 안정되어 있는 상태에서 사회생활 마무리를 공직계통에서 할 수 있기를 희망(현 직장에서 경력이 오래되어 월 550만원을 받고 있으나 고용자측에서 부담스러워 하는 면도 작용). 개인적으로 인생의 우여곡절을 겪으면서 주변을 섬기면서 사는 삶을 실천하고자 한다고 언급. 주변 지인이나 주재국 기관 등의 지원 권유 등은 일체 없었으며 인터넷 모집공고를 보고 지원했다고 답변

◎ **주변 주요인물**: 이창복 前현대종합상사 상무(현재 LA 우체국장직)

◎ **기타 참고사항**: 특이사항 별무

<u>신원조사 동의서</u>

성　　명: 남 현 희

생년월일: 1960. 4. 9

주　　소: 55 W Homestead Ave. 1B
palisadis park NJ. 07650

　　상기 본인은

　　　　　　　　　　　　　　　　관계법령에

따라　　채용　　목적으로 실시하는 신원조사에

성실하게 응할 것을 서약하며, 사실관계의 확인을

위한 「개인정보 보호법」에 따른 개인정보활용에 동의

합니다.

2016. 4 . 15

위 동의인 남 현희 (서명)

ROKPM0118



# 이 력 서

성 명 : 남 현희 (南 炫熙)

생년월일 : 1960, 04.09.

주  소: 55 w homestead ave.

   Palisades Park, NJ, 07650

Tel : 201-637-7379

E-mail : hyunhuy@hotmail.com

1. 학력사항
   장충고등학교 : 03/01/75 - 02/25/78
   동양공업전문대학 전자공학과 : '80/03/01 - '81/11/25
   성균관대학교 독어독문학과 (행정학과) : 03/01/85 - 2/23/89

2. 병역사항
   육군 통신병 : '81/12/02 - '84/06/14

3. 어학정도 : 영어(회화 작문-의사소통에 능합)

4. 신체사항
   키 : 172Cm, 몸무게 : 70Kg

5. 경력사항

A. Kunja USA (1988, 6 ~ 1989, 12)
   Shima 사 컴퓨터 편직기 Maintenance
B. 현대종합상사 (1990, 1 ~ 1999, 6)
   중국의 Xamen 지점을 거점으로 한국의 섬유류, 신발용 원 부자재 수출
C. Kutec Limited (2000, 7 ~ 2008, 1)
   건자재, 엑세사리등 미국동부 큰 도시 전시장 설치 및 트럭 드라이버
D. 니시모토 물류센타 (2008, 7 ~ 2011, 12)
   Moonachie 물류센타 트럭 드라이버
E. H-mart 물류센타 (2012, 1 ~ 2013, 1)
   Lyndhust 물류센타 트럭 드라이버
F. MALLTAIL(2013, 2 ~ 현재 )
   델라웨어와 뉴저지 물류 트럭드라이버

ROKPM0119

□ 시간외 수당

o 시간당 기준액 : (月기본급+상여금×1/12) ÷ 209 × 150%

**A-395**

Document Number:                                                    2016. 4. 20

Reception:

Title: Result of Background Check for Chauffeur Recruitment Candidates

- ■ Name: Hyunhuy Nam (Resident Registration Number: 60▮▮▮▮▮▮▮)
- ■ Dwelling Address: 55 W Homestead Ave. Palisades Park, New Jersey
- ■ Address: Seoul, Songpa-gu, Olympic Road, 4th Street 159-408
- ■ Registration Base: Seoul, Dongdaemoon-gu Yimoon-dong 38-45
- ■ Head of Household: Eun Joo Bang
- ■ Relationship to self: Wife

- o Self-Identification
    - o Birthdate and Academic Background: April 9, 1960, Jeonnam, Gangjin-Gun, Daegu-Myeon Sadangri. Born as Second Son out of 4 Brothers.
    - o Military Experience: 1981.12.2 ~ 1984.6.14 Army Communications Soldier, Sergeant Expiration Sanctions post-military service. (Military Number: ▮▮▮▮▮▮)
- o Family/Kin-Identification
    - o Immediate Family:
        - ■ Father – Jung Choon Nam (b. 1930),
        - ■ Mother – Gong Im Kim (b.1937) both passed away due to old age,
        - ■ Currently living with Wife – Eun Joo Bang (b. 1965, unemployed) and Daughter Geum Jung Nam (b. 1992, Art-related Job)
    - o Personal Family:
        - ■ Older Brother – Kyung Hee Nam (b. 1957) graduated from Kyonggi University, working as a director of KT data,
        - ■ Younger Sibling – Seung Hee Nam (b. 1961) is self-employed,
        - ■ Youngest Sibling – Seung Wan Nam (b. 1964) currently works as level 7 officer at the Paju Tax Office.
    - o In-Law Family:
        - ■ Father-in-Law – Geun Uk Bang (b. 1922),
        - ■ Mother-in-Law – Wue Gae Song (b. 1938) both passed away due to old age,
        - ■ Eldest Sister-in-Law – Soo Yeon Bang (b. 1961) unemployed,
        - ■ Sister-in-Law – In Sook Bang (b. 1966) unemployed,
        - ■ Brother-in-Law Sung Ho Bang (b. 1969) currently employed as Manager of Woosin Trend Company.
- o Close Friends
    - o A Superior at Work – Chang Bok Lee (b. 1953), Close relationship maintained with Former Director of Hyundai General Trading Company since employment.
    - o A Superior at Work - Seung Ryong Lee (b. 1961) became close friends through work.
- o Political Party and Social Associations: None affiliated
- o Religion: Buddhist since 1991

**A-396**

- o Property and Assets: Apartment in Seoul under Wife's Name (Property Value at 743 million Won) and savings of 50 million Won, Securities 22 million Won, 2 Cars in possession, and no debts.
- o Foreign State Travel and Residence
  - o Living Abroad
    - 1989.2 – 1989.6 USA, South Carolina (Military Business Trade)
    - 2000.3 – 2000.10 CHINA, Bokgunsung, Jianjang (Foreign Language Study)
    - 2004.9 – 2005.1 CHINA, Guangdongsung, Guangzhou (Ohkadeko Trade)
    - 2005.2 – 2005.11 USA, Georgia, Atlanta (Ohkadeko Trade)
    - 2006.11 – Current USA, New Jersey (KORA Driving)
  - o Foreign Travel
    - 1992.3 New Zealand - Business Travel (Hyundai General Trading Company)
    - 1994 ~ 1995 China Post Establishment Trade Business, Attended Once per Month (Hyundai General Trading Company)
- o Awards and Discipline
  - o 1994 Hyundai General Trading Company, Ministry of Resources, Recipient of Model Worker for excellent skills.
- o Personality and Public Image: Bright, Energetic, and Outgoing personality, often praised for having a professional lifestyle from those around me, belief in Buddhism, Maintains excellent personal and work relationships. Also volunteers to upkeep life motto. (No criminal record)
- o Hobbies and Skill: Hiking (Weekend hiking within the suburbs)
- o Motive for Application: Children all grown up, financially stable and hoping to be involved in public sector at the end of career. (Current work experience is long, receives 5.5 million Won on monthly basis, employer feels burdened by my current salary). Through ups and downs in life, I hope to serve those around me. There is no influence or recommendation from the U.S. Government Agency or from close acquaintances, I saw a job posting on the internet and applied.
- o Important Personnel: Chang Bok Lee, Former Hyundai General Trading Company Director (Current Chief of Postal Office in LA)
- o Other Important Information: No other information

**A-397**

## <u>Background Check Agreement Form</u>

Name: Nam Hyun Huy

Date of Birth: 1960. 4. 9

Address: 55 W Homestead Ave. 1B, Palisades Park, NJ 07650

      The above person pledges to faithfully respond to the background check conducted for the sole purpose of employment in accordance with the relevant laws and regulations, and agrees to use of personal information in accordance with the (Personal Information Protection Act) to verify the facts.

2016. 4. 15

Agreed with the above statement : Nam Hyun Huy (Signature)

ROKPM0123

[Picture]

# Resume

Name: Nam Hyunhuy (Chinese Characters of name)

Birthdate: 1960. 4. 9.

Address: 55 W Homestead Ave.

Palisades Park, NJ, 07650

Tel: 201-637-7379

E-mail: hyunhuy@hotmail.com

1. Education Background
   Jangchoong High School: 03/01/75 – 02/25/78
   Eastern Engineering Technical College, Electronic Engineering Major: 03/01/80 – 11/25/81
   Sung Gyun Gwan College, German Language and Literature (Department of Public Administration Major): 03/01/85 – 02/23/89
2. Military Background
   Army Communications: 12/02/81 – 06/14/84
3. Language Level: English (Good at writing, and communicating)
4. Physical Attributes:
   a. Height: 172 cm
   b. Weight: 70 Kg
5. Experiences
   a. Kunja USA (1988.6 – 1989.12)
      Shima computer maintenance
   b. Hyundai General Trading Company (1990.1 – 1999.6)
      Exporting raw materials and subsidiary materials for Korea
   c. Kutec Limited (2000.7 – 2008.1)
      Battery, accessory, etc. Truck Driver and Exhibit Installer for Eastern US Major Cities
   d. Nishimoto Logistics Center (2008.7 – 2011.12)
      Moonachie Logistics Truck Driver
   e. H-Mart Logistics Center (2012.1 – 2013.1)
      Lyndhurst Logistics Center Truck Driver
   f. MALLTAIL (2013.2 – current)
      Delaware and New Jersey Logistics Truck Driver

ROKPM0124

Overtime Pay

Per Hour Calculations: (Monthly Pay + Bonus X 1/12) ÷ 209 X 150%)

ROKPM0125

**A-400**

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0121" through "ROKPM0125"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0116" through "ROKPM0120" (bottom

right corner).

_____

Fran S. Yoon

February 24, 2022

# EXHIBIT 17

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                          Defendant's Motion for Summary Judgment

## <u>운전원 채용 계약서</u>

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2016년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 고봉우 공사
 (2) 대상자

  o 성명 : 남현희
  o 생년월일 : 1960.4.9
  o 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2016년 7월 1일부터 2017년 7월 1일까지로 한다.

   채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.
   * 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 의료보험료 보조금 1,087불을 매월 지급한다.

(3) 시간외 수당은 시간당 평일 12불·주말 15불로 하되 최대 월 570불 내에서 지급한다.

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
   사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
   실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을
   즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
   고용주에게 2개월전 서면 통보해야한다.

 (1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
    불분명하게된 경우
 (2) 범죄 또는 중대한 과실을 범한 경우
 (3) 직무를 태만히 하거나 소행이 불량한 경우
 (4) 상사의 직무상 명령에 복종하지 아니한 경우
 (5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중
    2개 항목 이상 부문에서 '불량' 평가를 받는 경우
 (6) 계약사업을 계속할 필요성이 소멸한 경우
 (7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음
   기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분
   상여금)의 100%를 지급한다.

 * 퇴직금 : 최종기본금 3개월분/3+연 상여금/12)X근무연수

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.
   (1) 3개월 이상 6개월 미만 : 3일
   (2) 6개월 이상 1년 미만 : 6일
   (3) 1년 이상 3년 미만 : 10일
   (4) 3년 이상 : 14일
   (5) 단, 지각, 조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2016년  7월  1일


고용주                              고용원
주유엔 대한민국대표부 공사          (1960.4.9生)

고 봉 우                            남 현 희

(서명)                             (서명)

ROKPM0013

# EXHIBIT 18

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

**A-407**

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2016.

1. Parties to the Contract

   (1) Employer Name: Minister Bong-Woo Ko

   (2) Subject

   o   Name: Hyunhuy Nam

   o   Date of Birth: 4/9/1960

   o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related instructions including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2016 through July 1, 2017.

   The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

   (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

   *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

   (2) Be paid housing subsidy of $1,450 per month.

   (3) Be paid medical insurance subsidy of $1,087 per month.

   (3) Off-schedule wages shall be $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.

   (4) Bonus ($1,900 per year) will be paid in June of each year.

   (5) Severance pay will be paid if employed for one year or longer.

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any other payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

   (1) When survival or the whereabouts become unclear due to Act of God or war/incident.

   (2) Commits a crime or a gross negligence

   (3) Neglects work duties or exhibits substandard behavior

   (4) Fails to obey supervisor's work-related orders

   (5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in performance evaluation

   (6) Cessation of work

   (7) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

   * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

ROKPM00012 - T

9.  The Employer may allow the Employee paid time off in accordance with the following.

(1) More than 3 months, less than 6 months: 3 days

(2) More than 6 months, less than 1 year: 6 days

(3) More than 1 year, less than 3 years: 10 days

(4) More than 3 years: 14 days

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.


This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2016.


Employer                                              Employee

Permanent Mission of the Republic of Korea           (DOB: 4/9/1960)
to the United Nations

Bong-woo Ko
                                                     Hyunhuy Nam
(signature)     [signed]
                                                     (signature)     [signed]

ROKPM00013 - T

# EXHIBIT 19

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-412**

## <u>운전원 채용 계약서</u>

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2017년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 고봉우 공사

 (2) 대상자

 o 성명 : 남현희
 o 생년월일 : 1960.4.9
 o 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

ROKPM0015

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2017년 7월 1일부터 2018년 7월 1일까지로 한다.

채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

  * 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 의료보험료 보조금 1,039불을 매월 지급한다.

(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 × 1/12) ÷ 209 × 150%}에 따라 지급한다(月 52시간 한도)

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게된 경우
(2) 범죄 또는 중대한 과실을 범한 경우
(3) 직무를 태만히 하거나 소행이 불량한 경우
(4) 상사의 직무상 명령에 복종하지 아니한 경우
(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중 2개 항목 이상 부문에서 '불량' 평가를 받는 경우
(6) 계약사업을 계속할 필요성이 소멸한 경우
(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분 상여금)의 100%를 지급한다.
   * 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정
   직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게
   휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
    3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2017년  7월  1일


고용주                           고용원
주유엔 대한민국대표부 공사           (1960.4.9生)

고 봉 우                          남 현 희
(서명)                           (서명)

# EXHIBIT 20

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2017.

1. Parties to the Contract

    (1) Employer Name: Minister Bong-Woo Ko

    (2) Subject

        o   Name: Hyunhuy Nam

        o   Date of Birth: 4/9/1960

        o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

    (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good cause.

    (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits apart, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2017 through July 1, 2018.

   The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

   (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

      *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

   (2) Be paid housing subsidy of $1,450 per month.

   (3) Be paid medical insurance subsidy of $1,039 per month.

   (3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%} (Maximum 52 hours per month)

   (4) Bonus ($1,900 per year) will be paid in June of each year.

   (5) Severance pay will be paid if employed for one year or longer.

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

   * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

9.   The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10.  In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11.  The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2017.

Employer                                      Employee

Permanent Mission of the Republic of Korea    (DOB: 4/9/1960)
to the United Nations

Bong-woo Ko
                                              Hyunhuy Nam
(signature)    [signed]
                                              (signature)    [signed]

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 21

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

<u>운전원 채용 계약서</u>

주유엔 대한민국대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2018년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사
 (2) 대상자

   o 성명 : 남현희
   o 생년월일 : 1960.4.9
   o 주소 : 128 w Central Blvd. Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

ROKPM0020

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2018년 7월 1일부터 2019년 7월 1일까지로 한다.

채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

  * 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 공관 단체 의료보험료의 80% 보조금(1,109불)을 매월 지급한다.

(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 × 1/12) ÷ 209 × 150%}에 따라 지급한다

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게된 경우

(2) 범죄 또는 중대한 과실을 범한 경우

(3) 직무를 태만히 하거나 소행이 불량한 경우

(4) 상사의 직무상 명령에 복종하지 아니한 경우

(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중 2개 항목 이상 부문에서 '불량' 평가를 받는 경우

(6) 계약사업을 계속할 필요성이 소멸한 경우

(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분 상여금)의 100%를 지급한다.

* 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

ROKPM0022

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정
직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게
휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2018년  7월  1일

고용주
주유엔 대한민국대표부 공사
이 정 재
(代) 차 병 호
(서명)

고용원
(1960.4.9生)
남 현 희
(서명)

ROKPM0023

A-427

# EXHIBIT 22

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2018.

1. Parties to the Contract

   (1) Employer Name: Minister Jungjae Lee

   (2) Subject

   o   Name: Hyunhuy Nam

   o   Date of Birth: 4/9/1960

   o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site absent the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2018 through July 1, 2019.

    The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with any request to work during off-schedule hours including on the weekends or national holidays and must comply with changes in the work hours.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

    (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

    *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

    (2) Be paid housing subsidy of $1,450 per month.

    (3) Be paid medical insurance subsidy of 80% of the Mission's group plan ($1,109) per month.

    (3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%}

    (4) Bonus ($1,900 per year) will be paid in June of each year.

ROKPM00021 - T

(5) Severance pay will be paid if employed for one year or longer.

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from

paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance twice

per year (June, December) and be referenced as human resources records.

7.  The Employer may immediately terminate this agreement where any one of the following

is applicable. In the event the Employee wishes to terminate the agreement, he must

provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories
(Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in
the performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment

terminates after e year or more of employment.

o   100% of monthly wages (average to last 3 months' regular wages + 1 month's

portion of yearly bonus) per each year of continuous employment.

* Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

ROKPM00022 - T

9. The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2018.

Employer

Permanent Mission of the Republic of Korea
to the United Nations

Jungjae Lee

(deputy) Byungho Cha

(signature)     [signed]

Employee

(DOB: 4/9/1960)

Hyunhuy Nam

(signature)     [signed]

**A-432**

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 23

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

## <u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사

 (2) 채용대상자

　　o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

　　o 성 명 : 남현희

　　o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

ROKPM0025

아니된다.

(4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

　　　 * 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간 외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

ROKPM0026

(4) 주거보조비는 每月 $1,450 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0027

　(7) 상사의 직무상 명령에 복종하지 아니한 경우

　(8) 근무실적 평가결과 4개 항목(성실감・책임감・업무능력・보안성)
　　　중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

　(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음
　기준에 의해 퇴직금을 지급한다.

　o 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액＋1개월분
　　상여금)의 100%를 지급

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를
　줄 수 있다.

　(1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만
　　　1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

　(2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의
　　　유급휴가를 준다.

　(3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에
　　　따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미
　　　사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

　(4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매
　　　2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0028

한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서  제외
하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할
시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2019년  7월 1일

고용주    駐유엔 대한민국 대표부 공사  이 정 재

고용원                              남 현 희

– 5 –

ROKPM0029

# EXHIBIT 24

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-440**

# EMPLOYMENT CONTRACT FOR CHAUFFEUR

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.

1. Parties to the Contract

    (1) Employer Name: Minister Jungjae Lee

    (2) Subject of Employment

    o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

    o   Name: Hyunhuy Nam

    o   Date of Birth: June 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

    (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

ROKPM00025 - T

(4) In the event the Employee wishes to engage in activities, apart from the duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2019 through June 30, 2020.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    * long-term service allowance is $50 per year for a maximum of 20 years, added to wages.

(2) Off-schedule wages shall be $14.76 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June of each year.

- 2 -

(4) Be paid housing subsidy of $1,450 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case the Employee is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

ROKPM00027 - T

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

9.   The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

ROKPM00028 - T

**A-444**

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.

| | |
|---|---|
| Employer | Permanent Mission of the Republic of Korea to the United Nations |
| | Minister Jungjae Lee  [signed] |
| Employee | Hyunhuy Nam       [signed] |

- 5 -

ROKPM00029 - T

**A-445**

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 25

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# 운전원 채용계약서

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을 체결한다.  * 9.20 주거보조비 인상으로 재작성 및 서명

1. 계약 당사자

 (1) 고용주명 : 이정재 공사

 (2) 채용대상자

    o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

    o 성 명 : 남현희

    o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

아니된다.

(4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

  * 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간 외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

– 2 –

ROKPM0032

(4) 주거보조비는 每月 $2,000 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
　　사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
　실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을
　즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
　고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이
　　된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
　　불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0033

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

   o 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액 + 1개월분 상여금)의 100%를 지급 * 주거보조비는 未포함

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

   (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0034

　　한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서　제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할 시　3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2019년　7월 1일

고용주　駐유엔 대한민국 대표부 공사　이 정 재

고용원　　　　　　　　　　　　　남 현 희

– 5 –

ROKPM0035

# EXHIBIT 26

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.  * 9.20 Re-drafting and re-signing due to increase in housing subsidy.

1. Parties to the Contract

   (1) Employer Name: Minister Jungjae Lee

   (2) Subject of Employment

      o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

      o   Name: Hyunhuy Nam

      o   Date of Birth: June 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

   (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

**A-454**

(4) In the event the Employee wishes to engage in activities from which he may gain financial benefits apart from the duties under this agreement, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3.  The employment period shall be from July 1, 2019 through June 30, 2020.

4.  Work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5.  Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

* long-term service allowance is $50 per year for maximum of 20 years, added to wages.

(2) Off-schedule wages shall be $14.76 per hour paid up to 52 hours per month.

(3) Bonus (100% of regular wages) will be paid in June of each year.

- 2 -

(4) Be paid housing subsidy of $2,000 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of need to work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret ) in the performance evaluation

(9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

- o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.  * Excluding housing subsidy.

9.   The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

ROKPM00034 - T

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.

Employer             Permanent Mission of the Republic of Korea to the United Nations

Minister Jungjae Lee  [signed]

Employee                                      Hyunhuy Nam        [signed]

- 5 -

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

A-459

# EXHIBIT 27

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

## <u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 공사(代) 조진호 참사관(이하 "고용주"라 칭함)과 고용원 남현희(男, 1960.4.9생)은 2020년 7월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 공사(代) 조진호 참사관

 (2) 채용대상자

   o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   o 성 명 : 남현희

   o 생년월일 : 1960년 4월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

**ROKPM0036**

아니된다.

(4) 고용원이 고용계약서상 업무이외의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2020年 7月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,710불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

(2) 시간 외 수당은 시간당 $13.29로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 6월·12월 2회로 분할하여 지급한다.

(4) 주거보조비는 공관 실비 상한액 범위내에서 每月 실비를

- 2 -

ROKPM0037

지급한다.  * 2020.10월부

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

 o 계속근로기간 1년에 대하여 30일분의 평균임금을 지급 * 주거 보조비는 未包含

  * 평균임금은 퇴직·해고 등 사유발생 이전 3개월동안 지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본금, 상여금, 시간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

(1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

(2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

(3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

- 4 -

(4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할 시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2020년  7월 1일


고용주     駐유엔 대한민국 대표부 공사(代)  조 진 호  *[서명]*

고용원                                      남 현 희  *[서명]*


– 5 –


ROKPM0040

**A-465**

# EXHIBIT 28

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-466**

# EMPLOYMENT CONTRACT

(Deputy) Minister Jinho Jo of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2020.

1. Parties to the Contract

   (1) Employer Name: (Deputy) Minister Jinho Jo

   (2) Subject of Employment

        o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

        o   Name: Hyunhuy Nam

        o   Date of Birth: April 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

   (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

ROKPM00036 - T

(4) In the event the Employee wishes to engage in activities from which he may gain financial benefits apart from the duties under this agreement, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2020 through June 30, 2021.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

(2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June and December in two divided payments.

(4) Be paid housing subsidy for the actual expenses each month subject to the Mission's maximum actual expenses on a monthly basis. * Effective October 2020.

- 2 -

ROKPM00037 - T

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7.  The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

ROKPM00038 - T

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation.

(9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   For each year of continuous employment, pay 30 days' average wages. *excluding housing subsidy.

      * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9.   The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

- 4 -

ROKPM00039 - T

**A-470**

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2020.

Employer        Permanent Mission of the Republic of Korea to the United Nations

(Deputy) Minister Jinho Jo    [signed]

Employee                            Hyunhuy Nam    [signed]

- 5 -

ROKPM00040 - T

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 29

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                          Defendant's Motion for Summary Judgment

# <u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 정대용 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2021년 4월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 정대용 공사

 (2) 채용대상자

   o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   o 성 명 : 남현희

   o 생년월일 : 1960년 4월 9일

2. 채용대상자는 계약기간 동안 운전원로서 다음과 같은 업무를 수행한다.

 (1) 공용차량 운전 업무

 (2) 기타 행정 및 의전 업무

 (3) 상기 업무수행과 관련된 제반 행정 사무 및 본부가 필요하다고 인정하는 업무지원

- 1 -

ROKPM0042

3. 채용기간은 2021年 4月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 週 40시간, 日 09:00부터 18:00까지로 하며 점심 식사 등을 위한 휴게시간 1시간을 부여한다. 고용주가 주말 이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

   (1) 月 기본급은 $1,710로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

   (2) 시간외 근무수당은 시간당 $13.29로 하되 근로기준법에 따라 月 52시간 한도 내에서 지급한다.

   (3) 상여금(기본급 100%)은 연간 1회(6月) 지급한다.

   (4) 주거보조비는 每月 $2,000 지급한다.

   (5) 의료보험료는 月 납입액의 80%를 지급한다.

   (6) 성과급은 年 1회(4月) 지급한다.

   (7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 年 1회(12월) 실시, 인사자료로 참고한다.

ROKPM0043

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

   (1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

   (2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

   (3) 계약사업을 계속할 필요성이 소멸한 때

   (4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

   (5) 범죄 또는 중대한 과실을 범한 경우

   (6) 직무를 태만히 하거나 소행이 불량한 경우

   (7) 상사의 직무상 명령에 복종하지 아니한 경우

   (8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

   (9) 보안준수 의무사항을 이행하지 아니한 경우

   (10) 외국적자와의 결혼 등 신상 변동사항을 고지하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직 익월에 퇴직금을 지급한다.

   o 퇴직금 산식 : 퇴직前 3개월 총임금(기본급+ 시간외수당)/3+

- 3 -

ROKPM0044

年상여금/12)】×총근무일수/365

o 퇴직금 산입항목 : 계속근로기간 1년에 대하여 30일분의 평균
   임금을 지급   * 평균임금은 퇴직·해고 등 사유발생 이전 3개월동안
   지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본급, 상여금, 시
   간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를
   줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만
       1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의
       유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에
       따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미
       사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

   (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매
       2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함
       한 총 휴가일수는 25일을 한도로 한다

   (5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외
       하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할
    시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

- 4 -

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.


                                    2021년  4월  1일


    고용주        駐유엔 대한민국 대표부 공사      정 대 용 (서명)

    고용원                                        남 현 희 (서명)


                        – 5 –


ROKPM0046

# EXHIBIT 30

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister, Dae Yong Chung, of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of April 2021.

1. Parties to the Contract

   (1) Employer Name: Minister Dae Yong Chung

   (2) Subject of Employment

      o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

      o   Name: Hyunhuy Nam

      o   Date of Birth: April 9, 1960

2. The Subject of Employment shall perform the following tasks as a chauffeur.

   (1) Driving a government vehicle.

   (2) Performing other executive duties as well as activities of ceremony, formality, protocol, etiquette on diplomatic occasions.

   (3) Performing supporting tasks including executive and office work necessary to perform the foregoing tasks as the headquarters may determine as necessary.

- 1 -

3.  The employment period shall be from April 1, 2021 through June 30, 2021.

4.  The work hours shall be 40 hours per week, 09:00 through 18:00 per day, permitting break time of 1 hour for lunch, etc. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5.  Monthly compensation shall include regular wages and off-schedule wages, etc.

    (1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    (2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours pursuant to Korea's Labor Standards Law.

    (3) Bonus (100% of regular wages) will be paid once per year (June).

    (4) Be paid housing subsidy of $2,000 per month.

    (5) Be paid medical insurance subsidy monthly at 80% of actual payment.

    (6) Be paid a performance bonus once per year (April).

    (7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance and once per year (December) and be referenced as human resources records.

ROKPM00043 - T

- 2 -

7.  The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

   (1) Failure to complete tasks for physiological or psychological reasons

   (2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

   (3) Cessation of need to work.

   (4) When survival or the whereabouts become unclear due to Act of God or war/incident.

   (5) Commits a crime or a gross negligence

   (6) Neglects work duties or exhibits substandard behavior

   (7) Fails to obey supervisor's work-related orders

   (8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

   (9) Failure to abide by the security guidelines.

   (10)    Failure to inform of changes in identification status, including marriage with a foreign national

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o  Calculation for severance payment: Total wages for 3 months before separation (regular wages + off-schedule wages)/3 + Yearly Bonus/12] x total workdays/365

- 3 -

**A-482**

    o  Included in severance pay: For each year of continuous employment, pay 30 days' average wages. * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9. The Employer may permit days to the Employee as follows:

   (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

   (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

   (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

   (4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

   (5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

- 4 -

**A-483**

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

April 1, 2021.

| | | | |
|---|---|---|---|
| Employer | Permanent Mission of the Republic of Korea to the United Nations | | |
| | | Daeyong Chung | [signed] |
| Employee | | Hyunhuy Nam | [signed] |

- 5 -

ROKPM00046 - T

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 31

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HYUNHUY NAM,

                          Plaintiff,

          v.

PERMANENT MISSION OF THE REPUBLIC OF
KOREA TO THE UNITED NATIONS; HYUN CHO;
JINHO JO; and DAEYONG CHUNG,

                          Defendants.

---

Case No.: 1:21-cv-06165-AJN

**DECLARATION OF JINHO JO**
**IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SANCTIONS**
**PURSUANT TO FED. R. CIV. P 11**

I, Jinho Jo, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am a Counsellor at Defendant Permanent Mission of the Republic of Korea to the United Nations (the "Entity") and therefore am fully familiar with the facts and circumstances set forth herein.

2. I submit this Declaration in support of Defendants' motion to dismiss the complaint of plaintiff Hyunhuy Nam ("Plaintiff").

3. I am a custodian of the records of the Entity.

4. These said records are kept by the Entity, in the regular course of conduct, and it is the regular practice of the Entity, for an employee or representative with knowledge of the act, event, transaction, condition, fact and/or document recorded, to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.

1

5.   It is the Entity's regular course of conduct to make such records.

6.   To the best of my knowledge, after a reasonable inquiry, the records attached hereto are true and correct copies of the original that are in the custody of the Entity.

7.   Attached hereto as Exhibit A is a true and correct copy of an official letter by the Ministry of Foreign Affairs of the Republic of Korea, dated August 23, 2021.

8.   Attached hereto as Exhibit B is a true and correct copies of the settlement agreement between the Permanent Mission of the Republic of Korea to the United Nations (the "Mission") and Plaintiff from the Entity's records.

9.   Since the date of the execution of the settlement agreement annexed hereto as Exhibit B, the Entity has made efforts to make payment of the severance pay, which was promised in return for Plaintiff's release of his employment-related claims. But Plaintiff continued to delay and state that he is not available to receive the funds.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2021

Jinho Jo

2

**A-488**

EXHIBIT

A

# A-489



MINISTRY OF FOREIGN AFFAIRS
REPUBLIC OF KOREA

To whom it may concern,

**In the Ministry of Foreign Affairs' guidelines on administrative employees, the clauses related to their employment contract, retirement, retirement age, and severance pay are as follows:**

### Article 10 (Employment contract)

(1) The Mission shall conclude an employment contract in writing with the person whose employment has been confirmed, in accordance with Appendix No.1 document, and deliver a copy of the contract to the administrative staff.

### Article 58 (Resignation)

(1) If an administrative employee falls under any of the following, resignation shall be processed:

1. If they submit a resignation letter and wish to resign
2. In case of death
3. If they have reached the retirement age
4. If the employment contract duration expires
5. If their dismissal is determined

### Article 62 (Retirement age)

(1) The retirement age is 60.

### Article 64 (Severance pay)

(1) If an administrative employee who has worked for more than 1 year resigns, the Mission shall pay an average wage of 30 days for one year of continuous service as the severance pay.

*The calculation of severance pay:

Severance pay =
{ [ (base pay for three months before resignation + discretionary bonus for the past 1 year) / (number of days worked in the 3 months before resignation) ] x 30 } X (total days of work / 365)

1

# A-490



MINISTRY OF FOREIGN AFFAIRS
REPUBLIC OF KOREA

Case 23-229, Document 52, 06/05/2023, 3525096, Page214 of 293

Sincerely,

2021. 08. 23.

Title: Director of Overseas Missions Division

Name: Daesup Chung

Sign:



[Official Seal]

2

EXHIBIT

B

# 합 의 서

고용(대리인) 주소 : 330 E 38 St, NYC, NY (10016)
성명 : 조진호

피고용인 주소 : 128 W Central Blvd palisades park. NJ.
성명 : 남현희

## - 합의 내용 -

상기 양측은 현지고용원(남현희)의 고용 관계가 2021.6.30. 부로 종료
된다는 것에 대하여 차후에 민형사상 이의를 제기하지 않기로 합의하였
기에 이 합의서를 제출합니다

2020년 9월 1일

위 합의서 제출인        고용(대리인) 성명 : 조진호   조진호

피고용인 성명 : 남현희

S E T T L E M E N T  A G R E E M E

Employer (Representative)
Address:        330 E 38 S6, NYC, NY (10016)

Employee Address:        128 w Central Blvd palisades park. NJ.
Name: Hyunhuy

- Substance of the

 The above two sides submit this agreement because they have agreed not to raise civil and
criminal claims in the future with respect to the termination of the employment relationship
of the local employee (Hyun-Hee Nam) as of June 30, 2021

September 1,

Parties to the        Employer (Representative) Name: Jinho

Employee Name: Hyunhuy



# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of experience.

2. I am currently registered with the federal courts of New York and New Jersey.

3. The attached document entitled Settlement Agreement, to the best of my knowledge, ability and belief, is a true and accurate translation of the original document.

Fran S. Yoon

September 30, 2021

# EXHIBIT 32

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HYUNHUY NAM, | |
| Plaintiff, | Case No.: 1:21-cv-06165-AJN |
| v. | **DECLARATION OF BYUNGSEOK YOO** |
| PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS, HYUN CHO, JINHO JO, and DAEYONG CHUNG, | **IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SANCTIONS** |
| Defendants. | |

Byungseok Yoo, of full age, hereby respectfully makes the following declaration pursuant to 28 U.S.C. § 1746(1):

1.    The undersigned is the duly appointed Head of Administration of the Permanent Mission of the Republic of Korea to the United Nations (the "Mission") in New York City.

2.    This Declaration is made upon personal knowledge, official files and records of the Mission, and information and belief, in support of the within motion to dismiss and for sanctions made on behalf of the defendant Mission and three of its diplomats: Hyun Cho, Jinho Jo, and Daeyong Chung (collectively "Defendants").

3.    All administrative employees of the Mission, including Nam and the undersigned, operate under guidelines established for overseas consular and diplomatic personnel by the Republic of Korea ("ROK" or "South Korea"), by its Ministry of Foreign Affairs (the "Ministry").

4.    All matters including compensation, benefits, amount of severance, and termination (retirement), without limitation, of administrative employees of the Mission are subject to these guidelines.

1

5.      No one at the Mission, regardless of rank, has authority or discretion to vary any of the provisions of the guidelines established by South Korea for its administrative employees.

6.      The ROK Government regards the guidelines to be internal, diplomatic material that cannot be disclosed to the public.  However, it is recognized that certain provisions are relevant to this litigation and Defendants' motion, so limited disclosure by the undersigned has been authorized by the ROK Government for this purpose.

7.      The official guidelines are written in the Korean language.  For the Court's consideration, the Mission respectfully presents below an approved, English translation of relevant portions of the guidelines by the Ministry for ROK's overseas missions generally:

**The guidelines for the operation of administrative employees at overseas Missions, stipulated by the Ministry of Foreign Affairs, are as follows:**

**Article 10 (Employment contract)**

(1) The Mission shall conclude an employment contract in writing with the person whose employment has been confirmed, in accordance with Appendix No.1 document, and deliver a copy of the contract to the administrative staff.

**Article 58 (Resignation)**

(1) If an administrative employee falls under any of the following, resignation shall be processed:
    1. If they submit a resignation letter and wish to resign
    2. In case of death
    3. If they have reached the retirement age
    4. If the employment contract duration expires
    5. If their dismissal is determined

**Article 62 (Retirement age)**

(1) The retirement age is 60.

**Article 64 (Severance pay)**

(1) If an administrative employee who has worked for more than 1 year

2

**A-498**

resigns, the Mission shall pay an average wage of 30 days for one year of continuous service as the severance pay.

*The calculation of severance pay:

Severance pay =
{ [ (base pay for three months before resignation + discretionary bonus for the past 1 year) / (number of days worked in the 3 months before resignation) ] x 30 } X (total days of work / 365)

8.     With regard to the Mission specifically, the Ministry established the following

regulations:

**The guidelines for the operation of administrative employees at the U.N. Mission, stipulated by the Ministry of Foreign Affairs, are as follows:**

**Article 3 (Employment contract)**

(1) The recruitment of an administrative employee is completed when the administrative employee, under the mutual agreement with the head of the Mission, signs the employment contract, as specified in Attachment No.1 document.

(2) The duration of the employment contract shall be one year from the date of signing the contract, and, if it is deemed necessary to continue working, the contract may be extended on a yearly basis.

**Article 6 (Remuneration)**

G (사). Severance pay

(1) If a Korean administrative employee who has worked for more than 1 year resigns, the Mission shall pay an average wage of 30 days for one year of continuous service as the severance pay.

A (가). Calculation of severance pay

{ [ (base pay for three months before resignation + discretionary bonus for the past 1 year) / (number of days worked in the 3 months before resignation) ] x 30 } X (total days of work / 365)

**Article 7 (Resignation)**

(1) If an administrative employee falls under any of the following, resignation shall be processed:

3

1. If they submit a resignation letter and wish to resign
2. In case of death
3. If they have reached the retirement age
4. If the employment contract duration expires
5. If their dismissal is determined

**Article 8 (Retirement age)**

(1) The retirement age is 60.

9.　　All such guidelines are assiduously observed by the Mission, including in the case of Mr. Nam during the term of his employment.

10.　　The Mission is not required to issue employees an IRS form W-2 Wage and Tax Statement because the Mission is "exempt from paying Federal, state and local tax." *See* Letter from Office of Foreign Missions, U.S. Dept. of State, dated June 12, 2002 (citing Foreign Missions Act, 22 U.S.C. § 4301), a true copy of which is annexed hereto as **Exhibit "1"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Executed on: 25 August 2021

BYUNGSEOK YOO

LANDRIT ALIBEGU
Notary Public - State of New York
NO. 01AL6399921
Qualified in Richmond County
My Commission Expires Nov 4, 2023

# EXHIBIT 1



**United States Department of State**

**Office of Foreign Missions**
**New York Regional Office**

June 12, 2002

To Whom It May Concern:

In 1982, the United States Congress passed the Foreign Missions Act (22 USC 4301) under which foreign missions, diplomats, and certain other categories of persons, living or traveling in the United States on official business for their government, are granted and exemption from the payment of all State and local restaurant, sales, lodging and similar use taxes.

The Permanent Mission of the Republic of Korea to the United Nations is such a foreign mission and, as such, is exempt from Federal, state and local tax.

If you have any questions, please feel free to call me at 212-826-4500.

Sincerely,

James B. Bond
Regional Director

# EXHIBIT 33

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                          Defendant's Motion for Summary Judgment

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X

HYUNHUY NAM,

                    Plaintiff,

          -against-

                         Case No. 1:21-cv-06165-AJN

PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE
UNITED NATIONS,

                    Defendants.

-----------------------------------------------X

                         136-20 38th Avenue
                         Flushing, New York

                         April 4, 2022
                         3:45 p.m.

    DEPOSITION of TAEHO KIM, a non-party

witness on behalf of the Defendant herein, taken

by the attorneys for the Plaintiff, pursuant to

Notice, held at the above time and place before

Maria Lemmo, a Stenotype Reporter and Notary

Public within and for the State of New York.

```
                                                                    2

  1   A P P E A R A N C E S :

  2

  3   HANG & ASSOCIATES, PLLC
      Attorneys for Plaintiff
  4        136-20 38th Avenue, Suite 10G
           Flushing, New York 11354
  5
      BY:  SHAN ZHU, ESQ.
  6        YONGJIN BAE, ESQ.

  7
      KIM, CHO & LIM, LLC
  8   Attorneys for Defendant
           460 Bergen Boulevard, Suite 305
  9        Palisades Park, New Jersey 07650

 10   BY:   JOSHUA S. LIM, ESQ.

 11

 12

 13

 14   ALSO PRESENT:

 15   SEAN KIM, Korean Interpreter
      Eiber Translations
 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

3

1

2    S E A N   K I M, the Korean Interpreter herein,

3    was duly sworn to interpret the questions from

4    English into Korean and the answers from Korean

5    into English, to the best of his ability:

6    T A E H O   K I M, the witness herein, having

7    been duly sworn through the Interpreter, was

8    examined and testified as follows:

9    EXAMINATION BY

10   SHAN ZHU, ESQ.:

11       Q.   What is your name, please?

12       A.   Taeho Kim.

13       Q.   What is your address?

14       A.   335 East 45th Street, New York, New York

15   10017.

16       Q.   Mr. Kim, you were here with Mr. Jo

17   throughout his deposition; is that correct?

18       A.   Yes.

19       Q.   So we can go direct to the questions and

20   you're familiar with the rules concerning how to

21   conduct a deposition?

22       A.   Yes, I heard it because at the beginning

23   I heard guidelines.

24       Q.   If you need any break, just let us know.

25       A.   Yes.

5

1                         T. Kim

2    day-to-day job duties?

3        A.   So like Mr. Jo explained earlier about

4    what UN does and the kind of meetings that take

5    place.  I also get involved and I participate in

6    the area of political affairs among these

7    discussions and meetings.

8        Q.   Is that fair to say you will participate

9    in these meetings with Mr. Jo?

10       A.   I cannot say I'm always there with Mr.

11   Jo in all these meetings, because under the

12   political affairs umbrella there are a variety

13   of meetings that take place.  So I attend

14   together with Mr. Jo in some meetings and

15   sometimes we go in separate meetings.

16       Q.   Is that fair to say majority of the time

17   you participated with Mr. Jo together?

18       A.   So it's difficult for me to say it's

19   most of the time that's the case.  I think to put

20   it another sense, we work in the same department.

21       Q.   Also, earlier Mr. Jo identified Mr. Nam

22   as his team member.  Are you his team member;

23   would you consider Mr. Nam and Mr. Jo as your

24   team member as well?

25       A.   Yes, in the aspect of the same

6

1                          T. Kim

2    department, yes, I would say he's the same team.

3        Q.   Other than you, Mr. Jo and Mr. Nam as

4    well as the Minister Mr. Chung, is there any

5    other person who you consider as the team member?

6        A.   Well, with regard to this litigation

7    with Mr. Nam's case, I would say just Minister

8    Chung, Mr. Jo and myself are the team members.

9            MR. LIM:  During 2020 and 2021.  If you

10           say Ministers, let's include 2016.  We're

11           talking about 2016 to 2021 because I'm

12           confused.

13       Q.   Let's say for the timeframe February

14   2020 until 2021 July, is there any other person

15   that you consider as a team member other than Mr.

16   Nam, Mr. Kim, Mr. Jo and Minister Chung?

17       A.   So the mission's characteristic is that

18   there's a lot of fluctuation because a lot of

19   turnover happens, someone is assigned someone is

20   not assigned.  This kind of cycle repeats itself,

21   but for the time period that you mentioned, it

22   is true that those three people and Mr. Nam were

23   considered as one team.

24       Q.   My question is, is there any other

25   person?

7

1                           T. Kim

2        A.    In that period of time, we were the ones

3   who mostly worked together as a team.

4        Q.    Procedurally were you required just as

5   the P1 which was submitted by Mr. Nam?

6        A.    So when you say were you required, are

7   you asking me did I also pen my name, put my name

8   down like this?

9        Q.    Yes.

10       A.    No, I don't do that.

11       Q.    Basically under the Mission's policy,

12   who is required to submit the timesheet?

13       A.    So the reason that I did not have to

14   submit this or write is because I was assigned

15   from Korea, so I don't need to submit this or

16   write this.  But as for Mr. Nam's case, he had to

17   do.  Mr. Nam was Korean person here and he was

18   locally hired person so based on the Korean law

19   and principle, he had to do that.

20       Q.    Is that fair statement that any

21   individual who is hired locally is required to

22   record their time?

23       A.    According to the Korean legal system,

24   yes.

25       Q.    Do you consider everyone hired local a

8

```
 1                      T. Kim

 2   diplomatic staff or non-diplomatic staff as based

 3   on your understanding?

 4       A.   It's not a matter of whether one is

 5   diplomatic considered or non-diplomatic

 6   considered required to sign this form

 7   necessarily, but it's based on the Korean system

 8   application.  So if someone is assigned from

 9   Korean and come here, one has to follow the

10   Korean system and in the same way if a person is

11   locally hired, that person also has to follow in

12   the Korean system has to be applied for that

13   person as well.

14           MR. LIM:  Off the record.

15           (Whereupon a discussion was held off the

16       record.)

17       Q.   Again, if you know, would you consider

18   the local hired people both diplomatic staff and

19   non-diplomatic staff?

20       A.   That is correct.  Even though one person

21   is hired locally, that person can play a role of

22   diplomatic staff or non-diplomatic staff, yes, I

23   believe so.

24       Q.   As to Mr. Nam, would you consider he's a

25   diplomatic employee or non-diplomatic employee?
```

35

1                          T. Kim

2          only like one liner, but here it's like six

3          lines, seven lines.  Where does that come

4          from?  Where does that come from?

5               MR. ZHU:  Let's save this dispute.

6          Q.   Please see Plaintiff's Exhibit 4, 2021

7     contract.

8          A.   Yes.

9          Q.   In 2021 Mr. Nam should've retired

10    according to Korean retirement law, right,

11    according to the Korean law, right?

12         A.   So according to Korean law, if a person

13    reaches 60 years of age, then he is of retirement

14    age.  If he becomes 60 at this time, yes, it is

15    correct that retirement age is reached.

16         Q.   But Mission made another contract with

17    Mr. Nam, right?

18              MR. LIM:  Extended contract, is that

19         what you're saying, extended employment

20         time?

21              MR. BAE:  No, they made different

22         contract after Mr. Nam should've retired at

23         the age of 60.

24         A.   So you're saying that the contract was

25    entered into beyond the retirement age; is that

36

1                       T. Kim

2    your question?

3        Q.   Correct.

4        A.   Well, if you look at P4 document, the

5    term of the contract is written on paragraph

6    three, the date is June 30, 2021.  That's when

7    the contract terminates.  So on that year, I

8    remember that there was one-year extension that

9    was agreed to in the year 2020 until he's 61

10   years old, that he agreed to in the previous

11   year.  By June 31, 2021, so he didn't go beyond

12   that, so I cannot say that it went over his

13   retirement age.

14           MR. LIM:  By the way, Counsel, I told

15       you that Mr. Kim is here to answer the

16       questions only related to the ledgers, not

17       anything else.  You're already going beyond

18       the scope of it.  He's not able to answer

19       questions related to anything other than the

20       ledger.  I told you specifically, he's here

21       to answer questions related to the ledgers

22       only.

23           MR. BAE:  I mean then these were related

24       to Mr. Kim.

25           MR. LIM:  That's fine.

42

1                    A C K N O W L E D G M E N T

2

3    STATE OF NEW YORK)

4                ) ss.:

5    COUNTY OF        )

6                I, TAEHO KIM, hereby certify that I

7    have read the transcript of my testimony taken

8    under oath in my deposition of April 4, 2022;

9    that the transcript is a true, complete and

10   correct record of what was asked, answered and

11   said during this deposition, and that the

12   answers on the record as given by me are true

13   and correct.

14

15

16                        _____

17                             TAEHO KIM

18   Subscribed and sworn to

19   before me this ____ day

20   of _____, 2022.

21

22   _____

23        NOTARY PUBLIC

24

25

```
                                                        43
  1                     I N D E X

  2

  3   EXAMINATION OF        BY                      PAGE

  4   Taeho Kim          SHAN ZHU            4-20

  5                      YONGJIN BAE        20-40

  6

  7                   E X H I B I T S

  8   PLAINTIFF'S        DESCRIPTION          PAGE

  9       5           Personal user vehicle    20

 10       6           Phone records            37

 11       7           One-page document        37

 12       8           Notes from deposition    41

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

44

```
 1              C E R T I F I C A T I O N

 2

 3         I, MARIA LEMMO, a Notary Public of the

 4    State of New York do hereby certify:

 5         That the testimony in the within

 6    proceeding was held before me at the aforesaid

 7    time and place.

 8         That said witness was duly sworn before

 9    the commencement of the testimony, and that the

10    testimony was taken stenographically by me, then

11    transcribed under my supervisor, and that the

12    within transcript is a true record of the

13    testimony of said witness.

14         I further certify that I am not related

15    to any of the parties to this action by blood or

16    marriage, that I am not interested directly or

17    indirectly in the matter in controversy, nor am I

18    in the employ of any of the counsel.

19         IN WITNESS WHEREOF, I have hereunto set

20    my hand this 27th day of April, 2022.

21

22

23    _____

24              MARIA LEMMO

25
```

# EXHIBIT 34

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

로그인

시사상식사전                                                                                  보스니아 헤르체고비나 사라...

지식리스트 | 수정문의      공유      인쇄

함께 많이 본

의전 [疑戰]
한국민족문화대백과                              

의전 [儀典]
경찰학사전

의전서열 [儀典序列]
경찰학사전                                    

검은 코끼리                                    
시사상식사전

국가의전 [國家儀典]
두산백과                                      

의학전문대학원                                  
시사상식사전

비서                                         
한국직업사전

예절                                         
천재학습백과 초등 봄 여름 가을 겨울 용...

펀드리콜제                                     
시사상식사전

의전 [儀典]
한국민족문화대백과

시사상식사전

## 의전

  예(禮)를 갖추어 베푸는 각종 행사 등에서 행해지는 예법으로, 예(禮)를 일정하게 틀을 갖춘 조직단위, 국가, 또는 국제 간의 공식적 관계에 적용할 때를 일컫는다. 오늘날의 의전은 행사에서만 나타나는 것은 아니며, 국민의례, 국기게양과 같이 국가 상징에 대한 예를 갖추는 것도 광의의 의전이라 할 수 있다.

| 외국어 표기 | 儀典(한자)<br>protocol(영어) |
| --- | --- |



출처: 게티이미지 코리아

의전은 예(禮)를 갖추어 베푸는 각종 행사 등에서 행해지는 예법으로서 '사람과 사람의 관계를 평화스럽게 하는 기준과 절차'를 말한다. 예(禮)를 생활규범으로서 일상생활 속에서 개인 간의 관계를 규율할 때 적용하면 예절(etiquette)이라 하고, 일정하게 틀을 갖춘 조직단위, 국가, 또는 국제 간의 공식적 관계에 적용할 때는 의전(protocol)이라 부른다. 오늘날의 의전은 행사에서만 나타나는 것은 아니며, 국민의례, 국기게양과 같이 국가 상징에 대한 예를 갖추는 것도 광의의 의전이라 할 수 있다.

시사상식사전                                                          전체보기

이상화                                        
시사상식사전

의전                                         
시사상식사전

6월 항쟁                                      
시사상식사전



## 의전의 역사

로그인

된 《경국대전》 6전 중 예전에는 의장(복식), 의주(국가의 전례 절차), 조정의 의식, 국빈을 대접하는 연

회, 중국 및 기타 외국 사신을 접대하는 방식, 제례, 상장 등의 의전 사항이 규정되어 있었다.

한편, 서양의 의전(protocol)은 그리스어의 'protokollen'에서 유래되었다. 이는 'proto(맨 처음)'와 'kol

len(붙이다)'이 합성된 단어로, 당초 공증문서에 효력을 부여키 위해 문서 맨 앞 장에 붙이는 용지를 뜻하

는 말이었으나 이후 외교를 담당하는 정부의 공식 문서, 외교문서의 양식을 뜻하게 됐다. 서양의 의전은 1

9세기 초 확립되었다고 보는 것이 일반적인데, 특히 나폴레옹 전쟁 이후 개최된 1815년 '비엔나 회의(Vi

enna Congress)'에서는 국제의전에 관한 원칙이 정해졌고, 이는 1961년 체결된 '외교관계에 관한 비엔

나 협정'으로 이어져 오늘날과 같은 의전 관행이 전 세계에서 확립되었다. 이 원칙에 따르면 여러 나라

의 국기를 게양할 때에는 주최국 국기를 가장 중앙에 놓고, 나머지 국기는 영문 알파벳 순으로 게양한

다. 또 대사들 간의 서열은 그 해당 주재국에 신임장을 먼저 증정한 순으로 한다는 등의 내용이 포함돼 있

다.

# 의전의 5가지 원칙(5R)

### 상대에 대한 존중과 배려(Respect)

개인, 조직, 국가 등 인류의 활동 주체들은 생활양식이나 문화에서 많은 차이를 보인다. 이에 의전의 바탕

은 상대의 생활양식 등 문화와 상대방에 대한 존중과 배려에 있다. 의전의 출발점은 서로의 다름을 인정하

는 것이며, 의전의 종결점은 다름을 효과적으로 조율하는 것이다.

### 문화의 반영(Reflecting culture)

의전 격식 및 관행은 특정 시대나 지역의 문화를 반영하므로, 세상이 변화하면 문화도 변화하고 의전 관행

도 바뀔 수 있다. 따라서 의전의 기준이나 절차는 때와 장소, 처한 상황에 따라 가변적이다.

### 상호주의(Reciprocity)

상호주의는 내가 배려한 만큼 상대방으로부터 배려를 기대하는 것이다. 의전상 결례가 불가피했던 경

우 사전이나 사후에 충분한 설명을 통해 상대의 이해를 구하려는 노력이 있어야 한다. 다만 의전의 상호주

의가 항상 등가로 작용하는 것은 아니며, 엄격히 적용되기 어려운 측면도 있다.

### 서열(Rank)

의전 행사의 기본은 참석자 간에 서열을 지키는 것이다. 정부 행사에서 공식적으로는 헌법, 정부조직

법, 국회법, 법원조직법 등 법령에서 정한 직위 순서를 기준으로 하고, 관례적으로는 정부 수립 이후부

터 시행해 온 정부 의전 행사를 통하여 확립된 선례와 관행을 기준으로 한다. 서열을 무시하는 것은 해

당 인사뿐 아니라 그 인사가 대표하는 국가나 조직에 대한 모욕이 될 수 있으므로, 외국 대사들은 사적

인 파티에서도 지위에 맞지 않는 좌석 배치 등에 대하여 강하게 항의하고 때로는 퇴장을 불사한다.

### 오른쪽이 상석(Right)

ROKPM0113

로그인

# 한국의 의전

우리나라는 국가 주요 인사에 대한 의전 예우 기준을 공식적으로 정한 명문 규정은 없으나, 국경일이나 대통령 취임식 등 국가 주요 행사를 통해 관행으로 어느 정도 정해져 있다. 일반적 예우 기준은 헌법 등 법령에 근거한 공식적인 것과 공식 행사의 선례 등에서 비롯된 관례적인 것으로 나뉜다. 공식적인 것은 헌법, 정부조직법, 국회법 및 법원조직법 등 법령에서 정한 직위 순서를 기준으로 하며, 관례적인 것은 정부 수립 이후부터 시행했던 정부 의전 행사를 통해 확립된 선례나 관행을 따르는 것을 말한다.

현재 정부 의전 행사의 주요 참석 인사에 대한 예우 기준은 직위에 따라 ▷직급(계급) 순위 ▷헌법 및 정부 조직법상의 기관 순위 ▷기관장 선순위 ▷상급기관 선순위 ▷국가기관 선순위로 서열 기준이 정해진다. 공적 직위가 없는 인사의 경우 ▷전직 ▷연령 ▷행사 관련성 ▷정부 산하단체, 공익단체 협회장, 관련 민간단체장의 기준으로 서열이 정해진다. 다만 실제 공식 행사에 적용할 때는 그 행사의 성격, 경과 보고, 기념사 등 행사의 역할과 당해 행사와의 관련성 등을 감안해 결정해야 한다.

이 밖에 대한민국의 국가의전은 행정안전부에서 발간하는 〈정부의전편람〉에 기록되어 있다. 〈정부의전편람〉에는 ▷국가 상징과 국민의례 ▷정부의 의전 기준 및 절차 ▷국가의 경축·기념행사 ▷국가장 등 장례의식 ▷국무회의 및 차관회의 운영 등에 관한 의전 내용이 수록되어 있다.

**마지막 수정일**

2019. 10. 24.

**출처**

**시사상식사전**

저자   pmg 지식엔진연구소

제공처   박문각   ⓟⓜⓖ 박문각   http://www.pmg.co.kr   제공처의 다른 책 보기

본 콘텐츠의 저작권은 저자 또는 제공처에 있으며, 이를 무단 이용하는 경우 저작권법 등에 따라 법적책임을 질 수 있습니다.
외부 저작권자가 제공한 콘텐츠는 네이버의 입장과 다를 수 있습니다.

| 유익해요 | 더 알고 싶어요 | 담아갈게요 | 수정해주세요 |
|---|---|---|---|
| 10 | 2 | 0 | 0 |

공유          인쇄

ROKPM0114

# EXHIBIT 35

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

로그인

시사상식사전                                                                                    보스니아 헤르체고비나 사라...

지식리스트 | 수정문의          공유        인쇄

함께 많이 본

의전 [擬戰]
한국민족문화대백과

의전 [儀典]
경찰학사전

의전서열 [儀典序列]
경찰학사전

검은 코끼리
시사상식사전

국가의전 [國家儀典]
두산백과

의학전문대학원
시사상식사전

비서
한국직업사전

예절
천재학습백과 초등 봄 여름 가을 겨울 용...

펀드리콜제
시사상식사전

의전 [儀典]
한국민족문화대백과

시사상식사전

## UEI-

[Uei-jeon] is a method of etiquette performed at various events hosted as courtesy and refers to the etiquette as applied to formal relationship between nations or in an international setting or between organizations. Today, Uei-jeon is used not only in such events but its broad term also includes the Pledge of

Foreien            儀典 (Chinese

protocol (English


Source: GettyImage

[Uei-jeon] is a method of etiquette performed at various events hosted as courtesy and refers to "the standard and procedures to make peace in the relationship between individuals." When manners are applied in regulating the relationship between individuals, it is called "etiquette" and when applied to formal relationship between nations or in an international setting or between organizations, it is called Uei-jeon or protocol. Today, Uei-jeon is used not only in such events but its broad term also includes the Pledge of Allegiance and

## HISTORY OF UEI-

시사상식사전                                전체보기

이상화
시사상식사전

의전
시사상식사전

6월 항쟁
시사상식사전





# A-521

Uei-

로그인

Uei-jeon for clothing (outfit), procedural (national precedent), conciliation ritual, hosting state guests in state conventions, hosting China and other foreign envoys, ceremonials (memorials and festivals), certifications (testimonials), etc. is regulated in the chapter for etiquette in one of the 6 chapters of the <Statecraft Encyclopedia>.

On the other hand, the Western Uei-jeon, derives from the Greek word "protokollen". The word is made up of the prefix "proto" meaning first and suffix "kollen" meaning to adhere to. At the time, Uei-Jeon was meant to be a piece of paper attached to the front page of a document to give an effect to the original notarized document. Since then, it has changed its definition, where it now means the official document of the government in charge of diplomacy, the format of diplomatic documents. It is said to be believed that the Western
Uei-Jeon were established in the early 19th century. In particular, after the Napoleonic Wars, the 1815 "Vienna Congress (Vienna Congress)", the principles regarding the international conventions were established. In 1961, the "Vienna Convention on Diplomatic Relations" was signed, which established today's ceremonial practices around the world. According to this principle, when flags of several countries are

## The Five Principals of Uei-Jeon

### Respect and Consideration for others

Human activity subjects such as individuals, organizations, and nations show many differences in lifestyle and culture. Therefore, the basis of the ritual is respect and consideration of the other's lifestyle, culture, etc. The starting point of the protocol is to acknowledge each other's differences. The end point of the protocol is to effectively

### Reflecting Culture (Reflecting

Since the ceremonial formalities and practices reflect the culture of a particular era of region, as the world changes, so does the culture. Therefore, the standards and procedures of the protocol are variable depending on the time, place, and situation.

### Reciprocity

Reciprocity is expecting the other person to care as much as you care. If disrespect is unavoidable due to protocol, efforts should be made to seek the understanding of the other party through sufficient explanation before or after. However, the reciprocity of the protocol is not always equivalent, and there are aspects that are difficult to apply

### Rank (Rank)

The basis of ceremonial events is to maintain order among the attendees. Officially, at government events, the order of positions set by laws such as the Constitution, the Government Organization Act, the National Assembly Act, and the Court Organization Act is the standard, and customarily, the precedents and practices established through the government ceremonial events that have been implemented since the establishment of the government are the standard. Ignoring the rank can be an insult to not only the person concerned but also to the country or organization that the person represents, so foreign ambassadors strongly protest

### Right Side is the Superior

ROKPM0113

# A-522

로그인

## The Uei-Jeon of the Republic of

In Korea, there is no written regulation that formally sets the standard for ceremonial respect for key national figures, but it is set as a custom through major national conventions such as national holidays and presidential inauguration ceremonies. The standard of general courtesy are divided into those that are official based on laws such as the Constitution, and those that are customary, based on precedents from official conventions. What is official is based on the order of positions set by laws such as the Constitution, the Government Organization Act, the National Assembly Act, and the Court Organization Act, and the customary one refers to following precedents or practices established through government ceremonies that have been implemented since the establishment of the government.

Currently, the standard of courtesy for major attendees of government ceremonial events is determined by ▷ ranks (rank) ▷ organization according to the Constitution and the Government Organization Act
▷ Seniority of Agency Head ▷ Seniority of Senior Organization Priority of State Institution. In case of persons without a public position, ▷ Exchange ▷ Age ▷ Relevance to the event ▷ President of government-affiliated organizations, public interest association heads, and related private organizations. However, when applying to an actual official conventions, the decision must be made in consideration of the nature of the event, the role of the event, such as progress reports and commemorative speeches, and the relevance to the event.

In addition, the national protocol of the Republic of Korea is recorded in the <Government Protocol Handbook> published by the Ministry of Public Administration and Security. The

Last

2019. 10. 24.

Sources

Dictionary of Current

Author: pmg Knowledge Engine

Provider:    ⓟⓜⓖ 박문각    http://www.pmg.co.kr    See other books by the

본 콘텐츠의 저작권은 저자 또는 제공처에 있으며, 이를 무단 이용하는 경우 저작권법 등에 따라 법적책임을 질 수 있습니다.
외부 저작권자가 제공한 콘텐츠는 네이버의 입장과 다를 수 있습니다.

| 유익해요 | 더 알고 싶어요 | 담아갈게요 | 수정해주세요 |
|---|---|---|---|
| 10 | 2 | 0 | 0 |

공유    인쇄

ROKPM0114

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to the client hereby certify that:

    1.    I am a Korean/English interpreter and translator with 20 years of experience.

    2.    I am currently registered with the United States District Court for the Southern District of New York.

    3.    The attached documents bearing Bates Stamp "ROKPM0112-T" through "ROKPM0114–T" (bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of the original documents bearing Bates Stamp "ROKPM0112" through "ROKPM0114" (bottom right corner).

_____

Fran S. Yoon

July 26, 2022

# EXHIBIT 36

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment







# EXHIBIT 37

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-527**

# SETTLEMENT AGREEMENT

Employer (deputy) Address: 330 E 38St, NYC, NY (100166)

Name: Jinho Jo


Employee Address: 128 w central Blvd palisades park. NJ

Name: Hyunhuy Nam



- Substance of the Settlement -


The above two sides execute this agreement because they have agreed not to assert civil and criminal claims in the future with respect to the termination of the employment relationship of the local employee (Hyun-Hee Nam) as of June 30, 2021


September 1, 2020



| Parties to the agreement | Employer (Deputy) Name: Jinho Jo | [signed] |
|---|---|---|
| | Employee Name: Hyunhuy Nam | [signed] |

ROKPM00048 - T

**A-528**

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 38

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-530**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/21/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Hyunhuy Nam,

               Plaintiff,

        –v–

Permanent Mission of the Republic of Korea to the United
Nations, *et al.*,

               Defendants.

---

21-cv-06165 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff Hyunhuy Nam ("Nam") brings this action against his former employer alleging

violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the New

York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law

("NYCHRL"). Defendants Permanent Mission of the Republic of Korea to the United Nations

("Permanent Mission"), Hyun Cho, Jinho Jo, and Daeyong Chung (collectively, "Defendants")

are a foreign mission and its diplomatic staff. Compl. ¶¶ 4–15, Dkt. No. 11. Defendants move to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

jurisdiction, invoking the Vienna Convention on Diplomatic Relations ("VCDR") and the

Foreign Sovereign Immunities Act ("FSIA"). In the alternative, they move to dismiss under Rule

12(b)(6) because Nam previously released his claims against Defendants. For the reasons that

follow, that motion is GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

###    A. Factual Summary

**A-531**

The following facts are taken from Plaintiff's complaint. Nam is a 61-year-old permanent resident of the United States who lives in New Jersey. Compl. ¶ 25. Defendant Permanent Mission is a foreign consulate located in Manhattan. *Id.* ¶ 4. Defendant Hyun Cho ("Cho") serves as Ambassador of the Permanent Mission and Defendants Jinho Jo ("Jo") and Dayong Chung ("Chung") serve as Counselor and Minister respectively (collectively, "Individual Defendants"). *Id.* ¶¶ 4–15.

After responding to an online job advertisement placed by the Permanent Mission, Nam was hired by Defendants in 2016. *Id.* ¶¶ 35–36. Nam was responsible for driving members of the Permanent Mission staff and their families or guests in a vehicle owned by the Mission. *Id.* ¶¶ 38, 41, 47. Though Nam's official title was Chauffeur/Administrative Assistant, Nam states that he worked only as a chauffeur or driver for the Permanent Mission and its staff. *Id.* ¶ 37. Defendants characterize Nam as a "member[] of the staff of the mission in the domestic service of the mission." Defendants' Memorandum in Law in Support of Motion to Dismiss ("Defs. Br.") at 11 (quoting VCDR, art 1(g), Apr. 18, 1961, 23 U.S.T. 3227). Defendants do not proffer that Nam had any other responsibilities beyond that of a driver. Nam alleges that during his employment, Defendants underpaid him and pressured him to retire when he reached the age of 60. *See* Compl. ¶¶ 67–100. On September 1, 2020, Nam signed a "Settlement Agreement" with Jo. *Id.* ¶ 94. The agreement stated that Nam would "not . . . raise civil and criminal claims in the future with respect to the termination of the employment relationship . . . as of June 30, 2021." Translated Settlement Agreement at 3, Dkt. No. 24-7. Nam's employment was ultimately terminated on June 30, 2021. Compl. ¶ 100.

**B. Procedural History**

2

On July 20, 2021, Nam filed a complaint against Defendants alleging multiple violations of federal, state, and city employment law. Dkt. No. 11. As to his compensation, he brings claims of unpaid overtime under the FLSA and the NYLL as well as unpaid promised wage, unpaid spread-of-hours wages, and wage notice and wage statement violations under the NYLL. He also brings age discrimination and hostile work environment claims under both the NYSHRL and the NYCHRL.

On September 30, 2021, Defendants moved to dismiss the case pursuant to Rule 12(b)(1), arguing that they are shielded by sovereign immunity under the VCDR and the FSIA. Defs. Br. In the alternative, Defendants move to dismiss under Rule 12(b)(6), arguing that the signed settlement agreement between the parties precludes liability. *Id.* The motion is fully briefed. Defs. Br., Pl. Br., Dkt. No. 33, Defs. Reply, Dkt. No. 41.

On December 13, 2021, Defendants filed a motion to stay discovery pending resolution of their motion to dismiss. Dkt. No. 48. After full briefing, the Court denied that motion to stay. Dkt. Nos. 56, 60.

## II.   LEGAL STANDARD

When confronted with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6), a court must first consider the Rule 12(b)(1) challenge because if it dismisses the complaint for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (citation omitted).

As to the Individual Defendants, diplomatic immunity is governed by the Vienna Convention on Diplomatic Relations. *Broidy Cap. Mgmt. v. Benomar*, 944 F.3d 436, 441 (2d Cir.

2019).[1] "Diplomatic agents," a term that includes "the head of the mission" and "member[s] of the diplomatic staff of the mission," receive broad immunity. *Id.* at 442 & n.3 (quoting VCDR, art. 1(e)). Only "limited exceptions" can abrogate that immunity. *Tachiona v. United States*, 386 F.3d 205, 215 (2d Cir. 2004). In this circuit, "the plaintiff must prove by a preponderance of the evidence that an exception to diplomatic immunity applies." *Broidy*, 944 F.3d at 443.

As to the Permanent Mission, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The FSIA is the only act that provides for exceptions from foreign sovereign immunity. *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069 (2021).

This case concerns the commercial-activity exception of the FSIA. That exception abrogates immunity when the controversy is "based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). The Supreme Court instructs that "a state engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Nelson*, 507

---

[1] Article 31 of the VCDR provides in relevant part:

> (1) A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
>> (a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
>> (b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;
>> (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

U.S. at 360 (cleaned up). A foreign sovereign's motives are immaterial to this analysis. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). "Instead, courts ask whether 'the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Pablo Star Ltd. v. Welsh Gov't*, 378 F. Supp. 3d 300, 308 (S.D.N.Y. 2019), *aff'd*, 961 F.3d 555 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069 (2021) (quoting *Nelson*, 507 U.S. at 360–61).

A foreign state employer-employee relationship can be "commercial" depending upon the context. *Kato v. Ishihara*, 360 F.3d 106, 111 (2d Cir. 2004). "The question courts must ask when evaluating whether a particular employee is engaged in public acts or instead in commercial activity is 'whether [his] activities . . . were typical of a private party engaged in commerce.'" *Mourmouni v. Perm. Mission of Republic of S. Sudan to U.N.*, No. 20-CV-3603 (JPO), 2021 WL 4461829, at *2 (S.D.N.Y. Sept. 28, 2021) (quoting *Kato*, 360 F.3d at 111). "If there is 'nothing quintessentially governmental' about the employee's work . . . the commercial exception applies and U.S. courts may adjudicate the employee's claims." *Id.* (quoting *Pablo Star*, 961 F.3d at 564). If, however, the employee is a "civil servant" or a "*bona fide* public servant," their employment falls outside the scope of the commercial-activity exception. *Pablo Star*, 961 F.3d at 563–64.

This exception also requires that the commercial activity has "substantial contact with the United States." 28 U.S.C. § 1603(e). The exact contours of this standard are "poorly defined." *Pablo Star*, 961 F.3d at 563–64. But "it is clear that Congress intended a tighter nexus than the minimum contacts standard for due process." *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1019 (2d Cir. 1991).

Once the plaintiff makes an initial showing that an exception to sovereign immunity

applies, the defendant "bears the burden of proving, by a preponderance of the evidence, that the

alleged exception does not apply." *Pablo Star*, 961 F.3d at 559. In resolving this jurisdictional

dispute, the court may not construe disputed issues of fact in favor of one party or another. *Id.*

Additionally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). Granting a motion to dismiss is proper "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. An

affirmative defense of release may be raised under a Rule 12(b)(6) motion to dismiss provided

that "all relevant facts are shown by the court's own records." *Patrowicz v. Transamerica

HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). The Court may consider only the

allegations in the complaint, documents attached to the complaint as an exhibit or incorporated in

it by reference, matters of which judicial notice may be taken, or "documents either in plaintiffs'

possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v.

Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*,

987 F.2d 142, 150 (2d Cir. 1993)).

## III. DISCUSSION

### A. Individual Defendants are Entitled to Immunity

As Ambassador, Counselor, and Minister of the Permanent Mission, each of the

Individual Defendants is entitled to immunity under the VCDR given their uncontested status as

diplomatic agents. Defs. Br. at 7; *see Broidy*, 944 F.3d at 442. Nam, having failed to argue that

an exception to the Individual Defendants' diplomatic immunity applies, has not proven by a

preponderance of the evidence that an exception applies. Therefore, the Individual Defendants

6

are entitled to immunity and dismissed from the action. *See Mourmouni*, 2021 WL 4461829, at

*1.

### B. The Commercial-Activity Exception to Sovereign Immunity Applies to the Permanent Mission

The remaining Defendant, the Permanent Mission, is not entitled to sovereign immunity

because the commercial-activity exception applies. Defendants dispute that Nam's "driving

activities" included errands or trips beyond those "in service of the Mission, its Diplomats, staff,

and their families." Defs. Br. at 11. But even assuming that Nam's work was limited in such a

manner does not place this employer-employee relationship outside the commercial-activity

exception. The hiring, employment, and termination of a chauffeur is not a "power[] peculiar to

sovereigns." *Nelson*, 507 U.S. at 360. Rather, "[e]very aspect of the [sovereign's] *conduct* that

forms the basis of [Nam's] claim could have been done by a private party for commercial gain."

*Pablo Star*, 961 F.3d at 564. The employment of a chauffeur is more analogous to the

employment of "laborers, [or] clerical staff"—which constitute commercial activity—than the

employment of "diplomatic, civil service, or military personnel"—which is quintessentially

governmental. *Kato*, 360 F.3d at 110 (quoting H.R. Rep. No. 94–1487, at 16 (1976), *reprinted in*

1976 U.S.C.C.A.N. 6604, 6615); *see also Zveiter v. Brazilian Nat. Superintendency of Merch.*

*Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y. 1993) (Sotomayor, J.) (reviewing the FSIA's

legislative history to conclude that the employment of a secretary by a foreign state is

commercial). The Court is mindful that foreign sovereigns may structure civil service differently

than the United States, but Defendants' characterization of Nam as a "member[] of the service

staff" cannot elevate him to the status of a *bona fide* public servant when, at present, Defendants

have not proffered that Nam had responsibilities beyond chauffeuring. Defs. Br. at 11; *Kato*, 360

F.3d at 114 (instructing that the FSIA "should be interpreted to include the broad range of civil

service employment relationships used by countries other than the United States."). The Court concludes that Nam was not employed in a quintessentially governmental capacity.

That conclusion is consistent with a recent decision in this district that involved virtually identical facts and claims. There, two chauffeurs alleged violations of the FLSA and the NYLL against their employer, the Permanent Mission of the Republic of South Sudan and its Deputy Permanent Representative. *Mourmouni*, 2021 WL 4461829, at *1. Defendants moved to dismiss on sovereign-immunity grounds. *Id.* The court granted the motion as to the individual representative but denied the motion as to the permanent mission, applying the commercial-activity exception. *Id.* at *3. The court reasoned that the plaintiffs' work was not "quintessentially governmental" because it was "limited to the [ordinary] tasks of driving the Permanent Mission's staff and their families, delivering packages, and maintaining the Permanent Mission's vehicles." *Id.* at *2–3. In that situation, "the work performed by a chauffeur for a permanent mission 'is activity that could be, and in fact regularly is, performed by private-sector businesses,' such as car services and corporations employing in-house executive chauffeurs." *Id.* at *3 (quoting *Pablo Star*, 961 F.3d at 559). "There is no basis for granting a foreign state immunity for its exploitation of chauffeurs whose work is important but no different from work performed in the private sector." *Id.*

To be sure, several earlier decisions in this district have reached the opposite conclusion on similar facts. *See, e.g.*, *Figueroa v. Ministry of Foreign Affs. of Swed.*, 222 F. Supp. 3d 304 (S.D.N.Y. 2016); *Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020). But like the court in *Mourmouni*, this Court declines to follow those cases. In *Figueroa*, for example, the court found that "transportation responsibilities as a chauffeur at the Mission were sufficiently intertwined with the diplomatic function of the Mission such that the

8

employment itself was part of the defendants' sovereign function." *Figueroa*, 222 F. Supp. 3d at 315. But, as *Mourmouni* observed, that case is distinguishable on its "exceptional" facts because the chauffeur in question was responsible for driving members of Sweden's royal family. *Mourmouni*, 2021 WL 4461829, at *3 ("It is within reason to believe that driving literal royalty through New York City is materially distinguishable from the work of the average Uber or Lyft driver.").

More importantly, the *Figueroa* court did not have the benefit of the Second Circuit's reasoning in *Pablo Star* decided four years after. In *Pablo Star*, the Second Circuit clarified that a court's inquiry in applying the commercial-activity exception turns on the activity's "outward form" (in that case, the "unauthorized use of photographs on promotional websites") as opposed to the *purpose* of the sovereign's activity (in that case, promoting tourism to the foreign country). 961 F.3d at 564–65. That the unauthorized use of a photograph "was done by a government body pursuant to its statutory authority in order to promote tourism, rather than to make a profit, goes to the activity's *purpose* rather than its 'outward form.'" *Id.* at 564 (emphasis added). The reasoning in *Figueroa* hinged on the mission's purpose in employing a chauffeur ("the safe transport of Swedish dignitaries") as opposed to the conduct's outward form (the employment of a driver). 222 F. Supp. 3d at 315. This reliance on "a very broad characterization of the activity" incorrectly "conflate[s] the act with its purpose." *Pablo Star*, 961 F.3d at 562. Such a broad characterization elucidates the reasons for the sovereign's actions, but "not what it did to accomplish its goals." *Id.* at 562. Take, for example, the employment of a secretary. Even if the secretary is employed to further the mission of the foreign state, that employment would fall into the commercial-activity exception because "the foreign sovereign enters the marketplace and acts just as a private party would [to employ the secretary]." *Zveiter*, 833 F. Supp. at 1093.

The *Bardales* court relied heavily on the reasoning in *Figueroa* and concluded that a plaintiff's employment that included, but was not limited to, chauffeuring duties, was not commercial. *Bardales*, 490 F. Supp. 3d at 705. That plaintiff had responsibilities apart from chauffeuring, including "actually provid[ing] consular services, and serv[ing] as a direct representative of the Consulate," all of which, the court found, "went beyond . . . clerical tasks." *Id.* at 703. Thus, on its facts, *Bardales* is distinguishable because Nam alleges that he worked only as a chauffeur. To the extent that *Bardales* concluded that chauffeuring itself is quintessentially governmental in nature, this Court disagrees, finding it inconsistent with *Pablo Star*.[2]

Once a court determines that the conduct was commercial, it must also determine if the activity had "substantial contact with the United States." 28 U.S.C. § 1603(e). The court concludes that the conduct alleged in the complaint—including the hiring, employment, and termination of a driver over the span of approximately five years in New York and New Jersey—meets the standard for substantial contact. *See, e.g.*, *Everard Findlay Consulting, LLC v. Republic of Surin.*, 831 F. App'x 599, 601 (2d Cir. 2020) (finding substantial contact when many aspects of a contract were negotiated in, performed in, and targeted the United States); *Pablo Star*, 961 F.3d at 565 (finding substantial contact when "the Welsh Government played an active role in the United States in the development and distribution in New York of promotional materials").

---

[2] Defendants also rely on *Crum v. Kingdom of Saudi Arabia*, which concluded that employing a chauffeur did not fall into the commercial-activity exception. No. 05-275, 2005 WL 3752271 (E.D. Va. July 13, 2005). Given that this out-of-circuit case does not account for *Pablo Star*, the Court does not find this case persuasive and declines to follow it.

Defendants assert that applying the commercial-activity exception here would "seriously infringe upon and impair the normal diplomatic balance" between the United States and foreign countries. Defs. Br. at 7. This argument, even if true, does not override the FSIA and the binding interpretation of its provisions. Moreover, "[c]ourts around the world have permitted embassy and consulate chauffeurs to bring cases under the restrictive theory of state immunity that the FSIA codifies." *Mourmouni*, 2021 WL 4461829, at *3. This ruling will not disturb international norms when "foreign courts would already allow chauffeurs employed by a U.S. embassy or consulate to bring claims relating to unlawful labor conditions." *Id.*

### C. The Settlement Agreement Does Not Release the Remaining Defendants from Liability for the Claims At-Issue

Finally, the Court denies Defendants' motion to dismiss pursuant to Rule 12(b)(6). Defendants argue that the settlement agreement Nam signed was valid, enforceable, and bars all of his employment-related claims. Since such a reading of the agreement would contravene its plain language, the Court cannot interpret the settlement in that way.

The one-page settlement agreement bars Nam only from bringing claims "with respect to the *termination* of the employment relationship . . . as of June 30, 2021." Translated Settlement Agreement at 3 (emphasis added). But the claims Nam brought arise from conduct that occurred during the course of his employment—like his wages, hours, and an allegedly hostile work environment—not from his termination. Nam does not bring, for example, a claim of wrongful termination or any claim related to the events of June 30, 2021, which, by the plain language of the agreement, would be barred. This Court disagrees with Defendants' characterization of the settlement agreement as "permissibly broad" enough to sweep in all or any of Nam's claims when it refers only "to the termination of the employment relationship." Defs. Br. at 16; *see Termination*, Black's Law Dictionary (11th ed. 2019) ("The complete severance of an employer-

**A-541**

employee relationship."); *cf. McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (defining a wrongful-termination claim based on the circumstances of a plaintiff's discharge by the employer). Even assuming that the settlement agreement was validly executed and is enforceable, its text does not preclude Nam's claims. Therefore, the Court denies Defendants' motion to dismiss on this basis.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The Court dismisses Individual Defendants Cho, Jo, and Chung from the action and denies the motion to dismiss claims against the Permanent Mission.

As previously ordered, the Court will hold a case management conference on April 15, 2022, at 3:15 p.m.

This resolves docket number 24.

SO ORDERED.

Dated: January 21, 2022
    New York, New York

_____

ALISON J. NATHAN
United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam, | |
| Plaintiff, | Case No. 1:21-cv-06165 |
| - against - | **NOTICE OF MOTION** |
| Permanent Mission of the Republic of Korea to the United Nations, | |
| Defendant. | |

**PLEASE TAKE NOTICE** that Plaintiff Hyunhuy Nam, by and through their attorneys, Hang & Associates, PLLC, will move this Court at the United States Courthouse for the Southern District of New York, located at 40 Foley Square, New York, New York, 10007, before the Honorable RONNIE ABRAMS, at a time and date to designated by the Court, for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting Partial Summary Judgment in favor of Plaintiff Hyunhuy Nam against Defendant Permanent Mission of the Republic of Korea to the United Nations and for such other and further relief as the Court deems just, proper, and equitable.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff will rely on the concurrently-filed Memorandum in Support of Motion, Declaration of Yongjin Bae in Support of the Motion, the Rule 56.1 Statement of Undisputed Material Facts, the Proposed Order, the pleadings and papers on file in this action, and on such other and further evidence as may be presented prior to, and at, the hearing on this motion.

**PLEASE TAKE FURTHER NOTICE** that opposition papers, if any, shall be filed in accordance with the Court's scheduling order or individual practices, to be entered upon and/or after the filing of the within motion papers.

Dated: Flushing, New York
        July 28, 2022

                                        HANG & ASSOCIATES, PLLC.
                                        /s/ *Yongjin Bae*_____
                                        Yongjin Bae, Esq.
                                        136-20 38th Ave., Suite 10G
                                        Flushing, New York 11354
                                        Tel: 718.353.8588
                                        E-mail: ybae@hanglaw.com
                                        *Attorneys for Plaintiff*

2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

Hyunhuy Nam,

                    Plaintiff,

        - against -

Permanent Mission of the Republic of Korea to the United Nations,

                   Defendant.

Case No. 1:21-cv-06165

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Yongjin Bae, Esq.

Hang & Associates, PLLC

136-20 38th Avenue, Ste 10G

Flushing, NY 11354

1

**Table of Contents**

PRELIMINARY STATEMENT .......................................................................... **5**

FACTUAL BACKGROUND ............................................................................... **5**

LEGAL STANDARD ........................................................................................... **7**

ARGUMENT ......................................................................................................... **8**

   **I.**   THIS COURT SHOULD GRANT NAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT
BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT, AND NAM IS ENTITLED TO
JUDGMENT AS A MATTER OF LAW. ......................................................................... 8

    *A.*  *The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign Immunities
Act's Commercial Activity Exception* ..................................................................... 8

    *B.*  *Permanent Mission Engaged in Commercial Activity by Hiring Nam as a Chauffeur,
Utilizing Nam's Service to Perform Activities That Were Non-Governmental, and Using
Nam In Furtherance of Conducting Commercial Activity.* .................................... 9

    *C.*  *Permanent Mission Is Nam's Employer Under FLSA and NYLL.* ........................... 10

    *D.*  *Permanent Mission Failed to Pay Nam's Overtime Pay as Required by FLSA and
NYLL.* ..................................................................................................................... 12

    *E.*  *Nam Is Entitled to Liquidated Damages Under FLSA and NYLL.* ........................... 15

    *F.*  *Permanent Mission Violated New York Paystub Violation.* ....................................... 16

    *G.*  *Permanent Mission Violated New York Time of Hire Wage Notice.* .......................... 16

    *H.*  *Nam Is Entitled to Prejudgment Interest.* ................................................................ 17

    *I.*  *Nam Is Entitled to Cost and Attorneys' Fees.* ......................................................... 17

CONCLUSION ...................................................................................................... **18**

<u>C<small>ASES</small></u>

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ------ 6

*Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 439 (1989) ---------------- 7

Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-1059 (2d Cir. 1988) ------------------------ 10

Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, *4 (S.D.N.Y. 2007) -------------------- 10

Carter v. Frito-Lay, Inc., 425 N.Y.S. 2d 115, 115 (1st Dep't 1980),   aff'd, 52 N.Y.2d 994, 438
    N.Y.S.2d 80 (1981) ------------------------------------------------------------------------------------ 16

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ----------------- 6

Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994)--------------------------- 15

Choudhury v. Hamza Express Food Corp., 666 Fed. Appx. 59 (2d Cir. 2016) --------------- 14

D'Amico v. City of N.Y., 132 F.3d 145 (2d Cir.1998)-------------------------------------------------- 6

Gierlinger v. Gleason, 160 F.3d 858, 874 (2d Cir. 1998) --------------------------------------------- 15

Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011)) ------------------------------- 13

Martin v. Priba, 1992 WL 486911 ------------------------------------------------------------------------- 10

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 176 Misc. 2d 325, 336 (N.Y. County
    1997). ----------------------------------------------------------------------------------------------------- 15

McLean v. Garage Mgmt. Corp., 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. April 19,
    2012)------------------------------------------------------------------------------------------------------- 13

*Mukaddam v. Permanent Mission of Saudi Arabia*, 111 F. Supp. 2d 457 (S.D.N.Y. 2000) ----- 9

Redd v. N.Y. Div. of Parole, 678 F.3d 166 (2d Cir.2012) ----------------------------------------------- 6

Reilly v. Natwest Mkts. Group, 181 F.3d 253, 265 (2d Cir. 1999) ------------------------------- 15

Schwind v. EW & Associates, Inc., 357 F.Supp.2d 691, 702 (S.D.N.Y. 2005) ----------------- 10

Zhong v. Zijun Mo, No. 10-CV-0806 (RER), 2012 WL 2923292 (E.D.N.Y. 2012)------------ 10

<u>S<small>TATUTES</small></u>

12 N.Y.C.R.R. § 142-2.2 ------------------------------------------------------------------------------------- 11

28 U.S.C. § 1605(a)(1) and (2)------------------------------------------------------------------------------- 7

28 U.S.C. § 1605(a)(2)------------------------------------------------------------------------------------------ 9

Fed. R. Civ. P. 56(a) ------------------------------------------------------------------------------------------- 6

FLSA 29 U.S.C. § 206(a)(1)------------------------------------------------------------------------------------ 7

FLSA 29 U.S.C. § 207(a)(1)------------------------------------------------------------------------------------ 7

**FLSA 29 U.S.C. § 216(b)** -------------------------------------------------------------------------------- **13, 16**

**FLSA 29 U.S.C. § 260** -------------------------------------------------------------------------------- **13**

**NYCRR § 146-1.2, 12 NYCRR § 146-1.4** -------------------------------------------------------- **7**

**NYLL § 195-1(a)** -------------------------------------------------------------------------- **15**

**NYLL § 195-1(d)** -------------------------------------------------------------------------- **14**

**U.S.C. § 1604** -------------------------------------------------------------------------------- **7**

## **PRELIMINARY STATEMENT**

Plaintiff, Hyunhuy Nam (hereinafter "Nam"), by their attorneys, Hang & Associates, PLLC, respectfully submits this memorandum of law in support of his motion for partial summary judgment against Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission"), seeking an order granting partial summary judgment in his favor and hold Permanent Mission liable for (1) failure to pay overtime pay under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL); (2) failure to pay spread of hours premium under NYLL; (3) failure to provide Wage Notices to Plaintiff at the time of hiring as required by NYLL; (4) failure to provide Paystubs to Plaintiff as required by NYLL; (5) any liquidated damages and/or punitive damages allowed under FLSA and NYLL; (6) reasonable attorneys' fees and cost pursuant to FLSA and NYLL; (7) the cost of disbursement of this action; (8) prejudgment and post-judgment fees; and (9) any other further legal and equitable relief as this Court deems necessary, just, and proper.

For the following reasons, this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

## **FACTUAL BACKGROUND**

This action arises out of Nam's employment at Permanent Mission during the course of performing his duties as a chauffeur for Permanent Mission and for its diplomatic staff to provide transportation. Nam was a former employee of Permanent Mission from around June 28, 2016 to June 30, 2021. Compl. ¶ 25.  Although Nam was hired to work as a chauffeur for Permanent Mission and its staff, Permanent Mission permitted and its diplomatic staff utilized

Nam's service and Permanent Mission's automobile to engage in their personal businesses and providing free transportation for their family, friends, and acquaintances. Id. ¶¶ 38, 41, 47.

In or about June 2016, Nam was searching for employment via the Hey Korean's Website. Nam Decl. ¶4 Hey Korean's Website lists various jobs, such as salesperson, driver, and waiter, in the Korean-language. Id. ¶4 While searching, Nam found a listing for a chauffeur position in the "driver-wanted" section posted by the Permanent Mission. Id. ¶5 Nam applied the position and was subsequently interviewed and hired by the Permanent Mission.  Id. ¶7

Nam officially began his work duties on or about July 1, 2016.  Two days later, Nam was required to sign a "Contract for Employing a Chauffeur" setting forth working hours and other details for a one-year term of employment. Id ¶8.   Nam was required to renew the contract annually, though the listed "employer" changed with the Permanent Mission staff.  Id ¶8 "Contract for Employing a Chauffeur" contains provision with regard to overtime pay. Id ¶9. Though Nam recorded overtime hours and advised staff that such personal tasks were not within the scope of Plaintiff's duties, overtime was ignored and orders for personal tasks continued. Id ¶11.

Throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission did not compensate Nam for overtime compensation according to state and federal laws. Compl. ¶ 74 Permanent Mission paid Nam's overtime wage in accordance with the terms in employment contract and it stated that overtime shall be capped by 52 hours per month.

6

Nam Decl. ¶14 Permanent Mission did not pay Nam's overtime wage although Nam worked more than 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL. Id. ¶ 15

As a result, Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked. Further, Throughout Nam's employment with Permanent Mission, Permanent Mission never gave Nam any wage notices pursuant to New York Labor Law § 195 at Nam's time of hire, and Permanent Mission never gave Nam paystubs along with Permanent Mission's payment to Nam. Id. ¶ 16, 17

## <u>LEGAL STANDARD</u>

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);   see also Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir.2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." Id.

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial.   Id. at 324, 106 S.Ct. 2548 ; see also Anderson, 477 U.S. at 256-57, 106 S.Ct. 2505. The non-moving party "may not rely on

mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful."   D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (collecting cases).

## **ARGUMENT**

I.   **This Court Should Grant Nam's Motion for Partial Summary Judgment Because There Is No Genuine Issue of Material Fact, and Nam Is Entitled to Judgment as a Matter of Law.**

This Court should grant Plaintiff's partial summary judgment motion because there is no genuine issue of material fact, and Plaintiff is entitled to judgment in his favor as a matter of law. Under the FLSA and NYLL, employees must be paid at least the minimum wage rate for each hour worked, and be paid at least the one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. FLSA 29 U.S.C. § 207(a)(1), FLSA 29 U.S.C. § 206(a)(1), 12 NYCRR § 146-1.2, 12 NYCRR § 146-1.4.

Here, throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked.

A.   **The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign Immunities Act's Commercial Activity Exception**

The Foreign Sovereign Immunities Act ("FSIA") provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). Under FSIA, a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States **except** as

8

provided in sections 1605 to 1607 of this chapter." *Id.*; *See also*, U.S.C. § 1604. The two exceptions

relevant to this case are codified at 28 U.S.C. § 1605(a)(1) and (2):

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case –
>> (1) in which the foreign state has waived its immunity either explicitly or by implication . . .
>> (2) in which the action is based upon a **commercial activity** carried on in the United States by the foreign state…. *Id.*

The FSIA expressly provides exceptions to its grant of immunity, including the

commercial activity exception that specifically applies to the instant case. In this case, Permanent

Mission posted a hiring advertisement on Hey Korean's website to hire a chauffeur to work for

Permanent Mission. Compl. ¶35. After Nam learned of Permanent Mission's chauffeur position,

he wrote an email describing his qualifications that he has a Commercial Driver's License and

the years of driving experience as a commercial driver when he forwarded his resume in the

same email. Nam Decl. ¶6. In response to Plaintiff's email, the Permanent Mission Secretary

contacted Plaintiff by sending him a reply email using a *Hotmail* email address. Id. After

Permanent Mission's Secretary conducted an interview, Plaintiff was I was hired as a chauffeur,

as one of Permanent Mission's non-diplomatic employees, and he was *supposed* to drive

Permanent Mission's diplomatic employees (Id.; Nam Decl. ¶¶7,8). However, the nature (as

opposed to the purpose and the job title) of Nam's actual employment and the duties Nam

performed were commercial, rather than governmental, This Court has jurisdiction over

Plaintiff's Complaint under the FSIA's commercial activity exception.

**B. Permanent Mission Engaged in Commercial Activity by Hiring Nam as a Chauffeur, Utilizing Nam's Service to Perform Activities That Were Non-Governmental, and Using Nam In Furtherance of Conducting Commercial Activity.**

Under the commercial activities exception, a foreign sovereign is not immune from suit in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

The Southern District "look[ed] beyond defendant's assertion that plaintiff was hired by the Mission to carry out the diplomatic affairs of Saudi Arabia," but instead "focus[ed] on the Mission's specific act of entering into an employment contract with plaintiff to perform research, writing, and clerical duties on its behalf." *Mukaddam v. Permanent Mission of Saudi Arabia*, 111 F. Supp. 2d 457 (S.D.N.Y. 2000) The Court asserted that "private parties do not maintain a staff to articulate or carry out foreign policy," and defendant erroneously focused upon "the purpose behind plaintiffs employment rather than the Mission's specific conduct of employing her to perform the aforementioned duties." Id. "Because it is clear that private parties in the United States enter into such contracts routinely, the Court finds that Plaintiff's employment with the Mission was commercial, as opposed to governmental, activity. Id.

Here, the work Nam performed for Permanent Mission and its diplomatic staff pursuant to his employment relationship(s) constitutes commercial rather than governmental activity. Accordingly, Nam's employment relationship(s) with Permanent Mission were non-governmental in nature because such relationship and activity are regularly engaged by any private parties.

**C.  Permanent Mission Is Nam's Employer Under FLSA and NYLL.**

10

Section 203(d) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an entity satisfies the definition of employer under the FLSA is a question of law.  Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983), citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33, 81 S. Ct. 933, 936 (1961). "Although the Supreme Court has emphasized that courts should interpret the provisions of the FLSA expansively, an alleged employer must, at a minimum, possess the power to control the workers in question.  Zheng v. Liberty Apparel Co., 2002 WL 398663 at *6 (SDNY) (emphasis added), citing Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999), citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984) [*20]  and 29 CFR § 791.2. Courts should look to the economic reality of the relationship to determine whether a party possesses such control. Liberty Apparel, at *6, citing Goldberg at 33; Bonnette, at 1469.

The Second Circuit has held that the factors of the "economic realities" test are whether the employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4)  maintained employment records.  Carter, 735 F.2d at 12 (citation omitted). Liberty Apparel, at *6. Because the FLSA and New York Labor Law employ similar standards with respect to employment status, the economic reality test has been used to analyze both federal and state wage claims.  Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, *4 (S.D.N.Y. 2007);  Schwind v. EW & Associates, Inc., 357 F.Supp.2d 691, 702 (S.D.N.Y. 2005) (discussing economic realities factors and holding "that plaintiff is an 'employee' under the broad definition of the FLSA, and therefore may be entitled to overtime pay under the FLSA and New York Labor Law for the period in which he was treated as an independent contractor.").

The economic realities test adopted by the Second Circuit examines (1) the degree of control exercised by the putative employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work in as integral part of the putative employer's business.   Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-1059 (2d Cir. 1988). Generally, "[n]o one of these factors is dispositive; rather, the test is based on a totality of the circumstances...The ultimate concern is whether, as a matter of economic reality, the workers depend on someone else's business for the opportunity to render service or are in business for themselves." Id. at 1058-1059. Where the degree of control is so overwhelming as to shut out any possibility for true independence, the factor of control can be determinative.   See Martin v. Priba, 1992 WL 486911.

It is clear from the record evidence including the testimony of Nam in this case that Permanent Mission along with Minister were the "employer" of Nam. Minister is the boss of Nam. Dep of Jinho Jo pp 10-11. Permanent Mission through Minister had power to fire and hire Nam by evaluating Nam's performance annually. Dep of Jinho Jo pp 42. Permanent Mission through Minister supervised and controlled Nam's work schedules or conditions of employment. Dep of Jinho Jo pp 12, 14. Permanent Mission through Minister was involved in the day-to-day operations of Permanent Mission. Jinho Jo pp 10-11. Further, During Nam's employment, they required neither discretion nor independent judgment of Nam. Jinho Jo pp 12, 14. The degree of control by Permanent Mission through Minister over Nam is no doubt at the highest level. Dep of Jinho Jo pp 12, 14. Permanent Mission maintained all employment records and control Nam through Minister, therefore, Permanent Mission is Nam's employer under both FLSA and NYLL.

**D.  Permanent Mission Failed to Pay Nam's Overtime Pay as Required by FLSA and**

12

**NYLL.**

Under the FLSA, employers must pay employees at a rate of 1.5 times the employees' regular rate of pay for any hours worked over 40 hours in a work week. 29 U.S.C. § 207(a)(1). The NYLL incorporates and restates the FLSA, such that the analysis of overtime claims under the NYLL is generally the same as under the FLSA.   See 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended...") An employee's "regular rate" for overtime purposes cannot be less than the lawful minimum wage.

In this case, Permanent Mission failed to pay Nam's overtime pay at one and a half times of the regular hour rate. Throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission did not compensate Nam for overtime compensation according to state and federal laws. Compl. ¶ 74 Permanent Mission paid Nam's overtime wage in accordance with the terms in employment contract. See Exhibit B-F.

In pertinent part, it states:

In 2016 employment contract, Permanent Mission set over time wage as $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.  See Exhibit B. 2016 Employment Contract

In 2017 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit C. 2017 Employment Contract

In 2018 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit D. 2018 Employment Contract

In 2019 employment contract, Permanent Mission set over time wage at $14.76 per hour but paid at a monthly maximum of 52 hours. See Exhibit E. 2019 Employment Contract

In 2020 employment contract, Permanent Mission set over time wage at $13.29 per hour but paid at a monthly maximum of 52 hours. See Exhibit F. 2020 Employment Contract

Permanent Mission's overtime record, attached here as Exhibit I pg 1, shows that Nam's overtime payment was capped by $570 per month although Nam's overtime hours were 82 hours in July 2016. See Exhibit I

Permanent Mission's overtime record, attached here as Exhibit I pg 2, shows that how Permanent Mission calculated Nam's overtime payment and the capped amount of overtime payment was $787 per month regardless of how many hours Nam worked per month as overtime. See Exhibit I

Permanent Mission's overtime record, attached here as Exhibit I pg 3, shows that Nam's overtime payment was capped by $787 per month although Nam's overtime hours 91 hours and 45 minutes in January 2018. See Exhibit I

Due to the cap in the overtime payment, Nam had not received his overtime wage even though his monthly overtime hours exceeded 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL. 56.1 Statement PP19. As a result, Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked for Permanent Mission and has violated the overtime provisions of the FLSA and NYLL .

**E.  Nam Is Entitled to Liquidated Damages Under FLSA and NYLL.**

Nam also entitles Liquidated damages under FLSA and NYLL. Further, liquidated damages in the amount of 100% of the unpaid wages under the FLSA are mandatory.  See, FLSA 29 U.S.C. § 216(b) ("any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. FLSA 29 U.S.C. § 260. Here, Permanent Mission has not met this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. FLSA 29 U.S.C. § 216(b).

The NYLL also provides for a liquidated damages award unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. McLean v. Garage Mgmt. Corp., 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL § 198(1-a)). The pre-amendment willfulness standard is the same as the FLSA's willfulness standard.  Id. ("the NYLL willfulness' standard under the pre-amendment provision 'does not appreciably differ from the FLSA's willfulness standard'") (quoting  Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011)). The post-amendment good-faith standard is the same as the FLSA's good-faith standard for liquidated damages.

Here, Permanent Mission set their own specific cap for overtime wage and did not pay overtime premium beyond their cap. See Exhibit B-G. Given the uncontroverted evidence of Permanent Mission's willfulness and lack of good faith, Nam is entitled to liquidated damages under the NYLL. The NYLL was amended effective April 9, 2011, increasing the recoverable

amount of liquidated damages for unpaid wages to 100 percent; thus, liquidated damages under the NYLL are computed at 100% of the unpaid wages. NYLL § 663(1). Because Nam may not recover both FLSA and NYLL liquidated damages for overlapping periods of time, *Choudhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016) (rejecting cumulative recovery under FLSA and NYLL), Nam requests only NYLL liquidated damages.

### F. Permanent Mission Violated New York Paystub Violation.

The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d). Permanent Mission failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Nam. Due to Permanent Mission 's violations of New York Labor Law, Nam is entitled to recover from Permanent Mission, jointly and severally, $ 250.00 for each workday the violations occurred or continued to occur, up to $ 5,000.00 per plaintiff. NYLL § 198(1-d). Here, Permanent Mission never gave Nam paystubs along with Permanent Mission's payment to Nam and Nam worked more than 20 workdays. As such, Nam is entitled to $ 5,000.00.

### G. Permanent Mission Violated New York Time of Hire Wage Notice.

The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a). Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to

provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment. Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $ 50.00 for each workday the violations occurred or continued to occur, up to $ 5,000.00 per plaintiff. NYLL § 198(1-b). Here, Permanent Mission never gave Nam any wage notices at Nam's time of hire pursuant to NYLL. Nam worked for more than five years, and is thus entitled to $ 5,000.00.

**H.  Nam Is Entitled to Prejudgment Interest.**

Nam also seeks an award of prejudgment interest on the New York law claims for unpaid overtime wages and spread of hours. Under New York law, the court may award prejudgment interest pursuant to NYCPLR § 5001 on an award of back pay.  See McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 176 Misc. 2d 325, 336 (N.Y. County 1997). Under New York law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money.  See Gierlinger v. Gleason, 160 F.3d 858, 874 (2d Cir. 1998);  Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994);  Reilly v. Natwest Mkts. Group, 181 F.3d 253, 265 (2d Cir. 1999),  cert. denied, 528 U.S. 1119 (2000). In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is because under New York law liquidated damages are considered a penalty, a sanction for willfully failing to pay wages.  Carter v. Frito-Lay, Inc., 425 N.Y.S. 2d 115, 115 (1st Dep't 1980),  aff'd, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981). Under NYCPLR § 5004, Nam is entitled to a prejudgment interest rate of nine percent per annum simple interest.

**I.  Nam Is Entitled to Cost and Attorneys' Fees.**

FLSA and NYLL both contain fee-shifting provisions for actions to recover unpaid wages. FLSA 29 U.S.C. § 216(b) ("the court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); NYLL § 663(1) ("[An employee] may recover ... costs and such reasonable attorney's fees as may be allowed by the court").  Should this court grant summary judgment motion in favor of Nam, Nam should be entitled to cost and attorney fees under FLSA 29 U.S.C. § 216(b) and NYLL § 663(1).

## **CONCLUSION**

For the reasons set forth above, this Court should grant partial summary judgment in Nam's favor and grant Nam's causes of action alleged in the Complaint and discussed above.

Dated: Flushing, New York
        July 28, 2022

                                        HANG & ASSOCIATES, PLLC.
                                        /s/ Yongjin Bae
                                        Yongjin Bae, Esq.
                                        136-20 38th Ave., Suite 10G
                                        Flushing, New York 11354
                                        Tel: 718.353.8588
                                        E-mail: ybae@hanglaw.com
                                        Attorneys for Plaintiff

**A-562**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam,<br><br>      Plaintiff,<br><br>   - against -<br><br>Permanent Mission of the Republic of Korea to the United Nations,<br>      Defendant. | Case No. 1:21-cv-06165<br><br>**<u>ORDER</u>** |

   Plaintiff Hyunhuy Nam's Motion for Partial Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c), having come on for hearing, the Court having considered all relevant documents and evidence and having considered the arguments of counsel, and good cause appearing therefor:

   **IT IS HEREBY ORDERED** that Plaintiff Hyunhuy Nam's Motion for Partial Summary Judgment is granted and that judgment is entered in favor of Plaintiff Hyunhuy Nam and against Defendant Permanent Mission of the Republic of Korea to the United Nations on Plaintiff's claims for violation of overtime provisions of the Fair Labor Standards Act, violation of New York State Labor Law, pursuant to Federal Rule of Civil Procedure 56(c).

               SO ORDERED

            _____

             RONNIE ABRAMS

            United States Magistrate Judge

DATED:

**A-563**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Hyunhuy Nam,

                    Plaintiff,

           - against -

Permanent Mission of the Republic of Korea to
the United Nations,

                   Defendant.

Case No. 1:21-cv-06165

**DECLARATION OF HYUNHUY NAM**

I, Hyunhuy Nam, under the penalty of perjury, declare as follows:

1. My name is Hyunhuy Nam, I am Plaintiff in the above-captioned case.

2. I am a resident of Bergen County, New Jersey.

3. I was a former employee of Defendant Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission") from around June 28, 2016 to June 30, 2021.

4. Before I worked for Permanent Mission and its diplomatic staff, I was searching for a job via Hey Korean's Website, just like many other Korean-language speaking job seekers did. Hey Korean's Website lists various job positions such as sales person, driver, and waiter in the Korean-language.

5. In or around March – April 2016, I learned of Permanent Mission's chauffeur position in the "driver-wanted" section in Hey Korean's Website. In the job posting, Permanent Mission offered a chauffeur/driver position, required English-Korean bilingual skill, and certain years of experience in driving. It provided contact information to submit the potential driver's resume.

6. According to Permanent Mission's specification, I emailed my resume to Permanent Mission. In the same email, I briefly described my qualifications that I have a Commercial Driver's License and my10-years of driving experience as a commercial driver. In response to my email, the Permanent Mission Secretary, Mr. Hang-Suh Choi, reached out to me by sending me a reply email using the email address sw1575@hotmail.com. He conducted my job interview inside Permanent Mission's building located at 335 East 45th Street, New York, NY 10017.

7. After responding to an online job advertisement in heykorean.com placed by the Permanent Mission, I was hired by Defendant in 2016.

8. On or about July 1, 2016, approximately 2 days *after* I began my employment with Permanent Mission, former Minister Bong-Woo Ko presented to me a document labeled "Contract for Employing a Chauffeur *[English translation]*" (hereafter, "Agreement") and required me to sign it. The document reflected Minister Bong-Woo Ko at Permanent Mission as an employer and myself as *his* employee under the Agreement. The Agreement also reflected my regular working hours to be 9:00 to 18:00 and the duration of the Agreement to be effective from July 1, 2016 to July 1, 2017, subject to 1-year renewal after the expiry of the effective date.

9. "Contract for Employing a Chauffeur" contains provision with regard to overtime pay.I was responsible for driving members of the Permanent Mission staff and their families or guests in a vehicle owned by Permanent Mission.

10. Although I was hired as a chauffeur and performed my duties as a chauffeur, Permanent Mission gave me a job title as Chauffeur/Administrative Assistant.

11. Though I recorded overtime hours and advised staff that such personal tasks were not within the scope of my duties, overtime was ignored and orders for personal tasks continued.

12. Throughout my employment with Permanent Mission, I worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours I actually worked.

13. Permanent Mission did not compensate me for overtime compensation according to state and federal laws.

14. Permanent Mission paid my overtime wage in accordance with the terms in employment contract and it stated that overtime shall be capped by 52 hours per month.

15. Permanent Mission did not pay my overtime wage although I worked more than 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL.

16. Throughout my employment with Permanent Mission, Permanent Mission never gave me any wage notices pursuant to New York Labor Law § 195 at the time of hire, Instead, Permanent Mission, through its staff member(s), required Plaintiff to sign an agreement written in Korean labeled as "Contract for Employing a Chauffeur [English translation]" (hereafter, the "Agreement"), on yearly basis in every July (or April only in 2021) throughout Plaintiff's employment.

17. Permanent Mission never gave me paystubs along with Permanent Mission's payment to me.

**A-566**

I, Hyunhuy Nam, under the penalty of perjury, that I read and understand English, the above statement is true and correct to the best of my knowledge.

Dated: Flushing, New York
     July 28, 2022

*Hyunhuy Nam*

Hyunhuy Nam

**A-567**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Hyunhuy Nam,

Plaintiff,

- against -

Permanent Mission of the Republic of Korea to
the United Nations,

Defendant.

Case No. 1:21-cv-06165

**ATTORNEY AFFIRMATION IN SUPPORT   OF PLAINTIFF HYUNHUY NAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

### DECLARATION OF YONGJIN BAE, ESQ

I, YONGJIN BAE, under penalty of perjury, affirm as follows:

1.  I am an attorney licensed to practice before the Courts of the State of New York and admitted in the Southern District of New York. I am associated with Hang & Associates, PLLC, attorneys for Plaintiff Hyunhuy Nam,

2.  I am making this affirmation in support of the Plaintiff Hyunhuy Nam's motion for partial summary judgment and place before the Court certain documents on file with the clerk.

3.  The following documents are submitted to the Court for consideration upon Plaintiff Hyunhuy Nam's motion for partial summary judgment:

**Exhibit A: Plaintiff's Complaint.**

**Exhibit B: Employment Contract 2016 (Marked as Defendants' exhibit 1, produced for deposition on Plaintiff)**

**Exhibit C: Employment Contract 2017 (Marked as Defendants' exhibit 2, produced for deposition on Plaintiff)**

**A-568**

**Exhibit D: Employment Contract 2018 (Marked as Defendants' exhibit 3, produced for deposition on Plaintiff)**

**Exhibit E: Employment Contract 2019 (Marked as Defendants' exhibit 4, produced for deposition on Plaintiff)**

**Exhibit F: Employment Contract 2020 (Marked as Defendants' exhibit 5, produced for deposition on Plaintiff)**

**Exhibit G: Employment Contract 2021 (Marked as Defendants' exhibit 6, produced for deposition on Plaintiff)**

**Exhibit H: Overtime Verification Ledger (Marked as Defendants' exhibit 8, produced for deposition on Plaintiff)**

**Exhibit I: Excerpts From Exhibit H with translation**

**Exhibit J: The relevant pages of the deposition transcript of Jinho Jo.**

4.      I affirm, under penalty of perjury, that the above information is true and correct.


Dated: Flushing, New York
　　　　July 28, 2022

　　　　　　　　　　　　　　　HANG & ASSOCIATES, PLLC.
　　　　　　　　　　　　　　　*/s/ Yongjin Bae*
　　　　　　　　　　　　　　　Yongjin Bae, Esq.
　　　　　　　　　　　　　　　136-20 38th Ave., Suite 10G
　　　　　　　　　　　　　　　Flushing, New York 11354
　　　　　　　　　　　　　　　Tel: 718.353.8588
　　　　　　　　　　　　　　　E-mail: ybae@hanglaw.com
　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**A-569**

## <u>AFFIDAVIT OF SERVICE</u>

I, Yongjin Bae, being duly sworn, deposes and says:

1.  I am over 18 years of age, not a party of the action, and am a resident of the State of New York, Queens County. On July 28, 2022, the accompanying 1) Notice of Motion, 2) <u>rule 56.1 statement of undisputed material facts in support of Plaintiff's motion for partial summary judgment</u>, 3) <u>attorney affirmation in support    of plaintiff hyunhuy nam's motion for partial summary judgment, 4)memorandum of law in support, 5)affidavit of Plaintiff Nam Hyunhuy; and 6)proposed order </u>were served upon Defendant Permanent Mission of the Republic of Korea to the United Nations through their counsel, Kim, Cho & Lim, LLC via *First Class Mail* to the addresses below:

**Kim, Cho & Lim, LLC**
ATTN: Sean S. Kwak, Esq.
460 Bergen Boulevard, Suite 305,
Palisades Park, New Jersey 07650
Telephone: (201) 585-7400
Facsimile: (201) 585-7422
seankwak@kcllawfirm.com
*Attorney for Defendant*
*Via First Class Mail*

2.  Such service was made by enclosing a try and correct copy of the aforementioned documents in a properly addressed, securely sealed wrapper and mailing them via Certified Mail and Regular Mail via a depository under the exclusive care and custody of the United States Postal Service within the State of New York.

/s/ *Yongjin Bae*
Yongjin Bae