# 23-229

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

HYUNHUY NAM,

*Plaintiff-Appellee,*

—against—

PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## VOLUME III OF V
## (Pages A-570 to A-843)

JOSEPH BARBIERE
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000

ERIC S. LATZER
COLE SCHOTZ P.C.
1325 Avenue of the Americas,
   19th Floor
New York, New York 10019
(201) 525-6281

JOSHUA S. LIM
NICK DUBOIS
SEAN KWAK
KIM, CHO & LIM, LLC
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
(201) 585-7400

*Attorneys for Defendant-Appellant*

(*Counsel continued on inside cover*)

Yongjin Bae
Hang & Associates, PLLC
136-20 38th Avenue, Suite 10G
Flushing, New York 11354
(718) 353-8588

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries ............................................. A-1

Complaint, dated July 19, 2021 ........................................ A-11

Defendants' Notice of Motion to Dismiss, dated September 30, 2021 .... A-54

Defendants' Memorandum of Law in Support of Motion to Dismiss,
    dated September 30, 2021 ......................................... A-57

Declaration of Byungseok Yoo in Support of Defendants'
    Motion to Dismiss, dated August 25, 2021 ........................ A-79

    Exhibit 1 to Byungseok Declaration—
    Letter from the United States Department of State, Office
    of Foreign Missions, New York Regional Office, Concerning
    the Permanent Mission of the Republic of Korea's Tax-Exempt
    Status, dated June 12, 2002........................................ A-83

Declaration of Counsellor at the Mission in Support of Defendants'
    Motion to Dismiss, dated September 3, 2021 ...................... A-85

    Exhibit A to Foregoing Documents—
    Letter from the Ministry of Foreign Affairs for the Republic
    of Korea Concerning the Laws, Rules, and Regulations of the
    Republic of Korea, dated August 23, 2021 ........................ A-87

    Exhibit B to Foregoing Documents—
    The Settlement Agreement executed by and between Plaintiff
    and Defendant Jo, on behalf of Defendant Permanent Mission
    of the Republic of Korea to the United Nations,
    dated September 1, 2020, with Certified Translation ............... A-90

Declaration of Hyunhuy Nam in Opposition to Defendants'
    Motion to Dismiss, dated October 23, 2021 ...................... A-94

ii

PAGE

Exhibit A to Nam Declaration—
Permanent Mission's Employee Directory (Redacted) . . . . . . . . . . . . . A-106

Exhibit B to Nam Declaration—
Plaintiff's Time Records Revised by Minister Lee . . . . . . . . . . . . . . . . A-107

Exhibit C to Nam Declaration—
Original Photograph Reflecting Defendant Chung
and the Shopping Item . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-110

Memorandum of Law in Opposition to Defendants'
Motion to Dismiss, dated October 25, 2021 . . . . . . . . . . . . . . . . . . . . . A-112

Defendants' Reply Memorandum of Law in Further Support
of Motion to Dismiss, dated November 8, 2021 . . . . . . . . . . . . . . . . . . A-132

Memorandum Opinion and Order of the Honorable Alison J. Nathan,
dated January 21, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-150

Defendant Permanent Mission of the Republic of Korea to the United
Nations ('Mission")'s Answer, dated February 11, 2022 . . . . . . . . . . A-162

Defendant Mission's Notice of Motion for Summary Judgment,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-192

Defendant Mission's Memorandum of Law in Support of Motion
for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-194

Declaration of Joshua S. Lim in Support of Defendant Mission's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-228

Declaration of Counsellor at the Mission in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-233

iii

PAGE

Defendant Mission's FRCP 56.1 Statement of Material Facts,
dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-234

Exhibit 1 to Foregoing Documents—
Complaint, dated July 19, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-246

Exhibit 2 to Foregoing Documents—
Transcript of the Deposition of Plaintiff,
taken on February 22, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-290

Exhibit 3 to Foregoing Documents—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . A-326

Exhibit 4 to Foregoing Documents—
2016 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-359

Exhibit 5 to Foregoing Documents—
Certified Translation of Exhibit 4, Produced by Defendant
in this Matter as ROKPM0014-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-361

Exhibit 6 to Foregoing Documents—
2017 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-364

Exhibit 7 to Foregoing Documents—
Certified Translation of Exhibit 6, Produced by Defendant
in this Matter as ROKPM0019-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-366

Exhibit 8 to Foregoing Documents—
2018 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-369

Exhibit 9 to Foregoing Documents—
Certified Translation of Exhibit 8, Produced by Defendant
in this Matter as ROKPM0024-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-371

iv

PAGE

Exhibit 10 to Foregoing Documents—
2019 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0030 .................................... A-374

Exhibit 11 to Foregoing Documents—
Certified Translation of Exhibit 10, Produced by Defendant
in this Matter as ROKPM0030-T, along with the
Certification of Translation ..................................... A-376

Exhibit 12 to Foregoing Documents—
2020 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0041 .................................... A-379

Exhibit 13 to Foregoing Documents—
Certified Translation of Exhibit 12, Produced by Defendant
in this Matter as ROKPM0041-T, along with the
Certification of Translation ..................................... A-381

Exhibit 14 to Foregoing Documents—
2021 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0047 .................................... A-384

Exhibit 15 to Foregoing Documents—
Certified Translation of Exhibit 14, Produced by Defendant
in this Matter as ROKPM0047-T, along with the
Certification of Translation ..................................... A-386

Exhibit 16 to Foregoing Documents—
Result of the Background Check Performed for Plaintiff
Hyunhuy Nam in the Republic of Korea, along with a
Certified Translation thereof and the Certificate
of Translation .................................................. A-389

Exhibit 17 to Foregoing Documents—
2016 Employment Contract Produced by Defendant
in this Matter as ROKPM0010 through 0013 ..................... A-401

Exhibit 18 to Foregoing Documents—
Certified Translation of Exhibit 17, Produced by Defendant
in this Matter as ROKPM0010-T through 0013-T,
along with theCertification of Translation ........................ A-406

v

PAGE

Exhibit 19 to Foregoing Documents—
2017 Employment Contract Produced by Defendant
in this Matter as ROKPM0015 through 0018 ..................... A-411

Exhibit 20 to Foregoing Documents—
Certified Translation of Exhibit 19, Produced by Defendant
in this Matter as ROKPM0015-T through 0018-T,
along with the Certification of Translation ...................... A-416

Exhibit 21 to Foregoing Documents—
2018 Employment contract Produced by Defendant
in this Matter as ROKPM0020 through 0023 ..................... A-422

Exhibit 22 to Foregoing Documents—
Certified Translation of Exhibit 21, Produced by Defendant
in this Matter as ROKPM0020-T through 0023-T,
along with the Certification of Translation ...................... A-427

Exhibit 23 to Foregoing Documents—
First 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0025 through 0029 ..................... A-433

Exhibit 24 to Foregoing Documents—
Certified Translation of Exhibit 23, Produced by Defendant
in this Matter as ROKPM0024-T through 0029-T,
along with the Certification of Translation ...................... A-439

Exhibit 25 to Foregoing Documents—
Second 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0031 through 0035 ..................... A-446

Exhibit 26 to Foregoing Documents—
Certified Translation of Exhibit 25, Produced by Defendant
in this Matter as ROKPM0031-T through 0035-T,
along with the Certification of Translation ...................... A-452

Exhibit 27 to Foregoing Documents—
2020 Employment Contract Produced by Defendant
in this Matter as ROKPM0036 through 0040 ..................... A-459

vi

PAGE

Exhibit 28 to Foregoing Documents—
Certified Translation of Exhibit 27, Produced by Defendant
in this Matter as ROKPM0036-T through 0040-T,
along with the Certification of Translation ........................ A-465

Exhibit 29 to Foregoing Documents—
2021 Employment Contract Produced by Defendant
in this Matter as ROKPM0042 through 0046 ..................... A-472

Exhibit 30 to Foregoing Documents—
Certified Translation of Exhibit 29, Produced by Defendant
in this Matter as ROKPM0042-T through 0046-T,
along with the Certification of Translation ........................ A-478

Exhibit 31 to Foregoing Documents—
Declaration of Counsellor at the Mission in Support of
Defendants' Motion to Dismiss, dated September 3, 2021,
with Exhibits A and B ........................................... A-485

Exhibit 32 to Foregoing Documents—
Declaration of Byungseok Yoo in Support of Defendants'
Motion to Dismiss, dated August 25, 2021, with Exhibit 1 ........ A-495

Exhibit 33 to Foregoing Documents—
Transcript of the Deposition of the Second Secretary
at the Mission, taken on April 4, 2022 ........................... A-502

Exhibit 34 to Foregoing Documents—
Print-out of a Webpage from "naver.com,"
the Full Web Address being the following:
https://terms.naver.com/entry.naver?docId=
5844054&cid=43667&categoryId=43667 ......................... A-515

Exhibit 35 to Foregoing Documents—
Certified Translation of Exhibit 34,
along with the Certification of Translation ........................ A-519

Exhibit 36 to Foregoing Documents—
Security Pass issued to Plaintiff Hyunhuy Nam for Access to the
Vicinity of the United Nations building during the high-level
week, issued in 2020 and set to expire on July 30, 2022 ........... A-524

vii

PAGE

Exhibit 37 to Foregoing Documents—
Certified Translation of The Settlement Agreement executed by
and between Plaintiff and Defendant Jo, on behalf of Defendant
Permanent Mission of the Republic of Korea to the United
Nations, dated September 1, 2020 .............................. A-526

Exhibit 38 to Foregoing Documents—
Memorandum Opinion and Order of the Honorable
Alison J. Nathan, dated January 21, 2022 (Dkt. # 61) ............. A-529

Plaintiff's Notice of Motion for Partial Summary Judgment,
       dated July 8, 2022 ............................................. A-542

Memorandum of Law in Support of Plaintiff's Motion
       for Partial Summary Judgment, dated July 28, 2022 .............. A-544

Proposed Order .................................................... A-562

Declaration of Hyunhuy Nam in Support of Motion
       for Partial Summary Judgment, dated July 28, 2022 .............. A-563

Affirmation of Yongjin Bae in Support of Motion
       for Partial Summary Judgment, dated July 28, 2022 .............. A-567

Rule 56.1 Statement of Undisputed Material Facts in Support
       of Plaintiff Hyunhuy Nam's Motion for Partial Summary
       Judgment, dated July 28, 2022................................... A-570

Exhibit A to Foregoing Documents—
Complaint, dated July 19, 2021 ................................. A-574

Exhibit B to Foregoing Documents—
Employment Contract 2016 (Marked as Defendants'
Exhibit 1, Produced for Deposition on Plaintiff) .................. A-617

Exhibit C to Foregoing Documents—
Employment Contract 2017 (Marked as Defendants'
Exhibit 2, Produced for Deposition on Plaintiff)................... A-627

viii

PAGE

Exhibit D to Foregoing Documents—
Employment Contract 2018 (Marked as Defendants'
Exhibit 3, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . . A-637

Exhibit E to Foregoing Documents—
Employment Contract 2019 (Marked as Defendants'
Exhibit 4, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . . A-647

Exhibit F to Foregoing Documents—
Employment Contract 2020 (Marked as Defendants'
Exhibit 5, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . . A-669

Exhibit G to Foregoing Documents—
Employment Contract 2021 (Marked as Defendants'
Exhibit 6, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . . A-681

Exhibit H to Foregoing Documents—
Overtime Verification Ledger (Marked as Defendants'
Exhibit 8, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . . A-693

Exhibit I to Foregoing Documents—
Excerpts from Exhibit H with Translation . . . . . . . . . . . . . . . . . . . . . . . A-753

Exhibit J to Foregoing Documents—
Excerpts of the Deposition Transcript of Counsellor
at the Mission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-760

Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion for Partial Summary Judgment,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-765

Defendant's Response to Plaintiff's FRCP 56.1 Statement
of Material Facts and Defendant's Counter-Statement
of Facts, dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-791

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-803

ix

PAGE

Exhibit 3-2 to Lim Declaration—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 ........................... A-805

Exhibit 39 to Lim Declaration—
Defendant's Answer, filed February 11, 2022 .................... A-844

Exhibit 40 to Lim Declaration—
Declaration by Fran Yoon, dated August 26, 2022 ................ A-878

Exhibit 41 to Lim Declaration—
Articles 50, 53, and 56 of the ROK's Labor Standards Act,
obtained from: https://www.law.go.kr/법령/근로기준법,
last accessed August 26, 2022 at 4:09 PM ........................ A-880

Exhibit 42 to Lim Declaration—
Partial Translation of Exhibit 41 by Fran Yoon,
and Certification of Translation .................................. A-883

Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment and in Further Support of Plaintiff's
Partial Summary Judgment, dated August 29, 2022 ............... A-884

Defendant's Reply Memorandum of Law in Further Support
of Defendant's Motion for Summary Judgment Pursuant
to FRCP 56, dated September 19, 2022 ......................... A-903

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated September 19, 2022 ....................................... A-921

Exhibit 43 to Lim Declaration—
Amended Complaint filed in *Mourmouni v. Permanent Mission
of the Republic of S. Sudan to the U.N.*, Case Number
1:20-cv-03603, on January 11, 2021,
retrieved through PACER ....................................... A-922

x

PAGE

Memorandum of Law in Reply to Defendant's Opposition
    to Plaintiff's Partial Summary Judgment,
    dated September 19, 2022 ........................................ A-939

    Exhibit A to Memorandum—
    Transcript of deposition of Counsellor at the Mission,
    witness for Permanent Mission under Rule §30(b)(6)
    of the F. R. C. P, 34:2-38:8 ..................................... A-952

    Exhibit B to Memorandum—
    Transcript of deposition of Nam. 18-19 ......................... A-957

    Exhibit C to Memorandum—
    Transcript of Deposition of Second Secretary at the Mission
    at 19:18-22 ..................................................... A-961

    Exhibit D to Memorandum—
    Records 0061-75 ............................................... A-962

Declaration of YongJin Bae, dated September 19, 2022 ............... A-972

Order of the Honorable Jennifer L. Rochon, dated January 3, 2023 ..... A-975

Supplemental Damage Analysis Brief in Further Support
    of Plaintiff's Motion for Partial Summary Judgment,
    dated January 13, 2023 .......................................... A-976

Declaration of YongJin Bae, dated January 13, 2023 .................. A-987

    Exhibit A to Bae Declaration—
    Bates Stamped as ROKPM0051 ................................. A-989

    Exhibit B to Bae Declaration—
    Dkt #78-21, Dkt #78-33 ........................................ A-993

    Exhibit C to Bae Declaration—
    Dkt #79-15 .................................................... A-1078

    Exhibit D to Bae Declaration—
    Dkt #79-14 .................................................... A-1086

xi

PAGE

Defendant's Supplemental Memorandum of Law in Opposition
to Plaintiff's Motion for Partial Summary Judgment,
dated February 3, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1147

Declaration of Joshua S. Lim in Support of Defendant's
Supplemental Brief in Opposition to Plaintiff's Motion
for Partial Summary Judgment, dated February 3, 2023 . . . . . . . . . . A-1160

Exhibit 43 to Lim Declaration—
Summary Document Based on Data Gleaned from
Exhibits A through D submitted by Plaintiff on
January 13, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1162

Exhibit 44 to Lim Declaration—
Summary Document Based on Data Gleaned from
Exhibits A through D submitted by Plaintiff on
January 13, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1206

Opinion and Order of the Honorable Jennifer L. Rochon,
dated February 21, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1240

Defendant's Notice of Appeal, dated February 22, 2023 . . . . . . . . . . . . . A-1297

Memorandum and Order of the Honorable Jennifer L. Rochon,
dated March 10, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1300

**A-570**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam,<br><br>               Plaintiff,<br><br>       - against -<br><br>Permanent Mission of the Republic of Korea to the United Nations,<br><br>               Defendant. | **Case No. 1:21-cv-06165**<br><br>**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF HYUNHUY NAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Hyunhuy Nam (hereinafter "Nam"), by his undersigned attorneys, pursuant to Local Rule 56.1, hereby submits this statement of undisputed material facts in support of his motion for partial summary judgment.

1.      Nam is a 61-year-old permanent resident of the United States who lives in New Jersey and was a former employee of Defendant Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission") from around June 28, 2016 to June 30, 2021. Compl. ¶ 25.

2.      Permanent Mission is a foreign consulate located in Manhattan. Id. ¶ 4.

3.      After responding to an online job advertisement placed by the Permanent Mission, Nam was hired by Defendant in 2016. Id. ¶¶ 35–36.

4.      Nam was responsible for driving members of the Permanent Mission staff and their families or guests in a vehicle owned by the Mission. Id. ¶¶ 38, 41, 47.

5.      Although Nam was hired as a chauffeur and performed his duties as a chauffeur, Permanent Mission gave Nam a job title as Chauffeur/Administrative Assistant. Id. ¶ 37.

6.      Permanent Mission's employees are comprised of approximately 28 "non-

diplomatic staff. Compl. ¶ 27.

7.      Permanent Mission is managed by a handful of Korean national "diplomatic staff." Compl. ¶ 28.

8.      Permanent Mission often hire a chauffer(s) as "non-diplomatic staff" to provide transportation for the "diplomatic staff" to perform their duties as a member of Permanent Mission and as a personal driver to assist the staff and/or their family members with their personal affairs such as shopping or private appointment. Compl. ¶ 29.

9.      Throughout Plaintiff's employment with Defendants, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67

10.     Defendants did not compensate Plaintiff for overtime compensation according to state and federal laws. Compl. ¶ 74

11.     In 2016 employment contract, Permanent Mission set over time wage as $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.  See Exhibit B. 2016 Employment Contract

12.     In 2017 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit C. 2017 Employment Contract

13.     In 2018 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit D. 2018 Employment Contract

14.     In 2019 employment contract, Permanent Mission set over time wage at  $14.76

per hour but paid at a monthly maximum of 52 hours. See Exhibit E. 2018 Employment Contract

15.     In 2020 employment contract, Permanent Mission set over time wage at $13.29 per hour but paid at a monthly maximum of 52 hours. See Exhibit F. 2018 Employment Contract

16.     2016 Permanent Mission's overtime records show that Nam's overtime payment was capped by $570 per month regardless of Nam's actual overtime wage. See Exhibit I pg 1.

17.     2017 Permanent Mission's overtime records show that that how Permanent Mission calculated Nam's overtime payment and the capped amount of overtime payment was $787  per month regardless of how many hours Nam worked per month as overtime. See Exhibit I pg 2.

18.     2018 Permanent Mission's overtime records show that Nam's overtime payment was capped by $787 per month regardless of Nam's actual overtime wage. See Exhibit I pg 3.

19.     Due to the cap in the overtime payment, Nam had not received his overtime wage even though his monthly overtime hours exceeded 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL.

20.     Plaintiff was not compensated for New York's "spread of hours" premium for shift that lasted longer than ten (10) hours. Compl. ¶ 75

21.     Defendants did not provide Plaintiff with a wage notices at the time of his hiring. Instead, Permanent Mission, through its staff member(s), required Plaintiff to sign an agreement written in Korean labeled as "Contract for Employing a Chauffeur [English

translation]" (hereafter, the "Agreement"), on yearly basis in every July (or April only in 2021) throughout Plaintiff's employment. Compl. ¶ 76

     22.     Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff in cash and did not provide Plaintiff with any paystub. Compl. ¶ 80

Dated: Flushing, New York
      July 28, 2022

                               HANG & ASSOCIATES, PLLC.
                               */s/ Yongjin Bae*
                               Yongjin Bae, Esq.
                               136-20 38th Ave., Suite 10G
                               Flushing, New York 11354
                               Tel: 718.353.8588
                               E-mail: ybae@hanglaw.com
                               *Attorneys for Plaintiff*

**A-574**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hyunhuy Nam,<br><br>                              Plaintiff,<br><br>              - against -<br><br>Permanent Mission of the Republic of Korea to the United Nations; Hyun Cho; Jinho Jo; and Daeyong Chung,<br><br>                              Defendants. | Case No.<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Hyunhuy Nam (hereafter, "Plaintiff") by and through his attorneys, Hang & Associates, PLLC, upon his knowledge and belief, files this Complaint against Defendants Permanent Mission of the Republic of Korea to the United Nations; Hyun Cho; Jinho Jo; and Daeyong Chung (collectively referred to as "Defendants"), and states as follows: alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action pursuant to Section 1605(a) of the Foreign Sovereign Immunities Act (hereafter referred to as "FSIA") to obtain damages for having been subjected to Defendants' unlawful employment practices arising out of commercial activity performed and carried on by Defendants in the United States. The commercial activity includes Defendants' employment of Plaintiff to work for Defendants as a Chauffeur.

2.      Plaintiff seeks overtime compensation, spread of hours premium, damages arising out of the failure to provide pay stubs and wage notifications owed to Plaintiff for work performed for Defendants under Fair Labor Standards Act (hereinafter referred to as "FLSA") and New York Labor Law (hereafter referred to as "NYLL"). Plaintiff also seeks damages for Defendants' discriminatory conduct based on Plaintiff's age in violation of New York State Human Rights Law

(hereafter referred to as "NYSHRL") and New York City Human Rights Law (hereafter referred to as "NYCHRL") during the course of Plaintiff's employment.

**THE PARTIES**

3.    At all times herein mentioned, Plaintiff was and is an alien domiciled and residing in the County of Bergen, State of New Jersey.

4.    At all times material hereto, the Defendant Permanent Mission of the Republic of Korea to the United Nations (hereafter, the "Permanent Mission"), was at all time hereafter and still is foreign mission and/or consulate located at 335 East 45th Street, New York, NY 10017.

5.    Defendant Permanent Mission was and still is a foreign state as defined as in 28 U.S.C. §1603.

6.    Defendant Permanent Mission was and still is a political subdivision of foreign state or agency or instrumentally of a foreign state as defined in 28 U.S.C. §1603 (b).

7.    Defendant Permanent Mission was and still is an organ of a foreign state or subdivision thereof, or a majority of those shares or other ownership interest is owned by a foreign state or political subdivision thereof.

8.    Defendants Hyun Cho; Jinho Jo; and Daeyong Chung; (collectively, "Individual Defendants) are members of a mission as defined as in 28 U.S.C. §1351.

9.    Upon information and belief, Defendant Hyun Cho (hereafter, "Defendant Cho" or "Ambassador Cho") is a Korean national served and serves as Ambassador of Permanent Mission and resides in the County of New York within the 10021 zip code area.

10.    Throughout Plaintiff's employment with Defendant Permanent Mission, commenting on or around June 28, 2016 until approximately June 30, 2021, Defendant Cho was the highest-ranking supervisor at the Permanent Mission.

2

11.     Upon information and belief, Defendant Permanent Mission's former and current Ministers and Counselors, including Defendants Jinho Jo and Dayong Chung, reported directly to Ambassador Cho.

12.     Upon information and belief, Defendant Jinho Jo (hereafter, "Defendant Jo" or "Counselor Jo") is a Korean national served and serves as Counselor of Permanent and resides in the County of New York within the 10016 zip code area.

13.     Upon information and belief, Defendant Jo was and remains Counselor, supervisor, and employee of the Permanent Mission. Defendant Jo has reported directly to Defendant Daeyong Chung, and Ambassador Cho, and was an immediate supervisor of the Permanent Mission staff, including Chauffeur.

14.     Upon information and belief, Defendant Daeyong Chung (hereafter, "Defendant Chung" or "Minister Chung") is a Korean national served and serves as Minister of Permanent Mission and resides at 14 Homestead Road, Tenafly, New Jersey 07670.

15.     Upon information and belief, Defendant Chung was and remains Minister, supervisor, and employee of the Permanent Mission since approximately November 2020 through the present. Through this time, Defendant Chung has reported directly to Ambassador Cho, worked as Ambassador Cho's "right-hand man," and remains Defendant Jo's immediate supervisor.

### JURISDICTION AND VENUE

16.     Plaintiff, repeats, reintegrates and realleges each and every allegation herein above in Paragraphs number "1 though 15" inclusive, with the same force and effect as though more fully set forth herein at length.

17.     This action is brought against Defendants, a foreign state and member of a mission, as defined in 28 U.S.C. §§1603(a) and 1351 pursuant the exceptions to the Foreign Sovereign

Immunities Act (hereafter referred to as the "FSIA") contained within 28 U.S.C. §§ 1602 and 1605 (a), and the Fair Labor Standards Act (hereafter referred to as the "FLSA"), 29 U.S.C. § 201 *et seq*., 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.

18.     In addition, the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of the same common nucleus of operative fact as the federal claim.

19.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) and (f), because the events that give rise to this action occurred within this district.

20.     This action falls into one or more of the exceptions to the FSIA contained within 28 U.S.C. §§ 1602 and 1605(a).

21.     Defendants are not immune from the jurisdiction of the Courts of the United States in this action.

22.     Defendants are not immune from the jurisdiction of the Courts of the United States in this action pursuant to 28 U.S.C. §1602 as their commercial activities are concerned.

23.     Defendants are not immune from the jurisdiction of the Courts of the United States in this action pursuant to 28 U.S.C. 28 U.S.C. §1605 as this action is based upon commercial activity carried on in the United States by the foreign state or upon an act performed in the United Sates in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

24.     Defendants are not immune from the jurisdiction of the Courts of the United States in this action pursuant to 28 U.S.C. 28 U.S.C. §1605 as an employer of Plaintiff, who worked as

chauffeur to Defendants, was performing duties that were not governmental in nature and Defendants utilized Plaintiff's services to foster and/or to be engaged various commercial activities.

## STATEMENT OF FACTS

25.     Plaintiff is a 61year-old male, who resides in the State of New Jersey as a Permanent Resident of the United States, and was a former employee of Defendants from around June 28, 2016 to June 30, 2021.

26.     Upon information and belief, Defendant Permanent Mission employed or employs approximately 65 employees.

27.     Upon information and belief, Defendant Permanent Mission's employees are comprised of approximately 28 "non-diplomatic staff," at least 6 of whom are Korean-American who are citizens or permanent residents of the United States.

28.     Upon information and belief, Permanent Mission is managed by a handful of Korean national "diplomatic staff."

29.     Upon information and belief, Defendants often hire a chauffer(s) as "non-diplomatic staff" to provide transportation for the "diplomatic staff" to perform their duties as a member of Permanent Mission and as a personal driver to assist the staff and/or their family members with their personal affairs such as shopping and even, driving a staff member and his female companion to a discreet rondeau at her apartment.

**Defendants' Commercial Activity**

30.     Upon information and belief, Hey Korean's Website[1] provides services to private

_____

[1]Hey Korean is an online website that allows its users to post an advertisement under separate categories in the website (i.g., Job Openings, Real Estate, Buying/Selling, etc.) to a target the audience who click on the relevant categories(s) and type their needs in the website's search engine. (website: https://www.heykorean.com., Last accessed July 2, 2021).

5

individuals and corporate entities to engage in various types of commercial activities such as sale of goods, real estate transactions, and hiring employees, just like a "K-pop version of Craigslist."

31.     Upon information and belief, Defendant Permanent Mission often utilizes Hey Korean's website to hire its employees such as chauffeur, bilingual research assistant, and administrative assistant.

32.     Upon information and belief, Defendant Permanent Mission posts its phone number (i.e., 1-212-439-4025) and email address(es) (i.e., Bandal2182@gmail.com and korea.mission.un2@gmail.com) to receive potential employees' resumes and inquiries relating to the job opportunities.

33.     Upon information and belief, Defendant Permanent Mission, through its diplomatic staff, conducts an interview of a potential employee inside Permanent Mission's building located at 335 East 45th Street, New York, NY 10017 once the potential employee reaches out to Defendant Permanent Mission via making a phone call or sending an email.

34.     Upon information and belief, Defendant Permanent Mission hires a chauffeur as a "non-diplomatic staff" to make deliveries and provide transportation on behalf of Permanent Mission and for certain diplomatic employee(s) who serves as a Minister at Permanent Mission.

35.     In around 2016, Plaintiff learned the Permanent Mission hiring advisement on Hey Korean's website to work as a chauffeur. Plaintiff reached out to Defendant Permanent Mission by telephone after learning of the job opportunity.

36.     Upon information and belief, Plaintiff had an interview with one of the Permanent Mission's diplomatic staff at the building and eventually employed by Defendants to work as a chauffeur.

37.    Although Plaintiff was hired as a chauffeur and performed his duties as a chauffeur, Defendants gave Plaintiff a job title as Chauffeur/Administrative Assistant.

38.    Defendants assigned Plaintiff to drive the Permanent Mission's vehicle, a Hyundai 2015 GN3 model sedan with Plate No. 0265WDD to provide transportation for its "diplomatic employees" including Individual Defendants.

39.    Upon information and belief, Permanent Mission owns/maintains/controls at least one residential property located at 14 Homestead Road, Tenafly, New Jersey 07670 also known as the "Official Residence."

40.    Upon information and belief, Permanent Mission provides the Official Residence to the staff who serves as a Minister.

41.    Throughout Plaintiff's employment, Plaintiff was primarily responsible for providing transportation for the Minister who resided in the Official Residence and Permanent Mission's Counselors, whenever Defendants required regardless of its/his/her/their purpose(s).

42.    Plaintiff regularly drove his own vehicle to the Official Residence, switched his car to the Permanent Mission's Hyundai sedan, and drove the Minister who resided in the Official Residence to the Permanent Mission.

43.    If no one requested for transportation upon arrival or any one of the Defendants requested Plaintiff to stand-by in the Permanent Mission's building, he had to temporarily stay in the Room 815 at the Permanent Mission, until any one of the Defendants gave him further instructions.

44.    At first, Permanent Mission requested Plaintiff primarily provide transportation for Bong-Woo Ko (hereafter, "Minister Ko") for his work performed on behalf of Permanent Mission as a Minister from approximately June 2016 to October 2017. During this period, Plaintiff's duties

7

included but were not limited to, driving Minister Ko from the Official Residence to Permanent Mission, providing transportation for him to attend meetings at restaurants, standing-by in the car near the meeting locations until he finished his business, and driving him back to Permanent Mission or his residence at the Official Residence.

45. Upon information and belief, Minister Kyungyul Han (hereafter, "Minister Han") served as Minister at Permanent Mission and moved in to the Official Residence in or around October 2017, after Minister Ko returned back to Korea.

46. Starting from around October 21, 2017, Permanent Mission required Plaintiff to primarily provide transportation for Minister Han until around May 22, 2018.

47. Since Plaintiff started providing transportation for Minister Han, he utilized Plaintiff's service as a Permanent Mission's chauffeur and also his personal driver to run him and his family member(s)' personal errands, providing free transportation services for his daughters/spouse/ acquaintances and driving him and his female companion(s) to a discreet rondeau at her apartment.

48. For instance, on or about October 21, 2017, Minister Han requested Plaintiff to drive him to Lynwood Plaza, a shopping mall located in Fort Lee and required him to stand by until he finished shopping at the mall and visiting a Lexus dealer on the way back to the Official Residence.

49. For instance, on or about February 22, 2018, Minister Han requested Plaintiff to drive him to a restaurant, Casa Mono, and stand-by until he finished a meeting with a real-estate agent and requested Plaintiff to drop off the real-estate agent near the Chelsea Art building located in W. 25th Street.

50.     For instance, on or about March 27, 2018, Minister Han requested Plaintiff to drive him to a restaurant, Gaonnuri, located on 32nd street between 5th & Broadway in Manhattan and required Plaintiff to wait for him until he finished lunch with his female companion. After Minister Han finished lunch with the female companion, he directed Plaintiff to drive both of them to her apartment located on 11 Howard Street. While Plaintiff was driving them to her apartment, they were sitting in the back seat of the Hyundai sedan side-by-side and had continuous physical interaction until Plaintiff arrived at the location. Even after Plaintiff arrived at the location, Minister Han did not allow him to go home, but required Plaintiff to wait for him in the car until Minister Han returned back from his female companion's apartment because he needed to "check-out" her place.

51.     Additionally, on numerous occasions, Minister Han requested Plaintiff to pick-up/drop-off his daughters from/to her residence located at 867 Metropolitan Ave. Brooklyn, 11211 and a JFK airport terminal to/from the Official Residence to save his daughters' transportation expenses.

52.     Plaintiff complained to Permanent Mission and its staff members, including Ambassador Cho, regarding Minister Han's personal use of Plaintiff's service and the Permanent Mission's sedan requiring Plaintiff to work longer hours, despite that Minister Han personally owned an automobile and was able to drive. However, Defendants did not do anything to remedy the situation.

53.     Upon information and belief, Minister Han returned back to Korea on or around May 22, 2018. Since then, Plaintiff worked as a chauffeur for Permanent Mission and its other diplomatic staff members to perform his regular duties until a new Minister moved in to the Official Residence.

9

54.     Upon information and belief, Minister Jungjae Lee (hereafter, "Minister Lee") served as Minister at Permanent Mission and moved in to the Official Residence in or around July 2018, after Minister Han returned back to Korea.

55.     Starting from around July 30, 2018, Permanent Mission required Plaintiff to primarily provide transportation for Minister Lee until around April 27, 2020.

56.     Again, since Plaintiff started providing transportation for Minister Lee, he utilized Plaintiff's service as a Permanent Mission's chauffeur and also his personal driver to run his and his family member(s)'s personal errands, and providing free transportation services for his family members/friends/acquaintances to purchase luxury handbags, play golf, and watch Broadway shows.

57.     For instance, on or about August 1, 2018, Minister Lee requested Plaintiff to drive him and his family members to a Korean market located in Fort Lee to grocery shop and automobile dealers such as Lexus and Honda Dealers located in Englewood and Tenafly to purchase a private automobile.

58.     For instance, on or about October 16, 2018, Minister Lee requested Plaintiff to drive him and his wife to a hotel to meet their friends visiting the State from Los Angeles. Minister Lee required Plaintiff to drive to Roosevelt hotel to pick up their friends and drive them to a restaurant. Plaintiff was required to stand-by for 3-4 hours until they finished eating dinner and then, was required to drop-off Minister Lee's friends to the hotel before Plaintiff drove Minister Lee and his wife to the Official Residence at night after 11:00 pm on that day.

59.     For instance, on or about October 17, 2018 and October 22, 2018, Minister Lee requested Plaintiff to provide transportation for his acquaintances. On the way to work at Permanent Mission, Minister Lee requested Plaintiff to pick up his acquaintances near their hotel

or at a certain location. Then, Minister Lee directed Plaintiff to drop him off at Permanent Mission and required Plaintiff to provide transportation for his acquaintances to a golf course, restaurant, and grocery market by driving the Permanent Mission's Hyundai sedan. On those days, Minister Lee's acquaintances used Plaintiff's service as a personal driver/butler and the Permanent Mission's sedan as free transportation and required Plaintiff to stand-by in the sedan for hours while they were engaged in their personal business.

60.     On numerous occasions, Minister Lee requested Plaintiff to drive him along with his friends, sister-in-law, or acquiesces, to various hotels, restaurants, and shopping malls. Upon information and belief, the purpose for Minister Lee's use of Plaintiff's service and the Permanent Mission's sedan with his friends and acquiesces was to foster their commercial activities as well as for personal purposes .

61.     For instance, when Minister Lee requested Plaintiff to drive his wife and her friend, visiting him from Los Angeles, to a shopping mall and wait there until they finish shopping at the mall. After they returned back to the car with a luxury bag, Plaintiff was requested to drive to a location to pick up Minister Lee and his other friend. In the presence of Minister Lee and Plaintiff, Minister Lee's wife told the other friend that Minister Lee let he use tax exemption card to purchase the bag on behalf of his friend at a tax-free price to save her money.

62.     On numerous occasions, Minister Lee requested Plaintiff to pick-up/drop-off his daughters from/to Penn Station and a JFK airport terminal to/from the Official Residence (sometimes to a dentist for his daughter's brace) to save the transportation cost.

63.     On a few occasions, Minister Lee requested Plaintiff to provide transportation for his daughter's boyfriend and their other friends using the same sedan free of charge.

64.     Again, Plaintiff complained to Permanent Mission and its staff members, including Ambassador Cho, regarding Minister Lee's personal use of Plaintiff's service and the Permanent Mission's sedan requiring Plaintiff to work longer hours, despite that Minister Lee personally owned an automobile and was able to drive. However, Defendants did not provide any meaningful responses to Plaintiff. Instead, Ambassador Cho stated to Plaintiff that he could not do anything to remedy the situation since the Permanent Mission's staff members were controlled by a foreign government entity in Korea and Plaintiff's compensation was also paid by the same entity. Defendants, again, failed to remedy the situation.

65.     Upon information and belief, Minister Lee returned back to Korea on or around April 27, 2020. Since then, Plaintiff worked as a chauffeur for Permanent Mission and its other diplomatic staff member primarily, Counselor Jo until a new minister moved in to the Official Residence in November 2020.

66.     Starting from around November 2020 to June 30, 2021, Permanent Mission required Plaintiff to primarily provide transportation for Minister Chung until the end Plaintiff's employment with Defendants.

**Plaintiff's Work Schedule and Pay**

67.     Throughout Plaintiff's employment with Defendants, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked.

68.     From around June 28, 2016 to June 30, 2017,  Plaintiff stared his work as early as 6:10 am until as late as 12:30 am on the next day for four (4) to six (6) days per week generally, but not always, from Monday to  Friday (sometimes, Monday to Thursday and any day(s) on the weekend) and worked sixty-two (62) hours per week on average. During this period, Plaintiff

received approximately $5,020.00 per month. Accordingly, he essentially received approximately $1,158.46 per week or $18.68 per hour, despite that his actual hourly rate was $28.96 during this period.

69.     From around July 1, 2017 to June 30, 2018, Plaintiff stared his work as early as 6:40 am until as late as 12:30 am on the next day for three (3) to six (6) days per week generally, but not always, from Monday to Friday (sometimes, Monday to Thursday and any day(s) on the weekend) and worked fifty-eight (58) hours per week on average. During this period, Plaintiff received approximately $5,227.00 per month. Accordingly, he essentially received approximately $1,206.23 per week or $20.80 per hour despite that his actual hourly rate was $30.16 during this period.

70.     From around July 1, 2018 to June 30, 2019, Plaintiff stared his work as early as 4:00 am until as late as 12:45 am on the next day for three (3) to seven (7) days per week generally, but not always, from Monday to Friday (sometimes, Monday to Thursday and any day(s) on the weekend) and worked fifty-six (56) hours per week on average. During this period, Plaintiff received approximately $6,550.00 per month. Accordingly, he essentially received approximately $1,511.54 per week or $26.99 per hour despite that his actual hourly rate was $37.79 during this period.

71.     From around July 1, 2019 to June 30, 2020, Plaintiff stared his work as early as 6:40 am until as late as 12:00 am on the next day for two (2) to seven (7) days per week generally, but not always, from Monday to Friday (sometimes, Monday to Thursday and any day(s) on the weekend) and worked fifty-two (52) hours per week on average. During this period, Plaintiff received approximately $5,300.00 per month. Accordingly, he essentially received approximately

**A-587**

$1,223.08 per week or $23.52 per hour despite that his actual hourly rate was $30.58 during this period.

72.     From around July 1, 2020 to June 30, 2021,  Plaintiff stared his work as early as 6:40 am until as late as 12:20 am on the next day for two (2) to six (6) days per week generally, but not always, from Monday to  Friday (sometimes, Monday to Thursday and Saturday on the weekend) and worked fifty-three (53) hours per week on average. During this period, Plaintiff received approximately $5,300.00 per month. Accordingly, he essentially received approximately $1,223.08 per week or $23.08 per hour despite that his actual hourly rate was $30.58 during this period.

73.     Upon information and belief, Defendants failed to keep any records reflecting Plaintiff's working hours and the amount of pay nor did they require Plaintiff to record his working hours such as requiring him to punch-in and/or punch-out.

74.     Defendants did not compensate Plaintiff for overtime compensation according to state and federal laws.

75.     Plaintiff was not compensated for New York's "spread of hours" premium for shift that lasted longer than ten (10) hours.

76.     Defendants did not provide Plaintiff with a wage notices at the time of his hiring. Instead, Permanent Mission, through its staff member(s), required Plaintiff to sign an agreement written in Korean labeled as "Contract for Employing a Chauffeur *[English translation]*" (hereafter, the "Agreement"), on yearly basis in every July (or April only in 2021) throughout Plaintiff's employment.

77.     Although Plaintiff actually started working for Permanent Mission as a chauffeur on or around June 28, 2016, Permanent Mission required Plaintiff to sign the 1st Agreement on

14

July 1, 2016 subject to an automatic renewal of his employment on yearly basis. Permanent Mission signed the Agreement through its diplomatic staff members: On July 1, 2016 and July 1, 2017, Permanent Mission signed the Agreement through Minister Ko, on July 1, 2018 and July 1, 2019, Permanent Mission signed the Agreement through Minister Lee; On July 1, 2020, Permanent Mission signed the Agreement through Counselor Jo; On April 1, 2021, Permanent Mission signed the Agreement through Minister Chung.

78.     The content in the Agreements specified Plaintiff regular working hours as from 9:00 am to 6:00 pm with a "base" monthly compensation in the amount $1,900.00 (from 2016 through 2019) or $1,710 (in 2020 and 2021), in addition to other compensations under the name of housing allowance, health insurance, bonus, and severance pay. However, none of the Agreements reflected Plaintiff's actual working hours nor did it reflect the accurate amount of compensation Plaintiff actually received. Moreover, Plaintiff never received any severance pay even after termination of Plaintiff's employment with Defendants in June 2021 despite that Defendants utilized Plaintiff's service for 5 years.

79.     Specifically when Permanent Mission, through Minister Chung, required Plaintiff to sign the Agreement in 2021, Minister Chung advised Plaintiff that the Agreement was a "Down Contract." It reflected further reduced and inaccurate amount of the "base" monthly compensation in the amount of $1,710.00 instead of $1,900.00 because Plaintiff passed the "retirement" age of 60, but Defendants could not find a younger alternative chauffeur immediately due to the Covid pandemic. Regardless of the type(s) and content(s) of the Agreement(s), none of the documents reflected Plaintiff's actual working schedules and accurate rate of pay. Additionally, all of the Agreements reflected the sort of practices which the FLSA and NYLL were intended to prohibit such as limiting the amount of employee's overtime compensation regardless of his actual regular

hourly rate and the total number of overtime hours the employee could be paid regardless of how many overtime hours the employee actually worked.

80.     Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff in cash and did not provide Plaintiff with any paystub.

81.     Upon information and belief, Defendants delivered Plaintiff's compensation in cash to a staff who served as a Second Secretary at Permanent Mission. Throughout Plaintiff's employment, Plaintiff picked up the cash in the Second Secretary's office at Permanent Mission.

82.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

83.     Defendants knew that the nonpayment of overtime and the "spread of hours" premium would economically injure Plaintiff by their violation of federal and state laws.

84.     While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

85.     Plaintiff's workdays frequently lasted longer than 10 hours.

86.     Defendants did not pay Plaintiff's "spread of hours" premium for every day in which he worked over 10 hours.

87.     Defendants did not provide Plaintiff with accurate written notice about the terms and conditions of his employment upon hire in relation to his actual rate of pay, regular pay cycle, and rate of overtime pay.

**Age Discrimination and Hostile Environment**

88.     Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

89.     Before Plaintiff turned the age of 60 in or around April 2020, Permanent Mission, through Minister Lee, first informed to Plaintiff that **"he needed to retire when he reached the age of 60."**

90.     As soon as Plaintiff turned 60-year-old on April 9, 2020, Minister Lee told him that **"he should get out because his age reached the Korean retirement age of 60"** and asked Plaintiff to resign until the expiry of his term as to serve Permanent Mission as a minister and returned back to Korea.

91.     Since April 9, 2020, Defendants Counselor Jo and Minister Chung continuously asked Plaintiff to resign because of Plaintiff's age and told Plaintiff that Defendants were unwilling to continue (or renew) Plaintiff's employment because he reached the "retirement age."

92.     Plaintiff verbally objected to the Defendants' forced and discriminatory termination and pleaded to the Defendants, including Ambassador Cho, to allow Plaintiff remain his position as a chauffeur and the compensation he was to receive.

93.     On or around July 1, 2020, Counselor Jo told Plaintiff that Permanent Mission was having hard time finding an alternative younger chauffeur due to the Covid pandemic. Defendants permitted Plaintiff to temporality stay until the pandemic situation eased so that they could find a suitable younger chauffeur.  Around that time and again, in the beginning of October 2020, Defendants advised Plaintiff that if Defendants decided to keep Plaintiff until the following year 2021, Plaintiff would be required to sign a "Down Contract" reflecting 20% reduction in monthly "base" pay because he already passed the retirement age.

94.     On or around September 1, 2020, Counselor Jo, acting at the direction of Permanent Mission, prepared a one-page document written in Korean labeled as "Agreement [*English translation*]" to prevent Plaintiff from brining a civil or criminal claim action relating to

17

termination of Plaintiff's employment with Defendants on June 30, 2021. Counselor Jo presented the document to Plaintiff and demanded him to sign. Under emotional and financial pressure, Plaintiff reluctantly capitulated to Counselor Jo's demand and signed the Agreement. At the moment Plaintiff signed the document, he felt that he had no choice but to agree with Counselor Jo to maintain his position as Plaintiff did not have any other financial resources specifically, during the pandemic.

95.     On or around April 1, 2021, Minister Chung, acting at the direction of Permanent Mission, presented the "Down Contract" reflecting the 20% reduction in monthly "base" pay to Plaintiff. Since none of the previous Agreements Defendants required Plaintiff annually to sign reflected Plaintiff's actual working schedule and his rate of pay, he signed the "Down Contract" reflecting the reduction, for the second time since July 1, 2020.

96.     Since Plaintiff turned 60 on April 9, 2020, Defendants Counselor Jo and Minister Chung continued to force Plaintiff to resign and his working conditions became intolerable even though Defendants forced Plaintiff to sign the "Down Contract(s)."

97.     For instance, starting from approximately the 4th day of Minister Chung's term as Minister at the Permanent Mission, he directly and indirectly forced Plaintiff to retire because of his age. Minister Chung frequently made negative and unreasonable comments to Plaintiff regarding his driving that Plaintiff drove too fast (although Plaintiff drove within the speed limit for the whole time) or Plaintiff changed the lane (although Plaintiff was required to change the lane to arrive at the location). On a few occasions, Minister Chung asked Plaintiff, "*where are you going after your retirement [with Defendants]*."

98.     Approximately in the beginning of May 2021, Ambassador Cho requested Plaintiff to come in to his office to investigate and penalize Plaintiff for reporting Ambassador Cho for

using the cook as his personal chef and mistreating his maid. The investigatory conversation lasted about 40 minutes. (i.e., who did Plaintiff tell, how did Plaintiff learn such facts, to whom did Plaintiff disclose such facts, etc.). Thereafter, Defendants did not give Plaintiff almost any work to do, but made him to just sit in the office at the Permanent Mission and do nothing.

99.     In or around June 2021, Plaintiff asked Minister Chung whether he could keep his position until the Permanent Mission found an alternative chauffeur. On the same day, Minister Chung responded to Plaintiff that he **"must leave"** by the end of June 2021 **"because he already passed the retirement age of 60"** and the Permanent Mission was not willing to keep a chauffeur over 60 years old.

100.    Since Plaintiff reached the Korean retirement age of 60, Defendants made it clear that they wanted Plaintiff to retire, and Plaintiff began feeling increasingly insecure, unappreciated, and unwelcome at work until Defendants actually terminated Plaintiff on June 30, 2021.

*Commercial Activity Exception Under 28 U.S.C. §1605*

101.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

102.    CPLR 1601 does not apply in the present case based upon the exception set forth in Section 1605 of the CPLR including but not limited to by reason of commercial activity that was not governmental in nature and the activity Plaintiff performed as a chauffeur, specifically for the Individual Defendants, is one which normally could be engaged in by any private party.

**STATEMENT OF CLAIM**

**COUNT I**
**[The Fair Labor Standard Act – Unpaid Overtime]**

103.    Plaintiff repeats and realleges all preceding paragraphs above as though fully set forth herein.

104.    Defendants willfully failed to pay Plaintiff overtime at a rate of at least one-and-a-half times her regular hourly rate for every hour Plaintiff worked above forty (40) hours in a work week. This failure violates the Fair Labor Standards Act, 29 U.S.C. § 207(a) and its implementing regulations.

105.    Defendants also violated the FLSA by failing to properly keep records as required by statute, 29 U.S.C. § 211(c).

106.    Plaintiff is entitled to her unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

107.    Plaintiff is also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b)

108.    Plaintiff seeks, and is entitled to, attorneys' fees incurred by his counsel, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [New York Labor Law – Unpaid Promised Wage]

109.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

110.    Defendants willfully failed to pay Plaintiff his wages weekly at the $28.96 – $37.79 hourly rates as he was promised, in violation of N.Y. Lab. Law § 191(a).

111.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

**A-594**

112.    Plaintiff is entitled to his unpaid wages as mandated by NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions in accordance with NYLL §§ 198, 663, and 681.

113.    Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel, costs of Court, and interest.

## COUNT III
### [New York Labor Law – Unpaid Overtime]

114.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

115.    Defendants willfully failed to pay Plaintiff overtime at a rate of at least one-and-a-half times his regularly hourly rate for every hour he worked above forty (40) hours in a single work week.

116.    96. Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

117.    97. Plaintiff is entitled to his unpaid wages mandated by NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions in accordance with NYLL §§ 198, 663, and 681.

118.    98. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel, costs of Court, and interest.

## COUNT IV
### [New York Labor Law – Spread of Hours]

119.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

120. Plaintiff regularly worked days in which the end of his work shift was more than ten (10) hours from the beginning of his work shift.

121. Defendants, in violation of 12 N.Y.C.R.R. § 146-1.6, never paid Plaintiff an additional hour of pay at the minimum wage rate for every day in which the interval between the beginning and the end of Plaintiff's work day was more than ten (10) hours.

122. Plaintiff is entitled to his unpaid spread of hour pay as mandated by NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198, 663, and 681.

123. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel, costs of Court, and interest.

**COUNT V**
**[New York Labor Law – Wage Notice and Wage Statement Violations]**

124. Plaintiff repeats and realleges all preceding paragraphs above as though fully set forth herein.

125. Defendants failed to provide Plaintiff, at the time of his hiring or thereafter, accurate wage notices in English or Korean (Plaintiff's primary language) containing his rates of pay and other information as required by NYLL § 195(1).

126. Defendants also failed to provide Plaintiff with accurate wage statements with every payment of wages which provided all of the information required under NYLL § 195(3).

127. For Defendants' violation of NYLL § 195(1), Plaintiff is entitled to $50 for each work day in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL §198(1-b).

128.    For Defendants' violation of NYLL § 195(3), Plaintiff is entitled to $250 for each

work day in which this violation continued to occur, in an amount not to exceed $5,000, pursuant

to NYLL §198(1-d).

129.    Plaintiff also seeks, and is entitled to, attorneys' fees incurred by her counsel, costs

of Court, and interest.

## COUNT VI
### [Violation of the New York State Human Rights Law – Age Discrimination]

130.    Plaintiff repeats and realleges all preceding paragraphs above as though fully set

forth herein.

131.    The NYSHRL provides that it shall be an unlawful discriminatory practice for an

employer to discharge or discriminate against an employee because of his age. See, N.Y. Executive

Law §296(1)(a).

132.    Plaintiff is qualified to work as an employee for Defendants and he has

satisfactorily performed the duties required by the position he held at the Permanent Mission.

133.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started

working for Defendants on June 28, 2016.

134.    From June 28, 2016 to June 30, 2021, Plaintiff was employed by Defendant

Permanent Mission located at 335 East 45th Street, New York, NY 10017, through its diplomatic

staff to work as a chauffeur.

135.    Upon information and belief, individual Defendants Ambassador Cho, Counselor

Jo, and Minister Chung serve as diplomatic staff at the Permanent Mission.

136.     Before Plaintiff turned the age of 60 in or around April 2020, Permanent Mission, through Minister Lee, first informed to Plaintiff that **"he needed to retire when he reached the age of 60."**

137.     As soon as Plaintiff turned 60-year-old on April 9, 2020, Minister Lee told him that **"he should get out because his age reached the Korean retirement age of 60"** and asked Plaintiff to resign until the expiry of his term as to serve Permanent Mission as a minister and returned back to Korea.

138.     Since April 9, 2020, Defendants Counselor Jo and Minister Chung continuously asked Plaintiff to resign because of Plaintiff's age and told Plaintiff that Defendants were unwilling to continue (or renew) Plaintiff's employment because he reached the "retirement age."

139.     On or around July 1, 2020 and again, in October 2020, Defendants Counselor Jo and Minister Chung advised Plaintiff that if Defendants decided to keep Plaintiff until the pandemic situation eased so that they could find a suitable younger chauffeur (i.e., until the following year 2021), Plaintiff would be required to sign a "Down Contract" reflecting 20% reduction in monthly "base" pay because he already passed the retirement age.

140.     On or around September 1, 2020, Counselor Jo, acting at the direction of Permanent Mission, prepared a one-page document written in Korean labeled as "Agreement [*English translation*]" to prevent Plaintiff from brining a civil or criminal claim action relating to termination of Plaintiff's employment with Defendants on June 30, 2021.   Counselor Jo presented the document to Plaintiff and demanded him to sign. Under emotional and financial pressure, Plaintiff reluctantly capitulated to Counselor Jo's demand and signed the Agreement. At the moment Plaintiff signed the document, he felt that he had no choice but to agree with Counselor

24

Jo to maintain his position as Plaintiff did not have any other financial resources specifically, during the pandemic.

141. On or around April 1, 2021, Minister Chung, acting at the direction of Permanent Mission, presented the "Down Contract" reflecting the 20% reduction in monthly "base" pay to Plaintiff. Since none of the previous Agreements Defendants required Plaintiff annually to sign reflected Plaintiff's actual working schedule and his rate of pay, he signed the "Down Contract" reflecting the reduction, for the second time since July 1, 2020.

142. Since Plaintiff turned 60 on April 9, 2020, Defendants Counselor Jo and Minister Chung continued to force Plaintiff to resign and his working conditions became intolerable even though Defendants forced Plaintiff to sign the "Down Contract(s)."

143. For instance, starting from approximately the 4th day of Minister Chung's term as Minister at the Permanent Mission, he directly and indirectly forced Plaintiff to retire because of his age. Minister Chung frequently made negative and unreasonable comments to Plaintiff regarding his driving that Plaintiff drove too fast (although Plaintiff drove within the speed limit for the whole time) or Plaintiff changed the lane (although Plaintiff was required to change the lane to arrive at the location). On a few occasions, Minister Chung asked Plaintiff, "*where are you going after your retirement [with Defendants].*"

144. Approximately in the beginning of May 2021, Ambassador Cho requested Plaintiff to come in to his office to investigate and penalize Plaintiff for reporting Ambassador Cho for using the cook as his personal chef and mistreating his maid. The investigatory conversation lasted about 40 minutes. (i.g., who did Plaintiff tell, how did Plaintiff learn such facts, to whom did Plaintiff disclose such facts, etc.). Thereafter, Defendants did not give Plaintiff almost any work to do, but made him to just sit in the office at the Permanent Mission and do nothing.

**A-599**

145.    In or around June 2021, Plaintiff asked Minister Chung whether he could keep his position until the Permanent Mission found an alternative chauffeur. On the same day, Minister Chung responded to Plaintiff that he **"must leave"** by the end of June 2021 **"because he already passed the retirement age of 60"** and the Permanent Mission was not willing to keep a chauffeur over 60 years old.

146.    Since Plaintiff reached the Korean retirement age of 60, Defendants made it clear that they wanted Plaintiff to retire, and Plaintiff began feeling increasingly insecure, unappreciated, and unwelcome at work until Defendants actually terminated Plaintiff on June 30, 2021.

147.    Plaintiff verbally objected to the Defendants' forced and discriminatory termination and pleaded to the Defendants, including Ambassador Cho, to allow Plaintiff remain his position as a chauffeur and the compensation he was to receive. However, Ambassador Cho failed to take adequate measure to remedy the discrimination and/or harassment suffered by Plaintiff.

148.    As Defendants Jo and Chung continuously pressured Plaintiff to retire, his stress about his situation grew. In almost every morning when Plaintiff got ready to go to work, he started feeling knots in his stomach in anticipating the start of his workday, and the sense of feeling unwanted, pushed aside, and on his way to being terminated.

149.    Defendants Jo and Chung's age-based discrimination and/or harassment caused Plaintiff substantial emotional distress and embarrassment.

150.    Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, which supports an award of punitive damages.

151.    Moreover, Defendant Permanent Mission ratified and condoned the unlawful acts of its staff including, its Ministers and Counselors.

152. But for Defendants' unlawful discriminatory actions herein alleged, Plaintiff would be employed as a chauffeur for the Permanent Mission.

153. As a result of Defendants' unlawful employment practices Plaintiff has suffered extreme mental anguish, outrage severe anxiety, painful embarrassment among his friends and co-workers, and the loss of employment of the ordinary pleasures of everyday life.

154. As a further result of Defendants' unlawful employment practices, Plaintiff has suffered and continue to suffer substantial damages, including back pay and reinstatement or front pay, other employment benefits, and damages for emotional pain and mental anguish in amounts to be determined at trial.

155. By the acts and practices described above, including without limitation the disparate treatment, assignment of his duties to a younger employee, and the creation of a hostile work environment, Defendants discriminated against Plaintiff in the terms and conditions of his employment and terminated him in violation of the NYSHRL.

156. Defendants' conduct was done in conscious disregard of and reckless indifference to Plaintiff's rights.

157. Plaintiff therefore seeks compensatory damages, emotional and physical damages, reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

**COUNT VII**
**[Violation of the New York State Human Rights Law - Hostile Work Environment]**

158. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein

159. Plaintiff is qualified to work as an employee for Defendants and he has

**A-601**

satisfactorily performed the duties required by the position he held at the Permanent Mission.

160.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

161.    From June 28, 2016 to June 30, 2021, Plaintiff was employed by Defendant Permanent Mission located at 335 East 45th Street, New York, NY 10017, through its diplomatic staff to work as a chauffeur.

162.    Upon information and belief, individual Defendants Ambassador Cho, Counselor Jo, and Minister Chung serve as diplomatic staff at the Permanent Mission.

163.    Before Plaintiff turned the age of 60 in or around April 2020, Permanent Mission, through Minister Lee, first informed to Plaintiff that **"he needed to retire when he reached the age of 60."**

164.    As soon as Plaintiff turned 60-year-old on April 9, 2020, Minister Lee told him that **"he should get out because his age reached the Korean retirement age of 60"** and asked Plaintiff to resign until the expiry of his term as to serve Permanent Mission as a minister and returned back to Korea.

165.    Since April 9, 2020, Defendants Counselor Jo and Minister Chung continuously asked Plaintiff to resign because of Plaintiff's age and told Plaintiff that Defendants were unwilling to continue (or renew) Plaintiff's employment because he reached the "retirement age."

166.    On or around July 1, 2020 and again, in October 2020, Defendants Counselor Jo and Minister Chung advised Plaintiff that if Defendants decided to keep Plaintiff until the pandemic situation eased so that they could find a suitable younger chauffeur (i.g., until the following year 2021), Plaintiff would be required to sign a "Down Contract" reflecting 20% reduction in monthly "base" pay because he already passed the retirement age.

28

167.    On or around September 1, 2020, Counselor Jo, acting at the direction of Permanent Mission, prepared a one-page document written in Korean labeled as "Agreement [*English translation*]" to prevent Plaintiff from brining a civil or criminal claim action relating to termination of Plaintiff's employment with Defendants on June 30, 2021.  Counselor Jo presented the document to Plaintiff and demanded him to sign. Under emotional and financial pressure, Plaintiff reluctantly capitulated to Counselor Jo's demand and signed the Agreement. At the moment Plaintiff signed the document, he felt that he had no choice but to agree with Counselor Jo to maintain his position as Plaintiff did not have any other financial resources specifically, during the pandemic.

168.    On or around April 1, 2021, Minister Chung, acting at the direction of Permanent Mission, presented the "Down Contract" reflecting the 20% reduction in monthly "base" pay to Plaintiff. Since none of the previous Agreements Defendants required Plaintiff annually to sign reflected Plaintiff's actual working schedule and his rate of pay, he signed the "Down Contract" reflecting the reduction, for the second time since July 1, 2020.

169.    Since Plaintiff turned 60 on April 9, 2020, Defendants Counselor Jo and Minister Chung continued to force Plaintiff to resign and his working conditions became intolerable even though Defendants forced Plaintiff to sign the "Down Contract(s)."

170.    For instance, starting from approximately the 4th day of Minister Chung's term as Minister at the Permanent Mission, he directly and indirectly forced Plaintiff to retire because of his age. Minister Chung frequently made negative and unreasonable comments to Plaintiff regarding his driving that Plaintiff drove too fast (although Plaintiff drove within the speed limit for the whole time) or Plaintiff changed the lane (although Plaintiff was required to change the

lane to arrive at the location). On a few occasions, Minister Chung asked Plaintiff, "*where are you going after your retirement [with Defendants]*."

171.    Approximately in the beginning of May 2021, Ambassador Cho requested Plaintiff to come in to his office to investigate and penalize Plaintiff for reporting Ambassador Cho for using the cook as his personal chef and mistreating his maid. The investigatory conversation lasted about 40 minutes. (i.g., who did Plaintiff tell, how did Plaintiff learn such facts, to whom did Plaintiff disclose such facts, etc.). Thereafter, Defendants did not give Plaintiff almost any work to do, but made him to just sit in the office at the Permanent Mission and do nothing.

172.    In or around June 2021, Plaintiff asked Minister Chung whether he could keep his position until the Permanent Mission found an alternative chauffeur. On the same day, Minister Chung responded to Plaintiff that he **"must leave"** by the end of June 2021 **"because he already passed the retirement age of 60"** and the Permanent Mission was not willing to keep a chauffeur over 60 years old.

173.    Since Plaintiff reached the Korean retirement age of 60, Defendants made it clear that they wanted Plaintiff to retire, and Plaintiff began feeling increasingly insecure, unappreciated, and unwelcome at work until Defendants actually terminated Plaintiff on June 30, 2021.

174.    Plaintiff verbally objected to the Defendants' forced and discriminatory termination and pleaded to the Defendants, including Ambassador Cho, to allow Plaintiff remain his position as a chauffeur and the compensation he was to receive. However, Ambassador Cho failed to take adequate measure to remedy the discrimination and/or harassment suffered by Plaintiff.

175.    As Defendants Jo and Chung continuously pressured Plaintiff to retire, his stress about his situation grew. In almost every morning when Plaintiff got ready to go to work, he started feeling knots in his stomach in anticipating the start of his workday, and the sense of feeling

30

unwanted, pushed aside, and on his way to being terminated.

176.    As Defendants Jo and Chung continuously pressured Plaintiff to retire, his stress about his situation grew. In almost every morning when Plaintiff got ready to go to work, he started feeling knots in his stomach in anticipating the start of his workday, and the sense of feeling unwanted, pushed aside, and on his way to being terminated.

177.    Upon information and belief, the Ministers and Counselors of the Permanent Mission made their personnel and other decisions in consultation with Defendant Cho, who served Ambassador of Permanent Mission.

178.    Individual Defendants served as an Ambassador, Minister and Counselor of Permanent Mission and directly supervised Plaintiff as well as the Permanent Mission's other staff.

179.    Defendant Permanent Mission and failed to take adequate measures to remedy the discrimination and/or harassment suffered by Plaintiff. Instead, Defendant Permanent Mission further discriminated against Plaintiff by requiring Plaintiff to work as a butler/personal driver of its staff members and their family members for increased working hours to assist them with performing various types of commercial activities.

180.    Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the NYSHRL.

181.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff suffered the indignity of discrimination, the invasion of his rights to be free from discrimination which has manifested in physical and emotional distress.

182.    As a further direct proximate result of Defendants' unlawful employment practices, Plaintiff suffered extreme mental anguish, outrage severe anxiety, painful embarrassment among his friends and co-workers, and the loss of employment of the ordinary pleasures of everyday life.

31

183.    Defendants' conduct was done in conscious disregard of Plaintiff's rights.

184.    Plaintiff therefore seeks compensatory damages, emotional and physical damages, reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

**COUNT VIII**
**[Violation of the New York City Human Rights Law – Age Discrimination]**

185.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

186.    The NYCHRL provides that it shall be an unlawful discriminatory practice for an employer or agent thereof to, because of the actual or perceived age of any person, discriminate against such person in the terms and conditions of employment or terminate such person. See, NYC Administrative Code §8-107(a).

187.    Plaintiff is a "person" under the New York City Human Rights Law, §8-102(1).

188.    Defendants are an "employer or an employee or agent thereof" under the New York City Human Rights Law, §8-102 and §8-107(1)(a).

189.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

190.    Plaintiff is qualified to work as an employee for Defendants and he has satisfactorily performed the duties required by the position he held at the Permanent Mission.

191.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

192.    From June 28, 2016 to June 30, 2021, Plaintiff was employed by Defendant Permanent Mission located at 335 East 45th Street, New York, NY 10017, through its diplomatic

staff to work as a chauffeur.

193.    Upon information and belief, individual Defendants Ambassador Cho, Counselor Jo, and Minister Chung serve as diplomatic staff at the Permanent Mission.

194.    Before Plaintiff turned the age of 60 in or around April 2020, Permanent Mission, through Minister Lee, first informed to Plaintiff that **"he needed to retire when he reached the age of 60."**

195.    As soon as Plaintiff turned 60-year-old on April 9, 2020, Minister Lee told him that **"he should get out because his age reached the Korean retirement age of 60"** and asked Plaintiff to resign until the expiry of his term as to serve Permanent Mission as a minister and returned back to Korea.

196.    Since April 9, 2020, Defendants Counselor Jo and Minister Chung continuously asked Plaintiff to resign because of Plaintiff's age and told Plaintiff that Defendants were unwilling to continue (or renew) Plaintiff's employment because he reached the "retirement age."

197.    On or around July 1, 2020 and again, in October 2020, Defendants Counselor Jo and Minister Chung advised Plaintiff that if Defendants decided to keep Plaintiff until the pandemic situation eased so that they could find a suitable younger chauffeur (i.g., until the following year 2021), Plaintiff would be required to sign a "Down Contract" reflecting 20% reduction in monthly "base" pay because he already passed the retirement age.

198.    On or around September 1, 2020, Counselor Jo, acting at the direction of Permanent Mission, prepared a one-page document written in Korean labeled as "Agreement [*English translation*]" to prevent Plaintiff from brining a civil or criminal claim action relating to termination of Plaintiff's employment with Defendants on June 30, 2021.  Counselor Jo presented the document to Plaintiff and demanded him to sign. Under emotional and financial pressure,

Plaintiff reluctantly capitulated to Counselor Jo's demand and signed the Agreement. At the moment Plaintiff signed the document, he felt that he had no choice but to agree with Counselor Jo to maintain his position as Plaintiff did not have any other financial resources specifically, during the pandemic.

199.    On or around April 1, 2021, Minister Chung, acting at the direction of Permanent Mission, presented the "Down Contract" reflecting the 20% reduction in monthly "base" pay to Plaintiff. Since none of the previous Agreements Defendants required Plaintiff annually to sign reflected Plaintiff's actual working schedule and his rate of pay, he signed the "Down Contract" reflecting the reduction, for the second time since July 1, 2020.

200.    Since Plaintiff turned 60 on April 9, 2020, Defendants Counselor Jo and Minister Chung continued to force Plaintiff to resign and his working conditions became intolerable even though Defendants forced Plaintiff to sign the "Down Contract(s)."

201.    For instance, starting from approximately the 4th day of Minister Chung's term as Minister at the Permanent Mission, he directly and indirectly forced Plaintiff to retire because of his age. Minister Chung frequently made negative and unreasonable comments to Plaintiff regarding his driving that Plaintiff drove too fast (although Plaintiff drove within the speed limit for the whole time) or Plaintiff changed the lane (although Plaintiff was required to change the lane to arrive at the location). On a few occasions, Minister Chung asked Plaintiff, "*where are you going after your retirement [with Defendants].*"

202.    Approximately in the beginning of May 2021, Ambassador Cho requested Plaintiff to come in to his office to investigate and penalize Plaintiff for reporting Ambassador Cho for using the cook as his personal chef and mistreating his maid. The investigatory conversation lasted about 40 minutes. (i.e., who did Plaintiff tell, how did Plaintiff learn such facts, to whom did

Plaintiff disclose such facts, etc.). Thereafter, Defendants did not give Plaintiff almost any work to do, but made him to just sit in the office at the Permanent Mission and do nothing.

203.    In or around June 2021, Plaintiff asked Minister Chung whether he could keep his position until the Permanent Mission found an alternative chauffeur. On the same day, Minister Chung responded to Plaintiff that he **"must leave"** by the end of June 2021 **"because he already passed the retirement age of 60"** and the Permanent Mission was not willing to keep a chauffeur over 60 years old.

204.    Since Plaintiff reached the Korean retirement age of 60, Defendants made it clear that they wanted Plaintiff to retire, and Plaintiff began feeling increasingly insecure, unappreciated, and unwelcome at work until Defendants actually terminated Plaintiff on June 30, 2021.

205.    Plaintiff verbally objected to the Defendants' forced and discriminatory termination and pleaded to the Defendants, including Ambassador Cho, to allow Plaintiff remain his position as a chauffeur and the compensation he was to receive. However, Ambassador Cho failed to take adequate measure to remedy the discrimination and/or harassment suffered by Plaintiff.

206.    As Defendants Jo and Chung continuously pressured Plaintiff to retire, his stress about his situation grew. In almost every morning when Plaintiff got ready to go to work, he started feeling knots in his stomach in anticipating the start of his workday, and the sense of feeling unwanted, pushed aside, and on his way to being terminated.

207.    Defendants Jo and Chung's age-based discrimination and/or harassment caused Plaintiff substantial emotional distress and embarrassment.

208.    Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, which supports an award of punitive damages.

**A-609**

209.    Moreover, Defendant Permanent Mission ratified and condoned the unlawful acts of its staff including, its Ministers and Counselors.

210.    But for Defendants' unlawful discriminatory actions herein alleged, Plaintiff would be employed as a chauffeur for the Permanent Mission.

211.    As a result of Defendants' unlawful employment practices Plaintiff has suffered extreme mental anguish, outrage severe anxiety, painful embarrassment among his friends and co-workers, and the loss of employment of the ordinary pleasures of everyday life.

212.    As a further result of Defendants' unlawful employment practices, Plaintiff has suffered and continue to suffer substantial damages, including back pay and reinstatement or front pay, other employment benefits, and damages for emotional pain and mental anguish in amounts to be determined at trial.

213.    Defendants' conduct was done in conscious disregard of and reckless indifference to Plaintiff's rights.

214.    Plaintiff therefore seeks compensatory damages, emotional and physical damages, reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

<div align="center">

**COUNT IX**
**[Violation of the New York City Human Rights Law - Hostile Work Environment]**

</div>

215.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

216.    Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the NYCHRL.

217.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

218.    Plaintiff is qualified to work as an employee for Defendants and he has satisfactorily performed the duties required by the position he held at the Permanent Mission.

219.    Plaintiff is a 61-year-old male and was 56 years of age when Plaintiff first started working for Defendants on June 28, 2016.

220.    From June 28, 2016 to June 30, 2021, Plaintiff was employed by Defendant Permanent Mission located at 335 East 45th Street, New York, NY 10017, through its diplomatic staff to work as a chauffeur.

221.    Upon information and belief, individual Defendants Ambassador Cho, Counselor Jo, and Minister Chung serve as diplomatic staff at the Permanent Mission.

222.    Before Plaintiff turned the age of 60 in or around April 2020, Permanent Mission, through Minister Lee, first informed to Plaintiff that **"he needed to retire when he reached the age of 60."**

223.    As soon as Plaintiff turned 60-year-old on April 9, 2020, Minister Lee told him that **"he should get out because his age reached the Korean retirement age of 60"** and asked Plaintiff to resign until the expiry of his term as to serve Permanent Mission as a minister and returned back to Korea.

224.    Since April 9, 2020, Defendants Counselor Jo and Minister Chung continuously asked Plaintiff to resign because of Plaintiff's age and told Plaintiff that Defendants were unwilling to continue (or renew) Plaintiff's employment because he reached the "retirement age."

225.    On or around July 1, 2020 and again, in October 2020, Defendants Counselor Jo and Minister Chung advised Plaintiff that if Defendants decided to keep Plaintiff until the

pandemic situation eased so that they could find a suitable younger chauffeur (i.e., until the following year 2021), Plaintiff would be required to sign a "Down Contract" reflecting 20% reduction in monthly "base" pay because he already passed the retirement age.

226. On or around September 1, 2020, Counselor Jo, acting at the direction of Permanent Mission, prepared a one-page document written in Korean labeled as "Agreement [*English translation*]" to prevent Plaintiff from brining a civil or criminal claim action relating to termination of Plaintiff's employment with Defendants on June 30, 2021. Counselor Jo presented the document to Plaintiff and demanded him to sign. Under emotional and financial pressure, Plaintiff reluctantly capitulated to Counselor Jo's demand and signed the Agreement. At the moment Plaintiff signed the document, he felt that he had no choice but to agree with Counselor Jo to maintain his position as Plaintiff did not have any other financial resources specifically, during the pandemic.

227. On or around April 1, 2021, Minister Chung, acting at the direction of Permanent Mission, presented the "Down Contract" reflecting the 20% reduction in monthly "base" pay to Plaintiff. Since none of the previous Agreements Defendants required Plaintiff annually to sign reflected Plaintiff's actual working schedule and his rate of pay, he signed the "Down Contract" reflecting the reduction, for the second time since July 1, 2020.

228. Since Plaintiff turned 60 on April 9, 2020, Defendants Counselor Jo and Minister Chung continued to force Plaintiff to resign and his working conditions became intolerable even though Defendants forced Plaintiff to sign the "Down Contract(s)."

229. For instance, starting from approximately the 4th day of Minister Chung's term as Minister at the Permanent Mission, he directly and indirectly forced Plaintiff to retire because of his age. Minister Chung frequently made negative and unreasonable comments to Plaintiff

regarding his driving that Plaintiff drove too fast (although Plaintiff drove within the speed limit for the whole time) or Plaintiff changed the lane (although Plaintiff was required to change the lane to arrive at the location). On a few occasions, Minister Chung asked Plaintiff, "*where are you going after your retirement [with Defendants]*."

230. Approximately in the beginning of May 2021, Ambassador Cho requested Plaintiff to come in to his office to investigate and penalize Plaintiff for reporting Ambassador Cho for using the cook as his personal chef and mistreating his maid. The investigatory conversation lasted about 40 minutes. (i.e., who did Plaintiff tell, how did Plaintiff learn such facts, to whom did Plaintiff disclose such facts, etc.). Thereafter, Defendants did not give Plaintiff almost any work to do, but made him to just sit in the office at the Permanent Mission and do nothing.

231. In or around June 2021, Plaintiff asked Minister Chung whether he could keep his position until the Permanent Mission found an alternative chauffeur. On the same day, Minister Chung responded to Plaintiff that he **"must leave"** by the end of June 2021 **"because he already passed the retirement age of 60"** and the Permanent Mission was not willing to keep a chauffeur over 60 years old.

232. Since Plaintiff reached the Korean retirement age of 60, Defendants made it clear that they wanted Plaintiff to retire, and Plaintiff began feeling increasingly insecure, unappreciated, and unwelcome at work until Defendants actually terminated Plaintiff on June 30, 2021.

233. Plaintiff verbally objected to the Defendants' forced and discriminatory termination and pleaded to the Defendants, including Ambassador Cho, to allow Plaintiff remain his position as a chauffeur and the compensation he was to receive. However, Ambassador Cho failed to take adequate measure to remedy the discrimination and/or harassment suffered by Plaintiff.

234. As Defendants Jo and Chung continuously pressured Plaintiff to retire, his stress

about his situation grew. In almost every morning when Plaintiff got ready to go to work, he started feeling knots in his stomach in anticipating the start of his workday, and the sense of feeling unwanted, pushed aside, and on his way to being terminated.

235.　Upon information and belief, the Ministers and Counselors of the Permanent Mission made their personnel and other decisions in consultation with Defendant Cho, who served Ambassador of Permanent Mission.

236.　Individual Defendants served as an Ambassador, Minister and Counselor of Permanent Mission and directly supervised Plaintiff as well as the Permanent Mission's other staff.

237.　Defendant Permanent Mission and failed to take adequate measures to remedy the discrimination and/or harassment suffered by Plaintiff. Instead, Defendant Permanent Mission further discriminated against Plaintiff by requiring Plaintiff to work as a butler/personal driver of its staff members and their family members for increased working hours to assist them with performing various types of commercial activities.

238.　Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the NYCHRL.

239.　As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff suffered the indignity of discrimination, the invasion of his rights to be free from discrimination which has manifested in physical and emotional distress.

240.　As a further direct proximate result of Defendants' unlawful employment practices, Plaintiff suffered extreme mental anguish, outrage severe anxiety, painful embarrassment among his friends and co-workers, and the loss of employment of the ordinary pleasures of everyday life.

241.　Defendants' conduct was done in conscious disregard of Plaintiff's rights.

242.　Plaintiff therefore seeks compensatory damages, emotional and physical damages,

reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, both jointly and severally as follows:

a) assuming jurisdiction over this action as this action falls into one or more of the exceptions to the FSIA;

b) declaring Defendants violated the FLSA, the NYLL, the New York Executive Law, and the New York City Human Rights Law;

c) permanently enjoining Defendants from further violations of the FLSA, NYLL, NYSHRL, and NYCHRL;

d) granting judgment to Plaintiff on his FLSA claims and awarding Plaintiff his unpaid wages and an equal amount in liquidated damages;

e) granting judgment to Plaintiff on his NYLL claims and awarding Plaintiff his unpaid wages, spread of hours compensation, applicable statutory damages, and liquidated damages as provided for by statute;

f) granting judgment to Plaintiff on his NYSHRL claims and awarding Plaintiff appropriate damages and fines and penalties as provided for by statute;

g) granting judgment to Plaintiff on his NYCHRL claims and awarding Plaintiff appropriate compensatory and punitive damages as provided for by statute;

h) awarding Plaintiff all damages sustained as a result of Defendants' conduct, including damages for emotional distress, embarrassment, and anguish;

i) awarding Plaintiff prejudgment and postjudgment interest as allowed by law;

j)   awarding Plaintiff his costs and reasonable attorneys' fees; and

k)   granting such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated:  July 19, 2021                          HANG & ASSOCIATES, PLLC.

                                               /S/ *DIANA SEO*
                                               Diana Y. Seo, Esq.
                                               136-20 38th Ave., Suite 10G
                                               Flushing, New York 11354
                                               Tel: 718.353.8588
                                               dseo@hanglaw.com
                                               *Attorneys for Plaintiff*

**A-616**

### CONSENT TO SUE UNDER
### FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by _permanent Mission of the Republic of Korea to the united Nations_
and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that
I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Hyunhuy Nam_
Full Legal Name (Print)

_[signature]_
Signature

_06/05/2021_
Date

<u>운전원 채용 계약서</u>

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2016년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 고봉우 공사
 (2) 대상자

  ο 성명 : 남현희
  ο 생년월일 : 1960.4.9
  ο 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

DEFENDANT'S
EXHIBIT

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간증 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2016년 7월 1일부터 2017년 7월 1일까지로 한다.

채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

　＊ 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 의료보험료 보조금 1,087불을 매월 지급한다.

(3) 시간외 수당은 시간당 평일 12불·주말 15불로 하되 최대 월 570불 내에서 지급한다.

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
    사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
   실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을
   즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
   고용주에게 2개월전 서면 통보해야한다.

   (1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
       불분명하게된 경우
   (2) 범죄 또는 중대한 과실을 범한 경우
   (3) 직무를 태만히 하거나 소행이 불량한 경우
   (4) 상사의 직무상 명령에 복종하지 아니한 경우
   (5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중
       2개 항목 이상 부문에서 '불량' 평가를 받는 경우
   (6) 계약사업을 계속할 필요성이 소멸한 경우
   (7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음
   기준에 의해 퇴직금을 지급한다.

   o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분
     상여금)의 100%를 지급한다.

   * 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.
 (1) 3개월 이상 6개월 미만 : 3일
 (2) 6개월 이상 1년 미만 : 6일
 (3) 1년 이상 3년 미만 : 10일
 (4) 3년 이상 : 14일
 (5) 단, 지각, 조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2016년  7월  1일

고용주
주유엔 대한민국대표부 공사
고 봉 우  (서명)

고용원
(1960.4.9生)
남 현 회  (서명)

ROKPM0013

**A-621**

서 약 서

본인은 2016년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2016년  7월  1일

서약자      소      속 : 駐유엔 대한민국대표부
            생 년 월 일 : 1960.4.9
            성      명 : 남 현 희 (서명)

서약집행자 소      속 : 駐유엔 대한민국대표부
            직      책 : 공      사
            성      명 : 고 봉 우 (서명)

ROKPM0014

**A-622**

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2016.

1. Parties to the Contract

   (1) Employer Name: Minister Bong-Woo Ko

   (2) Subject

      o   Name: Hyunhuy Nam

      o   Date of Birth: 4/9/1960

      o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related instructions including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

ROKPM00010 - T

**A-623**

    (5) Shall not engage in any act of any kind which may be contrary to the national interest

        of the Republic of Korea

    (6) Shall not disclose, during his employment and after the termination thereof, any

        classified information and facts acquired during his employment. In the event such

        obligation is breached, the Employee shall be subject to punishment under the laws of

        the Republic of Korea.

3. The employment period shall be from July 1, 2016 through July 1, 2017.

   The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the

   Employer's request to work during off-schedule hours including on the weekends or

   national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical

   insurance subsidy, etc.

    (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments

        (daily increment if less than 1 month) on the 19th of each month.

        *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the

        long-term service allowance shall be $50 per year, up to a maximum of 20 years.

    (2) Be paid housing subsidy of $1,450 per month.

    (3) Be paid medical insurance subsidy of $1,087 per month.

    (3) Off-schedule wages shall be $12 per hour on weekdays and $15 per hour on

   weekends but shall be capped at a maximum of $570 a month.

    (4) Bonus ($1,900 per year) will be paid in June of each year.

    (5) Severance pay will be paid if employed for one year or longer.

**A-624**

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any other payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8. The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

  o 100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

  * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

**A-625**

9.  The Employer may allow the Employee paid time off in accordance with the following.

    (1) More than 3 months, less than 6 months: 3 days

    (2) More than 6 months, less than 1 year: 6 days

    (3) More than 1 year, less than 3 years: 10 days

    (4) More than 3 years: 14 days

    (5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.


This agreement is executed in 2 copies and each party shall keep 1 copy.

<div align="center">July 1, 2016.</div>


Employer                                Employee

Permanent Mission of the Republic of Korea    (DOB: 4/9/1960)
to the United Nations

Bong-woo Ko
                                        Hyunhuy Nam

(signature)    [signed]
                                        (signature)    [signed]

**A-626**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2016, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

<div align="center">July 1, 2016</div>

| | | |
|---|---|---|
| Pledgor: | Department: | Permanent Mission of the Republic of Korea to the United Nations |
| | Date of Birth: | April 9, 1960 |
| | Name: | Hyunhuy Nam          (signature) [signature] |
| | | |
| Pledgee: | Department: | Permanent Mission of the Republic of Korea to the United Nations |
| | Title: | Minister |
| | Name: | Bong-Woo Ko          (signature) [signature] |

<u>운전원 채용 계약서</u>

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2017년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 고봉우 공사
 (2) 대상자

 o 성명 : 남현희
 o 생년월일 : 1960.4.9
 o 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

DEFENDANT'S
EXHIBIT

PENGAD 800-631-6989

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2017년 7월 1일부터 2018년 7월 1일까지로 한다.

   채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

   ＊ 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 의료보험료 보조금 1,039불을 매월 지급한다.

(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 × 1/12) ÷ 209 × 150%}에 따라 지급한다(月 52시간 한도)

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

ROKPM0016

**A-629**

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
   사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
   실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을
   즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
   고용주에게 2개월전 서면 통보해야한다.

   (1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
      불분명하게된 경우
   (2) 범죄 또는 중대한 과실을 범한 경우
   (3) 직무를 태만히 하거나 소행이 불량한 경우
   (4) 상사의 직무상 명령에 복종하지 아니한 경우
   (5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중
      2개 항목 이상 부문에서 '불량' 평가를 받는 경우
   (6) 계약사업을 계속할 필요성이 소멸한 경우
   (7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음
   기준에 의해 퇴직금을 지급한다.

   o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분
      상여금)의 100%를 지급한다.

   * 퇴직금 : 최종기본급 3개월분/3+년 상여금/12)X근무연수

ROKPM0017

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정
   직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게
   휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
    3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

<div align="right">2017년  7월  1일</div>


고용주                          고용원
주유엔 대한민국대표부 공사        (1960.4.9生)

고 봉 우                         남 현 희

(서명)                          (서명)

서 약 서

본인은 2017년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2017년  7월  1일

서약자    소      속 : 駐유엔 대한민국대표부
          생 년 월 일 : 1960.4.9
          성      명 : 남 현 회 (서명)

서약집행자 소    속 : 駐유엔 대한민국대표부
          직      책 : 공    사
          성      명 : 고 봉 우 (서명)

ROKPM0019

**A-632**

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United

Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby

execute the employment agreement as follows on this 1st day of July 2017.

1.  Parties to the Contract

    (1) Employer Name: Minister Bong-Woo Ko

    (2) Subject

    o   Name: Hyunhuy Nam

    o   Date of Birth: 4/9/1960

    o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2.  By signing this agreement, the Employee shall perform all duties and responsibilities set

    forth in the internal Employment Policy of the Permanent Mission of the Republic of

    Korea to the United Nations, and particularly the following duties and responsibilities.

    (1) The Employee shall faithfully perform his duties and responsibilities to the best of his

    ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good

    cause.

    (4) In the event the Employee wishes to engage in activities, apart from his duties under

    this agreement, from which he may gain financial benefits apart, he must first obtain

    the Employer's permission in advance.

# A-633

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2017 through July 1, 2018.

   The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

   (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

   *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

   (2) Be paid housing subsidy of $1,450 per month.

   (3) Be paid medical insurance subsidy of $1,039 per month.

   (3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%} (Maximum 52 hours per month)

   (4) Bonus ($1,900 per year) will be paid in June of each year.

   (5) Severance pay will be paid if employed for one year or longer.

**A-634**

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8. The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

o 100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

* Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

**A-635**

9. The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2017.

Employer

Permanent Mission of the Republic of Korea
to the United Nations

Bong-woo Ko

(signature)    [signed]

Employee

(DOB: 4/9/1960)

Hyunhuy Nam

(signature)    [signed]

ROKPM00018 - T

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2017, duly pledge as follows:

1.  I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2.  I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

July 1, 2017

Pledgor:     Department:  Permanent Mission of the Republic of Korea to the United Nations
             Date of Birth: April 9, 1960
             Name:        Hyunhuy Nam          (signature) [signature]

Pledgee:     Department:  Permanent Mission of the Republic of Korea to the United Nations
             Title:       Minister
             Name:        Bong-Woo Ko          (signature) [signature]

ROKPM00019 - T

## 운전원 채용 계약서

주유엔 대한민국대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원
남현희(남, 60.4.9생)은 2018년 7월 1일 다음과 같이 채용 계약을
체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사
 (2) 대상자

 o 성명 : 남현희
 o 생년월일 : 1960.4.9
 o 주소 : 128 w Central Blvd. Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부
 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히
 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에
 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는
 아니된다.
 (4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는
 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전
 허가를 받아야 한다.



DEFENDANT'S
EXHIBIT

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.
(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후
외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에
따라 처벌받는다.

3. 채용기간은 2018년 7월 1일부터 2019년 7월 1일까지로 한다.

채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나
공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야
하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을
포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시
하루 단위) 매월 19일 지급한다.
　* 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩
　최대 20년 범위내 가산한다
(2) 주거보조비 1,450불을 매월 지급한다.
(3) 공관 단체 의료보험료의 80% 보조금(1,109불)을 매월 지
급한다.
(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 ×
1/12) ÷ 209 × 150%}에 따라 지급한다
(4) 상여금(年1,900불)은 매년 6월에 지급한다

ROKPM0021

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을
즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
불분명하게된 경우

(2) 범죄 또는 중대한 과실을 범한 경우

(3) 직무를 태만히 하거나 소행이 불량한 경우

(4) 상사의 직무상 명령에 복종하지 아니한 경우

(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중
2개 항목 이상 부문에서 '불량' 평가를 받는 경우

(6) 계약사업을 계속할 필요성이 소멸한 경우

(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음
기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분
상여금)의 100%를 지급한다.

* 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

**A-640**

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정
   직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게
   휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
    3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

<div align="right">2018년  7월  1일</div>

고용주
주유엔 대한민국대표부 공사
이 정 재
(代) 차 병 호
(서명)

고용원
(1960.4.9生)
남 현 희
(서명)

ROKPM0023

서 약 서

본인은 2018년 7월 1일부터 駐유엔 대한민국 대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 공용차량 운전원으로서 업무 수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 재직중에는 물론 퇴직후에도 이를 일체 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

2018년 7월 1일

서약자   소   속 : 駐유엔 대한민국대표부
         생 년 월 일 : 1960.4.9
         성   명 : 남 현 희 (서명)

서약집행자 소   속 : 駐유엔 대한민국대표부
         직   책 : 공   사
         성   명 : 이 정 재 (代) 차 병 호 (서명)

ROKPM0024

**A-642**

.

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2018.

1. Parties to the Contract

   (1) Employer Name: Minister Jungjae Lee

   (2) Subject

      o  Name: Hyunhuy Nam

      o  Date of Birth: 4/9/1960

      o  Address: 128 w Central Blvd. Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site absent the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

**A-643**

.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3.  The employment period shall be from July 1, 2018 through July 1, 2019.

    The employment period may be extended in one-year increments

4.  The work hours shall be 09:00 through 18:00. The Employee shall comply with any request to work during off-schedule hours including on the weekends or national holidays and must comply with changes in the work hours.

5.  Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

    (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

    *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

    (2) Be paid housing subsidy of $1,450 per month.

    (3) Be paid medical insurance subsidy of 80% of the Mission's group plan ($1,109) per month.

    (3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%}

    (4) Bonus ($1,900 per year) will be paid in June of each year.

**A-644**

    (5) Severance pay will be paid if employed for one year or longer.

    (6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

    (1) When survival or the whereabouts become unclear due to Act of God or war/incident.

    (2) Commits a crime or a gross negligence

    (3) Neglects work duties or exhibits substandard behavior

    (4) Fails to obey supervisor's work-related orders

    (5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

    (6) Cessation of work

    (7) Failure to abide by the security guidelines.

8. The Employer shall pay the Employee a severance pay as follows if his employment terminates after e year or more of employment.

    o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

    * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

9.  The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2018.

Employer                                              Employee

Permanent Mission of the Republic of Korea            (DOB: 4/9/1960)
to the United Nations

Jungjae Lee                                           Hyunhuy Nam

(deputy) Byungho Cha
                                                      (signature)    [signed]
(signature)    [signed]

**A-646**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2018, duly pledge as follows:

1.  I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur of a government vehicle of the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of South Korea, and I shall not divulge it to anyone in any manner during my employment as well as after termination thereof.

2.  I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

<div align="center">July 1, 2018</div>

Pledgor:     Department:  Permanent Mission of the Republic of Korea to the United Nations
             Date of Birth: April 9, 1960
             Name:        Hyunhuy Nam        (signature) [signed]

Pledgee:     Department:  Permanent Mission of the Republic of Korea to the United Nations
             Title:       Minister
             Name:        Jungjae Lee        (deputy)  Byungho Cha  (signature) [signed]

ROKPM00024 - T

<u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원
남현회(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을
체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사

 (2) 채용대상자

    o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

    o 성 명 : 남현회

    o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부
   고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히
   다음과 같은 의무와 책임을 진다.

  (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

  (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에
      따라야 한다.

  (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -



ROKPM0025

아니된다.

(4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

   * 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

ROKPM0026

**A-649**

(4) 주거보조비는 每月 $1,450 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을
즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이
된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

ROKPM0027

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감 · 책임감 · 업무능력 · 보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

   o 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액 + 1개월분 상여금)의 100%를 지급

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

   (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0028

한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서  제외
하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할
시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2019년  7월 1일


고용주    駐유엔 대한민국 대표부 공사  이 정 재

고용원                                         남 현 희

- 5 -

ROKPM0029

## 운전원 채용계약서

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을 체결한다. ＊ 9.20 주거보조비 인상으로 재작성 및 서명

1. 계약 당사자

(1) 고용주명 : 이정재 공사

(2) 채용대상자

   o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   o 성 명 : 남현희

   o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

   (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

   (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

   (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

ROKPM0031

아니된다.

(4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한민국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

　　＊ 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간 외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

- 2 -

ROKPM0032

(4) 주거보조비는 每月 $2,000 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체・정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제・정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시・사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

– 3 –

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

   o 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액 + 1개월분 상여금)의 100%를 지급 * 주거보조비는 未포함

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

   (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0034

한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주가 고용원이 신체·정신상의 장애로 장기 요양을 원할 시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.


2019년 7월 1일


고용주    駐유엔 대한민국 대표부 공사  이 정 재

고용원                              남 현 희

– 5 –

ROKPM0035

**A-657**

<u>서 약 서</u>

본인은 2019년 7월1일부터 駐유엔 대한민국대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프 검사 요구시 자발적으로 응하는데 동의합니다.

2019년    7월 1일

서약자    소      속 : 駐유엔 대한민국대표부

성      명 : 남 현 희(1960년 4월 9일생)    (서명)

駐유엔 대한민국대표부 대사 귀하

서약집행자  駐유엔 대한민국대표부    공사    이 정 재    (서명)

ROKPM0030

## EMPLOYMENT CONTRACT FOR CHAUFFEUR

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.

1. Parties to the Contract

    (1) Employer Name: Minister Jungjae Lee

    (2) Subject of Employment

    o    Address: 128 w Central Blvd. Palisades Park, NJ 07650

    o    Name: Hyunhuy Nam

    o    Date of Birth: June 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

    (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good cause.

ROKPM00025 - T

(4) In the event the Employee wishes to engage in activities, apart from the duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2019 through June 30, 2020.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    * long-term service allowance is $50 per year for a maximum of 20 years, added to wages.

(2) Off-schedule wages shall be $14.76 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June of each year.

ROKPM00026 - T

**A-660**

.

(4) Be paid housing subsidy of $1,450 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case the Employee is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

ROKPM00027 - T

**A-661**

    (7) Fails to obey supervisor's work-related orders

    (8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

    (9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

    o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

9.   The Employer may permit days to the Employee as follows:

    (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

    (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

    (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

    (4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

ROKPM00028 - T

# A-662

.

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.

Employer          Permanent Mission of the Republic of Korea to the United Nations

Minister Jungjae Lee  [signed]

Employee          Hyunhuy Nam          [signed]

- 5 -

ROKPM00029 - T

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.  * 9.20 Re-drafting and re-signing due to increase in housing subsidy.

1.  Parties to the Contract

    (1) Employer Name: Minister Jungjae Lee

    (2) Subject of Employment

    o  Address: 128 w Central Blvd. Palisades Park, NJ 07650

    o  Name: Hyunhuy Nam

    o  Date of Birth: June 9, 1960

2.  By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

    (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

ROKPM00031 - T

(4) In the event the Employee wishes to engage in activities from which he may gain financial benefits apart from the duties under this agreement, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3.  The employment period shall be from July 1, 2019 through June 30, 2020.

4.  Work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5.  Monthly compensation shall include regular wages and off-schedule wages, etc.

    (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    * long-term service allowance is $50 per year for maximum of 20 years, added to wages.

    (2) Off-schedule wages shall be $14.76 per hour paid up to 52 hours per month.

    (3) Bonus (100% of regular wages) will be paid in June of each year.

- 2 -

ROKPM00032 - T

**A-665**

(4) Be paid housing subsidy of $2,000 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of need to work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

**A-666**

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret ) in the performance evaluation

(9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

- o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.  * Excluding housing subsidy.

9.   The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.

Employer            Permanent Mission of the Republic of Korea to the United Nations

                                      Minister Jungjae Lee  [signed]

Employee                             Hyunhuy Nam          [signed]

- 5 -

ROKPM00035 - T

## PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2019, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3. I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

<div align="center">July 1, 2019</div>

Pledgor:  Department:  Permanent Mission of the Republic of Korea to the United Nations
          Name:        Hyunhuy Nam (DOB: April 9, 1960)    (signature) [signed]


By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:  Permanent Mission of the Republic of Korea to the United Nations
                        Minister    Jungjae Lee    (signature) [signed]

**A-669**

## <u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 공사(代) 조진호 참사관(이하 "고용주"라 청함)과 고용원 남현희(男, 1960.4.9생)은 2020년 7월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

   (1) 고용주명 : 공사(代) 조진호 참사관

   (2) 채용대상자

       o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

       o 성 명 : 남현희

       o 생년월일 : 1960년 4월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

   (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

   (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

   (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -



아니된다.

(4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2020年 7月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,710불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

(2) 시간 외 수당은 시간당 $13.29로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 6월·12월 2회로 분할하여 지급한다.

(4) 주거보조비는 공관 실비 상한액 범위내에서 每月 실비를

- 2 -

ROKPM0037

지급한다.  * 2020.10월부

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을
즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
고용주에게 2개월 전 서면 통보해야한다.

(1) 신체 · 정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제 · 정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이
된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시 · 사변이나 기타 사유로 생사 또는 소재가
불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0038

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

   o 계속근로기간 1년에 대하여 30일분의 평균임금을 지급 * 주거 보조비는 未包含

   * 평균임금은 퇴직·해고 등 사유발생 이전 3개월동안 지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본급, 상여금, 시간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

- 4 -

ROKPM0039

(4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할 시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

<div align="right">2020년  7월 1일</div>

고용주    駐유엔 대한민국 대표부 공사(代)  조 진 호  조진호

고용원                                          남 현 희

ROKPM0040

**A-674**

## 서 약 서

본인은 2020년 7월1일부터 駐유엔 대한민국대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 총실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프 검사 요구시 자발적으로 응하는데 동의합니다.

2020년   7월 1일

서약자   소     속 : 駐유엔 대한민국대표부

　　　　성     명 : 남 현 회(1960년 4월 9일생)　　(서명)

駐유엔 대한민국대표부 대사 귀하

서약집행자  駐유엔 대한민국대표부   공사(代) 조 진 호   (서명)

ROKPM0041

**A-675**

# EMPLOYMENT CONTRACT

(Deputy) Minister Jinho Jo of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2020.

1. Parties to the Contract

    (1) Employer Name: (Deputy) Minister Jinho Jo

    (2) Subject of Employment

    o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

    o   Name: Hyunhuy Nam

    o   Date of Birth: April 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

    (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site without the Employer's permission or good cause.

ROKPM00036 - T

(4) In the event the Employee wishes to engage in activities from which he may gain financial benefits apart from the duties under this agreement, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2020 through June 30, 2021.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

(2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June and December in two divided payments.

(4) Be paid housing subsidy for the actual expenses each month subject to the Mission's maximum actual expenses on a monthly basis. * Effective October 2020.

- 2 -

ROKPM00037 - T

**A-677**

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from

   paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance twice

   per year (June, December) and be referenced as human resources records.

7.  The Employer may immediately terminate this agreement where any one of the following

   is applicable. In the event the Employee wishes to terminate the agreement, he must

   provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position,

   restructuring, or reduction of budget

(3) Cessation of work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation.

(9) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

    o   For each year of continuous employment, pay 30 days' average wages. *excluding housing subsidy.

        * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9.  The Employer may permit days to the Employee as follows:

    (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

    (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

    (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

- 4 -

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2020.

Employer          Permanent Mission of the Republic of Korea to the United Nations

                  (Deputy) Minister Jinho Jo      [signed]

Employee          Hyunhuy Nam          [signed]

ROKPM00040 - T

**A-680**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on July 1, 2020, duly pledge as follows:

1. I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2. I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3. I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

July 1, 2020

Pledgor:   Department:   Permanent Mission of the Republic of Korea to the United Nations
           Name:         Hyunhuy Nam (DOB: April 9, 1960)    (signature) [signed]

By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:   Permanent Mission of the Republic of Korea to the United Nations
                              Minister (deputy) Jinho Jo    (signature) [signed]

## 운전원 채용계약서

駐유엔 대한민국 대표부 정대용 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2021년 4월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 정대용 공사

 (2) 채용대상자

   ㅇ 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   ㅇ 성 명 : 남현희

   ㅇ 생년월일 : 1960년 4월 9일

2. 채용대상자는 계약기간 동안 운전원로서 다음과 같은 업무를 수행한다.

 (1) 공용차량 운전 업무

 (2) 기타 행정 및 의전 업무

 (3) 상기 업무수행과 관련된 제반 행정 사무 및 본부가 필요하다고 인정하는 업무지원



- 1 -

**A-682**

3. 채용기간은 2021年 4月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 週 40시간, 日 09:00부터 18:00까지로 하며 점심 식사 등을 위한 휴게시간 1시간을 부여한다. 고용주가 주말 이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

   (1) 月 기본급은 $1,710로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

   (2) 시간외 근무수당은 시간당 $13.29로 하되 근로기준법에 따라 月 52시간 한도 내에서 지급한다.

   (3) 상여금(기본급 100%)은 연간 1회(6月) 지급한다.

   (4) 주거보조비는 每月 $2,000 지급한다.

   (5) 의료보험료는 月 납입액의 80%를 지급한다.

   (6) 성과급은 年 1회(4月) 지급한다.

   (7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 年 1회(12월) 실시, 인사자료로 참고한다.

ROKPM0043

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

(10) 외국적자와의 결혼 등 신상 변동사항을 고지하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직 익월에 퇴직금을 지급한다.

о 퇴직금 산식 : 퇴직前 3개월 총임금(기본급+ 시간외수당)/3+

- 3 -

ROKPM0044

**A-684**

年상여금/12)】×총근무일수/365

o 퇴직금 산입항목 : 계속근로기간 1년에 대하여 30일분의 평균 임금을 지급  * 평균임금은 퇴직·해고 등 사유발생 이전 3개월동안 지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본급, 상여금, 시간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

  (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

  (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

  (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

  (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함한 총 휴가일수는 25일을 한도로 한다

  (5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할 시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

– 4 –

ROKPM0045

**A-685**

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

<div align="right">

2021년  4월  1일

</div>

고용주      駐유엔 대한민국 대표부 공사      정 대 용 (서명)

고용원                                      남 현 희 (서명)

– 5 –

ROKPM0046

<u>서 약 서</u>

본인은 2021년 4월 1일부터 駐유엔 대한민국대표부 직원으로 근무함에 있어 다음 사항을 준수할 것을 엄숙히 서약합니다.

1. 본인은 駐유엔 대한민국 대표부 운전원으로서 업무수행 과정에서 평소 지득하는 모든 사항이 대한민국의 중요한 기밀사항임을 인정하며 이를 누설하지 않겠습니다.

2. 본인은 어떠한 일이 있더라도 동 서약내용을 충실히 이행하겠으며 만약 이행치 않을 경우 어떠한 처벌 또는 손해배상 등 금전적 불이익도 감수할 것을 서약합니다.

3. 본인은 채용계약서상"고용주"가 상기 1항과 관련하여 폴리그래프 검사 요구시 자발적으로 응하는데 동의합니다.

                                        2021년    4월 1일

서약자    소      속 : 駐유엔 대한민국대표부

        성      명 : 남 현 희(1960년 4월 9일생)      (서명)

            駐유엔 대한민국대표부 대사 귀하

서약집행자  駐유엔 대한민국대표부    공사    정 대 용 (서명)

**A-687**

# EMPLOYMENT CONTRACT

Minister, Dae Yong Chung, of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of April 2021.

1. Parties to the Contract

    (1) Employer Name: Minister Dae Yong Chung

    (2) Subject of Employment

    o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

    o   Name: Hyunhuy Nam

    o   Date of Birth: April 9, 1960

2. The Subject of Employment shall perform the following tasks as a chauffeur.

    (1) Driving a government vehicle.

    (2) Performing other executive duties as well as activities of ceremony, formality, protocol, etiquette on diplomatic occasions.

    (3) Performing supporting tasks including executive and office work necessary to perform the foregoing tasks as the headquarters may determine as necessary.

- 1 -

3.  The employment period shall be from April 1, 2021 through June 30, 2021.

4.  The work hours shall be 40 hours per week, 09:00 through 18:00 per day, permitting break time of 1 hour for lunch, etc. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5.  Monthly compensation shall include regular wages and off-schedule wages, etc.

    (1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    (2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours pursuant to Korea's Labor Standards Law.

    (3) Bonus (100% of regular wages) will be paid once per year (June).

    (4) Be paid housing subsidy of $2,000 per month.

    (5) Be paid medical insurance subsidy monthly at 80% of actual payment.

    (6) Be paid a performance bonus once per year (April).

    (7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance and once per year (December) and be referenced as human resources records.

**A-689**

- 2 -

7. The Employer may immediately terminate this agreement where any one of the following

    is applicable. In the event the Employee wishes to terminate the agreement, he must

    provide a two-month advanced notice to the Employer.

    (1) Failure to complete tasks for physiological or psychological reasons

    (2) In case [the Employee] is subject to layoff due to elimination of position,
        restructuring, or reduction of budget

    (3) Cessation of need to work.

    (4) When survival or the whereabouts become unclear due to Act of God or war/incident.

    (5) Commits a crime or a gross negligence

    (6) Neglects work duties or exhibits substandard behavior

    (7) Fails to obey supervisor's work-related orders

    (8) Receives "Unsatisfactory" in two or more categories of the following four categories

        (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in

        the performance evaluation

    (9) Failure to abide by the security guidelines.

    (10)    Failure to inform of changes in identification status, including marriage with a
        foreign national

8. The Employer shall pay the Employee a severance pay as follows if his employment

    terminates after one year or more of employment.

    o   Calculation for severance payment: Total wages for 3 months before separation

        (regular wages + off-schedule wages)/3 + Yearly Bonus/12] x total workdays/365

- 3 -

**A-690**

      o   Included in severance pay: For each year of continuous employment, pay 30 days' average wages. * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9. The Employer may permit days to the Employee as follows:

    (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

    (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

    (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

    (4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

    (5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

- 4 -

ROKPM00045 - T

**A-691**

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

April 1, 2021.

| | | | |
|---|---|---|---|
| Employer | Permanent Mission of the Republic of Korea to the United Nations | | |
| | | Daeyong Chung | [signed] |
| Employee | | Hyunhuy Nam | [signed] |

- 5 -

ROKPM00046 - T

**A-692**

# PLEDGE AGREEMENT

I, in connection with my duties as an employee of the Permanent Mission of the Republic of Korea to the United Nations beginning on April 1, 2021, duly pledge as follows:

1.  I hereby acknowledge that knowledge of all matters that I will acquire in the course of performing my duties as a chauffeur at the Permanent Mission of the Republic of Korea to the United Nations is deemed nationally classified information of the Republic of Korea, and I shall not divulge it to anyone.

2.  I will faithfully keep the pledge made herein at any cost, and further pledge that I bear all the risks of punishment, remuneration, and financial liability in the event I breach the pledge.

3.  I agree to voluntarily submit to polygraph tests concerning section 1 above if requested by the "employer" pursuant to the employment contract.

April 1, 2021

Pledgor:   Department:   Permanent Mission of the Republic of Korea to the United Nations
           Name:         Hyunhuy Nam (DOB: April 9, 1960)        (signature) [signed]

By the Ambassador of the Permanent Mission of the Republic of Korea to the United Nations

Pledgee:   Permanent Mission of the Republic of Korea to the United Nations
                         Minister   Daeyong Chung   (signature) [signed]

ROKPM00047 - T

**A-693**

## 시간외근무 확인대장

2021

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 6/1 | 남현정 | 7:40 | 18:50 | 1:50 | 출.퇴근 조치사병 | |
| 6/2 | 남현정 | 7:40 | 19:20 | 2:40 | 출.퇴근 조치사병 | |
| 6/3 | 남현정 | 7:40 | 19:20 | 2:40 | 출.퇴근 조치사병 | |
| 6/4 | 남현정 | 7:40 | 23:00 | 6:50 | 야근 출.퇴근조치사병 | |
| 6/7 | 남현정 | 7:40 | 19:20 | 2:40 | 출.퇴근조치사병 | |
| 6/8 | 남현정 | 7:40 | 19:30 | 2:50 | 출.퇴근조치사병 | |
| 6/9 | 남현정 | 7:40 | 19:30 | 2:50 | 출.퇴근조치사병 | |
| 6/10 | 남현정 | 7:40 | 22:30 | 6:05 | 야근 출.퇴근조치사병 | |
| 6/11 | 남현정 | 7:40 | 16:40 | 0:00 | | |
| 6/21 | 남현정 | 7:40 | 19:10 | 2:30 | 출.퇴근조치사병 | |
| 6/22 | 남현정 | 7:40 | 19:10 | 2:30 | 출.퇴근조치사병 | |
| 6/24 | 남현정 | 7:40 | 19:15 | 2:24 | 출.퇴근조치사병 | |
| | | | Total | 35:20 | | |
| | | | | | 확인 : | |

DEFENDANT'S EXHIBIT

## 시간외근무 확인대장

2021

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 5/3 | 남현희 | 7:40 | 19:10 | 2:30 | | |
| 5/4 | 남현희 | 7:40 | 19:10 | 2:30 | | |
| 5/5 | 남현희 | 7:40 | 22:00 | 5:20 | | |
| 5/6 | 남현희 | 7:40 | 21:00 | 4:20 | | |
| 5/7 | 남현희 | 7:40 | 19:40 | 3:00 | | |
| 5/10 | 남현희 | 7:40 | 19:40 | 2:40 | | |
| 5/11 | 남현희 | 7:40 | 16:30 | -0:10 | | |
| 5/20 | 남현희 | 7:40 | 20:20 | 3:40 | | |
| 5/21 | 남현희 | 7:40 | 18:30 | 1:50 | | |
| 5/24 | 남현희 | 7:40 | 21:00 | 4:20 | | |
| 5/25 | 남현희 | 7:40 | 20:00 | 3:20 | | |
| 5/26 | 남현희 | 7:40 | 19:20 | 2:40 | | |
| 5/27 | 남현희 | 7:40 | 19:30 | 2:50 | | |
| 5/28 | 남현희 | 7:40 | 20:20 | 3:40 | | |
| 5/29(토) | 남현희 | 13:00 | 20:20 | 11:00 | | |
| | | | Total | 51:00 | | |
| | | | | | 확인: | |

**A-695**

## 시간외근무 확인대장

2021

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|---------|---------|---------|--------|--------|
|      |        | 시작시각 | 종료시각 | 초과시간 |        |        |
| 04/01 | 남현희 | 07:40 | 17:40 | 1:00 | 홍, 퇴근 후 나눔 | |
| 04/05 | 남현희 | 07:40 | 18:30 | 1:50 | 홍, 퇴근 후 나눔 | |
| 04/06 | 남현희 | 07:40 | 19:10 | 2:30 | 홍, 퇴근 후 나눔 | |
| 04/07 | 남현희 | 07:40 | 18:10 | 1:30 | 홍, 퇴근 후 나눔 | |
| 04/08 | 남현희 | 07:40 | 19:30 | 2:50 | 홍, 퇴근 후 나눔 | |
| 04/09 | 남현희 | 07:40 | 18:10 | 1:30 | 홍, 퇴근 후 나눔 | |
| 04/12 | 남현희 | 07:40 | 18:30 | 1:50 | 홍, 퇴근 후 나눔 | |
| 04/13 | 남현희 | 07:40 | 20:30 | 3:50 | 홍, 퇴근 후 나눔 | |
| 04/14 | 남현희 | 07:40 | 18:10 | 1:30 | 홍, 퇴근 후 나눔 | |
| 04/15 | 남현희 | 07:40 | 18:40 | 2:00 | 홍, 퇴근 후 나눔 | |
| 04/19 | 남현희 | 07:40 | 20:50 | 4:10 | 아침, 홍 퇴근 후 나눔 | |
| 04/20 | 남현희 | 07:30 | 17:30 | 1:00 | 홍, 퇴근 후 나눔 | |
| 04/21 | 남현희 | 07:40 | 21:00 | 4:20 | 출장, 40분, | |
| 04/22 | 남현희 | 07:40 | 18:30 | 1:50 | 홍, 퇴근 후 나눔 | |
| 04/23 | 남현희 | 07:40 | 19:00 | 2:20 | 홍, 퇴근 후 나눔 | |
| 04/26 | 남현희 | 07:40 | 18:50 | 2:10 | 홍, 퇴근 후 나눔 | |
| 04/27 | 남현희 | 07:40 | 19:00 | 2:20 | 홍, 퇴근 후 나눔 | |
| 4/28 | 남현희 | 07:40 | 22:30 | 5:50 | 행사, 홍 퇴근 후 나눔 | |
| 4/29 | 남현희 | 07:40 | 18:30 | 1:50 | 홍 퇴근 후 나눔 | |
| 4/30 | 남현희 | 07:40 | 19:10 | 2:30 | 홍, 퇴근 후 나눔 | |
|      |        |        | Total | 48:40 |        | |
|      |        |        |        |       | 확인 : | |

## 시간외근무 확인대장

2021                                           0265 WDD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|----------|----------|----------|------------|-----------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 3/2 | 남현희 | 07:40 | 17:50 | 1:10 | 출.퇴근 초과근무 | |
| 3/3 | 남현희 | 08:20 | 18:20 | 1:00 | 출.퇴근 초과근무 | |
| 3/4 | 남현희 | 07:40 | 17:00 | 00:20 | 출.퇴근 초과근무 | |
| 3/5 | 남현희 | 07:40 | 18:10 | 1:30 | 출.퇴근 초과근무 | |
| 3/8 | 남현희 | 07:40 | 19:20 | 2:40 | 출.퇴근 초과근무 | |
| 3/9 | 남현희 | 07:40 | 18:20 | 1:40 | 출.퇴근 초과근무 | |
| 3/10 | 남현희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과근무 | |
| 3/11 | 남현희 | 07:40 | 18:50 | 1:50 | 출.퇴근 초과근무 | |
| 3/12 | 남현희 | 07:40 | 18:00 | 1:20 | 출.퇴근 초과근무 | |
| 3/15 | 남현희 | 07:40 | 19:20 | 2:40 | 출.퇴근 초과근무 | |
| 3/16 | 남현희 | 07:40 | 17:50 | 1:40 | 출.퇴근 초과근무 | |
| 3/17 | 남현희 | 07:30 | 18:10 | 1:40 | 출.퇴근 초과근무 | |
| 3/18 | 남현희 | 07:40 | 18:00 | 1:20 | 출.퇴근 초과근무 | |
| 3/19 | 남현희 | 07:40 | 17:30 | 00:50 | 출.퇴근 초과근무 | |
| 3/22 | 남현희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과근무 | |
| 3/23 | 남현희 | 07:40 | 18:20 | 1:40 | 출.퇴근 초과근무 | |
| 3/24 | 남현희 | 07:40 | 20:40 | 4:00 | 장보리, 출.퇴근초과근무 | |
| 3/25 | 남현희 | 07:40 | 19:20 | 2:40 | 출.퇴근 초과근무 | |
| 3/26 | 남현희 | 07:40 | 20:00 | 3:20 | 출.퇴근초과근무 | |
| 3/29 | 남현희 | 07:40 | 19:20 | 2:40 | 출.퇴근초과근무 | |
| 3/30 | 남현희 | 07:40 | 19:20 | 2:40 | 출.퇴근 초과근무 | |
| 3/31 | 남현희 | 06:40 | 19:30 | 3:50 | 출.퇴근 초과근무 | |
| | | | Total | 44:30 | | |
| | | | | | 확인 : | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**A-697**

## 시간외근무 확인대장

2021

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 02/02 | 낭청의 | 07:40 | 18:00 | 1:20 | 출.퇴근 구바벽 | \ |
| 02/03 | 낭청의 | 07:40 | 19:10 | 2:30 | 출.퇴근 조바벽 | |
| 02/04 | 낭청의 | 07:40 | 21:20 | 4:40 | 건리, 개보, 레개부 | : |
| 02/05 | 낭청의 | 07:40 | 18:10 | 1:30 | 출.퇴근 조바벽 | |
| 02/08 | 낭청의 | 07:40 | 17:50 | 1:10 | 출.퇴근 조바벽 | |
| 02/09 | 낭청의 | 07:40 | 17:50 | 1:10 | 출.퇴근 조바벽 | |
| 02/10 | 낭청의 | 07:40 | 19:10 | 2:30 | 출.퇴근 조바벽 | |
| 02/11 | 낭청의 | 07:40 | 17:40 | 1:00 | 출.퇴근초바벽 | |
| 02/12 | 낭청의 | 07:40 | 18:50 | 2:10 | 출.퇴근 조바벽 | |
| 02/16 | 낭청의 | 07:40 | 18:40 | 1:50 | 출.퇴근 조바벽 | |
| 02/17 | 낭청의 | 07:40 | 18:40 | 2:00 | 출.퇴근 조바벽 | |
| 02/18 | 낭청의 | 07:40 | 21:50 | 5:10 | 건가, 개보, 레개벽 | |
| 02/19 | 낭청의 | 07:40 | 17:50 | 1:10 | 출.퇴근 조바벽 | |
| 02/22 | 낭청의 | 07:40 | 17:50 | 1:10 | 출.퇴근 조바벽 | |
| 02/23 | 낭청의 | 07:40 | 18:20 | 1:40 | 출.퇴근 조바벽 | |
| 02/24 | 낭청의 | 07:40 | 18:30 | 1:50 | 출.퇴근 조바벽 | |
| 02/25 | 낭청의 | 07:40 | 19:30 | 2:50 | 출.퇴근 조바벽 | |
| 02/26 | 낭청의 | 07:40 | 18:00 | 1:20 | 출.퇴근 조바벽 | |
| | | | Total | 37:20 | | |
| | ' | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0056

## 시간외근무 확인대장

2021

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/4 | 남현의 | 07:40 | 18:50 | 2:10 | 대관부 관리 | |
| 1/5 | 남현의 | 07:40 | 18:20 | 1:40 | 대관부, 관리 | |
| 1/6 | 남현의 | 07:40 | 18:40 | 2:00 | 대관부, 관리 | |
| 1/7 | 남현의 | 07:40 | 18:20 | 1:40 | 대관부, 관리 | |
| 1/8 | 남현의 | 07:40 | 19:00 | 2:20 | 대관부, 관리 | |
| 1/11 | 남현희 | 07:40 | 17:40 | 1:30 | 대관부, 관리 | |
| 1/12 | 남현의 | 07:40 | 18:40 | 2:00 | 내관부, 관리 | |
| 1/13 | 남현의 | 07:40 | 19:00 | 2:20 | 대관부, 관리 | |
| 1/21 | 남현의 | 07:40 | 19:00 | 2:20 | 대관부, 관리 | |
| 1/22 | 남현의 | 08:30 | 18:00 | 1:20 | 대관부, 관리 | |
| 1/25 | 남현의 | 07:40 | 20:00 | 3:20 | 관리 내관부, 관리 | |
| 1/26 | 남현의 | 07:40 | 17:40 | 1:30 | 대관부, 관리 | |
| 1/28 | 남현 X | 07:40 | 18:40 | 2:00 | 대관부, 관리 | |
| 1/29 | 남현의 | 07:40 | 17:30 | 1:20 | 내관부, 관리 | |
| | | | Total | 29:30 | | |
| | | | | | 확인 | |
| | | | | | | |

**A-699**

## 시간외근무 확인대장

2020

0265 WDD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 | 확인관 |
|------|--------|------|------|------|---------|--------|
| | | 시작시각 | 종료시각 | 초과시간 | 사 유 | 서 명 |
| 12/1 | 남희○ | 07:40 | 18:40 | 2:00 | 홍 퇴근 초과업 | |
| 12/2 | 남희○ | 07:40 | 19:30 | 2:50 | 홍. 퇴근 초과업. | |
| 12/3 | 남희○ | 07:40 | 18:50 | 2:10 | 홍 퇴근 초과업 | |
| 12/4 | 남희○ | 07:40 | 19:30 | 2:50 | 홍. 퇴근 초과업 | |
| 12/7 | 남희○ | 07:40 | 18:30 | 1:50 | 홍 퇴근 초과업 | |
| 12/8 | 남희○ | 07:40 | 19:20 | 2:40 | 홍 퇴근 초과업 | |
| 12/9 | 남희○ | 07:40 | 2:30 | 4:50 | 임무수행때 돌아 | |
| 12/10 | 남희○ | 07:40 | 18:00 | 1:20 | 홍.퇴근 초과업 | |
| 12/11 | 남희○ | 07:40 | 18:15 | 1:35 | 홍. 퇴근 초과업 | |
| 12/14 | 남희○ | 07:40 | 17:55 | 0:55 | 홍. 퇴근 초과업 | |
| 12/15 | 남희○ | 07:40 | 18:40 | 2:00 | 홍. 퇴근 초과업 | |
| 12/16 | 남희○ | 07:40 | 16:50 | 0:20 | 홍. 퇴근 초과업 | |
| 12/17 | 남희○ | 07:40 | 17:00 | 0:50 | 홍. 퇴근 초과업 | |
| 12/18 | 남희○ | 07:40 | 2:30 | 4:50 | 정리, 보고 | |
| 12/21 | 남희○ | 07:40 | 22:00 | 5:20 | 정리, 보고 | |
| 12/22 | 남희○ | 07:40 | 20:40 | 4:00 | 야근, 대회보, 정리 | |
| 12/23 | 남희○ | 07:40 | 18:00 | 1:50 | 홍 퇴근 초과업 | |
| 12/24 | 남희○ | 07:40 | 17:50 | 1:20 | 홍 퇴근 초과업 | |
| 12/28 | 남희○ | 07:40 | 19:50 | 3:10 | 정리보고 정리 | |
| 12/29 | 남희○ | 07:40 | 18:20 | 1:40 | 홍. 퇴근 초과업 | |
| 12/30 | 남희○ | 07:40 | 23:20 | 6:40 | 대사보고, 정리 | |
| 12/31 | 남희○ | 08:20 | 13:20 | -4:00 | 대회보, 준비 | |
| | | | | | | |
| | | | Total | 57:00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

<u>시간외근무 확인대장</u>

2020                                                                0265 WPD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 11/2 | 남정희 | 07:20 | 20:10 | 3:50 | 출.퇴근 초과분 | |
| 11/3 | 남정희 | 07:20 | 19:25 | 3:05 | 출연사업, 출.퇴근 | |
| 11/4 | 남정희 | 07:20 | 19:35 | 3:15 | 출연사업, 출.퇴근 | |
| 11/5 | 남정희 | 07:20 | 19:30 | 3:10 | 출.퇴근 초과분 | |
| 11/6 | 남정희 | 07:30 | 23:00 | 6:30 | 정리, 강사, 대기근무 | |
| 11/9 | 남정희 | 07:40 | 18:20 | 1:40 | 출.퇴근 초과분 | |
| 11/10 | 남정희 | 07:40 | 19:00 | 2:20 | 예가무수, 강사, 대기근무 | |
| 11/11 | 남정희 | 07:40 | 21:50 | 5:10 | 업무연락회의 교재수정 | |
| 11/12 | 남정희 | 07:40 | 19:00 | 2:20 | 4차시, 초.퇴근 초과분 | |
| 11/13 | 남정희 | 07:40 | 18:00 | 1:20 | 출.퇴근 초과분 | |
| 11/16 | 남정희 | 07:40 | 18:00 | 1:20 | 출.퇴근 초과분 | |
| 11/17 | 남정희 | 07:40 | 19:10 | 2:30 | 출.퇴근 초과분 | |
| 11/18 | 남정희 | 07:40 | 21:10 | 4:30 | 39st, 교재수정, 강사 | |
| 11/19 | 남정희 | 07:40 | 16:20 | 0:40 | 출.퇴근 초과분 | |
| 11/20 | 남정희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과분 | |
| 11/23 | 남정희 | 07:40 | 21:30 | 4:50 | 교재, 강사, | |
| 11/24 | 남정희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과분 | |
| 11/25 | 남정희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과분 | |
| 11/27 | 남정희 | 07:40 | 18:20 | 1:40 | 출.퇴근 초과분 | |
| 11/30 | 남정희 | 07:40 | 18:40 | 2:00 | 출.퇴근 초과분 | |
| | | | Total | 55:10 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0059

<u>시간외근무 확인대장</u>

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/2 | 남현희 | 7:15 | 20:30 | 4:15 | 크레스 점검작업, 준비 | |
| 10/5 | 남현희 | 7:15 | 19:30 | 3:15 | 구조, 대장부 준비 | |
| 10/6 | 남현희 | 7:20 | 19:30 | 3:10 | 구조 대장부 정리 | |
| 10/7 | 남현희 | 7:20 | 19:40 | 3:20 | 크레스 대장부 준비 | |
| 10/8 | 남현희 | 7:20 | 20:10 | 3:50 | 구조 대장부 준비 | |
| 10/12 | 남현희 | 7:20 | 19:40 | 3:20 | 5HK, 대장부 준비 | |
| 10/13 | 남현희 | 6:40 | 20:10 | 4:30 | 크레스 대장부 준비 | |
| 10/14 | 남현희 | 7:0 | 20:10 | 3:50 | 구조 대장부 준비 | |
| 10/15 | 남현희 | 7:20 | 20:10 | 3:50 | 구조 대장부 준비 | |
| 10/16 | 남현희 | 7:10 | 19:50 | 3:40 | 크레스 대장부 준비 | |
| | | | Total | 37:00 | | |
| | | | | | 확인 | |

<u>시간외근무 확인대장</u>

2020                                    0265WDD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 09/01 | 남현희 | 07:15 | 19:50 | 3:35 | 관리, 내장부 관리 | 조 |
| 09/02 | 남현희 | 07:20 | 19:55 | 3:35 | 관리자, 내장부 관리 | 조 |
| 09/03 | 남현희 | 07:15 | 19:45 | 3:30 | 관리 내장부 관리자 | 조 |
| 09/04 | 남현희 | 07:20 | 13:30 | ~1:50 | 관리 관리자 내장부 | 조 |
| 09/08 | 남현희 | 07:20 | 20:10 | 3:50 | 관리자 관리 내장부 | 조 |
| 09/09 | 남현희 | 07:15 | 19:50 | 3:35 | 관리 458 내장부 | 조 |
| 09/10 | 남현희 | 07:20 | 19:40 | 3:20 | 관리 내장부 관리 | 조 |
| 09/11 | 남현희 | 07:20 | 20:20 | 4:00 | 관리 내장부 관리 | 조 |
| 09/14 | 남현희 | 07:20 | 19:50 | 3:30 | 관리자 내장부 관리 | 조 |
| 09/15 | 남현희 | 07:15 | 19:50 | 3:35 | 관리 내장부 관리 | 조 |
| 09/16 | 남현희 | 07:20 | 19:40 | 3:20 | 관리 관리 내장부 관리 | 조 |
| 09/17 | 남현희 | 07:20 | 19:10 | 2:50 | 관리부 내장부 관리 | 조 |
| 09/18 | 남현희 | 07:15 | 21:30 | 5:15 | 관리관리 관리 내장부 | 조 |
| 09/21 | 남현희 | 07:20 | 19:50 | 3:30 | 관리 관리 내장부 | 조 |
| 09/22 | 남현희 | 07:15 | 19:50 | 3:35 | 관리내장 내장부 관리 | 조 |
| 09/23 | 남현희 | 07:20 | 19:10 | 2:50 | 관리 646 내장부 관리 | 조 |
| 09/24 | 남현희 | 07:15 | 20:40 | 4:25 | 관리 관리자 관리 | 조 |
| 09/25 | 남현희 | 07:15 | 21:10 | 4:55 | 관리자 내장부 관리 | 조 |
| 09/28 | 남현희 | 15:00 | 22:30 | -0:30 | 관리 금니내 내장부 | 조 |
| 09/29 | 남현희 | | | -8:00 | 관리관로무 | 조 |
| | | | Total | 63:50 | | |
| | | | | | 확인 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## 시간외근무 확인대장

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/03 | 나현회 | 07:10 | 17:00 | 00:50 | 크레인설, 대기부 관리 | chg |
| 08/04 | 남현회 | 07:10 | 19:30 | 3:20 | 자료, 대기부 관리 | chg |
| 08/05 | 남현회 | 07:10 | 19:40 | 3:30 | 자료 3층 대기부 | chg |
| 08/06 | 남현회 | 07:10 | 23:20 | 7:10 | 크레인설 조로니 대기부 | chg |
| 08/07 | 남현회 | 07:10 | 20:00 | 3:50 | 크레인설 조가 대기부 | chg |
| 08/10 | 나현회 | 07:10 | 19:30 | 3:20 | 자료, 대기부 관리 | chg |
| 08/11 | 남현회 | 07:10 | 19:20 | 3:20 | 자료 대기부 관리 | chg |
| 08/12 | 남현회 | 07:10 | 13:10 | -2:30 | 크레인설 대기부 관리 | chg |
| 08/13 | 남현회 | 07:10 | 19:40 | 3:30 | 자료 보도자비 대기부 | chg |
| 08/14 | 남현회 | 07:10 | 20:30 | 4:20 | 자료 대기부 관리 | chg |
| 08/17 | 남현회 | 07:10 | 19:20 | 3:10 | 자료 대기부 관리 | chg |
| 08/18 | 남현회 | 07:10 | 21:10 | 5:00 | 크레인설 대기부 관리 | chg |
| 08/19 | 남현회 | 07:10 | 24:20 | 8:10 | 크레인설, 조로니 대기부 | chg |
| 08/20 | 남현회 | 07:10 | 20:10 | 4:00 | 크레인설 자비 대기부 | chg |
| 08/21 | 남현회 | | | -8:00 | 자료관리 | chg |
| 08/24 | 남현회 | 07:10 | 16:10 | 0:00 | 크레인설 대기부 관리 | chg |
| 08/25 | 남현회 | 07:10 | 20:00 | 3:50 | 자료 대기부 관리 | chg |
| 08/26 | 남현회 | 07:10 | 20:40 | 3:50 | 자료 대기부 관리 | chg |
| 08/31 | 남현회 | 07:10 | 19:10 | 3:00 | 출입사고 크레인설 대기부 | chg |
| | | | Total | 54:00 | 확인 | |

<u>시간외근무 확인대장</u>

2020                                                        026 WPD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|----------|----------|----------|--------|--------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/01 | 난영희 | 07:10 | 20:20 | 4:10 | 구계시설 대책북 관리 | chy |
| 07/02 | 난영희 | 07:10 | 19:50 | 3:40 | 관리 대책북, 관리 | chy |
| 07/06 | 난영희 | 07:10 | 19:30 | 3:20 | 관리 대책북 관리 | chy |
| 07/07 | 난영희 | 07:10 | 21:40 | 5:30 | 구계시설 대책북 관리 | chy |
| 07/08 | 난영희 | 07:10 | 19:30 | 3:20 | 관리 대책북 관리 | chy |
| 07/09 | 난영희 | 07:10 | 21:50 | 5:40 | 구계시설 관리 대책북 | chy |
| 07/10 | 난영희 | 07:10 | 20:10 | 4:00 | 관리 위생 대책북 | chy |
| 07/13 | 난영희 | 07:10 | 20:20 | 4:10 | 구계시설 위생시설 대책북 | chy |
| 07/14 | 난영희 | 07:10 | 19:40 | 3:30 | 관리 대책북 관리 | chy |
| 07/15 | 난영희 | 07:10 | 19:50 | 3:40 | 관리 대책북 관리 | chy |
| 07/16 | 난영희 | 07:10 | 20:40 | 4:30 | 구계시설 대책북관리 | chy |
| 07/17 | 난영희 | 07:10 | 19:50 | 3:40 | 관리 대책북 관리 | chy |
| 07/20 | 난영희 | 07:10 | 19:30 | 3:20 | 관리 대책북 관리 | chy |
| 07/21 | 난영희 | 07:10 | 20:50 | 4:40 | 구계시설 대책북 관리 | chy |
| 07/22 | 난영희 | | | -8:00 | 단 건강근무 | chy |
| 07/23 | 난영희 | | | -8:00 | 단 건강근무 | chy |
| 07/27 | 난영희 | 07:10 | 19:40 | 3:30 | 관리 대책북 관리 | chy |
| 07/28 | 난영희 | 07:10 | 19:30 | 3:20 | 관리 리스 대책북 | chy |
| 07/29 | 난영희 | 07:10 | 20:50 | 4:40 | 관리 보장기는 구게이스 | chy |
| 07/30 | 난영희 | 07:10 | 17:40 | 1:20 | 구계시설 종업사 대책북 | chy |
| | | | Total | 54:00 | | |
| | | | | | 확인 | |

시간외근무 확인대장

0265 WDP

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 06/01 | 남현희 | 07:20 | 19:30 | 3:10 | 푸드리, 과리 대품부 | chy |
| 06/02 | 남현희 | 07:00 | 19:10 | 3:10 | 푸드리, 과리, 대품부 | chy |
| 06/03 | 남현희 | 07:20 | 19:10 | 2:50 | 구레션, 과리 대품부 | chy |
| 06/04 | 남현희 | 07:20 | 22:00 | 6:40 | 푸드리, JFK 과리대품부 | chy |
| 06/05 | 남현희 | 07:20 | 11:30 | -3:50 | 푸드리, 대품부 과리 | chy |
| 06/08 | 남현희 | 07:20 | 22:00 | 5:40 | 푸드리, JFK 과리 대품부 | chy |
| 06/09 | 남현희 | 07:30 | 19:20 | 2:50 | 푸드리, 대품부 과리 | chy |
| 06/10 | 남현희 | 07:20 | 19:40 | 3:20 | 푸드리, 과리 대품부 | chy |
| 06/11 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리 대품부 과리 | chy |
| 06/12 | 남현희 | 07:00 | 19:30 | 3:30 | 푸드리, 과리 대품부 | chy |
| 06/15 | 남현희 | 07:10 | 19:20 | 3:10 | 구레션, 대품부 과리 | chy |
| 06/16 | 남현희 | 07:20 | 19:10 | 2:50 | 푸드리 과리 대품부 | chy |
| 06/17 | 남현희 | 07:10 | 19:30 | 3:20 | 구레션 과리 대품부 | chy |
| 06/18 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리, 과리 대품부 | chy |
| 06/19 | 남현희 | 07:10 | 10:30 | 3:20 | 푸드리, 대품부 과리 | chy |
| 06/22 | 남현희 | 07:10 | 19:40 | 3:30 | 푸드리, 과리 대품부 | chy |
| 06/23 | 남현희 | 07:10 | 19:30 | 3:20 | 구레션 과리 대품부 | chy |
| 06/24 | 남현희 | | | -8:00 | 휴부 | cf |
| 06/25 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리대품부 과리 | chy |
| 06/26 | 남현희 | 07:10 | 19:30 | 3:20 | 구레션, 대품부 과리 | chy |
| 06/29 | 남현희 | 07:10 | 19:20 | 1:00 | 푸드리, 오스, 대품 | chy |
| 06/30 | 남현희 | 07:30 | 18:30 | 2:00 | 푸드리, 대품부, 오스 | cho |
| | | | Total | 54:00 | | |
| | | | | | 확인 | |

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 05/01 | 남현희 | 07:00 | 17:30 | 1:30 | 포트리, 출.퇴근 | [redacted] |
| 05/04 | 남현희 | 07:00 | 19:40 | 3:40 | 크레스킬, 출.퇴근 | |
| 05/05 | 남현희 | 07:00 | 18:40 | 2:40 | 포트리, 출.퇴근 | |
| 05/06 | 남현희 | 07:00 | 19:40 | 3:40 | 포트리, 출.퇴근 | |
| 05/07 | 남현희 | 07:00 | 18:50 | 2:50 | 포트리, 출.퇴근 | |
| 05/08 | 남현희 | 07:20 | 19:10 | 2:50 | 크레/거, 출.퇴근 | |
| 05/11 | 남현희 | 07:20 | 19:30 | 3:10 | 포트리, 출.퇴근 | |
| 05/12 | 남현희 | 07:00 | 19:00 | 3:00 | 포트리, 출.퇴근 | |
| 05/13 | 남현희 | 07:20 | 19:40 | 3:20 | 크레스킬, 출.퇴근 | |
| 05/14 | 남현희 | 07:40 | 19:20 | 2:40 | 크레스킬, 출.퇴근 | |
| 05/15 | 남현희 | 07:20 | 19:30 | 3:10 | 포트리, 출.퇴근 | |
| 05/18 | 남현희 | 07:00 | 19:20 | 3:20 | 포트리, 출.퇴근 | |
| 05/19 | 남현희 | 07:20 | 17:00 | 0:40 | 포트리, 출.퇴근 | |
| 05/20 | 남현희 | 07:20 | 19:10 | 2:50 | 크레스킬, 출.퇴근 | chg |
| 05/21 | 남현희 | 07:20 | 19:10 | 2:50 | 포트리, 출.퇴근 | chg |
| 05/22 | 남현희 | 07:00 | 18:30 | 2:30 | 포트리, 출.퇴근 | chg |
| 05/27 | 남현희 | 07:20 | 15:30 | -0:50 | 포트리, 출.퇴근 | chg |
| 05/28 | 남현희 | 07:20 | 19:00 | 2:40 | 포트리, 출.퇴근 | chg |
| 05/29 | 남현희 | 07:30 | 19:10 | 2:40 | 포트리, 출.퇴근 | cho |
| | | | | | | |
| | | | Total | 49:30 | 확인 [signature] | |
| | | | | | [signature] | |

ROKPM0065

## 시간외근무 확인대장

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 06/29 | 남정희 | 07:00 | 19:20 | 3:20 | 과제서류 결재문서 | |
| 04/30 | 남정희 | 07:30 | 19:10 | 2:40 | 과제서류 결재서, 결재문서 | |
| | | | Total | 6:00 | 결재인 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0066

## 시간외근무 확인대장

2020

| 날짜 | 근무자 | 초과근무 현왕 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|--------|--------|--------|--------|--------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 03/02 | | 07:20 | 19:00 | 2:40 | 출 퇴근 추나복 | |
| 03/03 | | 07:30 | 20:00 | 2:30 | 출 퇴근 추가복 | |
| 03/04 | | 07:30 | 19:30 | 3:00 | 출 퇴근 추가복 | |
| 03/05 | | 07:30 | 23:50 | 7:20 | 크레스비 출 퇴근 | |
| 04/06 | | 07:10 | 20:00 | 3:50 | 출 퇴근 추가복 | |
| 03/09 | | 07:20 | 19:40 | 3:20 | 크레스비 출 퇴근 | |
| 03/10 | | 07:10 | 19:40 | 3:10 | 크레스비 출 퇴근 | |
| 05/11 | | 07:10 | 19:30 | 3:20 | 크레스비 환영근무 | |
| 03/12 | | 12:20 | 17:20 | -3:00 | 크레스비 | |
| 05/13 | | 07:30 | 17:30 | -2:30 | 449복 출 환영근무 | |
| 05/16 | | 07:40 | 18:50 | 2:10 | 크레스비 출 퇴근 | |
| 05/18 | | 07:40 | 17:50 | 1:10 | 크레스비 출 퇴근 | |
| 03/19 | | 07:50 | 17:50 | 1:00 | 출 퇴근 | |
| 05/20 | | 07:50 | 17:50 | 1:00 | 출 퇴근 | |
| 05/23 | | 07:50 | 18:30 | 1:40 | 출 퇴근 | |
| 03/24 | | 08:10 | 16:40 | -0:30 | 출 퇴근 | |
| 03/26 | | 08:10 | 19:50 | 2:40 | 출 퇴근 | |
| 03/27 | | 08:10 | 18:50 | -0:20 | 출 퇴근 | |
| 05/30 | | 08:10 | 16:50 | -0:20 | 출 퇴근 | |
| 05/31 | | 08:10 | 14:00 | -4:00 | 출 퇴근 | |
| | | | Total | 31:00 | 확인 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 | 확인관 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | 사 유 | 서 명 |
| 2/1 | 남현희 | 14:30 | 23:30 | 9:00 | 품질검사, 출.퇴근 | |
| 2/2 | 남현희 | 09:00 | 21:30 | 12:30 | 품질검사, 출.퇴근 | |
| 2/3 | 남현희 | 06:50 | 21:50 | 6:00 | 50가, 출.퇴근 | |
| 2/4 | 남현희 | 07:10 | 20:00 | 3:50 | 크레스차, 출.퇴근 | |
| 2/5 | 남현희 | 07:30 | 18:30 | 2:00 | 파나무스, 출.퇴근 | |
| 2/6 | | | | -8:00 | 탄력근무 | |
| 2/7 | 남현희 | 08:20 | 23:20 | 6:00 | 42가, 조도리, 크레스차 | |
| 2/10 | 남현희 | 07:20 | 19:00 | 2:40 | 정화, 조도리 출.퇴근 | |
| 2/11 | 남현희 | | | -8:00 | 탄력근무 | |
| 2/12 | 남현희 | 07:10 | 20:50 | 4:00 | 32가, 출.퇴근 | |
| 2/13 | 남현희 | 07:10 | 19:10 | 3:00 | 크레스젤, 출.퇴근 | |
| 2/14 | 남현희 | 07:10 | 01:00 | 8:50 | 32가, 크레스젤, 출.퇴근 | |
| 2/18 | | | | -8:00 | 탄력근무 | |
| 2/19 | 남현희 | 09:00 | 15:00 | -3:00 | 〃 | |
| 2/20 | 남현희 | 07:10 | 19:10 | 3:00 | 헤네올리, 출.퇴근 | |
| 2/21 | 남현희 | 15:50 | 20:30 | -3:20 | 32가, 탄력근무 | |
| 2/24 | 남현희 | 07:10 | 19:30 | 3:20 | 출.퇴근 | |
| 2/25 | 남현희 | 07:30 | 20:10 | 3:40 | 출.퇴근 | |
| 2/26 | 남현희 | 07:30 | 20:10 | 3:40 | 출.퇴근 | |
| 2/27 | 남현희 | 07:30 | 23:10 | 6:40 | 크레스텔, 출.퇴근 | |
| 2/28 | 남현희 | 07:10 | 19:10 | 3:00 | 출.퇴근 | |
| | | Total | 51:00 | | 확인 | |

ROKPM0068

## 시간외근무 확인대장

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------------|------------|----------|----------------|------------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/2 | 남헤〇 | 07:30 | 19:00 | 2:50 | 총.퇴근 처리업무 | |
| 1/3 | 남헤〇 | 07:30 | 19:20 | 2:50 | 총.퇴근 | |
| 1/6 | 남헤〇 | 07:10 | 19:00 | 2:50 | 총.퇴근 | |
| 1/7 | 남헤〇 | 07:30 | 22:20 | 5:50 | 총.퇴근 정리 | |
| 1/8 | 나헤이 | 07:10 | 19:30 | 3:20 | 총.퇴근 | |
| 1/9 | 남헤3 | 07:30 | 19:50 | 3:00 | 총.퇴근 | |
| 1/10 | 남헤2 | 08:30 | 19:20 | 1:50 | 총.퇴근 | |
| 1/13 | 남헤3 | 07:10 | 19:30 | 3:20 | 그래스 총.퇴근 | |
| 1/14 | 남헤2 | 08:00 | 23:00 | 6:00 | 뉴욕 코스서 총 퇴근 | |
| 1/15 | 남헤2 | 07:10 | 22:00 | 6:50 | 코스서 총 퇴근 | |
| 1/16 | 남헤이 | 07:00 | 19:50 | 3:50 | Elmhurst. 총.퇴근 | |
| 1/17 | 남헤이 | 07:20 | 22:10 | 5:50 | 총.퇴근 | |
| 1/20 | 나헤2 | 07:10 | 18:10 | 2:00 | 총.퇴근 추모 | |
| 1/21 | 나헤이 | 07:30 | 22:20 | 5:50 | 퇴근.코스개 총퇴근 | |
| 1/22 | 나헤2 | 07:10 | 21:50 | 5:40 | 퇴백.총.퇴근 | |
| 1/23 | 나헤2 | | | -8:00 | 퇴근근무 | |
| 1/27 | 나헤2 | | | -8:00 | 퇴백신 | |
| 1/28 | 나헤이 | 07:20 | 19:20 | 3:00 | 총.퇴근 | |
| 1/29 | 남헤이 | 07:30 | 19:00 | 2:30 | 총.퇴근 | |
| 1/30 | 나헤이 | 07:30 | 19:20 | 2:50 | 총.퇴근 | |
| 1/31 | 나헤이 | 07:10 | 17:20 | 1:10 | 총.퇴근 | |
| | | | | | Total : 54 HR | |
| | | | | | 확인 | |

## <u>시간외근무 확인대장</u>

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 12/2 | 나영수 | 07:20 | 19:00 | 2:40 | 출·퇴근 | |
| 12/3 | 나영수 | 07:20 | 18:50 | 2:10 | 조퇴, 출·퇴근 | |
| 12/4 | 나영수 | 07:20 | 20:50 | 4:30 | 크레사청, 출·퇴근 | |
| 12/5 | 나영수 | 07:30 | 21:10 | 4:40 | 50가, 바팀하고 가져, 출퇴 | |
| 12/6 | 나영수 | 07:30 | 19:40 | 3:10 | 출·퇴근 | |
| 12/9 | 나영수 | 07:20 | 21:50 | 5:30 | 출·퇴근 | |
| 12/10 | 나영수 | 07:10 | 22:50 | 6:40 | 크레사청, 출·퇴근 | |
| 12/11 | 나영수 | 06:50 | 22:00 | 6:10 | 크레사청, 나르고 출·퇴근 | |
| 12/12 | 나영수 | 07:10 | 21:40 | 5:30 | 크레사청, 크레고 출·퇴근 | |
| 12/13 | 나영수 | 07:10 | 19:50 | 3:40 | 크레사청 출·퇴근 | |
| 12/16 | 나영수 | 07:10 | 20:30 | 4:20 | 크레사청 출·퇴근 | |
| 12/17 | 나영수 | 07:10 | 20:10 | 4:00 | 출·퇴근 | |
| 12/18 | 나영수 | 07:10 | 24:10 | 9:00 | 크레고, 크레사청 출·퇴근 | |
| 12/19 | 나영수 | 07:00 | 19:50 | 3:50 | 크레사청 출·퇴근 | |
| 12/20 | 나영수 | 07:00 | 19:50 | 3:50 | 크레사청, 출·퇴근 | |
| 12/20 | 나영수 | | | −8:00 | 탄력근무 | |
| 12/27 | 나영수 | | | −8:00 | " | |
| 12/30 | 나영수 | 07:20 | 18:00 | 1:40 | 출·퇴 | |
| | | | Total | 54:00 | 확인 | |
| | | | | | 나영수 | |

**A-712**

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 11/1 | 남현식 | 18:30 | 21:50 | ~4:40 | 단배 2타 | ✓ |
| 11/4 | 남현식 | 07:20 | 23:20 | 7:00 | 3가, 초.퇴근 | ✓ |
| 11/5 | 남현식 | 07:10 | 18:50 | 2:40 | 구례시장, 초.퇴근 | ✓ |
| 11/6 | 남현식 | 07:30 | 19:40 | 3:10 | 초.퇴근 | ✓ |
| 11/7 | 남현식 | 07:10 | 23:30 | 8:20 | 구례시장, 초.퇴근 | ✓ |
| 11/8 | 남현식 | 07:10 | 16:10 | 0:00 | 초.퇴근 | ✓ |
| 11/13 | 남현식 | 08:10 | 20:00 | 2:50 | 초.퇴근 | ✓ |
| 11/14 | 남현식 | 06:50 | 22:10 | 6:20 | 3가, 구례시장, 초.퇴근 | ✓ |
| 11/15 | 남현식 | 07:10 | 19:40 | 3:30 | 초.퇴근 | ✓ |
| 11/18 | 남현식 | 07:20 | 19:30 | 3:10 | 초.퇴근 | ✓ |
| 11/19 | 남현식 | 07:10 | 2:00 | 4:30 | 구례시장, 초.퇴근 | ✓ |
| 11/20 | 남현식 | 07:00 | 21:50 | 5:50 | 구례시장, 초.퇴근 | ✓ |
| 11/21 | 남현식 | 07:00 | 23:50 | 7:50 | 구례시장 3가, 초.퇴근 | ✓ |
| 11/22 | 남현식 | 07:00 | 21:30 | 5:50 | 3가, 초.퇴근 | ✓ |
| 11/25 | 남현식 | 07:20 | 20:40 | 3:20 | 시방, 초.퇴근 | ✓ |
| 11/26 | 남현식 | 07:00 | 19:00 | 3:00 | 초.퇴근 | ✓ |
| 11/29 | 남현식 | | | ~8:00 | 단배 2타 족부 | ✓ |
| | | | Total | 54:00 | 확인 | |
| | | | | | 수령 | |

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/0 | 송현님 | 10:50 | 20:30 | 1:00 | 줄. 최근 | ~ |
| 10/02 | 송현님 | 07:26 | 21:50 | 5:30 | 중단서류, Don't have 초과근 | a |
| 10/03 | 송현정 | 16:10 | 24:00 | 8:50 | 데이터 문제 초과연장 | a |
| 10/4 | 송현님 | 07:10 | 20:40 | 3:50 | 줄 최근 초과연장 | c |
| 10/10 | 송현님 | 07:20 | 19:10 | 2:50 | 줄. 최근 | a |
| 10/11 | 송현지 | 07:20 | 19:30 | 3:10 | 줄. 최근 | a |
| 10/14 | 송현님 | 07:30 | 18:10 | 1:40 | 줄 최근 | a |
| 10/15 | 송현님 | 07:40 | 22:20 | 5:40 | 줄. 최근 | a |
| 10/16 | 송현님 | 07:40 | 23:50 | 7:10 | 초과연장, 줄 최근 | c |
| 10/17 | 송현님 | 06:40 | 19:40 | 4:00 | 초과연장 줄 최근 | . |
| 10/18 | 송현님 | 08:10 | 19:50 | 2:40 | 줄 최근 | a |
| 10/19 | 송현님 | 08:40 | 18:00 | 9:40 | 정산보고 초과연장 | c |
| 10/21 | 송현님 | 06:50 | 18:40 | 2:50 | 줄 최근 | a |
| 10/22 | 송현님 | 07:20 | 21:20 | 5:00 | 데이터문제, 줄.최근 | ~ |
| 10/23 | 송현님 | 07:30 | 20:10 | 3:40 | 줄. 최근 | a |
| 10/24 | 송현님 | 07:30 | 19:50 | 3:00 | 줄. 최근 | ~ |
| 10/25 | 송현님 | 07:50 | 11:50 | -4:00 | 줄근 조기최근 | ~ |
| 10/28 | 송현님 | | | -8:00 | 단박근무 | a |
| 10/29 | 송현님 | 06:50 | 20:10 | 4:00 | 초과연장 줄.최근 | o |
| 10/30 | 송현님 | | | -8:00 | 단박근무 | a |
| 10/31 | 송현님 | 07:50 | 15:00 | -0:30 | 조기최근 | a |
| | | | Total | 54:00 | | |
| | | | | 12/19 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0072

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 9/3 | 남현의 | 07:20 | 19:50 | 3:40 | 출.회2 | C |
| 9/4 | 남현의 | 07:30 | 24:10 | 7:40 | 9시 11시, 출.회2 | C |
| 9/5 | 남현의 | 06:10 | 24:20 | 9:10 | cont 3시, 출.회2 | C |
| 9/6 | 남현의 | 07:40 | 20:40 | 3:40 | cont 7시, 출.회2 | C |
| 9/9 | 남현의 | 07:20 | 19:20 | 3:00 | 출.회2 | C |
| 9/10 | 남현의 | 07:00 | 19:00 | 3:00 | 출.회2 | C |
| 9/11 | 남현의 | 5:36 | 23:00 | 6:30 | 6시가, 그레스처 출2 | C |
| 9/12 | 남현의 | | | -8:00 | | C |
| 9/13 | 남현의 | | | -8:00 | | C |
| 9/16 | 남현의 | 07:20 | 22:20 | 6:00 | | C |
| 9/17 | 남현의 | 07:00 | 21:40 | 5:40 | 그레스처, 출.회2 | C |
| 9/18 | 남현의 | 07:10 | 12:50 | -3:00 | | C |
| 09/19 | 남현의 | 06:40 | 23:00 | 7:40 | 그레스처, 브스스출회2 | C |
| 09/20 | 남현의 | 17:00 | 23:00 | -2:00 | | C |
| 08/21 | 남현의 | 12:20 | 23:00 | 10:40 | 출전시, 메너 출.회2 | C |
| 09/22 | 남현의 | 07:50 | 21:40 | 13:50 | 메너, 출.회2 | C |
| 09/23 | 남현의 | 06:35 | 22:35 | 07:00 | 그레스처, 출 회2 | C |
| 09/24 | 남현의 | 06:35 | 24:35 | 09:00 | 그레스처, 출.회2 | C |
| 09/25 | 남현의 | 06:35 | 17:05 | 1:30 | | C |
| 09/26 | 남현의 | | | -8:00 | | C |
| 09/27 | 남현의 | | | -8:00 | | C |
| 09/30 | 남현의 | | | -8:00 | | C |
| | | | Total | 54:00 | | |
| | | | | | 30) | |
| | | | | | | |

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/01 | 남정희 | 07:20 | 19:30 | 3:10 | 크레스센 출퇴근 | ✓ |
| 08/02 | 남정희 | 07:30 | 19:20 | 2:50 | 출,퇴근 | ✓ |
| 08/08 | 남정희 | 13:00 | 24:00 | 11:00 | 데니용회의, 크레스센 | ✓ |
| 08/09 | 남정희 | 07:20 | 15:20 | 8:00 | 대통령 크레스센 | ✓ |
| 08/12 | 남정희 | 07:20 | 19:20 | 2:50 | 출,퇴근 | ✓ |
| 08/14 | 남정희 | 07:30 | 19:30 | 3:00 | 출,퇴근 | ✓ |
| 08/16 | 남정희 | 07:30 | 19:20 | 2:50 | 출,퇴근 | ✓ |
| 08/19 | 남정희 | 07:20 | 19:10 | 2:50 | 출,퇴근 | ✓ |
| 08/20 | 남정희 | 07:20 | 19:10 | 2:50 | 출,퇴근 | ✓ |
| 08/21 | 남정희 | 07:10 | 23:00 | 6:50 | 크레스센 조모식, 출,퇴근 | ✓ |
| 08/22 | 남정희 | 07:10 | 24:00 | 7:50 | 크레스센 JHK 출,퇴근 | ✓ |
| 08/23 | 남정희 | | | ~8:00 | 출판교통 근무 | ✓ |
| 08/26 | 남정희 | 07:20 | 19:30 | 3:10 | 출,퇴근근무 | ✓ |
| 08/27 | 남정희 | 07:10 | 19:40 | 3:30 | 크레스센, 출,퇴근 | ✓ |
| 08/28 | 남정희 | 07:30 | 20:00 | 3:30 | 크레스센, 출,퇴근 | ✓ |
| 08/29 | 남정희 | 07:30 | 20:00 | 3:30 | 출,퇴근 | ✓ |
| 08/30 | 남정희 | 07:30 | 09:50 | ~5:40 | 출근 (5시간) | ✓ |
| | | | Total | 54:00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0074

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 7/1 | 남영희 | 07:10 | 23:10 | 16:00 | 귀가 총,회2 | ✓ |
| 7/2 | 남영희 | 07:40 | 19:20 | 2:40 (청과 할과업무7) " | | ✓ |
| 7/3 | 남영희 | 07:40 | 20:50 | 4:20 | 총,회2 | ✓ |
| 7/5 | 남영희 | 07:10 | 22:50 | 6:40 | 레니김부인, 총,회2 | ✓ |
| 7/6 | 남영희 | 08:40 | 15:40 | 8:00 | 출발, 네팍 출도리 | ✓ |
| 7/7 | 남영희 | 09:50 | 12:50 | 2:40 | JFK | ✓ |
| 7/8 | 남영희 | 07:00 | 15:00 | -1:00 | | ✓ |
| 7/9 | 남영희 | 07:40 | 21:40 | 5:10 | 3과 총.회2 | ✓ |
| 7/10 | 남영희 | 07:00 | 19:00 | 3:00 | 레니부인, 총.회2 | ✓ |
| 7/11 | 남영희 | 07:20 | 19:30 | 3:10 | 총.회2 | ✓ |
| 7/12 | 남영희 | 07:30 | 19:50 | 3:20 | 총.회2 | ✓ |
| 7/13 | 남영희 | 06:40 | 22:00 | 6:20 | 레니부인, 출발사항 | ✓ |
| 7/15 | 남영희 | 07:20 | 19:10 | 2:50 | 총.회2 | ✓ |
| 7/16 | 남영희 | 07:30 | 19:30 | 3:00 | 총.회2 | ✓ |
| 7/17 | 남영희 | 07:30 | 22:10 | 5:40 | 레니부인, 총.회2 | ✓ |
| 7/18 | 남영희 | 07:20 | 19:30 | 3:10 | 총.회2 | ✓ |
| 7/19 | 남영희 | 07:20 | 22:10 | 5:50 | 크레모2 총.회2 | ✓ |
| 7/22 | 남영희 | 07:20 | 21:00 | 4:20 | 안도사드, 총.회2 | ✓ |
| 7/23 | 남영희 | 07:30 | 20:50 | 4:20 | MBC, 총.회2 | ✓ |
| 7/24 | 남영희 | 07:40 | 09:50 | -6:00 | 출근. | ✓ |
| 7/25 | " | | | -8:00 | ) 휴 부 | ✓ |
| 7/26 | " | | | -8:00 | ) | ✓ |
| 7/29 | 남영희 | 07:20 | 19:10 | 2:50 | 총.회2 | ✓ |
| 7/30 | 남영희 | 07:20 | 13:00 | -2:20 | 총.회2 | ✓ |
| 7/31 | 남영희 | 07:20 | 12:20 | -4:00 | 총근 | ✓ |
| | | | Total | 54:00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0075

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 06/03 | 노현이 | 07:20 | 19:00 | 2:40 | 조둔나, 총,회고 | |
| 06/06 | 노재기 | 07:00 | 19:40 | 3:40 | 레이광비, 총,회고 | |
| 06/05 | 노삼호 | 07:30 | 19:50 | 3:20 | 총,회고총,회수 | |
| 06/7 | 노재기 | 10:00 | 22:00 | 3:00 | 까가줌, 회가 초의복 | |
| 06/16 | 노재이 | 07:20 | 21:50 | 5:30 | 32나, 오재시저 초의의 | |
| 06/11 | 노재기 | 07:10 | 19:20 | 3:10 | 줄러디나, 총,회기 | |
| 06/12 | 노성이 | 06:50 | 19:40 | 1:50 | 총,회고 | |
| 06/2 | 노삼이 | 07:10 | 20:50 | 4:40 | 레이 크레시저 초의회 | |
| 06/14 | 노재기 | 07:10 | 18:00 | 1:50 | 총,회고 | |
| 06/17 | 노삼이 | 07:20 | 22:50 | 5:30 | 2나가, 총회고 3재서지 | |
| 06/18 | 노형이 | 07:10 | 24:00 | 7:50 | 3재서저 32나 초,회리 | |
| 06/19 | 노재미 | 07:10 | 20:40 | 4:30 | 총,회고 | |
| 06/20 | 노재이 | 07:30 | 19:30 | 2:00 | 총,회구 | |
| 06/21 | 노재미 | 07:30 | 19:30 | 3:00 | 총,회고 | |
| 06/24 | 노재미 | 07:20 | 19:40 | 3:20 | 총,회고 | |
| 06/25 | 노재미 | 07:10 | 19:00 | 2:50 | 총,회고 | |
| 06/26 | 노재이 | 07:30 | 19:30 | 3:00 | 총,회고 | |
| 06/27 | 노재기 | 07:30 | 15:50 | -0:40 | 총,회고 | |
| | | | Total | 54:00 | | |

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 05/01 | | 08:20 | 18:50 | 1:10 | 출.회의 준비 | |
| 05/02 | | 07:20 | 13:45 | -1:35 | ″ | |
| 05/09 | | 07:30 | 19:40 | 3:10 | 출.회의 출입통 | |
| 05/10 | | 07:30 | 19:40 | 3:10 | ″ | |
| 05/13 | | 07:20 | 22:50 | 6:10 | 기획, 출.회의 | |
| 05/14 | | 07:00 | 19:30 | 3:30 | 출.회의 | |
| 05/15 | | 07:30 | 22:20 | 6:50 | 3차 출.회의 | |
| 05/16 | | 07:10 | 19:40 | 3:30 | 크레스지 출.회의 | |
| 05/17 | | 07:30 | 19:40 | 3:10 | 출.회의 | |
| 05/20 | | 09:50 | 23:40 | 4:50 | 4차 광호회.출회의 | |
| 05/19 | | 16:40 | 01:00 | 8:20 | 4차 장비 | |
| 05/21 | | 07:50 | 24:00 | 7:10 | 3차 kpm 출회의 | |
| 05/22 | | 07:00 | 19:30 | 3:30 | 출.회의 | |
| 05/23 | | 07:15 | 19:30 | 3:15 | 국회소청 출.회의 | |
| 05/24 | | 08:40 | 19:40 | 4:00 | 행소보충, 출하소 | |
| 05/28 | | 07:20 | 21:35 | 5:15 | 출.회의준비 | |
| 05/29 | | 09:00 | 19:45 | 1:45 | 출.회의 처리통 | |
| 05/30 | | 09:00 | 22:30 | 5:30 | 기획소청 출회분 | |
| 05/31 | | 07:00 | 14:30 | -1:30 | 기획소청 정리 | |
| 05/7 | | | | -8:00 | 대체 휴일 | |
| 05/8 | | | | -8:00 | ″ | |
| | | | Total | 54:00 | ( 4주 + 2日 ) | |
| | | | | | | |
| | | | | | | |

ROKPM0077

**A-719**

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 04/01 | 남현진 | 07:20 | 19:20 | 3:00 | 총·회고 초과근무 | ✓ |
| 04/02 | 남현진 | 07:30 | 20:00 | 3:40 | 총·회고 초과근무 | ✓ |
| 04/03 | 남현진 | 07:30 | 07:15 | 2:45 | 초과근무 총·회고 | ✓ |
| 04/04 | 남현진 | 07:30 | 19:35 | 3:05 | 총·회고 초과근무 | ✓ |
| 04/05 | 남현진 | 00:00 | 13:30 | -4:30 | 당직근무 | ✓ |
| 04/08 | 남현진 | 07:20 | 17:30 | 00:50 | 총·회고 | ✓ |
| 04/09 | 남현진 | 07:25 | 20:00 | 3:35 | 총·회고 초과근무 | ✓ |
| 04/10 | 남현진 | 07:15 | 19:20 | 2:55 | 총·회고 초과근무 | ✓ |
| 04/11 | 남현진 | 07:30 | 19:30 | 3:00 | 총·회고 초과근무 | ✓ |
| 04/12 | 남현진 | 07:30 | 19:00 | 2:30 | 총·회고 초과근무 | ✓ |
| 04/15 | 남현진 | 07:20 | 20:30 | 4:10 | 초과근무 총·회고 | ✓ |
| 04/16 | 남현진 | 07:50 | 19:20 | 2:50 | 총·회고 초과근무 | ✓ |
| 04/17 | 남현진 | 07:30 | 21:50 | 5:20 | 마중, 총·회고 | ✓ |
| 04/18 | 남현진 | 7:50 | 19:20 | 2:50 | 해외업무 초과근무 | ✓ |
| 04/22 | 남현진 | 07:10 | 18:40 | 3:50 | 총·회고 | ✓ |
| 04/23 | 남현진 | 07:00 | 19:30 | 3:30 | 초과/등, 총·회고 | ✓ |
| 04/24 | 남현진 | 07:50 | 19:00 | 3:30 | 총·회고 | ✓ |
| 04/25 | 남현진 | 09:20 | 20:10 | 2:10 | 총·회고 | ✓ |
| 4/26 | 남현진 | 08:30 | 18:50 | 1:20 | 총·회고 초과근무 | ✓ |
| 4/29 | 남현진 | 07:10 | 19:00 | 2:50 | 총·회고 초과근무 | ✓ |
| 4/30 | 남현진 | 07:10 | 18:50 | 2:40 | 총·회고 초과근무 | ✓ |
| | | | Total | 53시간 30분 | | |
| | | | | | * 4극 + 2日 | |
| | | | | | 〈48시간 + 초과시간 30분〉 | |

8

12:50

15:10

12:00

<u>시간외근무 확인대장</u>

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 3/4 | 남ㅇㅇ | 07:20 | 22:15 | 5:55 | 출퇴근 출퇴근 | |
| 3/5 | 남ㅇㅇ | 07:50 | 23:20 | 6:30 | 개봉에서 TK 출퇴근 | |
| 3/6 | 남ㅇㅇ | 07:15 | 20:55 | 4:10 | 출퇴근 출근시부 | |
| 3/7 | 남ㅇㅇ | 07:30 | 17:38 | 1:08 | " | |
| 3/8 | 남ㅇㅇ | 07:10 | 18:50 | 2:20 | 출퇴근 출근시부 | |
| 3/11 | 남ㅇㅇ | 07:20 | 19:25 | 3:05 | 출퇴근 출근시부 | |
| 3/12 | 남ㅇㅇ | 07:15 | 20:25 | 4:10 | TK외 출근시 출퇴근 | |
| 3/13 | 남ㅇㅇ | 07:50 | 19:25 | 2:55 | 출퇴근 출근시부 | |
| 3/14 | 남ㅇㅇ | 07:30 | 19:30 | 3:00 | 출근시 출퇴근 | |
| 3/15 | 남ㅇㅇ | 07:20 | 19:30 | 3:10 | 퇴근외 출퇴근 | |
| 3/21 | 남ㅇㅇ | 07:30 | 19:54 | 3:24 | 출퇴근 출근시부 | |
| 3/22 | 남ㅇㅇ | 07:30 | 22:10 | 5:40 | 출퇴근 출근시부 | |
| 3/25 | 남ㅇㅇ | 07:20 | 19:00 | 2:40 | 출퇴근 출근시부 | |
| 3/26 | 남ㅇㅇ | 07:30 | 19:00 | 2:30 | " | |
| 3/27 | 남ㅇㅇ | 07:30 | 19:30 | 3:00 | 출퇴근 출근시부 | |
| 3/28 | 남ㅇㅇ | 07:30 | 21:30 | 5:00 | 출근시 출퇴근 | |
| 3/29 | 남ㅇㅇ | 07:30 | 23:10 | 6:40 | 야근 출퇴근 | |
| | | | Total 64시간 55분 | | | |
| | | | | 확인: | | |

<u>시간외근무 확인대장</u>

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 2/1 | 남혜인 | 07:50 | 19:00 | 2:30 | 초.회근 초과근무 | |
| 2/4 | 남혜인 | 07:20 | 10:55 | 6:35 | 오후, 초.회근 | |
| 2/5 | 남혜인 | 07:50 | 21:35 | 5:05 | 매니스, 초.회근 | |
| 2/6 | 남혜인 | 07:30 | 19:00 | 2:30 | 초.회근 초과근무 | |
| 2/7 | 남혜인 | 08:20 | 18:50 | 1:30 | 초.회근 초과근무 | |
| 2/8 | 남혜인 | 07:35 | 19:00 | 2:25 | 초.회근 초과근무 | |
| 2/11 | 남혜인 | 07:25 | 19:05 | 2:40 | 초.회근 초과근무 | |
| 2/12 | 남혜인 | 07:25 | 19:25 | 2:00 | 초.회근 초과근무 | |
| 2/13 | 남혜인 | 07:50 | 24:00 | 7:10 | 초과, 매니스 초 | |
| 2/14 | 남혜인 | 07:10 | 19:05 | 1:55 | 초.회근 초과근무 | |
| 2/15 | 남혜인 | 06:50 | 24:45 | 8:55 | 초과, 오후 초회근 | |
| 2/19 | 남혜인 | 07:10 | 20:10 | 2:50 | 회가치, 초.회근 | |
| 2/20 | 남혜인 | 07:10 | 19:20 | 2:00 | 초.회근 초과근무 | |
| 2/21 | 남혜인 | 07:00 | 21:50 | 5:50 | 매니스, 초.회근 | |
| 2/22 | 남혜인 | 07:50 | 19:20 | 2:40 | 초.회근 초과근무 | |
| 2/27 | 남혜인 | 06:50 | 24:15 | 8:25 | 초과, 회니등비, 오비 | |
| 2/28 | 남혜인 | 07:20 | 20:20 | 4:00 | 초.회근 초과근무 | |
| | | | Total | 69시간50분 | | |

<u>시간외근무 확인대장</u>

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/3 | 남현희 | 06:20 | 17:30 | 3:10 | 7 A내, 졸·회고 | ✓ |
| 1/7 | 남현희 | 07:40 | 20:40 | 3:50 | 꼬도리 졸·회고 | ✓ |
| 1/8 | 남현희 | 07:40 | 20:45 | 4:05 | 충여4과, 66과 졸·회고 | ✓ |
| 1/9 | 남현희 | 07:40 | 19:05 | 2:25 | 졸·회고 초과내 | ✓ |
| 1/10 | 남현희 | 07:35 | 19:45 | 3:20 | 3대4과, 졸·회고 | ✓ |
| 1/11 | 남현희 | 07:15 | 19:40 | 3:25 | 졸·회고 초과내 | ✓ |
| 1/14 | 남현희 | 07:30 | 19:55 | 3:25 | 졸·회고 초과내 | ✓ |
| 1/15 | 남현희 | 07:30 | 23:00 | 6:30 | 과거녹족 졸·회고 | ✓ |
| 1/16 | 남현희 | 06:20 | 23:00 | 7:40 | 시내, 졸·회고 | ✓ |
| 1/17 | 남현희 | 06:30 | 22:00 | 6:30 | 꼬명락 2부서 졸·회고 | ✓ |
| 1/18 | 남현희 | 07:20 | 19:00 | 2:40 | 졸·회고 초과내 | ✓ |
| 1/21 | 남현희 | 07:40 | 19:20 | 2:40 | 졸·회고 초과내 | ✓ |
| 1/22 | 남현희 | 07:10 | 19:00 | 2:50 | 졸·회고 초과내 | ✓ |
| 1/23 | 남현희 | 07:20 | 19:00 | 2:40 | 졸·회고 초과내 | ✓ |
| 1/24 | 남현희 | 07:40 | 20:05 | 3:25 | 졸·회고 초과내 | ✓ |
| 1/25 | 남현희 | 07:15 | 22:40 | 6:25 | 졸·회고 초과내 | ✓ |
| 1/31 | 남현희 | 07:05 | 19:15 | 3:10 | 졸·회고 초과내 | ✓ |
| | | | Total | 68:03:10 | | |

ROKPM0081

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|--------|--------|--------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 12/3 | 남영리 | 07:20 | 19:10 | 2:50 | 꽃, 회의 준비부 | ✓ |
| 12/4 | 남영리 | 07:30 | 19:05 | 2:35 | 〃 | ✓ |
| 12/5 | 남영리 | 07:30 | 20:15 | 3:45 | 행사, 총회의 | ✓ |
| 12/6 | 남영리 | 10:00 | 22:30 | 4:30 | 총정리, 총회의 | ✓ |
| 12/7 | 남영리 | 07:00 | 19:30 | 3:30 | 행사준비, 회의 준비부 | ✓ |
| 12/10 | 남영리 | 07:00 | 18:45 | 2:45 | 총회의 준비부 | ✓ |
| 12/11 | 남영리 | 07:20 | 22:50 | 6:30 | 태강비(외)(9) 총회의 | ✓ |
| 12/12 | 남영리 | 07:40 | 24:00 | 7:20 | 식당, 업무, 총회의 | ✓ |
| 12/13 | 남영리 | 07:10 | 22:50 | 6:40 | 업무(外) 총회의 | ✓ |
| 12/14 | 남영리 | 07:20 | 20:05 | 3:45 | 총회의 준비부 | ✓ |
| 12/17 | 남영리 | 07:30 | 22:15 | 5:45 | 행사, 총회의준비부 | ✓ |
| 12/18 | 남영리 | 07:20 | 19:45 | 3:25 | (Harmonety), 총회의 | ✓ |
| 12/19 | 남영리 | 07:30 | 20:35 | 3:05 | 총회의 준비부 | ✓ |
| 12/20 | 남영리 | 07:40 | 19:10 | 2:30 | 총회의 준비부 | ✓ |
| 12/21 | 남영리 | 07:40 | 19:35 | 2:55 | 총회의 준비부 | ✓ |
| 12/26 | 남영리 | 07:25 | 18:00 | 1:35 | 총회의 준비부 | ✓ |
| 12/26 | 남영리 | 07:25 | 17:50 | 1:25 | 행사(外), 총회의 | ✓ |
| 12/27 | 남영리 | 07:20 | 19:15 | 2:55 | 행사(外), 총회의 | ✓ |
| 12/28 | 남영리 | 08:00 | 17:00 | 0 | | ✓ |
| 12/30 | 남영리 | 16:00 | 20:40 | 4:40 | 휴일 근무 | ✓ |
| 12/31 | 남영리 | 08:20 | | | | |
| | | | Total | 72시간 35분 | | |
| | | | | 확인: | | |
| | | | | 남영리 | | |

**A-724**

## 시간외근무 확인대장

218

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 11/1 | | 07:50 | 22:50 | 6:20 | 증가(지각신청) 효.휘근 | |
| 11/2 | | 06:50 | 18:40 | 2:50 | 효.휘근 추가복 | |
| 11/5 | | 07:20 | 18:15 | 1:55 | 종료시 초과복 | |
| 11/6 | | 07:50 | 23:55 | 7:25 | 케스케이터, 효.휘근 | |
| 11/7 | | 09:10 | 22:50 | 6:40 | 니리케어, 효.휘근 | |
| 11/9 | | 06:45 | 19:15 | 3:30 | 효.휘근 초과복 | |
| 11/10 | | 06:50 | 19:50 | 4:00 | 효.휘근 추가복 | |
| 11/12 | | 07:20 | 18:55 | 2:35 | 효.휘근 초과복 | |
| 11/13 | | 07:25 | 19:55 | 2:40 | 효.휘근 초과복 | |
| 11/14 | | 09:00 | 19:10 | 1:10 | 효.휘근 초과복 | |
| 11/15 | | 01:45 | 02:25 | 9:40 | 증가(증정과), 효.휘근 | |
| 11/16 | | 07:00 | 23:35 | 7:35 | 모두(지각신청) 효.휘근 | |
| 11/17 | | 08:15 | 11:35 | 3:20 | JFK Hotel 업무 | |
| 11/19 | | 07:20 | 19:10 | 2:50 | 효.휘근 초과복 | |
| 11/20 | | 07:30 | 16:50 | 1:30 | 효.휘근 초과복 | |
| 11/21 | | 08:10 | 19:20 | 2:10 | 증가신, 효.휘근 | |
| 11/23 | | 08:00 | 17:45 | 1:00 | 효.휘근 초과복 | |
| 11/26 | | 07:20 | 22:00 | 5:40 | 회의(요일회) 효.휘근 | |
| 11/27 | | 07:20 | 19:00 | 2:40 | 효.휘근 초과복 | |
| 11/28 | | 07:30 | 18:10 | 1:40 | 효.휘근 초과복 | |
| 11/29 | | 07:30 | 19:10 | 2:40 | 효.휘근 초과복 | |
| 11/30 | | 06:45 | 24:05 | 8:20 | 대사관, 효.휘근 | |
| | | Total | 88시간 | 10분 | | |
| | | | | | 수령 확인 : | |

## 시간외근무 확인대장

2018

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/1 | 남해외 | 07:10 | 21:00 | 4:50 | 5가(차량4색) 출.퇴근 | ✓ |
| 10/2 | 남현외 | 07:20 | 20:20 | 4:00 | 0박, 출.퇴근 | ✓ |
| 10/4 | 남해외 | 05:40 | 19:20 | 3:40 | 출.퇴근 초과복 | ✓ |
| 10/5 | 남현외 | 07:10 | 22:10 | 5:40 | 대책본부색 출.퇴근 | ✓ |
| 10/10 | 남해외 | 07:30 | 22:30 | 6:00 | 리세팅(식사2색)출.퇴근 | ✓ |
| 10/11 | 남해외 | 07:20 | 22:20 | 6:00 | 초과(야근), 출.퇴근 | ✓ |
| 10/12 | 남해외 | 06:40 | 23:40 | 8:00 | 행사(식사4색)초과.출.퇴근 | ✓ |
| 10/15 | 남현외 | 07:20 | 19:25 | 3:05 | 출.퇴근 초과복 | ✓ |
| 10/16 | 남현외 | 07:30 | 23:45 | 7:15 | 야근, 출.퇴근 | ✓ |
| 10/17 | 남현외 | 07:30 | 20:00 | 3:30 | 출.퇴근 초과복 | ✓ |
| 10/18 | 남해외 | 07:30 | 21:00 | 4:30 | 출.퇴근 초 과복 | ✓ |
| 10/19 | 남현외 | 07:30 | 19:20 | 2:50 | 출.퇴근 초과복 | ✓ |
| 10/22 | 남현외 | 07:40 | 18:50 | 2:20 | " | ✓ |
| 10/23 | 남현외 | 07:30 | 19:00 | 2:30 | 출.퇴근 초과복 | ✓ |
| 10/24 | 남현외 | 07:30 | 21:10 | 4:40 | 야근(식사4색)출.퇴근 | ✓ |
| 10/25 | 남현외 | 07:20 | 19:10 | 2:50 | 출.퇴근 초과복 | ✓ |
| 10/26 | 남현외 | 07:30 | 19:30 | 3:00 | " | ✓ |
| 10/29 | 남현외 | 07:30 | 22:50 | 8:20 | 해외(식사2색) 출.퇴근 | ✓ |
| 10/30 | 남해외 | 07:10 | 18:30 | 2:20 | 출.퇴근 초과복 | ✓ |
| | | | Total | 83시간 20분 | | |
| | | | | | 83 × 14.76 = 81,225 | |
| | | | | | 수정확인 | |

## 시간외근무 확인대장

2018

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 09/04 | 남현희 | 07:40 | 19:30 | 2:50 | 출·퇴근 초과업무 | |
| 09/05 | 남현희 | 07:40 | 22:50 | 6:10 | 대사행사, 출퇴근 | |
| 09/06 | 남현희 | 06:40 | 18:50 | 3:10 | 부부(검찰4석) 출·퇴근 | |
| 09/07 | 남현희 | 07:30 | 21:00 | 4:30 | 야근, 출·퇴근 | |
| 09/10 | 남현희 | 07:10 | 21:50 | 5:20 | 야근, 출·퇴근 | |
| 09/11 | 남현희 | 07:40 | 19:30 | 2:40 | 출·퇴근 초과업무 | |
| 09/12 | 남현희 | 07:40 | 18:50 | 1:50 | " | |
| 09/13 | 남현희 | 07:40 | 19:50 | 2:50 | " | |
| 09/14 | 남현희 | 07:00 | 24:30 | 8:50 | 야근/부부 차관(4석) 출·퇴근 | |
| 09/17 | 남현희 | 7:20 | 20:00 | 3:40 | 야근, 출·퇴근 | |
| 09/18 | 남현희 | 7:20 | 21:50 | 5:30 | 야근, 출·퇴근 | |
| 09/19 | 남현희 | 7:10 | 19:50 | 3:20 | 출·퇴근 초과업무 | |
| 09/20 | 남현희 | 7:10 | 19:40 | 3:30 | " | |
| 09/21 | 남현희 | 7:10 | 19:30 | 3:20 | " | |
| 09/22 | 남현희 | 10:40 | 19:00 | 8:30 | 토요일 휴일근무 | |
| 09/23 | 남현희 | 09:00 | 19:20 | 10:20 | 일요일 휴일근무 | |
| 09/24 | 남현희 | 06:40 | 20:50 | 5:10 | 야근, 출·퇴근 | |
| 09/25 | 남현희 | 07:00 | 20:10 | 4:10 | 출·퇴근 초과업무 | |
| 09/26 | 남현희 | 07:00 | 21:20 | 5:20 | 야근, 출·퇴근 | |
| 09/27 | 남현희 | 07:35 | 24:30 | 8:05 | 야근/부부 차관(4석) 출·퇴근 | |
| 09/28 | 남현희 | 06:45 | 19:40 | 3:55 | 출·퇴근 초과업무 | |
| 09/29 | 남현희 | 09:00 | 13:00 | 4:00 | 토요일 휴일근무 | |
| | | | Total | 106시간 40분 | | |
| | | | | 106 × 14.76 = $1564.56 | | |
| | | | | 약 1,564. oo | | |

<u>시간외근무 확인대장</u>

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 8/1 | 남현희 | 07:40 | 18:00 | 1:20 | 출, 퇴근 초과근무 | |
| 8/2 | 남현희 | 07:40 | 21:00 | 4:20 | 출, 퇴근 초과근무 | |
| 8/3 | 남현희 | 07:40 | 19:00 | 2:20 | 출, 퇴근 초과근무 | |
| 8/6 | 남현희 | 07:40 | 21:50 | 5:10 | 출, 퇴근 초과근무 | |
| 8/7 | 남현희 | 07:40 | 19:30 | 2:50 | 출, 퇴근 초과근무 | |
| 8/8 | 남현희 | 07:40 | 19:30 | 2:50 | 출, 퇴근 초과근무 | |
| 8/9 | 남현희 | 07:40 | 23:00 | 6:20 | 출, 퇴근 초과근무 | |
| 8/10 | 남현희 | 08:00 | 21:10 | 4:10 | 출, 퇴근 초과근무 | |
| 8/13 | 남현희 | 07:40 | 19:20 | 2:40 | 출, 퇴근 초과근무 | |
| 8/14 | 남현희 | 06:50 | 23:10 | 7:26 | 출, 퇴근초과근무 | |
| 8/16 | 남현희 | 07:40 | 22:10 | 5:10 | 출, 퇴근초과근무 | |
| 8/17 | 남현희 | 07:40 | 19:10 | 2:30 | 출, 퇴근 초과근무 | |
| 8/20 | 남현희 | 07:30 | 19:30 | 3:00 | 출, 퇴근 초과근무 | |
| 8/22 | 남현희 | 07:40 | 19:00 | 2:20 | 출, 퇴근 초과근무 | |
| 8/23 | 남현희 | 07:40 | 19:20 | 2:40 | 출, 퇴근초과근무 | |
| 8/24 | 남현희 | 07:40 | 19:30 | 2:50 | 출, 퇴근 초과근무 | |
| 8/27 | 남현희 | 07:30 | 18:50 | 2:20 | 출, 퇴근 초과근무 | |
| 8/28 | 남현희 | 07:40 | 19:10 | 2:30 | 출, 퇴근 초과근무 | |
| 8/29 | 남현희 | 07:30 | 19:00 | 2:30 | 출, 퇴근 초과근무 | |
| 8/30 | 남현희 | 07:40 | 21:20 | 4:40 | 출, 퇴근 초과근무 | |
| 8/31 | 남현희 | 07:40 | 22:30 | 5:50 | 출, 퇴근초과근무 | |
| | | | Total | 76.00 | A72 × $14.76 = $1,109 1121 | |
| | 10/18 | Resuto | | | | |

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/05 | 남현희 | 07:00 | 23:50 | 7:50 | 리지보드/인수인수인도회/정리 | ~ |
| 07/27 | 남현희 | 09:30 | 23:40 | 5:10 | JFK/펜스에이전/부스/정리 | ~ |
| 07/31 | 남현희 | 07:40 | 18:40 | 2:00 | 출타 초과분 | ~ |
| | | | Total | 15시간 | × 14.76 ≒ $221 | |
| | | | 남현희 | | | |

## 시간외근무 확인대장

2018

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|----------|----------|----------|----------|----------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 06/06 | 남현의 | 09:00 | 23:50 | 5:50 | 청소, 입출부 크레스관 | ~ |
| 06/13 | 남현의 | 13:00 | 02:00 | 4:00 | 청소, 빠까장, 닦스, 장서 | ~ |
| 06/15 | 남현의 | 09:40 | 12:40 | 3:00 | JFK, 관리 | ~ |
| 06/18 | 남현의 | 08:30 | 22:30 | 5:00 | 5가, 46가, 문서 | ~ |
| 06/19 | 남현의 | 21:40 | 24:40 | 3:50 | JFK/ 봉사 | ~ |
| 06/20 | 남현의 | 07:00 | 23:30 | 7:30 | 청소, JFK 3가, 닦스 빠 | ~ |
| 06/25 | 남현의 | 07:00 | 02:40 | 10:20 | 청사보고가, 청소 닦스 | ~ |
| | | | Total | 38:30 | | |
| | | | 시간외 38시간 X $14.76(기본메) = $560 | | | |
| | | | 사결론인 | | | |

ROKPM0088

## 시간외근무 확인대장

2018

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 5/1 | 남희일 | 7:45 | 22:20 | 5:35 | 서류 / 초.회2 초과부 | ~ |
| 5/2 | 남희일 | 7:50 | 21:30 | 4:40 | 정맥 / 초.회2초과부 | ~ |
| 5/3 | 남희일 | 7:45 | 19:10 | 2:25 | 초.회2 초과부 | ~ |
| 5/4 | 남희일 | 8:00 | 19:10 | 2:10 | " | ~ |
| 5/7 | 남희일 | 7:30 | 20:10 | 3:40 | " | ~ |
| 5/8 | 남희일 | 7:45 | 20:30 | 3:45 | " | ~ |
| 5/9 | 남희일 | 7:00 | 22:30 | 6:30 | 초토리 / 초.회2 초과부 | ~ |
| 5/10 | 남희일 | 7:45 | 23:10 | 6:25 | 서류 / 초.회2초과부 | ~ |
| 5/11 | 남희일 | 10:00 | 20:50 | 0:50 | 초.회2 초과부 | ~ |
| 5/14 | 남희일 | 7:30 | 19:40 | 2:10 | " | ~ |
| 5/15 | 남희일 | 7:45 | 22:30 | 5:45 | 80st / 초.회2초과부 | ~ |
| 5/16 | 남희일 | 7:45 | 23:25 | 6:40 | 서류/Ttk/ 초.회2 | ~ |
| 5/17 | 남희일 | 7:45 | 20:30 | 3:45 | 초.회2 초과부 | ~ |
| 5/18 | 남희일 | 7:25 | 23:35 | 7:10 | 정리성/Ttk/초.회2 | ~ |
| 5/21 | 남희소 | 7:10 | 18:50 | 2:40 | 관리 | ~ |
| 5/22 | 남희일 | 9:00 | 19:40 | 1:40 | 78st / 관리 | ~ |
| 5/29 | 남희일 | 7:00 | 22:50 | 8:50 | 초토리 / 관리 / 업무 | ~ |
| 5/30 | 남희일 | 6:40 | 16:40 | 1:00 | 업무 / 관리성/종료 | ~ |
| 5/31 | 남희일 | 09:00 | 19:20 | 1:20 | 환자 | ~ |
| | | | Total | 77:00 | X 기준액 1476 ≒ $469 (격월근액 ) | |
| | | | | | 수령감사 | ✓ |

ROKPM0089

## 시간외근무 확인대장

2018

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|------|--------|--------|--------|--------|------------|----------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 4/4 | 남현의 | 7:40 | 22:00 | 5:20 | 헤게식/출.회고초라넉 | 〔서명〕 |
| 4/5 | 남현의 | 7:50 | 23:10 | 6:20 | 부스제작/ " | 〔서명〕 |
| 4/6 | 손현의 | 7:50 | 19:40 | 7:50 | 출.회고 초라넉 | 〔서명〕 |
| 4/9 | 남현의 | 7:30 | 21:30 | 5:00 | 서류 /출.회고초라넉 | 〔서명〕 |
| 4/10 | 남현의 | 7:50 | 21:20 | 4:30 | 44가 /  " | 〔서명〕 |
| 4/11 | 남현의 | 7:30 | 20:10 | 3:40 | 출.회고 초라넉 | 〔서명〕 |
| 4/12 | 남현의 | 7:50 | 19:45 | 2:55 | " | 〔서명〕 |
| 4/13 | 남현의 | 7:45 | 18:00 | 1:45 | " | 〔서명〕 |
| 4/16 | 남현의 | 7:30 | 21:30 | 5:00 | 점밥 /출.회고초라넉 | 〔서명〕 |
| 4/17 | 남현의 | 8:10 | 20:45 | 3:35 | 출.회고 초라넉 | 〔서명〕 |
| 4/18 | 남현의 | 7:45 | 21:50 | 5:05 | 평막 /출.회고초라넉 | 〔서명〕 |
| 4/19 | 남현의 | 7:50 | 20:10 | 3:20 | 축.회고초라넉 | 〔서명〕 |
| 4/20 | 남현의 | 7:45 | 20:45 | 4:00 | 출.회고 초라넉 | 〔서명〕 |
| 4/23 | 남현의 | 7:30 | 19:30 | 3:00 | 출.회고 초라넉 | 〔서명〕 |
| 4/24 | 남현의 | 7:45 | 24:30 | 7:45 | JFK /출.회고 | 〔서명〕 |
| 4/25 | 남현의 | 10:35 | 21:45 | 7:20 | 5가 /출.회고 | 〔서명〕 |
| 4/26 | 남현의 | 8:00 | 21:40 | 4:40 | 59가/크레스틸/출.회고 | 〔서명〕 |
| 4/27 | 남현의 | 7:45 | 18:30 | 1:45 | 출.회고초라넉 | 〔서명〕 |
| 4/30 | 남현의 | 7:45 | 21:30 | 4:45 | 26가 /출.회고초라넉 | 〔서명〕 |
| | | | Total | 80시간 | × $14.76 = $169 (간호인인원) | |
| | | | | | 수정확인란 〔서명〕 | |
| | | | | | | |

## 시간외근무 확인대장

2018. 3月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 3/2 | 남현희 | 7:50 | 20:30 | 3:40 | 홀, 회료 초과내역 | 印 |
| 3/5 | 남현희 | 7:30 | 18:30 | 2:00 | 홀, 회료 초과내역 | 印 |
| 3/6 | 남현희 | 7:40 | 21:40 | 5:00 | 서홀 / 초, 회료 | 印 |
| 3/8 | 남현희 | 7:50 | 20:20 | 2:30 | 홀, 회료 초과내역 | 印 |
| 3/9 | 남현희 | 7:50 | 22:00 | 5:10 | 3건 / 홀, 회료 | 印 |
| 3/12 | 남현희 | 7:30 | 22:40 | 6:10 | 6건/4예약/홀, 회료 | 印 |
| 3/13 | 남현희 | 7:40 | 23:00 | 6:40 | 정상화/6건/ 초과 | 印 |
| 3/14 | 남현희 | 7:40 | 21:50 | 5:50 | 팔리 / 홀, 회료 | 印 |
| 3/15 | 남현희 | 7:40 | 20:00 | 3:20 | 룸2(5)/ 홀, 회료 | 印 |
| 3/16 | 남현희 | 7:40 | 20:30 | 3:50 | 홀, 회료 초과 | 印 |
| 3/19 | 남현희 | 7:40 | 20:40 | 4:00 | " | 印 |
| 3/20 | 남현희 | 7:50 | 20:00 | 3:10 | " | 印 |
| 3/22 | 남현희 | 7:50 | 19:50 | 3:00 | " | 印 |
| 3/23 | 남현희 | 7:50 | 21:50 | 5:00 | 20건/하나변/ 홀, 회료 | 印 |
| 3/26 | 남현희 | 7:30 | 20:30 | 4:00 | 홀, 회료 초과내역 | 印 |
| 3/27 | 남현희 | 7:40 | 19:40 | 2:50 | " | 印 |
| 3/28 | 남현희 | 7:50 | 21:40 | 4:50 | 리차드스/ 홀, 회료 | 印 |
| 3/29 | 남현희 | 7:50 | 20:30 | 3:40 | 홀, 회료 초과내역 | 印 |
| | | | Total | 75:30 | | |
| | | | | | 75시간 × $14.96 ≒ $767 (2월 3일 계산) | |

## 시간외근무 확인대장

2018. 2月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 2/1 | 남성희 | 7:40 | 23:00 | 6:20 | 총·회로/6ㅓ/내부 | 印 |
| 2/2 | " | 7:40 | 21:50 | 5:10 | 총·회로/도도리 | 印 |
| 2/5 | " | 7:40 | 20:30 | 3:50 | 총·회로 후라벽 | 印 |
| 2/6 | " | 7:40 | 22:20 | 5:40 | 총·회로/브로스웨이 | 印 |
| 2/7 | " | 7:40 | 22:20 | 5:40 | 총·회로/펭락 | 印 |
| 2/8 | " | 7:40 | 22:20 | 5:40 | 총·회로/7간/34가 | 印 |
| 2/9 | " | 8:00 | 21:00 | 4:00 | 총·회로 후라벽 | 印 |
| 2/12 | " | 7:30 | 21:00 | 4:30 | 총·회로 후라벽 | 印 |
| 2/13 | " | 7:40 | 22:00 | 5:20 | 총·회로/도도리 | 印 |
| 2/14 | " | 8:00 | 20:00 | 3:00 | 총·회로 후라벽. | 印 |
| 2/15 | " | 7:50 | 23:00 | 6:10 | 총·회로/3개소/내부 | 印 |
| 2/20 | " | 7:30 | 20:20 | 3:50 | 총·회로/1가 | 印 |
| 2/21 | " | 7:50 | 20:00 | 3:10 | 총·회로 후라벽 | 印 |
| 2/23 | " | 7:50 | 20:30 | 3:40 | 총·회로 후라벽 | 印 |
| 2/26 | " | 7:30 | 20:00 | 3:30 | 총·회로 후라벽 | 印 |
| 2/27 | " | 7:30 | 21:50 | 5:20 | 총·회로/타임스 | 印 |
| 2/28 | " | 7:50 | 23:30 | 6:40 | 총·회로 화라벽 | 印 |
| | | | Total | 81 시간 | | |
| | | | | | 81시간 x $14.96 ≒ $767 (한화로액 ) | |

**A-734**

## 시간외근무 확인대장

2018 /月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/3 | 남현희 | 7:40 | 23:00 | 6:20 | 72가/초리/총회2 | |
| 1/5 | 남현희 | 7:40 | 20:00 | 3:40 | 32가/총회2 | |
| 1/8 | 남현희 | 7:30 | 20:00 | 3:30 | 총이사/총회2 | |
| 1/9 | 남현희 | 8:00 | 21:20 | 4:20 | 6가/32가/총회2 | |
| 1/10 | 남현희 | 7:40 | 21:50 | 5:10 | 56가/평가/총회2 | |
| 1/11 | 남현희 | 7:40 | 0:00 | 8:40 | 32가/총회2 | |
| 1/12 | 남현희 | 11:00 | 20:00 | 0:00 | 49가/총회2 | |
| 1/15 | 남현희 | 7:50 | 23:00 | 6:10 | 32가/1가/총회2 | |
| 1/16 | 남현희 | 7:40 | 21:45 | 5:05 | 32가/포토리/총회2 | |
| 1/17 | 남현희 | 7:50 | 19:45 | 2:55 | 76가/포토리 | |
| 1/18 | 남현희 | 7:40 | 22:00 | 5:40 | 28가/총회2 | |
| 1/19 | 남현희 | 8:00 | 20:00 | 3:00 | 총회2 외라보 | |
| 1/22 | 남현희 | 7:30 | 22:00 | 5:30 | 서류/총회2 | |
| 1/23 | 남현희 | 7:40 | 19:50 | 2:10 | 총회2 외라북 | |
| 1/24 | 남현희 | 7:40 | 21:00 | 4:20 | 23가/포토리/총회2 | |
| 1/25 | 남현희 | 9:30 | 21:00 | 2:30 | 총회2 외라남 | |
| 1/26 | 남현희 | 7:40 | 22:30 | 6:50 | 32가/평가/총회2 | |
| 1/28 | 남현희 | 18:20 | 22:30 | 4:10 | JFK/총이2북 | |
| 1/29 | 남현희 | 7:30 | 20:30 | 4:00 | 총회2 외라북 | |
| 1/30 | 남현희 | 7:45 | 21:30 | 4:45 | 포토리/총회2 | |
| 1/31 | 남현희 | 7:45 | 19:45 | 3:00 | 총회2가북 | |
| | | | Total | 91:45 | | |
| | | | | | 91시간 × 14.96 = $767 | |
| | | | | | (임금환산액) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

91시간

ROKPM0093

<u>시간외근무 확인대장</u>

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 12/1 | 남 현희 | 7:30 | 22:00 | 5:30 | 출.회2/프르리/4가 | 21 |
| 12/3 | 남 현희 | 7:30 | 11:00 | 3:30 | Newark air port | 21 |
| 12/4 | 남현희 | 7:30 | 23:00 | 6:30 | 출.회2/평각 | 21 |
| 12/5 | 남현희 | 7:40 | 22:00 | 5:20 | 출.회2/맨해탈/JFK | 21 |
| 12/6 | 남현희 | 7:40 | 21:50 | 5:10 | 출.회2/49가/1가 | 21 |
| 12/7 | 남현희 | 7:40 | 21:40 | 5:00 | 출.회2/7가 | 21 |
| 12/11 | 남현희 | 7:30 | 19:30 | 3:00 | 출.회2 초나벅 | 21 |
| 12/12 | 남현희 | 7:40 | 21:40 | 5:00 | 출.회2/6AVE | 21 |
| 12/13 | 남현희 | 7:40 | 19:50 | 3:10 | 출.회2 초나벅 | 21 |
| 12/14 | 남현희 | 7:20 | 22:00 | 5:40 | 출.회2/44가 | 21 |
| 12/15 | 남현희 | 7:40 | 22:50 | 6:10 | 출.회2/프르리 | 21 |
| 12/18 | 남현희 | 7:40 | 19:30 | 2:50 | 출.회2 초나벅 | 21 |
| 12/19 | 남현희 | 7:40 | 21:40 | 4:50 | 출.회2/프르리 | 21 |
| 12/20 | 남현희 | 7:40 | 21:50 | 5:10 | 출.회2/1st 가 | 21 |
| 12/21 | 남현희 | 7:40 | 20:30 | 3:50 | 출.회2 초나벅 | 21 |
| 12/22 | 남현희 | 7:40 | 21:50 | 4:50 | 출.회2/헤브룸라이 | 21 |
| | | Total | 75시간 | × 14.96 ≒ $969 (국문학언어) | | |
| | | | | | 122 | |

ROKPM0094

## 시간외근무 확인대장

남형희

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 11/1 | 남형희 | 7:30 | 20:00 | 3:30 | 충.회근 준비복 | 형 |
| 11/2 | 남형희 | 7:30 | 20:20 | 3:50 | 충.회근 준비복 | 형 |
| 11/3 | 남형희 | 7:50 | 23:20 | 6:50 | 광나, 50가, 녹두스 | 형 |
| 11/6 | 남형희 | 7:20 | 22:00 | 5:20 | 광나, platt st | 형 |
| 11/7 | 남형희 | 7:40 | 24:30 | 8:10 | 광나, 포트리 | 형 |
| 11/8 | 남형희 | 10:00 | 22:00 | 3:00 | 광나, 69가 | 형 |
| 11/9 | 남형희 | 7:40 | 22:00 | 5:20 | 광나, 앤가수인 | 형 |
| 11/10 | 남형희 | 7:00 | 22:00 | 6:00 | 광나, 포트리 | 형 |
| 11/13 | 남형희 | 7:20 | 24:00 | 7:40 | 광나, waverly pl | 형 |
| 11/14 | 남형희 | 7:50 | 22:50 | 6:00 | 광나, 포트리 | 형 |
| 11/15 | 남형희 | 7:50 | 22:00 | 6:30 | 광나, 32가 | 형 |
| 11/16 | 남형희 | 7:40 | 22:50 | 6:10 | 광나, 뉴욕각 | 형 |
| 11/17 | 남형희 | 7:40 | 22:40 | 6:20 | 광나, 2st | 형 |
| 11/20 | 남형희 | 7:20 | 23:00 | 6:40 | 광나, woolworth Rd | 형 |
| 11/21 | 남형희 | 7:50 | 22:10 | 5:40 | 광나, 32가 | 형 |
| 11/22 | 남형희 | 7:40 | 20:30 | 3:50 | 광나, 63가 | 형 |
| 11/25 | 남형희 | 7:40 | 21:20 | 4:40 | 광나, 32가 | 형 |
| 11/27 | 남형희 | 7:40 | 22:00 | 5:20 | 광나, 기가 | 형 |
| 11/28 | 남형희 | 7:40 | 21:00 | 4:20 | 광나, 포트리 | 형 |
| 11/29 | 남형희 | 7:40 | 22:30 | 5:50 | 광나, 2타가 | 형 |
| 11/30 | 남형희 | 7:50 | 20:50 | 4:00 | 광나, JFK 42가 | 형 |
| | | | Total | 114 hour | ×14.76($)=1676($) | |
| | | | | | | 원자카란분 |
| | | | | | 수령확인 | |

남형희

ROKPM0095

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/23 | 남정희 | 6:50 | 21:30 | 5:40 | 출퇴근/야근 (32가) | 정 |
| 10/24 | 남정희 | 7:20 | 20:40 | 4:20 | 출퇴근/야근 (대북분) | 정 |
| 10/25 | 남정희 | 7:30 | 21:50 | 5:20 | 출퇴근/야근 (정로리) | 정 |
| 10/26 | 남정희 | 7:30 | 22:10 | 5:40 | 출퇴근/야근 (36사) | 정 |
| 10/27 | 남정희 | 7:30 | 23:10 | 6:40 | 출퇴근/야근 (제1공병여) | 정 |
| 10/30 | 남정희 | 7:20 | 23:00 | 6:40 | 출퇴근/야근 (49사단) | 정 |
| 10/31 | 남정희 | 7:30 | 23:40 | 7:10 | 출퇴근/야근(2.5,6.4단) | 정 |
| | | | Total | 41시간 30분 | | |
| | | | | | | |
| | | | | | 41시간 × $14.76 ≒ $605 | |
| | | | | | (행정수1) | |
| | | | | | | |

<u>시간외근무 확인대장</u>

2017. 9月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 9/1 | 낫껏회 | 7:30 | 21:30 | 5:00 | 49가 총격훈련싶 | 리 |
| 9/4(월) | 낫껏회 | 8:00 | 16:06 | 8:00 | 6가 밤치 | 리 |
| 9/5 | 낫껏회 | 7:00 | 23:00 | 7:00 | 정상각 총격훈련싶 | 리 |
| 9/6 | 낫껏회 | 7:00 | 22:30 | 6:30 | 49가 조리 훈력 | 리 |
| 9/7 | 낫껏회 | 7:00 | 19:30 | 3:30 | 외각속ㅅ 총격훈련싶 | 리 |
| 9/11 | 낫껏회 | 7:00 | 19:30 | 3:30 | 5가 총격 초과싶 | 리 |
| | | | | | └(VRP형식준비 관련 작량근무싶 ) | |
| | | | | | | |
| | | | | | | |
| | | | | | 14.76 × 33시간 = $487 | |
| | | | | | 수령학인 박상자 | |

Total : 33시간 30분

## 시간외근무 확인대장

2017

| ·날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사  유 | 확인관<br>서  명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/01 | 남현희 | 7:10 | 24:30 | 7:20 | 출·퇴근/야근(존드리) | 8 |
| 08/02 | 남현희 | 7:20 | 19:30 | 2:10 | 출·퇴근 조라북 | 2 |
| 08/03 | 남현희 | 7:20 | 19:30 | 2:10 | " | ⊥ |
| 08/04 | 남현희 | 7:20 | 22:30 | 6:10 | 출·퇴근/야근(존드리) | ⊥ |
| 08/07 | 남현희 | 7:10 | 19:30 | 2:20 | 출·퇴근 조라북 | ⊥ |
| 08/08 | 남현희 | 7:10 | 19:30 | 2:20 | " | ⊥ |
| 08/09 | 남현희 | 7:20 | 19:30 | 2:20 | " | ⊥ |
| 08/10 | 남현희 | 8:00 | 24:00 | 7:00 | 출·퇴근 | ⊥ |
| 08/11 | 남현희 | 7:20 | 19:30 | 2:10 | 출·퇴근 조라북 | ⊥ |
| 08/14 | 남현희 | 7:10 | 19:30 | 2:20 | 출·퇴근 조라북 | ⊥ |
| 08/16 | 남현희 | 7:10 | 23:30 | 7:20 | 출·퇴근/야근(영거스) | ⊥ |
| 08/17 | 남현희 | 6:30 | 19:30 | 4:00 | 출·퇴근 조라북 | ⊥ |
| 08/18 | 남현희 | 7:20 | 19:20 | 3:00 | " | ⊥ |
| 08/21 | 남현희 | 6:50 | 18:00 | 2:10 | " | ⊥ |
| 08/24 | 남현희 | 7:00 | 23:30 | 7:30 | 출·퇴근/야근(JFK) | ⊥ |
| 08/25 | 남현희 | 7:30 | 24:00 | 7:30 | 출·퇴근/야근(웨블) | ⊥ |
| 08/28 | 남현희 | 7:10 | 22:30 | 6:20 | 출·퇴근/야근(존드리) | ⊥ |
| 08/29 | 남현희 | 7:20 | 19:30 | 2:10 | 출·퇴근 조라북 | ⊥ |
| 08/30 | 남현희 | 7:20 | 19:00 | 1:40 | " | ⊥ |
| 08/31 | 남현희 | 21:00 | 24:30 | 3:30 | JFK | ⊥ |
| | | | Total | | 84 hour | |
| | | | | 14.96 × 84시간 = $789 (한글액) | | |
| | | | | 영근히연 남현희 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## 시간외근무 확인대장

2017. 7月

| ·날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시각 | | |
| 7/05 | 난희옥 | 7:50 | 19:10 | 2:20 | 출·퇴근 주차복 | |
| 7/05 | 난현옥 | 7:50 | 19:10 | 2:20 | " | |
| 7/06 | 난현옥 | 7:50 | 21:00 | 4:10 | 출·퇴근/야근(조리) | 그 |
| 7/09 | 난현옥 | 7:50 | 19:10 | 2:20 | 출·퇴근 주차복 | |
| 7/10 | 난현옥 | 7:50 | 19:00 | 2:10 | 출·퇴근/야근(조리) | |
| 7/11 | 난현옥 | 7:50 | 19:00 | 2:10 | 출·퇴근 주차복 | 그 |
| 7/12 | 난현옥 | 7:50 | 21:00 | 4:10 | 출·퇴근/야근(조리) | 그 |
| 7/13 | 난현옥 | 7:50 | 19:00 | 2:10 | 출·퇴근 주차복 | |
| 7/14 | 난현옥 | 7:50 | 19:10 | 2:20 | " | 그 |
| 7/17 | 난현옥 | 7:50 | 19:00 | 2:10 | " | 그 |
| 7/18 | 난현옥 | 8:00 | 21:30 | 4:30 | 출·퇴근/야근(조리) | 그 |
| 7/19 | 난현옥 | 8:00 | 19:00 | 2:00 | 출·퇴근 주차복 | 그 |
| 7/20 | 난현옥 | 7:30 | 21:00 | 4:30 | 출·퇴근/야근(조리) | 소 |
| 7/21 | 난현옥 | 7:30 | 19:00 | 2:30 | 출·퇴근 주차복 | 소 |
| 7/24 | 난현옥 | 7:30 | 19:00 | 2:30 | " | 소 |
| 7/25 | 난현옥 | 7:50 | 22:30 | 5:40 | 출·퇴근/야근(조리) | 그 |
| 7/26 | 난현옥 | 7:30 | 19:30 | 3:00 | " | P |
| 7/27 | 난현옥 | 7:30 | 21:30 | 5:00 | " | 소 |
| 7/28 | 난현옥 | 7:30 | 19:30 | 3:00 | 출·퇴근 주차복 | 소 |
| 7/31 | 난현옥 | 7:50 | 19:00 | 2:10 | " | 그 |
| | | | Total 63 hour | | | |
| | | | | | | |
| | | | 16.76 × 63시간 = 767불 (환영) | | | |
| | | | 수경확인 | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**A-741**

## 시간외근무 확인대장

2017

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 6/1 | | 7:30 | 19:20 | 2:50 | 증가 / 흥.회수 초과상황 | |
| 6/2 | | 7:30 | 19:10 | 2:40 | 4975 /7가.흥.회수 | |
| 6/6 | | 7:30 | 19:20 | 2:50 | 3가 / 흥.회수 | |
| 6/6 | | 7:30 | 19:30 | 3:00 | 정도리/흥.회수 | |
| 6/7 | | 7:30 | 19:20 | 2:50 | 흥.회수 초과상황 | |
| 6/9 | | 7:30 | 19:30 | 3:00 | 46가 / 흥.회수 | |
| 6/9 | | 7:30 | 19:30 | 3:00 | 흥.회수 초과상황 | |
| 6/12 | | 7:30 | 19:20 | 2:50 | 흥.회수군사복 | |
| 6/13 | | 7:40 | 19:10 | 2:40 | 정도리 / 흥.회군상황 | |
| 6/14 | | 7:30 | 19:20 | 2:50 | 흥.회수 군사복 | |
| 6/15 | | 7:30 | 19:30 | 2:40 | 흥.회수 초과상황 | |
| 6/16 | | 7:30 | 19:10 | 2:40 | 흥.회수 군사복 | |
| 6/19 | | 7:30 | 19:20 | 2:40 | 흥.회수 초과상황 | |
| 6/20 | | 7:30 | 19:20 | 2:50 | 정도리 /흥.회수초과상황 | |
| 6/21 | | 7:30 | 19:20 | 2:50 | 정도리 / 흥.회수 군사복 | |
| 6/22 | | 7:30 | 19:20 | 2:50 | 흥.회수 초과상황 | |
| 6/23 | | 7:30 | 19:20 | 2:50 | 흥.회수 군사복 | |
| 6/27 | | 7:30 | 19:20 | 2:50 | 정도리 / 흥.회수초과상황 | |
| 6/29 | | 7:30 | 19:20 | 2:50 | 흥.회수 초과상황 | |
| 6/29 | | 7:30 | 19:30 | 3:00 | 광박 / 흥.회수 군사복 | |
| 6/30 | | 7:30 | 19:20 | 2:50 | 흥.회수 군사복 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | 14.26 × 52 = 767본 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total 59 시간

## 시간외근무 확인대장

2017  5월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 05/01 | 남혜희 | 7:00 | 19:40 | 3:40 | 34가 / 출.퇴근 | ✓ |
| 05/02 | 남혜희 | 7:10 | 22:30 | 6:20 | 출근 / 출.퇴근 | ✓ |
| 05/03 | 남혜희 | 7:10 | 20:00 | 3:50 | 출.퇴근 추가분 | ✓ |
| 05/04 | 남혜희 | 6:50 | 20:00 | 4:10 | 첫근43 / 출.퇴근 | ✓ |
| 05/05 | 남혜희 | 9:00 | 22:30 | 4:30 | 44가, 출근리/출.퇴근 | ✓ |
| 05/08 | 남혜희 | 7:00 | 19:30 | 3:30 | 출.퇴근 추가분 | ✓ |
| 05/09 | 남혜희 | 9:00 | 23:30 | 5:30 | 광장,출근리/출.퇴근 | ✓ |
| 05/10 | 남혜희 | 7:10 | 22:00 | 5:50 | 출근리 / 출.퇴근 | ✓ |
| 05/11 | 남혜희 | 7:10 | 20:00 | 3:50 | 58가 / 출.퇴근 | ✓ |
| 05/12 | 남혜희 | 7:20 | 19:30 | 3:10 | 출.퇴근 추가분 | ✓ |
| 05/15 | 남혜희 | 7:00 | 22:30 | 6:20 | 출근리 / 출.퇴근 | ✓ |
| 05/16 | 남혜희 | 7:10 | 19:30 | 3:20 | 출.퇴근 추가분 | ✓ |
| 05/17 | 남혜희 | 7:10 | 0:00 | 9:50 | 49가 / 출.퇴근 | ✓ |
| 05/18 | 남혜희 | 7:00 | 20:00 | 4:00 | 출근리 / 출.퇴근 | ✓ |
| 05/19 | 남혜희 | 7:20 | 19:30 | 3:10 | 리저리 / 출.퇴근 | ✓ |
| 05/22 | 남혜희 | 7:00 | 19:30 | 2:30 | 출.퇴근 추가분 | ✓ |
| 05/23 | 남혜희 | 7:10 | 22:30 | 6:20 | 출근리 / 출.퇴근 | ✓ |
| 05/24 | 남혜희 | 7:10 | 19:00 | 2:50 | 출.퇴근 추가분 | ✓ |
| 05/25 | 남혜희 | 9:20 | 18:30 | 1:10 | 출.퇴근 추가분 | ✓ |
| 05/26 | 남혜희 | 8:20 | 19:30 | 2:10 | 출근행사 출.퇴근 | ✓ |
| 05/30 | 남혜희 | 7:00 | 22:00 | 6:00 | 출근리/출.퇴근 | ✓ |
| 05/31 | 남혜희 | 7:10 | 19:30 | 3:20 | 32가 / 출.퇴근 | ✓ |
| | | | | | | |
| | | | | | | |
| | { (1,800 + 1,800/12) = 209 × 1.5 × 52 = 167불 | | | | | |
| | (시간당 기준액 = 14.76) | | | (시간) | | |

수정: 남혜희
확인

## 시간외근무 확인대장(例)

남 현회

2017

| ·날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시각 | | |
| 04/03 | 남현회 | 6:50 | 22:40 | 6:50 | 출·퇴근/야근 (꼬드리) | 2 |
| 04/04 | 남현회 | 7:30 | 19:30 | 3:00 | 출·퇴근 초과분 | 2 |
| 04/05 | 남현회 | 7:20 | 19:30 | 3:10 | " | ✓ |
| 04/06 | 남현회 | 7:20 | 19:40 | 3:20 | " | ✓ |
| 04/07 | 남현회 | 7:20 | 19:30 | 3:10 | " | ✓ |
| 04/10 | 남현회 | 6:50 | 19:40 | 3:40 | " | ✓ |
| 04/11 | 남현회 | 9:00 | 01:00 | 7:00 | 출·퇴근/야근 (꼬드리) | ✓ |
| 04/12 | 남현회 | 7:20 | 19:00 | 2:40 | 출·퇴근 초과분 | 2 |
| 04/13 | 남현회 | 6:50 | 20:00 | 4:10 | " | 2 |
| 04/17 | 남현회 | 6:50 | 20:00 | 4:10 | " | 2 |
| 04/18 | 남현회 | 7:10 | 22:30 | 6:20 | 출·퇴근/야근 (꼬드리) | 2 |
| 04/19 | 남현회 | 7:20 | 20:40 | 4:10 | 출·퇴근 초과분 | ✓ |
| 04/20 | 남현회 | 7:20 | 19:30 | 3:10 | " | ✓ |
| 04/21 | 남현회 | 7:20 | 19:30 | 3:10 | " | ✓ |
| 04/24 | 남현회 | 7:00 | 19:30 | 3:30 | " | ✓ |
| 04/25 | 남현회 | 7:10 | 19:30 | 3:20 | " | ✓ |
| 04/26 | 남현회 | 7:20 | 20:00 | 3:40 | " | ✓ |
| 04/27 | 남현회 | 7:20 | 00:30 | 8:10 | 출·퇴근/야근 (꼬과) | 2 |
| 04/28 | 남현회 | 8:00 | 21:30 | 4:30 | 출·퇴근/야근 (5꼬과) | ✓ |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total 81 시간        규정 $12×81 ≒ 570 (가온로)

6.15 수정

ROKPM0102

## 시간외근무 확인대장

2017                                                                          감 헌리

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|--------------|--------------|----------|----------------|---------------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 03/02 | 남헌시 | 7:10 | 23:00 | 6:50 | 3가 / 홈.회그 | ✓ |
| 03/03 | 남현시 | 7:30 | 19:00 | 2:30 | 53가 / 홈.회그 | ✓ |
| 03/06 | 남현시 | 6:50 | 19:00 | 3:10 | 88가 / 홈.회그 | ✓ |
| 03/07 | 나헌시 | 7:10 | 23:00 | 6:50 | 50가 / 행정 / 홈.회그 | ✓ |
| 03/08 | 남현시 | 7:10 | 18:00 | 1:50 | 홈.회그 구 바보 | ✓ |
| 03/09 | 남현시 | 9:00 | 20:30 | 2:50 | 3가 / 홈.회그 | ✓ |
| 03/10 | 나헌시 | 7:20 | 24:00 | 7:40 | 행정가 / 홈.회그 | ✓ |
| 03/13 | 남현시 | 6:50 | 19:30 | 3:40 | 4가 / 홈.회그 | ✓ |
| 03/15 | 남현시 | 7:10 | 22:30 | 6:20 | 건씨비 / 정리/홈.회그 | ✓ |
| 03/16 | 남현시 | 7:10 | 20:00 | 3:50 | 42가 / 홈.회그 | ✓ |
| 03/17 | 나헌시 | 7:10 | 19:30 | 3:20 | 점 티리 / 홈.회그 | ✓ |
| 03/20 | 남현시 | 7:00 | 19:30 | 3:50 | 49가 / 홈.회그 | ✓ |
| 03/21 | 남현시 | 7:10 | 22:30 | 6:20 | 49가 / 홈.회그 | ✓ |
| 03/22 | 남현시 | 7:10 | 19:30 | 3:20 | 앙호스 / 홈.회그 | ✓ |
| 03/23 | 남현시 | 7:10 | 19:00 | 2:50 | 홈.회그 구 바보 | ✓ |
| | | | | | | |
| 03/27 | 남현시 | 6:50 | 19:40 | 3:40 | 51가 / 홈.회그 | ✓ |
| 03/28 | 남현시 | 7:10 | 0:00 | 8:50 | 3가 / 정리 / 홈.회그 | ✓ |
| 03/29 | 남현시 | 7:50 | 19:10 | 2:00 | 52가 / 홈.회그 | ✓ |
| 03/30 | 남현시 | 9:00 | 10:30 | 1:30 | 앙호수 / 홈.회그 | ✓ |
| 03/31 | 남현시 | 7:30 | 19:30 | 3:00 | 정리 / 홈.회그 | ✓ |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total 84.00 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total : 84.00 Hour = 510분
5.19 수정

**A-745**

## 시간외근무 확인대장

2017. 2월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 2/2 | 김희식 | 7:10 | 18:00 | 1:50 | 출·퇴근 초과분 | |
| 2/3 | 남병식 | 8:20 | 19:00 | 2:40 | 출·퇴근 초과분 | |
| 2/6 | 남성길 | 6:50 | 19:00 | 3:10 | 출근시/6과 출퇴근 | |
| 2/7 | 남성식 | 7:10 | 19:30 | 3:20 | 출·퇴근 초과분 | |
| 2/8 | 남성수 | 7:10 | 19:30 | 3:20 | 출·퇴근 /6과 | |
| 2/10 | 남성식 | 7:10 | 22:40 | 6:30 | 출·퇴근 / 터너플라이 | |
| 2/13 | 남성식 | 6:50 | 19:00 | 3:10 | 출·퇴근 / 허브공사 | |
| 2/14 | 남성식 | 7:10 | 22:30 | 6:20 | 출·퇴근 / 펌프/9도리 | |
| 2/15 | 남성식 | 7:10 | 19:00 | 7:50 | 출·퇴근 / 출역사 | |
| 2/16 | 남성식 | 7:10 | 18:40 | 2:20 | 출·퇴근 /6가 /3도리 | |
| 2/17 | 남성식 | 7:20 | 18:00 | 1:40 | 출·퇴근 / 펌프/3도리 | |
| 2/21 | 남성식 | 6:50 | 19:00 | 3:10 | 출·퇴근 / 6가 | |
| 2/22 | 남성식 | 7:10 | 22:00 | 6:50 | 출·퇴근 / 리리크드 | |
| 2/23 | 남성식 | 7:20 | 19:00 | 7:40 | 출·퇴근 / 4가 | |
| 2/24 | 남성식 | 7:30 | 19:30 | 3:00 | 출·퇴근 / 8가 | |
| 2/27 | 남성식 | 6:50 | 23:00 | 7:10 | 출·퇴근 / 3도리 | |
| 2/28 | 남성식 | 7:10 | 19:30 | 3:20 | 출·퇴근 초과분 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | Total | 63:00 시간 | | |
| | | | | | | |
| | | | | | | |

(근월 570불)
2. 13 수정

## 시간외근무 확인대장 (연인원)

2017 1월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/3 | 강병희 | 7:00 | 19:30 | 3:30 | 총·회근 / 포러상 | ✓ |
| 1/4 | 〃 | 7:00 | 19:30 | 3:30 | 총·회근 초라봄 | ✓ |
| 1/5 | 〃 | 7:20 | 19:50 | 3:30 | 총·회근 / 3고가 | ✓ |
| 1/6 | 〃 | 7:20 | 19:30 | 3:10 | 총·회근 초라봄 | ✓ |
| 1/9 | 〃 | 7:00 | 19:30 | 3:30 | 총·라근 초라봄 | ✓ |
| 1/10 | 〃 | 7:10 | 23:00 | 6:50 | 총·회근 / 절각 | ✓ |
| 1/11 | 〃 | 7:20 | 18:40 | 2:20 | 총·회근 초라봄 | ✓ |
| 1/12 | 〃 | 7:20 | 23:00 | 6:40 | 총·회근 / 90t | ✓ |
| 1/13 | 〃 | 7:20 | 19:30 | 3:10 | 총·회근 /6고가 | ✓ |
| 1/16 | 〃 | 7:30 | 19:20 | 2:50 | 총·회근 /2가, 50가 | ✓ |
| 1/17 | 〃 | 7:00 | 24:20 | 8:20 | 총·회근/4가, 절각 | ✓ |
| 1/18 | 〃 | 7:20 | 19:50 | 3:10 | 총·회근/4고가 | ✓ |
| 1/19 | 〃 | 7:20 | 22:40 | 6:20 | 총·회근 / 4고가 | ✓ |
| 1/20 | 〃 | 9:00 | 19:30 | 1:30 | 총·회근 / 절각 | ✓ |
| 1/23 | 〃 | 6:50 | 22:30 | 6:40 | 총·회근 /46가, 절각 | ✓ |
| 1/24 | 〃 | 7:10 | 19:30 | 3:20 | 총·회근 초라봄 | ✓ |
| 1/25 | 〃 | 8:00 | 20:00 | 3:00 | 총·회근 초라봄, 6고가 | ✓ |

Total: 71시간 ≒ $570 (차량련도액)

3. 17. 수정.

ROKPM0105

**A-747**

## 시간외근무 확인대장 (원본)

2016

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|-----------|-----------|-----------|-------------|------------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 12/1 | 강 현희 | 7:50 | 20:00 | 3:10 | 출.퇴근 / JTK / 3st | ✓ |
| 12/2 | 〃 | 6:30 | 22:40 | 7:10 | 출.퇴근 / 44st / 50st | ✓ |
| 12/5 | 〃 | 6:40 | 24:00 | 8:20 | 출.퇴근 / 44st / 48st | ✓ |
| 12/6 | 〃 | 7:00 | 19:40 | 3:40 | 출.퇴근 주차복 | ✓ |
| 12/7 | 〃 | 7:00 | 22:30 | 6:30 | 출.퇴근 / pon station | ✓ |
| 12/8 | 〃 | 7:10 | 19:30 | 3:20 | 출.퇴근 주차복 | ✓ |
| 12/9 | 〃 | 7:00 | 24:30 | 8:30 | 출.퇴근 / 꽃드리 | ✓ |
| | | | | | | |
| 12/12 | 〃 | 6:40 | 7:30 | 3:50 | 출.퇴근 주차복 | ✓ |
| 12/13 | 〃 | 7:00 | 23:20 | 7:20 | 출.퇴근 / 32st/48st | ✓ |
| 12/15 | 〃 | 7:10 | 20:30 | 4:20 | 출.퇴근 / 대내무역 | ✓ |
| 12/16 | 〃 | 7:20 | 20:00 | 3:40 | 출.퇴근 주차복 | ✓ |
| 12/19 | 〃 | 6:50 | 19:50 | 4:00 | 출.퇴근 주차복 | ✓ |
| 12/20 | 〃 | 7:10 | 24:40 | 8:30 | 출.퇴근 / 31st 예산관 | ✓ |
| 12/21 | 〃 | 8:00 | 19:00 | 2:00 | 출.퇴근 주차복 | ✓ |
| 12/22 | 〃 | 7:30 | 20:30 | 4:00 | 출.퇴근 주차복 | ✓ |
| 12/23 | 〃 | 7:30 | 19:00 | 2:30 | 출.퇴근 / 꽃드리 | ✓ |
| 12/27 | 〃 | 7:00 | 22:30 | 4:30 | 출.퇴근 / 꽃드리 | ✓ |
| 12/28 | 〃 | 7:30 | 19:30 | 3:00 | 출.퇴근 주차복 | ✓ |
| 12/30 | 〃 | 7:50 | .-- | -- | 출.퇴근 | ✓ |

Total 88시간 ≒ $570 (자환드역)

2/21 수경

시간외근무 확인대장 (운전원)

2016

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 11/01 | 남현희 | 7:00 | 18:30 | 2:30 | 출.퇴근 초과근무 | |
| 11/02 | " | 7:00 | 22:30 | 6:30 | 출.퇴근 / 야근 (정리) | |
| 11/03 | " | 7:10 | 22:50 | 6.40 | 출.퇴근 / 야근 (예약부) | |
| 11/04 | " | 7:20 | 18:00 | 1:40 | 출.퇴근 초과부. | |
| | | | | | | |
| 11/07 | " | 6:40 | 20:00 | 4:20 | 출.퇴근 초과부 | |
| 11/08 | " | 7:00 | 20:00 | 4:00 | 출.퇴근 초과부 | |
| 11/09 | " | 7:10 | 22:30 | 6.20 | 출.퇴근 / 야근 (정리) | |
| 11/10 | " | 7:20 | 18:30 | 2:10 | 출.퇴근 초과부 | |
| 11/11 | " | 6:45 | 22:00 | 6:15 | 출.퇴근 / 야근 (정리) | |
| 11/14 | " | 6:40 | 21:45 | 6:05 | 출.퇴근 / 야근 (예약부) | |
| 11/15 | " | 7:00 | 20:00 | 4:00 | 출.퇴근 초과부 | |
| 11/16 | " | 7:50 | 21:30 | 4:40 | 출.퇴근 / 야근 (정리) | |
| 11/17 | " | 7:00 | 22:30 | 6:30 | 출.퇴근 / 야근 (정리) | |
| 11/18 | " | 7:20 | 24:00 | 7:40 | 출.퇴근 / 야근 (4.27가) | |
| 11/21 | " | 6:50 | 24:00 | 8:10 | 출.퇴근 / 야근 (49가) | |
| 11/22 | " | 7:00 | 21:30 | 3:30 | 출.퇴근 초과부 | |
| 11/23 | " | 7:00 | 23:30 | 7:30 | 출.퇴근 / 야근 (정리) | |
| 11/28 | " | 6:40 | 22:40 | 7:00 | 출.퇴근 / 야근 (정리) | |
| 11/29 | " | 7:00 | 19:30 | 3:30 | 출.퇴근 초과부 | |
| 11/30 | " | 7:00 | 21:30 | 5:30 | 출.퇴근 / 야근 (JFK) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total = 104시간 ≒ 570불 (지불완료액)

1/17 수령.

ROKPM0107

**A-749**

## 시간외근무 확인대장

2016

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/4 | 강○○ | 7:30 | 22:30 | 6:20 | 출·퇴근/야근 (꼬트리) | 2 |
| 10/5 | 남○○ | 7:30 | 20:50 | 4:00 | 출·퇴근 초과분 | ~ |
| 10/6 | 남○○ | 7:50 | 20:20 | 3:50 | 출·퇴근 초과분 | 2 |
| 10/7 | 남○○ | 7:20 | 0:00 | 7:40 | 출·퇴근/야근 (52가) | 2 |
| 10/9 | 남○○ | 5:00 | 9:30 | 4:30 | 휴일근무 (JFK) | 2 |
| 10/11 | 남○○ | 7:10 | 22:20 | 6:10 | 출·퇴근/야근(6가) | 2 |
| 10/12 | 남○○ | 7:00 | 19:30 | 3:30 | 출·퇴근 초과분 | 2 |
| 10/13 | 남○○ | 7:10 | 23:30 | 7:20 | 출·퇴근/야근(꼬트리) | 2 |
| 10/14 | 남○○ | 7:20 | 1:30 | 9:10 | 출·퇴근/야근(꼬트리) | 2 |
| 10/16 | 남○○ | 10:30 | 15:00 | 4:30 | 휴일근무 (JFK) | 2 |
| 10/17 | 남○○ | 6:40 | 19:30 | 3:50 | 출·퇴근 초과분 | 2 |
| 10/18 | 남○○ | 7:00 | 19:30 | 3:30 | 출·퇴근 초과분 | 2 |
| 10/19 | 남○○ | 7:10 | 19:30 | 3:30 | 출·퇴근 초과분 | 2 |
| 10/20 | 남○○ | 7:10 | 22:30 | 8:20 | 출·퇴근/야근(7가) | 2 |
| 10/21 | 남○○ | 7:20 | 19:30 | 3:10 | 출·퇴근 초과분 | 2 |
| 10/24 | 남○○ | 7:20 | 19:30 | 3:10 | 출·퇴근 초과분 | 2 |
| 10/25 | 남○○ | 7:00 | 19:30 | 3:30 | 출·퇴근 초과분 | 2 |
| 10/26 | 남○○ | 7:10 | 19:30 | 3:20 | 출·퇴근 초과분 | 2 |
| 10/27 | 남○○ | 7:10 | 19:30 | 3:20 | 출·퇴근 초과분 | 2 |
| 10/28 | 남○○ | 7:50 | 20:00 | 3:10 | 출·퇴근 초과분 | 2 |
| 10/31 | 남○○ | 6:40 | 20:00 | 4:20 | 출·퇴근 초과분 | 2 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total 시간: 96 = #570 (지원한도액)

평일: 87시간    다음수연경

휴일: 9시간

ROKPM0108

<u>시간외근무 확인대장</u>

2016. 9

| ·날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 9/1 | 남 현희 | 7:20 | 24:00 | 7:40 | 출·퇴근 / 야근 (관리) | |
| 9/2 | " | 7:30 | 23:00 | 6:30 | 출·퇴근 / 야근 (관리) | |
| 9/6 | " | 6:50 | 22:00 | 6:10 | 출·퇴근 / 야근 (관리) | |
| 9/7 | " | 7:10 | 23:00 | 6:50 | 출·퇴근 / 야근 (관리) | |
| 9/8 | " | 6:50 | 02:00 (AM) | 10:10 | 출·퇴근 / 야근 (대북) | |
| 9/9 | " | 7:30 | 23:00 | 6:30 | 출·퇴근 / 야근 (회의) | |
| 9/13 | " | 7:00 | 22:30 | 6:30 | 출·퇴근 / 야근 (관리) | |
| 9/14 | " | 6:50 | 20:00 | 4:10 | 출·퇴근 초과근무 | |
| 9/15 | " | 7:30 | 19:30 | 3:00 | 출·퇴근 초과근무 | |
| 9/16 | " | 7:20 | 19:00 | 2:40 | 출·퇴근 초과근무 | |
| 9/19 | " | 6:40 | 19:30 | 3:50 | 출·퇴근 초과근무 | |
| 9/20 | " | 7:00 | 23:00 | 7:00 | 출·퇴근 / 야근 (관리) | |
| 9/21 | " | 7:00 | 22:00 | 6:00 | 출·퇴근 / 야근 (대북) | |
| 9/22 | " | 7:30 | 19:30 | 3:00 | 출·퇴근 초과근무 | |
| 9/23 | " | 7:00 | 20:00 | 4:00 | 출·퇴근 초과근무 | |
| 9/26 | " | 6:40 | 22:00 | 6:20 | 출·퇴근 / 야근 (행사) | |
| 9/27 | " | 9:00 | 18:30 | 00:30 | 출·퇴근 초과근무 | |
| 9/28 | " | 7:00 | 22:00 | 6:00 | 출·퇴근 / 야근 (대북) | |
| 9/29 | " | 7:30 | 23:00 | 6:30 | 출·퇴근 / 야근 (대북) | |
| | | | Total | 103:20 ≒ 6,200분 (355일) | | |
| | | | | | | |

## 시간외근무 확인대장 (운전원)

2016, 8월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/01 | 강 현희 | 6:40 | 18:30 | 2:50 | 출·퇴근시간 초과분 | |
| 08/02 | // | 7:00 | 22:30 | 6:30 | 출·퇴근 야근/대통부만찬 | |
| 08/03 | // | 7:00 | 20:00 | 4:00 | 출·퇴근 야근/꼭트리 | |
| 08/04 | // | 7:10 | 22:30 | 6:20 | 출·퇴근 야근/미서해점 | |
| 08/05 | // | 7:20 | 19:30 | 3:10 | 출·퇴근 시간 초과분 | |
| 08/08 | // | 8:40 | 19:00 | 3:20 | // | |
| 08/09 | // | 7:20 | 23:00 | 6:40 | 출·퇴근 야근/리츠 | |
| 08/10 | // | 7:20 | 22:30 | 6:10 | 출·퇴근 야근/꼭트리 | |
| 08/11 | // | 7:20 | 22:30 | 6:10 | 출·퇴근 야근/뉴가 | |
| 08/12 | // | 7:20 | 19:20 | 3:00 | 출·퇴근 시간 초과분 | |
| 08/16 | // | 7:00 | 14:30 | 3:30 | // | |
| 08/17 | // | 6:40 | 20:00 | 4:20 | | |
| 08/18 | // | 7:20 | 23:00 | 6:40 | 출·퇴근 야근/꼭트리 | |
| 08/19 | // | 7:20 | 23:00 | 6:40 | 출·퇴근 야근/리츠 | |
| 08/22 | // | 6:40 | 7:00 | 3:20 | 출·퇴근 시간 초과분 | |
| 08/23 | // | 7:00 | 1:00 | 9:00 | 출·퇴근 야근/리츠 | |
| 08/24 | // | 8:00 | 23:00 | 6:00 | 출·퇴근 야근/꼭트리 | |
| 08/25 | // | 7:30 | 23:00 | 6:30 | // | |
| 08/26 | // | 7:30 | 19:20 | 2:50 | 출·퇴근 시간 초과분 | |
| 08/29 | // | 6:40 | 19:30 | 3:50 | // | |
| 08/30 | // | 7:00 | 23:00 | 7:00 | 출·퇴근 야근/꼭트리 | |
| 08/31 | // | 7:10 | 19:30 | 3:20 | 출·퇴근 시간 초과분 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total 111시간 10분 X 지급기준액 12분/시간

≒ 570분 (지급한도액)

10/19 ₩570

ROKPM0110

**A-752**

## 시간외근무 확인대장 (운전원)

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/01 | 김정희 | 6:50 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/05 | " | 6:50 | 22:30 | 6:40 | 출·퇴근 / 야근 (185분) | |
| 07/12 | " | 6:50 | 23:00 | 7:10 | 출·퇴근 / 야근 (70분) | |
| 07/13 | " | 6:50 | 23:40 | 7:50 | 출·퇴근 / 야근 (70분) | |
| 07/14 | " | 7:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/15 | " | 7:10 | 20:30 | 4:20 | 출·퇴근 / 야근 (15분) | |
| 07/18 | " | 6:50 | 19:20 | 3:30 | 출·퇴근 시간초과분 | |
| 07/19 | " | 07:00 | 20:30 | 4:30 | 출·퇴근 / 야근 (145분) | |
| 07/20 | " | 08:00 | 23:30 | 6:30 | 출·퇴근 / 야근 (48분) | |
| 07/21 | " | 09:00 | 23:00 | 5:00 | 출·퇴근 / 야근 (425분) | |
| 07/22 | " | 07:00 | 19:00 | 3:00 | 출·퇴근 시간초과분 | |
| 07/22 | " | 06:40 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/25 | " | 06:40 | 19:30 | 3:50 | 출·퇴근 시간초과분 | |
| 07/26 | " | 07:00 | 23:40 | 7:30 | 출·퇴근 / 초과시간 | |
| 07/27 | " | 07:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/28 | " | 06:50 | 07:10 | 3:20 | 출·퇴근 시간초과분 | |
| 07/29 | " | 07:20 | 20:00 | 3:40 | 출·퇴근 시간초과분 | |
| | | ↑ 근무지 업무시각 시간 기준으로 기록 | | | | |
| | | (근무지까지 이동시간 왕편 20분 공제함) | | | | |

Total : 82시간 (재미지준역 12분/시간)
= 근무한도의 5일분    서명 9/9

ROKPM0111

**A-753**

시간외근무 확인대장 (운전원)

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|--------|--------|--------|------------|-----------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/01 | 함병희 | 6:50 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/05 | " | 6:50 | 22:30 | 6:40 | 출·퇴근/야근(1초간) | |
| 07/12 | " | 6:50 | 23:00 | 7:10 | 출·퇴근/야근(7H.L) | |
| 07/13 | " | 6:50 | 23:40 | 7:50 | 출·퇴근/야근(7H.L) | |
| 07/14 | " | 7:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/15 | " | 7:10 | 20:30 | 4:20 | 출·퇴근/야근 (15H) | |
| 07/18 | " | 6:50 | 19:20 | 3:30 | 출·퇴근 시간초과분 | |
| 07/19 | " | 07:00 | 20:30 | 4:30 | 출·퇴근/야근(149초) | |
| 07/20 | " | 08:00 | 23:30 | 6:30 | 출·퇴근/야근(46H) | |
| 07/21 | " | 09:00 | 23:00 | 5:00 | 출·퇴근/야근(42초) | |
| 07/22 | " | 07:00 | 19:00 | 3:00 | 출·퇴근 시간초과분 | |
| 07/25 | " | 06:40 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/25 | " | 06:40 | 19:30 | 3:50 | 출·퇴근 시간초과분 | |
| 07/26 | " | 07:00 | 23:00 | 7:30 | 출·퇴근/초과근무 | |
| 07/27 | " | 07:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/28 | " | 06:50 | 07:10 | 3:20 | 출·퇴근 시간초과분 | |
| 07/29 | " | 07:20 | 20:00 | 3:40 | 출·퇴근 시간초과분 | |
| | ↑ | | | | | |
| | | | | | | |

← 근무시 업무시작시간은 기준으로기준
(근무에까지 이동시간 편도로 20분 불포함)

Total: 82시간 (자체기준약 12불/시간)
= 각부한도의 최대분          9/9   ROKPM0111

**A-754**

Overtime Verification Ledger (Chauffeur)

| Date | Worker | Overtime Status | | | Reason for Overtime | Signature of Verifier |
|------|--------|-----------------|---|---|---------------------|----------------------|
| | | Starting Time | Ending Time | Overtime | | |
| 07/01 | Hyunhuy Nam | 6:50 | 19:30 | 3:40 | Going to, Leaving from work overtime | ㄹ |
| 07/05 | " | 6:50 | 22:30 | 6:40 | Going to, Leaving from work/ night work (15th St) | ㄹ |
| 07/12 | " | 6:50 | 23:00 | 7:10 | Going to, Leaving from work/ night work (Fort Lee) | ㄹ |
| 07/13 | " | 6:50 | 23:40 | 7:50 | Going to, Leaving from work/ night work (Fort Lee) | ㄹ |
| 07/14 | " | 7:00 | 20:00 | 4:00 | Going to, Leaving from work overtime | ㄹ |
| 07/15 | " | 7:10 | 20:30 | 4:20 | Going to, Leaving from work/ night work (15th St) | ㄹ |
| 07/18 | " | 6:50 | 19:20 | 3:30 | Going to, Leaving from work overtime | ㄹ |
| 07/19 | " | 07:00 | 20:30 | 4:30 | Going to, Leaving from work/ night work (49th St) | ㄹ |
| 07/20 | " | 08:00 | 23:30 | 6:30 | Going to, Leaving from work/ night work (46th St) | ㄹ |
| 07/21 | " | 09:00 | 23:00 | 5:00 | Going to, Leaving from work/ night work (42nd St) | ㄹ |
| 07/22 | " | 07:00 | 19:00 | 3:00 | Going to, Leaving from work overtime | ㄹ |
| 07/22 | " | 06:40 | 19:20 | 3:40 | Going to, Leaving from work overtime | ㄹ |
| 07/25 | " | 06:40 | 19:30 | 3:50 | Going to, Leaving from work overtime | ㄹ |
| 07/26 | " | 07:00 | 23:30 | 7:30 | Going to, Leaving from work/ Fort Lee night work | ㄹ |
| 07/27 | " | 07:00 | 20:00 | 4:00 | Going to, Leaving from work overtime | ㄹ |
| 07/28 | " | 06:50 | 07:10 | 3:20 | Going to, Leaving from work overtime | ㄹ |
| 07/29 | " | 07:20 | 20.00 | 3:40 | Going to, Leaving from work overtime | ㄹ |
| | | ↑ | | | | |
| | | ↑ | | | | |
| | | written | on the basis | of work | starting time of the work place | |
| | | (20 minutes | of daily | average | travel time to the work place not included) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total: 82 hours (Amount of Base Pay $12/hour)
= Amount of Pay Limit $570

ㄹ 9/9 Received

ROKPM0111

## 시간외근무 확인대장

2017 5월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 05/01 | 남희회 | 7:00 | 19:40 | 3:40 | 347가 / 초.회근 | ✓ |
| 05/02 | 남희회 | 7:10 | 22:30 | 6:20 | 꿈도리 / 초.회근 | ✓ |
| 05/03 | 남희회 | 7:10 | 20:00 | 3:50 | 초.회근 초과부 | ✓ |
| 05/04 | 남희회 | 6:50 | 20:00 | 4:10 | 한ㅅ553. / 초.회근 | ✓ |
| 05/05 | 남희회 | 9:00 | 22:30 | 4:30 | 449가 교도리/초.회근 | ✓ |
| 05/08 | 남희회 | 7:00 | 19:30 | 3:30 | 초.회근 초과부 | ✓ |
| 05/09 | 남희회 | 9:00 | 23:30 | 5:30 | 명령,교도리/초.회근 | 2 |
| 05/10 | 남희회 | 7:10 | 22:00 | 5:50 | 교도리 / 초.회근 | 2 |
| 05/11 | 남희회 | 7:10 | 20:00 | 3:50 | 58가 / 초.회근 | ✓ |
| 05/12 | 남희회 | 7:20 | 19:30 | 3:10 | 초/회근 초과부 | ✓ |
| 05/15 | 남희회 | 7:00 | 22:30 | 6:40 | 교도리 / 초.회근 | ✓ |
| 05/16 | 남희회 | 7:10 | 19:30 | 3:20 | 초.회근 초과부 | ✓ |
| 05/17 | 남희회 | 7:10 | 0:00 | 9:50 | 449가 / 초.회근 | ✓ |
| 05/18 | 남희회 | 7:00 | 20:00 | 4:00 | 교도리 / 초.회근 | ✓ |
| 05/19 | 남희회 | 7:20 | 19:40 | 3:20 | 리포트 / 초.회근 | ✓ |
| 05/22 | 남희회 | 7:00 | 19:30 | 3:30 | 초.회근 초과부 | ✓ |
| 05/23 | 남희회 | 7:10 | 22:30 | 6:20 | 교도리 / 초.회근 | 2 |
| 05/24 | 남희회 | 7:10 | 19:00 | 2:50 | 초.회근 초과부 | ✓ |
| 05/25 | 남희회 | 8:20 | 18:30 | 1:10 | 초.회근 초과부 | ✓ |
| 05/26 | 남희회 | 8:20 | 19:30 | 2:10 | 교도리 / 초.회근 | ✓ |
| 05/30 | 남희회 | 7:00 | 22:00 | 6:00 | 교도리 / 초.회근 | ✓ |
| 05/31 | 남희회 | 7:10 | 19:30 | 3:20 | 3가 / 초.회근 | 2 |
| | | | | | | |
| | | | | | | |
| | { (1,800 + 1,800/12) = 209 x 1.5 } x 52 = 967불 | | | | | |
| | | (시간당 기준액 = 18.16) | | (시간) | | |

수경: 남 뻐비
확인

**A-756**

Overtime Verification Ledger

May 2017

| Date | Worker | Starting Time | Overtime Status |  | Reason for Overtime | Signature of Verifier |
|------|--------|---------------|-----------------|--|---------------------|------------------------|
|      |        |               | Ending Time | Overtime |               |                        |
| 05/01 | Hyunhuy Nam | 7:00 | 19:40 | 3:40 | 34th St / Going to, Leaving from work | ㄱ |
| 05/02 | Hyunhuy Nam | 7:10 | 22:30 | 6:20 | Fort Lee / Going to, Leaving from work | ㄱ |
| 05/03 | Hyunhuy Nam | 7:10 | 20:00 | 3:50 | Going to, Leaving from work overtime | ㄱ |
| 05/04 | Hyunhuy Nam | 6:50 | 20:00 | 4:10 | Hillsborough / Going to, Leaving from work | ㄱ |
| 05/05 | Hyunhuy Nam | 9:00 | 22:30 | 4:30 | 49th St / Going to, Leaving from work | ㄱ |
| 05/08 | Hyunhuy Nam | 7:00 | 19:30 | 3:30 | Going to, Leaving from work overtime | ㄱ |
| 05/09 | Hyunhuy Nam | 9:00 | 23:30 | 5:30 | Pal Park, Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/10 | Hyunhuy Nam | 7:10 | 22:00 | 5:50 | Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/11 | Hyunhuy Nam | 7:10 | 20:00 | 3:50 | 58th St/ Going to, Leaving from work | ㄱ |
| 05/12 | Hyunhuy Nam | 7:20 | 19:30 | 3:10 | Going to, Leaving from work overtime | ㄱ |
| 05/15 | Hyunhuy Nam | 7:00 | 22:30 | 6:30 | Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/16 | Hyunhuy Nam | 7:10 | 19:30 | 3:20 | Going to, Leaving from work overtime | ㄱ |
| 05/17 | Hyunhuy Nam | 7:10 | 01:00 | 9:50 | 49th St/ Going to, Leaving from work | ㄱ |
| 05/18 | Hyunhuy Nam | 7:00 | 20:00 | 4:00 | Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/19 | Hyunhuy Nam | 7:20 | 19:30 | 3:10 | Ridgefield/ Going to, Leaving from work | ㄱ |
| 05/22 | Hyunhuy Nam | 7:00 | 19:30 | 3:30 | Going to, Leaving from work overtime | ㄱ |
| 05/23 | Hyunhuy Nam | 7:10 | 22:30 | 6:20 | Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/24 | Hyunhuy Nam | 7:10 | 19:00 | 2:50 | Going to, Leaving from work overtime | ㄱ |
| 05/25 | Hyunhuy Nam | 8:20 | 18:30 | 1:10 | Going to, Leaving from work overtime | ㄱ |
| 05/26 | Hyunhuy Nam | 8:20 | 19:30 | 2:10 | Flushing / Going to, Leaving from work | ㄱ |
| 05/30 | Hyunhuy Nam | 7:00 | 22:00 | 6:00 | Fort Lee/ Going to, Leaving from work | ㄱ |
| 05/31 | Hyunhuy Nam | 7:10 | 19:30 | 3:20 | 32nd St / Going to, Leaving from work | ㄱ |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  | {(1900+ | 1900/12) | ÷209 x | 1.5} x | 52 = $767 |  |
|  |  | (hourly | base pay | =14.76) | (hour) |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Confirmation of Receipt: *Hyunhuy Nam*

ROKPM0101

**A-757**

## 시간외근무 확인대장

2018 1月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/3 | 남정희 | 7:40 | 23:00 | 6:20 | 72가 /플로리/ 출.회귀 | |
| 1/5 | 남현희 | 7:40 | 20:00 | 3:40 | 32가 / 출.회귀 | |
| 1/8 | 남현희 | 7:30 | 20:00 | 3:30 | 출.외사 / 출.회귀 | |
| 1/9 | 남정희 | 8:00 | 21:20 | 4:20 | 6가 / 3가 / 출.회귀 | |
| 1/10 | 남현희 | 7:40 | 21:50 | 5:10 | 66가/3가/ 출.회귀 | |
| 1/11 | 남현희 | 7:40 | 0:00 | 8:40 | 32가 / 출.회귀 | |
| 1/12 | 남현희 | 11:00 | 20:00 | 0:00 | 49가 / 출.회귀 | |
| 1/15 | 남현희 | 7:50 | 23:00 | 6:10 | 32가 /1가/출.회귀 | |
| 1/16 | 남현희 | 7:40 | 21:45 | 5:05 | 32가 / 플로리/출.회귀 | |
| 1/17 | 남현희 | 7:50 | 19:45 | 2:55 | 76가 / 플로리 | |
| 1/18 | 남현희 | 7:40 | 22:00 | 5:40 | 28가 / 출.회귀 | |
| 1/19 | 남현희 | 8:00 | 20:00 | 3:00 | 출.회귀 초과분 | |
| 1/22 | 남현희 | 7:30 | 22:00 | 5:30 | 서울 / 출.회귀 | |
| 1/23 | 남현희 | 7:40 | 19:50 | 2:10 | 출.회귀초과분 | |
| 1/24 | 남현희 | 7:40 | 21:00 | 4:20 | 2가 / 플로리/출.회귀 | |
| 1/25 | 남현희 | 9:30 | 21:00 | 2:30 | 출.회귀 초과분 | |
| 1/26 | 남현희 | 7:40 | 22:30 | 6:50 | 32가 / 평택/ 출.회귀 | |
| 1/28 | 남현희 | 18:20 | 22:30 | 4:10 | JFK / 출.외근무 | |
| 1/29 | 남현희 | 7:30 | 20:30 | 4:00 | 출.회귀 초과분 | |
| 1/30 | 남현희 | 7:45 | 21:30 | 4:45 | 플로리 / 출.회귀 | |
| 1/31 | 남현희 | 7:45 | 19:45 | 3:00 | 출.회귀초과분 | |
| | | | Total | 91:45 | | |
| | | | | | 91시간 × 14.75 = $767 (어금환금액) | |

91시간

**A-758**

Overtime Verification Ledger

January 2018

| Date | Worker | Starting Time | Overtime Status Ending Time | Overtime | Reason for Overtime | Signature of Verifier |
|------|--------|---------------|---------|----------|---------------------|-----------------------|
| 1/3 | Hyunhuy Nam | 7:40 | 23:00 | 6:20 | 72nd St/Fort Lee/Going to, Leaving from work | علق |
| 1/5 | Hyunhuy Nam | 7:40 | 20:00 | 3:40 | 32nd St/Going to, Leaving from work | علق |
| 1/8 | Hyunhuy Nam | 7:30 | 20:00 | 3:30 | Consulate General/ Going to, Leaving from work | علق |
| 1/9 | Hyunhuy Nam | 8:00 | 21:20 | 4:20 | 61st St/32nd St/ Going to, Leaving from work | علق |
| 1/10 | Hyunhuy Nam | 7:40 | 21:50 | 5:10 | 56th St/Pal Park/ Going to, Leaving from work | علق |
| 1/11 | Hyunhuy Nam | 7:40 | 01:00 | 8:40 | 32nd St/ Going to, Leaving from work | علق |
| 1/12 | Hyunhuy Nam | 11:00 | 20:00 | 0:00 | 49th St/ Going to, Leaving from work | علق |
| 1/15 | Hyunhuy Nam | 7:50 | 23:00 | 6:10 | 32nd St/1st St/ Going to, Leaving from work | علق |
| 1/16 | Hyunhuy Nam | 7:40 | 21:45 | 5:05 | 32nd St/Fort Lee/Going to, Leaving from work | علق |
| 1/17 | Hyunhuy Nam | 7:50 | 19:45 | 2:55 | 76th St/Fort Lee | علق |
| 1/18 | Hyunhuy Nam | 7:40 | 22:00 | 5:40 | 28th St/ Going to, Leaving from work | علق |
| 1/19 | Hyunhuy Nam | 8:00 | 20:00 | 3:00 | Going to, Leaving from work overtime | علق |
| 1/22 | Hyunhuy Nam | 7:30 | 22:00 | 5:30 | Seoho/ Going to, Leaving from work | علق |
| 1/23 | Hyunhuy Nam | 7:40 | 19:50 | 2:10 | Going to, Leaving from work overtime | علق |
| 1/24 | Hyunhuy Nam | 7:40 | 21:00 | 4:20 | 23rd St/Fort Lee/ Going to, Leaving from work | علق |
| 1/25 | Hyunhuy Nam | 9:30 | 21:00 | 2:30 | Going to, Leaving from work overtime | علق |
| 1/26 | Hyunhuy Nam | 7:40 | 22:30 | 6:50 | 32nd St/Pal Park/ Going to, Leaving from work | علق |
| 1/28 | Hyunhuy Nam | 18:20 | 22:30 | 4:10 | JFK/Work on off day | علق |
| 1/29 | Hyunhuy Nam | 7:30 | 20:30 | 4:00 | Going to, Leaving from work overtime | علق |
| 1/30 | Hyunhuy Nam | 7:45 | 21:30 | 4:45 | Fort Lee/ Going to, Leaving from work | علق |
| 1/31 | Hyunhuy Nam | 7:45 | 19:45 | 3:00 | Going to, Leaving from work overtime | علق |
| | | | Total | 91:45 | | |
| | | | | | | |
| | | | | | 91 hours x 14.76=$767 | |
| | | | | | (Amount of Pay Limit) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

91 hours          رسكفّ

# JOANNA KOH
**Certified English Korean Court Interpreter/Translator**
56B West Homestead Avenue Palisades Park, NJ 07650
<div align="right">Telephone: (973) 886-4438</div>

## CERTIFICATE OF ACCURACY

STATE OF NEW JERSEY      )
                         ) ss.:
COUNTY OF BERGEN    )


Joanna Koh, being duly sworn, deposes and says: That I am familiar with both the English and Korean languages. That I have made the attached translation from the annexed document in the Korean language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability and belief.


*Joanna Koh*
Joanna Koh          Date:  July 28, 2022




Sworn to before me
this _____ day of _____, 2022

10

1                       J. Jinho

2       A.   Got it.

3       Q.   You're free to talk with him while

4    you're off the stand or excused as a witness.  It

5    should not impair your ability to talk with him;

6    are we clear about this?

7       A.   Yes, got it.  I would like to see my

8    record the confirm whether the spelling is

9    C-H-U-N-G or J-U-N-G.

10      Q.   You need to refer to a certain record.

11   Do you have any idea of what this record would

12   look like?

13           MR. LIM:  You first named him as a

14      defendant.  It got dismissed.

15           MR. ZHU:  It's C-H-U-N-G.

16      A.   Complaint.

17      Q.   Back to the boss Minister maybe the last

18   name is Chung or Jung, can you tell me why you

19   refer to him or her as the boss Minister?

20      A.   So this Minister, his work is something

21   that requires high level security.  So therefore,

22   as according to the Republican of Korean's law,

23   he is categorized as a high level Minister of the

24   government.  So therefore, Mr. Nam, his work was

25   to support someone who needed a high level

11

1                     J. Jinho

2     security just like the Minister and myself also

3     because I'm involved with the political affairs

4     work, I worked with the Minister.  I myself was

5     following the Minister's instructions and Mr. Nam

6     was also following the Minister's instructions,

7     that's why.

8          Q.   Was the boss Minister either Chung or

9     Jung, male or female?

10         A.   Male.

11         Q.   So earlier you said the boss Minister

12    will give you instruction as well as give Mr. Nam

13    instruction.  What was the instruction; would

14    that include your working hours?

15              MR. LIM:  For clarification, when you

16         say working hours, you mean work schedule,

17         correct?  That's not how it was translated

18         just now.

19         Q.   Let me rephrase.  Earlier you said that

20    boss Minister either Chung or Jung --

21              MR. LIM:  Let's stipulate it's Chung.

22         Off the record.

23              (Whereupon a discussion was held off the

24         record.)

25              MR. ZHU:  We have off the record

12

1                    J. Jinho

2        stipulated the boss Minister the witness is

3        referring to his last is name C-H-U-N-G.

4        Q.    So the question will be does Mr. Chung,

5    earlier you said the instruction, would those

6    instructions include your working schedule?

7        A.    What exactly is the work schedule by

8    your definition, please?

9        Q.    When I say working schedule, that means,

10   when you're supposed to start work, when you're

11   supposed to leave work in a given week, Monday,

12   Tuesday, Wednesday, Thursday, Friday; were those

13   instructions including your working schedules?

14       A.    So basically as far as this type of work

15   related issues, we follow the Korean law, Korean

16   principles, so when one goes to vacation, we're

17   supposed to let them know beforehand giving

18   notification.  And as far as the schedule part,

19   first of all, in general, the general practice is

20   we have to follow the general practice.  However,

21   specifically depending on the real circumstances

22   of the day or time, we would discuss with Mr.

23   Chung the specific schedule together and based on

24   his instruction, it was followed.  Based on his

25   decision, it was followed.

14

                           J. Jinho

1

2    Mr. Nam work as a team; how this channel of

3    command been communicated from Mr. Chung to

4    either of you or both of you?

5         A.   So the channel of command was such that

6    Minister Chung would directly instruct Mr. Nam

7    himself and because we're also same team,

8    Minister Chung would instruct to Mr. Nam through

9    us as well.

10        Q.   Why you say us, who besides yourself;

11   who else are you referring to?

12        A.   Mr. Kim.

13             MR. LIM:  Mr. Kim is sitting next to

14        Mr. Jo and will be also testifying if need

15        be in this case.

16 Q.   How often as to the frequency Mr. Chung's

17   command will be communicated through either you or

18   Mr. Kim to Mr. Nam?

19        A.   Well, as far as frequency, it really

20   depended on day to day and time when it was the

21   more the instructions, the more frequent it would

22   have been, but I don't recall exactly specifically

23   right now.

24        Q.   Do you have an estimate?

25             MR. LIM:  Objection.

```
                                                           42
 1                      J. Jinho
 2       Based on your knowledge who decides whether
 3   the person should be hired by the Mission other
 4   than the security check?
 5            MR. LIM:  Not an objection, but we're
 6       talking about general practice, not Mr. Nam?
 7            MR. ZHU:  Yes.
 8            MR. LIM:  I'm afraid every position is
 9       different.  I don't know where we're going
10       with this.
11       A.   Well, in Mr. Nam's case it would be the
12   Minister who Mr. Nam would directly serve in the
13   end, so finally it would be the Minister who would
14   say oh, this person looks good.
15       Q.   Have the Mission ever fired anybody?
16            MR. LIM:  What's the timeframe?
17       Q.   From the year 2016 until present based
18   on your knowledge?
19       A.   To my understanding, no.
20       Q.   Based on your understanding, is there a
21   firing process employed by the Mission?
22            MR. LIM:  Again he used a word and I
23       just want to clarify.  Are you talking about
24       voluntary termination or involuntary, firing
25       is involuntary.  He used the word it includes
```

**A-765**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYUNHUY NAM, | Case No.: 1:21-cv-06165-RA |
| Plaintiff, | |
| v. | CIVIL ACTION |
| PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS; | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Kim, Cho & Lim, LLC
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
T: 201-585-7400
F: 201-585-7422

On the brief:   Joshua S. Lim, Esq.
                Nicholas J. DuBois, Esq.
                Sean S. Kwak, Esq.
                Power J. Chen, Esq.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.     PRELIMINARY STATEMENT ............................................................................. 1

II.    GENUINE DISPUTE EXISTS AS TO FACTS UPON WHICH PLAINTIFF RELIES 2

III.   LEGAL ARGUMENT ............................................................................................ 2

    A.     Standard for Relief for Summary Judgment & Foreign Sovereign Immunity ............. 2

    B.     Defendant is Immune under the Foreign Sovereign Immunities Act ............................ 4

      i.     Plaintiff's Alleged Duties Concerning "Personal Matters" Is Not Relevant ............... 7

      ii.    Plaintiff's Duties Lack Substantial Contact with the United States. .......................... 10

      iii.   Precedent Overwhelmingly Supports a Decision in Favor of Immunity.................... 11

    C.     Plaintiff's Settled His Claims ..................................................................................... 12

    D.     The Facts Are Disputed and Insufficient to Establish Failure to Pay Plaintiff's
Overtime Wages ..................................................................................................................... 14

      iv.    Defendant Paid Plaintiff's Overtime Wages ............................................................ 14

      v.     Plaintiff Fails to Establish that He Worked Uncompensated Overtime Hours .......... 15

    E.     Defendant Is Not Liable for any Statutory Damages under NYLL 198 ....................... 17

      i.     Defendant Is Not an "Employer" Under New York Labor Law § 190 ..................... 17

      ii.    Defendant Provided the Required "Wage Notice" Pursuant to NYLL § 195(1)........ 18

      iii.   Defendant has Affirmative Defenses to Plaintiff's Claim for Statutory Damages..... 19

    F.     Defendant Is Not Liable to Pay Liquidated Damages ................................................. 20

    G.     Plaintiff is Not Entitled to Attorneys' Fees, Costs, or Pre-Judgment Interest ............ 20

IV.    CONCLUSION ...................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................... 3

Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) ....................... 4

Bardales v. Consulate Gen'l of Peru in N.Y., 490 F. Supp. 3d 696 (S.D.N.Y. 2020) ............. 8, 11

Butters v. Vance Int'l, Inc., 225 F.3d 462 (4th Cir. 2000) ........................................... 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................... 3

College Std. Magazine v. Student Ass'n of State Univ. of N.Y. at Albany,
610 F.3d 33 (2d Cir. 2010) ............................................................................................ 4

Crum v. Kingdom of Saudi Arabia, No. Civ. A. 05–275,
2005 WL 3752271 (E.D. Va. July 13, 2005) ............................................................... 11

F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288 (2d Cir. 2010) ........................................ 3

Figueroa v. Ministry for Foreign Affairs of Sweden,
222 F. Supp. 3d 304 (S.D.N.Y. 2016) ............................................................. 6, 8, 10, 11

Hummel v. AstraZeneca LP, 575 F. Supp. 2d 568 (S.D.N.Y. 2008) ........................... 12

Kato v. Ishihara, 360 F.3d 106, 112 (2d Cir. 2004) ........................................... 6, 9, 11

Kim v. Korea Trade Promotion-Investment Agency, 51 F.Supp.3d 279 (S.D.N.Y. 2014) .......... 13

Kowalchuk v. Stroup, 61 A.D.3d 118 (1st Dept. 2009) ................................................ 12

Matar v. Dichter, 563 F.3d 9 (2d Cir. 2009) .................................................................. 3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ..................... 3

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007) ............................. 3

Moers v. Moers, 229 N.Y. 294 (1920) ......................................................................... 12

Mortimer Off Shore Servs., Ltd. v. Federal Rep. of Germany, 615 F.3d 97 (2d Cir. 2010) ......... 3

New York Univ. v. Factory Mut. Ins. Co., 374 F. Supp. 3d 315 (S.D.N.Y. 2019),
aff'd, 20-1093-CV, 2021 WL 3136078 (2d Cir. July 26, 2021) ..................................... 3

OBB Personenverkehr AG v. Sachs, 577 U.S. 27 (2015)................................................... 4

Pablo Star Ltd. v. Welsh Gov't, 961 F.3d 555 (2d Cir. 2020),
cert. denied, 141 S. Ct. 1069 (2021) .............................................................................. 7

Rukoro v. Federal Rep. of Germany, 976 F.3d 218 (2d Cir. 2020)............................. 7, 8

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) ..................................................... 5, 7, 10

Simel v. JP Morgan Chase, 05-cv-9750, 2007 WL 809689 (S.D.N.Y. Mar. 19, 2007) .............. 12

Swarna v. Al–Awadi, 622 F.3d 123 (2d Cir.2010) ........................................................ 3

Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480 (1983)..................................... 4

Walters v. Industrial & Comm'l Bank of China, Ltd., 651 F.3d 280 (2d Cir. 2011) .................... 4

Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511 (D.C. Cir. 1988)...................... 5, 10

**Statutes**

28 U.S.C. § 1603(d) ....................................................................................................... 7

28 U.S.C. § 1603(e) ................................................................................................. 5, 10

28 U.S.C. § 1604-1605 ................................................................................................. 4

28 U.S.C. § 1605(a)(2)................................................................................................. 5

28 U.S.C. § 1605(a)(5) ........................................................................................... 5, 10

NYLL § 190(3) ............................................................................................................. 17

NYLL § 195(1)(a)......................................................................................................... 18

NYLL § 198(1-b) .......................................................................................................... 18

NYLL § 198(1-d) .......................................................................................................... 18

NYLL § 651(6) .............................................................................................................. 17

**Other Authorities**

H.R. REP. NO. 1487, 94th Cong., 2d Sess. 17 (1976),
U.S. Code Cong. & Admin. News 1976, pp. 6604, 6615, 6616 ............................................. 5, 10

ROK Labor Standards Act, articles 50, 53, 56 ............................................................. 16

**Treatises**

1 <u>Williston on Contracts</u>, § 103(f) ............................................................. 12

22 N.Y. Jur.2d, <u>Contracts</u> §§ 9, 31 ............................................................. 12

The Permanent Mission of the Republic of Korea to the United Nations (hereinafter, the "Mission" or "Defendant"), by and through its counsel, the law offices of Kim, Cho & Lim, LLC, hereby respectfully submits this memorandum of law in opposition to the motion for partial summary judgment filed July 28, 2022 by the plaintiff Hyunhuy Nam ("Plaintiff").

I.     <u>**PRELIMINARY STATEMENT**</u>

Plaintiff filed this lawsuit making various claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), while expressly acknowledging that the Mission is a foreign sovereignty covered under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, to -11. In asserting the claims, therefore, Plaintiff attempts to mold his employment into the narrow "commercial activity" exception under the FSIA.

Notably, however, Plaintiff devotes only six paragraphs in his moving memorandum to argue the "commercial activity" exception--which is a threshold matter invoking the Court's jurisdiction to adjudicate this action. In its co-pending motion for summary judgment, Defendant has extensively briefed the grounds for its entitlement to immunity under the FSIA. As such, the Court is respectfully referred to Defendant's moving papers, also filed July 28, 2022, for a fuller explanation of Defendant's position on the applicability of FSIA immunity and non-applicability of its commercial activity exception here. For the sake of formality and to address different issues raised in Plaintiff's moving papers more clearly, Defendant's arguments are concisely reiterated herein.

Defendant further briefs its defenses to Plaintiff's FLSA and NYLL claims herein but respectfully submits the Court should not reach that leg of the analysis, for the Court lacks jurisdiction to address the same under the FSIA.

1

II.    <u>GENUINE DISPUTE EXISTS AS TO FACTS UPON WHICH PLAINTIFF RELIES</u>

As an initial matter, the bulk of Plaintiff's Rule 56.1 statement of material facts ("PSMF") lacks proper citation to the record developed in this matter. For instance, Plaintiff cites his <u>allegations</u> in the (unverified) Complaint for paragraphs 1-10, and 20-22 of his PSMF. Over five paragraphs, Plaintiff cites his employment contracts merely to restate what the text says (<u>i.e.</u>, <u>not</u> what Defendant's actual employment practices were). <u>Id.</u>, ¶¶ 11-15. He cites a single month's record per year (and entirely omits two out of five years) in misstating Defendant's overtime pay practices. <u>Id.</u>, ¶¶ 16-18. Plaintiff has <u>no</u> citation to the record in another paragraph. <u>See id.</u>, ¶ 19. Strikingly, Plaintiff makes <u>no</u> citations <u>at all</u> to his PSMF in his memorandum of law. <u>See</u> Pl. Mov. Br. <u>in passim</u>. Instead, Plaintiff impermissibly cites directly to the allegations of the Complaint, which allegations are, of course, largely disputed. See Def. Ex. 39. Moreover, Plaintiff cites to his own Declaration submitted *for the first time* in his motion in an improper effort to supplement the record (to which he does not cite in his PSMF).

The Court is respectfully referred to Defendant's response to Plaintiff's PSMF for further discussion of the procedural defects and disputes regarding Plaintiff's proffered facts. On this ground alone, Plaintiff's motion for partial summary judgment must be denied.

III.    <u>LEGAL ARGUMENT</u>

A. <u>Standard for Relief for Summary Judgment & Foreign Sovereign Immunity</u>

The standard for granting summary judgment is well known and fully briefed in Defendant's motion filed July 28, 2022. Briefly restated, the Court may grant summary judgment pursuant to Fed. R. Civ. P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex</u>

2

Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether a factual dispute warranting

trial exists, the court must view the record evidence and the summary judgment submissions in the

light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Issues of material fact are those "that might affect the outcome of the suit under the governing

law." Id. at 248.

"A fact is material when it might affect the outcome of the suit under governing law," and

"[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." New York Univ. v. Factory Mut. Ins. Co., 374 F. Supp. 3d 315, 322

(S.D.N.Y. 2019) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)

(alteration in original)), aff'd, 20-1093-CV, 2021 WL 3136078 (2d Cir. July 26, 2021).

An issue is genuine when it is "triable," that is, when reasonable minds could disagree on

the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

moving party bears the initial burden of demonstrating the absence of a genuine issue of material

fact. F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). However, once "the moving

party meets that burden, the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." Ibid. (citing Anderson, 477 U.S.

at 249). In the context of the FSIA specifically:

> The burden is on the defendant seeking sovereign immunity to show it is a foreign
> sovereign. If the defendant makes this showing, the burden then shifts to the plain-
> tiff to show that a FSIA-enumerated exception to sovereign immunity applies.

Mortimer Off Shore Servs., Ltd. v. Federal Rep. of Germany, 615 F.3d 97, 105 (2d Cir. 2010)

(citing Matar v. Dichter, 563 F.3d 9, 12 (2d Cir. 2009)); see also Swarna v. Al–Awadi, 622 F.3d

123, 143 (2d Cir.2010) (burden falls on the plaintiff to establish by a preponderance of the

3

evidence). The Mission's burden regarding sovereignty has been satisfied by stipulation; hence, it falls to Plaintiff to demonstrate an exception to sovereign immunity.

"[S]ubject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity, ... even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the [FSIA]." Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 n. 20 (1983). "This requirement is consistent with the courts' 'independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte.'" Walters v. Industrial & Comm'l Bank of China, Ltd., 651 F.3d 280, 286 (2d Cir. 2011) (citing College Std. Magazine v. Student Ass'n of State Univ. of N.Y. at Albany, 610 F.3d 33, 35 (2d Cir. 2010) (internal quotation marks omitted)). The "facts" Plaintiff proffers are not only disputed but also not "material". Plaintiff utterly fails to carry its burden to demonstrate the applicability of FSIA's commercial activity exception.

**B.  Defendant is Immune under the Foreign Sovereign Immunities Act**

Plaintiff concedes that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in the [U.S.] courts. See Pl. Mov. Br., p. 8 (citing Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989)). As set forth in Defendant's co-pending motion, Defendant is a sovereign entity immune from lawsuits in the U.S. and the subject matter of this action does not fall within the narrow "commercial activities" exception. Defendant's Motion for Summary Judgment, Jul. 28, 2022, Br. ("Def. Mov. Br."), pp. 10-25; see also 28 U.S.C. § 1604-1605. Instrumentalities of the ROK such as the Mission are also "'presumptively immune from the jurisdiction of United States courts' unless one of the [FSIA]'s express exceptions to sovereign immunity applies." OBB Personenverkehr AG v. Sachs, 577 U.S. 27, 31 (2015) (emphasis added)

(quoting <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993)). The commercial activity exception

is codified at sec. 1605 of Title 28:

> **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United
> States or of the States in any case–
> <div align="center">* * *</div>
> **(2)** in which the action is based upon a commercial activity carried on in the United
> States by the foreign state; or upon an act performed in the United States in
> connection with a commercial activity of the foreign state elsewhere; or upon
> an act outside the territory of the United States in connection with a commercial
> activity of the foreign state elsewhere and that act causes a direct effect in the
> United States[.]

28 U.S.C. § 1605(a)(2) (emphasis added). As a preliminary matter, Plaintiff fails to identify which

prong of the exception applies, nor provide the FSIA's definition of "[a] 'commercial activity

carried on in the United States by a foreign state' [which] means commercial activity carried on

by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). The

legislative history of "substantial contacts" is instructive, and includes:

> cases based on commercial transactions performed in whole or in part in the United
> States, import-export transactions involving sales to, or purchases from, concerns
> in the United States, business torts occurring in the United States, and an indebted-
> ness incurred by a foreign state which negotiates or executes a loan agreement in
> the United States, or which receives financing from a private or public lending insti-
> tution located in the United States—for example, loans, guarantees or insurance
> provided by the Export–Import Bank of the United States.... This definition, how-
> ever, is intended to reflect a degree of contact beyond that occasioned simply by
> U.S. citizenship or U.S. residence of the plaintiff.

H.R. REP. NO. 1487, 94th Cong., 2d Sess. 17 (1976), U.S. Code Cong. & Admin. News 1976, pp.

6604, 6615, 6616 (citing 28 U.S.C. § 1605(a)(5) (as quoted in <u>Zedan v. Kingdom of Saudi Arabia</u>,

849 F.2d 1511, 1513 (D.C. Cir. 1988)). Based on Congress' foregoing examples, no substantial

contact with the United States is envisioned by Plaintiff's having driven diplomatic personnel,

families, and guests for their security and safety.

Critically, Plaintiff fails to establish that his employment as a chauffeur for the Mission's Ministers was commercial in nature <u>and</u> had substantial contact with the United States. <u>See</u> Pl. Mov. Br., pp. 9-10; <u>see also</u> Def. Mov. Br., pp. 13-25 (no commercial activity), pp. 25-27 (no substantial contact). The sole basis of Plaintiff's argument is a half-finished paragraph in the moving brief stating only that "he was <u>supposed</u> to drive [the Mission's] diplomatic employees." Pl. Mov. Br., p. 9 (emphasis in original). Plaintiff stops short of explaining what duties he <u>actually</u> performed. <u>See ibid.</u> Moreover, Plaintiff fails to set forth his "supposed" duties in his statement of fact. <u>See generally</u>, PSMF.

Only in his Declaration does Plaintiff state, albeit vaguely, that he performed "personal tasks." Declaration of Plaintiff, ¶ 11. Plaintiff does not describe what such "personal tasks" entailed but only conclusively argues it was not "governmental." Pl. Mov. Br., p. 9. Plaintiff appears to assume, incorrectly, that performance of a "personal" task <u>ipso facto</u> equates to commercial activity having substantial contact with the United States. It does not – or, at least, Plaintiff fails to provide any authority supporting his assumption.

Defendant respectfully submits the Court should decline to consider any facts <u>not</u> contained in Plaintiff's Rule 56.1 statement. But to the extent the Court may elect to review same, Defendant's posting of a job advertisement on a publicly accessible website is irrelevant to FSIA immunity analysis as "assessment of an employee's status as a civil servant . . . should focus on the contemporary norms associated with civil service in the sovereign country at issue[.]" <u>Figueroa v. Ministry for Foreign Affairs of Sweden</u>, 222 F. Supp. 3d 304, 312 (S.D.N.Y. 2016) (Koeltl, J.) (citing <u>Kato v. Ishihara</u>, 360 F.3d 106, 112 (2d Cir. 2004)). The Second Circuit, again, reinforced the distinction in <u>Pablo Star</u>:

> Whether an activity is deemed "commercial" under the FSIA depends on its "nature" rather than its "purpose," 28 U.S.C. §

6

1603(d), where "purpose" is "the <u>reason</u> why the foreign state engages in the activity" and "nature" is "the <u>outward form</u> of the conduct that the foreign state performs or agrees to perform,"

<u>Pablo Star Ltd. v. Welsh Gov't</u>, 961 F.3d 555, 564 (2d Cir. 2020) (quoting <u>Nelson</u>, 507 U.S. at 361), <u>cert. denied</u>, 141 S. Ct. 1069 (2021).

On the contrary, Defendant's moving papers lay out in painstaking detail how Plaintiff's post required ROK's security clearance prior to hire and that it related directly to the safeguarding of the ROK's dignitaries and high-ranking government officials--foreign or domestic--and ROK's national secrets/classified information. Such security clearance and special considerations given to Plaintiff's employment are especially salient because "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." <u>Rukoro v. Federal Rep. of Germany</u>, 976 F.3d 218, 226 (2d Cir. 2020) (quoting 28 U.S.C. § 1603(d)), <u>cert. denied sub nom. Rukoro v. Germany</u>, --- U.S. ---, No. 20-1454, 2021 WL 2301990 (U.S. June 7, 2021). Safeguarding the ROK's dignitaries and high-ranking government officials and being privy to their state secrets are duties that no foreign sovereign would outsource to a ride-hailing app or random taxi which certainly takes Plaintiff's employment out of the sphere of a "commercial activity having substantial contact with the United States", as the Second Circuit has long held.

### i.   Plaintiff's Alleged Duties Concerning "Personal Matters" Is Not Relevant

Plaintiff seems to argue his employment was a commercial activity because he alleges having performed some "personal matters" of an unexplained nature for an unspecified duration. By way of background (which Plaintiff omits), Plaintiff alleges to have performed "personal

# A-777

matters" on no more than 144 days[1] out of approximately 1,200 workdays. Even assuming, arguendo, his version of events, only 12% of Plaintiff's workdays include a "personal matter."

First, this Court recently analyzed a substantially identical fact pattern in Bardales v. Consulate Gen'l of Peru in N.Y., 490 F. Supp. 3d 696 (S.D.N.Y. 2020). There, the plaintiff-chauffeur alleged having driven for "personal matters" on 17% of his workdays but this Court found it negligible and held that plaintiff's employment claim is nevertheless subject to the immunity under the FSIA. This Court should make the same finding where the "personal" activity is alleged to be 5% less than in Bardales.

Second, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Rukoro, 976 F.3d at 226 (emphasis added) (quoting 28 U.S.C. § 1603(d)). Plaintiff inaptly focuses on the purpose – i.e., the "personal" aspect he alleges among his duties, but the Court must focus on the nature of Plaintiff's driving duties instead. That is: the safeguarding of ROK dignitaries, their families and guests, as well as ROK's national secrets. This Court has consistently held that "[a] sovereign's decision on how best to address the safety concerns of high-ranking government officials are peculiarly sovereign because the failure to protect or safeguard a sovereign representative, such as an ambassador or a titular head of state, can have extremely adverse consequence for the sovereign nation" and that such activities to which a plaintiff's employment may be directed are "undoubtedly governmental." Figueroa, 222 F. Supp. 3d at 313-15. Here, in addition to such undoubtedly governmental duties, Plaintiff also had to safeguard the ROK's national secrets and classified information which was routinely discussed in his presence

---

[1] This is the number of days appearing on Plaintiff's purported summary of his "diary," discussed during the deposition of the Second Secretary of the Mission. See Ex. 33, 20:4-30:5. Both the diary and the purported summary have been designated as confidential because they contain what is deemed the ROK's national secret and/or classified information. Accordingly, there are not submitted herewith for inclusion in the public record.

and necessitated a high-level security clearance for Plaintiff. For this reason, he was asked and consented to submit himself to polygraph tests, whenever necessary. DSMF, ¶ 16. As such, Plaintiff is barred from bringing his employment-related (or other) claims against Defendant in any court in the United States.

Plaintiff's confusion between the purpose and nature of his duties is thoroughly expounded upon by the Second Circuit in Kato v. Ishihara. There, the plaintiff's duties included "promotional activities on behalf of Japanese companies." 360 F.3d at 109. However, this Court distinguished superficial similarity with private actions:

> The record reveals that TMG [Tokyo Metropolitan Government] performed actions that were only superficially similar to actions typically undertaken by private parties… [but] the fact that a government instrumentality like TMG is engaged in the promotion of commerce does not mean that the instrumentality is thereby engaged in commerce.

Id. at 112 (emphasis in original). This Court then found the Kato plaintiff's employment-related claims to be barred by the FSIA. Indeed, there is a fine distinction between the purpose and the nature of one's employment. Hiring Plaintiff as a chauffeur, too, is only superficially akin to such hiring by private companies whose duties are limited to transporting a member of the public from one place to another. As Defendant outlined in its moving brief, Plaintiff was hired not as an ordinary driver to move the ROK's dignitaries from one location to another (regardless of the purpose), but to ensure their safety en route and to maintain the confidentiality of their secret communications made in the ROK's official vehicle. To put it more succinctly, Plaintiff himself admits under oath he was serving the national interest of the Republic of Korea. DSMF[2] ¶ 84.

---

[2] All references to paragraphs 84 or later of DSMF are references to Defendant's Counter-Statement of Material Facts submitted herewith, found in the section following Defendant's Response to PSMF.

9

Courts have held it is solely a sovereign's decision as to how best to protect its diplomats, dignitaries, and their family and guests – such choices are peculiar to sovereignty. See Figueroa, 222 F. Supp. 3d at 315; see also Butters v. Vance Int'l, Inc., 225 F.3d 462, 465 (4th Cir. 2000). Defendant's decision as to how best to protect its secrets and classified information falls comfortably within the ROK's power to police its own interests that "has long been understood for the purposes of [the commercial activity exception] as peculiarly sovereign in nature." Nelson, 507 U.S. at 350.

**ii.       Plaintiff's Duties Lack Substantial Contact with the United States.**

Plaintiff must also establish that his duties had substantial contact with the United States. See 28 U.S.C. § 1603(e). The legislative history of "substantial contacts" is instructive, and includes:

> cases based on commercial transactions performed in whole or in part in the United States, import-export transactions involving sales to, or purchases from, concerns in the United States, business torts occurring in the United States, and an indebtedness incurred by a foreign state which negotiates or executes a loan agreement in the United States, or which receives financing from a private or public lending institution located in the United States—for example, loans, guarantees or insurance provided by the Export–Import Bank of the United States.... This definition, however, is intended to reflect a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff.

H.R. REP. NO. 1487, 94th Cong., 2d Sess. 17 (1976), U.S. Code Cong. & Admin. News 1976, pp. 6604, 6615, 6616 (citing 28 U.S.C. § 1605(a)(5) (as quoted in Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1513 (D.C. Cir. 1988)). Based on Congress' foregoing examples, no substantial contact with the United States is envisioned by Plaintiff's having driven diplomatic personnel, families, and guests.

But, here, Plaintiff advances no such argument – likely as there was no such substantial contact as enlightened by the legislative history- as Plaintiff's duties were to safeguard the ROK's

10

dignitaries while they were in the Mission's official vehicle, without regard to the locale of his

duties and without impacting the United States in any manner, commercial or otherwise.

### iii.    Precedent Overwhelmingly Supports a Decision in Favor of Immunity.

All precedents involving significantly similar fact patterns have held in favor of finding

sovereign immunity, as detailed in Defendant's earlier submission. In Figueroa, this Court held

that claims by the plaintiff-driver who safeguarded the Ambassador and the Royal Family were

barred under the FSIA because "assessment of an employee's status as a civil servant . . . should

focus on the contemporary norms associated with civil service in the sovereign country at issue".

222 F. Supp. 3d at 316 (citing Kato, 360 F.3d at 112).

Similarly, the Eastern District of Virginia has held that a limousine driver for the Kingdom

of Saudi Arabia and the Royal Embassy of Saudi Arabia did not fall within the commercial activity

exception of the FSIA (i.e., the Saudi Arabian Embassy is immune from the court's jurisdiction

thereunder). Crum v. Kingdom of Saudi Arabia, No. Civ. A. 05–275, 2005 WL 3752271 at *5

(E.D. Va. July 13, 2005). Although Crum did not identify for whom the plaintiff chauffeured, the

court relied on Butters, in which the Fourth Circuit, like the Second Circuit in Kato and Figueroa,

determined "foreign sovereign's decision as to how best to secure the safety of its leaders" is an

"act peculiar to sovereigns. Crum, 2005 WL 3752271 at *3 (citing Butters, 225 F.3d at 465).

In Bardales, this Court also held similar claims by a plaintiff-driver chauffeuring for the

Consul General of Peru are barred under the FSIA, despite the plaintiff, like Plaintiff here, claiming

to have driven for the Consul General's "personal matters." Bardales, 490 F. Supp. 3d 707.

The record here establishes that Plaintiff was the sole, designated chauffeur for the

Ministers of the Mission, who are high-ranking government officials of the ROK. DSMF ¶¶ 51-

61. The record further establishes Plaintiff also chauffeured for other high-ranking ROK officials

and those of other U.N. member states when they visited as the Mission's guests. Id. ¶¶ 63-68.

Additionally, Plaintiff was entrusted with the ROK's classified information and assigned duties requiring him to observe certain diplomatic protocols or "Uei-Jeon." See Def. Mov. Br., pp. 3-7; see also DSMF ¶¶ 75-76. The undisputed facts submitted by Defendant in its moving papers are more than sufficient for the Court to find that Defendant is immune to Plaintiff's employment-related claims in the United States.

For the foregoing reasons, Defendant respectfully submits that Plaintiff's claims are outside the commercial activity exception under the FSIA and as such, the Court must find it lacks jurisdiction over the Mission in this matter.

## A. Plaintiff's Settled His Claims

Prior to initiating this action, Plaintiff released all claims, including his claims under the NYLL, NYCHRL, and NYSHRL by signing a settlement agreement with the Mission. Under well-settled law, "[a]greements that purportedly release employers from liability for claims arising under the New York Labor Law overtime requirements are generally valid and enforceable […] Courts have repeatedly upheld the validity of broadly-worded releases with respect to claims brought pursuant to New York employment statutes." Hummel v. AstraZeneca LP, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (citing Simel v. JP Morgan Chase, 05-cv-9750, 2007 WL 809689, at *4-5 (S.D.N.Y. Mar. 19, 2007)).

"To establish the existence of an enforceable agreement, [the proponent] must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound That meeting of the minds must include agreement on all essential terms". Kowalchuk v. Stroup, 61 A.D.3d 118, 121 (1st Dept. 2009) (citing 22 N.Y. Jur.2d, Contracts §§ 9, 31). "[T]he consideration for a bilateral contract […] in which promises are exchanged [ ] consists of the acts mutually promised" Id. at 125 (citing Moers v. Moers, 229 N.Y. 294, 301 (1920) (internal citation to 1 Williston on Contracts, § 103(f)).

12

Plaintiff acknowledges that he signed such a valid and enforceable contract for the release of the claims he brought anyway. See DSMF ¶ 45. Pursuant to the ROK's rules and regulations, "[t]he retirement age is 60." Id. ¶ 39. Sovereign immunity has been recognized in this specific context by former District Judge Richard J. Sullivan in "KOTRA". See Kim v. Korea Trade Promotion-Investment Agency, 51 F. Supp. 3d 279, 282 (S.D.N.Y. 2014) (granting motion to dismiss all claims by a marketing consultant who was asked to resign at age 60 "like most people in Korea do" under sovereign immunity). In 2020, Plaintiff signed a release in return for an extension of his employment for another year beyond that. DSMF ¶¶ 41-46. By presenting the release and promising to extend his employment through June 2021, Defendant made an offer; by signing, Plaintiff accepted such offer. The consideration here includes the release of claims in exchange for an extension of Plaintiff's employment beyond the ROK's requisite retirement age. Id., ¶ 46. Importantly, the parties specifically agreed that Plaintiff will release his claims concerning his employment in exchange for the extension thereof, an accommodation which required special permission and approval from the ROK government. Id., ¶¶ 43-44. A translation of the release, originally written in Korean is as follows:

> The above two sides execute this agreement because they have agreed not to assert civil and criminal claims in the future with respect to the termination of the employment relationship of the local employee (Hyun-Hee Nam) as of June 30, 2021[.]

Id. ¶¶ 46, 82.[3] Plaintiff has no legally recognizable ground for nullifying this settlement agreement, the benefits of which he already reaped.

---

[3] As explained in the foregoing sections of this memorandum, this release form, too, is follows the laws and regulations of the ROK, and Defendant has no discretion or authority to modify the same.

The language of the release is permissibly broad, and certainly covers claims relating to Plaintiff's employment and the termination thereof. Hence, Plaintiff's release of his claims under the NYLL, NYSHRL, and NYCHRL is valid and enforceable in favor of Defendant.

For the foregoing reasons, in addition or as an alternative to Defendant's immunity under the FSIA, Defendant respectfully submits Plaintiff's claims must be dismissed in their entirety for accord and satisfaction.

**B.** **The Facts Are Disputed and Insufficient to Establish Failure to Pay Plaintiff's Overtime Wages**

Plaintiff's "undisputed material facts" is unusual. Rather than citing facts of record as to what occurred or, at least, Plaintiff's version of what may have happened, he only restates the employment agreements. There are no citations or assertions as to whether the parties acted in accordance therewith. Thus, Plaintiff substitutes legal conclusions and allegations in the Complaint for a Rule 56-compliant factual compendium and, accordingly, fails to establish the facts necessary to warrant summary judgment as a matter of law. As a preliminary matter, the Court should disregard all of Plaintiff's statements of facts as it fails to comply with the mandates of Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be … genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record").

**iv.** **Defendant Paid Plaintiff's Overtime Wages**

The employment contracts cited in Plaintiff's statement of fact clearly provide the rates for Plaintiff's "off-schedule" hourly – not "overtime" – wages. See Defendant's Exhibits 17 through 30, § 5.[4] These provisions must be read with the caveat that the contracts are drafted in accordance

---

[4] As some of Plaintiff's exhibits are repetitive of those produced in support of Defendant's motion for summary judgment, reference is made to Defendant's motion exhibits for the sake of clarity and inclusion of translations where relevant.

14

with the ROK's wage laws and laws regarding overtime (see DSMF ¶ 50), which differ from those of the United States and New York – and apply to Plaintiff's employment[5].

Notwithstanding the distinction, Defendant maintained records of Plaintiff's "off-schedule" hours and paid him for such hours in accordance with ROK law. See Def. Ex. 40; Defendant's Response to PSMF, ¶ 16. When Plaintiff's "off-schedule" hours exceeded the ROK's monthly maximum of 52 hours (i.e., excluding regularly scheduled work hours), Defendant provided additional holiday benefits to compensate Plaintiff for such excess. Ex. 3, 62:22-63:9. At this stage of this lawsuit, no record has been established as to whether Plaintiff was fully paid his "overtime" wages; this determination must be made with a clearer understanding of the difference and interplay between the U.S. and the ROK's wage laws, explained infra.

**v.      Plaintiff Fails to Establish that He Worked Uncompensated <u>Overtime</u> Hours**

This distinction is particularly critical because the documents Plaintiff alleges establish his "overtime" hours do <u>not</u> accurately reflect Plaintiff's actual overtime. See Plaintiff's exhibit I;[6] see also Def. Ex. 40. As evidenced by the term in the employment contract, the documents set forth Plaintiff's "off-schedule" hours irrespective of whether he worked forty (40) hours a given workweek. In fact, Plaintiff's Exhibit I contains entries only for days where Plaintiff worked outside the regularly scheduled hours of 9 a.m. to 6 p.m. and does not reflect any hours he worked <u>less</u> on a different day (or not work at all). Such data would certainly reduce Plaintiff's alleged "overtime" hours, and the absence thereof should prevent the Court from conclusively finding whether Plaintiff worked overtime, for which Plaintiff was not compensated. Plaintiff has failed

---

[5] Plaintiff's counsel, too, agrees that the <u>ROK</u>'s wage law applies. <u>See</u> Def. Ex. 3, 76:8-20.

[6] Defendant disputes the accuracy of the translated title of Exhibit I. Plaintiff's translator translated the title of the document as "Overtime Verification Ledger" but its accurate translation is "Off-Schedule Work Verification Ledger." <u>See</u> Def. Ex. 40. The portion translating into "Off-Schedule" is, in Korean characters "시간외" and is the same term used in section 5 of each of the employment contracts that is correctly translated as "off-schedule". Defendant's Exhibits 17-30.

to set forth a clear record of this distinction or the evidentiary significance of Plaintiff's Exhibit I. Defendant further disputes Plaintiff's characterization of Exhibit I as relating to "overtime" as opposed to "off-schedule hours" to the extent it may be deemed a "fact" or evidentiary record in this matter. DSMF ¶ 86; Defendant's Response to PSMF, ¶ 16; see Def. Ex. 40.

Defendant respectfully submits, for the purposes of disputing Plaintiff's erroneous translation of the Korean term appearing on Exhibit I (in Korean character, "시간외", pronounced "shi-gan-weh" (see Def. Ex. 40, ¶ 5)), that the Court may consider the text of the ROK's Labor Standards Act ("ROKLSA"). Annexed hereto as Defendant's Exhibit 42 is a parial translation of Articles 50, 53, and 56 of the ROK's Labor Standards Act. The ROKLSA defines a different term, "extended work" (in Korean character, "연장근로", pronounced "yeon-jang geun-ro" (see id., ¶¶ 10-11)) in a manner similar to how FLSA and NYLL defines "overtime": work performed in excess of 40 hours per week.[7] Extended work is only one of many types of compensable work included in the definition of "off-schedule" work. Def. Ex. 40, ¶¶ 10-16. Accordingly, the Court must reject Plaintiff's contention that his Exhibit I is a record of his "overtime" hours.

Moreover, Plaintiff relies on snippets from Exhibit I, submitting translated copies of only three (3) out of sixty (60) months' employment, cherry-picking his sampling and attempting to obscure the material facts. Plaintiff fails to identify any number of "overtime" (not "off-schedule") hours he worked, let alone establish a reliable average per week or total over the course of his employment. Plaintiff solely relies on his unverified pleadings rather than any sworn (i.e.: reliable) evidence or testimony to allege he worked "overtime," and submits no uncontroverted evidence showing he was not compensated for any of it. Plaintiff's submission of facts – including those not

---

[7] The text of the ROK's Labor Standards Act also defines "extended work" as work performed in excess of 8 hours per day. As such, the term "extended work" under the ROK's Labor Standards Act is not entirely synonymous with the term "overtime work" under the FLSA and NYLL.

contained in his Rule 56.1 statement – are not only disputed but also wholly insufficient to avoid dismissal of this action, let alone warrant partial summary judgment in his favor.

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion for partial summary judgment with respect to his claims for unpaid overtime wages.

**C. Defendant Is Not Liable for any Statutory Damages under NYLL 198**

**vi.     Defendant Is Not an "Employer" Under New York Labor Law § 190**

The remainder of Plaintiff's claim relates to alleged violations of the "wage notice" and "wage statement" requirements of NYLL § 195(1) and (3). New York Labor Law, however, specifically exempts a governmental agency from these requirements. Hence, Defendant - which is indisputably a sovereign entity and a governmental agency of the Republic of Korea - is exempt from this requirement.

The New York State legislature's intention with this specific exemption is evident in the contrast between the definition of an "employer" in sections 190 (under Article 6 for "Payment of Wages") and 651 (under Article 19 for "Minimum Wage Act"). A review of the two sections' language is informative. Section 651 defines an "employer" concisely but very broadly as:

> any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer.

NYLL § 651(6). In contrast, § 190 expressly and unambiguously creates an exception for governmental agencies:

> "Employer" includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.  The term "employer" shall not include a governmental agency.

NYLL § 190(3) (emphasis added).

17

Plaintiff seeks statutory damages pursuant to § 198(1-b) and (1-d), which provides for remedies for violation of the wage notice and wage statement requirements pursuant to § 195(1) and (3). However, the requirements under § 195 are imposed only on "employers" as defined in § 190 which <u>excludes</u> governmental agencies, like Defendant. Simply stated, Plaintiff is wrong as to the applicability of § 195 to Defendant and as such, his claims for statutory damages lack merit.

For the foregoing reasons, Defendant requests that the Court deny Plaintiff's motion for summary judgment with respect to the statutory damages pursuant to NYLL § 198(1-b) and (1-d).

**vii.    Defendant Provided the Required "Wage Notice" Pursuant to NYLL § 195(1).**

Even assuming, <u>arguendo</u>, Defendant <u>is</u> subject to § 195, Defendant did provide Plaintiff a wage notice in compliance with subsection (1). The statute requires employers (excluding governmental agencies) to:

> provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a). The parties signed an employment contract at the time of hire and annually thereafter including such information. Although the contract is missing the Mission's and/or the Minister's phone number and address, Plaintiff was provided such information regularly as the same was unavoidable in performing his chauffeuring duties. Defendant has thus, at minimum, substantially complied with the requirements promulgated under § 195(1).

18

viii.    **Defendant has Affirmative Defenses to Plaintiff's Claim for Statutory Damages.**

Both provisions of the NYLL providing for statutory damages also provide two separate

grounds of statutory affirmative defenses:

> it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

NYLL § 198(1-b) and (1-d).

First, as argued above, Plaintiff failed to make a sufficient showing that he was not paid

wages for his "overtime" hours, and it is Defendant's position that he <u>has been</u> paid all wages due

to him. In light of Plaintiff's failure to meet his burden, it is premature for the Court to make a

determination as to the first affirmative defense of "complete and timely payment of wages" and

thus premature to grant summary judgment on this issue.

Furthermore, even assuming for purposes of this motion only that: (i) Defendant is not

immune under the FSIA, (ii) Plaintiff proves he was underpaid wages, and (iii) for § 198(1-b), that

the employment contracts do not satisfy the requirements of § 195(1)(a), Defendant still

"reasonably believed in good faith" that it was not required comply with § 195. Defendant is a

sovereign entity and a governmental entity that is <u>presumptively</u> immune from suit in the United

States and thus exempt from the requirements of § 195; it is also an entity heavily regulated by the

ROK's government and the United Nations and has its policies reviewed by them. The second

affirmative defense grants safe harbor to the Mission from any assessment of statutory damages.

19

D.  **Defendant Is Not Liable to Pay Liquidated Damages**

As is the case for the majority of Plaintiff's brief, he outlines applicable law regarding liquidated damages but jumps to legal conclusions without citing factual support. Indeed, essentially none of the facts in his brief are supported by his Rule 56.1 statement of material facts. Plaintiff asserts the terms of Plaintiff's employment contract, as opposed to Defendant's actual practices, are "uncontroverted evidence" of Defendant's willfulness for violating the FLSA and the NYLL. It is simply not.

The threshold issue in this litigation is the Defendant's immunity under the FSIA. Even at this stage, Defendant maintains a good faith belief that it is immune to suit in the United States, and that neither the laws of the United States nor the State of New York applies to its employment practices with respect to Plaintiff's post. Consistent therewith, decades of federal case law support Defendant's good faith belief: Figueroa, Bardales, Crum, Kato, and so on.

Even if, in the worst-case scenario for Defendant, the Court finds Defendant is bound by the FLSA and NYLL, and also finds Defendant to be in violation of the same, Defendant still has ample grounds supporting its good-faith belief of immunity to suit that would utterly abrogate any allegation of willfulness. For the foregoing reasons, Defendant respectfully submits no liquidated damages should be assessed against it for any damages to be awarded in this matter, if any.

E.  **Plaintiff is Not Entitled to Attorneys' Fees, Costs, or Pre-Judgment Interest**

Plaintiff argues this point under the mistaken belief that he will be awarded something from this lawsuit. At the current stage of this lawsuit, however, Plaintiff fails to make any showing of entitlement to damages. As detailed above, Plaintiff fails to even allege a dollar amount for unpaid overtime, let alone establish entitlement to any statutory damages.

For the foregoing reasons, Defendant respectfully submits the Court should deny Plaintiff's request for fees, costs, and interest as, at least, premature.

**A-790**

IV.    <u>**CONCLUSION**</u>

      For the foregoing reasons, it is respectfully requested that the Court deny Plaintiff's motion

for partial summary judgment and grant Defendant's co-pending motion for summary judgment.

                             Respectfully submitted,

Dated: August 29, 2022                    _/s/ Joshua S. Lim_____

                             Joshua S. Lim, Esq.

                             **Kim, Cho & Lim, LLC**

                             460 Bergen Boulevard, Suite 305

                             Palisades Park, New Jersey 07650

                             T: 201-585-7400

                             F: 201-585-7422

                             joshualim@kcllawfirm.com

                             *Attorneys for Defendant*

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HYUNHUY NAM,

                Plaintiff,

        v.

PERMANENT MISSION OF THE
REPUBLIC OF KOREA TO THE UNITED
NATIONS;

                Defendant.

Case No.: 1:21-cv-06165-RA

CIVIL ACTION

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S FRCP 56.1
STATEMENT OF MATERIAL FACTS
AND DEFENDANT'S
COUNTER-STATEMENT OF FACTS**

---

      Defendant, Permanent Mission of the Republic of Korea to the United Nations ("Mission"

or "Defendant"), respectfully submits its response to Plaintiff's Rule 56.1 Statement of Material

Facts, filed July 28, 2022, and its Counter-Statement of Material Facts. Any admissions made

herein are made solely for the purposes of Plaintiff's motion for partial summary judgment and

Defendant's co-pending motion for summary judgment. Defendant reserves the right to dispute

any such facts admitted herein at the time of trial.

      In accordance with the individual rules for Hon. Ronnie Abrams, U.S.D.J., Plaintiff's

statement of facts is reproduced herein, followed by Defendant's response thereto.

        **Defendant's Response to Plaintiff's FRCP 56.1 Statement of Material Facts**

      1.     Nam is a 61-year-old permanent resident of the United States who lives in New

Jersey and was a former employee of Defendant Permanent Mission of the Republic of Korea to

the United Nations (hereinafter "Permanent Mission") from around June 28, 2016 to June 30, 2021.

Compl. ¶ 25.

1

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); <u>see</u> <u>also</u> Local Civ. Rule 56.1(d) ("Each statement … must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)). Subject to and without waiving the foregoing objections, Defendant does not dispute Plaintiff's statement, paragraph 1.

2.      Permanent Mission is a foreign consulate located in Manhattan. Id. ¶ 4.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant does not dispute Plaintiff's statement, paragraph 2, but adds that Defendant is an instrumentality of foreign sovereignty. Def. Ex. 1 (Complaint), ¶ 5.

3.      After responding to an online job advertisement placed by the Permanent Mission, Nam was hired by Defendant in 2016. Id. ¶¶ 35–36.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant does not dispute Plaintiff's statement, paragraph 3.

4.      Nam was responsible for driving members of the Permanent Mission staff and their

families or guests in a vehicle owned by the Mission. Id. ¶¶ 38, 41, 47.

    **Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 4. Plaintiff was <u>not</u> responsible for driving members of the <u>Permanent Mission staff</u>, but rather was assigned to be the designated driver for the Ministers at the Mission. Def. Ex. 3 (Transcript, Deposition of Counsellor at the Mission, Apr. 4, 2022), 23:25-24:10; Def. Ex. 2 (Transcript, Deposition of Plaintiff, Feb. 22, 2022), 44:23-45:1, 96:1-3.

    5.    Although Nam was hired as a chauffeur and performed his duties as a chauffeur, Permanent Mission gave Nam a job title as Chauffeur/Administrative Assistant. Id. ¶ 37.

    **Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant does not dispute that Plaintiff was hired as a chauffeur and performed his duties as a chauffeur but disputes that his job title was "Chauffeur/Administrative Assistant." Def. Ex. 39, ¶ 37.

    6.    Permanent Mission's employees are comprised of approximately 28 "non-diplomatic staff. Compl. ¶ 27.

    **Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ.

P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 6. There are "less than 40" such employees. Def. Ex. 3, 51:2-12.

7.      Permanent Mission is managed by a handful of Korean national "diplomatic staff." Compl. ¶ 28.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Defendant further objects to the extent the term "managed" is a legally significant term and the "handful" is vague as to its meaning. Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 7. Def. Ex. 39, ¶ 28.

8.      Permanent Mission often hire a chauffer(s) as "non-diplomatic staff" to provide transportation for the "diplomatic staff" to perform their duties as a member of Permanent Mission and as a personal driver to assist the staff and/or their family members with their personal affairs such as shopping or private appointment. Compl. ¶ 29.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Defendant further objects to the extent the term "personal affairs" is vague. Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 8. There had been no "personal use" of the Mission's chauffeurs or the official vehicle. Def. Ex. 3, 26:19-28:9.

9.      Throughout Plaintiff's employment with Defendants [sic], he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67.

   **Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 9. Def. Ex. 39, ¶ 67.

10.     Defendants [sic]did not compensate Plaintiff for overtime compensation according to state and federal laws. Compl. ¶ 74.

   **Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see also</u> Local Civ. Rule 56.1(d). Defendant further objects on the ground that this paragraph is a conclusion of law as opposed to a statement of fact. Subject to and without waiving the foregoing objections, and to the extent Defendant's response is required, Defendant disputes Plaintiff's statement, paragraph 10. Def. Ex. 39, ¶ 74.

11.     In 2016 employment contract, Permanent Mission set over time wage as $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.  See Exhibit B. 2016 Employment Contract.

   **Response:** Defendant objects to Plaintiff's statement to the extent the cited document

5

speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff falsely states the cited record relates to "over time wage" whereas the document clearly relates only to "off-schedule wages." Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 11. The document provides for the rate of <u>off-schedule</u> wages rates and not the overtime wage rates. Def. Exs. 17-18, § 5(3); Pl. Ex. B § 5(3).

12.     In 2017 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit C. 2017 Employment Contract

    **Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff falsely states the cited record relates to "over time wage" whereas the document clearly relates only to "off-schedule wages." Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 11. The document provides for the rate of <u>off-schedule</u> wages rates and not the overtime wage rates. Def. Exs. 19-20, § 5(second 3); Pl. Ex. C § 5(second 3).

13.     In 2018 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit D. 2018 Employment Contract

6

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff falsely states the cited record relates to "over time wage" whereas the document clearly relates only to "off-schedule wages." Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 11. The document provides for the rate of <u>off-schedule</u> wages rates and not the overtime wage rates. Def. Exs. 21-22, § 5(second 3); Pl. Ex. D § 5(second 3).

14.     In 2019 employment contract, Permanent Mission set over time wage at  $14.76 per hour but paid at a monthly maximum of 52 hours. See Exhibit E. 2018 Employment Contract

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff falsely states the cited record relates to "over time wage" whereas the document clearly relates only to "off-schedule wages." Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 11. The document provides for the rate of <u>off-schedule</u> wages rates and not the overtime wage rates. Def. Exs. 23-26, § 5(2); Pl. Ex. E § 5(2).

15.     In 2020 employment contract, Permanent Mission set over time wage at  $13.29 per hour but paid at a monthly maximum of 52 hours. See Exhibit F. 2018 Employment Contract

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document

speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff falsely states the cited record relates to "over time wage" whereas the document clearly relates only to "off-schedule wages." Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 11. The document provides for the rate of <u>off-schedule</u> wages rates and not the overtime wage rates. Def. Exs. 27-28, § 5(2); Pl. Ex. F § 5(2).

16.     2016 Permanent Mission's overtime records show that Nam's overtime payment was capped by $570 per month regardless of Nam's actual overtime wage. See Exhibit I p. 1.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff relies on an inaccurate translation of the original document written in Korean. The title of Plaintiff's Exhibit I is correctly translated as "<u>Off-Schedule</u> Work Confirmation Sheet" as opposed to "<u>Overtime</u> Hours Verification Ledger" as Plaintiff asserts. <u>See</u> Def. Ex. 40. Tellingly, Plaintiff submits in  his exhibits the proper translation of the following underlined term ("시간외" in Korean text) found in the employment contracts, Plaintiff's exhibits B through G:

## (2) <u>시간 외</u> 수당은 시간당 $13.29로 하되 月 52시간 한도 내에서 지급한다.

<u>E.g.</u>, Pl. Ex. F, p.2, § 5(2) (emphasis added) (underlined term pronounced "shi-gan-weh" (<i>see</i> Def. Ex. 40)), which is properly translated as "Off-schedule," <u>see</u> <u>e.g.</u>, Pl. Ex. F, p.8, § 5(2). Appearing

8

**A-799**

on Plaintiff's Exhibit I is the same Korean term, albeit without spacing:

시간외근무 확인대장

Pl. Ex. I. Plaintiff cannot conflate two such significant terms. Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 16. Def. Ex. 40.

17.     2017 Permanent Mission's overtime records show that that how [sic] Permanent Mission calculated Nam's overtime payment and the capped amount of overtime payment was $787 per month regardless of how many hours Nam worked per month as overtime. See Exhibit I pg. 2.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff relies on an inaccurate translation of the original document written in Korean. See Defendant's response to Plaintiff's statement of fact, paragraph 16 (above). Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 17. Def. Ex. 40.

18.     2018 Permanent Mission's overtime records show that Nam's overtime payment was capped by $787 per month regardless of Nam's actual overtime wage. See Exhibit I pg. 3.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited document speaks for itself. Defendant further objects on the ground that Plaintiff's statement is not a material fact, as it relates only to what the document sets forth, as opposed to the actual employment practices of the Mission. Defendant further objects on the ground that Plaintiff relies on an

inaccurate translation of the original document written in Korean. <u>See</u> Defendant's response to Plaintiff's statement of fact, paragraph 16 (above). Subject to and without waiving the foregoing objections, Defendant disputes Plaintiff's statement, paragraph 16. Def. Ex. 40.

19.    Due to the cap in the overtime payment, Nam had not received his overtime wage even though his monthly overtime hours exceeded 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL.

**Response:** Defendant objects to Plaintiff's statement to the extent it has no citation of any record or evidence. Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> Local Civ. Rule 56.1(d). Defendant further objects on the ground that this paragraph is a conclusion of law as opposed to a statement of fact. Subject to and without waiving the foregoing objections, and to the extent Defendant's response is required, Defendant disputes Plaintiff's statement, paragraph 19. Defendant cannot cite any record in support of its dispute because Plaintiff's statement is a conclusion of law and likewise lacks citation to the record.

20.    Plaintiff was not compensated for New York's "spread of hours" premium for shift that lasted longer than ten (10) hours. Compl. ¶ 75.

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> Local Civ. Rule 56.1(d). Defendant further objects on the ground that this paragraph is a conclusion of law as opposed to a statement of fact. Subject to and without waiving the foregoing objections, and to the extent Defendant's response is required, Defendant disputes Plaintiff's statement, paragraph 20. Def. Ex. 39, ¶ 75.

21.     Defendants [sic] did not provide Plaintiff with a wage notices [sic] at the time of his hiring. Instead, Permanent Mission, through its staff member(s), required Plaintiff to sign an agreement written in Korean labeled as "Contract for Employing a Chauffeur [English translation]" (hereafter, the "Agreement"), on yearly basis in every July (or April only in 2021) throughout Plaintiff's employment. Compl. ¶ 76

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); see also Local Civ. Rule 56.1(d). Defendant further objects on the ground that this paragraph is a conclusion of law as opposed to a statement of fact. Subject to and without waiving the foregoing objections, and to the extent Defendant's response is required, Defendant disputes Plaintiff's statement, paragraph 20, to the extent the Employment Contracts (Pl. Exs. B-G) constitute the "wage notices" referenced therein. Pl. Exs. B-G.

22.     Throughout Plaintiff's employment with Defendants [sic], Defendants [sic] paid Plaintiff in cash and did not provide Plaintiff with any paystub. Compl. ¶ 80

**Response:** Defendant objects to Plaintiff's statement to the extent the cited record is a mere allegation by Plaintiff, and not any sworn testimony or otherwise admissible evidence. Fed. R. Civ. P. 56(c); see also Local Civ. Rule 56.1(d). Defendant further objects on the ground that this paragraph is a conclusion of law as to what constitutes a "paystub." Subject to and without waiving the foregoing objections, Defendant does not dispute that Plaintiff was paid in cash.

**A-802**

### <u>Defendant's Counter-Statement of Material Facts</u>

      For the sake of convenience and ease of referencing and citation, Defendant continues the numbering of its statement fact from the last numbered paragraph in Defendant's FRCP 56.1 Statement of Material Facts submitted July 28, 2022.

84. Plaintiff believes he was helping the national interest of the ROK by assisting the ROK's officers and chauffeuring them. Def. Ex. 2, 131:20-25.

85. Defendant compensated Plaintiff for any "off-schedule" hours exceeding 52 hours per month by providing additional holiday benefits. Def. Ex. 3, 61:22-62:9.

86. The correct translation of the Korean term "시간외" in the context of employment is "off-schedule." Def. Ex. 40, ¶ 19.

      Respectfully submitted,

Dated: August 29, 2022

      _/s/ Joshua S. Lim_____
      Joshua S. Lim, Esq.
      **Kim, Cho & Lim, LLC**
      460 Bergen Boulevard, Suite 305
      Palisades Park, New Jersey 07650
      T: 201-585-7400
      F: 201-585-7422
      joshualim@kcllawfirm.com
      *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HYUNHUY NAM,<br><br>                    Plaintiff,<br><br>v.<br><br>PERMANENT MISSION OF THE<br>REPUBLIC OF KOREA TO THE UNITED<br>NATIONS;<br><br>                    Defendant. | Case No.: 1:21-cv-06165-RA<br><br><u>CIVIL ACTION</u><br><br>**DECLARATION OF JOSHUA S. LIM, ESQ**<br>**IN SUPPORT OF DEFENDANT'S**<br>**MOTION FOR SUMMARY JUDGMENT**<br>**PURSUANT TO FRCP 56** |

Joshua S. Lim, Esq., of full age, hereby respectfully makes the following declaration pursuant to 28 U.S.C. § 1746(1):

1.   The undersigned is a partner at the law offices of Kim, Cho & Lim, LLC, attorneys for defendant Permanent Mission of the Republic of Korea to the United Nations ("Mission" or "Defendant").

2.   As such, the declarant is familiar with the facts stated herein.

3.   Annexed hereto as Exhibit 3-2 is a true and correct copy of the transcript of the deposition of the Counsellor at the Mission, taken on April 4, 2022.

4.   Exhibit 3-2 contains those pages of the transcript which were <u>not</u> appended as Exhibit 3 submitted with the Mission's motion for summary judgment, filed July 28, 2022.

5.   Annexed hereto as Exhibit 39 is a true and correct copy of the Defendant's Answer filed in this matter on February 11, 2022.

6.   Annexed hereto as Exhibit 40 is a true and correct copy of a declaration by Fran Yoon, dated August 26, 2022.

1

**A-804**

7.   Annexed hereto as Exhibit 41 is a true and correct copy of Articles 50,  53, and 56 of the ROK's Labor Standards Act, obtained from: https://www.law.go.kr/법령/근로기준법,[1] last accessed August 26, 2022 at 4:09 PM.

8.   Annexed hereto as Exhibit 42 is a true and correct copy of a partial translation of Exhibit 41 by Fran Yoon, and her certification of translation.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2022

_/s/ Joshua S. Lim_____
Joshua S. Lim, Esq.
**Kim, Cho & Lim, LLC**
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
T: 201-585-7400
F: 201-585-7422
joshualim@kcllawfirm.com
*Attorneys for Defendant*

---

[1] An alternate web address not containing any Korean character is as follows:
https://www.law.go.kr/%EB%B2%95%EB%A0%B9/%EA%B7%BC%EB%A1%9C%EA%B8%B0%EC%A4%80%EB%B2%95

2

# EXHIBIT 3

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                              Defendant's Motion for Summary Judgment

1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

HYUNHUY NAM,

                    Plaintiff,

          -against-

                         Case No. 1:21-cv-06165-AJN


PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE
UNITED NATIONS,

                    Defendants.


------------------------------------------------X

                         136-20 38th Avenue
                         Flushing, New York

                         April 4, 2022
                         10:25 A.M.




    DEPOSITION of JO JINHO, a non-party witness on

behalf of the Defendant herein, taken by the

attorneys for their respective parties, pursuant

to Notice, held at the above time and place before

Maria Lemmo, a Stenotype Reporter and Notary Public

within and for the State of New York.
```

```
                                                                2

 1   A P P E A R A N C E S:

 2

 3   HANG & ASSOCIATES, PLLC
     Attorneys for Plaintiff
 4         136-20 38th Avenue, Suite 10G
           Flushing, New York 11354
 5
     BY:  SHAN ZHU, ESQ.
 6         YONGJIN BAE, ESQ.

 7
     KIM, CHO &  LIM, LLC
 8   Attorneys for Defendant
           460 Bergen Boulevard, Suite 305
 9         Palisades Park, New Jersey 07650

10   BY:   JOSHUA S. LIM, ESQ.

11

12

13

14   ALSO PRESENT:

15   SEAN KIM, Korean Interpreter
     Eiber Translations
16

17

18

19

20

21

22

23

24

25
```

3

1

2    S E A N   K I M, the Korean Interpreter herein,

3    was duly sworn to interpret the questions from

4    English into Korean and the answers from Korean

5    into English, to the best of his ability:

6    J O   J I N H O, the witness herein, having been

7    duly sworn through the Interpreter, was examined

8    and testified as follows:

9    EXAMINATION BY

10   SHAN ZHU, ESQ.:

11        Q.   What is your name, please?

12        A.   Jo Jinho.

13        Q.   What is your address?

14        A.   335 East 45th Street, New York, New York

15   10017.

16        Q.   Mr. Jinho, my name is Shan Zhu.  I'm

17   counsel for Mr. Nan.  Are you familiar with this

18   person?

19        A.   Yes, I'm aware of him.

20        Q.   Are you aware a few weeks before your

21   attorney has conducted Mr. Nan's deposition?

22        A.   Yes.

23        Q.   Is that true you were physically present

24   in that deposition as well?

25        A.   Which deposition?

8

1                    J. Jinho

2    various topics that the UN meetings deal with,

3    topics such as politics, economy, cultural

4    climate change, et cetera, these were the topics

5    that UN deals with.  Among them, I work with

6    specifically the politics related work so that's

7    where I am involved with in terms of

8    participation among the variety of meetings that

9    take place there.

10    Q.   Is there any other individual who has

11   been assigned to work on political affairs with

12   you concerning the meetings with UN?

13    A.   Mr. Hyunhuy Nam, when he did the work as

14   he took care of the Ministers, those Ministers did

15   the same type of work that I did as a team, same

16   team.

17    Q.   Can you spell the name of Mr. Nam that

18   you just testified?

19        MR. LIM:  I think we can stipulate that

20        it was the name of the Plaintiff.  Mr. Nam,

21        that he mentioned is actually the Plaintiff

22        in the pleading.  He's referring to the

23        Plaintiff, H-Y-U-N-H-U-Y and N-A-M is his

24        last name.

25    Q.   Earlier you said Mr. Nam, are you

**A-810**

```
                                                             10
 1                    J. Jinho
 2      A.   Got it.
 3      Q.   You're free to talk with him while
 4   you're off the stand or excused as a witness.  It
 5   should not impair your ability to talk with him;
 6   are we clear about this?
 7      A.   Yes, got it.  I would like to see my
 8   record the confirm whether the spelling is
 9   C-H-U-N-G or J-U-N-G.
10      Q.   You need to refer to a certain record.
11   Do you have any idea of what this record would
12   look like?
13           MR. LIM:  You first named him as a
14      defendant.  It got dismissed.
15           MR. ZHU:  It's C-H-U-N-G.
16      A.   Complaint.
17      Q.   Back to the boss Minister maybe the last
18   name is Chung or Jung, can you tell me why you
19   refer to him or her as the boss Minister?
20      A.   So this Minister, his work is something
21   that requires high level security.  So therefore,
22   as according to the Republican of Korean's law,
23   he is categorized as a high level Minister of the
24   government.  So therefore, Mr. Nam, his work was
25   to support someone who needed a high level
```

```
                                                    12
1                    J. Jinho
2       stipulated the boss Minister the witness is
3       referring to his last is name C-H-U-N-G.
4       Q.   So the question will be does Mr. Chung,
5    earlier you said the instruction, would those
6    instructions include your working schedule?
7       A.   What exactly is the work schedule by
8    your definition, please?
9       Q.   When I say working schedule, that means,
10   when you're supposed to start work, when you're
11   supposed to leave work in a given week, Monday,
12   Tuesday, Wednesday, Thursday, Friday; were those
13   instructions including your working schedules?
14      A.   So basically as far as this type of work
15   related issues, we follow the Korean law, Korean
16   principles, so when one goes to vacation, we're
17   supposed to let them know beforehand giving
18   notification.  And as far as the schedule part,
19   first of all, in general, the general practice is
20   we have to follow the general practice.  However,
21   specifically depending on the real circumstances
22   of the day or time, we would discuss with Mr.
23   Chung the specific schedule together and based on
24   his instruction, it was followed.  Based on his
25   decision, it was followed.
```

16

1                      J. Jinho

2              MR. ZHU:  If he don't understand --

3              MR. LIM:  I just ask for clarification.

4        If the answer is fuzzy, I'll ask for

5        clarification.

6        A.    Could you repeat that?

7        Q.    Let me try another way to the extent of

8    your knowledge as to those instructions.  Is there

9    any time that those instructions include when Mr.

10   Nam should report to work?

11       A.    When to report to work?

12       Q.    Yes.

13       A.    So basically as far as Mr. Nam's time to

14   report to work and time to go home hours,

15   basically his work schedule you're asking, it was

16   already decided by the Korean law system as well

17   as general practice.  Although, if there's some

18   task that needed to be done quickly and Mr. Nam

19   needed to come to work quickly, in those types of

20   cases, Minister Chung would tell directly to Mr.

21   Nam about it and that was what happened except

22   because we are the same team, we were aware that

23   that's the day that some important stuff is

24   happening so he's reporting to work early, so we

25   are kind of aware of it as well.

21

1                    J. Jinho

2          MR. LIM:  Let's spell the names

3      correctly.  As defendant's counsel, I would

4      be more than happy to stipulate that Mr. Nam

5      worked for several Ministers in the past,

6      besides Mr. Chung who is also the Minister.

7      The names are as follows, I believe Mr. Nam

8      testified under oath last month, I believe

9      the first Minister he worked for from 2016

10     to 2017 B-O-N-G W-O-O K-O.  The second

11     Minister Mr. Nam worked for was J-E-O-N-G,

12     J-A-E  L-E-E, that's his last name.  I

13     believe he worked for this Minister Lee from

14     2018 through 2019 or whatever the contract

15     provides.  Then the third Minister he worked

16     for was K-Y-U-N-G Y-U-L H-A-N.  These are

17     the Ministers Mr. Nam worked for in the

18     past.  Beginning from 2016 and I believe

19     Minister Chung.

20         I want to clarify the record.  I'll be

21     happy to stipulate that Mr. Nam worked for

22     several Ministers the names of which were

23     announced a minute ago.  The sequence in

24     terms of who he worked for and when he

25     worked for, I believe, the sequence goes

**A-814**

22

```
1                    J. Jinho
2        something like this Minister Ko first and
3        Minister Han next and Minister Lee third and
4        Minister Chung last.  So Mr. Nam worked for
5        these Ministers in the manner that I just
6        indicated.  Are we clear about this?
7             MR. ZHU:  Yes.
8             MR. LIM:  I'll be more than happy to
9        stipulate.
10       Q.   While you and Mr. Nam working as a team,
11   can you describe Mr. Nam's job function?
12       A.   So Mr. Nam was doing the task of
13   supporting the foreign affairs Minister, such as
14   Minister Chung, who required high level security,
15   and since Minister Chung is someone who is
16   categorized as a high level officer and Mr. Nam
17   was the head.  Mr. Nam had no other choice but to
18   come to know where Minister Chung is going, with
19   whom he is meeting with and what kind of
20   conversation he's having with that other person,
21   in what location.  Since that was what he was
22   doing and because Mr. Nam had this special
23   characteristic of a job that he would be able to
24   find out information such as top secret
25   information, classified information in the process
```

**A-815**

23

1               J. Jinho

2     of working with Minister Chung.  So therefore,

3     Mr. Nam needed a separate security clearance from

4     us.  From the time of the employment, Mr. Nam was

5     required to the background check, of course with

6     his agreement to that and every year that is why

7     we required his signature for renewed security,

8     security pledges and because of that his job

9     function -- you told me to make it brief earlier,

10    but could I add to that --

11          MR. ZHU:  Please go ahead.

12    A.    For example because Mr. Nam's job

13    required this type of high level security, to

14    give an example let's say if a cabinet level VIP

15    is visiting from the Republican of Korea, Mr.

16    Nam's car was used to give transportation for

17    such individual in the same car with Minister

18    Chung, and of course because of security reason

19    I cannot reveal of this information, but at one

20    point Mr. Nam directly drove national security

21    advisor to the president himself even.

22    Q.    Isn't Mr. Nam's function as a driver of

23    Ministers although he often time need a security

24    clearance from time to time?

25    A.    Well, the responsibility of Mr. Nam's,

24

1                    J. Jinho

2    yes, his main job is the vehicle operation of

3    Minister, that was what he was assigned to do as

4    his main job, but other than that what is

5    included in this contract is diplomatic protocol

6    work admission work is also included as well.

7              MR. LIM:  Objection to the translation.

8         He used to word designated.

9         A.   Who drove was the designated Minister's

10    vehicle.

11             MR. LIM:  Are we clear that we have a

12        correct translation that he was a driver for

13        the designated Minister's vehicle?  Off the

14        record.

15             (Whereupon a discussion was held off the

16        record.)

17             MR. LIM:  We have pre-marked certain

18        exhibits which were used for Mr. Nam's

19        deposition.  To avoid confusion, we would

20        rather use the same exhibits so that we're

21        referring to the same documents we can

22        stipulate --

23             MR. BAE:  We will call it Plaintiff's 1.

24             MR. LIM:  I thought we already marked it

25        as P1.  Why don't you refer to it as P1 so

**A-817**

26

1              J. Jinho

2        the contract?

3              MR. BAE:  Per job description in the

4        employment contract, I'm asking whether Mr.

5        Nam has ever done anything outside of his

6        job duty like personal use?

7              MR. ZHU:  Ever did he go off or did

8        more than what have been described in the

9        employment contract?

10       A.   When you say the term outside the work

11   described, I think the word outside has such a

12   broad and abstract meaning to it.  So if you can

13   specify exactly what you're referring to, I think

14   that would help in answering.

15       Q.   Under article 2 subsection 2, it says

16   job related instructions including chauffeuring

17   and other executive duties.

18       A.   Yes.

19       Q.   Have you ever heard Mr. Nam worked for

20   any purpose other than this duty described in

21   the contract?

22       A.   I'm not aware.

23       Q.   You have never heard of it?

24             MR. LIM:  Counsel, I think you never

25        heard that Mr. Nam was working outside of

27

1          J. Jinho

2     the scope of the contract?  You said heard

3     of it, so I don't know what you mean by

4     heard of it.

5          MR. BAE:  It means Mr. Nam's service has

6     been used for personal uses.

7     A.   Well, I don't know when you say -- I

8  don't know what you mean of the example when you

9  talk about such example as it, but as the term

10  personal use you mentioned, correct, for us, for

11  Mr. Nam who served Ministers such as Minister

12  Chung now the thing is Ministers have their own

13  private vehicles and Mr. Nam was driving the

14  Minister's work related official vehicle, that was

15  his task.  Therefore, Mr. Nam was prohibited to

16  drive Mr. Chung's personal vehicle and he never

17  did that, but on the other hand, the other

18  administrative employees other than Mr. Nam, were

19  prohibited to drive the official vehicle of

20  Minister Chung also, and that was never done

21  either.  I've never heard of such thing.  As a

22  reference, Mr. Nam is carrying out the task for

23  Minister who requires high level security and in

24  that process, once in a while, the meetings and

25  discussions with high level counterpart take

28

```
 1                    J. Jinho
 2   place not only outside, but also in the house.
 3   In such cases, in the preparation for such an
 4   important meeting, Mr. Nam was asked to purchase
 5   some gift for the counterpart Minister or he also
 6   did the task of shopping in case there is some
 7   meal preparation required for the purpose of
 8   foreign affairs.  Therefore, I've never heard of
 9   such personal use.
10        MR. LIM:  Objection to the translation
11     on two levels.  He did not say Minister
12     Chung he said Ministers.  You said he worked
13     for the Minister Chung, he said Ministers,
14     plural.
15        The other thing is he did not say that
16     Mr. Nam was asked to purchase or going
17     shopping.  In fact, we can clarify the
18     answer, when the Ministers were carrying out
19     these duties, Mr. Nam went with the
20     Ministers to purchase.  In other words, Mr.
21     Nam wasn't the one that purchased.  It
22     wasn't Mr. Nam that went shopping.  If you
23     could just clarify that.
24        MR. BAE:  I would like to clarify my
25     question.
```

```
                                                          33
1                    J. Jinho

2        lay the foundation.

3        A.   I don't mean that at all.  My point is

4    this: what I was pointing out was Mr. Nam's work

5    hours, whether it's overtime hours or whatnot, it

6    was an honor system where Mr. Nam was the one who

7    wrote it himself, and whatever he wrote was

8    confirmed.  That was the system and the reason

9    that I'm pointing that out is because you pointed

10   out that Mr. Nam's starting work time is way

11   earlier always than what the contract says, but

12   I'm pointing out that that is what Mr. Nam agreed

13   to voluntarily and because he said that is

14   possible and that means that before it was done

15   it was discussed.  That's what I'm pointing out.

16       Q.   Let me ask a different question.  How

17   did you hire Mr. Nam?

18            MR. LIM:  Do you mean the Mission, not

19       him individually, how did the Mission hire

20       Mr. Nam?

21            MR. BAE:  Yes.

22       A.   So basically it's the same process.  It

23   is according to the principal set by the Korea

24   and the general practice, a person is hired.  So

25   initially there's a help wanted that is put up in
```

```
                                                      39
1                    J. Jinho

2    participated in these interviews where you obtain

3    the candidate from either third-party website or

4    Mission's official website?

5         A.   So first of all, Mr. Nam's case, the

6    person who was in charge at the time who was Mr.

7    C-H-O-I was the one, and the Minister who was

8    there at the time Mr. Ko was the one who

9    conducted the interview.

10        Q.   What is the position of Mr. Choi?

11        A.   So Mr. Choi's position was

12   administratively manager, the position like Mr.

13   Nam's.

14        Q.   Do you consider Mr. Choi diplomatic

15   staff?

16        A.   Yes.

17        Q.   Based on your knowledge, did Mr. Choi

18   register with the Department of State?

19        A.   Of course, yes.

20        Q.   Based on your knowledge, does Mr. Nam,

21   did or does, Mr. Nam register with the Department

22   of State?

23             MR. LIM:  As a diplomatic staff?  Is

24        that the question?

25             MR. ZHU:  Yes.
```

**A-822**

42

1              J. Jinho

2      Based on your knowledge who decides whether

3   the person should be hired by the Mission other

4   than the security check?

5              MR. LIM:  Not an objection, but we're

6         talking about general practice, not Mr. Nam?

7              MR. ZHU:  Yes.

8              MR. LIM:  I'm afraid every position is

9         different.  I don't know where we're going

10        with this.

11      A.   Well, in Mr. Nam's case it would be the

12   Minister who Mr. Nam would directly serve in the

13   end, so finally it would be the Minister who would

14   say oh, this person looks good.

15      Q.   Have the Mission ever fired anybody?

16              MR. LIM:  What's the timeframe?

17      Q.   From the year 2016 until present based

18   on your knowledge?

19      A.   To my understanding, no.

20      Q.   Based on your understanding, is there a

21   firing process employed by the Mission?

22              MR. LIM:  Again he used a word and I

23         just want to clarify.  Are you talking about

24         voluntary termination or involuntary, firing

25         is involuntary.  He used the word it includes

46

```
 1                  J. Jinho
 2   to Mr. Nam as diplomatic staff.
 3            MR. LIM:  He already said several times
 4        he was not registered, he was not a
 5        diplomatic staff.
 6        A.   I never said that.
 7        Q.   There's a misunderstanding.  I heard you
 8   talk Mr. Nam has not registered with diplomat
 9   Department of State, but you mentioned Mr. Nam
10   was diplomatic staff, no?
11        A.   Never said that.  What I was thinking at
12   the time briefly was that in the case of Mr. Nam,
13   so what happens is there's a week called high
14   level week and general UN, general assembly.  In
15   that type of period, the whole neighborhood
16   around the UN is blocked.  So as part of the UN
17   representative team, Mr. Nam receives a pass to
18   get through that traffic, security pass and in
19   that sense he was registered, in that sense.
20   That's what I was briefly contemplating there.
21        Q.   Regardless of registering issue, do you
22   think Mr. Nam worked as a diplomatic staff or
23   non-diplomatic staff?
24            MR. LIM:  Asked and answered.
25        A.   Like I told you earlier, he worked as a
```

47

1                    J. Jinho

2    non-diplomatic staff.

3              MR. LIM:  For the record, he did say

4         that Mr. Nam was registered with the UN in

5         order to receive a security pass during the

6         high level week.  Your question was whether

7         he was registered with the Department of

8         State.  He said no, he was registered with

9         the UN during the high level week to receive

10        a security pass.  Are we clear?

11   CONTINUED EXAMINATION BY

12   SHAN ZHU:

13        Q.   Is that true the registration of Mr. Nam

14   to the UN is for limited event or he was

15   registered throughout this employment period?

16        A.   So there are the security passes that's

17   the only issued for that period of time for that

18   event, so Mr. Nam received that pass.

19             MR. BAE:  Mark this as Plaintiff's 3,

20        P3.

21             (Whereupon security pass was marked

22        Plaintiff's Exhibit 3 for Identification.

23             MR. LIM:  Did you produce this during

24        Discovery?  I don't think you did.  The

25        exhibit that was just marked as P3 is what

50

1                    J. Jinho

2      Q.   How many diplomatic staff are there at

3   Mission?

4           MR. LIM:  What's the timeframe?

5           MR. BAE:  From 2016 to 2020.

6      A.   You're asking the whole time period, how

7   many total?

8      Q.   Yes.

9      A.   Based on what is happening now, I would

10  say less than 40.

11     Q.   How about non-diplomatic staff?

12     A.   Also less than 40.

13     Q.   Does Mission provide any Verizon family

14  cell phone plan?

15          MR. LIM:  For who?

16          MR. BAE:  For employees.

17     A.   So for the diplomatic staff, the fee is

18  being supported and I receive such benefit as

19  well currently.

20     Q.   Did Mr. Nam receive those benefits?

21          MR. LIM:  Do you mean that benefit or

22      those benefits?

23          MR. BAE:  That benefit.

24     A.   I don't know exactly, but I believe Mr.

25  Nam may not have received it, I think.

**A-826**

52

```
 1                    J. Jinho
 2    CONTINUED EXAMINATION BY
 3    YONGJIN BAE:
 4       Q.   As to background check, diplomatic staff
 5    and non-diplomatic staff are both required to go
 6    through background check?
 7       A.   In general, yes.
 8       Q.   But it's not specific occasion for Mr.
 9    Nam, right?
10            MR. LIM:  Do you mean it's not even
11       special?
12       Q.   I'm rephrasing my question, I'm sorry.
13    Mr. Nam is not the only person along
14    non-diplomatic employees who have been going
15    through security background check?
16            MR. LIM:  Off the record.
17            (Whereupon a discussion was held off the
18       record.)
19            MR. LIM:  The question is whether or not
20       Mr. Nam had to go through different security
21       clearance compared to other non-diplomatic
22       staff.  Is that your question?
23            MR. BAE:  That is correct.
24       A.   So like I said earlier, Mr. Nam had a
25    task to help the Minister who needed the high
```

**A-827**

53

```
 1                      J. Jinho

 2     level security, so compared to other

 3     non-diplomatic staff, Mr. Nam had to go through

 4     high level security clearance and every year he

 5     had to fill out the security pledge to renew it,

 6     and he even said that he would voluntarily go

 7     through polygraph test and he agreed to do that

 8     and all these matters all written in the contract

 9     already, and no one else went through such

10     security clearance like Mr. Nam for other

11     non-diplomatic staff.

12         Q.   Was Mr. Nam the only driver at Missions?

13              MR. LIM:  From 2016 to 2020, correct?

14              MR. BAE:  Yes.

15         A.   No, not so.  There were other drivers as

16     well.

17         Q.   Why the other driver has not gone

18     through security clearance?

19         A.   The reason is that Mr. Nam's position

20     required to work for the Minister who requires

21     high level security and therefore, whoever

22     Minister meets, what kind of discussion Minister

23     has or whatever discussion is taking place in the

24     car, Mr. Nam was in a position to find out

25     naturally.  So being that the case, those kind of
```

**A-828**

54

1                    J. Jinho

2    information were top secret or classified

3    information based on the Republican Korean law

4    and this is something that Mr. Nam is fully aware

5    of and fully known, and that is why he had to go

6    through high security clearance unlike other

7    non-diplomatic staff.

8        Q.   Is there a designated driver for

9    Ambassador Cho?

10       A.   Yes, there is?

11       Q.   What's difference between Mr. Nam and

12   Ambassador Cho driver?  Ambassador Cho should be

13   higher than Minister ranking, right?

14       A.   So I believe the biggest difference is

15   whether the person is Korean citizen or not and

16   whether the person could speak Korean language or

17   not.

18            MR. LIM:  I think the question is

19        whether or not the ambassador's driver is

20        subject to the same security clearance; is

21        that your question?

22       A.   As a reference, of course, the

23   Ambassador is also high level security required

24   individuals so therefore Ambassador's driver also

25   is required a very special security clearance as

**A-829**

57

```
 1                    J. Jinho
 2    of all, it is fact that Mr. Nam went through the
 3    high level security clearance and he's the only
 4    person, Mr. Nam was the only one.  However, since
 5    your question was, wasn't that required for the
 6    Ambassador's driver as well so wouldn't it have
 7    been possible.  So my thought was that, yes, that
 8    can be something that I could verify or confirm
 9    or find out.  To my knowledge --
10         THE INTERPRETER:  And that's when the
11         counsel interjected something, but again the
12         witness goes on.
13    A.   Let me put it this way, the Ambassador's
14    driver is something that I have to verify
15    additionally, but to my knowledge, Mr. Nam was
16    the unique non-diplomatic personnel who had to go
17    through the security clearance as well as every
18    year had to submit the pledge to renew it.
19         MR. BAE:  Nothing further.
20    CONTINUED EXAMINATION BY
21    SHAN ZHU:
22    Q.   I want to draw your attention to P2 so
23    for your time record, can you generally tell me
24    how this document was, if you can go through and
25    let me know if you're ready.
```

**A-830**

61

```
 1                    J. Jinho

 2       A.   Are you talking about the contract P1

 3   for 2021?  If you look at number five in the

 4   contract, paragraph five in P1, it's written here

 5   how much is the basic wage or fee and how much is

 6   the supporting fee for residential and hourly

 7   wage is calculated in a certain way to my

 8   understanding.

 9            MR. ZHU:  Can you mark this as

10       Plaintiff's 4.

11            (Whereupon the employment contract for

12       2021 dated April 1, 2021 was marked

13       Plaintiff's Exhibit 4 for Identification.)

14       Q.   Mr. Jo, if you can quickly go over this

15   agreement that refresh your recollection as to

16   how Mr. Nan's wage was calculated in the year

17   2021?  Do you remember how Mr. Nan's wage was

18   calculated in that year?

19       A.   Okay, so based on this contract, basic

20   monthly wage is set at $1,710 and hourly wage is

21   set at $13.29.

22       Q.   I would draw your attention term fine

23   number 2 which says off schedule wages shall be

24   paid $13.29, but paid at the monthly maximum of

25   52 hours pursuant to Korean labor standard law.
```

62

1                    J. Jinho

2    Can you explain to me how this calculation works?

3         A.   So based on this contract to my

4    understanding of that sense is that overtime

5    hours is maxed out at 52 hours, and within that

6    maximum hours is calculated and whatever goes

7    beyond those hours, there will be replacing

8    additional holiday benefits or other means to

9    replace that.  It's my understanding.

10        Q.   Is that fair to conclude if Mr. Nan

11   worked for more than 52 hours off schedule, he

12   will not get paid?

13        A.   Honestly speaking, I don't know how it

14   was operated based on this contract.  In reality

15   the reason that two people came to represent the

16   Missions today is because although I know the

17   general maintenance management matters, but it's

18   Mr. Kim who is aware of the specific hours, how

19   the wages are calculated.  These things are what

20   he knows better than me so and how much was paid

21   calculated.

22        Q.   Let's come back to the term define

23   number two.  How do you define off schedule

24   wages?

25        A.   Off schedule wages?

68

1                    J. Jinho

2    knowledge, that was what happened.

3              One thing I want to add, as you already

4    know, this form is basically the form by the

5    Korean government, that Korean government uses

6    and from 2016 until the present time, they remain

7    almost the same identical and Mr. Nam probably

8    has all the copies from the past as well, and so

9    if Mr. Nam wanted to think about what was

10   explained at that meeting, if he requested it,

11   that was probably granted and then signed later

12   probably, but to my understanding this procedure

13   is followed according to the general practice.

14       Q.   So do you know for this specific

15   contract we're looking at whether Mr. Nam signed

16   this contract on the spot?

17       A.   To my understanding, yes, that was done.

18       Q.   Does mission have EIN number?

19            MR. LIM:  You have to explain what that

20       is.  It's a tax ID number.

21       A.   To my understanding, the Mission is

22   subject to the -- to my understanding the Mission

23   is tax exempt status.

24       Q.   That's not my question.  My question is

25   regardless of whether it Mission is tax except or

73

1                    J. Jinho

2    reflected in the contract.

3        Q.   Is there any written document you gave

4    to Mr. Nam which document how his wage being

5    calculated other than on the paid ledger in front

6    of you, the ledger meaning P2?

7        A.   So you're asking other than this ledger

8    is there any other document?

9        Q.   Right.

10       A.   To my understanding there is nothing

11   else.

12       Q.   If you may go back to the contract term

13   five, let's say if you're going to go back to P1

14   term five, so other than the regular wage there

15   are housing, medical insurance and the off

16   schedule wage phone access.  So based on your

17   understanding, if any of them is discretionary by

18   the Mission?

19       A.   So depending on the cases, there

20   occasions where we give out like encouraging

21   money or encouraging funds so called.  For

22   example, at the end of the year or after big

23   events, to express our sort of gratitude good

24   work guys, type of thing.

25       Q.   Let me try another way.  Under term 5-2

**A-834**

74

1              J. Jinho

2      it says housing $1,450 per month.  Is this amount

3      discretionary by Mission or Mission will give to

4      Mr. Nam regardless of his work?

5          A.   So this is a condition where basically

6      that amount is given out monthly.

7          Q.   Why you say basically, is there any

8      exception when the housing is not paid?

9          A.   To my understanding as to Mr. Nam, there

10     wasn't.

11         Q.   Let's move onto the medical insurance, a

12     $1,087 per month, would you consider this

13     discretionary from the Mission?

14             MR. LIM:  Versus mandatory?  I don't

15         understand.

16             MR. ZHU:  Discretionary meaning that

17         Mission determined whether to give his or

18         not.  Non-discretionary meaning that Mission

19         will give it to Mr. Nam regardless of his

20         work performance.

21         A.   So it is non-discretionary.  So I said

22     earlier, this was a basic form that Republican of

23     Korean government uses so it is not kind of

24     characteristic where if an employee or Mr. Nam is

25     lazy and not work, this is not given, it is

**A-835**

75

1                    J. Jinho

2    given.

3        Q.   What about the $1,900 bonus per year

4    described in term four, is that discretionary or

5    not?

6        A.   Non-discretionary.

7             MR. ZHU:  I don't have further question

8        for you Mr. Jo so my colleague will take

9        over.

10   CONTINUED EXAMINATION BY

11   YONGJIN BAE:

12       Q.   Mr. Jo, I have few questions before you

13   are being excused.

14       A.   Yes.

15       Q.   How many hours do you work per week?

16            MR. LIM:  Objection to that question.

17       It's not about him individually.  He's a

18       representative of the Mission.

19       Q.   Is it common that any employees in

20   Mission working 92 hours per week, more than 92

21   hours per week?

22            MR. LIM:  You're asking such a broad

23       question.

24       Q.   I want to know general practice.

25       A.   Basically it is fact that employees who

76

1                        J. Jinho

2    work at missions work overtime hours, meaning

3    overnight work.

4        Q.    According to the employment contract

5    between Mission and Mr. Nam in 2016, his overtime

6    was capped by $570 per month, right?

7        A.    Yes, that is correct.

8        Q.    In 2017, there was some change from

9    South Korean law regarding working hours called

10   capped 52 hours that applies to all organization

11   in Korea?

12            MR. LIM:  What do you mean by

13       organization?

14            MR. BAE:  Whether government or private

15       entity.  Mission shouldn't be applied at 52

16       hours.  That's the reason why 52 hours

17       capped.

18            MR. LIM:  There are exceptions, you know

19       that, right?  That law doesn't apply.

20            MR. BAE:  But here it applies.

21            MR. LIM:  You didn't ask whether it

22       applies, that's why I'm confused.  Are you

23       aware of the law?  You skipped that, that's

24       why I don't understand.

25       Q.    One question here did Mr. Nam have any

**A-837**

78

1              J. Jinho

2   to the Mission's building while the Minister was

3   having a meal at the meeting place, at the

4   restaurant.  So sometimes if it takes two hours

5   then Mr. Nam would come back to pick him up

6   according to that hour.  That is my understanding

7   of how it was done, and occasionally when the

8   meeting place was somewhere far that is when Mr.

9   Nam waited outside the restaurant until it was

10  done which happened not frequently.

11              MR. BAE:  No further questions.

12  EXAMINATION BY

13  JOSHUA LIM:

14      Q.   Mr. Jo, you have come a long way.  I'm

15  just going to ask a few follow-up questions.

16  Let's talk about the UN high level week that you

17  mentioned earlier.  Tell us a little bit about

18  what that is?

19      A.   So what UN does on usually, typically

20  about September month, they open up this event

21  called general assembly high level week which

22  invites the head of each of the states and they

23  participate in this event.

24      Q.   So during the time that Mr. Nam was

25  working for the Mission, did this high level week

79

1                    J. Jinho

2    event occur every year?

3        A.   Other than the year of the pandemic

4    which is 2020, it took place every year, correct.

5        Q.   So for this event, the high level

6    government officials from Korea come to

7    participate in this event?

8        A.   Correct.

9        Q.   When you say high level, are they high

10   level government cabinet officials?

11       A.   Correct.

12       Q.   After they arrive, where these high

13   level government officials go, is that considered

14   a secret by Korean law?

15       A.   That is correct because this has to do

16   with the safety and security issues.  So whenever

17   VIP visits, whether it's high level week or not,

18   so it's that just high level week apply, but

19   other week, the routes where they go is kept

20   secret and it's not revealed.

21       Q.   Prior to the arrival of these high level

22   government officials, did the mission ever

23   inspect the route beforehand?

24       A.   That is correct.  This is very important

25   matter in terms of security, so before the event

80

```
 1                    J. Jinho
 2    take place Mission visits the route and the
 3    location of the event beforehand and do those
 4    things.
 5       Q.   Was this information concerning the
 6    route known and shared with Mr. Nam?
 7       A.   So basically Mr. Nam's job and his role
 8    is to help the work of the Minister in foreign
 9    affairs with the high level security requirement
10    needed.  So therefore, it is very challenging to
11    separate Mr. Nam and Minister.  There is some
12    aspect to that, it's difficult to do that.  So
13    obviously, before the events take place, the
14    information with regard to the route and the
15    visitation of the location beforehand, those
16    information is shared with Mr. Nam.
17       Q.   When these high level government
18    officials came from Korea who shuffled them
19    around?
20       A.   So Mr. Nam did the work of chauffeuring
21    these cabinet level VIPs related to that work.
22    For example, there was national security advisor
23    to the president who visited and it was Mr. Nam
24    who chauffeured that cabinet member, and other
25    than that, there are many other places in
```

**A-840**

81

1                   J. Jinho

2    personnel that Mr. Nam chauffeured, but I think

3    it is inappropriate to divulge this information

4    here.

5        Q.    When the national security advisor to

6    the president came, did the Mission receive

7    assistance from the local law enforcement?

8        A.    Yes, like I said, this type of VIP visit

9    requires a very important security protocol, so

10   of course local law enforcement work together

11   with them and, of course, Mr. Nam was sort of a

12   team when he worked in that capacity.

13       Q.    When the mission worked with a local law

14   enforcement, did the local law enforcement give

15   instructions as to how they would guide the high

16   government officials?

17       A.    That is correct.  Guidelines were

18   provided because they have to move together.

19       Q.    Is it fair to say there was a motorcade?

20       A.    Yes, there was a motorcade.

21       Q.    Did Mr. Nam receive information

22   concerning how the motorcade will be done?

23       A.    That is correct, because at occasions the

24   motorcade have to move very quickly so obviously

25   also Mr. Nam was provided with the guidelines.

83

1                A C K N O W L E D G M E N T:

2

3    STATE OF NEW YORK)

4                ) ss.:

5    COUNTY OF        )

6                I, JO JINHO, hereby certify that I

7    have read the transcript of my testimony taken

8    under oath in my deposition of April 4, 2022;

9    that the transcript is a true, complete and

10   correct record of what was asked, answered and

11   said during this deposition, and that the

12   answers on the record as given by me are true

13   and correct.

14

15

16                    _____

17                        JO JINHO

18   Subscribed and sworn to

19   before me this ____ day

20   of _____, 2022.

21

22   _____

23        NOTARY PUBLIC

24

25

```
                                                                    84
1                            I N D E X

2

3    EXAMINATION OF        BY                        PAGE

4    JO JINHO              SHAN ZHU                  3-25

5                          YONGJIN BAE               25-34

6                          SHAN ZHU                  34-45

7                          YONGJIN BAE               45-47

8                          SHAN ZHU                  47-49

9                          YONGJIN BAE               49-51

10                         SHAN ZHU                  51-52

11                         YONGJIN BAE               52-57

12                         SHAN ZHU                  57-75

13                         YONGJIN BAE               75-78

14                         JOSHUA LIM                78-82

15

16                        E X H I B I T S

17   PLAINTIFF'S           DESCRIPTION               PAGE

18       1                 Mr. Nam's Employment

19                         Contract                  25

20       2                 Mr. Nam's work hours      30

21       3                 Security pass             47

22       4                 Employment contract       61

23

24

25
```

85

```
 1              C E R T I F I C A T I O N

 2

 3         I, MARIA LEMMO, a Notary Public of the

 4   State of New York do hereby certify:

 5         That the testimony in the within

 6   proceeding was held before me at the aforesaid

 7   time and place.

 8         That said witness was duly sworn before

 9   the commencement of the testimony, and that the

10   testimony was taken stenographically by me, then

11   transcribed under my supervisor, and that the

12   within transcript is a true record of the

13   testimony of said witness.

14         I further certify that I am not related

15   to any of the parties to this action by blood or

16   marriage, that I am not interested directly or

17   indirectly in the matter in controversy, nor am I

18   in the employ of any of the counsel.

19         IN WITNESS WHEREOF, I have hereunto set

20   my hand this 27th day of April, 2022.

21

22

23   _____

24              MARIA LEMMO

25
```