# 23-229

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆

HYUNHUY NAM,

*Plaintiff-Appellee,*

—against—

PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOINT APPENDIX
VOLUME IV OF V
(Pages A-844 to A-1085)**

JOSEPH BARBIERE
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000

ERIC S. LATZER
COLE SCHOTZ P.C.
1325 Avenue of the Americas,
  19th Floor
New York, New York 10019
(201) 525-6281

JOSHUA S. LIM
NICK DUBOIS
SEAN KWAK
KIM, CHO & LIM, LLC
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
(201) 585-7400

*Attorneys for Defendant-Appellant*

(*Counsel continued on inside cover*)

YONGJIN BAE
HANG & ASSOCIATES, PLLC
136-20 38th Avenue, Suite 10G
Flushing, New York 11354
(718) 353-8588

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries ............................................. A-1

Complaint, dated July 19, 2021 ........................................ A-11

Defendants' Notice of Motion to Dismiss, dated September 30, 2021 .... A-54

Defendants' Memorandum of Law in Support of Motion to Dismiss,
    dated September 30, 2021 ........................................ A-57

Declaration of Byungseok Yoo in Support of Defendants'
    Motion to Dismiss, dated August 25, 2021 ........................ A-79

    Exhibit 1 to Byungseok Declaration—
    Letter from the United States Department of State, Office
    of Foreign Missions, New York Regional Office, Concerning
    the Permanent Mission of the Republic of Korea's Tax-Exempt
    Status, dated June 12, 2002 ........................................ A-83

Declaration of Counsellor at the Mission in Support of Defendants'
    Motion to Dismiss, dated September 3, 2021 ...................... A-85

    Exhibit A to Foregoing Documents—
    Letter from the Ministry of Foreign Affairs for the Republic
    of Korea Concerning the Laws, Rules, and Regulations of the
    Republic of Korea, dated August 23, 2021 ........................ A-87

    Exhibit B to Foregoing Documents—
    The Settlement Agreement executed by and between Plaintiff
    and Defendant Jo, on behalf of Defendant Permanent Mission
    of the Republic of Korea to the United Nations,
    dated September 1, 2020, with Certified Translation ................ A-90

Declaration of Hyunhuy Nam in Opposition to Defendants'
    Motion to Dismiss, dated October 23, 2021 ...................... A-94

ii

PAGE

Exhibit A to Nam Declaration—
Permanent Mission's Employee Directory (Redacted) ............. A-106

Exhibit B to Nam Declaration—
Plaintiff's Time Records Revised by Minister Lee ................ A-107

Exhibit C to Nam Declaration—
Original Photograph Reflecting Defendant Chung
and the Shopping Item .......................................... A-110

Memorandum of Law in Opposition to Defendants'
Motion to Dismiss, dated October 25, 2021 ...................... A-112

Defendants' Reply Memorandum of Law in Further Support
of Motion to Dismiss, dated November 8, 2021 ................... A-132

Memorandum Opinion and Order of the Honorable Alison J. Nathan,
dated January 21, 2022 .......................................... A-150

Defendant Permanent Mission of the Republic of Korea to the United
Nations ('Mission")'s Answer, dated February 11, 2022 .......... A-162

Defendant Mission's Notice of Motion for Summary Judgment,
dated July 28, 2022 ............................................. A-192

Defendant Mission's Memorandum of Law in Support of Motion
for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 ............................................. A-194

Declaration of Joshua S. Lim in Support of Defendant Mission's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 ............................................. A-228

Declaration of Counsellor at the Mission in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated July 28, 2022 ............................................. A-233

iii

PAGE

Defendant Mission's FRCP 56.1 Statement of Material Facts,
  dated July 28, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-234

Exhibit 1 to Foregoing Documents—
Complaint, dated July 19, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-246

Exhibit 2 to Foregoing Documents—
Transcript of the Deposition of Plaintiff,
taken on February 22, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-290

Exhibit 3 to Foregoing Documents—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . A-326

Exhibit 4 to Foregoing Documents—
2016 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-359

Exhibit 5 to Foregoing Documents—
Certified Translation of Exhibit 4, Produced by Defendant
in this Matter as ROKPM0014-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-361

Exhibit 6 to Foregoing Documents—
2017 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-364

Exhibit 7 to Foregoing Documents—
Certified Translation of Exhibit 6, Produced by Defendant
in this Matter as ROKPM0019-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-366

Exhibit 8 to Foregoing Documents—
2018 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-369

Exhibit 9 to Foregoing Documents—
Certified Translation of Exhibit 8, Produced by Defendant
in this Matter as ROKPM0024-T, along with the
Certification of Translation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-371

iv

PAGE

Exhibit 10 to Foregoing Documents—
2019 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0030 ................................... A-374

Exhibit 11 to Foregoing Documents—
Certified Translation of Exhibit 10, Produced by Defendant
in this Matter as ROKPM0030-T, along with the
Certification of Translation ..................................... A-376

Exhibit 12 to Foregoing Documents—
2020 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0041 ................................... A-379

Exhibit 13 to Foregoing Documents—
Certified Translation of Exhibit 12, Produced by Defendant
in this Matter as ROKPM0041-T, along with the
Certification of Translation ..................................... A-381

Exhibit 14 to Foregoing Documents—
2021 Pledge Agreement Produced by Defendant
in this Matter as ROKPM0047 ................................... A-384

Exhibit 15 to Foregoing Documents—
Certified Translation of Exhibit 14, Produced by Defendant
in this Matter as ROKPM0047-T, along with the
Certification of Translation ..................................... A-386

Exhibit 16 to Foregoing Documents—
Result of the Background Check Performed for Plaintiff
Hyunhuy Nam in the Republic of Korea, along with a
Certified Translation thereof and the Certificate
of Translation .................................................. A-389

Exhibit 17 to Foregoing Documents—
2016 Employment Contract Produced by Defendant
in this Matter as ROKPM0010 through 0013 ..................... A-401

Exhibit 18 to Foregoing Documents—
Certified Translation of Exhibit 17, Produced by Defendant
in this Matter as ROKPM0010-T through 0013-T,
along with theCertification of Translation ........................ A-406

v

PAGE

Exhibit 19 to Foregoing Documents—
2017 Employment Contract Produced by Defendant
in this Matter as ROKPM0015 through 0018 ..................... A-411

Exhibit 20 to Foregoing Documents—
Certified Translation of Exhibit 19, Produced by Defendant
in this Matter as ROKPM0015-T through 0018-T,
along with the Certification of Translation ...................... A-416

Exhibit 21 to Foregoing Documents—
2018 Employment contract Produced by Defendant
in this Matter as ROKPM0020 through 0023 ..................... A-422

Exhibit 22 to Foregoing Documents—
Certified Translation of Exhibit 21, Produced by Defendant
in this Matter as ROKPM0020-T through 0023-T,
along with the Certification of Translation ...................... A-427

Exhibit 23 to Foregoing Documents—
First 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0025 through 0029 ..................... A-433

Exhibit 24 to Foregoing Documents—
Certified Translation of Exhibit 23, Produced by Defendant
in this Matter as ROKPM0024-T through 0029-T,
along with the Certification of Translation ...................... A-439

Exhibit 25 to Foregoing Documents—
Second 2019 Employment Contract Produced by Defendant
in this Matter as ROKPM0031 through 0035 ..................... A-446

Exhibit 26 to Foregoing Documents—
Certified Translation of Exhibit 25, Produced by Defendant
in this Matter as ROKPM0031-T through 0035-T,
along with the Certification of Translation ...................... A-452

Exhibit 27 to Foregoing Documents—
2020 Employment Contract Produced by Defendant
in this Matter as ROKPM0036 through 0040 ..................... A-459

vi

PAGE

Exhibit 28 to Foregoing Documents—
Certified Translation of Exhibit 27, Produced by Defendant
in this Matter as ROKPM0036-T through 0040-T,
along with the Certification of Translation ........................ A-465

Exhibit 29 to Foregoing Documents—
2021 Employment Contract Produced by Defendant
in this Matter as ROKPM0042 through 0046 ..................... A-472

Exhibit 30 to Foregoing Documents—
Certified Translation of Exhibit 29, Produced by Defendant
in this Matter as ROKPM0042-T through 0046-T,
along with the Certification of Translation ........................ A-478

Exhibit 31 to Foregoing Documents—
Declaration of Counsellor at the Mission in Support of
Defendants' Motion to Dismiss, dated September 3, 2021,
with Exhibits A and B ........................................... A-485

Exhibit 32 to Foregoing Documents—
Declaration of Byungseok Yoo in Support of Defendants'
Motion to Dismiss, dated August 25, 2021, with Exhibit 1 ........ A-495

Exhibit 33 to Foregoing Documents—
Transcript of the Deposition of the Second Secretary
at the Mission, taken on April 4, 2022 ........................... A-502

Exhibit 34 to Foregoing Documents—
Print-out of a Webpage from "naver.com,"
the Full Web Address being the following:
https://terms.naver.com/entry.naver?docId=
5844054&cid=43667&categoryId=43667 ........................ A-515

Exhibit 35 to Foregoing Documents—
Certified Translation of Exhibit 34,
along with the Certification of Translation ........................ A-519

Exhibit 36 to Foregoing Documents—
Security Pass issued to Plaintiff Hyunhuy Nam for Access to the
Vicinity of the United Nations building during the high-level
week, issued in 2020 and set to expire on July 30, 2022 ........... A-524

vii

PAGE

Exhibit 37 to Foregoing Documents—
Certified Translation of The Settlement Agreement executed by
and between Plaintiff and Defendant Jo, on behalf of Defendant
Permanent Mission of the Republic of Korea to the United
Nations, dated September 1, 2020 ............................. A-526

Exhibit 38 to Foregoing Documents—
Memorandum Opinion and Order of the Honorable
Alison J. Nathan, dated January 21, 2022 (Dkt. # 61) ............. A-529

Plaintiff's Notice of Motion for Partial Summary Judgment,
dated July 8, 2022 ............................................ A-542

Memorandum of Law in Support of Plaintiff's Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-544

Proposed Order .................................................. A-562

Declaration of Hyunhuy Nam in Support of Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-563

Affirmation of Yongjin Bae in Support of Motion
for Partial Summary Judgment, dated July 28, 2022 .............. A-567

Rule 56.1 Statement of Undisputed Material Facts in Support
of Plaintiff Hyunhuy Nam's Motion for Partial Summary
Judgment, dated July 28, 2022................................... A-570

Exhibit A to Foregoing Documents—
Complaint, dated July 19, 2021 ................................. A-574

Exhibit B to Foregoing Documents—
Employment Contract 2016 (Marked as Defendants'
Exhibit 1, Produced for Deposition on Plaintiff) .................. A-617

Exhibit C to Foregoing Documents—
Employment Contract 2017 (Marked as Defendants'
Exhibit 2, Produced for Deposition on Plaintiff).................. A-627

viii

PAGE

Exhibit D to Foregoing Documents—
Employment Contract 2018 (Marked as Defendants'
Exhibit 3, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-637

Exhibit E to Foregoing Documents—
Employment Contract 2019 (Marked as Defendants'
Exhibit 4, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-647

Exhibit F to Foregoing Documents—
Employment Contract 2020 (Marked as Defendants'
Exhibit 5, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-669

Exhibit G to Foregoing Documents—
Employment Contract 2021 (Marked as Defendants'
Exhibit 6, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-681

Exhibit H to Foregoing Documents—
Overtime Verification Ledger (Marked as Defendants'
Exhibit 8, Produced for Deposition on Plaintiff) . . . . . . . . . . . . . . . . . .  A-693

Exhibit I to Foregoing Documents—
Excerpts from Exhibit H with Translation . . . . . . . . . . . . . . . . . . . . . . . .  A-753

Exhibit J to Foregoing Documents—
Excerpts of the Deposition Transcript of Counsellor
at the Mission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-760

Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion for Partial Summary Judgment,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-765

Defendant's Response to Plaintiff's FRCP 56.1 Statement
of Material Facts and Defendant's Counter-Statement
of Facts, dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-791

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated August 29, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-803

ix

PAGE

Exhibit 3-2 to Lim Declaration—
Transcript of the Deposition of the Counsellor
at the Mission, taken on April 4, 2022 ........................... A-805

Exhibit 39 to Lim Declaration—
Defendant's Answer, filed February 11, 2022 .................... A-844

Exhibit 40 to Lim Declaration—
Declaration by Fran Yoon, dated August 26, 2022 ................ A-878

Exhibit 41 to Lim Declaration—
Articles 50, 53, and 56 of the ROK's Labor Standards Act,
obtained from: https://www.law.go.kr/법령/근로기준법,
last accessed August 26, 2022 at 4:09 PM ........................ A-880

Exhibit 42 to Lim Declaration—
Partial Translation of Exhibit 41 by Fran Yoon,
and Certification of Translation ................................. A-883

Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment and in Further Support of Plaintiff's
Partial Summary Judgment, dated August 29, 2022 ............... A-884

Defendant's Reply Memorandum of Law in Further Support
of Defendant's Motion for Summary Judgment Pursuant
to FRCP 56, dated September 19, 2022 ......................... A-903

Declaration of Joshua S. Lim in Support of Defendant's
Motion for Summary Judgment Pursuant to FRCP 56,
dated September 19, 2022 ...................................... A-921

Exhibit 43 to Lim Declaration—
Amended Complaint filed in *Mourmouni v. Permanent Mission
of the Republic of S. Sudan to the U.N.*, Case Number
1:20-cv-03603, on January 11, 2021,
retrieved through PACER ...................................... A-922

x

PAGE

Memorandum of Law in Reply to Defendant's Opposition
    to Plaintiff's Partial Summary Judgment,
    dated September 19, 2022 ........................................ A-939

    Exhibit A to Memorandum—
    Transcript of deposition of Counsellor at the Mission,
    witness for Permanent Mission under Rule §30(b)(6)
    of the F. R. C. P, 34:2-38:8................................... A-952

    Exhibit B to Memorandum—
    Transcript of deposition of Nam. 18-19 ......................... A-957

    Exhibit C to Memorandum—
    Transcript of Deposition of Second Secretary at the Mission
    at 19:18-22 .................................................. A-961

    Exhibit D to Memorandum—
    Records 0061-75 .............................................. A-962

Declaration of YongJin Bae, dated September 19, 2022 .............. A-972

Order of the Honorable Jennifer L. Rochon, dated January 3, 2023..... A-975

Supplemental Damage Analysis Brief in Further Support
    of Plaintiff's Motion for Partial Summary Judgment,
    dated January 13, 2023........................................ A-976

Declaration of YongJin Bae, dated January 13, 2023 ................ A-987

    Exhibit A to Bae Declaration—
    Bates Stamped as ROKPM0051 ................................. A-989

    Exhibit B to Bae Declaration—
    Dkt #78-21, Dkt #78-33...................................... A-993

    Exhibit C to Bae Declaration—
    Dkt #79-15 ................................................. A-1078

    Exhibit D to Bae Declaration—
    Dkt #79-14 ................................................. A-1086

xi

PAGE

Defendant's Supplemental Memorandum of Law in Opposition
to Plaintiff's Motion for Partial Summary Judgment,
dated February 3, 2023 .......................................... A-1147

Declaration of Joshua S. Lim in Support of Defendant's
Supplemental Brief in Opposition to Plaintiff's Motion
for Partial Summary Judgment, dated February 3, 2023 .......... A-1160

Exhibit 43 to Lim Declaration—
Summary Document Based on Data Gleaned from
Exhibits A through D submitted by Plaintiff on
January 13, 2023 ............................................. A-1162

Exhibit 44 to Lim Declaration—
Summary Document Based on Data Gleaned from
Exhibits A through D submitted by Plaintiff on
January 13, 2023 ............................................. A-1206

Opinion and Order of the Honorable Jennifer L. Rochon,
dated February 21, 2023 ....................................... A-1240

Defendant's Notice of Appeal, dated February 22, 2023 .............. A-1297

Memorandum and Order of the Honorable Jennifer L. Rochon,
dated March 10, 2023 .......................................... A-1300

# A-844

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HYUNHUY NAM, | Case No.: 1:21-cv-06165-AJN |
| Plaintiff, | |
| v. | CIVIL ACTION |
| PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS; HYUN CHO; JINHO JO; and DAEYONG CHUNG, | **ANSWER** |
| Defendants. | |

Defendant Permanent Mission of the Republic of Korea to the United Nations ("Mission"), by and through its attorneys, Kim, Cho & Lim, LLC, upon personal knowledge as to itself and upon information and belief as to other matters, answers the Complaint and allege as follows:

## PRELIMINARY STATEMENT

1. Defendant admits only that Plaintiff purports to bring this action for certain alleged employment practices under the limitations and purported exceptions under the Foreign Sovereign Immunities Act ("FSIA"). Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 1.

2. Defendant admits only that Plaintiff purports to bring this action for certain categories of damages under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 2.

1

**THE PARTIES**

3.      Defendant admits only that Plaintiff was a citizen of the Republic of Korea during his alleged employment with Defendant. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 3.

4.      Defendant admits the allegations set forth in the Complaint, ¶ 4.

5.      The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations set forth in the Complaint, ¶ 5.

6.      The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations set forth in the Complaint, ¶ 6.

7.      Defendant admits only that it is an organ of a foreign state or a subdivision thereof. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 7.

8.      The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations set forth in the Complaint, ¶ 8.

9.      Defendant admits only that the individual Hyun Cho is a citizen of the Republic of Korea and currently the Ambassador at the Mission. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 9.

10.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 10.

11.     Defendant denies the allegations set forth in the Complaint, ¶ 11.

12.     Defendant admits only that the individual Jinho Jo is a citizen of the Republic of Korea and currently a Counselor at the Mission. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 12.

13.     Defendant denies the allegations set forth in the Complaint, ¶ 13.

14.     Defendant admits only that the individual Daeyong Chung is a citizen of the Republic of Korea and currently a Minister at the Mission. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 14.

15.     Defendant denies the allegations set forth in the Complaint, ¶ 15.

## JURISDICTION AND VENUE

16.     Defendant repeats and re-alleges each and every response to paragraphs 1 through 15 of the Complaint as if set forth fully herein verbatim.

17.     Defendant admits only that Plaintiff purports to bring this action under the FSIA and the FLSA. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 17.

18.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 18.

19.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 19.

20.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 20.

**A-847**

21.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 21.

22.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 22.

23.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 23.

24.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 24.

25.     Defendant denies the allegations set forth in the Complaint, ¶ 25.

26.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 26.

27.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 27.

28.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 28.

29.     Defendant denies the allegations set forth in the Complaint, ¶ 29.

**A-848**

## Defendant's Commercial Activity

30.     Defendant denies the allegations set forth in the Complaint, ¶ 30.

31.     Defendant admits the allegations set forth in the Complaint, ¶ 31.

32.     Defendant denies the allegations set forth in the Complaint, ¶ 32.

33.     Defendant admits the allegations set forth in the Complaint, ¶ 33.

34.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 34.

35.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 35 and, as such, denies them.

36.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 34.

37.     Defendant denies the allegations set forth in the Complaint, ¶ 37.

38.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 38.

39.     Defendant denies the allegations set forth in the Complaint, ¶ 39.

40.     Defendant denies the allegations set forth in the Complaint, ¶ 40.

41.     Defendant denies the allegations set forth in the Complaint, ¶ 41.

42.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 42 and, as such, denies them.

43.     Defendant denies the allegations set forth in the Complaint, ¶ 43.

44.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 44 and, as such, denies them.

45.     Defendant admits the allegations set forth in the Complaint, ¶ 45.

46.     Defendant admits the allegations set forth in the Complaint, ¶ 46.

47.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 47 and, as such, denies them.

48.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 48 and, as such, denies them.

49.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 49 and, as such, denies them.

50.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 50 and, as such, denies them.

51.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 51 and, as such, denies them.

52.     Defendant denies the allegations set forth in the Complaint, ¶ 52.

53.     Defendant denies the allegations set forth in the Complaint, ¶ 53.

54.     Defendant admits the allegations set forth in the Complaint, ¶ 54.

55.     Defendant admits the allegations set forth in the Complaint, ¶ 55.

56.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 56 and, as such, denies them.

57.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 57 and, as such, denies them.

58.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 58 and, as such, denies them.

59.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 59 and, as such, denies them.

60.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 60 and, as such, denies them.

61.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 61 and, as such, denies them.

62.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 62 and, as such, denies them.

63.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 63 and, as such, denies them.

64.     Defendant denies the allegations set forth in the Complaint, ¶ 64.

65.     Defendant denies the allegations set forth in the Complaint, ¶ 65.

66.     Defendant admits the allegations set forth in the Complaint, ¶ 66.

**Plaintiff's Work Schedule and Pay**

67.     Defendant denies the allegations set forth in the Complaint, ¶ 67.

68.     Defendant denies the allegations set forth in the Complaint, ¶ 68.

69.     Defendant denies the allegations set forth in the Complaint, ¶ 69.

70.     Defendant denies the allegations set forth in the Complaint, ¶ 70.

71.     Defendant denies the allegations set forth in the Complaint, ¶ 71.

72.     Defendant denies the allegations set forth in the Complaint, ¶ 72.

73.     Defendant denies the allegations set forth in the Complaint, ¶ 73.

74.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 74.

75.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 75.

76.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 76.

77.     Defendant denies the allegations set forth in the Complaint, ¶ 77.

78.     Defendant denies the allegations set forth in the Complaint, ¶ 78.

79.     Defendant denies the allegations set forth in the Complaint, ¶ 79.

80.     Defendant denies the allegations set forth in the Complaint, ¶ 80.

81.     Defendant denies the allegations set forth in the Complaint, ¶ 81.

82.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 82.

83.     Defendant denies the allegations set forth in the Complaint, ¶ 83.

84.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 84.

85.     Defendant admits the allegations set forth in the Complaint, ¶ 85.

8

86.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 86.

87.     Defendant denies the allegations set forth in the Complaint, ¶ 87.

**Age Discrimination and Hostile Environment**

88.     Defendant admits the allegations set forth in the Complaint, ¶ 88.

89.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 89 and, as such, denies them.

90.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 90 and, as such, denies them.

91.     Defendant denies the allegations set forth in the Complaint, ¶ 91.

92.     Defendant denies the allegations set forth in the Complaint, ¶ 92.

93.     Defendant denies the allegations set forth in the Complaint, ¶ 93.

94.     Defendant denies the allegations set forth in the Complaint, ¶ 94.

95.     Defendant denies the allegations set forth in the Complaint, ¶ 95.

96.     Defendant denies the allegations set forth in the Complaint, ¶ 96.

97.     Defendant denies the allegations set forth in the Complaint, ¶ 97.

98.     Defendant denies the allegations set forth in the Complaint, ¶ 98.

99.     Defendant denies the allegations set forth in the Complaint, ¶ 99.

100.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 100 and, as such, denies them.

**Commercial Activity Exception Under 28 U.S.C. § 1605**

101.    Defendant repeats and re-alleges each and every response to paragraphs 1 through 100 as if set forth fully herein verbatim.

102.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 102.

## STATEMENT OF CLAIM

### COUNT I
### [The Fair Labor Standard Act – Unpaid Overtime]

103.    Defendant repeats and re-alleges each and every response to paragraphs 1 through 102 as if set forth fully herein verbatim.

104.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 104.

105.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 105.

106.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 106.

107.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 107.

108.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 108.

## **COUNT II**
### **[The New York Labor Law – Unpaid Promised Wage]**

109.     Defendant repeats and re-alleges each and every response to paragraphs 1 through 108 as if set forth fully herein verbatim.

110.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 110.

111.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 111.

112.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 112.

113.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 113.

## **COUNT III**
### **[New York Labor Law – Unpaid Overtime]**

114.     Defendant repeats and re-alleges each and every response to paragraphs 1 through 113 as if set forth fully herein verbatim.

11

115.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 115.

116.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 116.

117.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 117.

118.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 118.

<u>COUNT IV</u>
**[New York Labor Law – Spread of Hours]**

119.    Defendant repeats and re-alleges each and every response to paragraphs 1 through 118 as if set forth fully herein verbatim.

120.    Defendant denies the allegations set forth in the Complaint, ¶ 120.

121.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 121.

122.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 122.

123.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 123.

## **COUNT V**
**[New York Labor Law – Wage Notice and Wage Statement Violations]**

124.     Defendant repeats and re-alleges each and every response to paragraphs 1 through 123 as if set forth fully herein verbatim.

125.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 125.

126.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 126.

127.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 127.

128.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 128.

129.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 129.

## **COUNT VI**
**[Violation of the New York State Human Rights Law – Age Discrimination]**

13

130.    Defendant repeats and re-alleges each and every response to paragraphs 1 through 129 as if set forth fully herein verbatim.

131.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 131.

132.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 132.

133.    Defendant admits the allegations set forth in the Complaint, ¶ 133.

134.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 134.

135.    Defendant denies the allegations set forth in the Complaint, ¶ 135.

136.    The allegations contained in this paragraph are identical to those contained in paragraph 89 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

137.    The allegations contained in this paragraph are identical to those contained in paragraph 90 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

138.    The allegations contained in this paragraph are identical to those contained in paragraph 91 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

139.    Defendant denies the allegations set forth in the Complaint, ¶ 139.

**A-858**

140. The allegations contained in this paragraph are identical to those contained in paragraph 94 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

141. The allegations contained in this paragraph are identical to those contained in paragraph 95 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

142. The allegations contained in this paragraph are identical to those contained in paragraph 96 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

143. The allegations contained in this paragraph are identical to those contained in paragraph 97 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

144. The allegations contained in this paragraph are identical to those contained in paragraph 98 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

145. The allegations contained in this paragraph are identical to those contained in paragraph 99 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

146. The allegations contained in this paragraph are identical to those contained in paragraph 100 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

147. Defendant denies the allegations set forth in the Complaint, ¶ 147.

**A-859**

148.     Defendant denies knowledge and information sufficient to form a basis as to the truth of the matter alleged in the Complaint, ¶ 148 and, as such, denies them.

149.     Defendant denies the allegations set forth in the Complaint, ¶ 149.

150.     Defendant denies the allegations set forth in the Complaint, ¶ 150.

151.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 151.

152.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 152.

153.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 153.

154.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 154.

155.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 155.

156.     Defendant denies the allegations set forth in the Complaint, ¶ 156.

157.     Defendant admits only that Plaintiff seeks certain remedies. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 157.

A-860

**COUNT VII**
**[Violation of the New York State Human Rights Law – Hostile Work Environment]**

158. Defendant repeats and re-alleges each and every response to paragraphs 1 through 157 as if set forth fully herein verbatim.

159. The allegations contained in this paragraph are identical to those contained in paragraph 132 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

160. The allegations contained in this paragraph are identical to those contained in paragraph 133 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

161. The allegations contained in this paragraph are identical to those contained in paragraph 134 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

162. The allegations contained in this paragraph are identical to those contained in paragraph 135 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

163. The allegations contained in this paragraph are identical to those contained in paragraph 136 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

164. The allegations contained in this paragraph are identical to those contained in paragraph 137 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

17

**A-861**

165.    The allegations contained in this paragraph are identical to those contained in paragraph 138 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

166.    The allegations contained in this paragraph are identical to those contained in paragraph 139 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

167.    The allegations contained in this paragraph are identical to those contained in paragraph 140 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

168.    The allegations contained in this paragraph are identical to those contained in paragraph 141 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

169.    The allegations contained in this paragraph are identical to those contained in paragraph 142 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

170.    The allegations contained in this paragraph are identical to those contained in paragraph 143 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

171.    The allegations contained in this paragraph are identical to those contained in paragraph 144 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

172.    The allegations contained in this paragraph are identical to those contained in paragraph 145 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

173.    The allegations contained in this paragraph are identical to those contained in paragraph 146 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

174.    The allegations contained in this paragraph are identical to those contained in paragraph 147 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

175.    The allegations contained in this paragraph are identical to those contained in paragraph 148 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

176.    The allegations contained in this paragraph are identical to those contained in paragraph 148 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

177.    Defendant denies the allegations set forth in the Complaint, ¶ 177.

178.    Defendant denies the allegations set forth in the Complaint, ¶ 178.

179.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 179.

180.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 180.

181.    Defendant denies the allegations set forth in the Complaint, ¶ 181.

182.    Defendant denies the allegations set forth in the Complaint, ¶ 182.

183.    Defendant denies the allegations set forth in the Complaint, ¶ 183.

184.    Defendant admits only that Plaintiff seeks certain remedies. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 184.

### COUNT VIII
**[Violation of the New York City Human Rights Law – Age Discrimination]**

185.    Defendant repeats and re-alleges each and every response to paragraphs 1 through 184 as if set forth fully herein verbatim.

186.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 186.

187.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 187.

188.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 188.

189.    The allegations contained in this paragraph are identical to those contained in paragraph 160 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

190.    The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 198.

191.    The allegations contained in this paragraph are identical to those contained in paragraph 189 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

192.    The allegations contained in this paragraph are identical to those contained in paragraph 161 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

193.    The allegations contained in this paragraph are identical to those contained in paragraph 162 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

194.    The allegations contained in this paragraph are identical to those contained in paragraph 163 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

195.    The allegations contained in this paragraph are identical to those contained in paragraph 164 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

196.    The allegations contained in this paragraph are identical to those contained in paragraph 165 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

197.    The allegations contained in this paragraph are identical to those contained in paragraph 166 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

198.    The allegations contained in this paragraph are identical to those contained in paragraph 167 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

199.    The allegations contained in this paragraph are identical to those contained in paragraph 168 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

200.    The allegations contained in this paragraph are identical to those contained in paragraph 169 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

201.    The allegations contained in this paragraph are identical to those contained in paragraph 170 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

202.    The allegations contained in this paragraph are identical to those contained in paragraph 171 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

203.    The allegations contained in this paragraph are identical to those contained in paragraph 172 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

204.    The allegations contained in this paragraph are identical to those contained in paragraph 173 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

205.    The allegations contained in this paragraph are identical to those contained in paragraph 174 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

206.    The allegations contained in this paragraph are identical to those contained in paragraph 175 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

207.    The allegations contained in this paragraph are identical to those contained in paragraph 149 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

208.    The allegations contained in this paragraph are identical to those contained in paragraph 150 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

209.    The allegations contained in this paragraph are identical to those contained in paragraph 151 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

210.    The allegations contained in this paragraph are identical to those contained in paragraph 152 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

211.    Defendant denies the allegations set forth in the Complaint, ¶ 211.

212.    Defendant denies the allegations set forth in the Complaint, ¶ 212.

213.     Defendant denies the allegations set forth in the Complaint, ¶ 213.

214.     Defendant admits only that Plaintiff seeks certain remedies. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 214.

<u>COUNT IX</u>
**[Violation of the New York City Human Rights Law – Hostile Work Environment]**

215.     Defendant repeats and re-alleges each and every response to paragraphs 1 through 214 as if set forth fully herein verbatim.

216.     The allegations set forth in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in the Complaint, ¶ 216.

217.     The allegations contained in this paragraph are identical to those contained in paragraph 191 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

218.     The allegations contained in this paragraph are identical to those contained in paragraph 190 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

219.     The allegations contained in this paragraph are identical to those contained in paragraph 217 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

220.     The allegations contained in this paragraph are identical to those contained in paragraph 192 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

221.    The allegations contained in this paragraph are identical to those contained in paragraph 193 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

222.    The allegations contained in this paragraph are identical to those contained in paragraph 194 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

223.    The allegations contained in this paragraph are identical to those contained in paragraph 195 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

224.    The allegations contained in this paragraph are identical to those contained in paragraph 196 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

225.    The allegations contained in this paragraph are identical to those contained in paragraph 197 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

226.    The allegations contained in this paragraph are identical to those contained in paragraph 198 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

227.    The allegations contained in this paragraph are identical to those contained in paragraph 199 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

A-869

228. The allegations contained in this paragraph are identical to those contained in paragraph 200 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

229. The allegations contained in this paragraph are identical to those contained in paragraph 201 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

230. The allegations contained in this paragraph are identical to those contained in paragraph 202 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

231. The allegations contained in this paragraph are identical to those contained in paragraph 203 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

232. The allegations contained in this paragraph are identical to those contained in paragraph 204 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

233. The allegations contained in this paragraph are identical to those contained in paragraph 205 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

234. The allegations contained in this paragraph are identical to those contained in paragraph 206 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

235.    The allegations contained in this paragraph are identical to those contained in paragraph 177 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

236.    The allegations contained in this paragraph are identical to those contained in paragraph 178 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

237.    The allegations contained in this paragraph are identical to those contained in paragraph 179 of the Complaint. As such, Plaintiff is referred to Defendant's response to that paragraph.

238.    Defendant denies the allegations set forth in the Complaint, ¶ 238.

239.    Defendant denies the allegations set forth in the Complaint, ¶ 239.

240.    Defendant denies the allegations set forth in the Complaint, ¶ 240.

241.    Defendant denies the allegations set forth in the Complaint, ¶ 241.

242.    Defendant admits only that Plaintiff seeks certain remedies. Except as expressly admitted, Defendant denies the allegations set forth in the Complaint, ¶ 242.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim upon which relief may be granted.

#### SECOND AFFIRMATIVE DEFENSE

Defendant is entitled to the full extent of immunity granted under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*, without applicability of any exceptions or waivers contained therein.

#### THIRD AFFIRMATIVE DEFENSE

The Court lacks personal jurisdiction over Defendant by the application of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*

### FOURTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction over Defendant by the application of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*

### FIFTH AFFIRMATIVE DEFENSE

The commercial activities exception under 28 U.S.C. § 1605 does not apply to the facts and circumstances presented in this action, namely the alleged employment relationship between Plaintiff and Defendant.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff released his claims relating to the termination of his employment with Defendant by duly entering into a settlement agreement setting forth the terms of such release.

### SEVENTH AFFIRMATIVE DEFENSE

Defendant is not liable under any provisions of the New York Labor Law § 198 because it is not an employer as defined in NYLL § 190(3) (The term "employer" shall not include a governmental agency).

### EIGHTH AFFIRMATIVE DEFENSE

Defendant is not liable under any provisions of the New York Labor Law § 198 because it has made complete and timely payment of all wages and/or because it reasonably believed in good faith that it was not required to provide Plaintiff with the notice pursuant to § 195.

### NINTH AFFIRMATIVE DEFENSE

There is no ascertainable damage, harm, and/or loss sustained by Plaintiff due to any act and/or omission of Defendant.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff lacks evidentiary support of the allegations asserted against Defendant.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendant has acted in good faith and reasonably believed that it is not violating the laws under which Plaintiff brings this action or that those laws are not applicable to Defendant.

### TWELFTH AFFIRMATIVE DEFENSE

The activities on which Plaintiff bases his claim herein for overtime compensation consisted of traveling to and from the actual place of performance of, and of activities preliminary and postliminary to the principal activities of Plaintiff's employment. Thus, such activities were not compensable by either an express provision of any written or non-written contract, or by any custom or practice in effect at the time of such activities; or, if compensable by such contract, custom, or practice, such activities were not engaged in by Plaintiff during the portion of the day with respect to which they were so made compensable. Accordingly, if any employment-related

laws of the United States are applicable to Defendant, Defendant is relieved of any liability for the overtime compensation claimed by Plaintiff under the Portal-to-Portal Act, 29 U.S.C.A. § 254.

### THIRTEENTH AFFIRMATIVE DEFENSE

If it is determined that Plaintiff is entitled to any relief for overtime compensation pursuant to the Fair Labor Standards Act, the New York Labor Law, and their supporting regulations, or any other applicable law, Defendant contends that Plaintiff is limited to payment for overtime hours at the rate agreed upon pursuant to their contract or one and one-half times Plaintiff's regular hourly rate, whichever is lower.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff was properly compensated for his work, including for overtime, at the rate agreed upon between the parties. Defendant has at all times maintained and provided accurate records relating to Plaintiff's employment with Defendant, if any.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant has a legitimate and non-discriminatory grounds upon which it instituted any acts which Plaintiff alleges was based on discriminatory grounds.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff was paid above the minimum wage and, as such, is not entitled to any spread-of-hours premium under 12 NYCRR § 142-3.4. Williams v. Tri-State Biodiesel, L.L.C., 13-cv-5041, 2015 U.S. Dist. LEXIS 7926, 2015 WL 305362 (S.D.N.Y. Jan. 23, 2015) ("recent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level") (collecting cases).

### SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant is exempt from the payment of payroll taxes pursuant to the Foreign Missions Act, 22 U.S.C. § 4301.

### RESERVATION AND NON-WAIVER

Defendant reserves and does not waive any additional defenses as may be revealed by information subsequently acquired in discovery or otherwise.

### PRAYER FOR RELIEF

**WHEREFORE**, Defendant demands judgment against Plaintiff:

    a.  Dismissing the Complaint in its entirety and with prejudice against Defendant;

    b.  Awarding Defendant the costs and disbursements of this action; and

    c.  Granting Defendant such other and further relief as the Court deems just and

equitable.

<div align="center">Kim, Cho & Lim, LLC<br>
*Attorneys for Defendant*</div>

Dated: February 11, 2022      By:  _/s/ Joshua S. Lim_____
                          Joshua S. Lim, Esq.

<div align="center">

**DESIGNATION OF TRIAL COUNSEL**

</div>

    Joshua S. Lim, Esq., is hereby designated as trial counsel for Defendant.

<div align="center">Kim, Cho & Lim, LLC<br>
*Attorneys for Defendant*</div>

Dated: February 11, 2022      By:  _/s/ Joshua S. Lim_____
                          Joshua S. Lim, Esq.

<div align="center">

**JURY DEMAND**

</div>

    Defendant hereby demands a Trial by jury as to all issues so triable.

<div align="center">Kim, Cho & Lim, LLC<br>
*Attorneys for Defendant*</div>

Dated: February 11, 2022      By:  _/s/ Joshua S. Lim_____
                          Joshua S. Lim, Esq.

<u>DECLARATION OF FRAN S. YOON</u>

I, Fran Yoon, of full age, hereby respectfully make the following declaration pursuant to 28 U.S.C. § 1746(1):

1.     I am a Korean/English interpreter and translator with over 20 years of experience.

2.     I am currently registered with the federal courts of New York, New Jersey and the District of Columbia.

3.     I have translated over 1,000 pages of legal documents for federal prosecutors' offices in New York and New Jersey, and have worked on KOREA RESOLUTION & COLLECTION Corp. v HYUK KEE YOO (2021) as a language expert to address a dispute over translation.

4.     I have been asked to review the original version of EMPLOYMENT CONTRACT FOR CHAUFFEUR between Hyunhuy Nam and the Permanent Mission of the Republic of Korea to the United Nations against the English translation. (Defendant's Exhibits 17-30).

5.     In particular, I have been asked to assess the accuracy of the translation of the Korean term '시간외' [**shi-gan-weh**] or it's variant '시간 외' [shi-gan—weh]. The difference in spacing does not alter its meaning.

6.     Finally, I have been asked to assess whether the term '시간외' is equivalent to the same term appearing at the top of Plaintiff's Exhibit I, pages 1, 3, and 5.

7.     Since this declaration is intended to explain the proper translation of this term, I will refer to this term by its phonetic pronunciation, "***shi-gan-weh***."

### A.   <u>Regarding the Term '시간외' [*Shi-Gan-Weh*]</u>

8.     ***Shi-gan*** means "hours" and ***weh*** means "outside of." When used in conjunction, it literally translates to "outside of hours."

9.     When ***shi-gan-weh*** is followed by either the word '근무' [geun-moo] or '근로' [geun-ro], both meaning "work" (as noun), it can be translated as "work outside of the hours."

10.     The following excerpts illustrate the expansiveness of the term ***shi-gan-weh***. Special attention is directed to the terms '연장근무' or '연장근로,' which are a conjunctions of '연장' [yeon-jang], meaning "extension" and '근무' [geun-moo] or '근로' [geun-ro], both meaning "work."

11.     Defendant's counsel has requested me to translate a provision of the law of the Republic of Korea concerning the terms '연장근무' [yeon-jang geun-moo] or '연장근로' [yeon-

**A-875**

jang geun-ro]. The translation thereof is provided under a separate cover. I make no representation as to the construction or legal interpretation of said legal provision and provide only, and strictly, the translation of the text thereof.

12. Example #1: Excerpt from Jobis online customer care, a Korean online tax agency.

Korean text:

- **시간외**근로수당은 <u>연장근로</u>, 휴일근로, 야간근로에 대해 발생하는 수당을 말하며 [...]

English translation:

- ***Shi-gan-weh*** work pay refers to the compensation due for <u>extended work</u>, days-off/holidays and/or night shifts[…]

13. Example #2: Excerpt from the 'How to Implement Off-Schedule Hour Work' on the Korea Trade Insurance Corporation website, the official export credit agency of South Korea under the Ministry of Trade, Industry and Energy.

Korean text:

- 제 2 조 (용어의 정의)
    1. '<u>시간외 근무</u>'라 함은 영업 개시전 근무 또는 종업후의 '<u>연장 근무</u>', 야간근무 (22:00-익 일 06:00) 및 휴일 근무를 말한다.

English translation:

- Article 2 (Definition of Terms)
    1. '***Shi-gan-weh*** work' refers to work before the start of business or '<u>extended work</u>' after shift ends, night shift (22:00 - 06:00 the next day) and/or days-off/holiday work.

14. Example #3 – Excerpt from the Korea Trade Insurance Corporation website.

Korean text:

<div align="center">제 2 장 <b>시간외</b>근무 시행</div>

제 4 조(**시간외**근무 시간의 한도 및 계산)

(1) **시간외**근무는 주 12 시간을 한도로 한다.

(2) 제 1 항의 규정에 의한 근무시간은 매 10 분 단위로 계산하며, 10 분 미만은 절사한다. 다만, **시간외**근무 1 회당 근무 시간은 최소 1 시간 이상이어야 한다.

(3) <u>연장근무</u>의 경우 근무시간 종료부터 계산한다.

(4) **시간외**근무를 4 시간 이상 연속하여 할 경우에는 30 분의 휴게시간을 부여하며, **시간외**근무를 8 시간 연속하여 실시할 경우에는 1 시간의 휴게시간을 부여한다.

English translation:

Chapter 2: Implementation of ***shi-gan-weh*** work

Article 4: Limits and calculation of ***shi-gan-weh*** work hours

(1) ***Shi-gan-weh*** work is limited to 12 hours per week.

(2) Working hours according to the provision of Paragraph 1 are calculated in units of every 10 minutes, and less than 10 minutes are rounded off. However, the working hours per one occurrence of ***shi-gan-weh*** work shall be at least 1 hour.

(3) Extended hours are calculated from the end of the [scheduled] hours.

(4) If ***Shi-gan-weh*** work is performed continuously for 4 hours or more, a 30 minute break shall be given, and if ***shi-gan-weh*** work is performed for 8 consecutive hours, a 1 hour break shall be given.

15. Example #4 – Excerpt from Newploy.net,[1] an automated payroll platform in Korea.

Korean text:

각종 **시간외**수당 계산 방법 총 정리

1.주휴수당 계산 방법

2.연차휴가수당 계산 방법

3.연장근로수당 계산 방법

4.야간근로수당 계산 방법

5.휴일근로수당 계산 방법

6.산전 후 휴가수당 계산 방법

7.휴업수당 계상방법

English translation:

Summary of how to calculate pay allowance for various ***shi-gan-weh*** wages

1. How to Calculate Holiday Pay

2. How to calculate Annual Paid Vacation

3. How to calculate Extended Work pay

4. How to calculate Night Shift Pay

5. How to calculate Holiday Work Pay

6. How to calculate Maternity Leave Pay

7. How to calculate Business Closure Pay

16. As it may be gleaned from the examples above, *shi-gan-weh* work includes a variety of different works and even holidays or vacations, including '연장근무' (extended work) or overtime.

---

[1] https://www.newploy.net/시간외수당-계산-방법/

17. For the purposes of this declaration, I accept as true Defendant's attorney's representation to me that "overtime" under the laws of the United States means "work hours in excess of forty hours per week."

18. As such, "overtime work" or '연장근로' [yeon-jang geun-ro] (extended work) is necessarily '시간외근로' [*shi-gan-weh* geun-ro], but '시간외근로' [*shi-gan-weh* geun-ro] is not necessarily "overtime work" or '연장근로' [yeon-jang geun-ro] (extended work).

19. As such, '시간외' [*shi-gan-weh*] should have been translated as "off-schedule" or "outside of schedule", and not as "overtime" in the context of labor.

20. The same term, '시간외' appearing on Plaintiff's Exhibit I is used within the same context and has the meaning described hereinabove.

    I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

    Executed on August 26, 2022

Fran Yoon
10 Winding Rdg, Oakland, NJ 07436
T: 201-655-2011
franyoon@gmail.com

# 근로기준법

[시행 2021. 11. 19.] [법률 제18176호, 2021. 5. 18., 일부개정]

고용노동부 (근로기준정책과 - 해고, 취업규칙, 기타) 044-202-7534
고용노동부 (임금근로시간과 - 휴게, 특례업종) 044-202-7972
고용노동부 (근로기준정책과 - 소년) 044-202-7535
고용노동부 (근로기준정책과 - 임금) 044-202-7548
고용노동부 (여성고용정책과 - 여성) 044-202-7475
고용노동부 (임금근로시간과 - 제63조 적용제외, 관공서 공휴일) 044-202-7545
고용노동부 (임금근로시간과 - 근로시간, 연차휴가) 044-202-7973
고용노동부 (임금근로시간과 - 유연근로시간제) 044-202-7549

**제50조(근로시간)** ① 1주 간의 근로시간은 휴게시간을 제외하고 40시간을 초과할 수 없다.

② 1일의 근로시간은 휴게시간을 제외하고 8시간을 초과할 수 없다.

③ 제1항 및 제2항에 따라 근로시간을 산정하는 경우 작업을 위하여 근로자가 사용자의 지휘·감독 아래에 있는 대기시간 등은 근로시간으로 본다.<신설 2012. 2. 1., 2020. 5. 26.>

**제53조(연장 근로의 제한)** ① 당사자 간에 합의하면 1주 간에 12시간을 한도로 제50조의 근로시간을 연장할 수 있다.

② 당사자 간에 합의하면 1주 간에 12시간을 한도로 제51조 및 제51조의2의 근로시간을 연장할 수 있고, 제52조제1항제2호의 정산기간을 평균하여 1주 간에 12시간을 초과하지 아니하는 범위에서 제52조제1항의 근로시간을 연장할 수 있다.<개정 2021. 1. 5.>

③ 상시 30명 미만의 근로자를 사용하는 사용자는 다음 각 호에 대하여 근로자대표와 서면으로 합의한 경우 제1항 또는 제2항에 따라 연장된 근로시간에 더하여 1주 간에 8시간을 초과하지 아니하는 범위에서 근로시간을 연장할 수 있다.<신설 2018. 3. 20.>

1. 제1항 또는 제2항에 따라 연장된 근로시간을 초과할 필요가 있는 사유 및 그 기간

2. 대상 근로자의 범위

④ 사용자는 특별한 사정이 있으면 고용노동부장관의 인가와 근로자의 동의를 받아 제1항과 제2항의 근로시간을 연장할 수 있다. 다만, 사태가 급박하여 고용노동부장관의 인가를 받을 시간이 없는 경우에는 사후에 지체 없이 승인을 받아야 한다.<개정 2010. 6. 4., 2018. 3. 20.>

⑤ 고용노동부장관은 제4항에 따른 근로시간의 연장이 부적당하다고 인정하면 그 후 연장시간에 상당하는 휴게시간이나 휴일을 줄 것을 명할 수 있다.<개정 2010. 6. 4., 2018. 3. 20.>

⑥ 제3항은 15세 이상 18세 미만의 근로자에 대하여는 적용하지 아니한다.<신설 2018. 3. 20.>

⑦ 사용자는 제4항에 따라 연장 근로를 하는 근로자의 건강 보호를 위하여 건강검진 실시 또는 휴식시간 부여 등 고용노동부장관이 정하는 바에 따라 적절한 조치를 하여야 한다.<신설 2021. 1. 5.>

[법률 제15513호(2018. 3. 20.) 부칙 제2조의 규정에 의하여 이 조 제3항 및 제6항은 2022년 12월 31일까지 유효함.]

**제56조(연장·야간 및 휴일 근로)** ① 사용자는 연장근로(제53조·제59조 및 제69조 단서에 따라 연장된 시간의 근로를 말한다)에 대하여는 통상임금의 100분의 50 이상을 가산하여 근로자에게 지급하여야 한다. <개정 2018. 3. 20.>

② 제1항에도 불구하고 사용자는 휴일근로에 대하여는 다음 각 호의 기준에 따른 금액 이상을 가산하여 근로자에게 지급하여야 한다.<신설 2018. 3. 20.>

1. 8시간 이내의 휴일근로: 통상임금의 100분의 50

2. 8시간을 초과한 휴일근로: 통상임금의 100분의 100

③ 사용자는 야간근로(오후 10시부터 다음 날 오전 6시 사이의 근로를 말한다)에 대하여는 통상임금의 100분의 50 이상을 가산하여 근로자에게 지급하여야 한다.<신설 2018. 3. 20.>

ROKPM0132

A-879

근로기준법

**부칙** <제18176호,2021. 5. 18.>

**제1조**(시행일) 이 법은 공포 후 6개월이 경과한 날부터 시행한다.

**제2조**(근로계약기간의 만료 등에 따른 구제명령 등에 관한 적용례) 제30조제4항의 개정규정은 이 법 시행 후 노동위원회가 같은 조 제1항에 따라 구제명령이나 기각결정을 하는 경우부터 적용한다.

**제3조**(이행강제금에 관한 적용례) 제33조제1항의 개정규정은 이 법 시행 후 발생한 부당해고등부터 적용한다.

ROKPM0133

국가법령정보센터

Labor Standards



Labor Standards

[Effective 11/19/2021] [Law #18176, Partial Amendment]

고용노동부 (근로기준정책과 - 해고, 취업규칙, 기타) 044-202-7534
고용노동부 (임금근로시간과 - 휴게, 특례업종) 044-202-7972
고용노동부 (근로기준정책과 - 소년) 044-202-7535
고용노동부 (근로기준정책과 - 임금) 044-202-7548
고용노동부 (여성고용정책과 - 여성) 044-202-7475
고용노동부 (임금근로시간과 - 제63조 적용제외, 관공서 공휴일) 044-202-7545
고용노동부 (임금근로시간과 - 근로시간, 연차휴가) 044-202-7973
고용노동부 (임금근로시간과 - 유연근로시간제) 044-202-7549

**Article 50 (Work Hours) ① One week's work hours cannot exceed 40 hours, excepting break times.**

③ 제1항 및 제2항에 따라 근로시간을 산정하는 경우 작업을 위하여 근로자가 사용자의 지휘·감독 아래에 있는 대기시간 등은 근로시간으로 본다.<신설 2012. 2. 1., 2020. 5. 26.>

**Article 53 (Limitations to Extended Work) ① The work hours set forth in Article 50 may be extended to up 12 hours per 1 week upon agreement between the parties.**

② 당사자 간에 합의하면 1주 간에 12시간을 한도로 제51조 및 제51조의2의 근로시간을 연장할 수 있고, 제52조제1항제2호의 정산기간을 평균하여 1주 간에 12시간을 초과하지 아니하는 범위에서 제52조제1항의 근로시간을 연장할 수 있다.<개정 2021. 1. 5.>

③ 상시 30명 미만의 근로자를 사용하는 사용자는 다음 각 호에 대하여 근로자대표와 서면으로 합의한 경우 제1항 또는 제2항에 따라 연장된 근로시간에 더하여 1주 간에 8시간을 초과하지 아니하는 범위에서 근로시간을 연장할 수 있다.<신설 2018. 3. 20.>

1. 제1항 또는 제2항에 따라 연장된 근로시간을 초과할 필요가 있는 사유 및 그 기간

2. 대상 근로자의 범위

④ 사용자는 특별한 사정이 있으면 고용노동부장관의 인가와 근로자의 동의를 받아 제1항과 제2항의 근로시간을 연장할 수 있다. 다만, 사태가 급박하여 고용노동부장관의 인가를 받을 시간이 없는 경우에는 사후에 지체 없이 승인을 받아야 한다.<개정 2010. 6. 4., 2018. 3. 20.>

⑤ 고용노동부장관은 제4항에 따른 근로시간의 연장이 부적당하다고 인정하면 그 후 연장시간에 상당하는 휴게시간이나 휴일을 줄 것을 명할 수 있다.<개정 2010. 6. 4., 2018. 3. 20.>

⑥ 제3항은 15세 이상 18세 미만의 근로자에 대하여는 적용하지 아니한다.<신설 2018. 3. 20.>

⑦ 사용자는 제4항에 따라 연장 근로를 하는 근로자의 건강 보호를 위하여 건강검진 실시 또는 휴식시간 부여 등 고용노동부장관이 정하는 바에 따라 적절한 조치를 하여야 한다.<신설 2021. 1. 5.>

[법률 제15513호(2018. 3. 20.) 부칙 제2조의 규정에 의하여 이 조 제3항 및 제6항은 2022년 12월 31일까지 유효함.]

**Article 56 (extended, night, and holiday work) ① Employer shall pay to Employee an additional amount greater than or equal to 50/100 of regular wages for extended works (referring to work hours extended pursuant to article 53, 59, or 69).** <Amend. 1 3/20/2018>

② 제1항에도 불구하고 사용자는 휴일근로에 대하여는 다음 각 호의 기준에 따른 금액 이상을 가산하여 근로자에게 지급하여야 한다.<신설 2018. 3. 20.>

1. 8시간 이내의 휴일근로: 통상임금의 100분의 50

2. 8시간을 초과한 휴일근로: 통상임금의 100분의 100

③ 사용자는 야간근로(오후 10시부터 다음 날 오전 6시 사이의 근로를 말한다)에 대하여는 통상임금의 100분의 50 이상을 가산하여 근로자에게 지급하여야 한다.<신설 2018. 3. 20.>

ROKPM0132-T

Center for National Law

Case 23-229, Document 54, 06/05/2023, 3525101, Page51 of 255

근로기준법

**부칙** <제18176호,2021. 5. 18.>

**제1조**(시행일) 이 법은 공포 후 6개월이 경과한 날부터 시행한다.

**제2조**(근로계약기간의 만료 등에 따른 구제명령 등에 관한 적용례) 제30조제4항의 개정규정은 이 법 시행 후 노동위원회가 같은 조 제1항에 따라 구제명령이나 기각결정을 하는 경우부터 적용한다.

**제3조**(이행강제금에 관한 적용례) 제33조제1항의 개정규정은 이 법 시행 후 발생한 부당해고등부터 적용한다.

ROKPM0133-T

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0132–T" through "ROKPM0133–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate <u>partial</u>

translation of the original documents bearing Bates Stamp "ROKPM0132" through

"ROKPM0133" (bottom right corner).


_____

Fran S. Yoon

August 29, 2022

**A-883**

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on August 29, 2022, a true and correct copy of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant's Response to Plaintiff's FRCP 56.1 Statement of Material Facts and Counter-Staetment of Facts, Declaration of Joshua S. Lim, Esq., and exhibits thereto, if any, were served on Plaintiff Hyunhuy Nam, in care of his attorneys, Youngjin Bae, Esq. and Shan Zhu, Esq. of Hang & Associates, PLLC, via ECF/PACER:

> Hyunhuy Nam
> c/o Youngjin Bae, Esq.
> c/o Shan Zhu, Esq.
> Hang & Associates, PLLC
> 136-20 38th Avenue, Suite 10G
> Flushing, New York 11354
> ybae@hanglaw.com
> szhu@hanglaw.com

Dated: August 29, 2022

_/s/ Joshua S. Lim_____
Joshua S. Lim, Esq.
**Kim, Cho & Lim, LLC**
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
T: 201-585-7400
F: 201-585-7422
joshualim@kcllawfirm.com
*Attorneys for Defendant*

**A-884**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Hyunhuy Nam,

                                   Plaintiff,                                   Case No. 1:21-cv-06165

                           - against -

Permanent Mission of the Republic of Korea to the
United Nations,

                                   Defendant.

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S
PARTIAL SUMMARY JUDGMENT**

Yongjin Bae, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Ste 10G
Flushing, NY 11354

**<u>TABLE OF CONTENTS</u>**

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.   SUMMARY OF FACTS ..................................................................................... 2

III.   SUMMARY JUDGMENT STANDARD OF REVIEW ................................. 3

IV.   ARGUMENT ........................................................................................................ 3

   A.   The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign
Immunities Act's Commercial Activity Exception ............................................ 4

   B.   The Commercial Activity Exception to Sovereign Immunity Applies to the
Permanent Mission ........................................................................................ 5

   C.   The commercial activity has "substantial contact with the United States." .. 12

   D.   All of Nam's Claims Should Survive Because Permanent Mission' Alleged
"Release" Has No Effect on the Viability of the Claims As Nam Is Seeking for
Damages That Were Occurred "During" His Employment ........................... 13

V.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*Am. Cas. Co. v. Nordic Leasing, Inc*., 42 F.3d 725, 728 (2d Cir. 1994)------------------------------ 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ----------------------------------------- 3

*Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 439 (1989) ------------------- 4

*Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020) -------------- 10

*Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, (S.D.N.Y. 2006)-------------------------- 3

*Cairo v. Universe Tankships, Inc., 708 F.2d 80, 84 (2d Cir. 1983)*---------------------------------- 13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)---------------------------------------------------- 3

*Dister v.Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) ------------------------------ 4

*Everard Findlay Consulting, LLC v. Republic of Surin.*, 831 F. App'x 599, 601 (2d Cir. 2020)  13

*Gallo v. Prudential Residential Services Ltd. P'ship*, 22 F.3d 1219, 1224 (2d. Cir. 1994)--------- 3

*Jacobs v. New York Foundling Hospital*, 483 F. Supp. 2d 251, 256 (E.D.N.Y. 2007) -------------- 4

*Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 83 (E.D.N.Y. 2010)------------- 3

*Mourmouni v. Perm. Mission of Republic of S. Sudan to U.N*-------------------------------------- 7

*Pablo Star Ltd. v. Welsh Gov't, 961 F.3d 555, 561 (2d Cir. 2020)* ------------------------------- 6

*Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 (2d Cir. 2020) -------------------------------- 5

*Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S. Ct. 2160, 119 L. Ed. 2d 394*

*(1992))*------------------------------------------------------------------------------------------------------ 6

*Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)---------------------------------------------------- 4

*Saudi Arabia v. Nelson, 507 U.S. 349, 360, 113 S. Ct. 1471, 123 L. Ed 2d 47 (1993))* ------------ 6

*Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1019 (2d Cir. 1991)--------------------------------- 13

**A-887**

*Zveiter v. Brazilian Nat. Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y.

1993)----------------------------------------------------------------------------------------------------------- 8, 12

S<small>TATUTES</small>

28 U.S.C. § 1605(a)(1) and (2)-------------------------------------------------------------------------------4

Fed. R. Civ. P. 56(c)----------------------------------------------------------------------------------------------3

Rule §30(b)(6) of the F. R. C. P --------------------------------------------------------------------------- 11

U.S.C. § 1604 ------------------------------------------------------------------------------------------------------4

iii

Plaintiff Hyunhuy Nam (hereinafter, "Nam"), by and through his counsel Hang & Associates, PLLC, hereby respectfully submits this memorandum of law in opposition to Defendant Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission")'s motion for summary judgment under Fed. R. Civ. P. 56. For the reasons presented herein, Nam respectfully requests that this Court deny Permanent Mission's motion for summary judgment in its entirety and this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

## I.     PRELIMINARY STATEMENT

This action arises out of Nam's employment at Permanent Mission during the course of performing his duties as a chauffeur for Permanent Mission and for its diplomatic staff to provide transportation. Although Nam was hired to work as a chauffeur for Permanent Mission and its staff, Permanent Mission permitted and its diplomatic staff utilized Nam's service and Permanent Mission's automobile to engage in their personal businesses and providing free transportation for their family, friends, and acquaintances.

Permanent Mission filed a motion for summary judgment under Fed. R. Civ. P. 56.  In their motion, Permanent Mission overlooked the nature and scope of Nam's duty, made unwarranted presumption of the (in)applicability of the exceptions under FSIA, and misleadingly stated that Nam "duly released" Permanent Mission from his "employment-related claims."  (See, Dkt No. 78-1). Indeed, the duties Nam performed for Permanent Mission could surely be performed by a private citizen and commercial activity exception under 28 U.S.C. § 1605(a)(1) and (2) applied to Permanent Mission.

1

## II.  SUMMARY OF FACTS

In or about June 2016, Nam was searching for employment via the Hey Korean's Website. (Nam Decl. ¶4) Hey Korean's Website lists various jobs, such as salesperson, driver, and waiter, in the Korean-language. (Nam Decl. ¶4) While searching, Nam found a listing for a chauffeur position in the "driver-wanted" section posted by the Permanent Mission. (Nam Decl. ¶5)  Nam applied the position and was subsequently interviewed and hired by the Permanent Mission Secretary, Mr. Hang-Suh Choi.  (Nam Decl. ¶6)

From June 28, 2016, to June 30, 2021, Permanent Mission employed Nam as a chauffeur to provide transportation for diplomatic staff.  Permanent Mission provided Nam with an "official vehicle," a Hyundai sedan, for transporting diplomatic employees and a small office located within the Permanent Mission's building. (Nam Decl. ¶8) Additionally, Nam was initially provided a phone for use during daily duties. (Nam Decl. ¶9)  However, Permanent Mission unexpectedly and without reason disconnected Nam's phone line around May-June 2018 and required Nam to use his personal phone to perform his daily duties.  Subsequent requests for a business phone were denied.  (Nam Decl. ¶10)

Nam officially began his work duties on or about July 1, 2016.  Two days later, Nam was required to sing a "Contract for Employing a Chauffeur" setting forth working hours and other details for a one-year term of employment.  Nam was required to renew the contract annually, though the listed "employer" changed with the Permanent Mission staff.  (Nam Decl. ¶11)

In October 2017, Nam started receiving orders from Permanent mission staff to perform various personal errands for staff, drive for staff's friends and family after hours, and make trips unrelated to official Permanent Mission business.  (Nam Decl. ¶14)

2

### III.   SUMMARY JUDGMENT STANDARD OF REVIEW

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On a motion for summary judgment, the court must construe the facts in a "light most favorable to the non-moving party" and resolve all ambiguities and "draw all reasonable inferences in favor of the non-moving party." *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 456 (S.D.N.Y. 2006) (quoting *Am. Cas. Co. v. Nordic Leasing, Inc*., 42 F.3d 725, 728 (2d Cir. 1994)). A motion for summary judgment is granted "only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 83 (E.D.N.Y. 2010) (quoting Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Gallo v. Prudential Residential Services Ltd. P'ship*, 22 F.3d 1219, 1224 (2d. Cir. 1994). To defeat a properly supported motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Jacobs v. New York Foundling Hospital*, 483 F. Supp. 2d 251, 256 (E.D.N.Y. 2007). The moving party is entitled to summary judgment as a matter of law *only* if "[n]o rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *See Gallo*, 22 F.3d 1219 (citing *Dister v.Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

### IV.   ARGUMENT

3

A.      **The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign Immunities Act's Commercial Activity Exception**

The Foreign Sovereign Immunities Act ("FSIA") provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 439 (1989). Under FSIA, a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States **except** as provided in sections 1605 to 1607 of this chapter." *Id*.; *See also*, U.S.C. § 1604. The two exceptions relevant to this case are codified at 28 U.S.C. § 1605(a)(1) and (2):

A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case –

(1) in which the foreign state has waived its immunity either explicitly or by implication . . .

(2) in which the action is based upon a **commercial activity** carried on in the United States by

the foreign state…. *Id.*

"[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The FSIA is the only act that provides for exceptions from foreign sovereign immunity. *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069 (2021).

In Permanent Mission' motion, they argued that this Court lacks subject matter jurisdiction of Nam's Complaint because Permanent Mission are presumptively immune from the jurisdiction of United States' Court. Permanent Mission indeed, acknowledge that there are exceptions under FSIA, but failed to recognize the nature of Nam's duty and incorrectly concluded that Nam duties were "sufficiently intertwined with" the

4

Mission's activities on behalf of the ROK government. (*See,* Dkt No. 78-1). To the contrary, the

FSIA expressly provides exceptions to its grant of immunity, including the commercial activity

exception that specifically applies to the instant case.

In this case, Permanent Mission posted a hiring advertisement on Hey Korean's website to

hire a chauffeur to work for Permanent Mission. (See, Dkt No.11_Compl. ¶35). After Nam learned

of Permanent Mission's chauffeur position, he wrote an email describing his qualifications that he

has a Commercial Driver's License and the years of driving experience as a commercial driver

when he forwarded his resume in the same email. (Nam Decl. ¶6). In response to Nam's email, the

Permanent Mission Secretary contacted Nam by sending him a reply email using a *Hotmail* email

address. (Id.). After Permanent Mission's Secretary conducted an interview, Nam was hired as a

chauffeur, as one of Permanent Mission's non-diplomatic employees, and he was *supposed* to drive

Permanent Mission's diplomatic employees (Id.; Nam Decl. ¶¶7,8; Dkt No. 32_**Exhibit A).**

However, the nature (as opposed to the purpose and the job title) of Nam's actual employment and

the duties Nam performed were commercial, rather than governmental.

As such, this Court has jurisdiction over Nam's Complaint under the FSIA's commercial

activity exception.

**B.     The Commercial Activity Exception to Sovereign Immunity Applies to the
        Permanent Mission**

Permanent Mission alleged that Nam's duties did not involve any "commercial Activity"

and commercial activity exception does not apply to Permanent Mission. Indeed, the duties Nam

performed for Permanent Mission were non-governmental and could surely be performed by a

private citizen, thus Permanent Mission engaged in Commercial Activity and commercial activity

exception to Sovereign Immunity applies to Permanent Mission.

It is well settled that whether an activity is commercial under the FSIA depends on the nature of the activity, and not its purpose. That is, in determining whether the commercial exception applies, courts do not ask "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Pablo Star Ltd. v. Welsh Gov't, 961 F.3d 555, 561 (2d Cir. 2020)* (quoting *Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992))*. "[A] foreign state engages in commercial activity 'where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *Id.* (citing *Saudi Arabia v. Nelson, 507 U.S. 349, 360, 113 S. Ct. 1471, 123 L. Ed. 2d 47 (1993))*. Although the Nam bears the burden of production on the applicability of an FSIA exception "[t[he ultimate burden of persuasion remains with the party seeking sovereign immunity." *Jamsostek, 600 F.3d at 175*. In this case, that is Permanent Mission.

Judge Nathan, while assigned to this case, made a decision to dismiss Permanent Mission's motion to dismiss and stated that "The Court is mindful that foreign sovereigns may structure civil service differently than the United States, but Defendants' characterization of Nam as a "member[] of the service staff" cannot elevate him to the status of a *bona fide* public servant when, at present, **Defendants have not proffered that Nam had responsibilities beyond chauffeuring**." and concluded that Nam was not employed in a quintessentially governmental capacity." Dkt No. 61 at 7.

6

Permanent Mission contends in their motion for summary judgment that Nam had responsibilities beyond chauffeuring because Nam was subject to additional policies and procedures for high-level security clearance and had an obligation to maintain security and abide by the security guidelines. *Defs. Br.* at 16-17  Permanent Mission further contends that this additional security clearance made Nam differentiated from other drivers at Permanent Mission, thus Nam's duty is governmental capacity. *Id.* at 17.  Permanent Mission also argued that only with such pledges to maintain secrecy and abide by the security guidelines was Nam granted a pass to enter the vicinity of the U.N. building in Manhattan each year during the "high-level week" during which the head of each U.N. member-states gathered. *Id.* at 17.

In most recent decision with regards to commercial exception to sovereign immunity, this Court held that the plaintiff's work was not "quintessentially governmental" because it was "limited to the [ordinary] tasks of driving the Permanent Mission's staff and their families, delivering packages, and maintaining the Permanent Mission's vehicles." *Mourmouni v. Perm. Mission of Republic of S. Sudan to U.N.*, No. 20-CV-3603 (JPO), 2021 WL 4461829, at *2 (S.D.N.Y. Sept. 28, 2021). In that situation, "the work performed by a chauffeur for a permanent mission 'is activity that could be, and in fact regularly is, performed by private- sector businesses,' such as car services and corporations employing in-house executive chauffeurs." *Id.* at *3 (quoting *Pablo Star*, 961 F.3d at 559). "There is no basis for granting a foreign state immunity for its exploitation of chauffeurs whose work is important but no different from work performed in the private sector." *Id.*

In the instant case, like the chauffeur in the *Mourmouni*, Nam was hired as a chauffeur, as one of Permanent Mission's non-diplomatic employees, and he was *supposed* to drive Permanent

7

Mission's diplomatic employees (Id.; Nam Decl. ¶¶7,8; Dkt No. 32_**Exhibit A).** Nam's work

was limited to the task of driving.  For instance, even during the "high-level week" when the

head of each U.N. member-states gathered, Nam's work was just driving and any information

was not shared to Nam, such as the nature of event, the persons whom Nam would drive for,

routes and schedules were not shared until Nam received the call from Minister. Ex A.

*Transcript of deposition of Plaintiff*. 89:24-91:10. And Nam was not informed of the event that

Nam should drove to and he only got to know about the event thorough newspaper. Id. 89:24-

90:2 Nam "**just drove when [he] was asked to drive**" Id. 94:2-3 Nam's employment as a

chauffeur is more analogous to the employment of "laborers, [or] clerical staff"—which

constitute commercial activity—than the employment of "diplomatic, civil service, or military

personnel"—which is quintessentially governmental. *Kato*, 360 F.3d at 110 (quoting H.R. Rep.

No. 94–1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615); *see also Zveiter v.*

*Brazilian Nat. Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y. 1993)

(Sotomayor, J.) (reviewing the FSIA's legislative history to conclude that the employment of a

secretary by a foreign state is commercial).

  Permanent Mission maintains that the decision in *Mourmouni* is an outlier and/or

confined to its unique and dissimilar facts and the Figueroa-line of cases involve chauffeurs for

the Ambassador (*Figueroa*), the Consul General (*Bardales*), or other facts sufficient for the court

to hold that the chauffeur plaintiffs were involved in the safety of the diplomats (*Crum and*

*Butters*), which are regarded as "undoubtedly governmental" and matters "peculiar to

sovereigns." See *Figueroa*, 222 F.Supp.3d at 315; see also *Bardales*, 490 F.Supp.3d at 701.

In *Mourmouni*, the Court observed that *Figueroa* is distinguishable on its "exceptional" facts because the chauffeur in question was responsible for driving members of Sweden's royal family. *Mourmouni*, 2021 WL 4461829, at *3 ("It is within reason to believe that driving literal royalty through New York City is materially distinguishable from the work of the average Uber or Lyft driver."). And Permanent Mission argued that Nam's duty is similar to *Figueroa* where the chauffeur drives for Sweden' Royal as Nam drove for Minister and had an obligation pursuant to the pledge agreement. However, as the Court in *Mourmouni* noted that *Figueroa* may have been correctly decided and the *Figueroa* court did not have the benefit of the Second Circuit's reasoning in *Pablo Star* decided four years after. In *Pablo Star*, the Second Circuit clarified that a court's inquiry in applying the commercial-activity exception turns on the activity's **"outward form"** (in that case, the "unauthorized use of photographs on promotional websites") as opposed to the purpose of the sovereign's activity (in that case, promoting tourism to the foreign country). 961 F.3d at 564–65.

In determining whether the commercial exception applies, courts do not ask "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Pablo Star Ltd. v. Welsh Gov't, 961 F.3d 555, 561 (2d Cir. 2020)* (quoting *Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992))*.

Here, the "outward form" is hiring Nam as a chauffeur at Permanent Mission and it clearly the particular actions that the foreign state performs (whatever the motive behind them)

9

are the type of actions by which a private party engages in 'trade and traffic or commerce. It does not mean that the Minister shall use Uber or Lyft driver because the chauffeuring is the same as the driving of Uber or Lyft. The reasoning in *Pablo Star* is that if Permanent Mission hires and requests Nam to drive for Minister, the outward form is the type of action by which a private party engages in trade and traffic or commerce. The purpose of the sovereign's activity and instead with the aim of fulfilling uniquely sovereign objectives, in this case, protection of confidential information in the vehicle cannot be considered to decide the commercial activity exception.

Nam's duty is also distinguishable from the chauffeur in *Bardales,* where that plaintiff had responsibilities apart from chauffeuring, including "actually provid[ing] consular services, and serv[ing] as a direct representative of the Consulate," all of which, the court found, "went beyond . . . clerical tasks." *Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020) at 703. Nam worked only as a chauffeur and his duty does not include any consular services or serving as a representative of Permanent Mission. Thus, his job duty is commercial rather than governmental.

It is obvious that Nam was not registered with the Department of States. Ex B. *Transcript of deposition of Jinho Jo, witness for Permanent Mission under* Rule §30(b)(6) of the F. R. C. P, 39:20-40:3.  Permanent Mission categorized Nam as non-diplomatic staff. Id. 46:21-47:2 Permanent Mission provided diplomatic staff with Verizon family cell phone plan, but Nam did not receive this benefit because he was not diplomatic staff. Id. 50:13-50:25, 51:22-51:25. It clearly shows that Permanent Mission hired and treated Nam as non-diplomatic staff who does not work in governmental capacity. Although Permanent Mission did not give the benefit of

# A-898

diplomatic staff to Nam, Permanent Mission imposed the strict obligation to Nam only because Nam had gone through the additional security clearance and Nam's nature of job tends to disclose confidential information of the National Security. If Permanent Mission hired Nam in governmental capacity and wanted to manage him as diplomatic staff who has "*so important task to secure*", Permanent Mission should also have given Nam the same benefit that diplomatic staff has been enjoyed. The only active job duties Nam performed during the employment at Permanent Mission was "**just drove when [he] was asked to drive**" Ex A. *Transcript of deposition of Plaintiff*. 94:2-3.

Furthermore, it seems that Nam was not the only driver that had gone through the additional security clearance. There was a designated driver for the ambassador who had higher ranking than Ministers. Ex B. *Transcript of deposition of Jinho Jo, witness for Permanent Mission under* Rule §30(b)(6) of the F. R. C. P, 54:8-10 The designated driver for the ambassador is also required to go through the additional security clearance. *Id*. 54:22-55:2. Permanent Mission admitted that they need to verify whether the driver for the ambassador had gone through the same security clearance as Nam. *Id*. 56:12-57:18. Permanent Mission testified that the driver was not Korean and does not understand Korean language in the vehicle so the case is different from Nam. *Id*. 55:2-55:5, 56:12-57:18 However, there is no evidence that the ambassador spoke only Korean in the vehicle and there might be the same possibility that the driver for the ambassador would leak the confidential information despite his language barrier to Korean. Whether driver understands Korean or not is not relevant to the Permanent Mission's characterization of Nam as a "member[] of the service staff" and cannot elevate him to the status of a *bona fide* public servant as Nam understands Korean. *Kato*, 360 F.3d at 110 (quoting H.R. Rep. No. 94–1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615; *see also Zveiter v.*

11

*Brazilian Nat. Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y. 1993) (Sotomayor, J.) (reviewing the FSIA's legislative history to conclude that the employment of a secretary by a foreign state is commercial).

Regardless of the type of documents, Agreements, and/or Contracts Nam was required to sign, Nam had to work as long as the Permanent Mission's Ministers and Counselor required and at any time the diplomatic staff, their family members, friends, acquaintance, and even children's friends needed free transportation, personal shopper, and/or tour guide. (Nam Decl. ¶40). The work Nam performed for Permanent Mission and its diplomatic staff pursuant to his employment relationship(s) constitutes commercial rather than governmental activity. Accordingly, Nam's employment relationship with Permanent Mission was non-governmental in nature because such relationship and activity are regularly engaged by any private parties.

In light of foregoing, the Court has Subject-Matter Jurisdiction under the Foreign Sovereign Immunities Act's Commercial Activity Exception and Permanent Mission's Motion for summary judgment should be denied in its entirety. The Court also should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact in connection with overtime wage Nam was entitled to receive, and Nam is entitled to judgment as a matter of law.

**C.     The commercial activity has "substantial contact with the United States."**

The commercial activity exception also requires that the commercial activity has "substantial contact with the United States." 28 U.S.C. § 1603(e). The exact contours of this standard are "poorly defined." *Pablo Star*, 961 F.3d at 563–64. But "it is clear that Congress

12

intended a tighter nexus than the minimum contacts standard for due process." *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1019 (2d Cir. 1991).

Here, the hiring, employment, and termination of a driver over the span of approximately five years in New York and New Jersey, meets the standard for substantial contact. *See, e.g.*, *Everard Findlay Consulting, LLC v. Republic of Surin.*, 831 F. App'x 599, 601 (2d Cir. 2020) (finding substantial contact when many aspects of a contract were negotiated in, performed in, and targeted the United States); *Pablo Star*, 961 F.3d at 565 (finding substantial contact when "the Welsh Government played an active role in the United States in the development and distribution in New York of promotional materials"). See, *See also, e.g., Pablo Star, 961 F.3d at 565-66* (finding substantial contact with the United States where promotional campaign of Welsh government—a political subdivision of the United Kingdom with substantial devolved powers— "reached beyond the confines of its consular office" to target an American audience and involved activities in New York and contracts with New York companies); *Ministry of Supply, Cairo v. Universe Tankships, Inc., 708 F.2d 80, 84 (2d Cir. 1983)* (Friendly, *J.*) (noting that a finding of substantial contact may be based on "as little activity as 'receiving financing from a private or public lending institution located in the United States'") (internal citations and alterations omitted)).

**D.    All of Nam's Claims Should Survive Because Permanent Mission' Alleged "Release" Has No Effect on the Viability of the Claims As Nam Is Seeking for Damages That Were Occurred "During" His Employment**

In Permanent Mission' motion, they stated, "[a] translation of the release, originally written in Korean is as follows: The above two sides submit this agreement because they have agreed not to raise civil and criminal claims in the future **with respect to the termination of the employment relationship** of the local employee (Hyunhuy Nam) as of June 30, 2021. Dkt No. 24-2.

However, Nam did not bring his claims against Permanent Mission with respect to the "**termination**" of the employment relationship with Permanent Mission.  Instead, Nam brought this action against Defendant Permanent Mission and its members for, among other claims, his unpaid wages and Permanent Mission' discriminatory conduct occurred **during** the employment.

**During** Nam's employment, Permanent Mission did not pay him all the hours he worked. Even after Nam was terminated, Permanent Mission did not pay the severance pay that they promised to Nam during my employment. (Nam Decl. ¶46). While Nam worked for Permanent Mission, Minister Lee told Nam that he needed to retire when he reached the age of 60 before and after he turned the age of 60. (Nam Decl. ¶36).  Before Minister Lee left Permanent Mission in April 2020, he again told me that I should get out of Permanent Mission because my age reached the Korean retirement age of 60. (Id.).  **During** Nam's employment, Permanent Mission's Counselor requested him to sign the "Down Contract" reflecting 20% reduction in monthly "base" pay because Nam already passed the retirement age. (Nam Decl. ¶38). Under emotional and financial pressure, Nam reluctantly capitulated to Permanent Mission's Counselor's demand and signed the backdated Down Contract, but Nam signed the Contract dated July 1, 2021 on October 2020. (Id.). Additionally, on few occasions since March 2021, Minister Chung asked Nam, "*where are you going after your retirement [with Permanent Mission]."* Again, in or around June 2021, Minister Chung told Nam that he must leave by the end of June 2021 because I already passed the retirement age of 60. (Nam Decl. ¶43).

Regardless of Nam's effort, time, hard-work **while** Nam was serving the Ministers and Counselor, Permanent Mission made it clear that they wanted Nam to retire. Since in or before April 2020 when Nam almost reached the age of 60, he began feeling increasingly insecure, unappreciated, and unwelcomed at work. (Nam Decl. ¶44). Despite that, Counselor Jo and Minister

14

**A-902**

Chung continuously pressured Nam to retire during his employment regardless of his objection. (Id.). As such, Permanent Mission' alleged agreement and/or release is not relevant to the nature of Nam's claims. Even if the Court finds that the release is valid, the terms in the release have no effect on the viability of Nam claims and all of his claims under the NYLL, NYSHRL, and NYCHRL should survive.

## V.    CONCLUSION

For the reasons stated above, the Court has Subject-Matter Jurisdiction under the Foreign Sovereign Immunities Act's Commercial Activity Exception and Permanent Mission' Motion to Dismiss should be denied in its entirety.  The Defendant failed to establish that the FSIA is applicable to this case, as an exception to its general immunity applies, and no other grounds for summary judgment have been substantiated.  Accordingly, Nam respectfully requests that this Court deny Permanent Mission's motion for summary judgment in its entirety and this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

Dated: Flushing, New York
      August 29, 2022

           HANG & ASSOCIATES, PLLC.
           /s/ Yongjin Bae
           Yongjin Bae, Esq.
           136-20 38th Ave., Suite 10G
           Flushing, New York 11354
           Tel: 718.353.8588
           E-mail: ybae@hanglaw.com
           Attorneys for Plaintiff

15

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYUNHUY NAM, | Case No.: 1:21-cv-06165-RA |
| Plaintiff, | |
| v. | CIVIL ACTION |
| PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS, | |
| Defendant. | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

Kim, Cho & Lim, LLC
163-10 Northern Boulevard, Suite 202
Flushing, N.Y. 11358-2652
T: 718-539-7400
F: 201-585-7422

On the brief:   Joshua S. Lim, Esq.
                Nicholas J. DuBois, Esq.
                Sean S. Kwak, Esq.
                Power J. Chen, Esq.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... ii

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   MATERIAL FACTS ARE NOT DISPUTED ........................................... 2

    A.    Applicable Law .............................................................................. 4

    B.    Plaintiff Fails to Cite (At All).......................................................... 5

    C.    Plaintiff Fails to Cite to Any Admissible Evidence in Declaration.... 5

    D.    Plaintiff's Cited Materials Fail to Establish the Presence of a Genuine Dispute............ 6

    E.    Plaintiff's Dispute is Not for "Material" Facts. .............................. 7

    F.    The Court Must Disregard Plaintiff's Proffered "Facts" Within His Brief Lacking Citations or Citing to Plaintiff's Inadmissible Declaration............ 8

III.  LEGAL ARGUMENTS IN REPLY ......................................................... 9

    A.    Plaintiff Bears the Burden of Proof................................................ 9

    B.    Plaintiff Cannot Rely on Judge Nathan's Jan. 21, 2022 Opinion ... 10

    C.    *Pablo Star* Does Not Save Plaintiff's Claims from Sovereign Immunity .......... 12

    D.    *Mourmouni* Does Not Save Plaintiff's Claims from Sovereign Immunity ......... 13

    E.    Plaintiff Makes Essentially No Argument that His Employment had "Substantial Contact with the United States" ............ 14

    F.    Plaintiff's Claims Have Been Settled.............................................. 15

IV.  CONCLUSION ....................................................................................... 15

### TABLE OF AUTHORITIES

**Cases**

Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek, 600 F.3d 171 (2d Cir. 2010) .............. 9, 10

Butters v. Vance Int'l, Inc., 225 F.3d 462 (4th Cir. 2000)............................................................ 12

Crum v. Kingdom of Saudi Arabia, No. Civ. A 05–275,
2005 WL 3752271 (E.D. Va. Jul. 13, 2005) ................................................................................ 12

Feng v. Hampshire Times, 14-cv-7102, 2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015) ............... 6

Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F.Supp.3d 304 (S.D.N.Y. 2016) ......... 2

Figueroa, 222 F.Supp.3d at 315 ................................................................................................... 8

Heredia v. Americare, Inc., 17-cv-6219, 2020 WL 3961618 (S.D.N.Y. July 13, 2020)............... 6

Hicks v. Baines, 593 F.3d 159 (2d Cir. 2010) ............................................................................... 5

Matar v. Dichter, 563 F.3d 9 (2d Cir. 2009) ................................................................................. 9

Mendez v. MCSS Rest. Corp., 564 F. Supp. 3d 195 (E.D.N.Y. 2021)...................................... 5, 6

Mourmouni v. Permanent Mission of Republic of S. Sudan to U.N.,
No. 20-cv-3603, 2021 WL 4461829 (S.D.N.Y. Sept. 28, 2021) ................................................ 13

Pablo Star Ltd. v. Welsh Government, 961 F.3d 555 (2d Cir. 2020) .............................. 11, 12, 14

Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244 (2d Cir. 2009)................. 4

Raskin v. Wyatt Co., 125 F.3d 55 (2d Cir. 1997) ........................................................................... 4

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) .............................................. 11, 12

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) .............................................................................. 11

Sicom S.P.A. v. TRS Inc., 168 F. Supp. 3d 698 (S.D.N.Y. 2016).......................................... 5, 6, 8

The Offshore Drilling Co. v. Gulf Copper & Mfg. Corp., 604 F.3d 221 (5th Cir.2010)................ 8

Xcentric Ventures, L.L.C. v. Borodkin, 2013 WL 3034267 (D. Ariz. June 17, 2013),
aff'd, 798 F.3d 1201 (9th Cir. 2015)............................................................................................. 8


**Other Authorities**

Fed. R. Civ. P. 56(c)(1)................................................................................................................... 4


**Rules**

L. Civ. R. 56.1(d) ............................................................................................................................ 5

The Permanent Mission of the Republic of Korea to the United Nations (hereinafter, the "Mission" or "Defendant"), by and through its counsel, the law offices of Kim, Cho & Lim, LLC, hereby respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, initial motion papers having been filed July 28, 2022.

## I.   PRELIMINARY STATEMENT

The gravamen of Defendant's motion is its immunity from this suit under the Foreign Sovereignty Immunity Act ("FSIA") and the _non_-applicability of the "commercial activities" exception thereunder. Conversely, Plaintiff asserts the exception applies. Plaintiff's arguments are without proper factual and legal basis, however, relying on a haphazard declaration and unpublished (and non-binding) decisions.

Defendant has briefed in meticulous detail the text of FSIA, its legislative intent, and then the courts' interpretation of its language both in this Circuit and sister circuits. The focus of the inquiry is whether the duties assigned to Plaintiff and which he performed were governmental in nature. Defendant submitted indisputable facts, properly authenticated with citations to the developed record, relevant to that issue.

In opposition, Plaintiff submits a declaration setting forth a series of "personal matters" to which he had been assigned and emphasizes his "supposed" duties. Plaintiff's submission of these facts is not only improper but also odd as they have no relevance to the FSIA inquiry. To any extent personal matters may relate – apart from Plaintiff's effort to embarrass ROK's[1] ministers and other dignitaries – these invoke the security aspect of Plaintiff's employment: keeping diplomats, families, and guests safe while attending to human as well as official activities. Based

---

[1] Republic of Korea, the official name of South Korea.

on such irrelevancies, Plaintiff jumps to a legal conclusion that his duties were of the type "regularly engaged by any private parties." See Pla. Opp. Br. at 12. Importantly, Plaintiff fails to cite any "private parties" who regularly engage in high-level protection of consular officials. Because he cannot properly dispute any of Defendant's statement of material facts ("DSMF"), Plaintiff simply demurs, ignores, or feigns ignorance of them, and points instead to his own.

Despite repeated assertions of "I didn't know,"[2] it is abundantly clear that Plaintiff's position required heightened security, both physical (for the diplomatic passengers' safety) and informational (to protect the ROK's national secrets). The performance of tasks involving these national concerns is, as this Court correctly held in Figueroa, "undoubtedly governmental." Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F.Supp.3d 304, 313 (S.D.N.Y. 2016) (citation omitted), and preempts Plaintiff's attempt to squeeze through the commercial exception.

Defendant relies on its arguments set forth in the moving papers for the most part. This reply scrutinizes the procedural defects in Plaintiff's opposition papers, as well as the omissions and flawed legal reasoning.

## II.   MATERIAL FACTS ARE NOT DISPUTED

As an initial matter, Plaintiff, in his opposition, affirmatively admits, or "does not dispute" 61 of a total of 83 paragraphs in the DSMF. In sum and substance, the facts not in dispute establish the following.

Defendant is a sovereign entity. DSMF ¶ 1. Plaintiff is a national of the Republic of Korea ("ROK"). Id. ¶ 2. Plaintiff's position required a "very important security issue" and required the Minister to personally conduct Plaintiff's job interview. Id. ¶¶ 4-6. Plaintiff submitted to security

---

[2] Plaintiff's verbatim assertion is "Plaintiff does not have knowledge of …," see Plaintiff's Response to DSMF, ¶¶ 33-37, 38-40, and "Nam's work was just driving and any [sic] information was not shared to Nam" see id., ¶¶ 51, 52, 63-71, 75.

clearance in both the United States and ROK. Id. ¶¶ 7-8. At the time of hire and annually, Plaintiff was required to, and did knowingly and voluntarily[3] sign, security pledges and employment agreements with a strong emphasis on Plaintiff's duty to maintain the secrecy of ROK's "nationally classified information." Id. ¶¶ 10-16, 19-30. The employment agreements further provide that Plaintiff shall be subject to punishment under the law of the ROK in the event of a breach. Id. ¶ 38. Plaintiff knew these agreements were "critically important" to performing his job. Id. ¶ 17. Plaintiff was "helping the national interest" of the ROK by driving the official car of the Mission. Id. ¶ 31. Moreover, the ROK's "guidelines on administrative employees" govern the parties' employment relationship. Id. ¶ 32.

Plaintiff further admitted that the Ministers are very important high-level officials of the ROK, whose work requires a high-level security clearance. Id. ¶¶ 58-60. Plaintiff "worked as a part of a 'team' with the Ministers and Counsellors at the Mission in matters concerning political affairs" and supported the Minister "in managing foreign matters." Id. ¶¶ 51, 52. During the annual "high-level week" where the head of the U.N. member states gather, Plaintiff was granted a security pass for admission through the barricades. Id. ¶¶ 77-81.

Plaintiff also admitted that as the Minister's designated chauffeur, Plaintiff alone drove a designated official car of the Mission. Id. ¶¶ 53-56. Safety was a "very important concern for Plaintiff when he drove for the Ministers" and he "checked inside his designated vehicle to 'make sure the car was in good condition' to ensure the safety of the Ministers." Id. ¶¶ 72-73.

These facts not disputed by the Plaintiff in opposition to Defendant's DSMF are well beyond sufficient to find that Plaintiff was an employee performing duties that are governmental

---

[3] Plaintiff purports to dispute that he "knowingly, voluntarily, and without coercion" signed the employment agreement, but his only basis is that he "signed the employment contract without reading it" Plaintiff's Response to DSMF, ¶ 23.

in nature, and thus Plaintiff's claims fall outside the commercial activities exception under the FSIA.

As to those "disputed" paragraphs, Plaintiff disputes paragraphs 18 and 57 on immaterial grounds and fails to <u>properly</u> dispute the remaining 20 paragraphs. These paragraphs are examined below.

### A.  <u>Applicable Law</u>

The Federal Rules of Civil Procedure require that

> [a] party asserting that a fact … is genuinely disputed <u>must</u> support the assertion by:
>
> (A) citing to particular parts of materials in the record…; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1) (emphasis added). It is critical that the cited materials in the record are competent, <u>admissible</u> evidence. Subsection (c)(2) expressly permits a party to object that a cited material is inadmissible. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Subsection (c)(4) also requires that a declaration "<u>must</u> … set out facts that would be admissible in evidence[.]" Fed. R. Civ. P. 56(c)(4) (emphasis added).

Indeed, the Second Circuit consistently held that "<u>only</u> admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009) (citing <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 65 (2d Cir. 1997)). The <u>Talisman</u> court noted "[i]t is difficult to see how a court can decide a summary judgment motion without deciding questions of evidence." <u>Ibid</u>.

The Honorable Barbara Moses, U.S.M.J., neatly summarized the consequences of failing to properly and "specifically" controvert each numbered paragraph of the movant's statement of

4

fact. "If the party opposing summary judgment fails to do so, that paragraph is <u>deemed admitted</u>. [ ] Each statement by the movant, including each statement controverting [the same] <u>must</u> be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." <u>Sicom S.P.A. v. TRS Inc.</u>, 168 F. Supp. 3d 698, 704 (S.D.N.Y. 2016) (emphasis added) (citing L. Civ. R. 56.1(d)). Accordingly, most if not all of the DSMF should be deemed admitted.

### B.  Plaintiff Fails to Cite (At All)

Plaintiff's submission is replete with conclusory denials. This does not create an issue for trial. <u>See</u> <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (alteration in original) (internal quotation omitted). For example, Plaintiff purports to dispute paragraphs 34 through 37, 62, and 83, but provides no citation to the record that would support any disagreement. Pursuant to Rule 56(c)(1)(A), these paragraphs in the DSMF must be deemed admitted for the purposes of the within Defendant's motion for summary judgment.

As such, Plaintiff admits that the laws of the ROK governed his employment and that he was privy to top secret and/or classified information of the ROK. DSMF ¶¶ 34-37, 62.

### C.  Plaintiff Fails to Cite Any Admissible Evidence in Declaration.

Plaintiff purports to dispute paragraphs 61 and 74 but cites only his own, newly submitted declaration. Plaintiff's self-serving declaration is not admissible as evidence, as detailed below.

"When . . . a party relies on an English-language declaration of a person whose native language is not English, that party must also submit documents sufficient to establish that [the declarant] understood what he was signing" <u>Mendez v. MCSS Rest. Corp.</u>, 564 F. Supp. 3d 195, 210 (E.D.N.Y. 2021) (citing <u>Heredia v. Americare, Inc.</u>, 17-cv-6219, 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020)); <u>see also</u> <u>Sicom</u>, 168 F. Supp. 3d 698 at 709 ("If the declarant himself does not speak and read English … the party relying on his English-language declaration must also

5

# A-911

submit documents sufficient to establish that he understood what he was signing.") (citing <u>Feng v.</u> <u>Hampshire Times</u>, 14-cv-7102, 2015 WL 1061973, at *4 n.4 (S.D.N.Y. Mar. 11, 2015)). "For example, the party can submit a certified translation read by the declarant before signing the English-language version, a signed copy of a non-English declaration accompanied by a translation, or a separate declaration from the declarant indicating that the document has been translated." <u>Ibid.</u> (citing <u>Heredia</u>, 2020 WL 3961618, at *4).

Here, Plaintiff is a ROK national. DSMF ¶ 2. He requested an interpreter at his deposition, and there, he confirmed that his English proficiency is only "[j]ust enough to get by as a truck driver." Def. Ex. 2, 17:18-24. Moreover, Plaintiff provided his deposition testimony in Korean. <u>See</u> Def. Ex. 2, 6:1-3. As such, Plaintiff's native language is <u>not</u> English and, for his English declaration to be admissible evidence, he must have submitted the types of documents "sufficient to establish that he understood what he was signing." <u>Sicom</u>, 168 F.Supp.3d 698. He did not.

For the same reasons, the Court must also disregard all facts to which Plaintiff cites only his newly submitted declaration that is contained in Plaintiff's opposition brief.

### D. <u>Plaintiff's Cited Materials Fail to Establish the Presence of a Genuine Dispute.</u>

Plaintiff purports to dispute paragraphs 23, 33, 63-71, and 75 by citing his deposition transcript, but his reasoning and the records cited are rather irrelevant to the corresponding paragraph of DSMF.

Rule 56(c)(1)(B) expressly permits the movant to assert that "a fact cannot be… genuinely disputed" by "showing that the materials cited do not establish the … presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." A closer review of each paragraph is warranted here:

    i.    Paragraph 23: Defendant states Plaintiff knowingly and voluntarily signed the employment agreements at issue. Plaintiff reasons, and cites his deposition

testimony indicating, that he "signed … without reading it." Whether he did or did not read the agreement is of no consequence to his voluntary execution of the agreement.

ii.     Paragraph 33: Defendant states the laws of ROK apply to Plaintiff's employment conditions. Plaintiff disputes by stating "this" is an unfair employment contract.[4] The cited record also relates to the employment contract – wholly irrelevant to whether the ROK law applies.

iii.    Paragraphs 63, 64, 68: Defendant states nothing about Plaintiff, but only that the whereabouts of and the list of ROK's high-level government officials are ROK's national secrets and relevant to their safety. Plaintiff "disputed" by asserting, in essence, that "he did not know" anything. His knowledge has no relevance to the national secrecy of certain information and the safety of ROK's dignitaries.

iv.     Paragraphs 65-67, 69-71: Defendant states the whereabouts of ROK's high-level government officials were shared with Plaintiff, and that Plaintiff was responsible for chauffeuring them about. By way of frivolous dispute, Plaintiff states such information was "not shared until [he] received the call from Minister" – meaning, it <u>was</u> shared with him – and impliedly concedes that he <u>did</u> chauffeur them (and participate in motorcades) when instructed to do so.

v.      Paragraph 75: Defendant states that Plaintiff was assigned the task of administering the "diplomatic protocol" or "Uei-jeon." Plaintiff does <u>not</u> state that he was not assigned such a task and attempts to bury his significant duty by making a blanket statement that he was "just driving." The grounds for his dispute are not responsive to Defendant's statement.

**E.  <u>Plaintiff's Dispute is Not for "Material" Facts.</u>**

Plaintiff disputes paragraphs 18 and 57 by stating he may not have been the <u>only</u> chauffeur subject to the Mission's heightened security clearance; Plaintiff asserts that the designated chauffeur for the Ambassador may have also been subject to same. This distinction is not material for Defendant's motion for summary judgment.   In fact, Plaintiff's claim rather supports Defendant's claim.

Where there is a dispute about a declaration or document that does "little more than provide cumulative evidence" on issues already established, summary judgment is not precluded. <u>Sicom</u>,

---

[4] Defendant's statement of fact makes no reference to any "contract."

# A-913

168 F Supp 3d 698, 707 (citing <u>The Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.</u>, 604 F.3d 221, 227 (5th Cir.2010) and <u>Xcentric Ventures, L.L.C. v. Borodkin</u>, 2013 WL 3034267, at *10 (D. Ariz. June 17, 2013), aff'd, 798 F.3d 1201 (9th Cir. 2015)).

Here, the uniqueness of Plaintiff's duties is <u>not</u> the focus of the FSIA inquiry. The focus is that Plaintiff <u>was</u> subject to such heightened requirements without a counterpart in commerce. Indeed, <u>assuming arguendo</u> Plaintiff is correct and there were only two chauffeurs – Plaintiff and the designated chauffeur for the Ambassador (the head of ROK's Ministry of Foreign Affairs) – who were subject to such heightened security clearance, this fact weighs in favor of Defendant in the FSIA immunity analysis. In <u>Figueroa,</u> this Court held a sovereign state is immune from employment-related claims by a chauffeur for an Ambassador. <u>Figueroa</u>, 222 F.Supp.3d at 315. That Plaintiff was an equivalent of an Ambassador's chauffeur favors Defendant's arguments.

**F.   <u>The Court Must Disregard Plaintiff's Proffered "Facts" Within His Brief Lacking Citations or Citing to Plaintiff's Inadmissible Declaration.</u>**

In gross disregard of the Court's Rules, Plaintiff makes <u>no citation whatsoever</u> to his L. Civ. R. 56.1 statement of fact. In fact, Plaintiff submits <u>no</u> counter-statement of fact.[5] Instead, Plaintiff cites directly to his declaration, which the Court should deem inadmissible for reasons set forth above.

There are also sections in Plaintiff's brief where he cites <u>nothing</u> when stating a fact. For instance, Plaintiff asserts in his brief that his "work was limited to the task of driving" without citation. Pla. Opp. Br. at 8. However, Plaintiff makes no such statement – not even in his inadmissible declaration. Plaintiff also purports that he "worked only as a chauffeur and his duty does not include any consular services or serving as a representative of Permanent Mission." <u>Id.</u>,

---

[5] Plaintiff submitted a document described as "Supplemental Rule 56.1 <u>counter</u> statement" (emphasis added) but it contains only his response to the DSMF.

at 10. This statement of supposed fact also appears nowhere in his declaration or <u>any</u> other record in this matter.

### III.  <u>LEGAL ARGUMENTS IN REPLY</u>

#### A.  <u>Plaintiff Bears the Burden of Proof</u>

Plaintiff argues the "ultimate burden of persuasion" (as to the applicability of FSIA immunity) remains with Defendant as "the party seeking sovereign immunity[,]" Pla. Opp. Br. at 6 (quoting <u>Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek</u>, 600 F.3d 171, 175 (2d Cir. 2010)[6]), understating <u>his</u> burden of establishing the applicability of the FSIA commercial activity exception. <u>Jamsostek</u>, the opinion cited in Plaintiff's opposition for his proposition, employs a burden-shifting framework once the defendant makes a prima facie showing under the FSIA that it is a foreign sovereign. <u>Ibid.</u> (citing <u>Matar v. Dichter</u>, 563 F.3d 9, 12 (2d Cir. 2009)).

Here, the parties agree the Mission is a foreign sovereign for FSIA purposes, so Defendant's initial burden has been met. In fact, Plaintiff alleges so in his Complaint, Def. Ex. 1, ¶ 17, and does not dispute it in his response to DSMF, ¶ 1. Thus, "the burden shifts to the plaintiff to show that an FSIA-enumerated exception to sovereign immunity applies." <u>Ibid.</u> It is only after Plaintiff satisfies his burden that the Court imposes the "ultimate burden" of persuasion. <u>Ibid.</u> Plaintiff  has fallen far short of carrying his burden to show that any exception applies – other than to state, in essence, "I didn't know" or "I just drove." Plaintiff's Resp. to DSMF, ¶¶ 51-52, 63-71, 75-76. Asserting ignorance and lack of knowledge is not "sufficient evidence to carry [Plaintiff's] burden of production" on the issue of the application of an FSIA exception. <u>See</u> <u>Jamsostek</u>, 600 F.3d at 175 ("[d]etermining whether [plaintiff's] burden is met involves a review of the allegations in the complaint, the undisputed facts, if any, placed before the court by the parties, and – if the

---

[6] Plaintiff's brief provides only the short-form citation.

plaintiff comes forward with sufficient evidence to carry its burden of production on this issue – resolution of disputed issues of facts.").

Plaintiff's reliance on <u>Pablo Star</u> and <u>Mourmouni</u> is a stretch, in disregard of an overwhelming weight of precedent regarding diplomatic chauffeuring; such fact-specific outliers do not save his complaint. Moreover, these decisions do <u>not</u> stand for the proposition that all chauffeur-employment matters survive the jurisdictional limit imposed by the FSIA, as already discussed in Defendant's moving papers and further distinguished below.

### B. <u>Plaintiff Cannot Rely on Judge Nathan's Jan. 21, 2022 Opinion</u>

Plaintiff argues as though Judge Nathan's January 21, 2022 Order and Opinion on Defendant's Fed. R. Civ. P. 12 (b)(1) and (6) preclude a finding that Plaintiff's duties were "quintessentially governmental." Pla. Opp. Br. At 6. The Court is respectfully reminded that the motion before Judge Nathan was at the pleadings stage, when the allegations of the complaint are accepted as true, and before the parties had the benefit of discovery. Hence Judge Nathan expressly found that "<u>at present</u>, Defendants have not proffered that Nam had responsibilities beyond chauffeuring." Def. Ex. 28, at 7 (emphasis added).

The parties now come before the Court with fully developed records and <u>undisputed</u>[7] facts establishing Plaintiff's duties were to ensure the safety of the ROK's dignitaries, their families, and friends, as well as other ROK and United Nation's high-ranking officials under conditions of secrecy. DSMF ¶¶ 58, 64, 66, 67, 69, and 72. Defendant has also established Plaintiff's distinctive status as the <u>designated</u> chauffeur for the Mission's Ministers requiring high security, as well as his duties to safeguard any information he may learn during his employment, DSMF ¶¶ 53-71, and keep such information in confidence for the rest of his life. Def. Exs. 4-15. Defendant has also

---

[7] The Court is respectfully referred to Section II of this memorandum.

established that Plaintiff was assigned the duties of performing the "diplomatic protocol" or "Uei-jeon" DSMF ¶¶ 75-76. Judge Nathan did not have the benefit of those facts now presented by the parties.

Speaking of benefits, Judge Nathan also noted in her decision:

> More importantly, the <u>Figueroa</u> court did not have the benefit of the Second Circuit's reasoning in <u>Pablo Star</u> decided four years after. In <u>Pablo Star</u>, the Second Circuit <u>clarified</u> that a court's inquiry in applying the commercial-activity exception turns on the activity's "outward form" […] as opposed to the <u>purpose</u> of the sovereign's activity[.]

Def. Ex. 38 at 9 (underscore emphasis added). Defendant respectfully submits there was not much "clarifi[cation]" specifically in <u>Pablo Star</u>. <u>Pablo Star</u>'s holdings relating to the "nature-versus-purpose" distinction and analysis of the "outward form" were already sufficiently delineated in the twentieth century. The <u>Figueroa</u> court <u>did</u> fully benefit from identical guidelines provided in <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607 (1992)[8] and <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349 (1993).[9] In fact, in its holdings, <u>Pablo Star</u> largely quotes <u>Weltover</u> and <u>Nelson</u> verbatim. <u>Pablo Star Ltd. v. Welsh Government</u>, 961 F.3d 555, 559-64 (2d Cir. 2020).

As such, unless the Court finds a material distinction between the facts in <u>Figueroa</u> and in this matter, the Court must also find Plaintiff's duties to have been "undoubtedly governmental" and likewise find that Defendant is immune under the FSIA.

---

[8] "However difficult it may be in some cases to separate ;purpose' (i.e., the reason why the foreign state engages in the activity) from 'nature' (i.e., the outward form of the conduct that the foreign state performs or agrees to perform)". <u>Weltover</u>, 504 U.S. at 617 (quoting 28 U.S.C. § 1603(d)).

[9] We did not ignore the difficulty of distinguishing "'purpose' (i.e., the reason why the foreign state engages in the activity) from 'nature' (i.e., the outward form of the conduct that the foreign state performs or agrees to perform)," but recognized that the Act "unmistakably commands" us to observe the distinction. <u>Nelson</u>, 507 U.S. at 361 (quoting <u>Weltover</u>).

11

**A-917**

### C. *Pablo Star* Does Not Save Plaintiff's Claims from Sovereign Immunity

Plaintiff relies on the Second Circuit's holding in Pablo Star for the proposition that the relevant inquiry under the commercial activity exception is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" Pablo Star, 961 F.3d at 561 (parentheses and italics in original) (citing Weltover, 504 U.S. at 614). Plaintiff then asserts, forgetting all of his duties except "just driving," that his chauffeuring was the type of activity in which a private party engages. Pla. Opp. Br. at 9-10.

Plaintiff's postulation of the Second Circuit's holding is wholly inconsistent with decades of rulings specifically involving the unique responsibilities of chauffeurs for high-ranking government officials, from Butters v. Vance Int'l, Inc., 225 F.3d 462 (4th Cir. 2000), Crum v. Kingdom of Saudi Arabia, No. Civ. A 05–275, 2005 WL 3752271 (E.D. Va. Jul. 13, 2005), and most importantly, Figueroa.

In fact, all these cases were decided after the United States Supreme Court's decisions in Weltover in 1992 and Nelson in 1993: the seminal works cited in Pablo Star for the above proposition. Construing Pablo Star to impliedly (but completely) overturn these precedents is unreasonable and wholly incompatible with this Circuit's jurisprudence. Instead, the correct means to harmonize the rulings in Weltover and this Court is to be mindful of this Court's unambiguous holding: that chauffeuring high-ranking government officials is "undoubtedly governmental." See Figueroa, 222 F.Supp.3d at 313. In reaching that determination, Figueroa looked to how the nature of the plaintiff's work was being "entrusted with the safe transport of Swedish dignitaries", which it accurately described as "an activity integral to effecting the governmental functions of the Mission, Id. at 315, and of course, not an act in which a private entity would engage.

12

Again, the facts here are substantially similar to those in <u>Figueroa</u>, if not more favorable for a finding of FSIA immunity. Plaintiff Nam was likewise "entrusted with the safe transport of the [Korean] dignitaries" and moreover, further tasked with the safekeeping of Korean national secrets. This alone suffices to end the FSIA inquiry in favor of immunity.

### D. *Mourmouni* Does Not Save Plaintiff's Claims from Sovereign Immunity

Plaintiff relies on the nonbinding opinion in <u>Mourmouni v. Permanent Mission of Republic of S. Sudan to U.N.</u>, No. 20-cv-3603, 2021 WL 4461829 (S.D.N.Y. Sept. 28, 2021) for the proposition that, simply stated, <u>all</u> chauffeurs' employment-related claims are ineligible for FSIA immunity. Plaintiff entirely fails to recognize significant distinctions between the facts in <u>Mourmouni</u> and other chauffeur-involving cases. Assuming the Court will consider the <u>Mourmouni</u> decision, Defendant submits that <u>Mourmouni</u> does not weigh in favor of Plaintiff in this matter.

As noted in Defendant's moving papers, <u>Mourmouni</u> references no chauffeuring of high-ranking officials or dignitaries, much less any security clearance or observation of diplomatic protocols. In fact, the <u>Mourmouni</u>-plaintiffs allege they were both supervised by "Cecilia Adeng," who plaintiffs specifically allege was <u>not</u> the ambassador. Def. Ex. 43, ¶ 16 (emphasis added). They further allege Ms. Adeng was a U.S. citizen, <u>id.</u>, ¶ 15; hence, <u>not</u> a South Sudanese dignitary.

Against that backdrop, Judge Oetken found "[i]n most circumstances, the work performed by a chauffeur for a permanent mission" is tantamount to "car services of corporations employing in-house executive chauffeurs." <u>Mourmouni</u>, 2021 WL 4461829, at *3 (emphasis added). Recognizing "[t]here are, of course, exceptions[,]" Judge Oetken pinpointed the fact pattern in <u>Figueroa</u> as one such exception. <u>Id.</u> at *3. Given the similarity of the fact patterns in <u>Figueroa</u> and the case at bar, this matter, too,  falls outside the commercial exception even under a <u>Mourmouni</u> analysis.

13

**A-919**

**E.  Plaintiff Makes Essentially No Argument that His Employment had "Substantial Contact with the United States"**

Plaintiff makes a two-paragraph argument on the issue of whether Plaintiff's employment meets the requirement for "substantial contact" under the FSIA. A close reading of his argument, however, boils down to just one sentence:

> Here, the hiring, employment, and termination of a driver over the span of approximately five years in New York and New Jersey, meets [sic] the standard for substantial contact.

Pla. Opp. Br. at 13. This argument sounds more like one for <u>minimum</u> contacts in a due process analysis. The Court cannot find that Plaintiff satisfied the <u>substantial</u> contact analysis with this single sentence. The remainder of Plaintiff's brief on this issue merely repeats the standards already set forth in Defendant's moving brief and parentheticals of precedents finding "substantial contact," which have no patent relevance to Plaintiff's circumstances.

To reiterate, for FSIA purposes "Congress intended a tighter nexus than the 'minimum contacts' standard for due process." <u>Pablo Star</u>, 961 F.3d at 565. The <u>Pablo Star</u> court specifically noted the extensive, 14-panel display on a road show through American venues, "utilizing Pablo Star's copyrighted photographs" in concluding that the "Welsh Government's conduct in New York reached beyond the confines of its consular office." <u>Id.</u> at 566. There is no counterpart to the promotional Welsh advertising campaign and tour with the dedicated chauffeuring involved in this matter. And of the three things Plaintiff lists, two occurred strictly <u>within</u> the confines of the ROK's consular office: hiring and firing. Plaintiff fails to satisfy his burden of showing this second prong of the FSIA's commercial activity exception applies to his case.

### F.  **Plaintiff's Claims Have Been Settled**

First, Plaintiff misrepresents to the Court that he "did not bring his claims against Permanent Mission with respect to the 'termination' of the employment." Pla. Opp. Br. at 14. Or, if this is accurate, Plaintiff should withdraw his Counts VI through IX, sounding in age discrimination and wrongful termination.

Second, Defendant respectfully submits that the Court must disregard all facts set forth in Plaintiff's opposition brief on this issue, as <u>all</u> citations are to his inadmissible declaration.

Third, if Plaintiff's claims were to survive the FSIA immunity and if the Court would adopt the restrictive reading of the parties' settlement agreement, Counts  VI through IX must nevertheless be dismissed as still relating to the <u>termination</u> of Plaintiff's employment.

### IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's opposition submission is pervasively defective, in form and substance. Defendant respectfully requests the Court grant Defendant's motion for summary judgment in its entirety and dismiss each and every one of the claims asserted in the Complaint.

Dated: September 19, 2022                        Respectfully submitted,

*/s/ Joshua S. Lim*
Joshua S. Lim
**Kim, Cho & Lim, LLC**
163-10 Northern Boulevard, Suite 202
Flushing, New York 11358-2652
(t) 718-539-7400
(f) 201.585.7422
joshualim@kcllawfirm.com
*Attorneys for Defendant*

15

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HYUNHUY NAM,<br><br>                  Plaintiff,<br><br>        v.<br><br>PERMANENT MISSION OF THE<br>REPUBLIC OF KOREA TO THE UNITED<br>NATIONS;<br><br>                  Defendant. | Case No.: 1:21-cv-06165-RA<br><br>CIVIL ACTION<br><br>**DECLARATION OF JOSHUA S. LIM, ESQ<br>IN SUPPORT OF DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br>PURSUANT TO FRCP 56** |

Joshua S. Lim, Esq., of full age, hereby respectfully makes the following declaration pursuant to 28 U.S.C. § 1746(1):

1. The undersigned is a partner at the law offices of Kim, Cho & Lim, LLC, attorneys for defendant Permanent Mission of the Republic of Korea to the United Nations ("Mission" or "Defendant").

2. As such, the declarant is familiar with the facts stated herein.

3. Annexed hereto as Exhibit 43 is a true and correct copy of the amended complaint filed in Mourmouni v. Permanent Mission of the Republic of S. Sudan to the U.N., case number 1:20-cv-03603, on January 11, 2021, retrieved through PACER.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 19, 2022

                              */s/ Joshua S. Lim*
                              Joshua S. Lim

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RIDWANE MOURMOUNI and
ISSIFI KALIKOYE,

                Plaintiffs,

v.

PERMANENT MISSION OF THE
REPUBLIC OF SOUTH SUDAN TO THE
UNITED NATIONS, and
CECILIA ADENG, an individual,

                Defendants.

---

**FIRST AMENDED COMPLAINT**

Case No. 1:20-cv-03603-JPO

<u>JURY TRIAL REQUESTED</u>

## <u>INTRODUCTION</u>

       COME NOW the Plaintiffs, pursuant to this Court's Individual Practice Rule 3.D.ii. and therefore under Fed. R. Civ. Proc. 15(a)(2), and amend their Complaint following the receipt of a motion to dismiss. This Complaint shall supersede and replace all foregoing Complaints filed in this action to date.

1. Plaintiffs Ridwane Mourmouni and Issifi Kalikoye ("Plaintiffs") served as drivers for Defendant Cecilia Adeng and various agents of the Permanent Mission of The Republic of South Sudan to The United Nations ("South Sudan Embassy" or "Embassy") for several years each. For the last 11 months of their employment, the Plaintiffs were not paid at all.

2. To challenge these and other wage-related violations, Plaintiffs bring this action, by and through their attorneys, against the Embassy and Ms. Adeng to recover unpaid or underpaid wages and other damages under several alternative theories of relief, seeking the greatest (but not duplicative) relief available to them thereunder:

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

a. the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (hereinafter "FLSA")

b. the New York Labor Law, Art. 19, § 650, *et seq*. (hereinafter, "NYLL")

c. the labor laws of South Sudan

d. common law breach of contract and/or unjust enrichment claims and

e. common law tort of conversion

f. common law tort of negligence.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal questions, 29 U.S.C. § 201 *et seq*. of the FLSA, and also by virtue of the nature of the defendant entities.

4. The Defendants are not immune from suit. The Foreign Sovereign Immunities Act of 1976 (FSIA) provides in 28 U.S.C. §§ 1604-1607 that foreign states (not individuals) are immune from the jurisdiction of the courts of the U.S. and its states, with exceptions, including, relevant here, claims involving:

a. Commercial activities: "in which the action is based upon a commercial activity carried on in the United States by the foreign state…" § 1605(a)(2); ; *Letelier v. Republic of Chile*, 748 F.2d 790, 796 (2d Cir. 1984) (citing Senate Report containing examples of commercial activities that include, *inter alia*, the "employment or engagement of laborers, clerical staff or public relations or marketing agents")**.**

b. Whether the foreign state acts "with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" is irrelevant. *Anglo-Iberia Underwriting*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 2

*Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010)). Instead, the key inquiry is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Id*. In other words, the foreign state does not have to make money from the endeavor in order for this exemption to be met. Here, if the Plaintiffs had not rendered the services that they did, the Defendants could have paid other commercial entities (such as Uber or a black car service) to perform near identical services, and doing so would have been of no (or minimal) detriment the Embassy's and its agents' ability to perform their diplomatic functions. The key inquiry should focus not on whether their activities generated revenue but on the fact that the Plaintiffs performed "the type of actions by which a private party engages in trade and traffic or commerce."

c. Torts: "money damages … sought against a foreign state for … damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment…." § 1605 (a)(5). In assessing whether an alleged action is a tort, the court applies the substantive law of the state in which the locus of injury occurred, (here, New York law). *Salvador v. N.Y. Botanical Garden*, 71 A.D.3d 422, 423 (N.Y. App. Div. 2010). As set forth below, the plaintiffs have sufficiently alleged such torts.

5. Defendant Adeng is not personally subject to diplomatic immunity.

a. Upon information and belief, Ms. Adeng is a U.S. Citizen.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 3

    b.  Many of the tasks Plaintiffs were asked to perform by Defendants were purely personal in nature. For example, they would drive Ms. Adeng's children to school and extracurricular events on a near daily basis.

    c.  Defendant Adeng was aware of the financial situation of the Embassy and whether it was foreseeable that the Plaintiffs would be paid for future work, but nevertheless conditioned not only to suffer or permit it but to request their continued services.

    d.  Vienna Convention:  Article 39(2) does not immunize acts that are "incidental to" the exercise of the functions as a member of the mission. It does not apply to actions that pertain to household or personal life and that may provide, at best, "an indirect" rather than a "direct ... benefit to" diplomatic functions. *Swarna v. Al-Awadi*, No. 09-2525 (2d Cir. 2010)

    e.  FSIA: An individual official of a foreign state is the `agency or instrumentality' of the state, and is thereby protected by the FSIA, only when and to the extent she is "acting in her official capacity." See *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 81 (2d Cir. 2008).

6.  This Court has supplemental jurisdiction over Plaintiffs' state law claims by authority of 28 U.S.C. § 1367.

7.  Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 201 et seq. The events giving rise to the instant litigation occurred in New York City.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 4

## PARTIES

### Defendant Permanent Mission of the Republic of South Sudan to the United Nation

8. Defendant **Permanent Mission of the Republic of South Sudan to the United Nation** (hereinafter "South Sudan Embassy" or "Embassy") is an entity operating within New York County, at 336 E. 45th Street, 5th Floor, New York, NY 10017.

9. At all relevant times, the Embassy was engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

10. At all times material to this action, Defendant South Sudan Embassy was subject to the FLSA and was an "employer" of the Plaintiffs, as defined by § 203(b) of the FLSA and its interpretative caselaw.

11. At all times material to this action, Defendant South Sudan Embassy was subject to the NYLL and was an "employer" of the Plaintiffs, as defined by the NYLL and its interpretative caselaw.

### Defendant Cecilia Adeng

12. Defendant Cecilia Adeng, an individual, resides in Manhattan, at 40 River Road, 14 FL, New York, NY 10044.

13. Defendant Adeng (or was at all relevant times) is the Deputy Permanent Representative ("DPR") of the Permanent Mission of The Republic of South Sudan to The United Nations.

14. Defendant Adeng is not subject to diplomatic immunity.

15. Upon information and belief, Ms. Adeng is a U.S. Citizen.

16. Defendant Adeng is not (and was not at relevant times) the Ambassador to the Embassy.

17. At all times material to this action, Defendant Adeng exercised substantial control over the functions of the embassy's employees including Plaintiffs. She directed their day-to-day

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 5

activities, had the authority to terminate their employment, oversaw expenditures of the operation that included the Plaintiffs' compensation or lack thereof and otherwise served as the "head" or "boss" of the organization.

18. In addition to her role in the organization, she also was the direct employer of Plaintiff Mournouni. He drove both her and members of her family around the city on a daily basis. Many, and likely the majority, of the drives were personal in nature.

19. At all times material to this action, Defendant Adeng was an additional "employer" of the Plaintiffs, as defined by § 203(b) of the FLSA and its interpretative caselaw.

20. At all times material to this action, Defendant Adeng was subject to the NYLL and was an "employer" of the Plaintiffs, as defined by the NYLL and its interpretative caselaw.

**Plaintiff Ridwane Mourmouni**

21. Plaintiff Ridwane Mourmouni is a resident of Manhattan.

22. Plaintiff Ridwane Mourmouni worked for the Defendants as a driver from July 1, 2015 to January 31, 2019 or thereabouts.

23. The services he, and his co-Plaintiff, rendered were akin to those performed by a private black car service, or an upscale level of Uber such as "Uber black."

24. At all times material to this action, Plaintiff Mourmouni was an "employee" within the meaning of 29 U.S.C. § 203(e).

25. Plaintiff Mourmouni's primary supervisor was Defendant Adeng.

26. In this role, Plaintiff Mourmouni drove a Mercedes that weighed less than 10,000 pounds GVWR (gross vehicle weight rating).

27. Mourmouni estimates that generally he worked approximately 60 hours per week.

28. While working in this capacity, Plaintiff Mourmouni was not expected to record time

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 6

worked.

29. Defendants did not track Plaintiff Mourmouni's time worked.

30. While his schedule varied Plaintiff Mourmouni typically started work sometime between 7:00A.M. and 9:00A.M. and stopped sometime between 5:00P.M. and 7:00P.M.  Most days he estimates he worked for 12 hours, usually 5 days per week.  Further, he frequently began his workday earlier than 7:00A.M. to pick people up from the airport.

31. On a near daily basis, Plaintiff Mourmouni performed duties that were purely personal in nature for Defendant Adeng. For example, he transported her children to school, and took them to and from extracurricular activities.

32. Plaintiff considered himself to be always "on call" and he would "never say no" to a request to make a drive, seven days a week, even though the original understanding was for a more standard work schedule.

33. While in this position, Plaintiff Mourmouni's pay scheme was a fixed monthly rate.

34. Plaintiff Mourmouni's rate of pay was $4,100.00 per month.

35. Plaintiff Mourmouni was not paid at all for the months of March 2018 through January 2019 (11 months).

36. In addition, Plaintiff Mourmouni was not paid at a rate of one- and one-half times his normal hourly rate for all hours over 40 worked in a workweek.

37. For hours over 40 worked in the workweek, because of being a flat amount per month, he did not receive anything extra for overtime work

38. Plaintiff Mourmouni generally did not get a meal break of 30 minutes or more relieved of all duties.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 7

**Plaintiff Issifi Kalikoye**

39. Plaintiff Issifi Kalikoye is a resident of Manhattan.

40. At all times material to this action, Plaintiff Kalikoye was an "employee" within the meaning of 29 U.S.C. § 203(e).

41. Plaintiff Kalikoye's primary supervisor was Defendant Adeng.

42. Plaintiff Kalikoye worked for the Embassy as a driver from September 2016 until January 2019 or thereabouts.

43. At least some of the services he rendered were of a purely personal nature, such as taking people to restaurants when requested.

44. In this role, Plaintiff Kalikoye drove a Mercedes that weighed less than 10,000 pounds GVWR (gross vehicle weight rating).

45. While working in this capacity, Plaintiff Kalikoye was not expected to record time worked.

46. Plaintiff Kalikoye estimates that generally he worked approximately 60 hours per week.

47. Similarly to Plaintiff Mourmouni, Plaintiff Kalikoye typically started work sometime between 7:00A.M. and 9:00A.M. and stopped sometime between 5:00P.M. and 7:00P.M. Most days he estimates he worked for 12 hours, usually 5 days per week. Furthermore, he too frequently began his workday earlier than 7:00A.M. to pick people up from the airport.

48. While in this position, Plaintiff Kalikoye was paid a flat amount per month basis.

49. Plaintiff Kalikoye's rate of pay was supposed to be $3,850 per month.

50. Plaintiff Kalikoye was not paid at all for the months of March, 2018 through January 2019 (11 months).

51. In addition, Plaintiff Kalikoye was not paid at a rate of one- and one-half times his normal hourly rate for all hours over 40 worked in a workweek.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 8

52. For hours over 40 worked in the workweek, because of being paid a flat amount per week, he did not receive anything extra for overtime work

53. Plaintiff Kalikoye generally did not get a meal break of 30 minutes or more relieved of all duties.

## <u>LEGAL CLAIMS</u>

### As And For A First Cause of Action:
### FAIR LABOR STANDARDS ACT (FLSA) VIOLATIONS

54. Plaintiffs realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth here.

*Failure To Pay Minimum Wage*

55. Defendants failed to pay Plaintiffs the minimum wage for all hours they worked, in violation of the FLSA.

*Failure To Pay Time Overtime Properly*

56. Defendants failed to compensate Plaintiffs at a rate of one- and one-half times their normal hourly rate(s) for all hours over 40 worked in a workweek, in violation of the FLSA.

*Record-Keeping Failures*

57. At all relevant times, Defendants failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiffs, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.

*Willful & Not Based On Good Faith & Entitlement to Damages*

58. Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 9

**A-931**

59. The foregoing conduct constitutes a "willful" violation of the FLSA, 29 U.S.C. § 255(a).

60. As a result of the violations by Defendant of the FLSA, the Plaintiff is entitled to all damages available under the FLSA which include, but are not limited to, all unpaid wages, overtime, liquidated damages, attorney fees, costs, and interest, as set forth in the FLSA, more specifically 29 U.S.C. § 216(b).

### As And For A Second Cause of Action:
### NEW YORK LABOR LAW (NYLL) VIOLATIONS

61. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

62. Defendant Adeng was an "employer" of the Plaintiffs pursuant to the NYLL. She was not a "governmental agency" under NYLL § 190(3), and certainly was not when she asked the Plaintiffs to perform tasks that were purely personal in nature.

63. Defendant Embassy was an "employer" of the Plaintiffs pursuant to the NYLL. It is not a "governmental agency" under NYLL § 190(3). According to Defendants, it is "an instrumentality of a foreign sovereign" [Dkt. 22 p. 14]. It is not exempt from "employer" status under the NYL in the same way an entity like the NYC Police Department or MTA might be. See *Ball v. N.Y.C. Council* 17-CV-4828 (JMF) (S.D.N.Y. Sep. 26, 2018).

64. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

*Failure To Pay Wages*

65. Defendants failed to pay Plaintiffs their owed wages, in violation of NYLL § 663.

*Failure To Pay Minimum Wage*

66. Defendants failed to pay Plaintiffs the minimum wage for all hours they worked, in violation of NYLL § 652.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 10

*Failure To Pay Overtime*

67. Defendants failed to compensate Plaintiffs at a rate of one and one half times their normal hourly rates for hours over 40 in a workweek, in contravention of N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

*Spread of Hours*

68. Plaintiffs worked more than 10 hours on at least some workdays, but Defendants failed to pay them an additional one-hour's pay at the applicable minimum wage rate, in contravention of. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

*Failure To Pay Wages At Prescribed Frequency*

69. The timing and frequency of Plaintiffs' pay was improper.

70. Plaintiffs were "clerical [or] other workers" as that term is defined in NYLL § 190(7).

71. Plaintiffs were not consistently paid on regular paydays designated in advance by the employer not less frequently than semi-monthly, in violation of NYLL § 191(1)(d).

72. When Plaintiffs were separated from their employment, the employer failed to pay the wages owing in their final pay period not later than the regular payday for the pay period during which the separation occurred, in violation of NYLL § 191(3).

*Failure to Provide Pay Stubs / Wage Notices*

73. Defendant failed to furnish Plaintiffs with a "wage notice" containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 11

mailing address if different; and the telephone number of the employer, in contravention of NYLL § 195(1)(a) and § 198(1)(b)

74. Defendant failed to furnish Plaintiffs with "pay stubs," or a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of NYLL § 195(3), § 198(1)(d) and 12 N.Y. Comp. Codes R. & Regs. 142-2.7.

### *Record-Keeping Failures*

75. At all relevant times, Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of NYLL § 661.

76. At all relevant times, Defendants failed to establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee, in contravention of NYLL § 195(4) and 12 N.Y. Comp. Codes R. & Regs. 142-2.6.

77. Defendants failed to keep a time book showing the names and addresses of its employees and the hours worked by each of them in each day, in contravention of NYLL § 161(4).

### *Damages*

78. Due to Defendant's New York Labor Code violations, Plaintiffs are entitled to recover their unpaid wages, overtime, liquidated damages, interest, reasonable attorneys' fees, and costs associated with bringing the action. NY Lab. Code § 663(1).

**As And For A Third Cause of Action:**
**BREACH OF CONTRACT/UNJUST ENRICHMENT**

79. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 12

80. Plaintiffs had written employment contracts with the Embassy setting forth, *inter alia*, their rates of pay.

81. Specifically, Defendants agreed to pay Plaintiff monthly; Plaintiff Kalikoye's rate of pay was supposed to be $3850 per month, and Plaintiff Mourmouni's rate of pay was $4,100.00 per month.

82. By failing to pay Plaintiffs these amounts Defendants breached their contract of employment with Plaintiffs.

83. In the alternative, were a contract not found to exist, Defendants have been unjustly enriched by withholding monies that rightfully belong to Plaintiffs. Defendants are liable to Plaintiff in the amount of compensation unlawfully withheld from them, and other appropriate damages.

<div align="center">

**As And For A Fourth Cause of Action:**
**TORT OF CONVERSION**

</div>

84. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

85. Plaintiffs had a possessory right to their wages.

86. Defendants interfered with that possessory right, by not paying them.

87. Defendants had intent, insofar as they knew that the Plaintiffs were continuing to render services, that there was an agreement as to how much they would be paid for that work, they failed to pay the plaintiffs, and yet they kept permitting the Plaintiffs to keep working for them.

88. The failure to pay the Plaintiffs constitutes conversion pursuant to common law. *Short v. Churchill Benefit Corp.*, 14-CV-4561 (MKB) (E.D.N.Y. Apr. 8, 2016) ("The improper

**ANDERSON**DODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 13

**A-935**

withholding of an employee's wages can support a conversion claim.") <u>citing</u> *Bazignan v. Team Castle Hill Corp*., No. 13-CV-8382, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015.

89. Therefore, Defendants committed the tort of conversion against the Plaintiffs.

90. In addition to compensatory damages, punitive damages "may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right." *Ashare v. Mirkin, Barre, Saltzstein, Gordon P.C.*, 435 N.Y.S.2d 438, 441 (N.Y.Sup. 1980). Here, there was at least reckless or willful disregard of the plaintiffs' rights insofar as Defendants continued to accept their services month after month despite not paying them.

**As And For A Fifth Cause of Action:**
**TORT OF NEGLIGENCE**

91. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here

92. The Defendants owed a duty to plaintiffs, to compensate them for the work that they performed.

93. The Defendants breached that duty when they did not pay them for several months.

94. The breach proximately caused the plaintiffs' injuries or harms in that their nonpayment caused them significant financial hardships.

95. Plaintiffs sustained damages, not only by the lack of pay received but also by the costs associated with not having those wages available to pay their expenses.

96. Therefore, in addition or instead of conversion, Defendants are liable to the Plaintiffs for the tort of negligence.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 14

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

(A)     Award Plaintiffs unpaid and underpaid wages due under the FLSA and the New York Labor Law;

(B)     Award Plaintiffs liquidated damages in the amount of their unpaid FLSA wages pursuant to 29 U.S.C. § 216(b);

(C)     Award Plaintiffs liquidated damages pursuant to NYLL § 663;

(D)     Award Plaintiffs "spread of hours" pay in the amount of one times the then-applicable minimum wage rate for each day Plaintiff worked 10 or more hours in a workday;

(E)     Award Plaintiffs unpaid and underpaid wages pursuant to common law;

(F)     Award Plaintiffs compensatory and punitive damages pursuant to common law;

(G)     Award Plaintiffs appropriate contract damages;

(H)     Award Plaintiffs interest;

(I)     Award Plaintiffs the costs of this action together with reasonable attorneys' fees; and

(J)     Award such other and further relief as this Court deems necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Respectfully submitted, this **8th** day of **January, 2021.**

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*
Case No. 1:20-cv-3603-JPO (SDNY)

First Amended Complaint
Page 15

ANDERSONDODSON, P.C.

_____s/Penn Dodson_____
**Penn A. Dodson (PD 2244)**
*penn@andersondodson.com*
**Christopher T. Anderson**
*christopher@andersondodson.com*

11 Broadway, Suite 615
New York, NY  10004
(212) 961-7639 direct

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Mourmouni v. South Sudan Embassy*                                    First Amended Complaint
Case No. 1:20-cv-3603-JPO (SDNY)                                                          Page 16

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on September 19, 2022, a true and correct copy of

Defendant's Reply Memorandum of Law was served on Plaintiff Hyunhuy Nam, in care of his

attorneys, Youngjin Bae, Esq. and Shan Zhu, Esq. of Hang & Associates, PLLC, at the following

address(es) via PACER:

> Hyunhuy Nam
> c/o Youngjin Bae, Esq.
> c/o Shan Zhu, Esq.
> Hang & Associates, PLLC
> 136-20 38th Avenue, Suite 10G
> Flushing, New York 11354
> ybae@hanglaw.com
> szhu@hanglaw.com

and two (2) copies of all motion, opposition, and the within reply papers, with accompanying
exhibits, were delivered to:

> United States District Court
> Southern District of New York
> Attn: Hon. Ronnie Abrams, U.S.D.J.
> 40 Foley Square, Courtroom 1506
> New York, New York 10007

Dated: September 19, 2022                    _____/s/ Joshua S. Lim_____
                                                          Joshua S. Lim, Esq.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam,<br><br>                    Plaintiff,<br><br>        - against -<br><br>Permanent Mission of the Republic of Korea to the United Nations,<br><br>                    Defendant. | Case No. 1:21-cv-06165 |

## MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S PARTIAL SUMMARY JUDGMENT

Yongjin Bae, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Ste 10G
Flushing, NY 11354

1

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ....................................................................................... **4**

II. ARGUMENT ................................................................................................................... **4**

   **A.   The Commercial Activity Has "Substantial Contact With The United States." .......... 4**

   **B.   Nam's Duties Concerning "Personal Matters" Are Relevant ...................................... 8**

   **C.   All of Nam's Claims Should Survive Because Permanent Mission' Alleged "Release" Has No Effect on the Viability of the Claims As Nam Is Seeking for Damages That Were Occurred "During" His Employment ................................................................... 10**

   **D.   Nam Established He Worked Overtime and Was Not Paid Overtime Wage In Accordance with FLSA and NYLL ............................................................................. 12**

**III. CONCLUSION ............................................................................................................. 13**

**A-941**

## <u>Cases</u>

<u>*Bardales v. Consulate Gen. of Peru in N.Y.*</u>, 490 F. Supp. 3d 696 (S.D.N.Y. 2020)................. 5, 9

<u>*Bardales v. Consulate Gen'l of Peru in N.Y.*</u>, 490 F. Supp. 3d 696 (S.D.N.Y. 2020) ................... 9

<u>Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia, Consumer Prot. Ass'n</u> ................... 6

<u>*Id*</u>. ................................................................................................................................................. 10

<u>*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*</u>, 354 F. Supp. 2d 293 .............................. 11

*Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir. 1983) ............... 8

<u>*OBB Personenverkehr AG v. Sachs*</u>, 577 U.S. 27, 136 S.Ct. 390, 193 L. Ed. 2d 269 (2015) ........ 7

<u>*OBB Personenverkher AG v. Sachs*</u>, 577 U.S. 27, 35 (2015) ........................................................ 6

<u>*Pablo Star*</u> .............................................................................................................................. 5, 9, 10

*United States. Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 152 (2d Cir. 1991)* ........... 8

## <u>Statutes</u>

<u>28 U.S.C. § 1603(e)</u> ..................................................................................................................... 4

<u>28 U.S.C. § 1605(a)(2)</u>............................................................................................................... 4, 7

Fed. R. Civ. P. 56............................................................................................................................. 4

## I. <u>PRELIMINARY STATEMENT</u>

Plaintiff Hyunhuy Nam (hereinafter, "Nam"), by and through his counsel Hang & Associates, PLLC, hereby respectfully submits this memorandum of law in reply to Defendant Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission")'s opposition to Nam's motion for partial summary judgment under Fed. R. Civ. P. 56. For the reasons presented herein, Nam respectfully requests that this Court deny Permanent Mission's motion for summary judgment in its entirety and this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

## II. <u>ARGUMENT</u>

### A.    The Commercial Activity Has "Substantial Contact With The United States."

The FSIA does not immunize foreign states from suits based on commercial activity "carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). Commercial activity is "carried on" in the United States when it has "substantial contact" with the United States. 28 U.S.C. § 1603(e). Although it is clear that Congress intended the "substantial contact" standard to require "a tighter nexus than the 'minimum contacts' standard for due process," that standard is otherwise "poorly defined." *Pablo Star*, 961 F.3d at 565 (internal citations omitted). For example, in *Pablo Star*, the Court found substantial contact where the Welsh government distributed promotional materials for display and use in the United States as part of its "The Welsh in America" campaign, and those materials were printed under contract with New York companies. *See id.* at 565-66. In *Everard*, the Court found substantial contact where, among other things, the Republic of Suriname "chose to deal with an American company," "the contract targeted the U.S. travel market," and "many aspects of the contract were performed in

4

New York." See *Everard Findlay Consulting, LLC v. Republic of Suriname*, 831 F. App'x 599,

601 (2d Cir. 2020) (summary order) (internal quotation marks and alterations omitted).

In this case, Permanent Mission posted a hiring advertisement on Hey Korean's website to

hire a chauffeur to work for Permanent Mission. (Ex A. *Transcript of deposition of Jinho Jo,*

*witness for Permanent Mission under* Rule §30(b)(6) of the F. R. C. P, 34:2-38:8). After Nam

learned of Permanent Mission's chauffeur position, he wrote an email describing his qualifications

that he has a Commercial Driver's License and the years of driving experience as a commercial

driver when he forwarded his resume in the same email. (Nam Decl. ¶6; Dkt No. 87-2, Ex B.

*Transcript of deposition of Nam*. 18-19). In response to Nam's email, the Permanent Mission

Secretary contacted Nam by sending him a reply email using a *Hotmail* email address. (Id.). After

Permanent Mission's Secretary conducted an interview, Nam was hired as a chauffeur, as one of

Permanent Mission's non-diplomatic employees, and he was *supposed* to drive Permanent

Mission's diplomatic employees (Id.; (Nam Decl. ¶¶7,8; Dkt No. 87-2).

The facts in the instant case are very similar to the facts in *Everard* where the Court

found substantial contact as "key contractual negotiations [allegedly] occurred in New York,

many aspects of the contract were performed in New York, Suriname paid under the contract by

wiring U.S. dollars to U.S. bank accounts, and the contract targeted the U.S. travel market." Like

*Everard,* Nam's contract was executed in New York, many aspects of Nam's duty perform at

Permanent Mission, which is chauffeuring throughout New York and New Jersey, occurred in

New York and New Jersey and Nam was paid in U.S. dollars in the Permanent Mission's office

located in New York.  Ex B. *Transcript of deposition of Nam*. 55:22-56:4.

The facts in the instant case are also distinguishable from the facts in *Kingdom of Saudi*

*Arabia, Consumer Prot. Ass'n,* where this Court found that the commercial activity did not have

5

**A-944**

substantial contact with the United States. _Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia, Consumer Prot. Ass'n_, No. 21-941-cv, 2022 U.S. App. LEXIS 17156, at *2-6 (2d Cir. June 22, 2022). In _Kingdom of Saudi Arabia Consumer Prot. Ass'n,_ although the CPA entered into an agreement with CCI, a New York-based company, and CCI performed some of the work under the agreement in New York, the services for which CCI was retained were aimed at Saudi Arabia, not the United States. In addition to the services being aimed at Saudi Arabia, the execution of the contract and the decision not to pay also took place in Saudi Arabia. Unlike _Kingdom of Saudi Arabia Consumer Prot. Ass'n,_ the service for which Nam was retained aimed at Permanent Mission, which is located in New York and Nam's negotiation, recruitment, and retention of Nam' services constituted "act[s] performed in the United States" in connection with the execution of the contract, which was commercial activity elsewhere, satisfying the Commercial exception's second prong. _See_ _OBB Personenverkher AG v. Sachs_, 577 U.S. 27, 35 (2015) (explaining that, in the context of the commercial activity exception, "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the claim").

Furthermore, the claims in the instant case are 1) failure to pay overtime pay under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL); (2) failure to pay spread of hours premium under NYLL; (3) failure to provide Wage Notices to Plaintiff at the time of hiring as required by NYLL; (4) failure to provide Paystubs to Plaintiff as required by NYLL. Nam's work performed at Permanent Mission is clearly "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the claim" The Supreme Court has provided guidance to courts for determining whether there exists a nexus between a foreign state's commercial activity and plaintiff's claims—i.e., whether a plaintiff's claim is "based upon" the relevant commercial activity. _OBB Personenverkehr AG v. Sachs_, 577 U.S. 27, 136 S.Ct. 390, 193 L. Ed.

2d 269 (2015). Courts first must "identify[] the particular conduct on which the [plaintiff's] action is 'based.'" *Id.* at 395 (alterations in original) (quoting *Nelson*, 507 U.S. at 356). In doing so, courts should look at the "the gravamen of the complaint" as well as "those elements...that, if proven, would entitle a plaintiff to relief." *Id.* (alteration in original) (internal quotation marks and citations omitted). "Courts then must consider the degree of closeness that exists between the commercial activity and the gravamen of the plaintiff's complaint." <u>*Pablo Star*</u>, 378 F.Supp.3d at 308 (internal citations and quotation marks omitted).

Permanent Mission erroneously argues that commercial activity is not "carried on in the United States" within the meaning of 28 U.S.C. § 1605(a)(2) unless the specific act on which the Nam's suit is based had a substantial contact with the United States. Permanent Mission further contends that Nam's employment related solely to chauffeuring for the Ministers and their families and guests and did not involve any acts that would otherwise have any impact on the United States and Nam's duties did take place outside the confines of the Korean embassy but were confined to designated official vehicles that only Plaintiff drove. Defendant's Brief at 25-26. (Dkt # 78-1).

However, it is proper to consider Nam's predicate course of commercial activity as a whole. "When a foreign state has carried on a commercial activity within the United States ... [the FSIA] withdraws immunity with respect to claims based not only on acts within the United States but also with respect to acts outside the United States if they comprise an integral part of the state's regular course of commercial conduct or particular commercial transaction 'having substantial contact with the United States.'" *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir. 1983) (Friendly, *J.*)  As the court in *Universe Tankships,* this court found that acts even outside the United States can withdraw immunity if they comprise an

integral part of the state's regular course of commercial conduct or particular commercial transaction 'having substantial contact with the United States. Thus, Permanent Mission's argument misstates the law. Permanent Mission incorrectly asserts that the only location where Nam's conduct could have had an effect was confined to designated official vehicles. However, as the Second Circuit has noted, such an approach is improper: Clearly, a foreign sovereign's improper commercial acts cause an effect to the foreign corporate plaintiff in that plaintiff's place of incorporation or principal place of business. However, that a bright-line rule limiting the situs of an effect to the foreign plaintiffs domicile, place of incorporation, or principal place of business is too facile an interpretation of the FSIA. Were it so limited, it would be the rare instance in which any foreign plaintiff could be said to suffer a direct effect in the _United States._ _Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 152 (2d Cir. 1991)_, _affd,_ _504 U.S. 607_ _(1992)_. Thus, a commercial activity can have direct effects here even if Nam's duty is confined in his vehicle, if there are any other contacts with the United States forum. Id**.** (public policy reasons support courts mak[ing] American courts available to foreign plaintiffs if this will preserve or even enhance New York's status as a world financial leader). Here, Permanent Mission's activities have had a direct effect in the United States by hiring, employment, and termination of a driver over the span of approximately five years in New York and New Jersey, and depriving Nam of the opportunity to be paid overtime wage under FLSA and NYLL meets the standard for substantial contact in _Everard_ and _Pablo Star_.

For the foregoing reasoning, the commercial activity in this case has "substantial contact with the united states." and commercial activity exception is applicable to this case.

**B.      Nam's Duties Concerning "Personal Matters" Are Relevant**

**A-947**

Permanent Mission contends in their opposition brief, this Court recently analyzed a substantially identical fact pattern in *Bardales v. Consulate Gen'l of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020). Defendant's Brief at 7-8. (Dkt # 86). The plaintiff chauffeur in *Bardales* alleged having driven for "personal matters" on 17% of his workdays but this Court found it negligible and held that plaintiff's employment claim is nevertheless subject to the immunity under the FSIA. In light of the foregoing reasoning, Permanent Mission alleged that this Court should make the same finding where the "personal" activity is alleged to be 5% less than in *Bardales*. Nam disputes the percentage of personal matter in his summarized diary, however, even assuming, *arguendo*, the percentage is correct, Permanent Mission misinterpreted the decision in *Bardales*. Although the court in *Bardales* seems to consider the ratio of personal matter, the main reasoning the court made was that plaintiff had responsibilities apart from chauffeuring, including "actually provid[ing] consular services, and serv[ing] as a direct representative of the Consulate," all of which, the court found, "went beyond . . . clerical tasks." *Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020) at 703. As such, the ratio itself cannot be controlling factor in deciding Commercial Activity exception under FSIA.

Nam's duties concerning "personal matters" is relevant because it is related with the "outward form" in *Pablo Star*. The Second Circuit clarified that a court's inquiry in applying the commercial-activity exception turns on the activity's "outward form" (in that case, the "unauthorized use of photographs on promotional websites") as opposed to the purpose of the sovereign's activity (in that case, promoting tourism to the foreign country). *Id*. 961 F.3d at 564–65. Permanent Mission's hiring Nam as a chauffeur and Nam's job duties in connection with personal matter the particular actions that the foreign state performs (whatever the motive behind

them) are the type of actions by which a private party engages in 'trade and traffic or commerce. The reasoning in *Pablo Star* is that if Permanent Mission hires and requests Nam to drive for Minister, the outward form is the type of action by which a private party engages in trade and traffic or commerce. The purpose of the sovereign's activity and instead with the aim of fulfilling uniquely sovereign objectives, in this case, protection of confidential information in the vehicle cannot be considered to decide the commercial activity exception.

Furthermore, the claims Nam raised in the instant case, are related with overtime wage and its relevant violations of FLSA and NYLL. Permanent Mission did not pay Nam overtime wage even Ministers utilized Nam's service for private reasons, for instance, articulated in Nam's diary and summarized sheets supported by his Google Map records[1], and made Nam wait outside of the place until they finished family gathering, dinner with friend, shopping for relatives or golf rounding without any compensation for the Nam's overtime working hours. See *generally* Complaint and Nam Decl.; Dkt No. 87-2. Permanent Mission has forced Nam not to disclose his records for the security reasons and it clearly has made Nam difficult to vindicate his employment right under FLSA and NYLL. As such, Nam's duty concerning personal matter is relevant to this matter.

**C.      All of Nam's Claims Should Survive Because Permanent Mission' Alleged "Release" Has No Effect on the Viability of the Claims As Nam Is Seeking for Damages That Were Occurred "During" His Employment**

A release like any contract must be construed to give force and effect to the intention of the parties. The instrument of release must be strictly construed. A release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed.

---

[1] Nam produced his diary and summary of personal matter in his discovery response to Permanent Mission's request, but Permanent Mission designated those as confidential, thus Nam does not attach as Exhibit herein.

New York law does not construe a general release to bar claims for injuries unknown at the time the release was executed, even when the release contains broad language. *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 296 (S.D.N.Y. 2004).

In *Rolex Watch U.S.A.,* the dispute arose in the following release terms:

*Mutual Release.* The parties hereby release all claims they might have against each other as of this date. Notwithstanding the foregoing, this release does not apply to any claim by Rolex relating to merchandise purchased by Jeweler for which Jeweler has not yet paid.

Like Defendants in *Rolex Watch U.S.A.,* Permanent Mission failed to satisfy their initial burden of demonstrating to the Court that the release language establishes a defense as to any of the claims that remain in this lawsuit. *See Vermont Teddy Bear Co.,* 373 F.3d at 244. On the contrary to the language and context of the general release provision in *Rolex Watch U.S.A*, there are specific release term in the instant case, where the Parties executed the agreement because they have agreed not to raise civil and criminal claims in the future **with respect to the termination of the employment relationship** of the local employee (Hyunhuy Nam) as of June 30, 2021. Dkt No. 24-2. Permanent Mission erroneously argues that prior to initiating this action, Nam released all claims, including his claims under the NYLL, NYCHRL, and NYSHRL by signing a settlement agreement with the Mission. It clearly misstated the plain language in the agreement and intends to prohibit Nam from vindicating his right under FLSA and NYLL.

As Nam pointed out it the Opposition Brief, Nam did not bring his claims against Permanent Mission with respect to the "**termination**" of the employment relationship with Permanent Mission.  Instead, Nam brought this action against Defendant Permanent Mission and its members for, among other claims, his unpaid wages and Permanent Mission' discriminatory conduct occurred **during** the employment. As such, Permanent Mission' alleged agreement and/or release is not relevant to the nature of Nam's claims. Even if the Court finds that the release is

11

valid, the terms in the release have no effect on the viability of Nam claims and all of his claims

under the NYLL, NYSHRL, and NYCHRL should survive.

> **D.     Nam Established He Worked Overtime and Was Not Paid Overtime Wage In Accordance with FLSA and NYLL**

Permanent Mission contends that the documents Nam alleges establish his "overtime"

hours do not accurately reflect Plaintiff's actual overtime as it does not reflect any hours he

worked less on a different day (or not work at all). On the contrary, Taeho Kim, who is *witness*

*for Permanent Mission under* Rule §30(b)(6) of the F. R. C. P, admitted on the deposition and

stated that "so the way this ledger is written, the method is the following **if a person worked**

**from 9:00 to 6:00, then it's left blank** because that means that he didn't work overtime for that

day, that's what it means." Ex C. *Transcript of deposition of Taeho Kim*. at 19:18-22. This

statement shows Nam did not record his working hours when he worked within the scheduled

hours, which is 9 hours per day, from 9:00am to 6:00pm.

Furthermore, the numerous documents indicate that Nam deducted his working hours

when he left early or took day-off. See Exhibit D. Records 0061-75.  Thus, Permanent Mission

misstated the facts with regard to overtime sheet or off-schedule time sheet and Nam Established

he worked overtime and was not paid overtime wage in accordance with FLSA and NYLL.

As Nam pointed out the capped hours in Nam' employment contract in his moving

brief. See Nam's Brief (Dkt# 79 at 12-13). Permanent Mission's overtime record shows

that Nam's overtime payment was capped by $570 per month although Nam's overtime

hours were 82 hours in July 2016, and capped amount of overtime payment was $787 per

month regardless of how many hours Nam worked per month as overtime. Due to the cap

in the overtime payment, Nam had not received his overtime wage even though his monthly

overtime hours exceeded 52 hours per month and the rate was much lower than Nam should

have been entitled to receive under FLSA and NYLL. 56.1 Statement PP18-20 As a result, Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked for Permanent Mission and has violated the overtime provisions of the FLSA and NYLL.

### III. CONCLUSION

For the reasons stated above, the Court has Subject-Matter Jurisdiction under the Foreign Sovereign Immunities Act's Commercial Activity Exception and Permanent Mission' Motion summary judgment should be denied in its entirety.  The Defendant failed to establish that the FSIA is applicable to this case, as an exception to its general immunity applies, and no other grounds for summary judgment have been substantiated.  Accordingly, Nam respectfully requests that this Court deny Permanent Mission's motion for summary judgment in its entirety and this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

Dated: Flushing, New York
         September 19, 2022

                                    HANG & ASSOCIATES, PLLC.
                                    /s/ Yongjin Bae
                                    Yongjin Bae, Esq.
                                    136-20 38th Ave., Suite 10G
                                    Flushing, New York 11354
                                    Tel: 718.353.8588
                                    E-mail: ybae@hanglaw.com
                                    Attorneys for Plaintiff

34

```
 1                    J. Jinho
 2    the Mission's notice, but in case if it's
 3    necessary, the help wanted notice is put up in
 4    the civil general public site, and for Mr. Nam
 5    that was done because this is followed based on
 6    whatever the principle Korea has set up and
 7    general principle and it's not just Mr. Nam's
 8    case, but other cases of employment the same
 9    processes apply.
10          MR. LIM:  Let's take a break.
11          (Whereupon a break was taken.)
12    CONTINUED EXAMINATION BY
13    SHAN ZHU:
14      Q.   The last question you said Mission will
15    post the job advertisement on the general public
16    website.  Can you identify the website?
17      A.   Are you talking about the general public
18    website?
19      Q.   Yes, earlier you said there is a general
20    public website which the Mission used to hire Mr.
21    Nam.  The question is can you identify the
22    website.
23      A.   The website called heykorean.com.
24      Q.   Can you spell it?
25      A.   H-E-Y-K-O-R-E-A-N-dot-c-o-m.
```

35

1                     J. Jinho

2          MR. LIM:  You're not talking about the

3      Mission's website, you're talking about

4      general?

5          MR. ZHU:  Correct.

6      Q.   Is there any other website mission

7   utilized to hire people?

8      A.   There are other websites, but I cannot

9   think off my head right now.

10     Q.   Did Mission utilize their own official

11  website to hire individuals and put hiring

12  advertisement?

13         MR. LIM:  The question was did the

14     Mission use its own official website?

15     A.   Yes, that is our general practice.

16     Q.   So what position can you name which is

17  being posted on Mission's website for the hiring

18  process?

19         MR. LIM:  Not an objection, but are you

20     talking about general practice or are you

21     talking about specifically Mr. Nam?

22         MR. ZHU:  Generally.

23     A.   We utilize the help wanted section in

24  our Mission's general website to post the

25  position.

**A-954**

36

1              J. Jinho

2      Q.   What kind of positions did the Mission

3   generally post on their website; does that

4   include drivers or similar position as Mr. Nam

5   held?

6              MR. LIM:  Again you said did, not do.

7        I'm trying to clarify you said did the

8        mission, not do the mission.

9      Q.   Let's go with did the mission in the

10   past?

11      A.   So your question is in the past that the

12   Mission put on its own website the job help

13   wanted section just like Mr. Nam's?

14      Q.   Yes, correct.

15      A.   Yes.

16      Q.   So did you actually hire someone, did

17   you actually get someone to apply for the job

18   from the advertisement you post on Mission's

19   official website?

20      A.   In our own Missions, that happens a lot.

21      Q.   How about heykorean.com, did you get

22   applications from heykorean.com after you post

23   job advertisement?

24              MR. LIM:  Again you said did not do.

25      A.   So your question is when Mr. Nam was

37

1              J. Jinho

2    applying, were there other individual's who also

3    applied to his position through heykorean; is

4    that your question?

5       Q.   My question is just to be specific, your

6    general practice when you post on the job

7    advertisement on heykorean.com, did you get

8    applications from individuals through that

9    website?

10      A.   To my understanding, yes, there were

11   applications.

12      Q.   When you say based on your understanding,

13   is that referring to the time after February

14   2020?

15      A.   Yes, but as a reference because this was

16   general practice even before 2020, the same

17   principal applied just the same.  So initially we

18   put the ad up in the help wanted section in the

19   Mission website and nothing happens there, then

20   the public website heykorean is used as well.

21      Q.   Just want to confirm is it the Mission's

22   general practice while hiring position like Mr.

23   Nam position, Mission is going to simultaneously

24   post the advertisement on their official website

25   as to third-party public website for example

38

```
1                   J. Jinho
2    heykorean.com?
3        A.   Well, in general first of all, it is our
4    practice to put it on the Mission's website first
5    and then put it on the public website, but if
6    it's sort of a rush type of help wanted case,
7    there are times or time that simultaneously it's
8    done.
9        Q.   So the next question will be after
10   Mission received the application from candidates,
11   will Mission schedule an interview?
12       A.   Yes, we do the interview.
13       Q.   Can you identify the person who actually
14   participated in the interview of hiring
15   candidates which were obtained from Mission's
16   website or heykorean.com third-party website?
17           MR. LIM:  Clarification are you talking
18       about Mr. Nam, not general practice?
19           MR. ZHU:  In general.
20           MR. LIM:  Off the record.
21           (Whereupon a discussion was held off the
22       record.)
23       Q.   Let's put a timeframe on my previous
24   question.  Let's say from the year 2016 to the
25   present, based on your knowledge, who actually
```

**HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS**
Hyunhuy Nam on 02/22/2022                                      Page 18

```
 1   instructions?

 2        A.    Correct.

 3        Q.    Would you consider yourself an

 4   experienced driver?

 5        A.    Yes.

 6        Q.    Would you say that you are a very

 7   reliable driver?

 8        A.    Yes.

 9        Q.    Would you say that you operate the

10   vehicle in a very safe manner?

11        A.    Yes.

12        Q.    How many accidents have you had in the

13   past?

14        A.    If you're talking about a car accident,

15   there was only one minor car accident.

16        Q.    But otherwise you consider yourself a

17   very reliable, safe driver?

18             MR. ZHU:  Objection.  Asked and

19   answered.

20        A.    Correct.

21        Q.    Would you say you are very familiar

22   with the road areas in northern New Jersey?

23        A.    I am very familiar with the roads in

24   Connecticut and New Jersey.

25        Q.    Okay.  How did you find out about the
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                      Page 19

1    job opportunity at the Mission?

2          A.     I found out through HeyKorean.  It's a

3    Korean post or portal.  There was a job listing in

4    March of 2016.

5          Q.     Were you aware that the same job ad was

6    also available on the website of the Mission?

7          A.     I didn't know.

8          Q.     Did you ever know that it was available

9    on the website of the Mission?

10         A.     By 2020 when this case was already

11   filed, I knew about it.  So as I asked my attorney

12   and I actually went to the website of the Mission to

13   see if there were such listings available on the home

14   page.

15         Q.     Now, how did you reach out to the

16   Mission for a job interview?  Did you call them?  Did

17   you email them?

18         A.     I followed the instructions of the

19   posting in or on HeyKorean.

20         Q.     What were the instructions?

21         A.     Based on my recollection, I believe I

22   was supposed to contact via email.

23         Q.     What was the position and title you

24   applied for?

25         A.     Driver, chauffeur.

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                      Page 55

```
 1   Pages?

 2               MR. BAE:  Yes.

 3   BY MR. LIM:

 4       Q.    So you're saying that you're not able

 5   to include one hour lunch and Mr. Lee allegedly

 6   adjusted your work hours?

 7       A.    Yes.

 8       Q.    Just one hour lunch or more than that?

 9       A.    It's more than that.

10       Q.    Okay.  All right.  We'll get there,

11   okay?  We'll come back to this.

12               MR. ZHU:  Counsel, can we have a short

13   break?

14               MR. LIM:  Hold on.  I'm almost done

15   with the contract.

16       Q.    Let's come back to 2016 contract.  Now,

17   let's go to paragraph 5, No. 6.  According to this

18   contract, you understand that the Mission is exempt

19   from paying payroll tax, such as Social Security and

20   et cetera; is that correct?

21       A.    Yes.

22       Q.    In fact, you got paid in cash, correct?

23       A.    Yes.

24       Q.    In fact, you told them that you would

25   prefer cash?
```

HYUNHUY NAM vs PERMANENT MISSION OF REPUBLIC OF KOREA TO UNITED NATIONS
Hyunhuy Nam on 02/22/2022                                    Page 56

```
 1        A.      No.

 2        Q.      So you just got cash?

 3        A.      No, I wanted to be paid in checks so I

 4   could report my earnings on taxes.

 5        Q.      Okay.  Now, let's go to pledge

 6   agreement, Bates No. 14.

 7                MR. LIM:  After this we're going to

 8   take a short break.  Okay?

 9                MR. ZHU:  Yes.

10        Q.      Now, pledge agreement, this is the same

11   form that you signed every year for five years; is

12   that correct?

13        A.      Yes.

14        Q.      According to paragraph 1 -- strike

15   that.

16                Before that, if you look at the

17   preamble, it says you solemnly swear to abide by the

18   following terms, is that correct?

19        A.      Yes.

20        Q.      And would you say that you had --

21   strike that.

22                Have you ever engaged in any act that

23   breaches this pledge agreement?

24        A.      No.

25        Q.      Okay.  Let's go over two paragraphs,
```

19

1                         T. Kim

2    of what happened on that day?

3        A.   No.   What I'm looking at is on February

4    7th it says here he worked until 11:20 at night.

5        Q.   Let me clarify, the record says 11:20,

6    but Mr. Nam's diary, I can make that

7    representation, Mr. Nam's diary says 12:20 the

8    next day, can you tell me what happened on that

9    day?

10       A.   There were many occasions even before

11   this date that Mr. Nam worked until the 23rd hour

12   so it's been over two years, so I don't recall

13   what happened this date.

14       Q.   On February 9th there's no entry on the

15   record that Mr. Nam says he worked February 9th.

16   Do you remember on February 9, 2020, did Mr. Nam

17   work?

18       A.   So the way this ledger is written, the

19   method is the following if a person worked from

20   9:00 to 6:00, then it's left blank because that

21   means that he didn't work overtime for that day,

22   that's what it means.  So I don't recall whether

23   on February 9th Mr. Nam worked that day or not

24   worked that day, but just by looking at this

25   document and knowing how it is written, it is

# 시간외근무 확인대장

2020 0265-WDD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 09/01 | 남현희 | 07:15 | 19:50 | 3:35 | 포트리, 대표부, 관저 | 조 |
| 09/02 | 남현희 | 07:20 | 19:55 | 3:35 | 포트리, 대표부, 관저 | 조 |
| 09/03 | 남현희 | 07:15 | 19:45 | 3:30 | 관저, 대표부, 크레스킬 | 조 |
| 09/04 | 남현희 | 07:20 | 13:30 | -1:50 | 포트리, 잉글우드, 대표부 | 조 |
| 09/08 | 남현희 | 07:20 | 20:10 | 3:50 | 크레스킬, 관저, 대표부 | 조 |
| 09/09 | 남현희 | 07:15 | 19:50 | 3:35 | 포트리, 48St, 대표부 | 조 |
| 09/10 | 남현희 | 07:20 | 19:40 | 3:20 | 포트리, 대표부, 관저 | 조 |
| 09/11 | 남현희 | 07:20 | 20:20 | 4:00 | 포트리, 대표부, 관저 | 조 |
| 09/14 | 남현희 | 07:20 | 19:50 | 3:30 | 크레스킬, 대표부, 관저 | 조 |
| 09/15 | 남현희 | 07:15 | 19:50 | 3:35 | 포트리, 대표부, 관저 | 조 |
| 09/16 | 남현희 | 07:20 | 19:40 | 3:20 | 포트리, 잉글우드, 대표부, 관저 | 조 |
| 09/17 | 남현희 | 07:20 | 19:10 | 2:50 | 크레스킬, 대표부, 관저 | 조 |
| 09/18 | 남현희 | 07:15 | 21:30 | 5:15 | 영빈관 출, 포트리, 대표부 | 조 |
| 09/21 | 남현희 | 07:20 | 19:50 | 3:30 | 포트리, 5Ave, 대표부 | 조 |
| 09/22 | 남현희 | 07:15 | 19:50 | 3:35 | 크레스킬, 대표부, 관저 | 조 |
| 09/23 | 남현희 | 07:20 | 19:10 | 2:50 | 포트리 6Ave 대표부, 관저 | 조 |
| 09/24 | 남현희 | 07:15 | 20:40 | 4:25 | 포트리, 크레스킬, 관저 | 조 |
| 09/25 | 남현희 | 07:15 | 21:10 | 4:55 | 크레스킬, 대표부, 관저 | 조 |
| 09/28 | 남현희 | 15:00 | 22:30 | -0:30 | 플러싱, 롱아일랜드, 대표부 | 조 |
| 09/29 | 남현희 | | | -8:00 | 탄력근무 | 조 |
| | | | | | | |
| | | | Total | 52:50 | | |
| | | | | | 확인 [signature] | |

<u>시간외근무 확인대장</u>

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/03 | 남현희 | 07:10 | 17:00 | 00:50 | 크레스벨, 대회부 정리 | chg |
| 08/04 | 남현희 | 07:10 | 19:30 | 3:20 | 정리, 대회부 정리 | chg |
| 08/05 | 남현희 | 07:10 | 19:40 | 3:30 | 정리 점검, 대회부 | chg |
| 08/06 | 남현희 | 07:10 | 23:20 | 7:10 | 크레스벨 정리 대회부 | chg |
| 08/07 | 남현희 | 07:10 | 20:00 | 3:50 | 크레스벨, 점검 대회부 | chg |
| 08/10 | 남현희 | 07:10 | 19:30 | 3:20 | 정리, 대회부 정리 | chg |
| 08/11 | 남현희 | 07:10 | 19:20 | 3:10 | 정리 대회부 정리 | chg |
| 08/12 | 남현희 | 07:10 | 13:10 | -2:30 | 크레스벨 대회부 정리 | chg |
| 08/13 | 남현희 | 07:10 | 19:40 | 3:30 | 정리 보존정비, 대회부 | chg |
| 08/14 | 남현희 | 07:10 | 20:30 | 4:20 | 정리 대회부 정리 | chg |
| 08/17 | 남현희 | 07:10 | 19:20 | 3:10 | 정리, 대회부 정리 | chg |
| 08/18 | 남현희 | 07:10 | 21:10 | 5:00 | 크레스벨 대회부 정리 | chg |
| 08/19 | 남현희 | 07:10 | 24:20 | 8:10 | 크레스벨, 정리 대회부 | chg |
| 08/20 | 남현희 | 07:10 | 20:10 | 4:00 | 크레스벨 정리 대회부 | chg |
| 08/21 | 남현희 | | | -8:00 | 현장근무 | chg |
| 08/24 | 남현희 | 07:10 | 16:10 | 0:00 | 크레스벨 대회부 정리 | chg |
| 08/25 | 남현희 | 07:10 | 20:00 | 3:50 | 정리 대회부 정리 | chg |
| 08/26 | 남현희 | 07:10 | 20:00 | 3:50 | 정리 대회부 정리 | chg |
| 08/31 | 남현희 | 07:10 | 19:10 | 3:00 | 종연사진 크레스벨 대회부 | chg |
| | | | Total | 54:00 | 확인 | |

**A-964**

## 시간외근무 확인대장

2020                                          026 WPD

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/01 | 남현희 | 07:10 | 20:20 | 4:10 | 크레스넌, 대정녹 관리 | cho |
| 07/02 | 남현희 | 07:10 | 19:50 | 3:40 | 푸드리, 대정녹, 관리 | cho |
| 07/06 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리, 대정녹, 관리 | cho |
| 07/07 | 남현희 | 07:10 | 21:40 | 5:30 | 크레스넌, 대정녹 관리 | cho |
| 07/08 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리, 대정녹, 관리 | cho |
| 07/09 | 남현희 | 07:10 | 21:50 | 5:40 | 크레스넌 공드니 대정녹 | cho |
| 07/10 | 남현희 | 07:10 | 20:10 | 4:00 | 푸드리, 아귀스, 대정녹 | cho |
| 07/13 | 남현희 | 07:10 | 20:20 | 4:10 | 크레스넌, 중개써비 대정녹 | cho |
| 07/14 | 남현희 | 07:10 | 19:40 | 3:30 | 푸드리, 대정녹, 관리 | cho |
| 07/15 | 남현희 | 07:10 | 19:50 | 3:40 | 푸드리, 대정녹, 관리 | cho |
| 07/16 | 남현희 | 07:10 | 20:40 | 4:30 | 크레스넌, 대정녹관리 | cho |
| 07/17 | 남현희 | 07:10 | 19:50 | 3:40 | 푸드리, 대정녹, 관리 | cho |
| 07/20 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리, 대정녹, 관리 | cho |
| 07/21 | 남현희 | 07:10 | 20:50 | 4:40 | 크레스넌 대정녹 관리 | cho |
| 07/22 | 남현희 | | | -8:00 | 탄력근무 | cho |
| 07/23 | 남현희 | | | -8:00 | 탄력근무 | cho |
| 07/27 | 남현희 | 07:10 | 19:40 | 3:30 | 푸드리, 대정녹 관리 | cho |
| 07/28 | 남현희 | 07:10 | 19:30 | 3:20 | 푸드리, 큄스, 대정녹 | cho |
| 07/29 | 남현희 | 07:10 | 20:50 | 4:40 | 푸드리, 브릭펜드 굿써비스 | cho |
| 07/30 | 남현희 | 07:10 | 17:40 | 1:20 | 크레스넌, 종영쓰 대정녹 | cho |
| | | | Total | 54:00 | | |
| | | | | | 확인 | |

**A-965**

<u>시간외근무 확인대장</u>

0265 WDP

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 06/01 | 남현희 | 07:20 | 19:30 | 3:10 | 꼴뜨리, 관리 대중부 | chg |
| 06/02 | 남현희 | 07:00 | 19:10 | 3:10 | 꼴뜨리, 관리, 대중부 | chg |
| 06/03 | 남현희 | 07:20 | 19:10 | 2:50 | 크레/ 생, 관리 대중부 | chg |
| 06/04 | 남현희 | 07:20 | 22:00 | 5:40 | 꼴뜨리, JFK 관리대중부 | chg |
| 06/05 | 남현희 | 07:20 | 11:30 | -3:50 | 꼴뜨리, 대중부 관리 | chg |
| 06/08 | 남현희 | 07:20 | 22:00 | 5:40 | 꼴뜨리, JFK 관리 대중부 | chg |
| 06/09 | 남현희 | 07:30 | 19:20 | 2:50 | 꼴뜨리, 대중부 관리 | chg |
| 06/10 | 남현희 | 07:20 | 19:40 | 3:20 | 꼴뜨리, 관리 대중부 | chg |
| 06/11 | 남현희 | 07:10 | 19:30 | 3:20 | 꼴뜨리, 대중부, 관리 | chg |
| 06/12 | 남현희 | 07:00 | 19:30 | 3:30 | 꼴뜨리, 관리 대중부 | chg |
| 06/15 | 남현희 | 07:10 | 19:20 | 3:10 | 크레/ 생 대중부 관리 | cho |
| 06/16 | 남현희 | 07:20 | 19:10 | 2:50 | 꼴뜨리, 관리 대중부 | cho |
| 06/17 | 남현희 | 07:10 | 19:30 | 3:20 | 크레/ 생 관리, 대중부 | cho |
| 06/18 | 남현희 | 07:10 | 19:30 | 3:20 | 꼴뜨리, 관리 대중부 | cho |
| 06/19 | 남현희 | 07:10 | 19:30 | 3:20 | 꼴뜨리, 대중부 관리 | cho |
| 06/22 | 남현희 | 07:10 | 19:40 | 3:30 | 꼴뜨리, 관리 대중부 | chg |
| 06/23 | 남현희 | 07:10 | 19:30 | 3:20 | 크레/ 생, 관리 대중부 | chg |
| 06/24 | 남현희 | | | -8:00 | 휴 무 | chg |
| 06/25 | 남현희 | 07:10 | 19:30 | 3:20 | 꼴뜨리대중부 관리 | chg |
| 06/26 | 남현희 | 07:10 | 19:30 | 2:20 | 크레/ 생 대중부 관리 | chg |
| 06/29 | 남현희 | 07:10 | 17:20 | 1:00 | 꼴뜨리, 관리, 대중부 | chg |
| 06/30 | 남현희 | 07:30 | 18:30 | 2:00 | 꼴뜨리 대중부 관리 | cho |
| | | | Total | 54:00 | | |
| | | | | | 확인 | |

<u>시간외근무 확인대장</u>

2020

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|---------------|---------------|---------------|------------------|------------------|
|      |        | 시작시각 | 종료시각 | 초과시간 |  |  |
| 03/02 | 남성회 | 07:20 | 19:00 | 2:40 | 출.퇴근 초과녑 | ✓ |
| 03/03 | 남성회 | 07:70 | 20:00 | 2:30 | 출.퇴근 초과녑 | ✓ |
| 03/06 | 남성회 | 07:30 | 19:30 | 3:00 | 출.퇴근 초과녑 | ✓ |
| 03/05 | 남성회 | 07:40 | 23:50 | 7:20 | 크레스링 출.퇴근 | ✓ |
| 04/06 | 남성회 | 07:10 | 20:00 | 3:50 | 출.퇴근 초과녑 | ✓ |
| 03/09 | 남성회 | 07:20 | 19:40 | 3:20 | 크레스링 출.퇴근 | ✓ |
| 03/10 | 남성회 | 07:10 | 19:20 | 3:10 | 크레스링 출.퇴근 | ✓ |
| 03/11 | 남성회 | 07:10 | 19:30 | 3:20 | 크레스링 출.퇴근 | ✓ |
| 03/12 | 남성회 | 12:20 | 17:20 | -3:00 | 크레스링 정시업근 | ✓ |
| 03/13 | 남성회 | 07:50 | 12:30 | -2:30 | 4개론 출.퇴근업근 | ✓ |
| 03/16 | 남성회 | 07:40 | 18:50 | 2:10 | 크레스링 출.퇴근 | ✓ |
| 03/18 | 남성회 | 07:40 | 17:50 | 1:10 | 크레스링 출.퇴근 | ✓ |
| 03/19 | 남성회 | 07:50 | 17:50 | 1:00 | 출.퇴근 | ✓ |
| 03/20 | 남성회 | 07:50 | 17:50 | 1:00 | 출.퇴근 | ✓ |
| 03/23 | 남성회 | 07:50 | 18:30 | 1:40 | 출.퇴근 | ✓ |
| 03/24 | 남성회 | 08:10 | 16:40 | -0:30 | 출.퇴근 | ✓ |
| 03/26 | 남성회 | 08:10 | 19:50 | 2:40 | 출.퇴근 | ✓ |
| 03/27 | 남성회 | 08:10 | 16:50 | -0:20 | 출.퇴근 | ✓ |
| 03/30 | 남성회 | 08:10 | 16:30 | -0:10 | 출.퇴근 | ✓ |
| 03/31 | 남성회 | 08:10 | 14:00 | -4:00 | 출.퇴근 | ✓ |
|  |  |  | Total | 31:00 | 확인 | |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

<u>시간외근무 확인대장</u>

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 2/1 | 남희희 | 14:30 | 23:30 | 9:00 | 출장간, 출 퇴근 | |
| 2/2 | 남희희 | 09:00 | 21:30 | 12:30 | 출장간, 출 퇴근 | |
| 2/3 | 남희희 | 06:50 | 21:50 | 6:00 | 50가, 출 퇴근 | |
| 2/4 | 남희희 | 07:10 | 20:00 | 3:50 | 크레스팅, 출 퇴근 | |
| 2/5 | 남희희 | 07:30 | 18:30 | 2:00 | 파바무스, 출 퇴근 | |
| 2/6 | | | | -8:00 | 탄력근무 | |
| 2/7 | 남희희 | 08:20 | 23:20 | 6:00 | 42가 꾸리, 크레스링 | |
| 2/10 | 남희희 | 07:20 | 19:00 | 2:40 | 정박, 김도리 출퇴근 | |
| 2/11 | 남희희 | | | -8:00 | 탄력공무 | |
| 2/12 | 남희희 | 07:10 | 20:50 | 4:00 | 32가, 출 퇴근 | |
| 2/13 | 남희희 | 07:10 | 19:10 | 3:00 | 크레링, 출 퇴근 | |
| 2/14 | 남희희 | 07:10 | 01:00 | 8:50 | 32가 크레링, 출퇴근 | |
| 2/18 | | | | -8:00 | 탄력근무 | |
| 2/19 | 남희희 | 09:00 | 15:00 | -3:00 | | |
| 2/20 | 남희희 | 07:10 | 19:10 | 3:00 | 헤너웰비, 출퇴근 | |
| 2/21 | 남희희 | 15:50 | 20:40 | -3:20 | 32가, 탄력근무 | |
| 2/24 | 남희희 | 07:10 | 19:30 | 3:20 | 출 퇴근 | |
| 2/25 | 남희희 | 07:30 | 20:10 | 3:40 | 출 퇴근 | |
| 2/26 | 남희희 | 07:30 | 20:10 | 3:40 | 출, 퇴근 | |
| 2/27 | 남희희 | 07:30 | 23:10 | 6:40 | 크레스팅, 출 퇴근 | |
| 2/28 | 남희희 | 07:10 | 19:10 | 3:00 | 출, 퇴근 | |
| | | Total | 51:00 | | 확인 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0068

**A-968**

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 10/01 | 남성희 | 10:50 | 20:30 | 1:00 | 출·퇴근 | |
| 10/02 | 남성희 | 07:20 | 21:50 | 5:30 | 증명서발, Boot hove증명서 | |
| 10/03 | 남성희 | 15:10 | 24:00 | 8:50 | 메세지, 문서 크레스칭 | |
| 10/04 | 남성희 | 07:10 | 20:20 | 3:50 | 출·퇴근 크레스칭 | |
| 10/10 | 남성희 | 07:20 | 19:10 | 2:50 | 출·퇴근 | |
| 10/11 | 남성희 | 07:20 | 19:30 | 3:10 | 출·퇴근 | |
| 10/14 | 남성희 | 07:30 | 18:10 | 1:40 | 출·퇴근 | |
| 10/15 | 남성희 | 07:40 | 22:20 | 5:40 | 출·퇴근 | |
| 10/16 | 남성희 | 07:40 | 23:50 | 7:10 | 크레스칭, 출·퇴근 | |
| 10/17 | 남성희 | 06:40 | 19:40 | 4:00 | 크레스칭, 출·퇴근 | |
| 10/18 | 남성희 | 08:10 | 19:50 | 2:40 | 출·퇴근 | |
| 10/19 | 남성희 | 08:40 | 18:00 | 9:40 | 크레스칭, 크레스칭 | |
| 10/21 | 남성희 | 06:50 | 18:40 | 2:50 | 출·퇴근 | |
| 10/22 | 남성희 | 07:20 | 21:20 | 5:00 | 메타무리, 출·퇴근 | |
| 10/23 | 남성희 | 07:30 | 20:10 | 3:40 | 출·퇴근 | |
| 10/24 | 남성희 | 07:30 | 19:50 | 3:00 | 출·퇴근 | |
| 10/25 | 남성희 | 07:30 | 11:30 | -4:00 | 종료 2시간조퇴 | |
| 10/28 | 남성희 | | | -8:00 | 탄력근무 | |
| 10/29 | 남성희 | 06:50 | 20:10 | 4:00 | 크레스칭 출·퇴근 | |
| 10/30 | 남성희 | | | -8:00 | 탄력근무 | |
| 10/31 | 남성희 | 07:30 | 15:00 | -0:30 | 조기퇴근 | |
| | | | Total | 54:00 | | |
| | | | | 12/19 | | |

ROKPM0072

<u>시간외근무 확인대장</u>

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 9/3 | 남현희 | 07:20 | 19:50 | 3:40 | 출,회2 | |
| 9/4 | 남현비 | 07:30 | 24:10 | 7:40 | 야간공사, 출,회2 | |
| 9/5 | 남현비 | 06:10 | 24:20 | 9:10 | cont 공사, 출,회2 | |
| 9/6 | 남현비 | 07:40 | 20:30 | 3:50 | cont 공사, 출,회2 | |
| 9/9 | 남현비 | 07:20 | 19:20 | 3:00 | 출,회2 | |
| 9/10 | 남현비 | 07:00 | 19:00 | 3:00 | 출,회2 | |
| 9/11 | 남현비 | 5:36 | 22:00 | 6:40 | 도가, 크게스타, 출2 | |
| 9/12 | 남현비 | | | -8:00 | | |
| 9/13 | 남현비 | | | -8:00 | | |
| 9/16 | 남현비 | 07:20 | 22:20 | 6:00 | | |
| 9/17 | 남현비 | 07:00 | 21:40 | 5:40 | 크게스타, 출,회2 | |
| 9/18 | 남현비 | 07:10 | 12:50 | -3:00 | 크게스타, 방송스출제2 | |
| 09/19 | 남현비 | 06:40 | 23:00 | 7:40 | | |
| 09/20 | 남현비 | 17:00 | 23:00 | -1:00 | | |
| 09/21 | 남현비 | 12:20 | 23:00 | 10:40 | 출장, 메노 출하2 | |
| 09/22 | 남현비 | 07:50 | 21:40 | 13:50 | 메노, 출,회2 | |
| 09/23 | 남현비 | 06:35 | 22:35 | 07:00 | 크게스타, 출,회2 | |
| 09/24 | 남현비 | 06:35 | 24:35 | 09:00 | 크게스타, 출,회2 | |
| 09/25 | 남현비 | 06:35 | 17:05 | 1:30 | | |
| 09/26 | 남현비 | | | -8:00 | | |
| 09/27 | 남현비 | | | -8:00 | | |
| 09/30 | 남현비 | | | -8:00 | | |
| | | | Total | 54:00 | 확인 | |

## 시간외근무 확인대장

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 08/01 | 남현희 | 07:20 | 19:30 | 3:10 | 크레스탑, 초.회의 | ✓ |
| 08/02 | 남현희 | 07:50 | 19:20 | 2:50 | 초.회의 | ✓ |
| 08/08 | 남현희 | 13:00 | 24:00 | 11:00 | 티비회의, 크레스탑 | ✓ |
| 08/09 | 남현희 | 07:20 | 15:20 | 8:00 | 대통부, 크레스탑 | ✓ |
| 08/15 | 남현희 | 07:50 | 19:20 | 2:50 | 초.회의 | ✓ |
| 08/16 | 남현희 | 07:30 | 19:20 | 2:00 | 초.회의 | ✓ |
| 08/16 | 남현희 | 07:50 | 19:20 | 2:50 | 초.회의 | ✓ |
| 08/19 | 남현희 | 07:20 | 19:10 | 2:50 | 초.회의 | ✓ |
| 08/20 | 남현희 | 07:20 | 19:10 | 2:50 | 초.회의 | ✓ |
| 08/21 | 남현희 | 07:10 | 23:00 | 6:50 | 크레스탑, 초회, 초.회의 | ✓ |
| 08/22 | 남현희 | 07:10 | 24:00 | 7:50 | 크레의, JHK 초.회의 | ✓ |
| 08/23 | 남현희 | | | 8:00 | 초반근무 초무 | ✓ |
| 08/26 | 남현희 | 07:20 | 19:30 | 3:10 | 초.회의 초.회의 | ✓ |
| 08/27 | 남현희 | 07:10 | 19:40 | 3:30 | 크레스탑, 초.회의 | ✓ |
| 08/28 | 남현희 | 07:30 | 20:20 | 3:30 | 크레스탑, 초.회의 | ✓ |
| 08/29 | 남현희 | 07:30 | 20:00 | 3:30 | 초.회의 | ✓ |
| 08/30 | 남현희 | 07:30 | 09:50 | -5:40 | 초근, ㅌㅅ | ✓ |
| | | | Total | 54:00 | | |

ROKPM0074

**A-971**

## 시간외근무 확인대장

2019

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사 유 | 확인관 서 명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 7/1 | 남성희 | 07:10 | 23:10 | 10:00 | 귀가人 출,회2 | |
| 7/2 | 남성희 | 07:40 | 19:20 | 2:40 | (풍장관 관리체외기) " | |
| 7/3 | 남성희 | 07:40 | 20:50 | 4:20 | 출.회2 | |
| 7/5 | 남성희 | 07:10 | 22:50 | 6:40 | 제너룸비, 출.회2 | |
| 7/6 | 남성희 | 08:40 | 16:40 | 8:00 | 출방식, 내빈축 준비리 | |
| 7/7 | 남성희 | 09:50 | 12:50 | 2:40 | JFK | |
| 7/8 | 남성희 | 07:00 | 15:00 | -1:00 | | |
| 7/9 | 남성희 | 07:30 | 21:40 | 5:10 | 귀가, 출.회2 | |
| 7/10 | 남성희 | 07:00 | 19:00 | 3:00 | 제너룸비, 출.회2 | |
| 7/11 | 남성희 | 07:20 | 19:30 | 3:10 | 출.회2 | |
| 7/12 | 남성희 | 07:30 | 19:50 | 3:20 | 출.회2 | |
| 7/13 | 남성희 | 06:40 | 22:00 | 6:20 | 제너룸비, 출방사항 | |
| 7/15 | 남성희 | 07:20 | 19:10 | 2:50 | 출.회2 | |
| 7/16 | 남성희 | 07:30 | 19:30 | 3:00 | 출.회2 | |
| 7/17 | 남성희 | 07:30 | 22:10 | 5:40 | 제너룸비, 출.회2 | |
| 7/18 | 남성희 | 07:20 | 19:30 | 3:10 | 출.회2 | |
| 7/19 | 남성희 | 07:20 | 22:10 | 5:50 | 크게스멍, 출.회2 | |
| 7/22 | 남성희 | 07:20 | 21:00 | 4:20 | 인품씨스, 출.회2 | |
| 7/23 | 남성희 | 07:30 | 20:50 | 4:20 | 씨빌도, 출.회2 | |
| 7/24 | 남성희 | 07:40 | 09:30 | -6:00 | 출2. | |
| 7/25 | " | | | -8:00 | 휴 부 | |
| 7/26 | " | | | -9:00 | | |
| 7/29 | 남성희 | 07:20 | 19:10 | 2:50 | 출.회2 | |
| 7/30 | 남성희 | 07:20 | 13:00 | -3:20 | 출2. | |
| 7/31 | 남성희 | 07:20 | 12:20 | -4:00 | 출2 | |
| | | | Total | 54:00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ROKPM0075

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hyunhuy Nam, | Case No. 1:21-cv-06165 |
| Plaintiff, | |
| | **ATTORNEY AFFIRMATION IN REPPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| - against - | |
| Permanent Mission of the Republic of Korea to the United Nations, | |
| Defendants. | |

**DECLARATION OF YONGJIN BAE, ESQ**

I, YONGJIN BAE, under penalty of perjury, affirm as follows:

1.     I am an attorney licensed to practice before the Courts of the State of New York and admitted in the Southern District of New York. I am associated with Hang & Associates, PLLC, attorneys for Plaintiff Hyunhuy Nam.

2.      I am making this affirmation in reply to Defendant's opposition to Plaintiff's motion for partial summary judgment and in further support of the Plaintiff Hyunhuy Nam's motion for partial summary judgment and place before the Court certain documents on file with the clerk. I affirm, under penalty of perjury, that the above information is true and correct.

Dated: Flushing, New York
        September 19, 2022

HANG & ASSOCIATES, PLLC.
/s/ *Yongjin Bae*
Yongjin Bae, Esq.
136-20 38th Ave., Suite 10G
Flushing, New York 11354
Tel: 718.353.8588
E-mail: ybae@hanglaw.com
*Attorneys for Plaintiff*

**A-974**

## <u>CERTIFICATE OF SERVICE</u>

I, Yongjin Bae, being duly sworn, deposes and says:

1. I am over 18 years of age, not a party of the action, and a resident of the State of New York, Queens County. On September 19, 2022, the accompanying <u>1) Memorandum of law in reply to Defendant's opposition to Plaintiff's motion for partial summary judgment, 2</u>) <u>rule 56.1 counter statement of undisputed material facts in support of plaintiff hyunhuy nam's motion for partial summary judgment,</u> and 3) <u>attorney affirmation</u> were served upon Defendant Permanent Mission of the Republic of Korea to the United Nations through their counsel, Kim, Cho & Lim, LLC via *ECF* to the addresses below:

<div align="center">

**Kim, Cho & Lim, LLC**
ATTN: Sean S. Kwak, Esq.
460 Bergen Boulevard, Suite 305,
Palisades Park, New Jersey 07650
Telephone: (201) 585-7400
Facsimile: (201) 585-7422
joshualim@kcllawfirm.com
*Attorney for Defendant*
*Via ECF*

</div>

2. Such service was made by enclosing a try and correct copy of the aforementioned documents in a properly addressed, securely sealed wrapper and mailing them via Certified Mail and Regular Mail via a depository under the exclusive care and custody of the United States Postal Service within the State of New York.

<div align="right">

*/s/ Yongjin Bae*
Yongjin Bae

</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HYUNHUY NAM,

                              Plaintiff,

                    -against-

PERMANENT MISSION OF THE REPUBLIC OF
KOREA TO THE UNITED NATIONS,

                              Defendant.

---

21-CV-06165 (JLR)

**ORDER**

JENNIFER L. ROCHON, United States District Judge:

It is HEREBY ORDERED that, by **January 13, 2023,** Plaintiff shall submit further

briefing, with citations to admissible evidence, setting forth the monetary damages he seeks

under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) pursuant

to his partial motion for summary judgment (ECF No. 79), even if those damages are

approximate.  Plaintiff's brief shall include calculations of his regular rate, the required

overtime rate, and any alleged underpayment.  Plaintiff's brief shall be no more than 10 pages,

exclusive of exhibits.  Defendant shall file its response, if any, within the same page limits, by

**January 20, 2023**.


Dated: January 3, 2023
          New York, New York


                                        SO ORDERED.

                                        _Jennifer Rochon_
                                        _____
                                        JENNIFER L. ROCHON
                                        United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam, | |
|                    Plaintiff, | Case No. 1:21-cv-06165 |
|         - against - | |
| Permanent Mission of the Republic of Korea to the United Nations, | |
|                   Defendant. | |

## SUPPLEMENTAL DAMAGE ANALYSIS BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Yongjin Bae, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Ste 10G
Flushing, NY 11354

**A-977**

## PRELIMINARY STATEMENT

Plaintiff Hyunhuy Nam (hereinafter, "Nam" or "Plaintiff"), by and through his counsel Hang & Associates, PLLC, hereby respectfully submits this supplemental damage analysis brief in further support of Plaintiff's motion for partial summary judgment under Fed. R. Civ. P. 56. For the reasons presented herein, Plaintiff respectfully requests that this Court should grant Nam's motion for partial summary judgment and award damages in the amounts set forth herein.

## DAMAGES ANALYSIS

The damages Plaintiff seeks and is entitled to for the employment with Defendant are: (a) the full overtime rate for each overtime hour worked by Plaintiff, (b) spread-of-hours premiums for each workday, (c) statutory violations of wage notice and wage statement under NYLL, (d) liquidated damages under federal and state law, (f) prejudgment interests on his NYLL claims, and (g) reasonable attorney's fees and costs.

### I.      Compensatory Damages for Unpaid Overtime

Defendant hired Plaintiff on July 1, 2016 (Dkt #78-21,¶ 3, attached herewith as Exhibit B) and Plaintiff's employment with Defendant continued until June 30, 2021(Dkt #78-33,¶ 3, attached herewith as Exhibit B). Plaintiff filed his Complaint on July 20, 2021. (Dkt #11). Thus, Plaintiff is entitled to compensation for unpaid overtime and spread-of-hours premiums from July 1, 2016 to June 30, 2021.

### A.      Overtime due July 1, 2016 – June 30, 2017 (52 weeks)

#### TOTAL PAID

From July 1, 2016 until June 30 of 2017, the employment contract specified the benefits for Nam including his monthly regular wages of $1,900, housing subsidy of $1,450 and medical insurance subsidy of $1,087. (Dkt #78-21,¶ 5, attached herewith as Exhibit B). Pursuant to the

contract, Nam was paid $4,427 ($1,900+$1,450+$1,087) per month. (Exhibit A, Bates stamped

as ROKPM0051). Nam's total payment for regular hours of work during the first year of

employment were $54,952[1]. *Id.*  The employment contract also specified Off-Schedule wages,

which "shall be $12 per hour on week days and $15 per hour on weekends but shall be capped at

a maximum of $570 a month." (Dkt #78-21,¶ 5, attached herewith as Exhibit B). Defendant

argued in her reply brief that Off-Schedule wages is not overtime wages, but the overtime

verification ledger clearly shows that Nam recorded overtime hours where he worked more than

9 hours on the specific date. (Dkt #79-15, attached herewith as Exhibit C). The relevant

argument has been fully briefed in Plaintiff's reply memo (See Dkt # 92, p12-13). The total

amount Nam was paid for overtime during the same period was $7,234[2] for overtime. (Dkt #79-

14, attached herewith as Exhibit D, bates stamped ROKPM0100 through ROKPM0111). Thus,

Defendant paid Plaintiff a total of $62,186 ($54,952+$7,234) for the first year of Nam's

employment.

  TOTAL OVERTIME WORKING HOURS

   The overtime verification ledger shows Plaintiff's total overtime working hours during

the same period. Plaintiff's overtime hours were 1,029.50[3] hours. *Id.*

  REGULAR RATE

   The employment contract specified the benefits for Nam including his monthly regular

wages of $1,900, housing subsidy of $1,450 and medical insurance subsidy of $1,087. (Dkt #78-

21,¶ 5, attached herewith as Exhibit B). As Defendant specified overtime wages in the

employment contract and paid the separate overtime wages, the monthly regular payment

---

[1] $4,437+$4,437+$4,437+$4,437+$4,437+$4,437+$4,437+$4,437+$4,389+$4,389+4,389+4,389+$1,900=$54,952
[2] Added TOTAL hours in the overtime verification ledger
[3] Added Overtime hours in the overtime verification ledger

covered only regular hours up to 40 hours per week and does not cover overtime hours. Nam's

total monthly regular payment during the same period were $54,952 (Exhibit A, Bates stamped

as ROKPM0051). Thus, Nam was paid $1,056.77 per week ($54,952 /52 weeks). For the

foregoing reasons, Nam's regular rate is $26.42 ($1,056.77 /40 hours) and the required overtime

rate was $39.63.

> <u>STRAIGHT TIME</u>
> 2,080 hours (52 weeks *40 hours/week) * $26.42 /hours=$54,953.60
> <u>OVERTIME</u>
> Hourly overtime rate= $26.42 *1.5=$39.63/hour
> Total overtime hours=1,029.50
> (1,029.50 hours)*$ 39.63/hours=$40,799.09
> <u>TOTAL EARNED</u>
> ($54,953.60 straight time) +($40,799.09 overtime) =$95,752.69
> Accordingly, Plaintiff is entitled to an award of compensatory damages for unpaid

overtime for his first year employment with Defendant in the amount of **$33,566.69** (total earned

wages - wages paid for regular hours – wages paid for overtime working hours=$95,752.69-

$54,952-$7,234).

**B.**   **Overtime due July 1, 2017 – June 30, 2018 (52 weeks)**

<u>TOTAL PAID</u>

From July 1, 2017 until June 30 of 2018, Nam was paid $55,081[4] for his regular hours

pursuant to the employment contract. (Exhibit A, Bates stamped as ROKPM0050-51) Nam was

also paid $8,551[5] for overtime. (Dkt #79-14, attached herewith as Exhibit D, bates stamped

ROKPM0088 through ROKPM0099) Thus, Defendant paid Plaintiff a total of $63,632

($55,081+$8,551).

<u>TOTAL OVERTIME WORKING HOURS</u>

---

[4] Added monthly wages Nam was paid from July 2017 to June 2018 in Exhibit A

[5] Added TOTAL hours in the overtime verification ledger

3

The overtime verification ledger shows Plaintiff's total overtime working hours during the same period. Plaintiff's overtime hours were 857.25[6] hours. *Id*.

REGULAR RATE

Nam's total monthly payment for his regular hours during the same period were $55,081 (Exhibit A, Bates stamped as ROKPM0051-0052). Thus, Nam was paid $1,059.25 per week ($55,081/52 weeks). For the foregoing reasons, Nam's regular rate is $26.48 ($1,059.25 /40 hours) and the required overtime rate was $39.72.

> STRAIGHT TIME
> 2,080 hours (52 weeks *40 hours/week) * $26.48/hours=$55,078.40
> OVERTIME
> Hourly overtime rate= $26.48 *1.5=$39.72/hour
> Total overtime hours=857.25
> (857.25 hours)*$39.72/hours=$34,049.97
> TOTAL EARNED
> ($55,078.40 straight time) +($34,049.97 overtime) =$89,128.37
> Accordingly, Plaintiff is entitled to an award of compensatory damages for unpaid

overtime in the amount of **$25,496.37** (total earned wages - wages paid for regular hours – wages paid for overtime working hours =$89,128.37-$55,081- $8,551).

**C.    Overtime due July 1, 2018 – June 30, 2019 (52 weeks)**

TOTAL PAID

From July 1, 2018 until June 30 of 2019, Nam was paid $58,599[7] for his regular hours pursuant to the employment contract. (Exhibit A, Bates stamped as ROKPM0050, also see Exhibit B). Nam was also paid $4,131[8] for overtime. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0076-87). Thus, Defendant paid Plaintiff a total of $62,730 ($58,599 +$4,131).

---

[6] Added Overtime hours in the overtime verification ledger
[7] Added monthly wages Nam was paid from July 2018 to June 2019 in Exhibit A
[8] Added TOTAL hours in the overtime verification ledger

TOTAL OVERTIME WORKING HOURS

The overtime verification ledger shows Plaintiff's total overtime working hours during the same period. Plaintiff's overtime hours was 806.16[9] hours. *Id.*

REGULAR RATE

Nam's total monthly payment for his regular hours during the same period were $58,599 (Exhibit A, Bates stamped as ROKPM0050) and Nam was paid $1,126.90 per week ($58,599/52 weeks). For the foregoing reasons, Nam's regular rate is $28.17 ($1,126.90 /40 hours) and the required overtime rate was $42.26.

> STRAIGHT TIME
> 2,080 hours (52 weeks *40 hours/week) * $28.17 /hours=$58,593.60
> OVERTIME
> Hourly overtime rate= $28.17 *1.5=$42.26/hour
> Total overtime hours=806.16
> (806.16 hours)*$42.26/hours=$34,068.32
> TOTAL EARNED
> ($58,593.60 straight time) +($34,068.32 overtime) =$92,661.92
> Accordingly, Plaintiff is entitled to an award of compensatory damages for unpaid

overtime in the amount of **$29,931.92** (total earned wages - wages paid for regular hours – wages paid for overtime working hours =$92,661.92-$58,599-$4,131).

**D.   Overtime due July 1, 2019 – June 30, 2020 (52 weeks)**

TOTAL PAID

From July 1, 2019 until June 30 of 2020, Plaintiff was paid $71,238[10] pursuant to the employment contract. (Exhibit A, Bates stamped as ROKPM0049-50, also see Exhibit B). Plaintiff was also paid $8,400.56[11] for overtime. (Dkt #79-14, attached herewith as Exhibit D,

---

[9] Added Overtime hours in the overtime verification ledger
[10] Added monthly wages Nam was paid from July 2019 to June 2020 in Exhibit A
[11] Added TOTAL hours in the overtime verification ledger

bates stamped ROKPM0064-75). Thus, Defendant paid Plaintiff a total of $79,638.56 ($71,238 +$8,400.56).

<u>TOTAL OVERTIME WORKING HOURS</u>

The overtime verification ledger shows Plaintiff's total overtime working hours during the same period. Plaintiff's overtime hours were 569.30[12] hours.

<u>REGULAR RATE</u>

Nam's total monthly payment for his regular hours during the same period were $71,238 (Exhibit A, Bates stamped as ROKPM0050) and Nam was paid $1,369.96 per week ($71,238 /52 weeks). For the foregoing reasons, Nam's regular rate is $34.25 ($1,369.96 /40 hours) and the required overtime rate was $51.38.

<u>STRAIGHT TIME</u>
2,080 hours (52 weeks *40 hours/week) * $34.25/hours=$71,240.
<u>OVERTIME</u>
Hourly overtime rate= $34.25*1.5=$51.38/hour
Total overtime hours=569.30
(569.30 hours)*$ 51.38/hour =$29,250.63.
<u>TOTAL EARNED</u>
($71,240 straight time) +($29,250.63 overtime) =$100,490.63
Accordingly, Plaintiff is entitled to an award of compensatory damages for unpaid overtime in the amount of $**20,852.07** (total earned wages - wages paid for regular hours – wages paid for overtime working hours = $100,490.63-$71,238 -$8,400.56).

**E.     Overtime due July 1, 2020 – June 30, 2021 (52 weeks)**

<u>TOTAL PAID</u>

From July 1, 2020 until June 30 of 2021, Plaintiff was paid $71,437[13] pursuant to the employment contract (Exhibit A, Bates stamped as ROKPM0049, also see Exhibit B). Plaintiff was also paid $8,101.65[14] for overtime. (Dkt #79-14, attached herewith as Exhibit D, bates

---

[12] Added overtime hours in the overtime verification ledger
[13] Added monthly wages Nam was paid from July 2020 to June 2021 in Exhibit A
[14] Added TOTAL hours in the overtime verification ledger

6

stamped ROKPM0052-63). Thus, Defendant paid Plaintiff a total of $79,538.65 ($71,437 +$8,101.65).

<u>TOTAL OVERTIME WORKING HOURS</u>

The overtime verification ledger show Plaintiff's total overtime working hours during the same period. Plaintiff's overtime hours was 550.33[15] hours. *Id.*

<u>REGULAR RATE</u>

Nam's total monthly payment for his regular hours during the same period were $71,437 (Exhibit A, Bates stamped as ROKPM0049) and Nam was paid $1,373.79 per week ($71,437 /52 weeks). For the foregoing reasons, Nam's regular rate is $34.34 ($1,373.79/40 hours) and the required overtime rate was $51.51.

<u>STRAIGHT TIME</u>

2,080 hours (52 weeks *40 hours/week) * $34.34 /hours=$71,427.20

<u>OVERTIME</u>

Hourly overtime rate= $34.34 *1.5=$51.51/hour

Total overtime hours=550.33

(550.33 hours)*$51.51/hours=$28,347.50

<u>TOTAL EARNED</u>

($71,427.20 straight time) +($28,347.50 overtime) =$99,774.70

Accordingly, Plaintiff is entitled to an award of compensatory damages for unpaid overtime in the amount of $**20,236.05** (total earned wages - wages paid for regular hours – wages paid for overtime working hours = $99,774.70-$71,437 -$8,101.65).

As calculated above, total damages for unpaid overtime wages are **$130,083.10**[16] for Nam's five-year employment with Defendant.

**II.   Compensatory Damages for Spread of Hours**

---

[15] Added Overtime hours in the overtime verification ledger

[16] $33,566.69+$25,496.37+$29,931.92+$20,852.07+$20,236.05=$130,083.10

    **A.**    <u>From July 1, 2016 to December 31, 2016</u>

    Workdays where Plaintiff worked more than 10 hours per day from July 1, 2016 to December 31, 2016 was 116 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0106-111). The minimum wage rate in 2016 was $10.5 per hour. Thus, His damage for spread of hours is $1,218 ($10.5*116 hours).

    **B.**    <u>From January 1, 2017 to December 31, 2017</u>

    Workdays where Plaintiff worked more than 10 hours per day in 2017 was 206 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0094-105).  The minimum wage rate in 2017 was $12.00 per hour. Thus, His damage for spread of hours is $2,472 ($12.00*206 hours).

    **C.**    <u>From January 1, 2018 to December 31, 2018</u>

    Workdays where Plaintiff worked more than 10 hours per day in 2018 was 207 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0082-93).  The minimum wage rate in 2018 was $13.50 per hour. Thus, His damage for spread of hours is $2,794.50 ($13.50*207 hours).

    **D.**    <u>From January 1, 2019 to December 31, 2019</u>

    Workdays where Plaintiff worked more than 10 hours per day in 2019 was 201 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0070-81). The minimum wage rate in 2019 was $15.00 per hour. Thus, His damage for spread of hours is $3,015.00 ($15.00*201 hours).

    **E.**    <u>From January 1, 2020 to December 31, 2020</u>

    Workdays where Plaintiff worked more than 10 hours per day in 2020 was 186 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0058-69). The minimum

wage rate in 2020 was $15.00 per hour. Thus, His damage for spread of hours is $2,790.00 ($15.00*186 hours).

> **F.**      **From January 1, 2021 to June 30, 2021**

Workdays where Plaintiff worked more than 10 hours per day from January 1, 2021 to June 30, 2021, 2016 was 98 days. (Dkt #79-14, attached herewith as Exhibit D, bates stamped ROKPM0052-57). The minimum wage rate in 2021 was $15.00 per hour. Thus, His damage for spread of hours is $1,470.00 ($15.00*98 hours).

As calculated above, total damages for Spread of Hours are **$13,759.50**[17] for Nam's five-year employment with Defendant.

## Total Compensatory Damages

As illustrated above, Plaintiff's total compensatory damages for the entire period during which he worked for Defendant is **$ 143,841.60** ($130,082.10+$13,759.50).

**III.     Liquidated Damage**

The argument for the liquidated damages set forth in Plaintiff's motion for partial summary judgment is fully incorporated herewith. (Dkt #79). The liquidated damages **$143,841.60** ($130,082.10+$13,759.50).

**IV.     Statutory Damages for Wage Notice and Wage Statement**

The argument for the statutory violations under NYLL set forth in Plaintiff's motion for partial summary judgment is fully incorporated herewith. (Dkt #79). Nam is entitled to receive **$10,000** ($5,000+$5,000).

**VII.     Prejudgment Interest**

---

[17] $1,218+$2,472+$2794.5+$3,015+$2,790+$1,470=$13,759.50

9

Prejudgment interest is calculated at 9% between the midpoint of Plaintiff's employment and the date of entry of default. The midpoint of Nam's employment is December 31, 2018 and the days from the midpoint until today is 1474. Thus, the prejudgment interest is **$52,279.53** ($143,841.60 x 1474 x 9%/365).

**VIII.** __Attorney Fees__

Both the FLSA and NYLL entitle a prevailing plaintiff to recovery of attorneys' fees and costs. 29 U.S.C. 216(b); NYLL §§ 198, 663. Plaintiff's counsel will apply to this Court for attorneys' fees if this Court enters partial summary judgment in Plaintiff's favor.

<u>**CONCLUSION**</u>

Plaintiff's total damages, including compensatory, liquidated damages and prejudgment interest are **$349,962.73**[18]. For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for partial summary judgment and award damages in the amounts set forth herein.

Dated: Flushing, New York
       January 13, 2023

                              HANG & ASSOCIATES, PLLC.
                              /s/ Yongjin Bae
                              Yongjin Bae, Esq.
                              136-20 38th Ave., Suite 10G
                              Flushing, New York 11354
                              Tel: 718.353.8588
                              E-mail: ybae@hanglaw.com
                              Attorneys for Plaintiff

---

[18] $130,082.10+$13,759.50+$143,841.60+$10,000+$52,279.53=**$349,962.73**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hyunhuy Nam,<br><br>                           Plaintiff,<br><br><br>            - against -<br><br><br>Permanent Mission of the Republic of Korea to the United Nations,<br><br>                     Defendants. | Case No. 1:21-cv-06165<br><br>**ATTORNEY AFFIRMATION IN SUPPLEMENTAL DAMAGE ANALYSIS BRIEF TO FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**DECLARATION OF YONGJIN BAE, ESQ**

   I, YONGJIN BAE, under penalty of perjury, affirm as follows:

1.     I am an attorney licensed to practice before the Courts of the State of New York and admitted in the Southern District of New York. I am associated with Hang & Associates, PLLC, attorneys for Plaintiff Hyunhuy Nam.

2.     I am making this affirmation in supplemental damage analysis brief to further support of plaintiff's motion for partial summary judgment and place before the Court certain documents on file with the clerk. I affirm, under penalty of perjury, that the above information is true and correct.

Dated: Flushing, New York
       January 13, 2023

                            HANG & ASSOCIATES, PLLC.
                            */s/ Yongjin Bae*
                            Yongjin Bae, Esq.
                            136-20 38th Ave., Suite 10G
                            Flushing, New York 11354
                            Tel: 718.353.8588

E-mail: ybae@hanglaw.com
*Attorneys for Plaintiff*

# EXHIBIT A

**A-990**

## 운전원 월급 수령 내역

| 일자 | 액수 | 서명 | 확인 | 비고 |
|---|---|---|---|---|
| 2016.7.20 | $4,437 | | choi | |
| 2016.8.19 | $4,437 | | choi | |
| 2016.9.20 | $4,437 | | choi | |
| 2016.10.19 | $4,437 | | choi | |
| 2016.11.21 | $4,437 | | choi | |
| 2016.12.19 | $4,437 | | choi | |
| 2017.1.20 | $4,431 | | choi | |
| 2017.2.2 | $4,437 | | choi | |
| 2017.3.17 | $4,389 | | choi | 보회직산출 $4,7 본인화 (본부 받음) |
| 2017.4.21 | $4,389 | | choi | 4회 |
| 2017.5.19 | $4,389 | | choi | |
| 2017.6.19 | $1,900 | | choi | 상여금 $1,900 |
| 2017.6.22 | $4,389 | | choi | |
| 2017.7.19 | $4,389 | | choi | |
| 2017.8.14 | $50 | | choi | 근속수당1천원 |
| 2017.8.25 | $4,389 | | choi | 8월급여 |
| 2017.9.9 | $4,439 | | choi | 9월급여 |
| 2017.10.19 | $4,439 | | choi | 10월급여 |
| 2017.11.20 | $4,439 | | choi | 11월급여 |
| 2017.12.19 | $4,439 | | choi | 12월급여 |
| 2017.12.9 | $50 | | choi | 근속수당8천원 |

운전원 신입→ (7.1부)

ROKPM0051

**A-991**

## 월급 수령 내역

| 일 자 | 액 수 | 서 명 | 확 인 | 비 고 |
|---|---|---|---|---|
| 1. 19 | $4,439 | | chu | |
| 2. 22 | $4,439 | | chu | |
| 3. 19 | $4,439 | | chu | |
| 4. 23 | $4,439 | | chu | |
| 5. 22 | $4,439 | | chu | |
| 6. 21 | $4,439 | | chu | |
| 6. 21 | $1,900 | | chu | 상여금 |
| 6. 27 | $587 | | chu | 3~6월 월차초과지액 환급 |
| 7. 26 | $4,559 | | choi | 월급인상 $4,490 건강보험인상 $60 |
| 8. 23 | $4,559 | | | |
| 9. 19 | $4,559 | | | |
| 10. 18 | $4,559 | | | |
| 11. 28 | $4,559 | | | |
| 12. 19 | $4,559 | | | |
| 1. 23 | $4,559 | | | |
| 2. 21 | $4,559 | | | 2月 급여 |
| 2019. 3.21 | $4,559 | | | 3月 |
| 2019. 4.17 | $4,614 | | | 4月 |
| 2019. 5.15 | $4,558 | | | 5月 |
| 2019. 6.26 | $7,396 | | | 6月 |
| 2019. 7.16 | $5,461 | | | 7月 |
| 2019. 8.21 | $5,461 | | | 8月 |

## 월급 수령 내역

〈2019〉

| 일자 | 액수 ₩ | 서명 | 확인 | 비고 |
|------|--------|------|------|------|
| 9.18 | 5,461 | | | |
| 10.16 | 6,011 | | | |
| 11.18 | 6,011 | | | |
| 12.18 | 6,011 | | | |
| 1.15 | 6,011 | | | |
| 2.19 | 6,011 | | | |
| 3.20 | 6,011 | | | |
| 4.20 | 5,966 | | | |
| 5.19 | 5,621 | | | |
| 6.19 | 7,202 | | | |
| 7.20 | 5,873 | | | |
| 8.20 | 6,011 | | | |
| 9.22 | 5,441 | | | |
| 10.20 | 5,741 | | | |
| 11.23 | 5,715 | | | |
| 12.18 | 5,515 | | | |
| 1.21 | 5,754 | | | |
| 2.19 | 5,701 | | | |
| 3.19 | 5,409 | | | |
| 4.23 | 7,375 | | | |
| 5.24 | 5,608 | | | |
| 6.21 | 7,230 | | | |

〈2020〉 〈2021〉

ROKPM0049

# EXHIBIT B

# EXHIBIT 17

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

## <u>운전원 채용 계약서</u>

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2016년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

  (1) 고용주명 : 고봉우 공사

  (2) 대상자

    o 성명 : 남현희

    o 생년월일 : 1960.4.9

    o 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

  (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

  (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.

  (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.

  (4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

ROKPM0010

　　(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.
　　(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후
　　　　외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에
　　　　따라 처벌받는다.

3. 채용기간은 2016년 7월 1일부터 2017년 7월 1일까지로 한다.

　　채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나
　　공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야
　　하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을
　　포함한다.

　　(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시
　　　　하루 단위) 매월 19일 지급한다.
　　　　* 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은
　　　　　1년당 50불씩 최대 20년 범위내 가산한다
　　(2) 주거보조비 1,450불을 매월 지급한다.
　　(3) 의료보험료 보조금 1,087불을 매월 지급한다.
　　(3) 시간외 수당은 시간당 평일 12불·주말 15불로 하되 최대
　　　　월 570불 내에서 지급한다.
　　(4) 상여금(年1,900불)은 매년 6월에 지급한다
　　(5) 퇴직금은 1년 이상 근무시 지급한다.

ROKPM0011

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게된 경우
(2) 범죄 또는 중대한 과실을 범한 경우
(3) 직무를 태만히 하거나 소행이 불량한 경우
(4) 상사의 직무상 명령에 복종하지 아니한 경우
(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중 2개 항목 이상 부문에서 '불량' 평가를 받는 경우
(6) 계약사업을 계속할 필요성이 소멸한 경우
(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분 상여금)의 100%를 지급한다.
  * 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를
   줄 수 있다.
   (1) 3개월 이상 6개월 미만 : 3일
   (2) 6개월 이상 1년 미만 : 6일
   (3) 1년 이상 3년 미만 : 10일
   (4) 3년 이상 : 14일
   (5) 단, 지각, 조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서
       제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할
       수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
    3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

                                    2016년  7월  1일


고용주                             고용원
주유엔 대한민국대표부 공사            (1960.4.9生)

고 봉 우                            남 현 희

(서명)                             (서명)


ROKPM0013

# EXHIBIT 18

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2016.

1. Parties to the Contract

   (1) Employer Name: Minister Bong-Woo Ko

   (2) Subject

   o   Name: Hyunhuy Nam

   o   Date of Birth: 4/9/1960

   o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related instructions including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

ROKPM00010 - T

**A-1001**

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2016 through July 1, 2017.

The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

*Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

(2) Be paid housing subsidy of $1,450 per month.

(3) Be paid medical insurance subsidy of $1,087 per month.

(3) Off-schedule wages shall be $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.

(4) Bonus ($1,900 per year) will be paid in June of each year.

(5) Severance pay will be paid if employed for one year or longer.

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any other payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

- o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

  * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

**A-1003**

9. The Employer may allow the Employee paid time off in accordance with the following.

   (1) More than 3 months, less than 6 months: 3 days

   (2) More than 6 months, less than 1 year: 6 days

   (3) More than 1 year, less than 3 years: 10 days

   (4) More than 3 years: 14 days

   (5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2016.

Employer

Permanent Mission of the Republic of Korea
to the United Nations

Bong-woo Ko

(signature)    [signed]

Employee

(DOB: 4/9/1960)

Hyunhuy Nam

(signature)    [signed]

ROKPM00013 - T

# EXHIBIT 19

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

## 운전원 채용 계약서

주유엔 대한민국대표부 고봉우 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2017년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 고봉우 공사
 (2) 대상자

 o 성명 : 남현희
 o 생년월일 : 1960.4.9
 o 주소 : 55 w homestead ave, Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부
   고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히
   다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에
    복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는
    아니된다.
 (4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는
    영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전
    허가를 받아야 한다.

**A-1006**

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2017년 7월 1일부터 2018년 7월 1일까지로 한다.

   채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

   * 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 의료보험료 보조금 1,039불을 매월 지급한다.

(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 × 1/12) ÷ 209 × 150%}에 따라 지급한다(月 52시간 한도)

(4) 상여금(年1,900불)은 매년 6월에 지급한다

(5) 퇴직금은 1년 이상 근무시 지급한다.

ROKPM0016

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
　　사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
　실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을
　즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우
　고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가
　　불분명하게된 경우
(2) 범죄 또는 중대한 과실을 범한 경우
(3) 직무를 태만히 하거나 소행이 불량한 경우
(4) 상사의 직무상 명령에 복종하지 아니한 경우
(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중
　　2개 항목 이상 부문에서 '불량' 평가를 받는 경우
(6) 계약사업을 계속할 필요성이 소멸한 경우
(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음
　기준에 의해 퇴직금을 지급한다.

ο 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분
　상여금)의 100%를 지급한다.
　* 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

ROKPM0017

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정 직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게 휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2017년  7월  1일

고용주
주유엔 대한민국대표부 공사
고 봉 우
(서명)

고용원
(1960.4.9生)
남 현 희
(서명)

ROKPM0018

# EXHIBIT 20

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

Minister Bong-Woo Ko of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2017.

1. Parties to the Contract

   (1) Employer Name: Minister Bong-Woo Ko

   (2) Subject

   o   Name: Hyunhuy Nam

   o   Date of Birth: 4/9/1960

   o   Address: 55 w homestead ave, Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

   (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits apart, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2017 through July 1, 2018.

   The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

   (1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

   *Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

   (2) Be paid housing subsidy of $1,450 per month.

   (3) Be paid medical insurance subsidy of $1,039 per month.

   (3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%} (Maximum 52 hours per month)

   (4) Bonus ($1,900 per year) will be paid in June of each year.

   (5) Severance pay will be paid if employed for one year or longer.

ROKPM00016 - T

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7.  The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

  o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

  \* Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

**A-1013**

9. The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2017.

Employer

Permanent Mission of the Republic of Korea
to the United Nations

Bong-woo Ko

(signature)    [signed]

Employee

(DOB: 4/9/1960)

Hyunhuy Nam

(signature)    [signed]

**A-1014**

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).

Fran S. Yoon

February 18, 2022

# EXHIBIT 21

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN

Defendant's Motion for Summary Judgment

<u>운전원 채용 계약서</u>

주유엔 대한민국대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(남, 60.4.9생)은 2018년 7월 1일 다음과 같이 채용 계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사
 (2) 대상자

 o 성명 : 남현희
 o 생년월일 : 1960.4.9
 o 주소 : 128 w Central Blvd. Palisades Park, NJ 07650

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.
 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 복종해야 한다.
 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는 아니된다.
 (4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

ROKPM0020

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2018년 7월 1일부터 2019년 7월 1일까지로 한다.

채용기간은 1년 단위로 연장할 수 있다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당, 의료보험료 보조금 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 월단위(1개월 미만시 하루 단위) 매월 19일 지급한다.

   * 봉급은 기본급(1,900불)과 근속수당을 합하고 근속수당은 1년당 50불씩 최대 20년 범위내 가산한다

(2) 주거보조비 1,450불을 매월 지급한다.

(3) 공관 단체 의료보험료의 80% 보조금(1,109불)을 매월 지급한다.

(3) 시간외 수당은 시간당 기준액 {(月 기본급 + 상여금 × 1/12) ÷ 209 × 150%}에 따라 지급한다

(4) 상여금(年1,900불)은 매년 6월에 지급한다

ROKPM0021

(5) 퇴직금은 1년 이상 근무시 지급한다.

(6) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 각호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월전 서면 통보해야한다.

(1) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게된 경우

(2) 범죄 또는 중대한 과실을 범한 경우

(3) 직무를 태만히 하거나 소행이 불량한 경우

(4) 상사의 직무상 명령에 복종하지 아니한 경우

(5) 근무실적 평가결과 4개 항목(성실감,책임감,업무능력,보안성)중 2개 항목 이상 부문에서 '불량' 평가를 받는 경우

(6) 계약사업을 계속할 필요성이 소멸한 경우

(7) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1년 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 1년 근속시마다 보수월액(최종 기본급 3개월분 평균액+1개월분 상여금)의 100%를 지급한다.

* 퇴직금 : 최종기본급 3개월분/3+연 상여금/12)X근무연수

ROKPM0022

**A-1019**

9. 고용주는 재외공관 행정직원 운용지침 및 공관 내규의 행정
   직원 휴가 관련 규정 범위내에서 재량에 따라 고용원에게
   휴가를 부여할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할시
    3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2018년  7월  1일

고용주
주유엔 대한민국대표부 공사
이 정 재
(代) 차 병 호
(서명)

고용원
(1960.4.9生)
남 현 희
(서명)

ROKPM0023

# EXHIBIT 22

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# A-1021

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2018.

1. Parties to the Contract

    (1) Employer Name: Minister Jungjae Lee

    (2) Subject

    o   Name: Hyunhuy Nam

    o   Date of Birth: 4/9/1960

    o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

    (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

    (2) Obey job-related orders including chauffeuring and other executive duties.

    (3) Must not leave the employment site absent the Employer's permission or good cause.

    (4) In the event the Employee wishes to engage in activities, apart from his duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

# A-1022

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2018 through July 1, 2019.

The employment period may be extended in one-year increments

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with any request to work during off-schedule hours including on the weekends or national holidays and must comply with changes in the work hours.

5. Monthly compensation shall include regular wages, off-schedule wages, and medical insurance subsidy, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) on the 19th of each month.

*Total wages shall be the regular wages ($1,900) plus long-term service allowance, and the long-term service allowance shall be $50 per year, up to a maximum of 20 years.

(2) Be paid housing subsidy of $1,450 per month.

(3) Be paid medical insurance subsidy of 80% of the Mission's group plan ($1,109) per month.

(3) Off-schedule wages shall be paid at the standard amount {(monthly regular wages + Bonus × 1/12) ÷ 209 × 150%}

(4) Bonus ($1,900 per year) will be paid in June of each year.

ROKPM00021 - T

# A-1023

(5) Severance pay will be paid if employed for one year or longer.

(6) Notwithstanding the laws of the receiving State, the Employer shall be exempt from

paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice

per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following

is applicable. In the event the Employee wishes to terminate the agreement, he must

provide a two-month advanced notice to the Employer.

(1) When survival or the whereabouts become unclear due to Act of God or war/incident.

(2) Commits a crime or a gross negligence

(3) Neglects work duties or exhibits substandard behavior

(4) Fails to obey supervisor's work-related orders

(5) Receives "Unsatisfactory" in two or more categories of the following four categories
(Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in
the performance evaluation

(6) Cessation of work

(7) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment

terminates after e year or more of employment.

   o  100% of monthly wages (average to last 3 months' regular wages + 1 month's

      portion of yearly bonus) per each year of continuous employment.

   * Severance: Last 3 months' wages/3 + Yearly Bonus/12) x years of employment

ROKPM00022 - T

# A-1024

9. The Employer may permit vacation days at its discretion subject to compliance with the Republic of Korea's Diplomatic Offices Executive Employee Guidelines and the provisions concerning executive employees' vacation days in the Mission's policies.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2018.

Employer

Permanent Mission of the Republic of Korea
to the United Nations

Jungjae Lee

(deputy) Byungho Cha

(signature)     [signed]

Employee

(DOB: 4/9/1960)

Hyunhuy Nam

(signature)     [signed]

ROKPM00023 - T

**A-1025**

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).

Fran S. Yoon

February 18, 2022

# EXHIBIT 23

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-1027**

# <u>운전원 채용계약서</u>

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 이정재 공사

 (2) 채용대상자

    o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

    o 성 명 : 남현희

    o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

ROKPM0025

아니된다.

(4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미의의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

   * 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간 외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

- 2 -

ROKPM0026

(4) 주거보조비는 每月 $1,450 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주제국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0027

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액 + 1개월분 상여금)의 100%를 지급

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

(1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

(2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

(3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

(4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0028

# A-1031

한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서  제외
하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할
시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.


2019년  7월 1일


고용주   駐유엔 대한민국 대표부 공사  이 정 재

고용원                        남 현 희


- 5 -


ROKPM0029

# EXHIBIT 24

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-1033**

# EMPLOYMENT CONTRACT FOR CHAUFFEUR

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.

1. Parties to the Contract

   (1) Employer Name: Minister Jungjae Lee

   (2) Subject of Employment

   o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

   o   Name: Hyunhuy Nam

   o   Date of Birth: June 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

   (1) The Employee shall faithfully perform his duties and responsibilities to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

ROKPM00025 - T

# A-1034

(4) In the event the Employee wishes to engage in activities, apart from the duties under this agreement, from which he may gain financial benefits, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2019 through June 30, 2020.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

   * long-term service allowance is $50 per year for a maximum of 20 years, added to wages.

(2) Off-schedule wages shall be $14.76 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June of each year.

- 2 -

ROKPM00026 - T

# A-1035

(4) Be paid housing subsidy of $1,450 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case the Employee is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

- 3 -

ROKPM00027 - T

# A-1036

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(9) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.

9.  The Employer may permit days to the Employee as follows:

   (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

   (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

   (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

   (4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.

Employer          Permanent Mission of the Republic of Korea to the United Nations

Minister Jungjae Lee   [signed]

Employee         Hyunhuy Nam      [signed]

- 5 -

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


_____

Fran S. Yoon

February 18, 2022

# EXHIBIT 25

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# A-1040

## 운전원 채용계약서

駐유엔 대한민국 대표부 이정재 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2019년 7월 1일 다음과 같이 채용계약을 체결한다.  * 9.20 주거보조비 인상으로 재작성 및 서명

1. 계약 당사자

 (1) 고용주명 : 이정재 공사

 (2) 채용대상자

   o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   o 성 명 : 남현희

   o 생년월일 : 1960년 6월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

ROKPM0031

아니된다.

(4) 고용원이 고용계약서상 업무이외 경제적 이득을 취할 수 있는 영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전 허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후 외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에 따라 처벌받는다.

3. 채용기간은 2019年 7月 1日부터 2020年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,900불로 한다. 급료는 月 단위(1개월 미만시 하루 단위) 매월 중·하순 지급한다.

   * 근속수당은 1년당 $50씩 최대 20년 범위 內 봉급에 가산

(2) 시간 외 수당은 시간당 $14.76로 하되 月 52시간 한도 내에서 지급한다.

(3) 상여금(기본급 100%)은 매년 6월에 지급한다.

- 2 -

ROKPM0032

**A-1042**

(4) 주거보조비는 每月 $2,000 지급한다.

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0033

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

  ㅇ 1年 근속시마다 보수월액(최종 기본급 3개월분 평균액 + 1개월분 상여금)의 100%를 지급  * 주거보조비는 未포함

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

  (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

  (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

  (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

  (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함

- 4 -

ROKPM0034

**A-1044**

한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각 · 조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서  제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체 · 정신상의 장애로 장기 요양을 원할 시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.


2019년  7월 1일


고용주    駐유엔 대한민국 대표부 공사  이 정 재

고용원                                        남 현 희

– 5 –

ROKPM0035

# EXHIBIT 26

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-1046**

# EMPLOYMENT CONTRACT

Minister Jungjae Lee of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2019.  * 9.20 Re-drafting and re-signing due to increase in housing subsidy.

1. Parties to the Contract

   (1) Employer Name: Minister Jungjae Lee

   (2) Subject of Employment

      o  Address: 128 w Central Blvd. Palisades Park, NJ 07650

      o  Name: Hyunhuy Nam

      o  Date of Birth: June 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and particularly the following duties and responsibilities.

   (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

# A-1047

(4) In the event the Employee wishes to engage in activities from which he may gain financial benefits apart from the duties under this agreement, he must first obtain the Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any classified information and facts acquired during his employment. In the event such obligation is breached, the Employee shall be subject to punishment under the laws of the Republic of Korea.

3. The employment period shall be from July 1, 2019 through June 30, 2020.

4. Work hours shall be 09:00 through 18:00. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,900. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

   * long-term service allowance is $50 per year for maximum of 20 years, added to wages.

(2) Off-schedule wages shall be $14.76 per hour paid up to 52 hours per month.

(3) Bonus (100% of regular wages) will be paid in June of each year.

- 2 -

**A-1048**

(4) Be paid housing subsidy of $2,000 per month.

(5) Severance pay will be paid if employed for one year or longer.

(6) Be paid medical insurance subsidy monthly at 80% of actual payment.

(7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of need to work

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

ROKPM00033 - T

**A-1049**

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret ) in the performance evaluation

(9) Failure to abide by the security guidelines.

8.   The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o   100% of monthly wages (average to last 3 months' regular wages + 1 month's portion of yearly bonus) per each year of continuous employment.  * Excluding housing subsidy.

9.  The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

- 4 -

**A-1050**

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.


This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2019.


| | |
|---|---|
| Employer | Permanent Mission of the Republic of Korea to the United Nations |
| | Minister Jungjae Lee  [signed] |
| Employee | Hyunhuy Nam       [signed] |

- 5 -

ROKPM00035 - T

**A-1051**

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).


Fran S. Yoon

February 18, 2022

# EXHIBIT 27

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                          Defendant's Motion for Summary Judgment

**A-1053**

# 운전원 채용계약서

駐유엔 대한민국 대표부 공사(代) 조진호 참사관(이하 "고용주"라 칭함)과 고용원 남현희(男, 1960.4.9생)은 2020년 7월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 공사(代) 조진호 참사관

 (2) 채용대상자

    o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

    o 성 명 : 남현희

    o 생년월일 : 1960년 4월 9일

2. 고용원은 본 계약서에 서명함으로써 '주유엔 대한민국대표부 고용원 내규'에 규정된 모든 의무와 책임을 이행하며, 특히 다음과 같은 의무와 책임을 진다.

 (1) 고용원으로서 의무와 책임을 최선을 다해 성실하게 수행한다.

 (2) 운전을 비롯한 기타 행정업무 등 고용주의 직무상 명령에 따라야 한다.

 (3) 고용주의 허가 또는 정당한 사유없이 근무처를 이탈하여서는

- 1 -

ROKPM0036

아니된다.

(4) 고용원이 고용계약서상 업무이의 경제적 이득을 취할 수 있는
영리업무에 종사하고자 할 경우에는 반드시 고용주의 사전
허가를 받아야 한다.

(5) 대한미국의 이익에 위배되는 일체의 행위를 하지 아니한다.

(6) 근무중 지득한 비밀 및 일반 사실을 고용기간중 또는 퇴직후
외부에 발설하지 아니하며 이를 위반할 경우 대한민국법에
따라 처벌받는다.

3. 채용기간은 2020年 7月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 09:00부터 18:00까지로 한다. 고용주가 주말이나
공휴일 등 시간외 근무를 요청할 경우 고용원은 이를 따라야 하며,
근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

(1) 月 기본급은 1,710불로 한다. 급료는 月 단위(1개월 미만시 하루
단위) 매월 중·하순 지급한다.

(2) 시간 외 수당은 시간당 $13.29로 하되 月 52시간 한도 내에서
지급한다.

(3) 상여금(기본급 100%)은 6월·12월 2회로 분할하여 지급한다.

(4) 주거보조비는 공관 실비 상한액 범위내에서 每月 실비를

- 2 -

ROKPM0037

지급한다. ＊2020.10월부

(5) 퇴직금은 1년 이상 근무 시 지급한다.

(6) 의료보험료는 月 납입액의 80%를 지급한다.

(7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여 사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무 실적 평가를 년 2회(6월,12월) 실시, 인사자료로 참고한다.

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

(1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

(2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

(3) 계약사업을 계속할 필요성이 소멸한 때

(4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

(5) 범죄 또는 중대한 과실을 범한 경우

(6) 직무를 태만히 하거나 소행이 불량한 경우

- 3 -

ROKPM0038

(7) 상사의 직무상 명령에 복종하지 아니한 경우

(8) 근무실적 평가결과 4개 항목(성실감 · 책임감 · 업무능력 · 보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

(9) 보안준수 의무사항을 이행하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직금을 지급한다.

o 계속근로기간 1년에 대하여 30일분의 평균임금을 지급 * 주거 보조비는 未包含

  * 평균임금은 퇴직 · 해고 등 사유발생 이전 3개월동안 지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본급, 상여금, 시간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를 줄 수 있다.

(1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만 1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

(2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의 유급휴가를 준다.

(3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에 따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미 사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

- 4 -

ROKPM0039

(4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매 2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함한 총 휴가일수는 25일을 한도로 한다

(5) 단, 지각・조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서 제외하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체・정신상의 장애로 장기 요양을 원할 시 3개월 이내에 한하여 무급 휴직을 줄 수 있다.

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한 문제 발생시 이에 대한 책임을 지지 않는다.


본 계약서 2부를 작성하여 각각 1부씩 보관한다.

2020년 7월 1일


고용주    駐유엔 대한민국 대표부 공사(代) 조 진 호 _조진호_

고용원    남 현 희 _[signature]_

– 5 –

ROKPM0040

# EXHIBIT 28

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

# EMPLOYMENT CONTRACT

(Deputy) Minister Jinho Jo of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of July 2020.

1. Parties to the Contract

   (1) Employer Name: (Deputy) Minister Jinho Jo

   (2) Subject of Employment

       o Address: 128 w Central Blvd. Palisades Park, NJ 07650

       o Name: Hyunhuy Nam

       o Date of Birth: April 9, 1960

2. By signing this agreement, the Employee shall perform all duties and responsibilities set forth in the internal Employment Policy of the Permanent Mission of the Republic of Korea to the United Nations, and specifically the following duties and responsibilities.

   (1) The Employee shall perform his duties and responsibilities faithfully and to the best of his ability.

   (2) Obey job-related orders including chauffeuring and other executive duties.

   (3) Must not leave the employment site without the Employer's permission or good cause.

- 1 -

(4) In the event the Employee wishes to engage in activities from which he may gain
financial benefits apart from the duties under this agreement, he must first obtain the
Employer's permission in advance.

(5) Shall not engage in any act of any kind which may be contrary to the national interest
of the Republic of Korea.

(6) Shall not disclose, during his employment and after the termination thereof, any
classified information and facts acquired during his employment. In the event such
obligation is breached, the Employee shall be subject to punishment under the laws of
the Republic of Korea.

3. The employment period shall be from July 1, 2020 through June 30, 2021.

4. The work hours shall be 09:00 through 18:00. The Employee shall comply with the
Employer's request to work during off-schedule hours including on the weekends or
national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

(1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments
(daily increment if less than 1 month) at the beginning and middle of each month.

(2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours.

(3) Bonus (100% of regular wages) will be paid in June and December in two divided
payments.

(4) Be paid housing subsidy for the actual expenses each month subject to the Mission's
maximum actual expenses on a monthly basis. * Effective October 2020.

- 2 -

ROKPM00037 - T

# A-1061

    (5) Severance pay will be paid if employed for one year or longer.

    (6) Be paid medical insurance subsidy monthly at 80% of actual payment.

    (7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6.  The Employer shall conduct a review concerning the Employee's job performance twice per year (June, December) and be referenced as human resources records.

7.  The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

    (1) Failure to complete tasks for physiological or psychological reasons

    (2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

    (3) Cessation of work

    (4) When survival or the whereabouts become unclear due to Act of God or war/incident.

    (5) Commits a crime or a gross negligence

    (6) Neglects work duties or exhibits substandard behavior

- 3 -

# A-1062

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation.

(9) Failure to abide by the security guidelines.

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

- For each year of continuous employment, pay 30 days' average wages. *excluding housing subsidy.

  * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9. The Employer may permit days to the Employee as follows:

(1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

(2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

(3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

- 4 -

ROKPM00039 - T

**A-1063**

(4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

(5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

11. The Employer shall not be responsible for any issues arising from the Employee's own failure to procure insurance or lack of provision by the receiving State.

This agreement is executed in 2 copies and each party shall keep 1 copy.

July 1, 2020.

Employer        Permanent Mission of the Republic of Korea to the United Nations

(Deputy) Minister Jinho Jo      [signed]

Employee                        Hyunhuy Nam       [signed]

- 5 -

ROKPM00040 - T

**A-1064**

## Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).

Fran S. Yoon

February 18, 2022

# EXHIBIT 29

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-1066**

## 운전원 채용계약서

駐유엔 대한민국 대표부 정대용 공사(이하 "고용주"라 칭함)와 고용원 남현희(男, 1960.4.9생)은 2021년 4월 1일 다음과 같이 채용계약을 체결한다.

1. 계약 당사자

 (1) 고용주명 : 정대용 공사

 (2) 채용대상자

   o 주 소 : 128 w Central Blvd. Palisades Park. NJ 07650

   o 성 명 : 남현희

   o 생년월일 : 1960년 4월 9일

2. 채용대상자는 계약기간 동안 운전원로서 다음과 같은 업무를 수행한다.

 (1) 공용차량 운전 업무

 (2) 기타 행정 및 의전 업무

 (3) 상기 업무수행과 관련된 제반 행정 사무 및 본부가 필요하다고 인정하는 업무지원

- 1 -

ROKPM0042

3. 채용기간은 2021年 4月 1日부터 2021年 6月 30日까지로 한다.

4. 근무시간은 週 40시간, 日 09:00부터 18:00까지로 하며 점심
   식사 등을 위한 휴게시간 1시간을 부여한다. 고용주가 주말
   이나 공휴일 등 시간외 근무를 요청할 경우 고용원은 이를
   따라야 하며, 근무시간이 변경될 경우 이를 준수하여야 한다.

5. 月 보수는 기본급, 시간외 근무수당 등을 포함한다.

   (1) 月 기본급은 $1,710로 한다. 급료는 月 단위(1개월 미만시 하루
       단위) 매월 중·하순 지급한다.

   (2) 시간외 근무수당은 시간당 $13.29로 하되 근로기준법에 따라
       月 52시간 한도 내에서 지급한다.

   (3) 상여금(기본급 100%)은 연간 1회(6月) 지급한다.

   (4) 주거보조비는 每月 $2,000 지급한다.

   (5) 의료보험료는 月 납입액의 80%를 지급한다.

   (6) 성과급은 年 1회(4月) 지급한다.

   (7) 주재국 법령이 규정하고 있더라도 고용주는 고용원을 위하여
       사회보장세 등 어떠한 조세도 지불하지 아니한다.

6. 고용주는 고용원의 업무추진실적 및 직무수행태도에 대한 근무
   실적 평가를 年 1회(12월) 실시, 인사자료로 참고한다.

- 2 -

ROKPM0043

7. 고용주는 고용원이 다음 各 호의 사유에 해당될 경우 채용계약을 즉시 해지할 수 있다. 또한 고용원이 계약 해지를 희망할 경우 고용주에게 2개월 전 서면 통보해야한다.

 (1) 신체·정신상의 이유로 직무를 감당하지 못할 경우

 (2) 직제·정원의 개폐 또는 예산의 감소에 의해 인원감축의 대상이 된 경우

 (3) 계약사업을 계속할 필요성이 소멸한 때

 (4) 천재지변 또는 전시·사변이나 기타 사유로 생사 또는 소재가 불분명하게 된 경우

 (5) 범죄 또는 중대한 과실을 범한 경우

 (6) 직무를 태만히 하거나 소행이 불량한 경우

 (7) 상사의 직무상 명령에 복종하지 아니한 경우

 (8) 근무실적 평가결과 4개 항목(성실감·책임감·업무능력·보안성) 중 2개 항목 이상 부문에서 '불량' 평가를 받은 경우

 (9) 보안준수 의무사항을 이행하지 아니한 경우

 (10) 외국적자와의 결혼 등 신상 변동사항을 고지하지 아니한 경우

8. 고용주는 고용원이 1年 이상 근무하고 퇴직할 경우에 다음 기준에 의해 퇴직 익월에 퇴직금을 지급한다.

 o 퇴직금 산식 : 퇴직前 3개월 총임금(기본급+ 시간외수당)/3+

- 3 -

ROKPM0044

年상여금/12)】×총근무일수/365

o 퇴직금 산입항목 : 계속근로기간 1년에 대하여 30일분의 평균
   임금을 지급   * 평균임금은 퇴직·해고 등 사유발생 이전 3개월동안
   지급된 임금총액을 그 기간의 총 일수로 나눈 금액(기본급, 상여금, 시
   간외 근무수당 포함)

9. 고용주는 고용원에게 근무기간에 따라 아래와 같이 유급휴가를
   줄 수 있다.

   (1) 1년간 8할 이상 출근한 경우 15일의 유급휴가를 준다.(다만
       1년간 8할 미만 출근한 경우 개근한 1월에 대하여 1일의 유급휴가를 준다)

   (2) 계속하여 근로한 기간이 1년 미만인 경우 1개월 개근시 1일의
       유급휴가를 준다.

   (3) 최초 1년간의 근로에 대하여 유급휴가를 주는 경우에는 제2호에
       따른 휴가를 포함하여 15일로 하고, 제2호에 따른 휴가를 이미
       사용한 경우에는 그 사용한 휴가 일수를 15일에서 뺀다.

   (4) 3년 이상 근속한 경우 최초 1년을 초과하는 계속 근로연수 매
       2년에 대하여 1일을 가산한 유급휴가를 주며, 가산 휴가를 포함
       한 총 휴가일수는 25일을 한도로 한다

   (5) 단, 지각·조퇴가 3회일 경우 연가 1일로 산정, 연가일수에서  제외
       하나, 고용주가 인정하는 경우는 연가 삽입에서 제외할 수 있다.

10. 고용주는 고용원이 신체·정신상의 장애로 장기 요양을 원할
    시  3개월 이내에 한하여 무급 휴직을 줄 수 있다.

- 4 -

ROKPM0045

11. 고용주는 고용원이 보험미가입 또는 주재국 제도 불비로 인한
    문제 발생시 이에 대한 책임을 지지 않는다.

본 계약서 2부를 작성하여 각각 1부씩 보관한다.

<div align="right">2021년  4월  1일</div>

고용주       駐유엔 대한민국 대표부 공사       정 대 용 (서명)

고용원                                    남 현 희 (서명)

<div align="center">- 5 -</div>

ROKPM0046

# EXHIBIT 30

Nam v. Permanent Mission of the ROK to UN
SDNY 1:21-cv-06165-AJN                    Defendant's Motion for Summary Judgment

**A-1072**

# EMPLOYMENT CONTRACT

Minister, Dae Yong Chung, of the Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Employer") and the Employee, Hyunhuy Nam (Male, DOB 4/9/60), hereby execute the employment agreement as follows on this 1st day of April 2021.

1. Parties to the Contract

    (1) Employer Name: Minister Dae Yong Chung

    (2) Subject of Employment

        o   Address: 128 w Central Blvd. Palisades Park, NJ 07650

        o   Name: Hyunhuy Nam

        o   Date of Birth: April 9, 1960

2. The Subject of Employment shall perform the following tasks as a chauffeur.

    (1) Driving a government vehicle.

    (2) Performing other executive duties as well as activities of ceremony, formality, protocol, etiquette on diplomatic occasions.

    (3) Performing supporting tasks including executive and office work necessary to perform the foregoing tasks as the headquarters may determine as necessary.

- 1 -

ROKPM00042 - T

# A-1073

3. The employment period shall be from April 1, 2021 through June 30, 2021.

4. The work hours shall be 40 hours per week, 09:00 through 18:00 per day, permitting break time of 1 hour for lunch, etc. The Employee shall comply with the Employer's request to work during off-schedule hours including on the weekends or national holidays.

5. Monthly compensation shall include regular wages and off-schedule wages, etc.

    (1) Monthly regular wages shall be $1,710. Wages shall be paid one-month increments (daily increment if less than 1 month) at the beginning and middle of each month.

    (2) Off-schedule wages shall be $13.29 but paid at a monthly maximum of 52 hours pursuant to Korea's Labor Standards Law.

    (3) Bonus (100% of regular wages) will be paid once per year (June).

    (4) Be paid housing subsidy of $2,000 per month.

    (5) Be paid medical insurance subsidy monthly at 80% of actual payment.

    (6) Be paid a performance bonus once per year (April).

    (7) Notwithstanding the laws of the receiving State, the Employer shall be exempt from paying social security tax or any payroll tax for the Employee.

6. The Employer shall conduct a review concerning the Employee's job performance and once per year (December) and be referenced as human resources records.

**A-1074**

- 2 -

7. The Employer may immediately terminate this agreement where any one of the following is applicable. In the event the Employee wishes to terminate the agreement, he must provide a two-month advanced notice to the Employer.

(1) Failure to complete tasks for physiological or psychological reasons

(2) In case [the Employee] is subject to layoff due to elimination of position, restructuring, or reduction of budget

(3) Cessation of need to work.

(4) When survival or the whereabouts become unclear due to Act of God or war/incident.

(5) Commits a crime or a gross negligence

(6) Neglects work duties or exhibits substandard behavior

(7) Fails to obey supervisor's work-related orders

(8) Receives "Unsatisfactory" in two or more categories of the following four categories (Diligence, Responsibility, Ability to Perform, and Ability to Keep Matters Secret) in the performance evaluation

(9) Failure to abide by the security guidelines.

(10)   Failure to inform of changes in identification status, including marriage with a foreign national

8.  The Employer shall pay the Employee a severance pay as follows if his employment terminates after one year or more of employment.

   o  Calculation for severance payment: Total wages for 3 months before separation (regular wages + off-schedule wages)/3 + Yearly Bonus/12] x total workdays/365

- 3 -

ROKPM00044 - T

    o  Included in severance pay: For each year of continuous employment, pay 30 days' average wages. * Average wages mean the total amount paid for 3 months prior to resignation, termination, or other events divided by the number of days during that period (include regular wages, bonus, off-schedule wages)

9. The Employer may permit days to the Employee as follows:

    (1) 15 days of paid time off if reported to work more than 80% of the time in one year (But if reported to work less than 80% in one year, allow 1 day of paid time off per one month of attendance.)

    (2) If continuous employment is less than one year, 1 day of paid time off per 1 month of attendance.

    (3) If providing paid time off for the first year, the total will be 15 days including the paid time off pursuant to subsection 2, and if paid time off pursuant to subsection 2 is already used, subtract the used number of days of paid time off from 15 days.

    (4) If employed for more than 3 years, allow 1 additional day of paid time off for every 2 years after the first year, but the maximum paid time off including the additional days shall be 25 days.

    (5) Three lateness or early leaves shall be calculated as one day of paid time off and be deducted from the number of days of paid time off, but the Employer may not deduct it at his discretion.

10. In the event the Employee requests an extended leave due to his physical or mental disability, the Employer may grant him unpaid leave up to 3 months.

- 4 -

ROKPM00045 - T

**A-1076**

11. The Employer shall not be responsible for any issues arising from the Employee's own
failure to procure insurance or lack of provision by the receiving State.


This agreement is executed in 2 copies and each party shall keep 1 copy.

April 1, 2021.


| | | | |
|---|---|---|---|
| Employer | Permanent Mission of the Republic of Korea to the United Nations | | |
| | | Daeyong Chung | [signed] |
| Employee | | Hyunhuy Nam | [signed] |

- 5 -

# Certification of Translation Accuracy

I, Fran S. Yoon, a professional interpreter and translator having no relation to

the client hereby certify that:

1. I am a Korean/English interpreter and translator with 20 years of

experience.

2. I am currently registered with the United States District Court for the Southern District of New

York.

3. The attached documents bearing Bates Stamp "ROKPM0010–T" through "ROKPM0048–T"

(bottom right corner), to my knowledge, ability and belief, is a true and accurate translation of

the original documents bearing Bates Stamp "ROKPM0010" through "ROKPM0048" (bottom

right corner).

Fran S. Yoon

February 18, 2022

**A-1078**

# EXHIBIT C

**A-1079**

## 시간외근무 확인대장 (운전원)

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무<br>사 유 | 확인관<br>서 명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 07/01 | 김형희 | 6:50 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/05 | " | 6:50 | 22:30 | 6:40 | 출·퇴근 / 야근 (15분) | |
| 07/12 | " | 6:50 | 23:00 | 7:10 | 출·퇴근 / 야근 (7시간) | |
| 07/13 | " | 6:50 | 23:40 | 7:50 | 출·퇴근 / 야근 (7시간) | |
| 07/14 | " | 7:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/15 | " | 7:10 | 20:30 | 4:20 | 출·퇴근 / 야근 (15분) | |
| 07/18 | " | 6:50 | 19:20 | 3:30 | 출·퇴근 시간초과분 | |
| 07/19 | " | 07:00 | 20:30 | 4:30 | 출·퇴근 / 야근 (44분) | |
| 07/20 | " | 08:00 | 23:30 | 6:30 | 출·퇴근 / 야근 (44분) | |
| 07/21 | " | 09:00 | 23:00 | 5:00 | 출·퇴근 / 야근 (42분) | |
| 07/22 | " | 07:00 | 19:00 | 3:00 | 출·퇴근 시간초과분 | |
| 07/22 | " | 06:40 | 19:30 | 3:40 | 출·퇴근 시간초과분 | |
| 07/25 | " | 06:40 | 19:30 | 3:50 | 출·퇴근 시간초과분 | |
| 07/26 | " | 07:00 | 23:30 | 7:30 | 출·퇴근 / 초과시간 | |
| 07/27 | " | 07:00 | 20:00 | 4:00 | 출·퇴근 시간초과분 | |
| 07/28 | " | 06:50 | 07:10 | 3:20 | 출·퇴근 시간초과분 | |
| 07/29 | " | 07:20 | 20:00 | 3:40 | 출·퇴근 시간초과분 | |
| | ↑ 근무지 입무시각 시간을 기준으로 기준 | | | | | |
| | (근무지까지 이동시간 열편한 20분 불포함) | | | | | |

Total = 82시간 (직원기준역 12분/시간)

= 직급한도의 초과분       9/9   ROKPM0111

**A-1080**

### Overtime Verification Ledger (Chauffeur)

| Date | Worker | Starting Time | Ending Time | Overtime | Reason for Overtime | Signature of Verifier |
|------|--------|---------------|-------------|----------|---------------------|------------------------|
| | | Starting Time | Ending Time | Overtime | | |
| 07/01 | Hyunhuy Nam | 6:50 | 19:30 | 3:40 | Going to, Leaving from work overtime | گ |
| 07/05 | " | 6:50 | 22:30 | 6:40 | Going to, Leaving from work/ night work (15th St) | گ |
| 07/12 | " | 6:50 | 23:00 | 7:10 | Going to, Leaving from work/ night work (Fort Lee) | گ |
| 07/13 | " | 6:50 | 23:40 | 7:50 | Going to, Leaving from work/ night work (Fort Lee) | گ |
| 07/14 | " | 7:00 | 20:00 | 4:00 | Going to, Leaving from work overtime | گ |
| 07/15 | " | 7:10 | 20:30 | 4:20 | Going to, Leaving from work/ night work (15th St) | گ |
| 07/18 | " | 6:50 | 19:20 | 3:30 | Going to, Leaving from work overtime | گ |
| 07/19 | " | 07:00 | 20:30 | 4:30 | Going to, Leaving from work/ night work (49th St) | گ |
| 07/20 | " | 08:00 | 23:30 | 6:30 | Going to, Leaving from work/ night work (46th St) | گ |
| 07/21 | " | 09:00 | 23:00 | 5:00 | Going to, Leaving from work/ night work (42nd St) | گ |
| 07/22 | " | 07:00 | 19:00 | 3:00 | Going to, Leaving from work overtime | گ |
| 07/22 | " | 06:40 | 19:20 | 3:40 | Going to, Leaving from work overtime | گ |
| 07/25 | " | 06:40 | 19:30 | 3:50 | Going to, Leaving from work overtime | گ |
| 07/26 | " | 07:00 | 23:30 | 7:30 | Going to, Leaving from work/ Fort Lee night work | گ |
| 07/27 | " | 07:00 | 20:00 | 4:00 | Going to, Leaving from work overtime | گ |
| 07/28 | " | 06:50 | 07:10 | 3:20 | Going to, Leaving from work overtime | گ |
| 07/29 | " | 07:20 | 20.00 | 3:40 | Going to, Leaving from work overtime | گ |
| | | ↑ | | | | |
| | | ↑ | | | | |
| | | written | on the basis | of work | starting time of the work place | |
| | | (20 minutes | of daily | average | travel time to the work place not included) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total: 82 hours (Amount of Base Pay $12/hour)
= Amount of Pay Limit $570

گ 9/9 Received

ROKPM0111

**A-1081**

## 시간외근무 확인대장

2017 5월

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|------|--------|------|------|------|------|------|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 05/01 | 남 희오 | 7:00 | 19:40 | 3:40 | 347ト / 초.회긔 | 〃 |
| 05/02 | 남 켤회 | 7:10 | 22:30 | 6:20 | 꾸리 / 초.회긔 | 〃 |
| 05/03 | 남 철외 | 7:10 | 20:00 | 3:50 | 초.회긔 추가복 | 〃 |
| 05/04 | 남 켤외 | 6:50 | 20:00 | 4:10 | 항바봉, / 초.회긔 | 〃 |
| 05/05 | 남 켤외 | 9:00 | 22:30 | 4:30 | 447ト, 꾸리/ 초.회긔 | 〃 |
| 05/08 | 남 켤외 | 7:00 | 19:30 | 3:30 | 초.회긔 추가복 | 〃 |
| 05/09 | 남 켤외 | 9:00 | 23:30 | 5:30 | 꿩각, 꾸리 / 초.회긔 | 〃 |
| 05/10 | 남 켤외 | 7:10 | 22:00 | 5:50 | 꾸리 / 초.회긔 | 〃 |
| 05/11 | 남 켤외 | 7:10 | 20:00 | 3:50 | 587ト / 초.회긔 | 〃 |
| 05/12 | 남 베긔 | 7:20 | 19:30 | 3:10 | 초.회긔 추가복 | 〃 |
| 05/15 | 남 켤외 | 7:00 | 22:30 | 6:40 | 꾸리 / 초.회긔 | 〃 |
| 05/16 | 남 켤외 | 7:10 | 19:30 | 3:20 | 초.회긔 추가복 | 〃 |
| 05/17 | 남 켤붜 | 7:10 | 0:00 | 9:50 | 447ト / 초.회긔 | 〃 |
| 05/18 | 남 켤붜 | 7:00 | 20:00 | 4:00 | 꾸리 / 초.회긔 | 〃 |
| 05/19 | 남 켤외 | 7:20 | 19:30 | 3:10 | 리깆각ㄷ / 초.회긔 | 〃 |
| 05/22 | 남 켤외 | 7:00 | 19:30 | 3:30 | 초.회긔 추가복 | 〃 |
| 05/23 | 남 켤외 | 7:10 | 22:30 | 6:20 | 꾸리 / 초.회긔 | 〃 |
| 05/24 | 남 켤외 | 7:10 | 19:00 | 2:50 | 초.회긔 추가복 | 〃 |
| 05/25 | 남 켤외 | 8:20 | 18:30 | 1:10 | 초.회긔 추가복 | 〃 |
| 05/26 | 남 켤외 | 8:20 | 19:30 | 2:10 | 꾸리각 초.회긔 | 〃 |
| 05/30 | 남 켤외 | 7:00 | 22:00 | 6:00 | 꾸리 / 초.회긔 | 〃 |
| 05/31 | 남 켤외 | 7:10 | 19:30 | 3:20 | 327ト / 초.회긔 | 〃 |
| | | | | | | |
| | | {(1,900 + 1,900/12) ≒209×1.5} × 52 = 267볼 | | | | |
| | | (시간당 기준액 = 18.76) | | (시간) | | |

수령: 남 베긔
확인

ROKPM0101

**A-1082**

<u>Overtime Verification Ledger</u>

May 2017

| Date | Worker | Starting Time | Overtime Status Ending Time | Overtime | Reason for Overtime | Signature of Verifier |
|------|--------|---------------|--------------|----------|---------------------|------------------------|
| 05/01 | Hyunhuy Nam | 7:00 | 19:40 | 3:40 | 34th St / Going to, Leaving from work | ㅅ |
| 05/02 | Hyunhuy Nam | 7:10 | 22:30 | 6:20 | Fort Lee / Going to, Leaving from work | ㅅ |
| 05/03 | Hyunhuy Nam | 7:10 | 20:00 | 3:50 | Going to, Leaving from work overtime | ㅅ |
| 05/04 | Hyunhuy Nam | 6:50 | 20:00 | 4:10 | Hillsborough / Going to, Leaving from work | ㅅ |
| 05/05 | Hyunhuy Nam | 9:00 | 22:30 | 4:30 | 49th St / Going to, Leaving from work | ㅅ |
| 05/08 | Hyunhuy Nam | 7:00 | 19:30 | 3:30 | Going to, Leaving from work overtime | ㅅ |
| 05/09 | Hyunhuy Nam | 9:00 | 23:30 | 5:30 | Pal Park, Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/10 | Hyunhuy Nam | 7:10 | 22:00 | 5:50 | Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/11 | Hyunhuy Nam | 7:10 | 20:00 | 3:50 | 58th St/ Going to, Leaving from work | ㅅ |
| 05/12 | Hyunhuy Nam | 7:20 | 19:30 | 3:10 | Going to, Leaving from work overtime | ㅅ |
| 05/15 | Hyunhuy Nam | 7:00 | 22:30 | 6:30 | Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/16 | Hyunhuy Nam | 7:10 | 19:30 | 3:20 | Going to, Leaving from work overtime | ㅅ |
| 05/17 | Hyunhuy Nam | 7:10 | 01:00 | 9:50 | 49th St/ Going to, Leaving from work | ㅅ |
| 05/18 | Hyunhuy Nam | 7:00 | 20:00 | 4:00 | Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/19 | Hyunhuy Nam | 7:20 | 19:30 | 3:10 | Ridgefield/ Going to, Leaving from work | ㅅ |
| 05/22 | Hyunhuy Nam | 7:00 | 19:30 | 3:30 | Going to, Leaving from work overtime | ㅅ |
| 05/23 | Hyunhuy Nam | 7:10 | 22:30 | 6:20 | Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/24 | Hyunhuy Nam | 7:10 | 19:00 | 2:50 | Going to, Leaving from work overtime | ㅅ |
| 05/25 | Hyunhuy Nam | 8:20 | 18:30 | 1:10 | Going to, Leaving from work overtime | ㅅ |
| 05/26 | Hyunhuy Nam | 8:20 | 19:30 | 2:10 | Flushing / Going to, Leaving from work | ㅅ |
| 05/30 | Hyunhuy Nam | 7:00 | 22:00 | 6:00 | Fort Lee/ Going to, Leaving from work | ㅅ |
| 05/31 | Hyunhuy Nam | 7:10 | 19:30 | 3:20 | 32nd St / Going to, Leaving from work | ㅅ |
| | | | | | | |
| | | | | | | |
| | {(1900+ | 1900/12) | ÷209 x | 1.5} x | 52 = $767 | |
| | | (hourly | base pay | =14.76) | (hour) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Confirmation of Receipt: *Hyunhuy Nam*

ROKPM0101

## 시간외근무 확인대장

2018 1月

| 날짜 | 근무자 | 초과근무 현황 | | | 초과근무 사유 | 확인관 서명 |
|---|---|---|---|---|---|---|
| | | 시작시각 | 종료시각 | 초과시간 | | |
| 1/3 | 남정희 | 7:40 | 23:00 | 6:20 | 72가 / 조토리 / 출.퇴근 | |
| 1/5 | 남현희 | 7:40 | 20:00 | 3:40 | 32가 / 출.퇴근 | |
| 1/8 | 남현희 | 7:30 | 20:00 | 3:30 | 충역사 / 출.퇴근 | |
| 1/9 | 남정희 | 8:00 | 21:20 | 4:20 | 61가 / 3가 / 출.퇴근 | |
| 1/10 | 남현희 | 7:40 | 21:50 | 5:10 | 66가 / 30가 / 출.퇴근 | |
| 1/11 | 남현희 | 7:40 | 0:00 | 8:40 | 32가 / 출.퇴근 | |
| 1/12 | 남현희 | 11:00 | 20:00 | 0:00 | 49가 / 출.퇴근 | |
| 1/15 | 남현희 | 7:50 | 23:00 | 6:10 | 32가 / 1가 / 충.퇴근 | |
| 1/16 | 남현희 | 7:40 | 21:45 | 5:05 | 32가 / 조토리 / 충.퇴근 | |
| 1/17 | 남현희 | 7:50 | 19:45 | 2:55 | 76가 / 조토리 | |
| 1/18 | 남현희 | 7:40 | 22:00 | 5:40 | 28가 / 출.퇴근 | |
| 1/19 | 남현희 | 8:00 | 20:00 | 3:00 | 출.퇴근 차량보 | |
| 1/22 | 남현희 | 7:30 | 22:30 | 5:30 | 서울 / 출.퇴근 | |
| 1/23 | 남정희 | 7:40 | 19:50 | 2:10 | 출.퇴근 차량보 | |
| 1/24 | 남현희 | 7:40 | 21:00 | 4:20 | 23가 / 조토리 / 출.퇴근 | |
| 1/25 | 남현희 | 9:20 | 2:30 | 2:30 | 출.퇴근 차량보 | |
| 1/26 | 남현희 | 7:40 | 22:40 | 6:50 | 32가 / 평택 / 출.퇴근 | |
| 1/28 | 남정희 | 18:20 | 22:30 | 4:10 | JFK / 출입업무 | |
| 1/29 | 남현희 | 7:30 | 20:30 | 4:00 | 출.퇴근 차량보 | |
| 1/30 | 남현희 | 7:40 | 21:30 | 4:45 | 조토리 / 출.퇴근 | |
| 1/31 | 남현희 | 7:45 | 19:45 | 3:00 | 출.퇴근 차량보 | |
| | | | Total | 91:45 | | |
| | | | | | 91시간 × 14.76 = $769 | |
| | | | | | (여금환융억) | |

91시간

ROKPM0093

**A-1084**

Overtime Verification Ledger

January 2018

| Date | Worker | Starting Time | Overtime Status Ending Time | Overtime | Reason for Overtime | Signature of Verifier |
|------|--------|---------------|------------------------------|----------|---------------------|-----------------------|
| 1/3 | Hyunhuy Nam | 7:40 | 23:00 | 6:20 | 72nd St/Fort Lee/Going to, Leaving from work | علق |
| 1/5 | Hyunhuy Nam | 7:40 | 20:00 | 3:40 | 32nd St/Going to, Leaving from work | علق |
| 1/8 | Hyunhuy Nam | 7:30 | 20:00 | 3:30 | Consulate General/ Going to, Leaving from work | علق |
| 1/9 | Hyunhuy Nam | 8:00 | 21:20 | 4:20 | 61st St/32nd St/ Going to, Leaving from work | علق |
| 1/10 | Hyunhuy Nam | 7:40 | 21:50 | 5:10 | 56th St/Pal Park/ Going to, Leaving from work | علق |
| 1/11 | Hyunhuy Nam | 7:40 | 01:00 | 8:40 | 32nd St/ Going to, Leaving from work | علق |
| 1/12 | Hyunhuy Nam | 11:00 | 20:00 | 0:00 | 49th St/ Going to, Leaving from work | علق |
| 1/15 | Hyunhuy Nam | 7:50 | 23:00 | 6:10 | 32nd St/1st St/ Going to, Leaving from work | علق |
| 1/16 | Hyunhuy Nam | 7:40 | 21:45 | 5:05 | 32nd St/Fort Lee/Going to, Leaving from work | علق |
| 1/17 | Hyunhuy Nam | 7:50 | 19:45 | 2:55 | 76th St/Fort Lee | علق |
| 1/18 | Hyunhuy Nam | 7:40 | 22:00 | 5:40 | 28th St/ Going to, Leaving from work | علق |
| 1/19 | Hyunhuy Nam | 8:00 | 20:00 | 3:00 | Going to, Leaving from work overtime | علق |
| 1/22 | Hyunhuy Nam | 7:30 | 22:00 | 5:30 | Seoho/ Going to, Leaving from work | علق |
| 1/23 | Hyunhuy Nam | 7:40 | 19:50 | 2:10 | Going to, Leaving from work overtime | علق |
| 1/24 | Hyunhuy Nam | 7:40 | 21:00 | 4:20 | 23rd St/Fort Lee/ Going to, Leaving from work | علق |
| 1/25 | Hyunhuy Nam | 9:30 | 21:00 | 2:30 | Going to, Leaving from work overtime | علق |
| 1/26 | Hyunhuy Nam | 7:40 | 22:30 | 6:50 | 32nd St/Pal Park/ Going to, Leaving from work | علق |
| 1/28 | Hyunhuy Nam | 18:20 | 22:30 | 4:10 | JFK/Work on off day | علق |
| 1/29 | Hyunhuy Nam | 7:30 | 20:30 | 4:00 | Going to, Leaving from work overtime | علق |
| 1/30 | Hyunhuy Nam | 7:45 | 21:30 | 4:45 | Fort Lee/ Going to, Leaving from work | علق |
| 1/31 | Hyunhuy Nam | 7:45 | 19:45 | 3:00 | Going to, Leaving from work overtime | علق |
| | | | Total | 91:45 | | |
| | | | | | | |
| | | | | | 91 hours x 14.76=$767 | |
| | | | | | (Amount of Pay Limit) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

91 hours        رسکفّ

ROKPM0093

**A-1085**

# JOANNA KOH

**Certified English Korean Court Interpreter/Translator**

56B West Homestead Avenue Palisades Park, NJ 07650

Telephone: (973) 886-4438

## CERTIFICATE OF ACCURACY

STATE OF NEW JERSEY     )
                   ) ss.:
COUNTY OF BERGEN   )

Joanna Koh, being duly sworn, deposes and says: That I am familiar with both the English and Korean languages. That I have made the attached translation from the annexed document in the Korean language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability and belief.

*Joanna Koh*

Joanna Koh        Date:  July 28, 2022

Sworn to before me
this _____ day of _____, 2022