# 23-229

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

HYUNHUY NAM,

*Plaintiff-Appellee,*

—against—

PERMANENT MISSION OF THE REPUBLIC OF KOREA
TO THE UNITED NATIONS,

*Defendant-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

JOSEPH BARBIERE
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000

ERIC S. LATZER
COLE SCHOTZ P.C.
1325 Avenue of the Americas,
  19th Floor
New York, New York 10019
(201) 525-6281

JOSHUA S. LIM
NICK DUBOIS
SEAN KWAK
KIM, CHO & LIM, LLC
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
(201) 585-7400

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................... ii

PRELIMINARY STATEMENT ............................................. 1

LEGAL ARGUMENT ........................................................ 5

    I.    Nam Mischaracterizes this Court's Decision in *Kato*, While Overstating the Import of *Pablo Star*, in an Attempt to Excuse the District Court's Departure from *Kato* ............................................... 5

    II.   Nam Has Also Mischaracterized This Court's Decision in *Jamsostek*, Again In An Attempt To Excuse The District Court's Failure To Follow The Decision ...................................................... 9

    III.  The District Court's Ruling Cannot Be Squared With *Kato* And *Jamsostek* .................................... 10

    IV.  Nam's Application of The Two-Part *Figueroa* Test Ignores Critical Facts in The Record ....................... 11

    V.   Nam Fails To Show His Activities Were Aimed At The United States ............................................... 14

CONCLUSION .......................................................... 19

i

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Angel-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*,
    600 F.3d 171 (2d Cir. 2010) ............................................. 9

*Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*,
    No. 21-941-CV, 2022 WL 2236946
    (2d Cir. June 22, 2022) .......................................... 15, 17

*Figueroa v. Ministry for Foreign Affairs of Sweden*,
    222 F. Supp. 3d 304 (S.D.N.Y. 2016) ........................... 11, 12

*Kato vs. Ishihara*,
    360 F.3d 106 (2d Cir. 2004) ................................. 5, 6, 7, 8

*Pablo Star Ltd. vs Welsh Gov't.*,
    961 F.3d 555 (2d Cir. 2020) ...................................... 8, 9

*Republic of Argentina v. Weltover*,
    Inc., 504 U.S. 607 (1992) ............................................ 16

**Other Authorities**

Merriam-Webster.com Dictionary,
    https://www.merriam-webster.com/dictionary/commercial .... 16

The Mission respectfully submits this reply brief in further support of its appeal of the district court's February 21, 2023 decision granting summary judgment, in part, in Nam's favor.[1]

## PRELIMINARY STATEMENT

Nam's opposition rests on blatant mischaracterizations of the two dispositive rulings—*Kato* and *Jamsostek*—that the district court improperly failed to follow in applying the "commercial activity" exception of the FSIA.  The import of *Kato* and *Jamostek* is clear: within the context of claims arising out of a foreign state's dealings with its employee, if the foreign state's function is governmental in nature, the "commercial activity" exception does not apply—regardless of an employee's particular duties. Neither did *Pablo Star* disturb those holdings as the subsequent *Bardales* decision confirms.

Nam does not dispute that the Mission, as the ROK's representative to the United Nations, performs a purely governmental function.  That admission, in and of itself, is critical and should conclusively resolve the debate over whether Nam can invoke the "commercial activity" exception. Again, as *Kato* and *Jamsostek* instruct, if a foreign state's function is

---

[1]    Defined terms are incorporated herein from the Mission's opening brief.

1

governmental in nature—like the undisputed function of the Mission—and a plaintiff's duties are in furtherance of a clearly sovereign function, the "commercial activity" exception does not apply in the context of claims arising out of a foreign state's dealings with its employee.

Remarkably, however, Nam argues the Mission's activities are somehow irrelevant, while simultaneously offering no basis to reconcile his flawed position with the rulings in *Kato* and *Jamsostek*. Nam instead relies heavily on *Pablo Star*, which arose in an entirely different context and involved a foreign state's use of copyrighted photographs to promote tourism as part of a nationwide campaign, rather than a foreign state's dealings with its employee. This distinction is critical, insofar as any rule that would require a court to focus solely on the outward appearance of the employee's job duties would invariably negate the presumption of immunity under the FSIA. Indeed, a parallel can almost always be drawn between the job functions of a private sector employee and a foreign state employee, when viewing their job duties in a vacuum. Such would generally result in a presumption of *commercial activity* rather than the FSIA's presumption of immunity. Obviously that is not consistent with the legislative intent underlying the FSIA. Thus, the

district court erred in failing to focus solely on the Mission's purely governmental function, as *Kato* and *Jamsostek* require.

Nam's response to the Mission's reliance on the two-part *Figueroa* test fares no better. As explained above and in the Mission's opening brief, the Mission disagrees with the *Figueroa* court's application of a two-part test to determine whether the "commercial activity" exception applies. The exception's applicability should turn solely on part one of the test—whether the foreign state performs governmental activities— without inquiry into the superficial appearance of an employee's job functions.

But assuming, *arguendo*, that the two-part test is appropriate, the events and circumstances underlying this dispute satisfy the *Figueroa* test. While acknowledging that the first part of the test is satisfied (*i.e.*, because the Mission performs a purely governmental function), Nam claims the second part of the test is not satisfied because his employment was not sufficiently intertwined with those governmental activities, as he was merely an ordinary chauffeur. The record evidence, however, establishes that Nam was no ordinary chauffeur—not even close. Among other things, and as addressed further herein, Nam was responsible for

3

the safe transport of the Mission's dignitaries, maintaining the confidentiality of classified intelligence, and acting at all times in the best interests of the ROK, subject to penal consequences should he fail to have done so. Reversal of the district court's decision is thus warranted, even if this Court finds that Nam's duties as an employee are relevant to whether the "commercial activity" exception applies (which they are not, under a close reading of *Kato* and *Jamsostek*).

Also unpersuasive are Nam's arguments concerning the "substantial contact" requirement of the "commercial activity" exception. Because Nam has not, and cannot, demonstrate that his activity in the United States involved *commerce*, he has failed—as a matter of law—to satisfy the "substantial contact" requirement.

All tolled, Nam's opposition cannot salvage the district court's legally deficient decision departing from the weight of established and well-reasoned precedents. The FSIA affords the Mission with a presumption of immunity and that presumption has not been overcome in this case. This Court, therefore, should reverse the decision and dismiss Nam's claims with prejudice.

4

## **LEGAL ARGUMENT**

**I.    Nam Mischaracterizes this Court's Decision in *Kato*, While Overstating the Import of *Pablo Star*, in an Attempt to Excuse the District Court's Departure from *Kato*.**

As explained in the Mission's opening brief, *Kato* address the applicability of the "commercial activity" exception in precisely the same context underlying this appeal—namely, claims arising out of a foreign state's dealings with its employee.  The central factor in determining whether the exception applies, the *Kato* court held, is whether the activities of the foreign state—*not* the specific activities of the employee hired by the foreign state—are governmental or commercial in nature. *Kato*, 360 F.3d at 111.  If they are governmental in nature, the "commercial activity" exception does not apply—and that is the end of the inquiry.

Nam does not dispute that the district court failed to apply or meaningfully consider *Kato*.  Nor does he dispute that the Mission is (and was) performing purely governmental activity insofar as it is serving as the ROK's representative to the United Nations.  Nam's concession should end the debate over the applicability of the "commercial activity" exception.  Again, consistent with *Kato*, the exception does not apply

5

because the Mission indisputably performs a purely governmental function.

In an attempt to distance this case from *Kato*, however, Nam resorts to blatantly mischaracterizing the *Kato* decision. For one, he claims *Kato* was "clearly . . . not focused on the activity that the foreign state performs for the purpose of 'commercial activity' exception." (Opp. Br. at 20; *see also id.* at 22 ("Kato court decided that the commercial exception does not apply not because TMG's function is governmental . . . .")).

But, in fact, the opposite is true: in *Kato* this Court made crystal clear that it was laser-focused on the activity that the foreign state performs. The Court noted, at the outset, that "in order to evaluate plaintiff's argument that her employment was by nature 'commercial' because she engaged in commercial activity' on behalf of [the foreign state], *we consider whether [the foreign state's] activities in New York were typical of a private party engage in commerce*." *Kato*, 360 F.3d at 111 (emphasis added)). Applying that analysis, the Court found that defendants were immune under the FSIA based on the foreign state's

6

governmental activities. Specifically, the Court concluded its decision, as follows:

> Accordingly, we affirm the District Court's holding that defendants are immune under the FSIA from a suit arising from Kato's employment. Specifically, *we hold that an agency of a foreign government is not involved in "commercial activity" under the FSIA when it provides general business development assistance, including product promotion, to business enterprises of that country seeking to engage in commerce in the United States*.

*Id.* at 114 (emphasis added)..

In short, Nam's contention that the *Kato* court was not focused on the foreign state's activities has no merit. And here, the Mission's activities were even more attenuated in that even Nam does not contend the ROK was providing or promoting any Korean business or products in the United States

Nam further mischaracterizes this Court's decision in *Kato* by conflating it with the *district court's* ruling which precipitated it. (Opp. Br. at 21). Specifically, Nam argues: (i) the district court based its decision on its finding that the employee in *Kato* was a civil servant under Japanese law; (ii) "this Court affirmed the district court's decision"; and (iii) "[t]herefore," according to Nam, "the Mission's argument that *Kato*

7

required the court must [sic] focus on activities of the foreign state . . . is not correct." (Opp. Br. at 21-22 (emphasis omitted)). Nam has it all wrong. Although this Court affirmed the district court's ruling, it expressly did so "on somewhat *different* grounds than those of the District Court[,]" *i.e.*, the court's decision was *not* predicated on the employee's status as a civil servant under Japanese law. 360 F.3d at 109 (emphasis added). Thus, the district court's ruling is of no moment in this instance.

In a further attempt to distance this case from *Kato*, Nam invokes this Court's ruling in *Pablo Star*.[2] As this Court explained, however, *Pablo Star* arose in an entirely different context than *Kato*: *Kato* concerned claims arising out of the foreign state's "personnel practices[,]" while *Pablo Star* concerned claims based on "the Welsh Government's use of [certain copyrighted] photographs . . . in promoting Wales-related tourist activities." *Pablo Star*, 961 F.3d 555 at 560-61, 563 (2d Cir. 2020). The Court in *Pablo Star* referenced its holding in *Kato*—specifically, that the foreign state in *Kato* was engaged in governmental activity—but only

---

[2] Nam claims that Pablo Star resolved a so-called "dispute" regarding the interpretation of *Kato*. (Opp. at 19 ("In *Pablo Star*, this Court clarified the dispute as to interpretation [sic] of *Kato*.")). Nam, however, fails to identify what that "dispute" entailed, much less how the *Kato* court could have resolved a "dispute" without actually acknowledging its existence.

for purposes of stating that the holding was not dispositive of whether the Welsh Government in *Pablo Star* was similarly engaged in governmental activity. *Id.* at 563. Thus, *Pablo Star* did not overrule or in any way impact *Kato*—and it most certainly did not relieve the district court of its obligation to follow *Kato*.

In sum, Nam's attempts to distance this case from *Kato* do not withstand scrutiny. The district court was required—but failed—to follow *Kato* and, consequently, its decision should be reversed.

## II. Nam Has Also Mischaracterized This Court's Decision in *Jamsostek*, Again In An Attempt To Excuse The District Court's Failure To Follow The Decision.

The Mission's opening brief explained how the district court's ruling is inconsistent with *Jamsostek*. In that case, this Court instructed—just as it did in *Kato*—that in applying the "commercial activity" exception, the "proper[] focus" must be on "the particular actions that the foreign state performs" and *not* on the particular actions of the foreign state's employee or on the "fact of employment[.]" *Angel-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 178, 178 n.5 (2d Cir. 2010).

Not surprisingly, Nam's opposition pays short shrift to *Jamsostek*. (Opp. Br. at 30). He discounts the case by claiming it "was not based on

the employment relationship between *Jamsostek* and its employees[.]" (Opp. Br. at 30). But, in fact, the claims in *Jamsostek did* concern Jamsostek's (the foreign state) relationship with its employees and, specifically, whether it negligently supervised them. That aside, Nam's opposition, like the district court's ruling, is predicated on *Pablo Star*—a case which unquestionably does not concern the foreign state's relationship with its employees. Thus, Nam is urging this Court to reject a case (*Jamsostek*) because it does not arise in the employment context (he wrongly claims), while simultaneously arguing the Court must decide this case based on a ruling (*Pablo Star*) that does not arise in the employment context. Nam cannot have it both ways.

## III. The District Court's Ruling Cannot Be Squared With *Kato* And *Jamsostek*.

As demonstrated above, and contrary to Nam's opposition, the district court erred in failing to follow *Kato* and *Jamsostek*. That error requires reversal. Indeed, *Kato* and *Jamsostek* instruct that if a foreign state's function is governmental in nature, the "commercial activity" exception does not apply in the context of claims arising out of a foreign state's dealings with its employee. Because Nam does not dispute that the Mission's function is governmental in nature, the "commercial

10

activity" exception does not apply, and the Mission is therefore entitled to immunity.

## IV. Nam's Application of The Two-Part *Figueroa* Test Ignores Critical Facts in The Record.

Even assuming, *arguendo*, that the "commercial activity" exception does not turn solely on whether the foreign state performs governmental activities—as *Kato* and *Jamsostek* instruct—reversal of district court's decision is still required based on *Figueroa v. Ministry for Foreign Affairs of Sweden*, 222 F. Supp. 3d 304, 314-15 (S.D.N.Y. 2016). In *Figueroa*, the court applied a two-part test to determine the applicability of the "commercial activity" exception in the context of claims arising out of a foreign state's dealings with its employee. That two-part focuses on (i) whether the foreign state was performing governmental activities, *and* (ii) "whether the plaintiff's employment relationship was sufficiently intertwined with the [foreign state's] governmental activity to provide that the employment relationship itself was part of the governmental function." *Id.*

Nam concedes that the Mission has satisfied part one of the *Figueroa* test. (*See generally* Opp. Br.). Again, Nam does not, and cannot, dispute that the Mission, as the ROK's representative to the United

11

Nations, performs a purely governmental function. Nam, however, contends his duties were "not sufficiently intertwined" with the Mission's governmental function. (Opp. Br. at 25). Nam is wrong.

In support of his argument, Nam attempts to downplay his role for the Mission. Specifically, he claims his "work was limited to the task of driving" for the Mission's "non-diplomatic employees" and that he was not privy to "information" regarding the United Nations events to which he would drive Mission representatives until he "received the call from Minister [sic]." (Opp. Br. at 25).

First, the record shows that Nam's work was *not* "limited to the task of driving" so-called "non-diplomatic" employees. Rather, he was responsible for safely and securely ensuring the transport of the Mission's highest-ranking government officials, ministers, diplomats, and other dignitaries including the United Nation's Secretary General's aide, the National Security Advisor to the President of the ROK, and the Mission's guests and family members. A-220, ¶¶ 57-64. The "commercial activity" exception fails based on these facts alone. *See Figueroa*, 222 F. Supp. at 315 (finding the "commercial activity" exception was not

satisfied based on the Swedish's mission's employment of a full-time chauffeur "entrusted . . . with the safe transport of Swedish dignitaries").

Second, Nam's claim that he did not receive information regarding United Nations events far in advance of the events is beside the point. What matters is he *did* receive the information and, as he concedes, the information came from the "Minister" himself. (Opp. Br. at 25).

Nam further attempts to downplay his role with the Mission by emphasizing that he was "categorized as non-diplomatic staff" and therefore did not receive the "benefit" of "Verizon family cell phone plan[.]" (Opp. Br. at 27). But of course Nam's role cannot be assessed based on labels and cell phone plan benefits. It must be assessed based on what his position *actually* entailed. In that respect, the record shows that Nam: (i) was required to act consistent with the ROK's national interest, including its security interests, A-238 ¶ 29; (ii) admitted, under oath, that he was, in fact, serving the ROK's national interest, A-248 ¶ 31, A-324, 131:23-25; (iii) could not marry a non-ROK system without informing the Mission, A-237 ¶ 28; (iv) was required to maintain the secrecy of the Mission's classified information and abide by its security guidelines—or risk criminal punishment, A-241 ¶¶ 61-65, A-239 ¶ 38; (v)

13

was subject to polygraph tests to ensure compliance with the ROK's policies, A-236 ¶ 16; and (vi) was required to adhere to diplomatic protocol called "*Uei-Jeon*, A-242-43 ¶¶ 75-76.

Nam does not dispute these facts. He ignores them—because they are fatal to the false narrative in his opposition, that he was simply an ordinary chauffeur. He was not. Because his relationship with the Mission was more than "sufficiently intertwined" with the Mission's indisputably governmental function, the commercial activity exception was not satisfied under the two-part *Figueroa* test. Thus, the district court's decision cannot stand, even if this Court finds that Nam's duties as an employee are relevant to whether the "commercial activity" exception applies (which they are not, as *Kato* and *Jamsostek* instruct).

## V. Nam Fails To Show His Activities Were Aimed At The United States.

The district court's decision should be reversed, as well, because Nam's duties did not have a "substantial contact" with the United States, as required by the "commercial activity" exception.

There is consensus between the parties and the district court that what comprises substantial contact is "poorly defined" and left by Congress to the federal courts to determine. (*See* Opp. Br. at 33-34);

14

*Nam*, 2023 WL 2138601, at *8 (quoting 28 U.S.C. § 1603(3) and *Pablo Star*, 961 F.3d at 565)). This appeal affords an opportunity to elucidate the substantial contact standard. Contrary to Nam's opposition, to be substantial, any contact with the United States must involve commerce— as in each of the decisions Nam cites: *Pablo Star* and *Everard* (which are discussed in *Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*, No. 21-941-CV, 2022 WL 2236946, at *2 (2d Cir. June 22, 2022)).

The district court failed to state a standard, having found only that the Mission's mere "maintenance of a commercial employment relationship with Plaintiff in the United States, for activities outside the consulate, and for a significant duration of time meets that threshold." *Id.* at *13. That the parties had a "commercial" relationship is vehemently disputed. The district court's finding, moreover, that activity occurred outside the four walls of the Mission's offices, is unsupported.

The Mission vetted Nam for a civil service role that involved no commerce with the United States; rather, Nam was part of the Mission's overall security scheme, chauffeuring ministers, dignitaries, and guests in compliance with *Uei-Jeon* protocols and under conditions of confidentiality (with potential penal consequences for disclosures), privy

15

to discussions of national secrets, including contacts and itineraries, and subject to debriefing as a member of the Mission's political affairs team. These are simply not the type of actions by which a private party engages in trade and traffic or commerce," *see Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (emphasis in original) (internal quotation omitted).[3]

This Court recently summarized its findings of what comprises substantial contacts with regard to the "commercial activity" exception in *Pablo Star* and *Everard*, both cases targeting Americans for tourism.

> [I]n *Pablo Star*, we found substantial contact where the Welsh government distributed *promotional materials for* display and use in the United States as part of its "*The Welsh in America*" campaign, and those materials were printed under contract with New York companies. In *Everard*, we found substantial contact where, among other things, the Republic of Suriname "chose to deal with an American company," "the contract targeted the *U.S. travel market*," and "many aspects of the contract were performed in New York."

---

[3]   The rubric "commercial" cannot survive a simple definition of these circumstances much less scrupulous analysis; commercial is defined as "occupied with or engaged in commerce or work intended for commerce", which is not the intention here. "Commercial," Merriam-Webster.com Dictionary, https://www. merriam-webster.com/dictionary/commercial. Accessed 9/11/2023.

*Consulting Concepts*, 2022 WL 2236946, at \*2 (emphasis added) (citing *Pablo Star*, 961 F.3d at 565-66; quoting *Everard Findlay Consulting, LLC v. Republic of Suriname*, 831 F. App'x 599, 601 (2d Cir. 2020)). Nam's activities had no relation to marketing, tourism, or travel campaigns.

However, as Nam also notes, this Court affirmed the Honorable Alvin K. Hellerstein's finding in *Consulting Concepts* that the sovereign defendants "are not subject to jurisdiction under the second prong of the commercial activity exception" because the consulting "services for which [the plaintiff] was retained were aimed at Saudi Arabia, not the United States." *Id.*, at \*5-6.

Nam's services—the security of ROK personnel and secrets—were clearly "aimed at" the ROK, not the United States. Although Nam's contract may have been "executed in New York," (Opp. Br. at 35-36), it had to be approved by the ROK minister, and Nam's extension beyond the presumptive retirement age in Seoul itself. A-241-42 ¶¶ 5-9; A-238-39, ¶¶ 32-44.

Nam asserts driving in New York and New Jersey are *ipso facto* substantial contacts. Among his other duties, Nam's peripatetic ones were cabined within a radius of the United Nations headquarters and

17

diplomatic residences, with none directed to residents or businesses in New York or New Jersey. Nam's activities did not promote commerce with South Korea, any "Koreans in America" campaign or the U.S. travel market, which might arguably have brought this case within the ambit of *Pablo Star* or *Everard*.

Nam's final supposed substantial contact is that "Nam was paid in U.S. dollars in the Permanent Mission's office located in New York." (Opp. Br. at 36). Payment in the local currency, in this case the world's primary reserve currency, is not directed at the United States at all. If accepted, this argument would vitiate the exception and deem any diplomatic officer or employee to have had substantial contact with the United States simply by using its money as a means of exchange. In any event, Nam cites no authority for U.S. currency defining substantial contacts.

In sum, Nam fails to establish facts sufficient to override the second prong of the commercial exception to sovereign immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in the Mission's opening brief, this Court should reverse the district court's Opinion & Order (A–1240-1296) and dismiss Nam's claims with prejudice pursuant to the FSIA.

Dated: October 19, 2023

s/ *Joshua S. Lim*

Joshua S. Lim, Esq.
Nicholas J. DuBois, Esq.
Sean Kwak, Esq.
**KIM, CHO & LIM, LLC**
163-10 Northern Boulevard
    Suite 202
Flushing, N.Y. 11358-2652
T: 718-539-7400
F: 201-585-7422
joshualim@kcllawfirm.com

-and-

Joseph Barbiere, Esq.
Eric S. Latzer, Esq.
**COLE SCHOTZ P.C.**
1325 6th Avenue
    19th Floor
New York, N.Y. 10019
*Attorneys for Defendant-
Appellant Permanent Mission of
the Republic of Korea to the
United Nations*

19

## Certificate of Compliance Pursuant to
### Fed. R. App. Proc. 32(a)(7)(B)

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 3,589 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated: October 19, 2023                    Respectfully submitted,

                                           *Joshua S. Lim*
                                           Joshua S. Lim, Esq.